## Exhibit A

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| **STEWARD HEALTH CARE SYSTEM** | § | Case No. 24-90213 (CML) |
| **LLC,** *et al.,* | § |  |
|  | § | **(Jointly Administered)** |
| Debtors.[1] | § |  |
|  | § |  |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN JUNIOR LIEN POSTPETITION FINANCING, (B) USE CASH COLLATERAL, AND (C) GRANT LIENS AND PROVIDE SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (II) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED PARTIES; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF[2]

Upon the motion (the "**DIP Motion**")[3] of Steward Health Care System LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "**Bankruptcy Code**"), rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1 of the Bankruptcy Local Rules of the United States

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Steward.  The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

[2]    <u>Note</u>: this form of proposed Interim Order, including the stipulations contained herein and the proposed form of adequate protection provided in paragraphs 13-15 represents a proposal by the Debtors regarding the consensual use of cash collateral of the Prepetition Secured Parties.  To the extent that any such parties do not consent to the use of cash collateral, the Debtors reserve all rights to modify, among other things, the stipulations and form of adequate protection proposed herein.

[3]    Capitalized terms used but not defined herein are given the meanings ascribed to such terms in the DIP Motion or the DIP Term Sheet (as defined herein).

Bankruptcy Court for the Southern District of Texas (the "**Local Rules**"), and the Procedures for Complex Chapter 11 Bankruptcy Cases (the "**Complex Case Rules**" and, together with the Local Rules, the "**Bankruptcy Local Rules**"), seeking entry of this interim order (including all exhibits, schedules, and annexes hereto, this "**Interim Order**")[4] and the Final Order (as defined herein and, together with this Interim Order, the "**DIP Orders**") among other things:

- authorizing the Borrower (as defined below) to obtain postpetition financing ("**Junior DIP Financing**") pursuant to a secured, superpriority, debtor in possession junior lien term loan facility (the "**DIP Facility**") subject to the terms and conditions set forth in this Interim Order and that certain Term Sheet for Proposed Debtor-in-Possession Financing attached hereto in substantially final form as **Exhibit 1** (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**DIP Term Sheet**") by and among Steward Health Care System LLC, as borrower (in such capacity, the "**Borrower**"), the DIP Guarantors (as defined below), MPT TRS Lender-Steward, LLC (the "**DIP Lender**" or "**DIP Secured Party**"), consisting of (i) new money term loans (the "**New Money DIP Term Loans**") in an aggregate principal amount of up to $300,000,000, of which an aggregate $75,000,000 is committed by the DIP Lender and will be available (a) $40,000,000 upon entry of this Interim Order (the "**Initial Draw**"), (b) $20,000,000 on May 24, 2024, and (c) $15,000,000 on May 31, 2024 (the foregoing draws in clauses (b) and (c), the "**Subsequent Interim Draws**") and the remainder, which remains uncommitted by the DIP Lender, may be available upon the entry of the Final Order (subject to certain conditions in the DIP Lender's sole and absolute discretion), and (ii) not less than $72,588,448.15 of DIP Roll-Up Loans (as defined below) in accordance with paragraph 2(b) hereof (the loans to be made available under the foregoing clauses (i) and (ii), the "**DIP Loans**" and the commitments therefor, the "**DIP Commitments**");

- authorizing the Borrower to incur, and the other Debtors to jointly and severally guarantee (such Debtors, in this capacity, the "**DIP Guarantors**" and, together with the Borrower, the "**DIP Loan Parties**") the DIP Loans and all extensions of credit, financial accommodations, reimbursement obligations, fees and premiums, costs, expenses and other liabilities and obligations (including indemnities and similar obligations, whether contingent or absolute) due or payable under the DIP Documents (as defined below) (collectively, the "**DIP Obligations**");

- authorizing the DIP Loan Parties to execute, deliver and perform under the DIP Term Sheet and all other documents and instruments required to be delivered in connection with the DIP Facility, including any definitive documentation for the DIP Facility as contemplated in the DIP Term Sheet (in each case, as amended, restated, supplemented,

---

[4]  The terms "herein" and "hereunder" shall refer to this Interim Order, inclusive of its exhibits, schedules, and annexes.

waived or otherwise modified from time to time in accordance with the terms thereof and hereof, together with the DIP Term Sheet, the "**DIP Documents**");

- subject to the Carve-Out (as defined below) and otherwise solely to the extent set forth herein, granting to the DIP Secured Party, allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code;

- granting to the DIP Secured Party, valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on the DIP Collateral (as defined below), on the terms described herein;

- authorizing the DIP Lender to take all actions reasonably required to implement the terms of this Interim Order;

- subject to the terms of the Final Order, unless consented to by the DIP Lender, waiving (a) the Debtors' right to surcharge the Prepetition MPT Collateral (as defined below) and the DIP Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

- subject to the terms of the Final Order, unless consented to by the DIP Lender, waiving the equitable doctrine of "marshaling" and other similar doctrines (a) with respect to the DIP Collateral for the benefit of any party other than the DIP Lender and (b) with respect to the Prepetition Collateral for the benefit of any party other than the Prepetition MPT Secured Party (as defined below);

- authorizing the Debtors to use proceeds of the DIP Facility and Cash Collateral (as defined below) solely in accordance with the DIP Orders and the DIP Documents;

- authorizing the Debtors to pay the DIP Obligations as they become due and payable in accordance with the DIP Documents;

- subject to the restrictions set forth in the DIP Documents and the DIP Orders, authorizing the Debtors to use Prepetition Collateral and provide adequate protection to the Prepetition Secured Parties for any diminution in value of their respective interests in the applicable Prepetition Collateral (including Cash Collateral), for any reason provided for in the Bankruptcy Code (collectively, the "**Diminution in Value**");

- vacating and modifying the automatic stay to the extent necessary to permit the Debtors and the DIP Lender to implement and effectuate the terms and provisions of the DIP Orders and the DIP Documents;

- waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order and, upon entry, the Final Order; and

- scheduling a final hearing (the "**Final Hearing**") to consider final approval of the DIP Facility and use of Cash Collateral on the terms of a proposed order (including all

exhibits, schedules, and annexes thereto, the "**Final Order**") to be posted to the docket prior to the Final Hearing.

The Court having considered the interim relief requested in the DIP Motion, the exhibits attached thereto, the *Declaration of Tyler W. Cowan  in Support of Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Junior Lien Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "**Cowan Declaration**"), the *Declaration of John R. Castellano in Support of Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Junior Lien Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* (the "**Castellano Declaration**"), and the *Declaration of John R. Castellano in Support of Debtors' Chapter 11 Petitions and First-Day Pleadings* (the "**First Day Declaration**"), the available DIP Documents, and the evidence submitted and arguments made at the interim hearing held on May 7, 2024 (the "**Interim Hearing**"); and due and sufficient notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Bankruptcy Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, otherwise is fair and reasonable, in the best interests of the Debtors and their estates, and essential for the continued

operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the DIP Loan Parties' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[5]**

A.      *Petition Date*.  On May 6, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**").

B.      *Debtors in Possession*.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      *Jurisdiction and Venue*.  This Court has core jurisdiction over these cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.  Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order approving the relief sought in the DIP Motion consistent with Article III of the United States Constitution.  Venue for these cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. § 1408.  The predicates for the relief sought herein are sections 105, 361, 362, 363(b),

---

[5]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

363(c), 363(e), 363(m), 364(c), 364(d), 364(e), 503 and 507 of the Bankruptcy Code, Bankruptcy

Rules 2002, 4001, 6003, 6004 and 9014, and Local Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-

1.

> D.      *Committee Formation*.   As of the date hereof, the United States Trustee for the
Southern District of Texas (the "**U.S. Trustee**") has not appointed an official committee of
unsecured creditors in these cases (a "**Creditors' Committee**").

> E.      *Notice*.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and
(c)(2).  Proper, timely, adequate and sufficient notice of the DIP Motion and the Interim Hearing
has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules and Local Rules,
and no other or further notice was required under the circumstances.  The interim relief granted
herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates
pending the Final Hearing.

> F.      *Cash Collateral*.  As used herein, the term "**Cash Collateral**" shall mean all of the
Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or
will constitute "cash collateral" of any of the Prepetition Secured Parties or DIP Secured Party
within the meaning of section 363(a) of the Bankruptcy Code.

> G.      *Debtors' Stipulations*.   Subject to the provisions and limitations contained in
paragraph 18 hereof the Debtors admit, stipulate and agree that:

> > 1.      *Prepetition ABL/FILO Loans*.  Pursuant to that certain Credit Agreement,
dated as of August 4, 2023 (as amended, supplemented, restated or otherwise modified prior to the
Petition Date, the "**Prepetition ABL/FILO Credit Agreement**" and, collectively with the other
"Loan Documents" (as defined in the Prepetition ABL/FILO Credit Agreement), and the other
agreements and documents executed or delivered in connection therewith, each as may be

amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "**Prepetition ABL/FILO Loan Documents**") by and among (a) Steward Health Care System LLC, as borrower (the "**Prepetition ABL/FILO Borrower**"), (b) the guarantors party thereto (the "**Prepetition ABL/FILO Guarantors**" and, together with the Prepetition ABL/FILO Borrower, the "**Prepetition ABL/FILO Loan Parties**"), (c) Sound Point Agency LLC, as administrative agent and collateral agent (the "**Prepetition ABL/FILO Administrative Agent**"), (d) Brigade Agency Services LLC, as FILO agent (the "**Prepetition FILO Agent**"), (e) Chamberlain Commercial Funding (Cayman) L.P., as collateral agent (the "**Prepetition Collateral Agent**" and, together with the Prepetition ABL/FILO Administrative Agent and the Prepetition FILO Agent, the "**Prepetition ABL/FILO Agents**"), and (f) the lenders party thereto from time to time, including the Tranche A Lenders (as defined in the Prepetition ABL/FILO Credit Agreement, the "**ABL Lenders**"), the FILO Lenders (as defined in the Prepetition ABL/FILO Credit Agreement, the "**FILO Lenders**"), and the First Out Tranche A Lender (as defined in the Prepetition ABL/FILO Credit Agreement) (collectively, the "**Prepetition ABL/FILO Lenders**" and, together with the Prepetition ABL/FILO Agents and any other "Secured Parties" (as defined in the Prepetition ABL/FILO Credit Agreement), the "**Prepetition ABL/FILO Secured Parties**"), the Prepetition ABL/FILO Loan Parties incurred "Obligations" (as defined in the Prepetition ABL/FILO Credit Agreement, the "**Prepetition ABL/FILO Obligations**") owing to the Prepetition ABL/FILO Secured Parties;

2. *Agreement Among Lenders*. Pursuant to (and to the extent set forth in) that certain Agreement Among Lenders, dated as of August 4, 2023 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "**Agreement Among Lenders**"), by and among the Prepetition ABL/FILO Administrative Agent,

the Prepetition ABL/FILO Lenders party thereto in their capacity as "First Out Lenders" or "Last Out Lenders" (each as defined therein), as applicable, Sound Point Agency LLC, as First Out Lender Representative (as defined therein), and Brigade Capital Management, LP, as Last Out Lender Representative (as defined therein), the parties thereto agreed, among other things, to the relative priority of payment as between the Prepetition ABL/FILO Obligations owed to the ABL Lenders and the Prepetition ABL/FILO Obligations owed to the FILO Lenders and the control of exercise of remedies, which, in each case, are governed by and set forth in the Agreement Among Lenders;

3.     *Prepetition Bridge Loan.*  Pursuant to that certain Credit Agreement, dated as of February 21, 2024 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "**Prepetition Bridge Credit Agreement**" and, collectively with the other "Loan Documents" (as defined in the Prepetition Bridge Credit Agreement), and the other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "**Prepetition Bridge Loan Documents**") by and among (a) Steward Health Care Network, Inc., Steward Emergency Physicians, Inc., Steward Physician Contracting, Inc., Steward Medicaid Care Network, Inc., Stewardship Health, Inc., Stewardship Health Medical Group, Inc., and Stewardship Services Inc., each as a borrower (collectively, the "**Prepetition Bridge Borrower**"), (b) the guarantors party thereto (the "**Prepetition Bridge Guarantors**" and, together with the Prepetition Bridge Borrower, the "**Prepetition Bridge Loan Parties**"), (c) Brigade Agency Services LLC, as administrative and collateral agent (the "**Prepetition Bridge Agent**" and, together with the Prepetition ABL/FILO Agents, the "**Prepetition Agents**")), and (d) the lenders party thereto from time to time (the "**Prepetition Bridge Lenders**" and, together with the

Prepetition Bridge Agent and any other "Secured Parties" (as defined in the Prepetition Bridge Credit Agreement), the "**Prepetition Bridge Secured Parties**"), the Prepetition Bridge Loan Parties incurred "Obligations" (as defined in the Prepetition Bridge Credit Agreement, the "**Prepetition Bridge Obligations**") owing to the Prepetition Bridge Secured Parties;

4.    *Prepetition TRS Note*.  Pursuant to that certain Third Amended and Restated Promissory Note, dated as of January 22, 2024 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "**Prepetition TRS Note**" and, collectively with the other "Obligation Documents" (as defined in the Prepetition TRS Note) and the other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived or otherwise modified prior to the Petition Date, the "**Prepetition TRS Note Documents**"), executed by Steward Health Care System LLC, as borrower (the "**Prepetition TRS Borrower**"), in favor of MPT TRS Lender-Steward LLC, as lender (the "**Prepetition MPT Secured Party**"; the Prepetition ABL/FILO Lenders, the Prepetition Bridge Lenders, the Prepetition MPT Secured Party, collectively, the "**Prepetition Lenders**"; the Prepetition ABL/FILO Secured Parties, the Prepetition Bridge Secured Parties, and the Prepetition MPT Secured Party, collectively, the "**Prepetition Secured Parties**"), the Prepetition TRS Borrower incurred the Prepetition TRS Obligations (as defined below) owing to the Prepetition MPT Secured Party;

5.    *Prepetition Stewardship Note*.  Pursuant to that certain Amended and Restated Promissory Note (Stewardship Note), dated as of April 25, 2024 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "**Prepetition Stewardship Note**" and, collectively with the other "Obligation Documents" (as defined in the Prepetition Stewardship Note) and the other agreements and documents executed or delivered in

connection therewith, each as may be amended, restated, amended and restated, supplemented, waived or otherwise modified prior to the Petition Date, the "**Prepetition Stewardship Note Documents**" and, together with the Prepetition TRS Note Documents, the "**Prepetition MPT Loan Documents**"), executed by Steward Health Care Network, Inc., Steward Emergency Physicians, Inc., Steward Physician Contracting, Inc., Steward Medicaid Care Network, Inc., Stewardship Health Medical Group, Inc., Stewardship Health, Inc., and Stewardship Services, Inc., as borrowers (collectively, the "**Prepetition Stewardship Borrowers**" and, together with the Prepetition TRS Borrower, the Debtors party to the Guaranty, dated as of January 2, 2024 (as may be amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date), as Guarantors (as defined therein), and the Debtors party to the Guaranty, dated as of May 1, 2017 (as may be amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time prior to the Petition Date), as Guarantors (as defined therein), the "**Prepetition MPT Loan Parties**"; the Prepetition ABL/FILO Loan Parties, the Prepetition Bridge Loan Parties, and the Prepetition MPT Loan Parties, collectively, the "**Prepetition Loan Parties**"), in favor of the Prepetition MPT Secured Party, the Prepetition Stewardship Borrowers incurred the Prepetition Stewardship Obligations (as defined below) owing to the Prepetition MPT Secured Party;

6.      *Prepetition Intercreditor Agreement*.  Pursuant to (and to the extent set forth in) that certain Amended and Restated Intercreditor Agreement, dated as of February 21, 2024 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "**Prepetition Intercreditor Agreement**" and, together with the Prepetition ABL/FILO Loan Documents, the Prepetition Bridge Loan Documents, and the Prepetition MPT Loan Documents, the "**Prepetition Loan Documents**") by and among the Prepetition ABL/FILO Administrative Agent, the

Prepetition Bridge Agent, the MPT Parties (as defined in the Prepetition Intercreditor Agreement), and the Prepetition Loan Parties party thereto, the parties thereto agreed, among other things, to the relative priority of such parties' respective security interests in the Prepetition Collateral (as defined below), which relative priorities are governed by and set forth in the Prepetition Intercreditor Agreement;

7.      *Prior DIP Term Sheet*.  Certain of the Prepetition Secured Parties and the Debtors entered into that certain Term Sheet for Proposed Debtor in Possession Financing, dated March 28, 2024 (the "**Prior DIP Term Sheet**").  Prior to the Petition Date, the parties to the Prior DIP Term Sheet have collectively not proceeded with the transactions contemplated thereby, and therefore the Prior DIP Term Sheet is of no further force and effect and no party thereto has any liability to any other party thereunder.

8.      *Prepetition TRS Obligations*.  As of the Petition Date, the Prepetition TRS Borrower was justly and lawfully indebted and liable to the Prepetition MPT Secured Party without defense, challenge, objection, claim, counterclaim, or offset of any kind, for not less than $216,276,230.55 in outstanding principal amount owed under the Prepetition TRS Note, plus any multiples of investment capital and any and all other accrued but unpaid interest (including PIK interest to the extent not yet capitalized), fees, costs, expenses, charges, advances, claims, debts, and other obligations that have accrued as of the Petition Date to the Prepetition MPT Secured Party and which continue to accrue (including professional fees) (collectively, the "**Prepetition TRS Obligations**");

9.      *Prepetition Stewardship Obligations*.  As of the Petition Date, the Prepetition Stewardship Borrowers were justly and lawfully indebted and liable to the Prepetition MPT Secured Party without defense, challenge, objection, claim, counterclaim, or offset of any

kind, for not less than $72,588,448.15 in outstanding principal amount owed under the Prepetition Stewardship Note, plus any multiples of investment capital and any and all other accrued but unpaid interest (including PIK interest to the extent not yet capitalized), fees, costs, expenses, charges, advances, claims, debts, and other obligations that have accrued as of the Petition Date to the Prepetition MPT Secured Party and which continue to accrue (including professional fees) (collectively, the "**Prepetition Stewardship Obligations**" and, together with the Prepetition TRS Obligations, the "**Prepetition MPT Secured Obligations**"; the Prepetition ABL/FILO Obligations, the Prepetition Bridge Obligations, and the Prepetition MPT Secured Obligations, collectively, the "**Prepetition Secured Obligations**");

10. *Validity of Prepetition Secured Obligations*. The Prepetition MPT Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition MPT Loan Parties, as applicable, enforceable in accordance with the respective terms of the relevant documents, and no portion of the Prepetition MPT Secured Obligations or any payment made to the Prepetition MPT Secured Party or applied to or paid on account of the Prepetition MPT Secured Obligations prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action (including any avoidance actions under Chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

11. *Prepetition ABL/FILO Liens*. As of the Petition Date, pursuant to the Prepetition ABL/FILO Loan Documents, the Prepetition ABL/FILO Loan Parties granted to the Prepetition ABL/FILO Administrative Agent, for the benefit of the Prepetition ABL/FILO Secured Parties, a security interest in and continuing lien (the "**Prepetition ABL/FILO Liens**") on the

ABL/FILO Collateral (as defined in the Prepetition Intercreditor Agreement, the "**Prepetition ABL/FILO Collateral**"), including: (i) a security interest in and continuing lien on the ABL/FILO Priority Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes Cash Collateral, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "**Prepetition ABL/FILO Priority Collateral**"), and including the ABL/FILO Exclusive Collateral (as defined in the Prepetition Intercreditor Agreement), in each case, subject and subordinate only to the liens permitted by the Prepetition ABL/FILO Loan Documents, solely to the extent such permitted liens are (a) valid, perfected and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "**Prepetition ABL/FILO Permitted Senior Liens**"), (ii) to the FILO Lenders (as defined in the Prepetition Intercreditor Agreement) only, subject to the Prepetition Intercreditor Agreement, a security interest in and continuing lien on the FILO Bridge Exclusive Collateral (as defined below), which, for the avoidance of doubt, includes Cash Collateral, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising, junior, subject and subordinate only to the liens of the Prepetition Bridge Secured Parties and the Prepetition ABL/FILO Permitted Senior Liens, and (iii) subject to the Prepetition Intercreditor Agreement, a security interest in and continuing lien on the Prepetition MPT Priority Collateral (as defined below), which, for the avoidance of doubt, (x) includes Cash Collateral, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising and (y) excludes the MPT Exclusive Collateral (as defined in the Prepetition Intercreditor Agreement), junior, subject and subordinate only to the senior liens

of the Prepetition MPT Secured Party and the Prepetition ABL/FILO Permitted Senior Liens, and *pari passu* only with the liens of the Prepetition Bridge Secured Parties;

12.    *Prepetition Bridge Liens*.    As of the Petition Date, pursuant to the Prepetition Bridge Loan Documents, the Prepetition Bridge Loan Parties granted to the Prepetition Bridge Agent, for the benefit of the Prepetition Bridge Secured Parties, a security interest in and continuing lien (the "**Prepetition Bridge Liens**") on the Bridge Collateral (as defined in the Prepetition Intercreditor Agreement, the "**Prepetition Bridge Collateral**"), including: (i) to the FILO Bridge Lenders (as defined in the Prepetition Bridge Credit Agreement) only, a security interest in and continuing lien on the FILO Bridge Exclusive Collateral (as defined in the Prepetition Intercreditor Agreement), which, for the avoidance of doubt, includes Cash Collateral, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "**Prepetition Bridge Priority Collateral**"), subject and subordinate only to the liens permitted by the Prepetition Bridge Loan Documents, solely to the extent such permitted liens are (a) valid, perfected and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "**Prepetition Bridge Permitted Senior Liens**"), (ii) subject to the Prepetition Intercreditor Agreement, a security interest in and continuing lien on the Prepetition ABL/FILO Priority Collateral, which, for the avoidance of doubt, includes Cash Collateral, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising, junior, subject and subordinate only to the liens of the Prepetition ABL/FILO Secured Parties and the Prepetition Bridge Permitted Senior Liens, and (iii) subject to the Prepetition Intercreditor Agreement, a security interest in and continuing lien on the Prepetition

14

MPT Priority Collateral (as defined below), which, for the avoidance of doubt, (x) includes Cash Collateral, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising and (y) excludes MPT Exclusive Collateral (as defined in the Prepetition Intercreditor Agreement), junior, subject and subordinate only to the senior liens of the Prepetition MPT Secured Party and the Prepetition Bridge Permitted Senior Liens, and *pari passu* only with the liens of the Prepetition ABL/FILO Secured Parties;

13. *Validity, Perfection and Priority of Prepetition MPT Liens.* As of the Petition Date, pursuant to the Prepetition MPT Loan Documents, the Prepetition MPT Loan Parties granted to the Prepetition MPT Secured Party, a security interest in and continuing lien (the "**Prepetition MPT Liens**" and, together with the Prepetition ABL/FILO Liens and the Prepetition Bridge Liens, the "**Prepetition Liens**") on the MPT Collateral (as defined in the Prepetition Intercreditor Agreement, the "**Prepetition MPT Collateral**" and, together with the Prepetition ABL/FILO Collateral and the Prepetition Bridge Collateral, the "**Prepetition Collateral**"), including: (i) a valid, binding, properly perfected, enforceable, non-avoidable first priority security interest in and continuing lien on the MPT Priority Collateral (as defined in the Prepetition Intercreditor Agreement but excluding the MPT Exclusive Collateral (as defined in the Prepetition Intercreditor Collateral)), which, for the avoidance of doubt, includes Cash Collateral, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "**Prepetition MPT Priority Collateral**"), and on the MPT Exclusive Collateral (as defined in the Prepetition Intercreditor Agreement), subject and subordinate only to the liens permitted by the Prepetition MPT Loan Documents, solely to the extent such permitted liens are (a) valid, perfected and non-avoidable on the Petition Date or (b) valid liens in existence on the Petition Date that are perfected subsequent

to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "**Prepetition MPT Permitted Senior Liens**" and, together with the Prepetition ABL/FILO Permitted Senior Liens and the Prepetition Bridge Permitted Senior Liens, the "**Prepetition Permitted Senior Liens**")[6] and (ii) subject to the Prepetition Intercreditor Agreement, a valid, binding, properly perfected, enforceable, non-avoidable security interest in and continuing lien on the Prepetition ABL/FILO Priority Collateral, which, for the avoidance of doubt, includes Cash Collateral, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising, junior, subject and subordinate only to the liens of the Prepetition ABL/FILO Secured Parties and the Prepetition Bridge Secured Parties and the Prepetition MPT Permitted Senior Liens.   For the avoidance of doubt, no Prepetition ABL/FILO Secured Party, or FILO Bridge Secured Party (as defined in the Prepetition Intercreditor Agreement), has any security interest in or lien on the MPT Exclusive Collateral (as defined in the Prepetition Intercreditor Agreement);

14.     *MPT Lease Claim.*  In connection with any bid, proposal, agreement or other arrangement providing for the sale, conveyance, transfer or other disposition of any hospitals and/or other hospital related assets or operations of the Debtors that provides for the sale or other disposition of such assets free and clear of all liens, claims and encumbrances held by the DIP Secured Parties (each, a "**Hospital Disposition**"), if such a Hospital Disposition results in the applicable MPT Lessors receiving less than the Hospital Disposition Allocation Amount (as hereinafter defined) in either cash or an equivalent amount in the event of assumption and/or assignment of a lease or entry into a new lease, the amount of such insufficiency shall be an allowed secured claim (without the need to file any proof of claim) against the applicable Debtor's

---

[6]     For the avoidance of doubt, no reference to the "Prepetition Permitted Senior Liens" shall refer to or include the Prepetition Liens.

estate secured by the DIP Collateral of a priority immediately junior to the DIP Liens (each, an

"**MPT Lease Claim**").  The term "**Hospital Disposition Allocation Amount**" means, with respect

to any Hospital Disposition under the Master Leases, an amount equal to the sum of (x) the lease

base applicable to such hospital under the applicable Master Lease (which lease base amount shall,

for the avoidance of doubt, be determined exclusive of any deferred rent) *plus* (y) the aggregate

amount of any deferred and unpaid rent accrued in respect of such hospital under such Master

Lease as of the applicable time of determination plus (z) in any case, without duplication of any

amounts described under the foregoing sub-clauses (x) or (y), all other pre-petition or post-petition

unpaid insurance, Impositions (as such term is defined in such Master Lease and, for the avoidance

of doubt, including the amounts necessary to remove any mechanics liens), and unreimbursed

capital expenditures, in each case accrued and outstanding relating to such hospital, which amounts

as of May 6, 2024 shall be as set forth on Annex III to the DIP Term Sheet, and shall be subject to

adjustments as of the applicable time of determination;

       15.    *Waiver of Challenge*.  None of the Prepetition MPT Liens are subject to any

contest, attack, rejection, recovery, reduction, defense, counterclaim, subordination,

recharacterization, avoidance or other cause of action (including any avoidance actions under

Chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the

Bankruptcy Code or any applicable non-bankruptcy law;

       16.    *No Control*.  None of the Prepetition MPT Secured Parties control (or have

in the past controlled) any of the Debtors or their respective properties or operations, have authority

to determine the manner in which any Debtor's operations are conducted or are control persons or

insiders of any Debtor by virtue of any actions taken with respect to, in connection with, related to

or arising from any Prepetition MPT Loan Documents;

17. *No Claims or Causes of Action.* No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition MPT Secured Parties, the MPT Lessors and each of their respective Representatives (as defined below), in each case, in their capacity as such, under or relating to any agreements by and among the Debtors and any Prepetition MPT Secured Party or MPT Lessor (as applicable) that is in existence as of the Petition Date;

18. *Master Lease I.* Pursuant to that certain Second Amended and Restated Master Lease Agreement (Master Lease I), dated as of March 14, 2022 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, "**Master Lease I**"), between certain affiliates of the Prepetition MPT Secured Party, as lessors (collectively, the "**Master Lease I Lessors**"), and certain Debtors, as lessees (collectively, the "**Master Lease I Lessees**"), the Master Lease I Lessors leased to the Master Lease I Lessees certain real property, as described in Master Lease I, on which the Debtors conduct substantially all of their hospital-related operations outside of the Commonwealth of Massachusetts;

19. *Master Lease II.* Pursuant to that certain Master Lease Agreement (Master Lease II), dated as of March 14, 2022 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, "**Master Lease II**" and, together with Master Lease I, the "**Master Leases**", and any and all claims under the Master Leases, the "**Master Lease Claims**"), between certain affiliates of the Prepetition MPT Secured Party, as lessors (collectively, the "**Master Lease II Lessors**" and, together with the Master Lease I Lessors, the "**MPT Lessors**"), and certain Debtors, as lessees (collectively, the "**Master Lease II Lessees**"), the Master Lease II Lessors leased to the Master Lease II Lessees certain real property, as described in Master Lease II, on

which the Debtors conduct substantially all of their hospital-related operations in the Commonwealth of Massachusetts;

20.     *Validity of Master Leases.*  Each Master Lease is a valid, unexpired lease of nonresidential real property, enforceable in accordance with its terms as a true, unitary, indivisible lease, subject to the provisions of section 365 of the Bankruptcy Code, and not subject to avoidance, recharacterization, subordination, severance (absent the consent of the applicable MPT Lessor), or other challenge pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and

21.     *Releases.*  Effective as of the date of entry of this Interim Order, each of the Debtors and each of their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the DIP Secured Party and each of its Representatives (solely in their capacities as such) (collectively, the "**DIP Released Parties**"), from any and all liability to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or tort, in each case arising out of or related to the DIP Facility, the DIP Documents, the New Money DIP Term Loans, the DIP Roll-Up Loans, the negotiation thereof and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the DIP Released Parties for or by reason of any act, omission, matter, or cause

arising at any time on or prior to the date of this Interim Order; *provided* that the release set forth in this section shall not release any (i) any claims against or liabilities of a DIP Released Party that a court of competent jurisdiction determines has resulted from such DIP Released Party's bad faith, fraud, gross negligence, or willful misconduct or (ii) DIP Lender from honoring its obligations to the Debtors under the DIP Documents.  Effective as of the date of entry of the Final Order, each of the Debtors and each of their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Prepetition MPT Secured Party, the MPT Lessors, and each of their respective Representatives (solely in their capacities as such and subject to the provisions of paragraph 18 hereof) (collectively, the "**Prepetition Released Parties**" and, together with the DIP Released Parties, the "**Released Parties**") and the DIP Released Parties, from any and all liability to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or tort, or for recharacterization, in each case arising out of or related to the Prepetition MPT Loan Documents, the Master Leases, the DIP Facility, the DIP Documents, the New Money DIP Term Loans, the DIP Roll-Up Loans, the negotiation thereof and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter may have against any of the Released Parties for or by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this Interim Order, including, without

limitation, any lender or noteholder liability claims, any subordination claims, any recharacterization claims, or any claims arising under any non-disclosure or confidentiality agreement; *provided* that the release set forth in this section shall not release any (i) any claims against or liabilities of a Released Party that a court of competent jurisdiction determines has resulted from such Released Party's bad faith, fraud, gross negligence, or willful misconduct or (ii) DIP Lender or the Prepetition Secured Parties from honoring their obligations to the Debtors under the DIP Documents and the Prepetition Loan Documents.

       H.     *Findings Regarding DIP Financing and Use of Cash Collateral.*

       1.     Good and sufficient cause has been shown for the entry of this Interim Order and for authorization of the DIP Loan Parties to obtain financing pursuant to the DIP Documents.

       2.     The Debtors have demonstrated an immediate and critical need to obtain the Junior DIP Financing and to use Prepetition Collateral (including Cash Collateral) in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and patients, to make payroll, to satisfy other working capital and operational needs, to fund administrative expenses of these chapter 11 cases, and to fund the Debtors' sale and restructuring efforts. Access to sufficient working capital and liquidity under the DIP Documents and other financial accommodations provided under the DIP Documents, as well as through the use of Cash Collateral and other Prepetition Collateral, is necessary for the avoidance of immediate irreparable harm to the Debtors' estates and for maintenance of the value of the assets of the Debtors' estates to maximize the recovery to all creditors of the estates.

       3.     The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured financing on

more favorable terms from sources other than the DIP Lender under the DIP Documents.  The Debtors are also unable to obtain secured credit without granting to the DIP Secured Party the DIP Liens and the DIP Superpriority Claims (each as defined below) and incurring the Adequate Protection Obligations (as defined below) on the terms and subject to the conditions set forth in this Interim Order and in the DIP Documents.

4.      The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated by the Prepetition Collateral and acquire equipment, inventory and other personal property, all of which constitutes Prepetition Collateral and the Prepetition Secured Parties' Cash Collateral under section 363(a) of the Bankruptcy Code.  The Debtors desire and need to use the Prepetition Secured Parties' Cash Collateral for general corporate purposes.

5.      Based on the DIP Motion, the First Day Declaration, the Cowan Declaration, the Castellano Declaration, and the record and argument presented to the Court at the Interim Hearing, the terms of the Junior DIP Financing, the terms of the adequate protection granted to the Prepetition Secured Parties as provided in paragraphs 13–15 of this Interim Order (collectively, the "**Adequate Protection**"), and the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order and the DIP Documents are consistent with the Bankruptcy Code, including section 506(b) thereof, are fair and reasonable, and reflect the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties under the circumstances.

6.      This Interim Order and the Junior DIP Financing, the Adequate Protection, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the DIP Loan Parties, the DIP Secured Party, the Prepetition Loan Parties, and the Prepetition MPT Secured Party (each of whom acted in good faith in negotiating

such documents), and all of the loans and other financial accommodations extended by the DIP Secured Party to the DIP Loan Parties under, in respect of, or in connection with, the Junior DIP Financing and the DIP Documents (including the granting of the Adequate Protection), shall be deemed to have been extended by the DIP Secured Party in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Party (and their respective successors and assigns) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

7.     The Prepetition MPT Secured Party and the DIP Secured Party have acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of this Interim Order, the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens (as defined below), any challenges or objections to the DIP Facility or the use of Cash Collateral, the DIP Documents, and all other documents related to and all transactions contemplated by the foregoing.  Accordingly, without limiting any other right to indemnification, the Prepetition MPT Secured Party and the DIP Secured Party shall be and hereby are indemnified (as applicable) as provided in the Prepetition MPT Loan Documents.

8.     The Prepetition Secured Parties are entitled to the Adequate Protection as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the DIP Motion and on the record presented to the Court, the terms of the proposed Adequate Protection are fair and reasonable, reflect the Debtors' prudent exercise of business

judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral, including Cash Collateral.

9.      To the extent their consent is required, the Prepetition Secured Parties have consented or are deemed to have consented to the use of Prepetition Collateral, including Cash Collateral, and with respect to the Prepetition MPT Secured Party, their Prepetition Liens being *pari passu* with the DIP Liens, in each case on the terms and solely to the extent set forth in this Interim Order and the DIP Documents; *provided* that nothing in this Interim Order or the DIP Term Sheet shall (x) be construed as the affirmative consent by the Prepetition MPT Secured Party for the use of Cash Collateral other than on the terms set forth in this Interim Order and in the context of the Junior DIP Financing authorized by this Interim Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering Prepetition Collateral (whether senior or junior) other than as contemplated by this Interim Order, or (z) prejudice, limit or otherwise impair the rights of any Prepetition MPT Secured Party to seek new, different or additional adequate protection or assert any other right, and the rights of any other party in interest, including the DIP Loan Parties, to object to such relief are hereby preserved.

10.     The Debtors have prepared and delivered to the advisors to the DIP Lender an initial budget (the "**Initial DIP Budget**"), attached hereto as Schedule 1.  The Initial DIP Budget reflects, among other things, the Debtors' anticipated operating receipts, operating disbursements, non-operating disbursements, net operating cash flow, and liquidity for each calendar week covered thereby.  The Initial DIP Budget may be modified, amended, extended, and updated from time to time in accordance with the DIP Term Sheet.  Each subsequent budget, once approved or deemed approved in accordance with the DIP Term Sheet (the Initial DIP Budget and each

subsequent approved budget, an "**Approved Budget**"), shall modify, replace, supplement or supersede, as applicable, the then applicable Approved Budget for the periods covered thereby.

11.     Subject to the entry and terms of the Final Order, the Prepetition MPT Secured Party shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition MPT Secured Party with respect to the proceeds, product, offspring, or profits of any of the Prepetition Collateral.

I.     *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Bankruptcy Local Rule 4001-1(b). Absent the relief granted in this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the Junior DIP Financing and continued use of Prepetition Collateral (including Cash Collateral), in accordance with this Interim Order and the DIP Documents, are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.  The DIP Motion and this Interim Order comply with the requirements of Bankruptcy Local Rule 4001-1(b).

J.     *Prepetition Permitted Senior Liens; Continuation of Prepetition Liens*.  Nothing herein constitutes a finding or ruling by this Court that any alleged Prepetition Permitted Senior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Secured Party, or the other Prepetition Secured Parties to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Senior Lien.  For the avoidance of doubt, the right of a seller of goods to reclaim goods under section 546(c) of the Bankruptcy Code does not constitute a Prepetition Permitted Senior Lien,

and such right is expressly subject to the DIP Liens and Prepetition Liens. The Prepetition Liens and the DIP Liens are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens.

K.      *Intercreditor Agreements.*  Pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreement and any other applicable intercreditor or subordination provisions contained in any of the other Prepetition Loan Documents (collectively, the "**Intercreditor Agreements**") shall (i) remain in full force and effect, (ii) continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties and the DIP Lender (including the relative priorities, rights and remedies of such parties with respect to replacement liens, administrative expense claims and superpriority administrative expense claims or amounts payable in respect thereof), and (iii) not be deemed to be amended, altered or modified by the terms of this Interim Order or the DIP Documents, unless expressly set forth herein or therein.

L.      *DIP Roll-Up Loans.* Upon entry of the Final Order, but subject to the provisions of paragraphs 2 and 18 of this Interim Order, $72,588,448.15 plus the other the Prepetition Stewardship Obligations, without duplication, shall be rolled up and converted into an equivalent principal amount of loans deemed to be made under the DIP Term Sheet (the "**DIP Roll-Up Loans**").

Based upon the DIP Motion, the foregoing findings and conclusions, and the overall record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      *Motion Granted.*  The DIP Motion is granted on an interim basis on the terms and conditions set forth in this Interim Order. All objections to the Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby overruled on the merits.

2.      *Authorization of the DIP Financing and the DIP Documents.*

(a)      The DIP Loan Parties are hereby authorized to execute, deliver, enter into and perform all of their obligations under the DIP Documents and perform such other acts as may be necessary, appropriate or desirable in connection therewith.  The Borrower is hereby authorized to borrow up to $75,000,000 (comprised of the Initial Draw and the Subsequent Interim Draws) pursuant to the DIP Term Sheet, and the DIP Guarantors are hereby authorized to guarantee the Borrower's obligations, in each case, on account of the Initial Draw and the Subsequent Interim Draws.  The proceeds of the DIP Loans may be used for all purposes permitted under the DIP Documents and the Interim Order, subject to and in accordance with the Approved Budget (subject to the Permitted Variances (as defined in the DIP Term Sheet)).

(b)      Upon entry of the Final Order, $72,588,448.15 plus the other Prepetition Stewardship Obligations, without duplication, outstanding on the Petition Date shall be deemed rolled up and converted into an equivalent principal amount of DIP Roll-Up Loans, subject to the provisions of paragraph 18 hereof.  The Debtors are authorized to take such acts as shall be necessary or desirable to effect the roll-up and conversion of $72,588,448.15 plus the other Prepetition Stewardship Obligations, without duplication, into the DIP Roll-Up Loans.

(c)      In furtherance of the foregoing and without further approval of this Court, each DIP Loan Party is authorized and directed to perform all acts, to make, execute and deliver all instruments, certificates, agreements, charges, deeds and documents, execute or record pledge and security agreements, mortgages, financing statements and other similar documents, if any, and to pay all fees, expenses and indemnities in connection with or that may be reasonably required, necessary, or desirable in connection with for the Junior DIP Financing, including, without limitation:

(i) the execution and delivery of, and performance under, each of the DIP Documents;

(ii) the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the DIP Loan Parties and the DIP Secured Party may agree, it being understood that no further approval of this Court shall be required for any such amendments, waivers, consents or other modifications that do not shorten the maturity of the DIP Facility, increase the aggregate DIP Commitments or increase the rate of interest or fees payable thereunder. Updates, modifications, extensions, and supplements to the Approved Budget shall not require any further approval of this Court;

(iii) subject to the review procedures set forth in paragraph 17 of this Interim Order, the non-refundable payment to the DIP Lender of fees incurred by the DIP Lender in connection with the DIP Facility and any amounts due in respect of any indemnification and expense reimbursement obligations, limited to the reasonable and documented fees and expenses of KTBS Law, LLP ("**KTBS**"), Baker, Donelson, Bearman, Caldwell & Berkowitz P.C. ("**BD**"), and Alvarez & Marsal Securities, LLC, ("**A&M**" and, together with KTBS and BD, the "**MPT Advisors**"), and one local legal counsel in each applicable jurisdiction (if reasonably required), solely as permitted under the DIP Documents), in each case, as provided in the DIP Documents (collectively, the "**DIP Fees and Expenses**"), without the need to file retention or fee applications; the payment of the foregoing amounts shall be irrevocable when paid, and subject in all respects to the review procedures set forth in paragraph 17 of this Interim Order, shall be deemed to have been approved upon entry of this Interim Order, whether any such obligations arose before or after the Petition Date, and upon payment thereof, shall not be subject to any contest, attack, rejection,

recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, disallowance, impairment, or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

3.      *DIP Obligations*.   Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute legal, valid, binding and non-avoidable obligations of the DIP Loan Parties, enforceable against each DIP Loan Party and their estates in accordance with their respective terms and this Interim Order, and any successors thereto, including any trustee appointed in these chapter 11 cases, or in any case under chapter 7 of the Bankruptcy Code upon conversion of any of these cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**").   Upon execution and delivery of the DIP Documents, the DIP Obligations shall include all loans and any other indebtedness or obligations, contingent or absolute, which may from time to time be owing by any of the DIP Loan Parties to the DIP Lender, in each case, under the DIP Documents and this Interim Order, including all principal, interest, costs, fees, expenses, premiums, indemnities and other amounts.  The DIP Loan Parties shall be jointly and severally liable for the DIP Obligations.  Except as permitted hereby, no obligation, payment, transfer, or grant of security hereunder or under the DIP Documents to the DIP Lender shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance,

impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

        4.    *Carve-Out.*

        (a)    <u>Priority of Carve-Out</u>. Each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Claims, the Adequate Protection Liens, the 507(b) Claims, the Master Lease Claims, the MPT Obligations (as defined in the Intercreditor Agreement), the liens or security interests securing the MPT Obligations, and any other liens, claims, or interests that the DIP Lender, Prepetition MPT Secured Party, or any of their respective affiliates hold, own or control in relation to the Debtors or their affiliates, shall be subject and subordinate to payment of the Carve-Out (as defined herein).  The Carve-Out shall be senior to all claims and liens over all assets of the Debtors, including any DIP Collateral and Prepetition Collateral, as set forth in this Interim Order.  For the avoidance of doubt, after delivery of a Termination Notice and the date upon which the DIP Obligations are paid in full (other than those that DIP Obligations that constitute unasserted contingent obligations), the Carve-Out shall remain in effect as to the Prepetition Secured Obligations and the Adequate Protection Obligations, and the Debtors shall be permitted and required to continue to fund amounts in relation to the Carve-Out in accordance with the terms of this Interim Order.

        (b)    <u>Carve-Out</u>. As used in this Interim Order, the term "Carve-Out" means the sum of (i) all unpaid fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930(a) plus interest at the statutory rate pursuant to 31 U.S.C. § 3717, (ii) all unpaid reasonable fees and expenses up to $100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code, (iii) to the extent allowed at any time, whether by interim order, final order, or other order, all accrued but unpaid fees and expenses (the **"Allowed Professional Fees"**) incurred

by persons or firms retained or proposed to be retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (collectively, the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**"), at any time before or on the first Business Day following the Carve-Out Trigger Date (as defined below), and any monthly, restructuring, sale, success or other transaction fees payable to a Debtor Professional, whether allowed by the Court prior to or after delivery of a Carve-Out Notice, (iv) the fees and expenses of any patient care ombudsman appointed in these Chapter 11 Cases pursuant to section 333 of the Bankruptcy Code (the amounts set forth in the foregoing clauses (i)–(iv), the "**Pre-Carve-Out Notice Amount**"), and (v) Allowed Professional Fees of Professional Persons incurred after the first Business Day following the Carve-Out Trigger Date in an aggregate amount not to exceed $5,000,000 (the amount set forth in this clause (v) being the "**Post-Carve-Out Notice Amount**" and, together with the Pre-Carve-Out Notice Amount, the "**Carve-Out Amount**"); provided that the Post-Carve-Out Notice Amount shall not be used to pay professional fees or expenses of any official committee appointed in these Chapter 11 Cases other than those of the Creditors' Committee. For purposes of this Interim Order, the "**Carve-Out Notice**" shall mean a written notice (which may be via electronic mail) delivered by the DIP Lender to Weil, Gotshal & Manges LLP ("**Weil**"), as lead restructuring counsel to the Debtors, the U.S. Trustee, and the lead counsel to the Creditors' Committee (if appointed) and any other official committee appointed in the Chapter 11 Cases, which notice may be delivered following the occurrence and

during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Carve-Out has been invoked.

        (c)    <u>Professional Fees Escrow Account</u>. The Debtors are authorized to open a new bank account or designate an existing bank account that shall function as a segregated account held in trust for and exclusively available for the payment of fees and expenses of Professional Persons pursuant to this Interim Order (the "**Professional Fees Escrow Account**"). The Professional Fees Escrow Account shall not be subject to the control of the any DIP Lender, or any of the Prepetition Secured Parties.

        (d)    <u>Pre-Carve-Out Notice</u>. Prior to the delivery of a Carve-Out Notice, not later than 7:00 p.m. Central Time on the third Business Day of each week starting with the first full calendar week following the date of this Interim Order, each Professional Person shall deliver to the Debtors, the DIP Lender, and their respective advisors a weekly statement (each, a "**Weekly Statement**") setting forth a good-faith estimate of the amount of accrued but unpaid fees and expenses incurred by such Professional Person during the preceding week (the "**Weekly Estimated Fees and Expenses**"), and the Debtors shall, on a weekly basis, transfer cash proceeds from amounts previously drawn under the DIP Facility or cash on hand into the Professional Fees Escrow Account in an amount equal to the aggregate amount of Weekly Estimated Fees and Expenses based on the Weekly Statements submitted by each Professional Person (and if no such estimate is provided in a given week, then the amount forecasted for such Professional Person in the Approved Budget) that remain unpaid (and that were not previously funded to the Professional Fees Escrow Account). The Debtors shall use funds held in the Professional Fees Escrow Account exclusively to pay Allowed Professional Fees as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, in accordance with any

interim or final orders of the Court; provided that the Debtors' obligations to pay Allowed Professional Fees shall not be limited or be deemed limited to funds held in the Professional Fees Escrow Account.

(e)     Post-Carve-Out Notice. On the date on which a Carve-Out Notice is delivered in accordance with this paragraph 4 of this Interim Order, (the "**Carve-Out Trigger Date**"), the Carve-Out Notice shall constitute a demand to the Debtors to utilize all cash (including cash on hand, cash available to be drawn under the DIP Facility, and any available cash thereafter held by any Debtor) to fund the Professional Fees Escrow Account in an amount equal to (i) the Pre-Carve-Out Notice Amount and (ii) the Post-Carve-Out Notice Amount ((i) and (ii), each to the extent not previously funded to the Professional Fees Escrow Account). Not later than three (3) Business Days after the delivery of a Carve-Out Notice, each Professional Person shall deliver one (1) additional statement to the Debtors, the DIP Lender, and their respective advisors setting forth a good-faith estimate of the amount of accrued but unpaid fees and expenses incurred by such Professional Person during the period following the period covered by the most recent Weekly Statement previously delivered by such Professional Person through and including the Carve-Out Trigger Date, and the Debtors shall transfer such amounts to the Professional Fees Escrow Account. Notwithstanding anything to the contrary in this Interim Order, the Post-Carve-Out Notice Amount shall promptly be funded into the Professional Fees Escrow Account on the Carve-Out Trigger Date. Notwithstanding anything to the contrary in this Interim Order, the DIP Documents, or the Prepetition Loan Documents, after delivery of a Carve-Out Notice, if the Professional Fees Escrow Account has not been funded with the full Carve-Out Amount within two (2) business days of delivery of such Carve-Out Notice, the DIP Lender shall be required to fund any shortfall.

(f)       Notwithstanding anything to the contrary in this Interim Order, the DIP Documents, or the Prepetition Loan Documents, following delivery of a Carve-Out Notice, the DIP Lender and the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Professional Fees Escrow Account has been fully funded in an amount equal to all respective obligations benefitting from the Carve-Out as set forth herein. The Professional Fees Escrow Account shall not be subject to the control of the DIP Lender or any of the Prepetition Secured Parties, and the funds transferred to the Professional Fees Escrow Account shall not be subject to the DIP Liens or the Adequate Protection Liens, nor constitute DIP Collateral.  If, after paying all amounts set forth in the definition of Carve-Out, the Professional Fees Escrow Account has not been reduced to zero, all remaining funds in the Professional Fees Escrow Account shall be distributed to the Debtors or their estates.

(g)       Notwithstanding anything to the contrary in this Interim Order, the DIP Documents, or the Prepetition Loan Documents, (i) disbursements by the Debtors from the Professional Fees Escrow Account shall not constitute loans or indebtedness under the DIP Documents or the Prepetition Loan Documents or otherwise increase or reduce the DIP Obligations or the Prepetition Secured Obligations, (ii) the failure of the Professional Fees Escrow Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out, (iii) nothing contained herein shall constitute a cap or limitation on the amount that the Professional Persons may assert as administrative expense claims against the Debtors on account of Allowed Professional Fees incurred by such Professional Persons, and (iv) the Carve-Out and the entitlement of the Professional Persons to the Carve-Out and the Professional Fee Escrow Account proceeds shall be senior to all liens and claims, including those securing the DIP Facility,

the Adequate Protections Liens, and the 507(b) Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Obligations.

(h)     <u>Payment of Carve-Out on or After the Carve-Out Trigger Date</u>.  Any payment or reimbursement made on or after the occurrence of the Carve-Out Trigger Date in respect of any Allowed Professional Fees incurred after the occurrence of the Carve-Out Trigger Date shall permanently reduce the Carve-Out Amount on a dollar-for-dollar basis.

(i)     <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the DIP Lender, or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender, or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; provided that nothing herein shall limit the and DIP Lender's obligations to honor its obligations under the DIP Term Sheet and this Interim Order to provide funding to the Debtors and to fund any shortfall as contemplated in paragraph 4(e) above.

5.     *DIP Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations, including the DIP Roll-Up Loans, shall constitute allowed superpriority administrative expense claims (the "**DIP Superpriority Claims**") against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) with, subject to the Carve-Out and the priorities set forth in Prepetition Intercreditor Agreement as amended hereby and by the DIP Documents, priority over any and all claims against the DIP Loan Parties (but for the avoidance of doubt, subject and subordinate to the Carve-Out), now existing or hereafter arising,

of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided that the DIP Superpriority Claims shall at all times have the priority set forth for, and be *pari passu* with, and deemed to constitute part of, the MPT Obligations (as defined in the Prepetition Intercreditor Agreement) under the Prepetition Intercreditor Agreement.  The DIP Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding (x) the Carve-Out Amount and amounts held in the Professional Fees Escrow Account other than the Debtors' reversionary interest therein and (y) claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "**Avoidance Actions**") but including, subject to entry of the Final Order, any proceeds or property recovered as a result of any Avoidance Actions, whether by judgment, settlement or otherwise (the "**Avoidance Proceeds**")), subject to the Carve-Out and the priorities set forth in the Prepetition Intercreditor Agreement.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

6.      *DIP Liens*.  As security for the DIP Obligations, effective and automatically properly perfected on the date this Interim Order is entered, and without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by the

DIP Lender of, or over, any Collateral, without any further action by the DIP Lender, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens (the "**DIP Liens**") are hereby granted to the DIP Lender (all property identified in clauses (a) through (d) below being collectively referred to as the "**DIP Collateral**," and, together with the Prepetition Collateral, the "**Collateral**"):

(a)     *Liens on Unencumbered Property*.   Pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in (subject and subordinate only to the Carve-Out) all tangible and intangible prepetition and postpetition property of the DIP Loan Parties, whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, that, on or as of the Petition Date, is not subject to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, other than the Avoidance Actions, real property owned by the MPT Lessors, and the Carve-Out Amount and any amounts held in the Professional Fees Escrow Account, but including the Avoidance Proceeds (subject to entry of the Final Order) and any proceeds of the Debtors' interests in certain real property owned by the MPT Lessors, including any proceeds of the Debtors' interests realized in connection with the disposition of the Debtors' interests in such real property leaseholds with the MPT Lessors (collectively, the "**Unencumbered Property**").   For the avoidance of doubt, the MPT Lessors' interests in the MPT Exclusive Collateral (as defined in the Prepetition Intercreditor Agreement) is not Unencumbered Property and the liens and security interests granted herein do not attach to the MPT Lessors' fee interest or leasehold interest in the real property and improvements subject to the Master Leases.

(b)  *Liens With Equal Priority to Certain Prepetition Secured Parties' Liens*. Pursuant to section 364(d)(i) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest (subject and subordinate to the Carve-Out) in, and lien upon, all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature, scope, and type as the Prepetition ABL/FILO Priority Collateral and the MPT Exclusive Collateral regardless of where located (the "**DIP Pari Liens**") which DIP Pari Liensshall at all times be *pari passu* with the MPT Prepetition Liens. .

(c)  *Liens Junior to Certain Other Liens*.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all tangible and intangible prepetition and postpetition property of the DIP Loan Parties that, on or as of the Petition Date, is subject to Prepetition Permitted Senior Liens, which shall be (y) with respect to the Prepetition ABL/FILO Priority Collateral, immediately junior and subordinate to the Prepetition ABL/FILO Liens and the Prepetition Bridge Liens and (z) with respect to the Prepetition MPT Priority Collateral, immediately junior and subordinate to the Prepetition MPT Liens, the Prepetition ABL/FILO Liens and the Prepetition Bridge Liens; provided that, notwithstanding clause (z) above, the liens securing the DIP Roll-Up Loans on the Prepetition MPT Priority Collateral shall be *pari passu* with the "MPT Obligations".

(d)  *No Senior Liens*.  Notwithstanding anything herein to the contrary, the DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Interim Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other

governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties, or (C) any intercompany liens; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.

(e)     *Excluded Assets*. Notwithstanding the foregoing, the liens granted pursuant to this Interim Order shall not attach to any Excluded Assets, and no Excluded Assets shall constitute DIP Collateral.[7]

7.     *Protection of DIP Lender's and Prepetition Secured Parties' Rights.*

(a)     So long as there are any DIP Obligations outstanding or the DIP Lender has any outstanding DIP Commitments, the Prepetition Secured Parties and affiliates thereof (including MPT Noteholder (as defined in the First Day Declaration)) shall, subject to the Intercreditor Agreement: (i) have no right to and shall take no action to foreclose upon, or recover

---

[7]     "**Excluded Assets**" means (a) any general intangible, lease, license, contract, or agreement (or any of its rights or interests thereunder) if and to the extent that the grant of the security interest shall, after giving effect to Sections 9-406, 9-407, 9-408 or 9-409 of the UCC (or any successor provision or provisions), the Bankruptcy Code or any other applicable law, constitute or result in (i) a violation of applicable law, (ii) the abandonment, invalidation or unenforceability of any right, title or interest of any Debtor therein or (iii) a breach or termination pursuant to the terms of, or a default under, any such general intangible, lease, license, contract, property rights or agreement; (b) any other property, general intangible, lease, license, contract, or agreement (or any of its rights or interests thereunder) if and to the extent that any applicable law or regulation prohibits the creation of a security interest thereon (other than to the extent that any such term would be rendered ineffective pursuant to Sections 9-406, 9-407, 9-408 or 9-409 of the UCC (or any successor provision or provisions) of any relevant jurisdiction, the Bankruptcy Code or any other applicable law or principles of equity); (c) any "intent to use" trademark applications for which a statement of use or amendment to allege use has not been filed with and accepted by the United States Patent and Trademark Office but only to the extent that the grant of security interest and lien would impair the validity or enforceability of such trademark applications; (d)(A) any equity interests of any subsidiary of any Debtor to the extent that the grant or perfection of a pledge of such equity interests would be prohibited by applicable law or would require the consent of any governmental or regulatory authority which has not been obtained; provided, that once consent has been obtained such equity interests shall no longer be Excluded Assets, and (B) any equity interests of any non-profit subsidiary and any subsidiary that is not wholly-owned by a Debtor and in which the Debtors own in aggregate less than 80% of the voting stock of such subsidiary if and to the extent that (1) the grant of such security interest is prohibited by the underlying organizational documents of such entity, after giving effect to Sections 9-406, 9-407, 9-408 or 9-409 of the UCC (or any successor provision or provisions) and any applicable provisions of the Bankruptcy Code and (2) in the case of any such non wholly owned subsidiary, such prohibition was binding at the time of its acquisition and was not incurred in contemplation of such acquisition; and any ABL/FILO Exclusive Collateral (as defined in the Prepetition Intercreditor Agreement and the FILO Bridge Exclusive Collateral (as defined in the Prepetition Intercreditor Agreement). "**UCC**" means the Uniform Commercial Code as in effect from time to time in the State of New York or any other state the laws of which are required to be applied in connection with the issue of perfection of security interests.

in connection with, the liens granted thereto pursuant to the Prepetition Loan Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against the DIP Collateral, including in connection with the Adequate Protection Liens, or against any collateral pledged to secure the obligations under the Investor Note (as defined in the First Day Declaration) or otherwise seek to pursue any remedies in connection with the Investor Note; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, any DIP Collateral to the extent such transfer, disposition, sale or release is authorized under the DIP Documents or consented to by the DIP Lender; (iii) not file any financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral other than (x) as may be required by applicable law, to perfect the liens granted pursuant to this Interim Order or (y) as may be required by applicable state or foreign law to complete a previously commenced process of perfection or to continue the perfection of valid and non-avoidable liens or security interests existing as of the Petition Date; and (iv) deliver or cause to be delivered, at the DIP Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Secured Party or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of the DIP Collateral subject to any sale or disposition permitted by the DIP Documents and this Interim Order.

(b)     Upon the occurrence and during the continuation of an Event of Default that has not been waived by the DIP Lender and following delivery of written notice (a "**Termination Notice**") (including by e-mail) on not less than ten (10) business days' notice (such ten (10) business day period, the "**DIP Remedies Notice Period**") to the Debtors, Weil, as lead restructuring counsel to the Debtors, lead restructuring counsel to each of the Prepetition Agents,

lead restructuring counsel to the Prepetition MPT Secured Party, and lead counsel to the Creditors' Committee (if appointed), and the U.S. Trustee, (the "**Remedies Notice Parties**"), the DIP Lender may (and any automatic stay otherwise applicable to the DIP Lender, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the terms of this Interim Order (including this paragraph) is hereby modified), without further notice to, hearing of, or order from this Court, to the extent necessary to permit the DIP Lender to, unless the Court orders otherwise (*provided* that during the DIP Remedies Notice Period, the Debtors, the Creditors' Committee (if appointed), and/or any party in interest shall be entitled to seek an emergency hearing with the Court for the purpose of contesting whether, in fact, an Event of Default has occurred and is continuing and, if so, the appropriate relief therefor and, or to obtain non-consensual use of Cash Collateral and provided further that if a request for such hearing is made prior to the end of the DIP Remedies Notice Period, then the DIP Remedies Notice Period shall be continued until the Court hears and rules with respect thereto): (a) immediately terminate and/or revoke the Debtors' right under this Interim Order and any other DIP Documents to use any Cash Collateral (subject to the Carve-Out, Professional Fees Escrow Account, and related provisions); (b) terminate the DIP Facility and any DIP Document as to any future liability or obligation of the DIP Secured Party but without affecting any of the DIP Obligations or the DIP Liens securing such DIP Obligations; (c) declare all DIP Obligations to be immediately due and payable; and (d) invoke the right to charge interest at the default rate under the DIP Documents.  Upon delivery of such Termination Notice by the DIP Lender, without further notice or order of the Court, the DIP Secured Party' and the Prepetition MPT Secured Party's consent to use Cash Collateral and the Debtors' ability to incur additional DIP Obligations hereunder will, subject to the expiration of the DIP Remedies Notice Period and unless otherwise ordered by the Court, automatically terminate

and the DIP Secured Party will have no obligation to provide any DIP Loans or other financial accommodations (other than for amounts necessary to fund the Professional Fee Escrow Account and Carve-Out). The Debtors shall continue to have the right to use the proceeds of the DIP Loans to fund operations and administrative expenses in accordance with the terms of this Interim Order and the Approved Budget (including any Permitted Variances).

(c)    Following an Event of Default and the delivery of the Termination Notice, but prior to exercising the remedies set forth in this sentence below or any other remedies (other than those set forth in paragraph 7(a)), the DIP Secured Party shall be required to file a motion with the Court seeking emergency relief (the "**Stay Relief Motion**") on not less than ten (10) business days' written notice to the Remedies Notice Parties (which may run concurrently with the DIP Remedies Notice Period) for a further order of the Court fashioning any appropriate remedy, including modifying the automatic stay in the Chapter 11 Cases to permit the DIP Secured Party to, subject to the Intercreditor Agreements, and the Carve-Out and related provisions, exercise any rights or remedies permitted under this Interim Order, the DIP Documents or applicable law. Until such time that the Stay Relief Motion has been adjudicated by the Court, the Debtors may use the proceeds of the DIP Facility to the extent drawn prior to the occurrence of an Event of Default and Cash Collateral to fund operations in accordance with the Approved Budget (including Permitted Variances) and the terms of the DIP Documents.

(d)    To the extent that any Prepetition Secured Obligations are outstanding, upon the occurrence of any of the below events (any such event being deemed an Event of Default under this Interim Order, and a "**Cash Collateral Termination Event**"), the Prepetition ABL/FILO Administrative Agent, the Prepetition Bridge Agent, or the MPT Secured Parties, on not less than ten (10) business days' written notice to the Remedies Notice Parties (such ten (10)

business day period, the "**Prepetition Secured Remedies Notice Period**"), and unless the Court orders otherwise (*provided* that during the Prepetition Secured Remedies Notice Period, the Debtors, the Creditors' Committee (if appointed), any DIP Secured Party, or any other Prepetition Secured Party shall be entitled to seek an emergency hearing with the Court for the purpose of contesting whether, in fact, a Cash Collateral Termination Event has occurred and is continuing and, if so, the appropriate relief therefor and/or to obtain non-consensual use of Cash Collateral), may terminate its and the applicable Prepetition Secured Parties' consent to the Debtors' use of Cash Collateral constituting Prepetition ABL/FILO Priority Collateral, Prepetition Bridge Priority Collateral, or Prepetition MPT Priority Collateral, as applicable: (i) the filing of any motion or pleading by the Debtors, or the entry of an order on account of a motion filed by any other party, to stay, vacate, reverse, amend or modify the Interim Order or Final Order in a manner materially adverse to the Prepetition MPT Secured Party without the consent of the Prepetition MPT Secured Party, (ii) the entry of an order appointing a trustee, receiver or examiner with expanded powers with respect to any of the Debtors; (iii) the Debtors shall attempt to invalidate, reduce or otherwise impair the applicable Prepetition Secured Obligations without the consent of the applicable Prepetition MPT Secured Party in accordance with the applicable Prepetition MPT Loan Documents; (iv) the  the dismissal of any of the Chapter 11 Cases; (v) the conversion of any of the Chapter 11 Cases to a case under chapter 7; or (v) the delivery of a Carve-Out Notice as provided in this Interim Order.

(e)     No rights, protections or remedies of the DIP Secured Party or the Prepetition Secured Parties granted by this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of

the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order (other than the Final Order) or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

8.      *Limitation on Charging Expenses Against Collateral*.   Subject to the entry and terms of the Final Order, except to the extent of the Carve-Out and the Professional Fee Escrow, without the prior written consent of the Prepetition MPT Secured Party or the DIP Lender,  no costs or expenses of administration of these cases or any Successor Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or Prepetition Collateral (in each case, including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, , and nothing contained in this Interim Order shall be deemed to be a consent by the Prepetition MPT Secured Party or the DIP Lender to any charge, lien, assessment or claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

9.      *No Marshaling.*  Subject to the terms of the Final Order, (a) in no event shall the DIP Lender or the Prepetition MPT Secured Party be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition MPT Secured Obligations, or the Prepetition Collateral, as applicable, and (b) in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the Prepetition MPT Secured Party; *provided that*, the DIP Lender will seek recourse from other DIP Collateral prior to proceeding against Avoidance Proceeds.

10.      *Payments Free and Clear*.  Any and all payments or proceeds remitted to the DIP Secured Party or Prepetition MPT Secured Party pursuant to the provisions of this Interim Order,

the DIP Documents or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, subject to entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by through or on behalf of the Debtors.

11.     *Use of Cash Collateral*.   The Debtors are hereby authorized to use all Cash Collateral in accordance with this Interim Order, the DIP Documents and Approved Budget (subject to Permitted Variances).

12.     *Reservation of Rights*. Notwithstanding anything herein to the contrary, and solely with respect to the Prepetition ABL/FILO Secured Parties and Prepetition Bridge FILO Lenders, the Debtors reserve all of their rights and nothing herein shall prejudice the Debtors' ability, to seek (a) further use of Cash Collateral on any terms and conditions, (b) to the extent that any cash payment as adequate protection to the Prepetition Bridge Secured Parties is not allowed under section 506(b) of the Bankruptcy Code, to recharacterize and apply such payment toward principal owed under the Prepetition Bridge Loan Documents, (c) a surcharge pursuant to section 506(c) of the Bankruptcy Code, (d) marshalling with respect to the Prepetition ABL/FILO Loan Documents and Prepetition Bridge Loan Documents, (e) relief under section 552(b) of the Bankruptcy Code. The Prepetition ABL/FILO Secured Parties and Prepetition Bridge Secured Parties rights to oppose any such relief are preserved.  For the avoidance of doubt, nothing herein shall permit the Debtors to take any action inconsistent with the Interim DIP Order or DIP Term Sheet.

13.     *Adequate Protection of Prepetition Secured Parties*.  Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, as adequate protection of their respective interests in the Prepetition Collateral (including Cash Collateral) for any Diminution in Value and

the use of their Cash Collateral, the Prepetition Secured Parties are granted the following Adequate Protection (collectively, the "**Adequate Protection Obligations**"), in each case, to the extent that the applicable Prepetition Secured Obligations are outstanding:

(a)     *ABL/FILO Adequate Protection Liens*.   The Prepetition ABL/FILO Administrative Agent is hereby granted, for the benefit of the Prepetition ABL/FILO Secured Parties, effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien solely to the extent of any Prepetition ABL/FILO Secured Parties' Diminution in Value upon all of the DIP Collateral (the "**ABL/FILO Adequate Protection Liens**"), subject to the Carve-Out and with the same priority as the Prepetition ABL/FILO Liens.

(b)     *Prepetition ABL/FILO Secured Parties' Section 507(b) Claim*.   The Prepetition ABL/FILO Administrative Agent, for the benefit of the Prepetition ABL/FILO Secured Parties, is hereby granted an allowed superpriority administrative expense claim against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) solely to the extent of any of the Prepetition ABL/FILO Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "**ABL/FILO 507(b) Claim**") which ABL/FILO 507(b) Claim shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding Avoidance Actions but including, without limitation, subject to entry of the Final Order, the Avoidance Proceeds), subject and subordinate to the Carve-Out (and claims related thereto) and subject to the priorities set forth in the Prepetition Intercreditor Agreement, and which shall have the same priority as the Prepetition ABL/FILO Secured Obligations.  Other than the Carve-Out (and claims related thereto) and as set forth in the Prepetition Intercreditor Agreement and the

preceding sentence, the ABL/FILO 507(b) Claim shall be senior to all other claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment..

      (c)    *Prepetition ABL/FILO Secured Parties' Fees and Expenses*.  The DIP Loan Parties shall currently pay, in cash, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of Milbank LLP ("**Milbank**"), as counsel to certain of the Prepetition FILO Lenders, Houlihan Lokey, Inc. ("**Houlihan**"), as financial advisor to the Prepetition ABL/FILO Lenders, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("**Mintz**" and, together with Milbank, Houlihan, and BRG, the "**FILO Advisors**"), as regulatory counsel to the Prepetition ABL/FILO Lenders, Paul Hastings LLP ("**Paul Hastings**") as counsel to the ABL Lenders (other than the First Out Tranche A Lender), Berkeley Research Group, LLC ("**BRG**"), as consultant to certain of the Prepetition ABL/FILO Lenders, and Otterbourg P.C. ("**Otterbourg**" and, together with Milbank, Houlihan, BRG, Mintz, and Paul Hastings, the "**ABL/FILO Advisors**"), as counsel to the First Out Tranche A Lender (collectively, the "**ABL/FILO Adequate Protection Fees and Expenses**"), subject to the review procedures set forth in paragraph 17 of this Interim Order.

      (d)    *Bridge Adequate Protection Liens*.  The Prepetition Bridge Agent is hereby granted, for the benefit of the Prepetition Bridge Secured Parties, effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien solely to the extent of any Prepetition Bridge Secured

Parties' Diminution in Value upon all of the DIP Collateral (the "**Bridge Adequate Protection Liens**"), subject to the Carve-Out and with the same priority as the Prepetition Bridge Liens.

(e)     *Prepetition Bridge Secured Parties' Section 507(b) Claim*.  The Prepetition Bridge Agent, for the benefit of the Prepetition Bridge Secured Parties, is hereby granted an allowed superpriority administrative expense claim against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) solely to the extent of any Prepetition Bridge Secured Parties' Diminution in Value under section 507(b) of the Bankruptcy Code (the "**Bridge 507(b) Claim**") which Bridge 507(b) Claim shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding Avoidance Actions but including, without limitation, subject to entry of the Final Order, the Avoidance Proceeds), subject and subordinate to Carve-Out (and the claims related thereto), and subject to the priorities in the Prepetition Intercreditor Agreement, and which shall have the same priority as the Prepetition Bridge Obligations.  Other than Carve-Out (and the claims related thereto) and as set forth in the Prepetition Intercreditor Agreement and the preceding sentence, the Bridge 507(b) Claim shall be senior to all other claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

(f)     *MPT Adequate Protection Liens*.  The Prepetition MPT Secured Party is hereby granted, effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid, perfected replacement security interest in and lien on account of the Prepetition MPT Secured Party's Diminution in Value upon all of the DIP Collateral

(the "**MPT Adequate Protection Liens**" and, together with the ABL/FILO Adequate Protection Liens and the Bridge Adequate Protection Liens, the "**Adequate Protection Liens**"), which shall have the priority of the MPT Obligations as set forth in the Prepetition Intercreditor Agreement.

(g)     *Prepetition MPT Secured Party's Section 507(b) Claim*.  The Prepetition MPT Secured Party is hereby granted an allowed superpriority administrative expense claim against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) on account of the Prepetition MPT Secured Party's Diminution in Value under section 507(b) of the Bankruptcy Code (the "**MPT 507(b) Claim**" and, together with the ABL/FILO 507(b) Claim and the Bridge 507(b) Claim, the "**507(b) Claims**"), which MPT 507(b) Claim shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding Avoidance Actions but including, without limitation, subject to entry of the Final Order, the Avoidance Proceeds), subject and subordinate to the Carve-Out (and the claims related thereto) and the priorities set forth in the Prepetition Intercreditor Agreement and which shall have the priority of the MPT Obligations as set forth in the Prepetition Intercreditor Agreement.  Other than the Carve-Out (and the claims related thereto) and as set forth in the Prepetition Intercreditor Agreement the preceding sentence, the MPT 507(b) Claim shall be senior to all other claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

(h)     *Prepetition MPT Secured Party's Fees and Expenses*.  As further adequate protection, subject solely to the Carve-Out, the DIP Loan Parties shall currently pay, in cash, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the

MPT Advisors and one local legal counsel in each applicable jurisdiction (if reasonably required) (collectively, the "**MPT Adequate Protection Fees and Expenses**" and, together with the ABL/FILO Adequate Protection Fees and Expenses and the Bridge Adequate Protection Fees and Expenses, the "**Adequate Protection Fees and Expenses**"), subject to the review procedures set forth in paragraph 17 of this Interim Order.  The MPT Adequate Protection Fees and Expenses, MPT Adequate Protection Liens, and MPT 507(b) Claims shall be collectively referred to herein as the "**MPT Adequate Protection Obligations**").

(i)      *Payment of Interest to Prepetition ABL/FILO Secured Parties*.  The Debtors shall pay to the Prepetition ABL/FILO Secured Parties payment-in-kind interest in respect of the Prepetition ABL/FILO Obligations at the rates and times provided for in the Prepetition ABL/FILO Loan Documents at the contract rate.

14.      *Maintenance of Collateral*.  The DIP Loan Parties shall continue to maintain and insure the Prepetition Collateral and DIP Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Loan Documents and the DIP Documents, as applicable.

15.      *Perfection of DIP Liens and Adequate Protection Liens*.  This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of the DIP Liens and the Adequate Protection Liens granted and created hereunder, and, subject to the Court's ability to unwind the DIP Roll-Up, such security interests and liens shall constitute valid, automatically perfected and unavoidable security interests and liens, with the priorities set forth herein, effective as of the date of this Interim Order, without the necessity of executing deposit account control agreements or creating, filing, recording, or serving any financing statements, mortgages, or other documents that might otherwise be required under federal or state law in any

jurisdiction or the taking of any other action to validate or perfect the DIP Liens granted to the DIP

Lender or Adequate Protection Liens granted to the MPT Prepetition Secured Party hereunder.

16.    *Preservation of Rights Granted Under this Interim Order.*

(a)    Other than the claims and liens expressly granted or permitted by this

Interim Order, including the Carve-Out and the Prepetition Permitted Senior Liens or any claims

and liens contemplated by the bidding procedures contemplated by the DIP Term Sheet, no claim

or lien having a priority superior to or *pari passu* with those granted by this Interim Order shall be

permitted while any of the DIP Obligations, the MPT Adequate Protection Obligations or the MPT

Lease Claims remain outstanding, and, except as otherwise expressly provided in or permitted

under this Interim Order, the DIP Liens and the MPT Adequate Protection Liens shall not be: (i)

junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors'

estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with

any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or

otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date

including, without limitation, any liens or security interests granted in favor of any federal, state,

municipal or other domestic or foreign governmental unit (including any regulatory body),

commission, board or court for any liability of the DIP Loan Parties; or (iv) junior to any

intercompany liens or security interests of the DIP Loan Parties.

(b)    The occurrence and continuance of any Event of Default under and as

defined in the DIP Documents shall, after written notice by the DIP Lender to the Borrower,

counsel to the Borrower, the U.S. Trustee, and lead counsel to the Creditors' Committee (if any)

constitute an event of default under this Interim Order (each an "**Event of Default**") and, upon

such notice, interest, including, where applicable, default interest, shall accrue and be payable as

set forth in the DIP Term Sheet.  Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting these cases to cases to a Successor Case: (A) the DIP Superpriority Claims, the 507(b) Claims, the DIP Liens, the Adequate Protection Liens, and the Prepetition MPT Liens shall continue in full force and effect, shall maintain their priorities as provided in this Interim Order, and shall remain binding on all parties in interest until all DIP Obligations and Adequate Protection Obligations shall have been paid in full (other than those that constitute Unasserted Contingent Obligations (as defined in the Prepetition Intercreditor Agreement) and until all Prepetition MPT Secured Obligations have been paid in full (other than those that constitute Unasserted Contingent Obligations (as defined in the Prepetition Intercreditor Agreement)); (B) the other rights granted by this Interim Order, including with respect to the Carve-Out, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(c)      If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, priority, or enforceability of any DIP Obligations or MPT Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Lender or Prepetition MPT Secured Party, as applicable, of the effective date of such reversal, modification, vacatur, or stay; or (ii) the validity, priority, and enforceability of the DIP Liens, the Prepetition MPT Liens, the MPT Adequate Protection Liens, and the Carve-Out.  Notwithstanding any such reversal, modification, vacatur or stay, the DIP Obligations, DIP Liens, MPT Adequate Protection Obligations, MPT Adequate Protection Liens, DIP Superpriority Claims, and the MPT 507(b) Claims incurred prior to the actual receipt of written notice by the DIP Lender or the Prepetition

MPT Secured Party, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Party and the Prepetition MPT Secured Party shall be entitled to, and are hereby granted, all the rights, remedies, privileges and benefits arising under sections 364(e) and 363(m) of the Bankruptcy Code.

(d)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims, and all other rights and remedies of the DIP Secured Party and the MPT Prepetition Secured Party granted by this Interim Order and the DIP Documents, as well as the Carve-Out, shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting or dismissing any of these cases, or terminating the joint administration of these cases; or (ii) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents).  The terms and provisions of this Interim Order and the DIP Documents shall continue in full force and effect in these cases and in any Successor Cases until all DIP Obligations and MPT Adequate Protection Obligations are indefeasibly paid in full in cash (other than those that constitute Unasserted Contingent Obligations (as defined in the Prepetition Intercreditor Agreement), the DIP Commitments have been terminated, and all Prepetition Secured Obligations have been paid in full (other than those that constitute Unasserted Contingent Obligations (as defined in the Prepetition Intercreditor Agreement).  Any confirmation order entered in these cases shall not discharge or otherwise affect in any way the joint and several obligations of the DIP Loan Parties to the DIP Lender under the DIP Facility and the DIP Documents, other than after (x) the payment in full and in cash of all DIP Obligations and the

termination of the DIP Commitments or (y) the occurrence of the effective date of such confirmed plan (solely in accordance with the terms of such plan).

17.    *Payment of Fees and Expenses*.  The DIP Loan Parties are authorized and directed to pay the Adequate Protection Fees and Expenses, subject to the terms herein.  Subject to the review procedures set forth in this paragraph 17, payment of the Adequate Protection Fees and Expenses shall not be subject to allowance or review by the Court.  Professionals for the DIP Secured Party and the Prepetition Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines; however, any time that such professionals seek payment of fees and expenses from the Debtors prior to confirmation of a chapter 11 plan, each such professional shall provide summary copies of its invoices (including aggregate amounts of fees and expenses and total amount of time on a per-professional basis and such professional's applicable rates) and a summary of the services provided in reasonable detail, which are not required to contain time detail and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, to the DIP Loan Parties, counsel to any statutory committee, and the U.S. Trustee (together, the "**Review Parties**"); *provided, however*, that (i) the provision of such invoices shall not constitute a waiver of the attorney client privilege or of any benefits of the attorney work product doctrine or any other evidentiary privilege or protection recognized under applicable law; and *provided further that,* the U.S. Trustee and any the Creditors' Committee shall have the right to request additional details regarding the services rendered and expenses incurred by such professionals (each an "**Information Request**").  Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) calendar days after

receipt (the "**Review Period**"), which shall not be extended by the delivery of an Information Request.  If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the last date of the Review Period, the Debtors shall pay such invoices within five (5) business days.  If an objection to a professional's invoice is received within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice without the necessity of filing formal fee applications, regardless of whether the invoiced amount arose or was incurred before or after the Petition Date, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Notwithstanding the foregoing, the Debtors are authorized and directed to pay, following the presentment of an invoice as detailed above, on or after the Closing Date, any costs, fees, expenses (including reasonable and documented legal fees and expenses) incurred by the DIP Lender in connection with the DIP Documents, whether arising before or after the Petition Date, which costs, fees and expenses shall not be subject to the Review Period.  No attorney or advisor to the DIP Lender or any Prepetition Secured Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  Subject to a successful Challenge, any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to (i) the DIP Secured Party in connection with the DIP Facility, and (ii) Prepetition MPT Secured Party in connection with these cases, are hereby approved in full and shall not be subject to recharacterization, avoidance, subordination, disgorgement or any similar form of recovery by the Debtors or any other person.

18.    *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon the Debtors.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall

be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a) such committee or other party in interest with requisite standing has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein) by no later than (i) the earlier of (w) one business day before the hearing approving a sale of substantially all of the Debtors' assets or confirming a plan of reorganization, (x) as to the Creditors' Committee only, 60 calendar days after the appointment of the Creditors' Committee, (y) if a chapter 7 or a chapter 11 trustee is appointed or elected prior to the end of the Challenge Period (as defined below), the Challenge Period solely for any such chapter 7 trustee or chapter 11 trustee shall be extended to the date that is the later of (A) 60 calendar days after entry of this Interim Order, or (B) the date that is 30 calendar days after their appointment, and (z) for all other parties in interest, 60 calendar days after entry of this Interim Order; and (ii) any such later date as (y) has been agreed to in writing (which may be by email) by the Prepetition MPT Secured Party with respect to the Prepetition MPT Secured Obligations, the Master Leases, or the Prepetition MPT Liens, or (z) has been ordered by the Court for cause upon a motion filed and served within any applicable period (the time period established by the foregoing clauses (i)-(ii), the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition MPT Secured Obligations, the Prepetition MPT Liens, or the Master Leases, or (B) asserting or prosecuting any Avoidance Action or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against any Prepetition Secured MPT Parties or MPT Lessors or their respective subsidiaries, affiliates, officers, directors,

managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (collectively, the "**Representatives**") in connection with or related to the Prepetition MPT Loan Documents, the Prepetition MPT Secured Obligations, the Prepetition MPT Liens, the Prepetition MPT Collateral, and the Master Leases; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge; *provided*, *however*, that any pleadings filed in connection with a Challenge shall set forth with specificity the basis for such Challenge and any Challenges not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.  If no Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such Challenge then: (1) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding on all parties in interest; (2) the obligations of the Prepetition Loan Parties under the Prepetition Loan Documents shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise, except as provided in the Intercreditor Agreements), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in these cases and any Successor Case(s); (3) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual (other than as provided in the Intercreditor Agreements), or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation

by any person or entity, including any statutory or non-statutory committees appointed or formed in these cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in these cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition MPT Secured Parties and their Representatives shall be deemed forever waived, released and barred.  If any Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any person or entity (each as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Prepetition MPT Loan Documents, Prepetition MPT Secured Obligations or Prepetition MPT Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay confirmation of any plan of reorganization in these cases.  The Court may fashion any appropriate

remedy following a successful Challenge, including, without limitation, an unwinding of the DIP Roll-Up, if appropriate.

19.      *Limitation on Use of DIP Financing Proceeds and Collateral.*  Notwithstanding any other provision of this Interim Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral (including Cash Collateral) or any portion of the Carve-Out, may be used directly or indirectly, including without limitation through reimbursement of professional fees of any non-Debtor party, in connection with (a) the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the DIP Secured Party, the Prepetition MPT Secured Parties, the MPT Lessors or their respective Representatives (in their capacities as such), or any action purporting to do the foregoing in respect of the DIP Obligations, DIP Liens, DIP Superpriority Claims, Prepetition Secured MPT Obligations, MPT Adequate Protection Obligations, MPT Adequate Protection Liens, MPT 507(b) Claims, MPT Lease Claims or obligations under the Master Leases or (ii) challenging the amount, validity, perfection, priority, characterization or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Obligations, the Prepetition MPT Secured Obligations, MPT Lease Claims, the obligations under the Master Leases and/or liens, claims, rights, or security interests securing or supporting the DIP Obligations granted under the DIP Orders, the DIP Documents or the Prepetition MPT Loan Documents in respect of the Prepetition MPT Secured Obligations, including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise (provided that, notwithstanding anything to the contrary herein, the proceeds of the DIP Loans and DIP Collateral (including Cash Collateral) may be used by the Creditors' Committee to investigate, but not to prosecute, (A) the

claims and liens of the Prepetition MPT Secured Parties and the MPT Lessors and (B) potential

claims, counterclaims, causes of action or defenses against the Prepetition MPT Secured Parties

and the MPT Lessors, up to an aggregate cap of no more than $100,000 (the "**Investigation Cap**"),

(b) attempts to prevent, hinder, or otherwise delay or interfere with the Prepetition MPT Secured

Parties', the MPT Lessors' or the DIP Secured Party's, as applicable, enforcement or realization

on the Prepetition MPT Secured Obligations, Prepetition Collateral, DIP Obligations, DIP

Collateral, MPT Lease Claims, as applicable, and the liens, claims and rights granted to such

parties under the DIP Orders; (c) attempts to seek to modify any of the rights and remedies granted

to the Prepetition MPT Secured Parties, MPT Lessors or the DIP Secured Party under this Interim

Order, the Prepetition MPT Loan Documents, the Master Leases or the DIP Documents, as

applicable, other than in accordance with this Interim Order; or (d) to apply to the Court for

authority to approve superpriority claims or grant liens (other than the liens and claims permitted

by the DIP Documents) or security interests in the DIP Collateral or any portion thereof that are

senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, MPT Adequate Protection

Liens, MPT 507(b) Claims, and MPT Lease Claims in each case unless all DIP Obligations,

Prepetition MPT Secured Obligations, MPT Adequate Protection Obligations, MPT Lease Claims,

and claims granted to the DIP Secured Party and Prepetition MPT Secured Party under this Interim

Order, have been paid in full in cash (other than those that constitute Unasserted Contingent

Obligations (as defined in the Prepetition Intercreditor Agreement)) or otherwise agreed to in

writing by the DIP Lender.   For the avoidance of doubt, this paragraph 19 shall not limit the

Debtors' right to use DIP Collateral to (x) contest that an Event of Default has occurred and/or is

continuing hereunder pursuant to and consistent with paragraph 7 of this Interim Order and/or (y)

pay reasonable and documented fees to prepare for and participate at any hearing held by the Bankruptcy Court regarding any exercise of rights or remedies under the DIP Documents.

20.     *Interim Order Governs*.  In the event of any inconsistency between the provisions of this Interim Order, the DIP Documents or Prepetition Loan Documents, the provisions of this Interim Order shall govern.

21.     *Binding Effect; Successors and Assigns*.   Subject to paragraph 18, the DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these cases, including, without limitation, the DIP Secured Party, the Prepetition Secured Parties, any statutory or non-statutory committees appointed or formed in these cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Party, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns; *provided* that the DIP Secured Party and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee or chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

22.     *Exculpation*.  Nothing in this Interim Order, the DIP Documents, the Prepetition MPT Loan Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Secured Party or Prepetition MPT Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in

connection with their restructuring efforts.  The DIP Secured Party and Prepetition MPT Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral or Prepetition Collateral shall be borne by the Debtors.

23.    *Limitation of Liability*.  In determining to make any loan or other extension of credit under the DIP Documents, to permit the use of the DIP Collateral or Prepetition Collateral (including Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents or Prepetition Loan Documents, as applicable, none of the DIP Secured Party or Prepetition MPT Secured Party shall (a) have any liability to any third party or deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code.  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Party or Prepetition Secured Party of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective Representatives.

24.    *Master Proofs of Claim*.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of these chapter 11 cases or any Successor Cases,

neither the Prepetition MPT Secured Party shall not be required to file proofs of claim in these cases or any Successor Cases in order to assert claims for payment of any of the Prepetition MPT Secured Obligations, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts payable under the Prepetition MPT Loan Documents or this Interim Order. The Debtors' stipulations, admissions and acknowledgments of the claim and liens in respect of the Prepetition Secured Obligations set forth in this Interim Order is deemed to constitute timely proofs of claim in respect of all indebtedness, secured status and claims arising under the Prepetition MPT Loan Documents and this Interim Order. Nonetheless, in order to facilitate the processing of claims, the Prepetition MPT Secured Party is authorized, but not directed or required, to file a master proof of claim in the Debtors' lead case *In re Steward Health Care System LLC*, *et al.*,[8] Case No. 24-90213 (CML) (a "**Master Proof of Claim**"), which shall be deemed to have been filed against each Debtor that is obligated under the applicable Prepetition MPT Secured Obligation. The provisions of this paragraph 24 and the filing of Master Proofs of Claim, if any, are intended solely for the purpose of administrative convenience and shall not affect the right of the Prepetition MPT Secured Party (or its successors in interest) to vote separately on any plan filed in these cases. Any Master Proof of Claim shall not be required to include any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the MPT Prepetition Secured Party, which instruments, agreements or other documents will be provided to the Debtors upon written request to counsel to the MPT Prepetition Secured Party. The DIP Secured Party shall not be required to file proofs of claim with respect to the DIP Obligations.

---

[8]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

25.    *Insurance*.  To the extent that any Prepetition Agent is listed as a loss payee under the insurance policies of any of the DIP Loan Parties, the DIP Lender shall also be deemed to be a loss payee under such insurance policies until the indefeasible payment in full of the DIP Obligations (other than those that constitute Unasserted Contingent Obligations (as defined in the Prepetition Intercreditor Agreement)and termination of the DIP Commitment and shall act in that capacity and distribute any proceeds recovered or received in respect of such insurance policies.

26.    *Credit Bidding*.  Subject to the entry of the Final Order, subject to the lien priorities set forth herein and in the Intercreditor Agreements, and subject to any successful Challenge, and unless the Court for cause orders otherwise, (a) the DIP Lender shall have the right to credit bid, up to the full amount of the DIP Obligations in any sale of the DIP Collateral and (b) subject to and upon entry of the Final Order, the Prepetition MPT Secured Lender shall have the right, consistent with the provisions of the Prepetition MPT Loan Documents, as applicable, to credit bid, up to the full amount of the applicable Prepetition MPT Secured Obligations, in the sale of the applicable Prepetition MPT Collateral, in each case, without the need for further Court order authorizing the same, whether any such sale is effectuated through section 363(k), 1123, or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

27.    *Effectiveness*.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

28.    *Headings*.  Paragraph headings used herein are for convenience only and shall not affect the construction of, or to be taken into consideration in interpreting, this Interim Order.

29.     *Intercreditor Agreement*.  The Prepetition Intercreditor Agreement and Agreement Among Lenders shall be given full force and effect.

30.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

31.     *No Third Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

32.     *Necessary Action*.  The Debtors, the DIP Secured Party and the Prepetition Secured Parties are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Interim Order.  The automatic stay is modified to permit affiliates of the Debtors who are not debtors in these cases to take all actions as are necessary or appropriate to implement the terms of this Interim Order.

33.     *Retention of Jurisdiction*.  This Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

34.     *Final Hearing*.  A final hearing to consider the relief requested in the DIP Motion on a final basis shall be held on [●] (Prevailing Central Time).

35.     *Objections*.  Any objections or responses to the DIP Motion shall be filed on or prior to [●] (Prevailing Central Time).  Any party objecting to the relief sought at the Final Hearing shall file and serve (via mail and e-mail) written objections, which objections shall be served upon (a) the Debtors, and counsel thereto, Weil, Gotshal & Manges LLP, 767 5th Ave, New York , New York 10153, Attn: Ray C. Schrock (ray.schrock@weil.com), Candace M. Arthur

(candace.arthur@weil.com), and David J. Cohen (davidj.cohen@weil.com); (b) counsel to the FILO Lenders, Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn: Michael Price (mprice@milbank.com) and Brian Kinney (bkinney@milbank.com); (c) counsel to the MPT Lender and the Prepetition MPT Secured Party, (i) KTBS Law LLP, 1801 Century Park East, 26th Floor, Los Angeles, California 90067, Attn: Thomas E. Patterson (tpatterson@ktbslaw.com) and Sasha M. Gurvitz (sgurvitz@ktbslaw.com) and (ii) Baker, Donelson, Bearman, Caldwell & Berkowitz P.C., 1901 6th Avenue N., Suite 2600, Birmingham, Alabama, 35203, Attn: Luther P. Crull, III (lcrull@bakerdonelson.com); (d) the Office of the United States Trustee for the Southern District of Texas; (e) if appointed, the Creditors' Committee; (f) the Prepetition ABL/FILO Administrative Agent, and counsel thereto, Paul Hastings LLP, 200 Park Avenue New York, New York 10166, Attn: Kris Hansen (krishansen@paulhastings.com), and (g) Otterbourg P.C., 230 Park Ave, New York, New York 10169, Attn: Andrew Kramer (akramer@otterbourg.com).

36.     The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing and to any party that has filed with this Court a request for notices in these cases.

Dated: _____, 2024
        Houston, Texas

_____
Christopher Lopez
United States Bankruptcy Judge

## Exhibit 1

**DIP Term Sheet**

## Schedule 1

**Initial DIP Budget**