## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM LLC, *et al.*,[1] | Case No. 24-90213 (CML) |
| Debtors. | (Jointly Administered) |

## INFORMATIONAL BRIEF OF THE COMMONWEALTH OF MASSACHUSETTS IN SUPPORT OF RESPONSES TO THE DEBTORS' EMERGENCY MOTIONS

The Commonwealth of Massachusetts ("Massachusetts"), by and through its undersigned counsel, submits this Informational Brief in support of its *Omnibus Response of the Commonwealth of Massachusetts to Certain of the Debtors' Emergency First-Day Motions* filed contemporaneously herewith. In support hereof, Massachusetts submits the *Declaration of Robert Goldstein, Commissioner of the Department of Public Health* attached hereto (the "DPH Decl.").

## BACKGROUND

### I.    *The Steward Bankruptcy*

On May 6, 2024 (the "Petition Date"), Steward Health Care System LLC and its debtor affiliates (collectively, "Steward" or the "Debtors") filed voluntary petitions for relief under chapter 11 of the U.S. Bankruptcy Code. Steward is operating its businesses and managing its properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

Like all States, Massachusetts has a fundamental responsibility to monitor and require health care providers to uphold the highest standard of care. Not only are States like Massachusetts

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

significant payors to hospital and provider systems, like the ones owned and controlled by the Debtors, they are the primary regulators to whom they must account and with whose rules they must comply.

With respect to the Debtors, however, Massachusetts is unique.  Although Massachusetts was the first state to allow the Debtors to operate for-profit hospitals, systematically the Debtors have extracted value from Massachusetts, for among other reasons, to pay substantial dividends to investors and expand their network in other states.

These diversions have threatened to impact the Debtors' hospitals' ability to provide health care within the Commonwealth.  The Debtors' hospitals have been left without adequate resources to timely acquire and maintain needed equipment and infrastructure or even ensure an uninterrupted supply of emergency room drugs.  Many are in disrepair.

Steward enters bankruptcy with its hospitals in Massachusetts compromised by fiscal and operational mismanagement, the nature and scale of which it actively concealed from both the government and the public.  Steward created an untenable situation by over-leveraging its hospitals and imposing exorbitant and unsustainable rental obligations on each hospital.  It is now clear that not long after creating this situation, hospital operations could not bear the excessive rent costs, Steward could not service the debt it had incurred, and Steward started to shirk its obligations to pay vendors and suppliers.   All the while, Steward continued to enrich its investors and management.  Instead of advancing a global solution to stabilize its financial situation, Steward pivoted to a plan to sell its physician network to pay off its landlords and senior lenders, to whom Steward had leveraged all available accounts receivable and, in effect, given nearly exclusive control over the survival of Steward's Massachusetts Hospitals.  Steward has lurched along, sustained only by a series of bridge loans from those landlords and lenders – all the while

continuing to underfund hospital operations and leave suppliers, vendors, and other unsecured obligations unpaid.  As discussed in more detail below, Steward's mismanagement has threatened to endanger patient health and safety.

Massachusetts' responses and limited objections to the Debtors' Emergency First Day motions, therefore, have a singular purpose – to make sure that hospitals in Massachusetts get the full benefit of the Commonwealth's payments for services or of other funds advanced and are adequately and fairly funded to provide healthcare while the process of aligning on a plan for these hospitals and their patients with the Debtors and their constituents is developed and implemented (hopefully quickly).

## II.    *Steward's Operations In Massachusetts*

Steward began in Massachusetts in 2010.  Then owned by private equity firm Cerberus Capital Management LP ("Cerberus"), Steward purchased five (5) hospitals from the non-profit charitable health system Caritas Christi Health Care ("Caritas"):  Carney Hospital ("Carney"), Good Samaritan Medical Center ("Good Samaritan"), Holy Family Hospital ("Holy Family"), Norwood Hospital (currently closed), St. Anne's Hospital ("St. Anne's"), and St. Elizabeth's Medical Center ("St. Elizabeth's").  The sale was led by Caritas CEO Ralph de la Torre, MD, a former cardiac surgeon who became founder and CEO of Steward.  Steward purchased Quincy Medical Center, Morton Hospital ("Morton"), Nashoba Valley Medical Center ("Nashoba"), and Merrimack Valley Hospital (which merged into Holy Family in 2014) in 2011 and New England Sinai in 2012 (which recently closed).

Steward provides health care services to residents of Massachusetts through its current operation of eight (8) acute care hospitals in Massachusetts (collectively, the "Steward Massachusetts Hospitals"):

- St. Elizabeth's is a for-profit, acute-care hospital with patient treatment personnel and facilities located in Brighton, Massachusetts. St. Elizabeth's has 328 licensed beds and serves the Massachusetts communities of Brighton, Taunton, Brockton, Allston, Fall River, and more.[2]

- Holy Family is a for-profit hospital with patient treatment personnel and facilities located at two campuses in Haverhill and Methuen, Massachusetts. Holy Family has 348 licensed beds and serves the Massachusetts communities of Haverhill, Methuen, Lawrence, Salem, Lowell, and more.[3]

- Good Samaritan (commonly referred to in the community by its nickname, "Good Sam") is a for-profit hospital with patient treatment personnel and facilities located in Brockton, Massachusetts. Good Sam has 294 licensed beds and serves the Massachusetts communities of Brockton, Stoughton, Taunton, Bridgewater, Randolph, and more.[4]

- Carney is a for-profit hospital with patient treatment personnel and facilities located in Boston, Massachusetts. Carney has 159 licensed beds and serves the Massachusetts communities of Dorchester Center, Quincy, Dorchester, Mattapan, Brockton, and more.[5]

- St. Anne's is a for-profit hospital with patient treatment personnel and facilities located in Fall River, Massachusetts. St. Anne's has 211 licensed beds and serves the Massachusetts communities of Fall River, New Bedford, Somerset, Westport, Swansea, and more.[6]

- Nashoba Valley is a for-profit hospital with patient treatment personnel and facilities located in Ayer, Massachusetts. Nashoba Valley has 77 licensed beds and serves the Massachusetts communities of Ayer, Groton, Pepperell, Shirley, Townsend, and more.[7]

- Morton is a for-profit hospital with patient treatment personnel and facilities located in Taunton, Massachusetts. Morton has 116 licensed beds and serves the Massachusetts communities of Taunton, Raynham, Middleboro, Lakeville, East Taunton, and more.[8]

---

[2] Massachusetts Hospital Profiles, Data Through Fiscal Year 2021, Massachusetts Center for Health Information and Analysis, https://www.chiamass.gov/assets/docs/r/hospital-profiles/2021/FY21-Massachusetts-Hospital-Profiles-Databook.xlsx.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

4896-1935-6604

The Steward Massachusetts Hospitals represent approximately 25% of all of Steward's hospitals in its national network. The Steward Massachusetts Hospitals play a critical role in addressing health care needs of Massachusetts patients, including inpatient medical and surgical capacity, inpatient behavioral health capacity, maternal and newborn health services, emergency department services, health care services in the South Shore region, and health care services for Medicaid (known in Massachusetts as "MassHealth") and Medicare patients. The discontinuation of any of these services at one or more of the Steward Massachusetts Hospitals could exacerbate Massachusetts's hospital capacity crisis and jeopardize the health and safety of Massachusetts residents.

Steward also provides primary care and coordinates specialty care through the Steward Medicaid Care Network, Inc., an Accountable Care Organization (ACO) within MassHealth's ACO program (the "Steward ACO"). The Steward ACO is among the largest managed care enrollment options in the Commonwealth. Steward's MassHealth ACO operates in 18 service areas, consists of approximately 140 primary care provider practices, and enrolls approximately 108,000 of the Commonwealth's MassHealth members.

The Commonwealth of Massachusetts is a major source of Steward's revenue. In total, on a fee-for-service basis or through managed care plans, MassHealth paid approximately $19-20 million per month to Steward-controlled entities during calendar year 2023 on behalf of MassHealth members, for a total of approximately $264-276 million in 2023. In addition, Steward received over $84 million in supplemental or incentive payments from MassHealth during hospital rate year 2023.

4896-1935-6604

### III.  *Steward's Financial Distress Jeopardizes Patient Safety*

Notwithstanding the substantial payments received from Massachusetts, the Steward Massachusetts Hospitals are in severe financial distress, which has caused the hospitals to fail to pay vendors, including medical supply and staffing vendors, disrupted continuity of care and access to supplies, and threatens to jeopardize patient safety and care.

Since 2022, there have been at least 21 lawsuits filed by vendors and staff against Steward and/or the Steward Massachusetts Hospitals for alleged nonpayment of more than $60 million.[9] In one of these lawsuits, filed in December of 2023 by ProLink Healthcare, LLC ("ProLink"), a staffing and recruiting company, ProLink sought to recover over $45 million owed by Steward.[10]

In addition, in November 2023, the Massachusetts Department of Public Health ("DPH") became aware that three Steward Massachusetts Hospitals owed a collective balance in the amount of $540,908.16 to UMass Chan Medical School's New England Newborn Screening Program for newborn screening tests performed by the program from January 2022 to September 2023. As of April 30, 2024, Steward had accrued additional debt related to this program for a balance of $766, 691.99.  DPH Decl. ¶ 11(a).

Further, on January 9, 2024, DPH learned that Good Sam owes $1.2M to Brockton Hospital for nurses that Brockton Hospital provided on loan to Good Sam. Additionally, Brockton Hospital indicated that it was providing products, including sterile surgical drapes, to other Steward Massachusetts Hospitals.  *Id*. ¶ 11(g).

---

[9]  Massachusetts Superior Court case docket numbers: 2384CV02946; 2384CV02825; 2384CV01998; 2384CV01880; 2384CV01693; 2384CV01625; 2384CV00792; 2284CV02875; 2284CV01568; 2384CV01855; 2284CV02532; 2373CV00736; 2373CV00193; 2377CV01219; 2381CV03005; 2381CV02811; 2381CV02810; 2382CV00964; 2282CV00715; 2483CV00019; 2283CV00440.

[10]  *See* Complaint, *ProLink Healthcare, LLC v. Steward Health Care Sys., LLC*, C.A. No. 23-2825 (Mass. Super. Ct. Dec. 13, 2023).

4896-1935-6604

Steward's mismanagement has interfered with supplies, staff and equipment, and risks impacting patient safety.  On or about October 26, 2023, DPH received an incident report from St. Elizabeth's, informing DPH that on October 17, 2023, a patient who had recently given birth experienced continuous bleeding and required an embolization procedure to stop the flow of blood. *Id*. ¶ 14.  St. Elizabeth's did not have an embolization coil necessary for the procedure.  *Id.* at ¶ 14(b).  The patient was transferred to a different hospital for the procedure where she later died. *Id*.

Initial interviews suggest the vendor had repossessed the coils due to non-payment.  *Id.* During its investigation, DPH became aware from St. Elizabeth's president that the non-payment of the coils was in part due to the hospital's lack of control over its funds and authorization to make payments to its vendors.  *Id*. at ¶ 14(c).  According to the president, the hospital's corporate office determined which vendors to pay and made the payments (or not).  *Id*.  As a result of the onsite investigation, DPH identified an Immediate Jeopardy situation—a situation where a hospital's noncompliance with regulations places the health and safety of its patients at risk for serious injury, harm, impairment or death—due to the hospital's failure to maintain necessary supplies as required by Medicare Conditions of Participation.  In April 2024, DPH conducted a follow-up visit at St. Elizabeth's the results of which are pending review by CMS.

Beginning in February 2024, DPH initiated enhanced monitoring for all of the Steward Massachusetts Hospitals with an increased presence in each facility.  *Id*. ¶ 12.  In April 2024, DPH enlisted a team of additional monitors to begin a comprehensive evaluation of all of these hospitals on its behalf.  *Id*. at ¶ 12(a).  The ongoing monitoring from DPH and a regional team as part of DPH's Incident Command structure are critical investments the Commonwealth is making to ensure high quality and safe care until these facilities transfer to a qualified responsible operator.

4896-1935-6604

Based on the findings of the Department's monitoring, it has become clear that Steward's fiscal challenges have already presented patient safety and health challenges, which to date have been isolated, and DPH has been able to detect and remediate quickly.  These challenges include maintaining the physical premises (e.g., fire safety equipment) as well as  critical supplies and equipment.  For the most part, the cause of any issues the monitors have identified is lack of funding made available to the hospitals from the Steward corporate level.  *Id*.

By way of example, in early April 2024, monitors identified concerning levels of supplies at Good Samaritan that would have limited its ability to function as a trauma center (the only one designated as such in this region).  *Id*. at ¶ 12(d).

Additionally, in late April, one critical vendor threatened to cease servicing its equipment unless Steward made a cash payment by May 1.  *Id.* at ¶ 12(f).  This vendor contacted the Massachusetts Secretary of Health and Human Services and the Commissioner of DPH regarding this outstanding debt.  Further, regarding St. Elizabeth's, Steward identified to DPH 17 vendor accounts that Steward considers "essential" to maintain adequate patient supplies.  As of April 29, 2024, 7 of those 17 accounts are in arrears.

## IV.   *The Systematic Extraction of Value from the Hospitals*

The Steward Massachusetts Hospitals' financial distress is brought on by the intentional extraction of value from the hospitals to fund the expansion of Steward's business and pay massive profits to Steward investors, first; and, then, pay lenders brought on last year to keep the company afloat, as explained below.

In September 2016, Steward announced it had entered a sale-leaseback transaction with Medical Properties Trust ("MPT"), a real estate investment trust.  MPT bought the real estate of Good Sam, Holy Family's Methuen campus, Morton, St. Anne's, and St. Elizabeth's for $600

million from Steward, Steward mortgaged the real estate of Carney, Holy Family's Haverhill campus, Nashoba Valley, and Norwood to MPT for an additional $600 million, and MPT received a $50 million equity stake in Steward. Steward agreed to 15-year leases with automatic annual rent escalation and 15-year mortgages on the mortgaged hospitals. MPT bought the four mortgaged hospitals in 2018 for an additional $42.8 million and leased them back to Steward under the same terms as the 2016 lease of Good Sam, Holy Family's Methuen Campus, Morton, St. Anne's, and St. Elizabeth's.[11]

While Cerberus, the owner of Steward, paid itself and its investors nearly $500 million in dividends from the sale, and used proceeds from the sale to pay off Cerberus's debts and purchase hospitals in other states,[12] the Steward Massachusetts Hospitals assumed the long-term costs of the leases to MPT. In addition to being saddled with long-term, exorbitant rent obligations, the hospitals – while in name a lessee – continued to pay the costs typically associated with property ownership, including real estate taxes, maintenance, and insurance.[13] These transactions stripped the hospitals of their equity and assets.

Steward undertook these financial transactions in order to continue to build its empire. From 2016 to 2019, Steward bought 27 additional hospitals in nine states and financed each through sale-leaseback agreements or mortgages with MPT.[14]

---

[11] Steward Health Care System LLC, Consolidated Financial Statements Years Ended December 31, 2018 and 2017 (Aug 5. 2019), https://www.sec.gov/Archives/edgar/data/1524607/000156459019029464/mpw-ex991_324.htm.

[12] John Herchinger and Sabrina Willmer, *Life and Debt at a Private Equity Hospital*, Bloomberg Businessweek (Aug. 6, 2020), https://web.archive.org/web/20201001140708/https://www.bloomberg.com/news/features/2020-08-06/cerberus-backed-hospitals-face-life-and-debt-as-virus-rages.

[13] *See* Master Lease Agreement between MPT and Steward (October 3, 2016), https://www.sec.gov/Archives/edgar/data/1287865/000119312517065943/d295656dex1033.htm.

[14] *See* Steward Health Care System LLC, Consolidated Financial Statements Years Ended December 31, 2018 and 2017 (Aug 5. 2019), https://www.sec.gov/Archives/edgar/data/1524607/000156459019029464/mpw-ex991_324.htm (26 hospitals); and Medical Properties Trust, Inc, Annual Report (Form 10-K) (March 1, 2021), https://www.sec.gov/Archives/edgar/data/1287865/000156459021009901/mpw-10k_20201231.htm 1(hospital)

In June 2020, Cerberus transferred a controlling interest in Steward to a management group of Steward physicians led by Dr. Ralph de la Torre.  Under the terms of this deal, the physicians would control 90% of Steward and MPT would maintain its approximately 10% financial stake in Steward.  To finance the deal, Steward took on additional debt, this time from Cerberus.[15]

Even after these financial transactions to pay Steward's investors essentially rendered the Massachusetts hospitals insolvent, Steward continued to enter into financial deals that further jeopardized the ability of its Massachusetts hospitals to continue to provide care to their communities.

In early 2021, Steward paid its owners $111 million in a cash distribution.[16]  $11 million went to MPT based on its partial ownership of Steward and $100 million went to the management group of Steward physicians led by de la Torre.  At the same time, MPT lent Steward $335 million so that Steward could pay off the remaining debts to Cerberus.[17]

In 2021, Steward and MPT extended the lease on Steward's hospitals to 2041 under otherwise similar terms to the initial 2016 lease, thus agreeing that it would continue to bear all of the financial obligations of those properties for another 20 years.[18]

In 2022, MPT sold a 50% interest in its Massachusetts Steward-operated hospitals to Macquarie Asset Management.  MPT disclosed that it had extracted more than $475 million in rent and interest from Steward in Massachusetts.  MPT, Macquarie Asset Management, and

---

[15] John Herchinger and Sabrina Willmer, *Life and Debt at a Private Equity Hospital*, Bloomberg Businessweek (Aug. 6, 2020), https://web.archive.org/web/20201001140708/https://www.bloomberg.com/news/features/2020-08-06/cerberus-backed-hospitals-face-life-and-debt-as-virus-rages.

[16] Steward Health Care System LLC, Consolidated Financial Statements Years Ended December 31, 2021 and 2020 (Dec 22. 2022).

[17] Medical Properties Trust, Inc, Quarterly Report (Form 10-Q) (May 10, 2021), https://www.sec.gov/Archives/edgar/data/1524607/000156459021026134/mpw-10q_20210331.htm.

[18] Amended and Restated Lease Agreement (Aug. 27, 2021), https://www.sec.gov/Archives/edgar/data/1524607/000156459021055782/mpw-ex101_157.htm.

4896-1935-6604

Steward separated the leases on Steward Massachusetts Hospitals from the leases on hospitals in other states, but otherwise kept similar terms.[19]

In 2023, Steward's lease rate on its hospitals rose to 9%, meaning that throughout the year Steward would owe over $110 million in rent on its Massachusetts hospitals. Below are the excessive rent rates by hospital:

| Hospital | Lease Base | Lease Rate | Rate As Of | MPT Rent |
|---|---|---|---|---|
| Good Samaritan | $ 104,231,930.24 | 9.00% | 12/31/2023 | $ 9,380,873.72 |
| Holy Family Property | $ 145,359,370.34 | 9.00% | 12/31/2023 | $ 13,082,343.33 |
| Morton Property | $ 100,471,738.89 | 9.00% | 12/31/2023 | $ 9,042,456.50 |
| St. Anne's Property & St. Anne's Fall River Parking Lot | $ 128,653,198.00 | 9.00% | 12/31/2023 | $ 11,578,787.82 |
| St. Elizabeth Property | $ 245,698,859.27 | 9.00% | 12/31/2023 | $ 22,112,897.33 |
| Nashoba Property | $ 100,753,351.64 | 9.00% | 12/31/2023 | $ 9,067,801.65 |
| Holy Family (Merrimack) Property | $ 127,809,569.36 | 9.00% | 12/31/2023 | $ 11,502,861.24 |
| Carney Property | $ 271,204,514.40 | 9.00% | 12/31/2023 | $ 24,408,406.30 |
| Total | | | | $110,176,427.89 |

Utilizing the current Lease Rate for the remaining lease term of 17.5 years would require the Steward Massachusetts Hospitals to pay more than $1.9 billion in future rent. This exorbitant "rent" coupled with Steward's mismanagement significantly impairs the ability of the Steward Massachusetts Hospitals to be financially stable and ensure patient health and safety.

In September 2023, only two years after extending those leases for another 20 years and three years after the Cerberus buy-out, Steward missed making full timely rent payments to MPT for hospitals outside Massachusetts.  In October 2023, Steward paid the remaining September rent, but failed to pay October's rent in full, which MPT expected to receive in November.[20]

On January 4, 2024, MPT announced that Steward was $50 million behind on rent payments and that MPT had agreed to loan Steward $60 million as part of a plan that required Steward to pursue "the potential sale or re-tenanting of certain hospital operations" and to seek "a

---

[19] Press Release, Medical Properties Trust, Inc., Medical Properties Trust Completes Hospital Partnership with Macquarie Asset Management (Mar. 16, 2022), https://medicalpropertiestrust.gcs-web.com/node/14601/pdf.

[20] Medical Properties Trust, Inc, Quarterly Report (Form 10-Q) (Nov. 9, 2023), https://www.sec.gov/Archives/edgar/data/1524607/000095017023062169/mpw-20230930.htm.

third-party capital partner for its managed care business, net proceeds from which will be used in part to repay all outstanding obligations to [MPT]."[21]

## V.        *Steward's Concealment of its Fiscal Instability*

Over the course of Steward's nearly 14 years of operating hospitals in Massachusetts, Steward has actively concealed its financial instability from the government and the public.  For example, since 2014, Steward has refused to comply with M.G.L. c. 12C, which requires disclosure of system-wide consolidated annual financial statements to the Massachusetts Center for Health Information and Analysis ("CHIA").  Such information is used to protect the public's interest by monitoring the financial condition of acute care hospitals, including drivers of "financial distress in the acute hospital industry."  G.L. c. 12C, § 8(c).  Steward's refusal to provide financial information to CHIA is the subject of ongoing litigation.  Steward has appealed a decision by the Superior Court ordering it to provide its financial statements to CHIA.   See Steward Health Care Sys., LLC v. Center for Health Information & Analysis et al., No. 2023-P-1299 (Mass. App. Ct., appeal docketed Nov. 9, 2023).  Concealment of its financial situation continued even as Steward approached the Commonwealth for advance payments to ensure continued operations.

## VI.       *The Pre-Petition Sale Process*

In January, Steward began a process to market and sell the Steward Massachusetts Hospitals and engaged at least two investment banks to run separate sale processes based upon the geographic location of the hospitals.  As with all things Steward, this too was horribly mismanaged.  EOHHS was informed by potential buyers that they were being excluded from participating and the separate processes made it difficult for any single bidder to bid for all of the hospitals.  Despite

---

[21] Press Release, Medical Properties Trust, Medical Properties Trust (MPW) Provides Update on Steward Health Care (Jan. 4, 2024), https://medicalpropertiestrust.gcs-web.com/news-releases/news-release-details/medical-properties-trust-provides-update-steward-health-care.

4896-1935-6604

the constant urging by Massachusetts to Steward to progress the sales process, it has simply dragged on.  The lack of clarity for the future of the Steward Massachusetts Hospitals has also contributed to the serious situation created by Steward.  Indeed, Steward enters bankruptcy without any stalking horse bidders for any of the hospitals.

This situation is further exacerbated by Steward's central control over vendors and suppliers to the hospitals. Steward's bankruptcy petition discloses that it now owes close to $1 billion to unsecured creditors, many of whom are vendors and suppliers to the Steward Massachusetts Hospitals.  Massachusetts is justifiably concerned that Steward's fiscal and operational mismanagement has put patient health and safety at risk and has undermined the viability of the Steward Massachusetts Hospitals.

Despite these concerns, Massachusetts hopes that this chapter 11 process provides the means through which Steward Massachusetts Hospitals can operate through an orderly transition to new owners fully funded, equipped and staffed.  Massachusetts stands ready to work with Steward, MPT and other constituents to align on process and achieve these results, results where Steward no longer operates hospitals in Massachusetts.

Dated: May 7, 2024
     New York, New York

                    Respectfully submitted,
                    COMMONWEALTH OF MASSACHUSETTS,
                    By its attorney,

                    ANDREA JOY CAMPBELL
                    ATTORNEY GENERAL

                    By: */s/ Andrew M. Troop*
                      Andrew M. Troop (Bar No. MA547179)
                      Special Assistant Attorney General

                    Hugh M. McDonald (Bar No. NY2420974)
                    Special Assistant Attorney General

13

PILLSBURY WINTHROP SHAW PITTMAN LLP
Andrew V. Alfano (Bar No. NY5525241)
Alana A. Lyman
31 West 52nd Street
New York, NY 10019
Tel: 212-858-1000
Fax: 212-858-1500

Claire K. Wu
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017
Tel: 213-488-7100
Fax: 213-629-1033

**<u>Certificate of Service</u>**

I certify that on May 7, 2024, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

<u>*/s/ Andrew M. Troop*</u>

**<u>DPH Decl.</u>**

4896-1935-6604

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM LLC, *et al.*,[1] | Case No. 24-90213(CML) |
| Debtors. | |

## DECLARATION OF ROBERT GOLDSTEIN, COMMISSIONER OF THE DEPARTMENT OF PUBLIC HEALTH

I, Robert Goldstein, hereby declare that the following statements are true and correct to the best of my knowledge after due inquiry as described herein:

1.      I am the Commissioner of the Department of Public Health (the "Department").  I have held this position since April 18, 2023.  I hold a BS and PhD from Tufts University, as well as an MD from Tufts University School of Medicine.

2.      Prior to becoming Commissioner of the Department, I worked as a Senior Policy Advisor at the Centers for Disease Control and Prevention and as an infectious disease physician at the Massachusetts General Hospital.  I also served as a faculty member at Harvard Medical School.

3.      I submit this declaration in connection with the Informational Brief by the Commonwealth of Massachusetts in the chapter 11 cases of Steward Health Care System LLC and its affiliated debtors (collectively, "Steward").

---

[1]    A complete list of each of the debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/steward.  The location of Debtor Steward Health Care System LLC's service address is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

4.      I make this declaration as a representative of the Department, in part based on the business records of the Department, in part based on business records and other information made known to the Department, including by one or more representatives of the Steward corporate entities and hospitals, and in part based on my own personal knowledge and experience.  In my official capacity and based on my personal knowledge and other sources of information I have obtained and reviewed in that official capacity, I am familiar with, and, if called upon to do so, would be competent to testify to the facts and circumstances set forth herein.

5.      The Department includes the Bureau of Health Care Safety and Quality ("HCQ").

6.      Within HCQ is the Division of Health Care Facility Licensure and Certification (the "Division"), which, among other duties, is responsible for the licensure of hospitals and for inspecting those facilities for compliance with regulations so that the facilities are safe and patients receive quality care.  The Department is authorized to license these facilities pursuant to Massachusetts General Laws ("M.G.L.") c. 111, § 51.  Included in licensing activities, HCQ requires that hospitals follow the statutorily required process when they close essential health services.  Additionally, the Division acts as the investigative and reporting agent of the Centers for Medicare and Medicaid Services ("CMS").

7.      Further, as part of a prior CMS requirement and current Department requirement, hospitals report capacity information to HCQ, through the Department's WebEOC platform. Hospitals are required to report service level capacity, including staffed and occupied beds for each day.  DPH performs quality assurance on the data then provide it for federal and state use.

8.      The Determination of Need ("DoN") program also sits within HCQ.  The DoN law and regulation governs Health Care Facilities as that term is defined in M.G.L. c 111, § 25B. Under Massachusetts law (M.G.L. c. 111, §§ 25C and 51), proposals for a Substantial Capital

2

4869-8408-7484

Expenditure, Substantial Change in Services and Original Licensure as well as many Transfers of Ownership and Changes in Site for Health Care Facilities must be reviewed and approved under the DoN Regulatory scheme.

9.      Steward operates eight (8) hospitals in the Commonwealth of Massachusetts: (i) Steward St. Elizabeth's Medical Center of Boston, Inc. d/b/a St. Elizabeth's Medical Center; (ii) Steward Holy Family Hospital, Inc. d/b/a Holy Family Hospital; (iii) Steward Good Samaritan Medical Center, Inc. d/b/a Good Samaritan Medical Center; (iv) Steward Carney Hospital, Inc. d/b/a Carney Hospital; (v) Steward Norwood Hospital, Inc. d/b/a Norwood Hospital; (vi) Steward St. Anne's Hospital Corporation, Inc. d/b/a Saint Anne's Hospital; (vii) Morton Hospital, A Steward Family Hospital, Inc. d/b/a/ Morton Hospital; and (viii) Nashoba Valley Medical Center, A Steward Family Hospital, Inc. d/b/a Nashoba Valley Medical Center, A Steward Family Hospital, Inc. (collectively, the "Steward Massachusetts Hospitals").

**Steward's Financial Instability**

10.      Beginning in the Fall of 2023,  the Department has become aware that Steward and the Steward Massachusetts Hospitals are experiencing serious financial difficulties.  Furthermore, the Department has become aware that many contracts for goods and services are hospital system wide and controlled at the corporate level, rather than by the individual hospitals, which is exacerbating the financial and operating difficulties each of the separately licensed hospitals.

11.      The Department is aware of certain missed payments by Steward and other occurrences, which are the result of serious financial issues at the Steward Massachusetts Hospitals:

a.      In November 2023, the Department became aware that three Steward Massachusetts Hospitals had an outstanding balance totaling $540,908.16 to UMass Chan Medical

3

School's New England Newborn Screening Program for newborn screening tests performed by the program from January 2022 to September 2023.[2] As of April 30, 2024, Steward had paid $54,370.60 for calendar year 2024 and still owes $766,691.99.

      b.      In March 2023, the Department became aware that Steward had failed to pay one of its vendors, Fresenius Medical Care ("Fresenius"), and that Fresenius provided notice to Steward that it would terminate their in-hospital dialysis services agreements as a result.[3] In May 2023, Steward conveyed to the Department that the Steward/Fresenius relationship had ended, and dialysis services provided at the impacted hospitals would no longer be contracted out and instead would be provided by hospital staff.

      c.      On December 30, 2022, Good Samaritan Medical Center submitted an application to the Department for DoN approval.  This application was incomplete insofar as Steward did not submit a required Certified Public Accountant ("CPA") report necessary to demonstrate financial stability for the project.  Upon information and belief, the delay for the submission was the result of Steward's failure to provide such documents to the accounting firm. The report was submitted on July 28, 2023, nearly 7 months after the application was initially filed. While the CPA report indicated financial feasibility for the project, the Department began receiving information that contradicted this assessment.  In December 2023, Steward withdrew its application.

      d.      On October 10, 2023, the Department received an email from Core Mental Health, indicating that St. Elizabeth's failed to make a required payment to the organization. As a condition of approval for a DoN in January 2019, St Elizabeth's was required to make payments

---

[2] Good Samaritan Medical Center, Holy Family, St. Elizabeth's Medical Center.
[3] This impacted Holy Family Hospital- Methuen, Carney Hospital, Morton Hospital, Nashoba Valley Medical Center, New England Sinai Hospital, and Saint Anne's Hospital.

of $145,929 over a three-year period to Core Mental Health, a community based health initiative. On November 10, 2023, St. Elizabeth's provided a historical accounting update to the Department but made no reference of their intention to pay their outstanding obligations.  To date, it is the Department's understanding that St. Elizabeth's has not made its year 2 or year 3 required payment.

       e.      Norwood Hospital experienced extreme flooding in June 2020, which resulted in the closure and complete demolition of the hospital.  Norwood Hospital is currently in the process of rebuilding. Originally, Steward had conveyed to the Department that the re-opening date of Norwood Hospital would be in May 2024.  On November 1, 2023, the Department was notified for the first time that due to significant budget issues, the re-opening date of the Hospital would likely be pushed back to March 2025. Because of delays and subsequent slowing of construction, it will be almost 5 years from when the hospital temporarily closed to its projected reopening, during which time Norwood and its surrounding communities have been forced to seek care elsewhere.

       f.      On January 4, 2024, Medical Properties Trust, Inc. ("MPT")[4], issued a press release announcing that Steward Health Care System delayed paying a portion of its September and October rent to MPT and had only been paying partial monthly rent payments. It also stated that Steward's unpaid rent under its master lease with MPT was approximately $50M as of December 31, 2023.

       g.      On January 9, 2024, the Department, through conversations with Signature Brockton Hospital ("Brockton Hospital") about their staff and temporary staffing contracts, learned that Good Samaritan owes $1.2M to Brockton Hospital for nurses that Brockton Hospital

---

[4] MPT is a real estate investment trust that owns the land and facilities where Steward hospitals are located. https://www.medicalpropertiestrust.com/press-release?page=https://medicalpropertiestrust.gcs-web.com/news-releases/news-release-details/medical-properties-trust-provides-update-steward-health-care

provided on loan to Good Samaritan. Additionally, Brockton Hospital indicated that it was providing products, including sterile surgical drapes, to other Steward Massachusetts Hospitals.

**Monitoring of the Steward Massachusetts Hospitals**

12.     Beginning in February 2024, the Department initiated monitoring visits[5] for all eight Steward Massachusetts Hospitals.

      a.     In April 2024, the Department enlisted a team of additional monitors to begin a comprehensive evaluation of all of these hospitals on its behalf.

      b.     As a result of the onsite monitoring visits, the Department has become acutely aware of the dire financial situation of all of the Steward Massachusetts Hospitals. While all of the hospitals meet minimum compliance in terms of necessary supplies, the pattern is deeply concerning.

      c.     The monitors have identified systemic issues regarding Steward's failure to maintain the physical premises of their hospitals including failure to properly maintain fire safety equipment.

      d.     At a monitoring visit conducted at Good Samaritan from April 1-5 2024, the monitors identified concerning levels of supply shortages which limits its ability to function as a trauma center.  Good Samaritan is the only hospital in this region with a trauma designation.

      e.     There appears to be a widespread and systemic pattern of vendor holds for failure to pay outstanding balances throughout the Steward Massachusetts Hospitals at the corporate level. For example, there are a number of broken machines that cannot be serviced due to vendor holds, including elevators, ovens, and a pyxis machine.

---

[5] Pursuant to 105 CMR 130.111, the Department or its agents may visit a hospital subject to licensure under M.G.L. c. 111, § 51 at any time without prior notice and inspect it, its staff, activities, and records to determine the hospital's compliance with state law and 105 CMR 130.000.

f.      Additionally, in April 2024, the Department learned that Steward leases certain major medical equipment, including MRIs and CT scanners, and that they owe back payments to their vendor. The Department further learned that their vendor provided Steward with a deadline of May 1, 2024 to make payment, after which time, the vendor would no longer service the equipment or supply the staff necessary to operate the equipment.

**Steward's Financial Issues are Impacting Quality of Care**

13.      The Department has also learned, in its role as a regulator, of issues arising at Steward Massachusetts Hospitals with respect to quality of care, as a direct result of the hospitals' financial difficulties.

14.      For example, on October 26, 2023, the Department received an incident report from St. Elizabeth's, informing the Department that on October 17, 2023, a patient who had recently given birth experienced continuous bleeding and required an embolization procedure to stop the flow of blood.

a.      The Department initially conducted an onsite investigation beginning on December 18, 2023 and the preliminary findings indicated lack of compliance in the Conditions of Participation ("CoPs").

b.      St. Elizabeth's should have the embolization coil necessary for the procedure; however, no coils were available in the hospital.  Initial interviews suggest that the vendor of the coil had repossessed the coils due to non-payment.  The patient was transferred to a different hospital for the procedure where she later died.

c.      Additionally, during its investigation, the Department became aware from St. Elizabeth's president that the non-payment of the coils was in part due to the hospital's lack of control and authorization to make payments to its vendors. St. Elizabeth's president stated, with

7

respect to St. Elizabeth's bills, the hospital's corporate office determined which vendors to pay and made the payments.  He further stated that he was aware that some bills were not being paid due to financial problems.

        d.      The Department returned to St. Elizabeth's on January 25, 2024 to continue its investigation, which concluded on February 8, 2024.   During those survey visits, the Department found that due to nonpayment, St. Elizabeth's did not have an inventory of certain mechanical heart valves.

     15.     On December 4, 2023, Steward submitted the statutorily required notice, informing the Department that it would be closing the following services in April 2024:[6]

        a.      Saint Anne's Hospital: closing 16 geriatric psychiatric inpatient beds;

        b.      New England Sinai Hospital: closing the hospital, which includes 39 rehabilitation service beds 119 chronic care service beds, and all ambulatory care services;

        c.      New England Sinai Hospital Transitional Care Unit: closing the licensed nursing home.

     16.     I am concerned that the entire Steward hospital system is at risk of financial failure. Steward's organizational chart confirms what has become increasingly apparent to the Department. The corporate governance makes it impossible for individual hospitals to assume full control over their finances or to assume full control over the quality of care they provide their patients.

---

[6] Prior to closing essential services, hospitals must follow the process outlined in 105 CMR 130.122- it requires hospitals closing certain services to provide the Department with notice of the closure such that the Department must hold a hearing, determine if the services are essential, and if they are, require a plan to address access to those services.

**The Abrupt Closure of the Steward Massachusetts Hospitals Would Impact Public Health in Massachusetts**

17.    An abrupt closure of one or more of Steward Massachusetts Hospitals would disrupt access to hospital services.  Already overburdened hospitals currently operating beyond licensed capacity would be required to absorb the additional volume. This decrease in hospital capacity, specifically for emergency services, maternal and newborn services, and inpatient behavioral health, would endanger the lives of patients.

18.    The Department is concerned that the abrupt closure of Steward Massachusetts Hospitals or hospital services will disproportionately disadvantage low-income and older residents. A high public payor mix indicates that many patients served are insured by MassHealth or Medicare or are uninsured. The state standard for being considered a high public payer hospital is 63% public payer mix.  Many Steward Massachusetts Hospitals have a high public payor mix, greatly exceeding the state standard and as compared to other acute care hospitals in Massachusetts. Carney Hospital has a 77% public payer mix (36% Medicaid payer mix). Good Samaritan has a 70% public payer mix (19% Medicaid payer mix). Morton Hospital has a 69% public payer mix (24% Medicaid payer mix). Holy Family has a 70% public payer mix (26% Medicaid payer mix). Nashoba Valley has a 75% public payer mix (13% Medicaid payer mix).These hospitals have a public payer mix similar to Boston Medical Center (73% public payer mix), an acute care hospital in the middle of Boston that serves some of Boston's most vulnerable neighborhoods. I am concerned that the sudden closure of one or more hospitals would present a separate and imminent danger to patients if physicians, nurses, and patients lose access to medical records related to ongoing care and treatment.

19.    I am also concerned about how Steward's financial situation will impact primary care, which is essential to managing chronic diseases and preventing further illness. In addition to

the services provided at the 9 hospitals, the Steward system also includes primary care practices. In the Commonwealth, approximately 994 physicians are employed directly by Steward primary care practices and 1025 physicians are contracted to provide care in those primary care practices. The Commonwealth is already experiencing significant loss of access to primary care given the abrupt closure of Compass Medical in June of 2023 and pending closure of Village MD.

20.     Abrupt loss of access to those primary care physicians with no plan for transition to new primary care physicians or to retaining access to current primary care physicians in their new practice settings would negatively impact the health care system by driving people to urgent and emergency care and could result in unnecessary patient harm and deaths.

21.     I am also concerned about the impact potential closures of Steward Massachusetts Hospitals will have on employment within the health care industry. Steward is a large employer in Massachusetts- as of February 2024, there were 9,753 employees on their payroll and 6,405 licensed independent practitioners working within the nine hospitals. The abrupt closure of any of the hospitals in their entirety would result in significant disruption for the health care workers and licensed practitioners Massachusetts relies on.

22.     Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 6th day of May, 2024.

_____
Robert Goldstein
Commissioner of the Department Public Health

4869-8408-7484