IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>STEWARD HEALTH CARE SYSTEM LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-90213 (CML)<br><br>(Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION
OF RIGHTS OF CAREMAX, INC. TO MOTION OF
DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO (A) OBTAIN JUNIOR
LIEN POSTPETITION FINANCING, (B) USE CASH COLLATERAL,
AND (C) GRANT LIENS AND PROVIDE SUPERPRIORITY ADMINISTRATIVE
EXPENSE CLAIMS; (II) GRANTING ADEQUATE PROTECTION TO CERTAIN
PREPETITION SECURED PARTIES; (III) MODIFYING THE AUTOMATIC STAY;
(IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**
[Related to Docket No. 46]

CareMax, Inc., (collectively with certain of its affiliates, "CareMax"), a creditor in the above-captioned chapter 11 cases of Steward Health Care System LLC and its debtor affiliates, (collectively, the "Debtors"), files this limited objection and reservation of rights (this "Objection") to the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Junior Lien Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief*

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

[Docket No. 46] (the "DIP Motion"),[2] seeking, among other things, interim and final approval of the Debtors' superpriority, secured, debtor-in-possession multiple draw junior term loan facility (the "DIP Facility") and use of cash collateral. In support of this Objection, CareMax respectfully states as follows:

## PRELIMINARY STATEMENT

1. CareMax files this limited objection to the relief requested in the DIP Motion to the extent the Debtors seek to impose liens on, or use as cash collateral, approximately $9.2 million of CareMax's cash that was swept prepetition from CareMax accounts. Prepetition, the Debtors received approximately $50 million of CMS funds that were inadvertently swept into the Debtors' bank accounts. After acknowledging the errant receipt and returning approximately $40 million, the balance still has not been remitted to CareMax. These remaining proceeds largely are intended for physicians and are expected to be remitted to those physicians promptly.

2. CareMax, through its professionals, has proposed draft language to preserve each parties' rights with respect to this cash and will continue to engage with the Debtors to reach mutually satisfactory language to be included in the Interim DIP Order, but files this limited objection to the extent a consensual resolution cannot be achieved ahead of the Debtors' first day hearing.

3. For the reasons further described herein, CareMax respectfully requests that the Court deny the DIP Motion to the extent it seeks to grant any party, including the prospective DIP Lender, liens on CareMax's cash.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Motion.

## BACKGROUND

### I. CareMax's Acquisition of the Sparta Entities

4. On May 31, 2022, CareMax and the Debtors entered into an agreement under which CareMax acquired the Debtors' Medicare value-based care business (the "Sparta Entities") pursuant to that certain *Agreement and Plan of Merger*, dated May 31, 2022 (the "Merger Agreement").

5. The Sparta Entities are providers of healthcare services that receive payment for the services provided from, among other sources, the Center for Medicare and Medicaid Services ("CMS") via automated clearing house transfer ("ACH").

6. Pursuant to the Merger Agreement, CareMax also acquired certain Bank of America accounts (collectively, the "Accounts") into which CMS deposited funds for services rendered by the Sparta Entities.

### II. Debtors' Sweep of CareMax's Funds

7. On October 5, 2023, CMS paid $49,857,946.01 to CareMax into the CareMax-acquired Accounts consisting of (i) $47,805,501.74 via ACH into one Bank of America account ("CMAX Account No. 1") and (ii) $2,052,444.27 via ACH into a second Bank of America account ("CMAX Account No. 2" and such funds, collectively, the "Swept Funds").

8. That same day, Bank of America immediately transferred the Swept Funds to the Debtors. The Debtors have acknowledged that these Swept Funds do not belong to them, and less than two weeks after the errant sweep agreed to return approximately $40 million. As agreed by the Debtors, the remaining $9,152,148 balance of the Swept Funds (the "Remaining Funds") were held in trust while the parties worked in good faith to negotiate a resolution. The Remaining Funds largely should be used to pay physicians who are owed these amounts and have been delayed CMS funded cash due to a lack of a resolution on the Remaining Funds.

9.     Despite several months of negotiations, the Remaining Funds have not been turned over to CareMax.

**LIMITED OBJECTION**

10.     CareMax hereby objects to the Debtors' use of cash collateral and entry into the DIP Facility to the extent the Remaining Funds are subject to the DIP Liens or deemed cash collateral.  CareMax respectfully requests that the Interim DIP Order provide for the Remaining Funds—totaling $9,152,148—to be set aside in a segregated account pending further order of this Court.  *See* 11 U.S.C. 363(c)(2), (4) (requiring that absent consent or order from this Court providing adequate protection, "the trustee *shall* segregate and account for any cash collateral in the trustee's possession, custody, or control") (emphasis added).

11.     CareMax's rights in the Remaining Funds should not be affected by the Interim DIP Order until the Bankruptcy Court has sufficient time to review the record related to the Remaining Funds and fashion appropriate relief.  The Interim DIP Order may otherwise allow the Debtors to spend or grant liens on cash that is not property of the Debtors' estates, leaving CareMax without any recourse.

12.     CareMax respectfully requests the following language be added to Debtors' proposed Interim DIP Order:

> The Debtors and DIP Lender hereby acknowledge that CareMax National Care Network, LLC's, CareMax Accountable Care Network, LLC's and their affiliates' (collectively, "CareMax") rights are reserved with respect to the approximately $9,152,148.00 in cash that the Debtors received from the Centers for Medicare and Medicaid Services on October 5, 2023 (such funds, the "CareMax CMS Funds"). CareMax asserts, among other things, that the CareMax CMS Funds are held in trust for the benefit of CareMax and are not property of the Debtors' estates pursuant to Section 541 of the Bankruptcy Code (or, in the alternative, that the CareMax CMS Funds are held in constructive trust by the Debtors).  CareMax, the Debtors, and the DIP Lender hereby reserve all rights with respect to the Final Order and nothing in this Interim Order shall limit CareMax's rights with respect to the CareMax CMS Funds.  The Debtors shall maintain at least $9,152,140.00 in the account holding the CareMax CMS Funds until the dispute with CareMax is

resolved pursuant to further order of this Court. The provisions of this paragraph shall not be altered, restricted, or otherwise modified by any order, including the *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Their Existing Cash Management System, (B) Maintain Existing Business Forms and Intercompany Arrangements, (C) Continue Intercompany Transactions, and (D) Continue Employee Credit Card Program; (II) Extending Time to Comply With Requirements of 11 U.S.C. § 345(b); and (III) Granting Related Relief* [Docket No. 5] (the "Cash Management Motion").

## RESERVATION OF RIGHTS

13. CareMax reserves all rights, including, without limitation, to (a) assert other and further objections to the DIP Motion, including to entry of the Final Order; (b) assert other and further objections to any first day motion filed by the Debtors, including to entry of interim or final orders on the Cash Management Motion; (c) supplement the legal or factual arguments set forth in this Objection; (d) submit testimony or evidence at the interim or final hearings; and (e) respond to any reply of the Debtors or any other party-in-interest.

[*Remainder of the page intentionally left blank.*]

WHEREFORE, CareMax requests the Court sustain this Objection and deny approval of the DIP Motion or condition such approval upon the Interim DIP Order being modified in accordance with this Objection.

Dated: May 7, 2024
Dallas, Texas

/s/ *John F. Higgins*
**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
Megan Young-John (TX Bar No. 24088700)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Email: jhiggins@porterhedges.com
myoung-john@porterhedges.com

*Attorneys for CareMax, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on May 7, 2024, a true and correct copy of the foregoing pleading was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system.

>							*/s/ Megan Young-John*
>							Megan Young-John