IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>STEWARD HEALTH CARE SYSTEM LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case Nos. 24-90213, 24-90333 (CML)<br><br>(Jointly Administered) |
| BRIGHTON MARINE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>STEWARD HEALTH CARE SYSTEM LLC, STEWARDSHIP SERVICES INC.,<br><br>Defendants. | Adv. Pro. No. _____ |

**BRIGHTON MARINE, INC.'S ADVERSARY COMPLAINT FOR
<u>DECLARATORY JUDGMENT</u>**

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

Plaintiff Brighton Marine, Inc. ("BMI"), for its Complaint against defendants Steward Health Care System LLC and Stewardship Services Inc. (collectively, "Steward") seeking declaratory judgment and related relief, alleges as follows:

## NATURE OF THE ACTION

1. Under a contract with the Department of Defense, BMI has responsibility for providing essential health care and social services to thousands of military servicemembers and their families. To fulfill that weighty obligation, BMI subcontracted with Steward. Under that subcontract—the Amended and Restated Management and Services Agreement ("MSA")—Steward provides military servicemembers, veterans, and their families with covered health care benefits and pharmacy benefits.

2. In the past six months, public reporting revealed that Steward's financial health was shaky, at best. Mounting debts, unpaid rent, and insufficient revenues called into question Steward's ability to continue performing its responsibilities under the MSA and to continue delivering the health care benefits to the servicemembers who rely on Steward for their care.

3. Steward's financial health is critical to its ability to perform under the MSA: Because Steward is paid a per-enrollee fixed-unit rate, Steward bears the financial risk that the cost of care might exceed the amounts it receives under the MSA. Thus, if Steward's finances crumble, it may be unable to provide the services required by the MSA. ███████████ ██████████████████████████ It requires Steward to disclose ████████████████ ████████████████████████████████████████████████████████ These disclosures allow BMI to effectively exercise its oversight responsibilities and proactively address any risks to Steward's performance that might arise from a financial downturn.

4.      Upon learning of Steward's fragile financial condition, BMI took the initial step of requesting financial reports and other information relevant to Steward's financial condition. Steward sometimes provided incomplete responses. More often, Steward did not respond at all. Steward's repeated failure to provide BMI with the requested financial information made it impossible for BMI to assess whether Steward could continue providing the critical health care services called for under the MSA.

5.      Looking to transition to a more reliable and financially sound partner, BMI terminated the MSA on April 26, 2024. It invoked a provision that allows BMI to terminate if ███████████████████████████████████████ .

6.      Steward is now interfering with BMI's efforts to ensure an orderly transition to a new provider. Steward maintains that BMI's termination of the MSA is invalid and void, refuses to comply with its obligation to assign certain subcontracts to BMI, and has threatened BMI with litigation, demanding that BMI "cease and desist" transition activities that are expressly provided for in the MSA.

7.      As a result, BMI seeks a declaratory judgment that its termination is valid so that it may move forward with transitioning to a new partner with sufficient financial stability to ensure that first-rate health care remains available for those who deserve it most: military servicemembers and their families.

## PARTIES

8.      Plaintiff BMI is a charitable 501(c)(3) corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business located at 77 Warren Street, Brighton, Massachusetts 02135.

9. Defendant Steward Health Care System LLC, one of the Debtors herein, is a Delaware limited liability company with its principal place of business in Dallas, Texas.

10. Defendant Stewardship Services Inc., one of the Debtors herein, is a Delaware corporation with its principal place of business in Dallas, Texas. It is a wholly-owned subsidiary of Defendant Steward Health Care System LLC.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this adversary proceeding and the claims asserted herein pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O). This adversary proceeding arises in and relates to the Debtors' case pending before this Court under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

12. BMI confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 7008-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), to the entry of a final order or judgment by this Court if it is determined that this Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

13. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

### A. BMI AND ITS MISSION

14. The Department of Defense ("DoD") administers a health care system—known as TRICARE—for U.S. military personnel, veterans, and their families. Eligible individuals

3

participate in TRICARE and can elect to enroll in the Uniformed Services Family Health Plan (the "Plan") as one TRICARE option.[2]

15. BMI is one of six organizations that directly contracts with DoD to provide health care services under the Plan. For over 25 years, DoD has contracted with BMI (the "DoD Contract") to administer the Plan in parts of New England (the "BMI Plan").[3]

### B. BMI'S SUBCONTRACT WITH STEWARD

16. To carry out its mission to administer the Plan, BMI entered into the MSA, a copy of which is attached as **Exhibit A** and incorporated by reference herein.

17. BMI's initial counterparty to the MSA, Caritas Christi, transferred its obligations under the MSA (as well as all of its other assets and operations) to Steward in or around November 2010.[4] *See* Ex. A, MSA § 12.2.

18. Under the MSA, Steward has responsibility for providing Plan services to eligible members and for administering the BMI Plan, subject to BMI's general oversight and responsibilities under the DoD Contract. Ex. A, MSA §§ 2.1, 3.1. Although Steward provides certain services itself, upon information and belief, Steward meets most of its obligations under the MSA through subcontracts with third-party providers.

19. Under the MSA, Steward receives a monthly payment from BMI. In general, ███ ███████████████████████████████████████████████████████ ██████████████ *See* Ex. A, MSA §§ 7.1-7.4. ████████████████

---

[2] The Plan is open to family members of active-duty members of the U.S. Army, the U.S. Marine Corps, the U.S. Navy, the U.S. Air Force, and the U.S. Space Force. Veterans, reservists, members of the National Guard, and their families may also enroll in the Plan.

[3] Specifically, BMI's contract with DoD covers parts of Massachusetts, Connecticut, Rhode Island, and New Hampshire.

[4] On February 14, 2024, the MSA was assigned to Defendant Stewardship Services Inc., a wholly-owned subsidiary of Defendant Steward Health Care System LLC and one of the Debtors herein.

4

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ Thus, Steward bears the risk that the cost of providing health care services under the BMI Plan will exceed BMI's monthly payment. Conversely, Steward would reap the rewards if its costs of providing health care are less than BMI's monthly payment.

20. Because Steward carries the financial risk associated with administering the BMI Plan, the MSA requires ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ That information allows BMI to meet its oversight responsibilities under the MSA and to ensure that Steward has sufficient financial strength to perform its obligations under the MSA. *See* Ex. A, MSA § 8.1. Said differently, ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ allow BMI to **proactively** diagnose and address any deterioration in Steward's financial condition that might jeopardize Steward's ability to provide health care to the military personnel, veterans, and their families enrolled in the BMI Plan.[5]

21. Among other things, the MSA requires ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ *See generally* Ex. A, MSA §§ 8.1-8.4.

---

[5] ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

5

22.     Because the disclosure of Steward's financial information is so important for ensuring that BMI Plan enrollees receive adequate care, the MSA imposes significant consequences for non-compliance with the ███████████████. Specifically, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Ex. A, MSA § 9.2.2. BMI can also ███████████████████████████████████████ *Id.* § 9.3.1.

23.     Termination of the MSA triggers other provisions ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

C.  **STEWARD'S NON-COMPLIANCE WITH ITS** ████████████ ███████████████████████

24.     ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

6

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████

        **1. Steward Did Not Provide** ██████████████████████████████

25.    Steward's 2022 fiscal year ended on December 31, 2022.

26.    Steward was thus required to ████████████████████████████████████

████████████████████████████. *See* Ex. A, MSA § 8.2.5.

27.    Steward did not provide ████████████████████████████████████

████████████████████.

        **2. Steward Did Not Provide** ██████████████████████████████
██████████

28.    Upon information and belief, since 2014, Steward has not provided quarterly or annual financial reports to Massachusetts regulators as required by state regulations.

29.    In April 2022, the Superior Court of Massachusetts ordered that regulators had the statutory authority to require Steward to provide that financial information to the Commonwealth. In June 2023, the Massachusetts court ordered Steward to provide the information. Thus, as of June 2023, ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *See* Ex. A, MSA § 8.2.6.

30.    ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████

31.    In or about April 2022, Steward executed a settlement agreement with the U.S. Attorney's Office for the District of Massachusetts to resolve allegations that, among other

7

misconduct, Steward's hospitals paid physicians and physician practices for services that were never performed, in violation of the False Claims Act, the Stark Law, the Anti-Kickback Statute, and Medicare requirements. On information and belief, the Department of Justice, the Federal Bureau of Investigation, and/or the Offices of the Inspector General for the Department of Health and Human Services and the Department of Defense conducted an investigation leading up to that settlement.

32. █████████████████████████████████████████████████████████████████████████████████████████████

33. In or about August or September 2023, Steward was served with a complaint filed in the Northern District of Texas alleging that Steward had provided improper incentive compensation to physicians in violation of the False Claims Act, the Anti-Kickback Act, the Stark Law, and other statutes. The lawsuit also alleged that Steward's actions did not comply with Medicare regulations and requirements.

34. ████████████████████████████████████████

35. In or about December 2023, the Department of Justice intervened in a False Claims Act case brought against Steward in the District of Massachusetts, alleging that Steward improperly paid incentive compensation to physicians to perform cardiac surgeries at St. Elizabeth's Medical Center, submitting to Medicare claims for those surgeries in violation of the Stark Law. BMI Plan enrollees receive care at St. Elizabeth's Medical Center. On information and belief, Steward was served with a copy of that complaint in or around January 2024. On information and belief, the Department of Justice, the Federal Bureau of Investigation, and/or the Offices of the Inspector General for the Department of Health and Human Services and the

Department of Defense conducted an investigation of Steward that preceded the filing of that complaint.

36. ███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

### 3. Steward Did Not Provide ███████████████████████████
███████████████████████████████

37. In or about January 2024, BMI learned from public reporting that Steward was in financial distress. Concerned about Steward's ability to continue performing under the MSA, on January 25, 2024, BMI sent Steward a letter requesting certain financial information and documents. A copy of that letter is attached as **Exhibit B** and incorporated by reference herein. Among other things, BMI's January 25 letter requested:

   a. "all categories of ███████████████████ set forth in Section 8 of the MSA," *see, e.g.*, ¶¶ 20-21, *supra*;

   b. information demonstrating that Steward has the capability—financially and as to staffing—to continue its operations under the MSA;

   c. confirmation that services to enrollees have not been impacted by Steward's financial condition and, if so, how services were impacted;

   d. information about Steward's communications with the Commonwealth of Massachusetts or any other regulatory agency or government body concerning its financial viability;

   e. a copy of the talking points, statements, or other communications that Steward prepared to respond to inquiries about its financial status; and

   f. communications with DoD concerning Steward's financial condition or capability to continue operating.

38. On January 29, 2024, Steward requested additional time to meet its obligations and sought clarification of the scope of BMI's requests. It did not provide a substantive response to BMI's requests.

39. Between February 2, 2024, and February 22, 2024, BMI repeatedly followed up on and reiterated its requests for financial information and also requested additional categories of information related to Steward's finances. On February 2, 2024, BMI again demanded a complete response to the questions posed in its January 25 letter. Steward did not provide the information. On February 10, BMI requested the timeline on which Steward intended to respond to the requests. Steward did not provide a timeline. On February 14, and again on February 16, BMI requested that Steward provide the information requested in the January 25 letter. Steward did not do so. On February 22, BMI—again—demanded that Steward provide the information that BMI had requested. Once again, Steward did not comply.

40. By April 6, 2024, Steward still had not complied with BMI's requests for financial information. So, on April 6, 2024, BMI requested one more time that Steward provide the financial information that BMI had been requesting for over ten weeks. BMI received no response to that communication.

D. **BMI TERMINATES THE MSA TO AVOID A DISRUPTION OF CRITICAL HEALTH CARE SERVICES**

41. On April 11, 2024, BMI sent Steward a notice of default. The notice informed Steward that it had breached the MSA by ██████████████████████████████ ██████████████████████████████████████████████

42. Lacking the financial information necessary to evaluate Steward's ability to continue performing under the MSA, BMI elected to terminate the contract. On April 26, 2024, BMI sent Steward a notice of termination ("Termination Notice"), a copy of which is attached as **Exhibit C** and incorporated by reference herein. The Termination Notice stated that ███ ██████████████████████████████████████████████ ██████████████████████████████████████ It informed Steward

that BMI had terminated the MSA under § 9.2.2 with an effective date of May 31, 2024. The Termination Notice further urged Steward "to work together with BMI to ensure the care of BMI's members can be appropriately transitioned in an orderly fashion." *See* Ex. A, MSA § 9.2.3.

43. After sending the Termination Notice, BMI requested multiple meetings with Steward to facilitate the transition of the MSA to a new administrator. In response to those requests, Steward gave no indication that it believed the termination was void or invalid. Instead, Steward delayed. It did not respond to some requests for meetings. It cancelled others after agreeing to meet. And, at times, it simply did not show up at all.

E. **STEWARD INTERFERES WITH BMI'S RIGHT TO TRANSITION**

44. Almost two weeks after receiving the Termination Notice, Steward finally responded on May 6, 2024. For the first time, Steward asserted that the Termination Notice was invalid. As a result, Steward maintained, BMI could not invoke any of its rights under § 9.3 of the MSA, ███████████████████████████████████████████████████████████████████████████████████████████████████████. Steward reserved all rights, including the right to sue BMI for engaging in any of those activities or for otherwise pursuing transition.

45. The same day that Steward responded to the Termination Notice, Steward and its affiliates filed the instant petitions for relief under Chapter 11 of the Bankruptcy Code. Case No. 24-90213, ECF No. 1. Shortly after disputing BMI's termination of the MSA, Steward sent a further letter threatening to sue BMI for violation of the automatic stay if BMI acted "in furtherance of" termination of the MSA. Any such conduct, Steward warned, could result in sanctions, punitive damages, and other penalties.

11

## CLAIM FOR RELIEF

## DECLARATORY JUDGMENT

46. BMI repeats and realleges every allegation set forth in paragraphs 1 to 45 above as if set forth in full herein.

47. This Court is authorized by 28 U.S.C. §§ 2201 and 2202 to declare the rights and legal relations of an interested party seeking a declaration and to grant further necessary or proper relief based on that declaration.

48. BMI may terminate the MSA ███████████████████████████████████████████████████████████████████████████████████████ Ex. A, MSA § 9.2.2.

49. Steward failed to ███████████████████████████████████████████████████████████████████████████████████████████████████████████████

50. Accordingly, BMI was entitled to terminate the MSA under § 9.2.2, and its April 26, 2024 Termination Notice was valid.

51. An actual controversy exists between BMI and Steward for purposes of 28 U.S.C. § 2201. BMI and Steward disagree whether the Termination Notice is valid, and Steward has threatened to sue BMI should BMI exercise its rights under § 9.3.2 of the MSA.

52. Steward's conduct, moreover, has made it impossible for BMI to begin an orderly transition of the BMI Plan to a new administrator. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

53. Moreover, upon information and belief, Steward has threatened other entities with lawsuits if they negotiate or contract with BMI.

54. Steward is actively interfering with BMI's ability to comply with its contractual obligations to DoD. Because Steward disputes the termination and has declined to cooperate in the ordinary transition of responsibility for administering the BMI Plan to another provider, BMI has been injured and faces the prospect of further imminent harm absent declaratory relief.

55. A declaration that BMI's Termination Notice is valid would redress these harms by allowing BMI to begin the orderly transition of the BMI Plan to a new administrator and to allow other health care providers to negotiate with BMI without fear of being sued for tortious interference or other claims.

56. This Court has the authority to grant declaratory relief because Steward has not previously filed a cause of action in state court concerning the MSA or its termination.

57. Because of the automatic stay in bankruptcy, BMI cannot seek relief in state court. Its only recourse is to seek declaratory relief in this Court.

## PRAYER FOR RELIEF

WHEREFORE BMI prays that judgment be entered for it and against Steward, as follows:

A. Declaratory judgment that BMI's April 26, 2024 Termination Notice is valid and enforceable;

B. An order compelling Steward to ███████████████, as provided in § 12.3.5 of the MSA;

C. An order preventing Steward from interfering with the exercise of BMI's rights under §§ 9.3.2.3 and 9.3.3 of the MSA;

D. An award of reasonable attorney's fees, costs, and expenses; and

13

  E. Such other relief as the Court finds just, necessary, or proper.

Respectfully submitted this 16th day of May, 2024.

       **GRAY REED**

       By: */s/ Jason S. Brookner*
        Jason S. Brookner
        Texas Bar No. 24033684
        Amber M. Carson
        Texas Bar No. 24075610
       1300 Post Oak Blvd., Suite 2000
       Houston, TX 77056
       Telephone: (713) 986-7000
       Facsimile: (713) 986-7100
       Email: jbrookner@grayreed.com
          acarson@grayreed.com

        - and -

       **MOLO LAMKEN LLP**

        Justin V. Shur (*pro hac vice* pending)
        Eric R. Nitz (*pro hac vice* pending)
        Jackson A. Myers (*pro hac vice* pending)
       600 New Hampshire Ave., NW
       Washington, DC 20037
       Telephone: (202) 556-2000
       Facsimile: (202) 556-2001
       Email: jshur@mololamken.com
          enitz@mololamken.com
          jmyers@mololamken.com

        - and -

        Justin M. Ellis (*pro hac vice* pending)
        Jennifer Schubert (*pro hac vice* pending)
        Catherine Martinez (*pro hac vice* pending)
       430 Park Avenue
       New York, NY 10022
       Telephone: (212) 607-8160
       Facsimile: (212) 607-8161
       Email: jellis@mololamken.com
          jschubert@mololamken.com
          cmartinez@mololamken.com

      - and -

**PROSKAUER ROSE LLP**

   David M. Hillman (*pro hac vice*)
   Maximilian A. Greenberg (*pro hac vice*)
   Elliot R. Stevens (*pro hac vice*)
Eleven Times Square
New York, NY  10036
Telephone: (212) 969-3000
Facsimile:  (212) 969-2900
Email:    dhillman@proskauer.com
         mgreenberg@proskauer.com
         estevens@proskauer.com

      - and -

   Charles A. Dale (*pro hac vice*)
One International Place
Boston, MA  02110
Telephone: (617) 526-9600
Email:    cdale@proskauer.com

      - and -

   Paul V. Possinger (*pro hac vice*)
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL  60602
Telephone: (312) 962-3570
Email:    ppossinger@proskauer.com

**COUNSEL TO BRIGHTON MARINE, INC.**