IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM LLC, *et al.*, | § § § § | Case No. 24-90213 (CML) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § § | Re: Docket No. 281 |

**DECLARATION OF JAMES MOLONEY
IN SUPPORT OF EMERGENCY MOTION OF
DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING
(A) GLOBAL BIDDING PROCEDURES FOR SALES OF
DEBTORS' ASSETS, (B) FORM AND MANNER OF NOTICE OF
SALES, AUCTIONS, AND SALE HEARINGS, AND (C) ASSUMPTION
AND ASSIGNMENT PROCEDURES AND FORM AND MANNER
OF NOTICE OF ASSUMPTION AND ASSIGNMENT; (II) AUTHORIZING
DESIGNATION OF STALKING HORSE BIDDERS; (III) SCHEDULING
AUCTIONS AND SALE HEARINGS; AND (IV) GRANTING RELATED RELIEF**

I, James Moloney, pursuant to 28 U.S.C. § 1746 of title 28 of the United States Code, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I submit this declaration (the "**Declaration**") in support of the *Emergency Motion of Debtors For Entry of an Order (I) Approving (A) Global Bidding Procedures for Sales of the Debtors' Assets, (B) Form and Manner of Notice of Sales, Auctions, and Sale Hearings, and (C) Assumption and Assignment Procedures and Form and Manner of Notice of Assumption and*

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Steward.  The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

*Assignment; (II) Authorizing Designation of Stalking Horse Bidders; (III) Scheduling Auctions and Sale Hearings; and (IV) Granting Related Relief* (Docket No. 281) (the "**Motion**").[2]

2. I am a Managing Director of Cain Brothers ("**Cain Brothers**"), a division of KeyBanc Capital Markets Inc., a wholly-owned broker/dealer subsidiary of KeyCorp and an affiliate of KeyBank National Association. My place of business is One California Street, Suite 2400, San Francisco, California.

3. I, along with David Morlock, who is also a Managing Director, have been leading the Cain Brothers team related to its engagement with Steward Health Care System LLC and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"). Cain Brothers has been retained by the Debtors to market and sell certain of the Debtors' hospital assets. Except as otherwise indicated, all statements in this Declaration are based on (i) my personal knowledge of the Debtors' operations and finances, (ii) my review of relevant documents, (iii) information provided to me by Cain Brothers' employees working directly with me or under my supervision, (iv) information provided to me by, or discussions with, the Debtors or the other advisors to the Debtors, including Weil, Gotshal & Manges LLP, Lazard Inc., AlixPartners, LLP, and Leerink Partners, and/or (v) my experience as an investment banking professional. I am not being compensated based on the content of my testimony or the specific outcome of any dispute. If called to testify, I could and would testify to each of the facts set forth herein on the foregoing bases. I am authorized to submit this declaration on behalf of the Debtors.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion and exhibits thereto.

**Qualifications and Professional Background**

4. Cain Brothers is a division of KeyBanc Capital Markets ("**KBCM**"), which is a wholly-owned broker/dealer subsidiary of KeyCorp and an affiliate of KeyBank National Association. Cain Brothers was acquired in October 2017 by KBCM and prior to the KBCM acquisition was a privately owned investment banking firm. Cain Brothers was founded in 1982 and for 42 years has been focused exclusively on providing investment banking services to the healthcare industry. Currently, the Cain Brothers division of KBCM has approximately 100 investment banking professionals and is headquartered in New York, New York with offices in San Francisco, California and Chicago, Illinois.

5. Cain Brothers' primary investment banking focus is on mergers, acquisitions, and other change of control transactions and has advised clients on more than 150 M&A transactions in the healthcare sector since the beginning of 2019. Cain Brothers has been involved as an advisor with respect to financial restructurings, capital raising, mergers, acquisitions, divestitures, and other advisory assignments. Its investment banking professionals apply expert technical, analytical, and negotiating skills to structure transactions and resolve situations in which multiple stakeholders frequently have conflicting interests and objectives. Cain Brothers' senior bankers are actively involved in the day-to-day activities throughout engagements from the initial planning of the sale strategy through the negotiation and execution of each transaction. Cain Brothers has developed significant relevant experience and expertise regarding the sale and/or recapitalization of hospitals and hospital systems, has extensive experience in the healthcare space, and has an excellent reputation for investment banking services that it has rendered to various parties in interest in large and complex healthcare-related bankruptcy proceedings, including the following representative chapter 11 cases: *In re Verity Health Sys. of Cal., Inc.*, No. 2:18-bk-20151-ER (Bankr. C.D. Cal. 2018); *In re California Proton Treatment Ctr.*,

LLC, No. 17-10477 (LSS) (Bankr. D. Del. Mar. 1, 2017); *In re Wadley Reg'l Med. Ctr.*, No. 09-50006 (Bankr. E.D. Tex. 2009); *In re CHA Hawaii, LLC*, No. 08-01369 (Bankr. Haw. 2008); *In re Saint Vincent's Cath. Med. Ctr.*, No. 05-14945 (ASH) (Bankr. S.D.N.Y. 2005); and *In re Greater Se. Cmty. Hospital Corp. I*, No. 02-2250 (SMT) (Bankr. D.D.C. 2002). Moreover, Cain Brothers' extensive healthcare sector experience includes advising on capital raising, mergers, acquisitions, and divestitures for companies in the healthcare sector.

6. I have over thirty years of healthcare investment banking experience with specific expertise in hospital and health system transactions. In addition to the Verity chapter 11 case, I have also led Cain Brothers' engagements in other matters including Hawaii Medical Center and California Proton Center. In addition to my experience in completing mergers, acquisitions, and other hospital sale transactions, I also have significant experience in healthcare real estate transactions. I started and ran for more than five years Cain Brothers' Healthcare Real Estate practice, which advised healthcare and real estate investor clients in the sale of medical office buildings, ambulatory care facilities, and acute care hospitals. During that time, I advised on a broad range of medical real estate transactions with an aggregate transaction value of more than $3 billion. Prior to joining Cain Brothers in 1995, I worked for Citicorp Securities for five years. I attended the University of Washington and graduated with a BA in Business Administration and was awarded a MBA from the University of Rochester Graduate School of Business.

**Cain Brothers' Engagement to Market and Sell Debtor Assets**

7. Cain Brothers was engaged by the Debtors in January 2024 to market the operations of a number of the Debtors' hospitals. Specifically, pursuant to its engagement letter, Cain Brothers is leading the Debtors' efforts to market and sell the following hospitals (collectively, the "**Cain Process Hospitals**"):

4

| Market | Hospital |
|---|---|
| Arizona | Florence Hospital |
| Arizona | Mountain Vista Medical Center |
| Arizona | St. Luke's Behavioral Center |
| Arizona | Tempe St. Luke's Hospital |
| Arkansas | Wadley Regional Medical Center at Hope |
| Louisiana | Glenwood Regional Medical Center |
| Ohio | Hillside Rehabilitation Hospital |
| Ohio | Trumbull Regional Medical Center |
| Pennsylvania | Sharon Regional Medical Center |
| Southern Massachusetts | Good Samaritan Medical Center |
| Southern Massachusetts | Morton's Hospital |
| Southern Massachusetts | St. Anne's Hospital |
| Texas | Medical Center of Southeast Texas |
| Texas | Wadley Regional Medical Center |
| Texas | Odessa Regional Medical Center |
| Texas | Scenic Mountain Medical Center |
| Texas | St. Joseph's Medical Center |

**Marketing and Sales Process**

8. Prior to the Petition Date, Cain Brothers used its expertise and knowledge of the hospital industry, local, regional, and national health systems, and select for-profit and not-for-profit health systems to identify parties that could potentially be interested in one or more of the Cain Process Hospitals, and developed a list of potential buyers for such hospitals. In total, prior to the Petition Date, Cain Brothers contacted 175 potential buyers and sixty-five (65) potential buyers signed non-disclosure agreements ("**NDAs**") and were provided access to the virtual data room containing diligence materials (the "**VDR**").[3] After the Petition Date, Cain Brothers resolicited all of the parties it had contacted prepetition, as well as eighteen (18) additional potential bidders to make all such parties aware of the Debtors' chapter 11 filing and the proposed Global Bidding Procedures, including the proposed bid deadlines. Based on the outreach prior to

---

[3] Certain potential buyers were contacted for multiple of the below markets.

the Petition Date and the additional outreach following the Petition Date, fifty-two (52) potential buyers currently have access to the VDR and are reviewing one or more hospital acquisition opportunities in one or more markets.

9. Beginning in late January, 2024, Cain Brothers initiated buyer outreach and since then has contacted forty-five (45) parties with marketing materials to gauge potential interest in purchasing the Debtors' hospital assets located in Southern Massachusetts. Twenty (20) of these parties signed NDAs and received access to diligence materials in the VDR. Cain Brothers has received a number of indications of interest ("**IOIs**") that, based on the marketing materials provided, describe the proposed transaction structure and range of value for some or all of the Debtors' assets located in the Southern Massachusetts market.

10. Beginning in late January, 2024, Cain Brothers initiated buyer outreach and contacted fifty-seven (57) parties with marketing materials to gauge potential interest in purchasing the Debtors' hospital assets located in Arizona. Thirty-one (31) of these parties signed NDAs and received access to diligence materials in the VDR. Prior to the Petition Date, Cain Brothers received a number of IOIs for some or all of the Debtors' assets located in the Arizona market. Multiple parties are actively completing due diligence and evaluating bids for the Arizona assets.

11. Beginning in late January, 2024, Cain Brothers initiated buyer outreach and contacted seventy-one (71) parties with marketing materials to gauge potential interest in purchasing the Debtors' hospital assets located in Ohio and Pennsylvania. Thirty-four (34) of these parties signed NDAs and received access to diligence materials in the VDR. Cain Brothers has received IOIs from a number of buyers for some or all of the Debtors' assets located in the combined Ohio and Pennsylvania region.

12. Beginning in late January, 2024, Cain Brothers initiated buyer outreach and contacted sixty-two (62) parties with marketing materials to gauge potential interest in purchasing the Debtors' hospital assets located in Louisiana and Arkansas. Thirty-two (32) of these parties signed NDAs and received access to diligence materials in the VDR. Cain Brothers has received several IOIs for the Debtors' assets located in Arkansas and Louisiana.

13. In late March, 2024, Cain Brothers initiated buyer outreach for the Debtors' hospital assets located in Texas. To date, Cain Brothers has initiated contact with fifty (50) parties, twenty-seven (27) of which have executed NDAs and received access to diligence materials in the VDR. A number of potential bidders are active in the VDR and evaluating bids for these hospitals.

**Global Bidding Procedures and Need for Timely Sale Process**

14. In support of the Debtors' marketing and sales processes, the Debtors and their advisors have developed bidding and auction procedures for the orderly and value-maximizing marketing and sale of the Debtors' assets, including the Cain Process Hospitals (the "**Global Bidding Procedures**").

15. I have reviewed the Global Bidding Procedures. Based on my experience, I believe the Global Bidding Procedures will promote competitive sale processes that will enable the Debtors to solicit competitive bids for the Cain Process Hospitals. Cain Brothers has and will encourage prospective bidders to submit bids to provide the highest or otherwise best available recoveries to the Debtors' stakeholders.

16. Based on my experience and knowledge from advising the Debtors in their pre- and postpetition marketing and sales process for the Cain Process Hospitals, I believe the timelines established by the Global Bidding Procedures are appropriate for several reasons.

17. *First,* as explained above, the Debtors have already engaged in significant prepetition marketing efforts. As noted above, Cain Brothers has already contacted a significant number of potentially interested parties concerning the Debtors' hospital operations in Southern Massachusetts, Arizona, Ohio, Pennsylvania, Arkansas, Louisiana, and Texas. Diligence information has been provided to all interested parties for all hospital assets. As described above, numerous parties have already submitted indications of interest for the Cain Process Hospitals.

18. *Second*, the timelines both afford (i) potential buyers sufficient time to evaluate the opportunity to acquire the hospitals, and (ii) the Debtors with the benefit of concluding the bidding process and realizing sale proceeds or otherwise stemming cash flow losses from operations for certain of the hospitals.

19. *Lastly*, and relatedly, although the Debtors' estates could benefit from additional time to market the hospitals in Southeast Texas, Texarkana, and West Texas, the timelines and flexibility provided by the Global Bidding Procedures provide sufficient time for parties to formulate and submit bids for the hospital operations described above.

20. Based on my experience, the Global Bidding Procedures are designed to allow the Debtors to solicit and identify bids from potential buyers that constitute the highest or otherwise best offer, in an efficient manner and on a reasonable timeline for sales for the Cain Process Hospitals.

**Stalking Horse Bid Protections**

21. Pursuant to the Global Bidding Procedures, the Debtors may select Stalking Horse Bidders and are authorized to enter into an asset purchase agreement with one or more Stalking Horse Bidders for the sale of their various assets.

22. The Global Bidding Procedures contain standard Stalking Horse bid protections that I believe are designed to facilitate a robust and competitive bidding process under the circumstances. Specifically, the Global Bidding Procedures provide for (i) the payment of a break-up fee in in an amount that shall not exceed three percent (3%) of the purchase price (including the value of assumed liabilities) in the applicable Stalking Horse Bid and (ii) an expense reimbursement subject to a reasonable cap to be agreed upon between the Debtors and the applicable Stalking Horse Bidder (collectively the "**Termination Payment**") as an administrative expense claim or superpriority administrative expense claim, in the event that a Stalking Horse Bidder is not selected as the winning bidder or the Debtors consummate one or more sale transactions for the applicable assets with one or more other bidders. In my experience, stalking horse bidders typically require bid protections similar to the type of Termination Payments set forth in the proposed Global Bidding Procedures and that such terms are customary and usual under the circumstances. Further, I believe, based on my experience as an investment banker, that the designation of a stalking horse bidder can be beneficial to a sale process by setting a floor for any potential bids.

*[Remainder of page intentionally left blank]*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

May 27, 2024
San Francisco, California

*/s/ James Moloney*
James Moloney
Managing Director
Cain Brothers