**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM LLC, *et al.*,[1] | Case No. 24-90213 (CML) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 776** |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO EMERGENCY MOTION OF DEBTORS FOR ENTRY OF
AN ORDER DIRECTING MEDIATION OF DISPUTES RELATING TO
ALLOCATION OF HOSPITAL SALE PROCEEDS AND RELATED ISSUES**

The Official Committee of Unsecured Creditors (the "Committee")[2] of Steward Health

Care System LLC and its debtor affiliates (collectively, the "Debtors"), by and through its

undersigned proposed counsel, hereby submits this limited objection (the "Limited Objection") to

the *Emergency Motion of Debtors Requesting Entry of an Order Directing Mediation of Disputes

Relating to Allocation of Sale Proceeds and Related Issues with Medical Properties Trust* [Docket

No. 776] (the "Mediation Motion").[3]   In support of this Limited Objection, the Committee

respectfully represents as follows.

---

[1]  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward.  The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

[2]  On May 16, 2024, the United States Trustee for the Southern District of Texas appointed the Committee. *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 290].  The Committee currently comprises the following members: (i) 1199SEIU United Healthcare Workers East; (ii) Cerner Corporation; (iii) Cross Country Healthcare, Inc.; (iv) J.D.C. (Creditor's Initials); (v) Medline Industries LP; (vi) Pension Benefit Guaranty Corporation; (vii) Philips North America LLC; (viii) R1 RCM, Inc.; and (ix) Sodexo, Inc.

[3]  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Mediation Motion or the First Day Declaration (as defined below), as applicable.

## PRELIMINARY STATEMENT

1.      By the Mediation Motion, the Debtors ask this Court to compel the appointment of a judicial mediator to resolve case determinative disputes among the Debtors, the Committee, MPT (the Debtors' landlord, *de facto* equity sponsor and DIP lender) and the Debtors' other prepetition secured lenders, including disputes relating to the allocation of sale proceeds between MPT and the Debtors' estates.  This has the practical effect of cutting off potential Committee challenge and recharacterization claims with respect to the Master Leases with MPT and prepetition claims asserted by MPT.  These are undoubtedly among the most important issues that will need to be addressed in connection with the Debtors' chapter 11 cases and will drive recoveries for all creditors.

2.      The Committee acknowledges the need to resolves these issues quickly and, to that end, the Committee has already sought discovery from both MPT and the Debtors.  But the discovery process is in preliminary stages and neither the Debtors nor MPT have begun to produce the information necessary for the Committee to participate in a mediation in a meaningful way. The Committee, which is the *only* proposed mediation party that has not waived or voluntarily limited its ability to challenge the validity and nature of the Master Leases or the extent and validity of MPT's claims and liens, has not yet received—let alone had time to digest—the documents, testimony and other information necessary to form an educated view on the various issues proposed to be the subject of mediation.  The Committee is at least six months behind the curve as compared to the other parties proposed to participate in the mediation, and the Committee's already limited period to challenge the Master Leases and MPT's prepetition claims and purported liens to generate value for unsecured creditors must not be truncated further by a rushed mediation process where the Committee has not received adequate information.

3.      Accordingly, the Committee respectfully submits that the Court should defer its consideration of the Mediation Motion, and that the Court should not direct any mediation on these important issues until such time as the Committee has had an opportunity to receive critical underlying information and discovery.  To the extent the Court is inclined to approve mediation at this time, the commencement of the mediation should be conditioned on MPT's, the Debtors' and the other mediation parties' agreement to an expedited discovery schedule with respect to the Committee's investigation and appropriate guardrails to ensure the Committee timely receives the information necessary to meaningfully participate in mediation.

## RELEVANT BACKGROUND

**I.      Commencement of the Chapter 11 Cases and Appointment of the Committee**

4.      On May 6, 2024 (the "Petition Date"), each of the Debtors commenced a case (collectively, the "Chapter 11 Cases") by filing a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas (the "Court").  The Chapter 11 Cases are being jointly administered.[4]

5.      On May 16, 2024, pursuant to Bankruptcy Code section 1102, the United States Trustee for Southern District of Texas appointed the Committee.[5]

**II.     The Debtors' Prepetition Capital Structure**

6.      As of the Petition Date, the Debtors had outstanding secured funded debt obligations of approximately $1.2 billion.[6]  According to the Debtors, "all of the Debtors' material

---

[4]  Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of John R. Castellano in Support of Debtors' Chapter 11 Petitions and First-Day Pleadings* [Docket No. 38] (the "First Day Declaration").

[5]  *Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 290].

[6]  *See Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Junior Lien Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III)*

3

assets are encumbered by existing liens under their prepetition debt."[7]

7.      The Debtors also state that they had "select" outstanding unsecured liabilities of approximately $8 billion as of the Petition Date, the vast majority of which are attributable to an estimated $6.6 billion of long-term obligations under the Master Leases.[8]  The Master Lease obligations include (i) contractually deferred rent, (ii) other unpaid additional amounts and (iii) future, undiscounted rent due under the Master Leases through October 31, 2041 (including average rent escalators ranging from 2.5% to 3.5% annually). [9]

**III.    The Debtors' History and Ongoing Relationship with MPT**

8.      Medical Properties Trust ("MPT") is a publicly traded real estate investment trust that primarily owns and leases healthcare facilities.  MPT Sycamore Opco, LLC (an affiliate of MPT) owns a 9.9% equity interest in the Debtors' ultimate parent entity.

9.      The Debtors conduct substantially all of their hospital operations on properties subject to two Master Leases with MPT: (i) the *Second Amended and Restated Master Lease Agreement*, dated as of March 14, 2022 ("Master Lease I"), by and among the lessors and lessees party thereto; and (ii) the *Master Lease Agreement*, dated as of March 14, 2022, by and among the lessors and lessees party thereto ("Master Lease II" and, together with the Master Lease I, the

---

*Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. 46] ¶¶ 15-23.

[7]  *Declaration of Tyler W. Cowan in Support of Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Junior Lien Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 55] ¶ 14.

[8]  *See* First Day Declaration ¶ 33.  The Debtors note that this estimate "does not does not include all amounts payable under the Master Leases." *Id.* n. 13.

[9]  As of the Petition Date, the Debtors owed MPT "approximately $166.4 million in deferred and unpaid rent." *Id.* ¶ 46.

"Master Leases").[10]  The Master Leases include a right of first refusal for the repurchase of the leased properties.[11]  Rent under the Master Leases is based on a formula that allocates a certain percentage of the total rent to each property.

10.     The Debtors pay approximately $341 million annually in lease payments to MPT.[12] Certain of the obligations under the Master Leases and related documentation are purported to be secured by the same collateral securing the MPT Facility and the MPT Stewardship Note.[13]  In addition, MPT is a significant prepetition lender to the Debtors by way of the MPT Facility, the MPT Stewardship Note and the Bridge Facility.[14]

11.     MPT's relationship to the Debtors bears a striking resemblance to that of an equity sponsor, subject only to the limitations of MPT's corporate form.  MPT, as a real estate investment trust or "REIT," could not own more than 10% of the Debtors' equity.[15]  Instead, MPT purchased 9.9% of the Debtors' equity and then extracted equity-like returns in the form of rent payments on each of the Debtors' hospital facilities.  As the Debtors' payment of above-market rents began to cripple the Debtors' operations, MPT was forced (numerous times and for as little as possible) to provide debt financing to the Debtors to keep the lights on and ensure that rent payments could continue to be made for the benefit of MPT and its stakeholders.  MPT's draining of the Debtors' financial resources to buttress its own investment returns has resulted in the Debtors (i) operating amidst severe financial distress over the past two years and (ii) being forced to stretch their vendors

---

[10] *Id.* ¶ 43.

[11] Combined Form 10-K for the year ended December 31, 2023, of MPT and MPT Operating Partnership, L.P., at 14.

[12] First Day Declaration ¶ 45.

[13] *Id.*

[14] *Id.* ¶¶ 38, 40-41.

[15] Generally, REITs cannot own more than 10% of the equity in certain types of operating entities without risking their tax-advantaged status.

to the extent of owing nearly ***$1 billion*** in trade payables[16] as of the Petition Date.  These severe financial circumstances left the Debtors no choice but to seek an expedited sale process to ensure that their hospitals may continue to operate and serve communities with critical services.

## IV.   The DIP Motions

12.     On May 7, 2024, the Court authorized the Debtors to obtain postpetition financing provided by MPT (the "MPT DIP Facility") on an interim basis.[17]  The Debtors drew $75 million under the MPT DIP Facility, which was approved on a final basis on June 3, 2024.[18]  Among other things, the MPT DIP Order establishes the Committee's challenge period (the "Challenge Period") for bringing challenges with respect to the extent and validity of prepetition secured parties' alleged claims and liens, as well as challenges to the treatment of the Master Leases, as August 24, 2024.[19]  The MPT DIP Order also contains various stipulations relating to MPT and the other prepetition secured parties, including, but not limited to, stipulations that (i) each of the Master Leases is "a true, unitary, indivisible lease . . . and not subject to avoidance, recharacterization, subordination, severance (absent the consent of the applicable MPT Lessor), or other challenge,"[20] (ii) no claims or causes of action exist against, or with respect to, MPT or the Prepetition ABL/FILO Secured Parties, and the MPT Lessors as of the Petition Date[21] and (iii) neither MPT

---

[16] *See* First Day Declaration ¶ 45.

[17] *Interim Order (I) Authorizing the Debtors to (A) Obtain Junior Lien Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection To Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. 113].

[18] *See Order (I) Authorizing the Debtors to (A) Obtain Junior Lien Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. 625] (the "MPT DIP Order").

[19] *See id.* ¶ 22.

[20] *Id.* ¶ G.22.

[21] *Id.* ¶ G.19.

nor the Prepetition ABL/FILO Secured Parties control (or have in the past controlled) any of the Debtors or their respective properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of any Debtor by virtue of any actions taken in connection with any Prepetition MPT Loan Documents and/or any Prepetition ABL/FILO Loan Documents.[22]

13.     The Committee had and continues to have significant concerns with regard to these stipulations.  To obviate the Committee's objections, both MPT and the Debtors requested that discovery into those issues be addressed during the Challenge Period, rather than prior to the hearing on final approval of the MPT DIP Facility.  To accommodate this, the parties agreed that the Committee's Challenge Period would be extended to August 24, 2024 and its investigation budget would be increased to $600,000.

14.     On June 11, 2024, the Debtors filed an emergency motion seeking authorization to obtain an additional $225 million of postpetition financing under a new debtor in possession multiple draw term loan credit facility (the "<u>FILO DIP Facility</u>") provided by the Debtors' prepetition FILO Lenders.[23]  In the motion, the Debtors explain that they determined the FILO DIP Facility represented the best available source of postpetition financing among multiple proposals received from third party lenders from within and outside the Debtors' capital structure, including a joint DIP financing proposal from the ABL Lenders and MPT, which was "not actionable" because it was conditioned on a global resolution regarding the allocation of hospital

---

[22] *Id.* ¶ G.18.

[23] *See Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain New Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. 765].

sale proceeds between the Debtors' operations and MPT's real estate determined by the ABL Lenders and MPT without the involvement of the Debtors or the Committee.[24]

## VI.     The Mediation Motion

15.     On June 11, 2024, the Debtors filed the Mediation Motion requesting the appointment of the Honorable Judge Marvin Isgur to oversee mediation among the Debtors, MPT, the ABL Lenders, the FILO Lenders and the Committee with respect to disputes related to the allocation of proceeds from the sale of the Debtors' hospitals and related issues, including, among other things:

- A framework for allocating proceeds from hospital and other assets sales or leases of MPT-owned real estate between MPT and the Debtors;

- A framework for allocating estate proceeds to the Debtors' various asset collateral pools;

- A process for facilitating the consents of relevant parties with regards to the sales;

- Resolution to any potential challenges the Committee has to the Master Leases, including any challenges relating to recharacterization or divisibility;

- A framework for determining the amount of MPT's lease deficiency claims against the Debtors in connection with the sales, as well as the amount of any cure in connection with assumptions or assignments; and

- A framework for agreeing with MPT on steps to preserve value in the event one or more hospitals or other assets do not receive a bid.[25]

## <u>LIMITED OBJECTION</u>

16.     The Committee should not be prejudiced by the premature commencement of a mediation on issues that are central both to the Debtors' sale efforts and unsecured creditor recoveries in these Chapter 11 Cases.  The Committee has been in existence for less than one

---

[24] *Id.* ¶ 7.

[25] Mediation Motion ¶ 14.

month and has had advisors for approximately three weeks.  The Prepetition Secured Parties, on the other hand, have been at the table for over six months, and MPT and the Debtors have a deep understanding of their relationship dating back approximately eight years.  Despite being well behind the other parties, the Committee and its advisors have made every effort to get up to speed quickly.  But those efforts are still nascent.  For example, on June 7, 2024, the Committee sent MPT and the Debtors draft Bankruptcy Rule 2004 document requests in accordance with the Bankruptcy Local Rules.[26]  The information requested from the Debtors and MPT is tailored to permit the Committee to investigate and examine the very issues that are proposed to be subject to mediation by the Mediation Motion, among other relevant issues for its investigation.  On June 12, 2024, proposed counsel to the Committee spoke with counsel to the Debtors and MPT to discuss the Committee's Rule 2004 requests for the first time.  While the Debtors' and MPT's counsel both agreed to begin document production, no search terms have yet been agreed to, and those productions will barely have started, much less be anywhere near complete, by June 19, 2024— the date the Debtors suggest mediation will commence.  Nor will the Committee have had the opportunity to depose or interview *any* witness in connection with these matters.

17.     The Committee is the only party to the proposed mediation that has not waived or limited its rights to challenge the extent, priority, nature and validity of the Master Leases or MPT's various claims against the Debtors.  Moreover, the Committee engaged in hard-fought negotiations for a reasonable challenge period and investigation budget with respect to these issues in resolving its objections to the MPT DIP Facility.  Commencing a mediation as early as *next week* is tantamount to depriving the Committee of any opportunity to conduct its investigation and utilize

---

[26] In addition, on  May 24, 2024, in connection with the MPT DIP Facility, the Committee sent MPT and the Debtors discovery directly addressing many of the same issues the Debtors seek to resolve in the mediation.  As noted above, in connection with resolving the Committee's objections to the MPT DIP Facility, that discovery was agreed to be produced as part of the Committee's Rule 2004 investigation during the Challenge Period.

the already tight timeframe it has been allotted to bring any challenge to MPT's claims and leases. The Committee is concerned that the end result of rushing to mediation will be to prejudice the estate fiduciary now tasked with thoroughly investigating MPT's various connections with the Debtors, and ultimately harm the ability of the Debtors' estates to realize any value from potential claims and causes of action.  Accordingly, in the first instance, the Committee respectfully requests that the Court defer its consideration of the Mediation Motion until such time as the Committee has substantially completed its investigation.

18.     To the extent the Court is inclined to order mediation at this time, the Court should condition such relief on MPT's, the Debtors' and the other mediation parties' agreement to an expedited discovery schedule with respect to the investigation and such other relief as is necessary to ensure the Committee' ability to participate meaningfully in mediation.  Absent such relief, the Committee will not be able to adequately represent the interests of unsecured creditors in mediation.

19.     The Committee appreciates the need to move expeditiously and is committed to working as quickly as possible to get up to speed on the numerous complex issues contemplated to be the subject of mediation.  However, the Debtors' desire to achieve quick resolutions of complex issues in connection with the sale process should not come at the expense of unsecured creditors.  Accordingly, any order approving mediation should include appropriate guardrails allowing the Committee to seek Court intervention on short notice to the extent the Debtors, MPT and the prepetition secured parties do not provide the Committee's advisors with information necessary to participate in mediation and acquit its fiduciary duties to unsecured creditors.

## RESERVATION OF RIGHTS

20.     The Committee reserves its rights to raise additional objections prior to or during the hearing to consider approval of the Mediation Motion, respectively, including, without limitation, serving discovery, conducting depositions of persons with knowledge of matters pertinent to the relief requested in the Mediation Motion, and presenting affirmative evidence in support of the Committee's positions and cross-examining witnesses.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court (i) (a) defer its consideration of the Mediation Motion until such time as the Committee has substantially completed its investigation or (b) condition approval of the Mediation Motion on the terms and conditions discussed herein and (ii) grant such other and further relief as the Court may deem just, proper and equitable.

[*The remainder of this page has been left blank intentionally*.]

Dated:      June 12, 2024            Respectfully submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

*/s/      Sarah Link Schultz*
Sarah Link Schultz (State Bar No. 24033047;
S.D. Tex. 3055)
Marty L. Brimmage Jr. (State Bar No. 00793386;
S.D. Tex. 30464)
Lacy M. Lawrence (State Bar No. 24055913; S.D.
Tex. 995675)
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: sschultz@akingump.com
Email: mbrimmage@akingump.com
Email: llawrence@akingump.com

-and-

Ira S. Dizengoff (admitted *pro hac vice*)
Brad M. Kahn (admitted *pro hac vice*)
Avi E. Luft (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Email: idizengoff@akingump.com
Email: bkahn@akingump.com
Email: aluft@akingump.com

*Proposed Counsel to the Official Committee
of Unsecured Creditors of Steward Health
Care System LLC,* et al.

## CERTIFICATE OF SERVICE

I hereby certify that, on June 12, 2024, a true and correct copy of the foregoing was served via email through the Bankruptcy Court's Electronic Case Filing System on the parties that have consented to such service.

*/s/ Sarah Link Schultz*
Sarah Link Schultz
