|  | ) |  |
|---|---|---|
| **In re** | ) | **Chapter 11** |
|  | ) |  |
| **STEWARD HEALTH CARE SYSTEM LLC, et al.** | ) ) | **Case No. 24-90213 (CML)** |
|  | ) |  |
| **Debtors.** | ) | **(Jointly Administered)** |
|  | ) |  |

## STATEMENT OF FINANCIAL AFFAIRS FOR

### Steward NSMC, Inc.

### CASE NO. 24-90367

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| **STEWARD HEALTH CARE SYSTEM** | § | Case No. 24-90213 (CML) |
| **LLC,** *et al.*, | § |  |
|  | § | (Jointly Administered) |
| Debtors.[1] | § |  |

## GLOBAL NOTES AND
## STATEMENTS OF LIMITATION, METHODOLOGY,
## AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES
## OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

**General**

The Schedules of Assets and Liabilities (collectively, the "Schedules") and the Statements of Financial Affairs (collectively, the "Statements" and, together with the Schedules, the "Schedules and Statements") filed by Steward Health Care System LLC ("Steward" or the "Company") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (the "Debtors") pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") were prepared, pursuant to section 521 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), by management of the Debtors, with the assistance of the Debtors' advisors.

These Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "Global Notes") pertain to, are incorporated by reference in, comprise an integral part of, and should be referred to and considered in connection with any review of the Schedules and Statements. The Global Notes are in addition to the specific notes set forth below with respect to particular Schedules and Statements (the "Specific Notes").[2]

---

[1]  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

[2]  The fact that the Debtors have prepared a Global Note with respect to any of Debtor's individual Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the Debtors' other Schedules and Statements, as appropriate. Disclosure of information in one Schedule, one Statement, or an exhibit or attachment to a Schedule or Statement, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule, Statement, exhibit, or attachment.

Although the Debtors' management has made reasonable efforts to prepare and file Schedules and Statements as complete and accurate as possible under the circumstances, based on information available at the time of preparation, subsequent information or discovery may result in material changes to these Schedules and Statements, and inadvertent errors, inaccuracies, or omissions may have occurred.  Notwithstanding any subsequent information or discovery, the Debtors do not undertake any obligation or commitment to update the Schedules and Statements.

The Schedules and Statements are unaudited and subject to potential adjustment.  Because the Schedules and Statements contain unaudited information and remain subject to further review, verification, and potential adjustment, there can be no assurance that these Schedules and Statements are complete.  Nothing contained in the Schedules and Statements shall constitute a waiver of any right of the Debtors or an admission with respect to their chapter 11 cases (including, but not limited to, issues involving claims, substantive consolidation, defenses, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers), and the Debtors reserve all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or otherwise assert offsets or defenses to any claim reflected in the Schedules and Statements as to amount, liability, or classification, or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."

The Schedules and Statements have been signed by John R. Castellano, Chief Restructuring Officer of Steward Health Care System LLC and is an authorized representative of the other Debtors.  Accordingly, in reviewing and signing the Schedules and Statements, Mr. Castellano necessarily relied upon the efforts, statements, and representations of the Debtors' other personnel and professionals.  Mr. Castellano has not (and could not have) personally verified the accuracy of each such statement and representation, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and respective creditors' addresses.

The Schedules and Statements, the Global Notes, and the Specific Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performances of the Debtors.

**Description of the Cases and Reporting Date**

On May 6, 2024 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Bankruptcy Local Rules for the Southern District of Texas under Case No. 24-90213 (CML).  On May 16, 2024, the U.S. Trustee for Region 7 appointed an official committee of unsecured creditors.  Two Patient Care Ombudsmen have been appointed to these

chapter 11 cases.[3]   No trustee or examiner has been appointed in these chapter 11 cases. Additional information about these chapter 11 cases, court filings, and claims information is available on the Debtors' restructuring website: https://restructuring.ra.kroll.com/steward/.

Except as otherwise noted, the asset and liability information provided herein represents the asset and liability data of the Debtors as of April 30, 2024 and May 5, 2024 (as applicable, the "Reporting Date").

**Basis of Presentation**

For financial reporting purposes, prior to the Petition Date, the Debtors and certain of their non-Debtor affiliates ordinarily prepared consolidated financial statements.  Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that would be substantially different from financial information that would be prepared on a consolidated basis under Generally Accepted Accounting Principles ("GAAP").  Therefore, these Schedules and Statements do not purport to represent financial statements prepared in accordance with GAAP nor are they intended to fully reconcile to the consolidated financial statements prepared by the Debtors.  Unlike the consolidated financial statements, these Schedules and Statements reflect the assets and liabilities of each separate Debtor, except where otherwise indicated.  Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.

Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent a Debtor shows more assets than liabilities, it is not an admission that the Debtor was solvent as of the Petition Date or at any time prior to the Petition Date.  Likewise, to the extent a Debtor shows more liabilities than assets, it is not an admission that the Debtor was insolvent at the Petition Date or any time prior to the Petition Date.  For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value or the fair market value of the Debtors' Stewardship Health (the Debtors' valued managed-care business), hospitals, or other assets.

**Amendment**

While reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements, inadvertent errors or omissions may exist.  The Debtors reserve all rights to amend and/or supplement the Schedules and Statements from time to time as is necessary or appropriate.

---

[3]   Mrs. Suzanne Koenig has been appointed as the Patient Care Ombudsman for the Debtors' hospitals and healthcare facilities in Massachusetts, Ohio, Pennsylvania, and Miami-Dade Florida Locations (Coral Gables, Hialeah, and Miami) (Docket No. 311).  Mrs. Susan Nielsen Goodman has been appointed as the Patient Care Ombudsman for the Debtors' hospitals and healthcare facilities in Arizona, Arkansas, Central/North Florida locations (Lauderdale Lakes, Sebastian River, Rockledge, and Melbourne), Louisiana, and Texas (Docket No. 312).

## General Disclosures Applicable to Schedules and Statements

1.  **Causes of Action**.  Despite their commercially reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules and Statements, including, without limitation, causes of action arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets.  The Debtors reserve all of their rights with respect to any claims or causes of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment, and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (collectively, "Causes of Action") they may have, and neither of these are in the Global Notes nor the Schedules and Statement.  These Global Notes and the Schedules and Statements shall not be deemed a waiver of any such claims or Causes of Action or in any way prejudice or impair the assertion of such claims.

2.  **Recharacterization**.  The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.  However, the Debtors may have improperly characterized, classified, categorized, or designated certain items.  The Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

3.  **Claim Designations**.  Any failure to designate a claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtors that such claim or amount is not "contingent," "unliquidated," or "disputed."  The Debtors reserve all of their rights to dispute, and to assert setoff rights, counterclaims, and defenses to any claim reflected on their Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, and classification, and to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed."   Listing a claim does not constitute an admission of (a) liability or (b) amounts due or owed, if any, in each case, by the Debtor against whom the claim is listed or by any of the other Debtors.

Listing (i) a claim on Schedule D as "secured," (ii) a claim on Schedule E/F as "priority" or "unsecured" or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract.

4.  **Contingent Claim**.  A claim that is dependent on the realization of some uncertain future event is a "contingent" claim.

5.     **Disputed Claim**.  A claim with respect to which the applicable Debtor and the claimant disagree as to the amount owed, whether any amount is owed, or the claim classification, is a "disputed" claim.

6.     **Unliquidated Claim Amounts**.  Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

7.     **Undetermined Amounts**.  The description of an amount as "undetermined" is not intended to reflect upon the materiality of such amount.

8.     **Zero Dollar Amounts**.  Amounts listed as zero are either $0, unliquidated, or undetermined.

9.     **Court Orders**.  Pursuant to certain orders of the Bankruptcy Court in the Debtors' chapter 11 cases entered on or about May 8, 2024 (the "First Day Orders"), the Debtors were authorized (but not directed) to pay, among other things, certain prepetition claims of employees, taxing authorities, insurance related obligations, obligations to customers, obligations to critical vendors, lien claimants, and 503(b)(9) claimants.  Accordingly, these liabilities may have been or may be satisfied in accordance with such orders. To the extent any such liabilities have been satisfied pursuant to a First Day Order, such liabilities generally are not listed in the Schedules and Statements.  Regardless of whether such claims are listed in the Schedules and Statements, to the extent such claims are paid pursuant to an order of the Bankruptcy Court (including the First Day Orders), the Debtors reserve all rights to amend or supplement their Schedules and Statements as is necessary or appropriate.

10.     **Valuation**.  In many instances, current market valuations are not maintained by or readily available to the Debtors.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations of all of their assets.  Accordingly, unless otherwise indicated, net book values as of the Reporting Date are reflected on the Schedules and Statements.  Exceptions to this include operating cash, cash equivalents, and certain other assets.  Operating cash is presented as bank balances as of the Petition Date.  Certain other assets, such as investments in subsidiaries and other intangible assets, are listed at undetermined amounts, as the net book values may vary materially from fair market values.  Amounts ultimately realized may vary from net book value (or other value so ascribed) and such variance may be material.  Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the value of each asset set forth herein.  In addition, the amounts shown for total liabilities exclude items identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements. Furthermore, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value.  The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset. Given, among other things, the current market valuation of certain assets and the valuation and nature of certain liabilities, nothing in the Debtors' Schedules and Statements shall be, or shall be deemed to be an admission that any Debtor was solvent or insolvent as of the Petition Date.

11. **Allocation of Liabilities**.  The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change.  The Debtors reserve the right to amend the Schedules and Statements as they deem appropriate in this regard.

12. **Excluded Assets and Liabilities**.  The Debtors believe that they have identified, but did not necessarily value, all material categories of assets and liabilities in the Schedules and Statements.  The Debtors have excluded certain categories of assets, goodwill, tax accruals, and liabilities from the Schedules and Statements, including accrued salaries, employee benefit accruals, accrued paid time off, accrued accounts payable, and deferred gains.  The Debtors also have excluded rejection damage claims of counterparties to executory contracts and unexpired leases that may be rejected (if any), to the extent such damage claims exist.  In addition, certain immaterial assets and liabilities may have been excluded.

13. **Confidential Information and Personally Identifiable Information**.  There may be instances where certain information in the Schedules and Statements was not included or redacted due to the nature of an agreement between a Debtor and a third party, concerns about the confidential nature of certain information (including personally identifiable information), concerns for the privacy of an individual, and/or due to privacy-related laws and/or regulatory regimes.  Pursuant to the *Order (I) Authorizing the Implementation of Procedures to Protect Confidential Patient Information and (II) Granting Related Relief* (Docket No. 88), the Debtors are authorized to redact the "protected health information"[4] of current or former patients in their Schedules and Statements.  The omissions are limited to only what is necessary to protect the Debtor or a third party and will provide interested parties with sufficient information to discern the nature of the listing.

14. **Unexpired Leases**.  The Debtors have not included in the Schedules and Statements the future obligations of any operating leases.  Additionally, the Debtors have not included in the Schedules any right-of-use operating lease assets or liabilities related to FASB Accounting Standards Update 2016-2 because the Debtors do not possess any ownership interest in the corresponding properties and believe that the addition of these items would be cumbersome and unnecessary for understanding the value of the Debtors' estate.  To the extent that there was an amount outstanding as of the Petition Date, the creditor has been included on Schedule E/F of the Schedules.  For certain property leases accounted for under GAAP as finance leases, the Debtors included the related leased property values as building assets in Schedule A/B, Part 9 and the related obligations as unsecured claims in Schedule E/F, Part 2.

15. **Contingent Assets**.  The Debtors believe that they may possess certain claims and causes of action against various parties.  The Debtors may also possess contingent claims in the form of various avoidance actions they could commence under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws.  The Debtors, despite reasonable efforts, may not have set forth all of their causes of action against third parties as assets in their

---

[4] As defined by 45 C.F.R. § 160.103.

Schedules and Statements. The Debtors reserve all of their rights with respect to any claims, causes of action, or avoidance actions they may have and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions, or causes of action or in any way prejudice or impair the assertion of such claims. The Debtors may also possess contingent and unliquidated claims against non-Debtor affiliates for various financial accommodations and similar benefits they have extended from time to time, including contingent and unliquidated claims for contribution, reimbursement, and/or indemnification arising from, among other things, (i) letters of credit, (ii) notes payable and receivable, (iii) surety bonds, (iv) guarantees, (v) indemnities, and (vi) warranties. Additionally, prior to the Petition Date, each Debtor, as plaintiff, may have commenced various lawsuits in the ordinary course of its business against third parties seeking monetary damages. Refer to each Statement, Part 3 Question 7, for lawsuits commenced prior to the Petition Date in which the Debtor was a plaintiff.

16.     **Receivables**. The Debtors have included only the aggregate net book value of accounts receivables and have not listed individual customer receivable balance information as the Company considers its customer list to be proprietary and confidential. The reported net book value of accounts receivable are at net amounts after the established gross charges for goods and services charges are reduced by contractual adjustments provided to third-party payors and reduced by discounts provided to certain parties.

17.     **Inventories**. Inventories are stated at lower of cost or net realizable value using the first-in, first-out method. On a periodic basis, personnel from the applicable region are assigned to observe inventory counts, procedures, and to spot check certain counts. All inventories are presented without consideration of any mechanics' liens.

18.     **Intercompany Accounts**. The Debtors maintain intercompany accounts in their books and records that record transfers of cash and other intercompany transactions among Steward subsidiaries and affiliates. Although efforts have been made to attribute these transactions to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such transactions to a different legal entity, as is necessary or appropriate. For additional information regarding the Debtors' intercompany transactions and related cash management protocols, see *Emergency Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Continue Their Existing Cash Management System, (B) Maintain Existing Business Forms and Intercompany Arrangements, (C) Continue Intercompany Transactions, and (D) Continue Employee Credit Card Program; (II) Extending Time to Comply with Requirements of 11 U.S.C. § 345(b); and (III) Granting Related Relief* (Docket No. 5) (the "Cash Management Motion").

Receivables and payables among the Debtors in these cases (each an "Intercompany Receivable" or "Intercompany Payable") are reported in the Schedules based upon the net intercompany balances. To the extent that a Debtor owes an Intercompany Payable, it is reported on Schedule F as a liability of such Debtor. To the extent that a Debtor has an Intercompany Receivable, it is reported on Schedule B as an asset of such Debtor. It would be unduly burdensome and require significant resources for the Debtors to allocate individual Intercompany Receivables and Intercompany Payables to specific Debtors, so such allocations are not reported in the Schedules.

19.     **Guarantees and Other Secondary Liability Claims**.  The Debtors have exercised reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, "Guarantees") in their executory contracts, unexpired leases, secured financings, debt instruments, and other agreements.  Where such Guarantees have been identified, they have been included in the relevant Schedule H for the Debtor or Debtors affected by such Guarantees.  However, certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements may have been inadvertently omitted.  The Debtors reserve all of their rights to amend, supplement, and otherwise modify the Schedules to the extent that additional Guarantees are identified.

20.     **Intellectual Property Rights**.  Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner, however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another.  Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

21.     **Executory Contracts**.  The Debtors have not set forth executory contracts as assets in the Schedules and Statements.  The Debtors' executory contracts have been set forth in Schedule G.  Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so due to the complexity and size of the Debtors' businesses.  Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend, supplement, or otherwise modify Schedule G.

22.     **Mechanics' Liens**.   The inventories, property, and equipment listed in the Statements and Schedules are presented without consideration of any asserted mechanics', materialmen, shippers', or similar liens that may attach, or have attached, to such inventories, property, and equipment.

23.     **Estimates and Assumptions**.  To prepare and file the Schedules and Statements in accordance with the deadline under the *Order Extending Time for Debtors to File (A) Schedules of Assets and Liabilities, (B) Schedules of Current Income and Expenditures, (C) Schedules of Executory Contracts and Unexpired Leases, (D) Statements of Financial Affairs, and (E) Rule 2015.3 Financial Reports* (Docket No. 92), management was required to make certain estimates and assumptions that affected the reported amounts of these assets and liabilities.  The Debtors reserve all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

24.     **Fiscal Year**.  Each Debtor's fiscal year ends on December 31.

25.     **Currency**.  Unless otherwise indicated, all amounts are reflected in U.S. dollars.

26.     **Property and Equipment**.  Unless otherwise indicated, owned property (including real property) and equipment are stated at net book value.  The Debtors may lease lease furniture, fixtures, and equipment from certain third party lessors.  Any such leases are set forth in the Schedules and Statements.  Nothing in the Schedules and Statements is or should be construed as an admission as to the determination of the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to same.

27.     **Claims of Third-Party Related Entities**.  While the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to such parties.  Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered disputed, whether or not they are designated as such.

28.     **Interest in Subsidiaries and Affiliates**.  Steward Health Care Holdings LLC is the sole owner of Steward Health Care System LLC, and Steward Health Care System LLC owns directly or indirectly all of the equity interest in the other 165 Debtor subsidiaries and affiliates as well as 23 additional non-Debtor subsidiaries and affiliates that are not Debtors in these chapter 11 cases.  Interests in subsidiaries arise from stock ownership or ownership through a membership interest.  Each Debtor's <u>Schedule A/B, Part 4, Question 15</u> and <u>Statements, Part 13, Question 25</u> schedules its ownership interests, if any, in subsidiaries and affiliates.  Assets such as investments in subsidiaries are listed as undetermined amounts as of the Petition Date because the book values may materially differ from market values.

29.     **Umbrella or Master Agreements**.  Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors.  Where relevant, such agreements may have been listed in the Schedules and Statements of only the Debtor(s) that signed the original umbrella or master agreement.  Other Debtors, however, may be liable together with such Debtor(s) on account of such agreements. The Debtors reserve all rights to amend the Schedules and Statements to reflect changes regarding the liability of the Debtors with respect to such agreements, if appropriate.  Additionally, by listing an umbrella or master agreement in these Schedules and Statements, the Debtors make no representation as to the severability of such agreements and their related contracts and leases, including any subleases, and the Debtors reserve any and all rights with respect to any arguments or claims it may have in regard to the severability of such agreements.

30.     **Paid Claims**.  Pursuant to the First Day Orders, the Debtors were authorized to pay, among other things, certain prepetition claims of employees, taxing and regulatory agencies, insurance, health plan, and lien claimants, and critical vendors and claimants under section 503(b)(9) of the Bankruptcy Code.  Accordingly, these liabilities may have been or may be satisfied in accordance with such First Day Orders.  To the extent any such liabilities have been satisfied pursuant to a First Day Order, such liabilities generally are not listed in the Schedules and Statements.  Regardless of whether such claims are listed in the Schedules and Statements, to the extent such claims are paid pursuant to an order of the Bankruptcy Court (including the First

Day Orders), the Debtors reserve all rights to amend, supplement, or otherwise modify the Schedules and Statements.

31.    **Other Paid Claims.** To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable by all parties, subject to Bankruptcy Court approval.  To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

32.    **Setoffs and Recoupment**.  The Debtors routinely take and are subject to setoffs with customers and vendors in the ordinary course of business.  Setoffs in the ordinary course can result from various items including, but not limited to, intercompany transactions, counterparty settlements, pricing discrepancies, returns, refunds, chargebacks, discounts, and negotiations and/or other disputes between the Debtors and their customers or vendors.  These setoffs are consistent with the ordinary course of business in the Debtors' industry and can be particularly voluminous, unduly burdensome and costly for the Debtors to regularly document.  Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, the Debtors did not independently verify these ordinary course setoffs and, therefore, certain ordinary course setoff are or may not be included separately in the Schedules and Statements.  In addition, some amounts listed in the Schedules and Statements may have been affected by setoffs or nettings by third parties of which the Debtors are not aware. The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted.

33.    **Insiders**.   In the circumstances where the Schedules and Statements require information regarding "insiders," the Debtors define "insiders" as (a) officers, directors, and anyone in control of a corporate debtor and their relatives; and (b) affiliates of the Debtor and insiders of such affiliates.  The listing of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed as an admission of any fact, right, claim, or defense and all such rights, claims, and defenses are hereby expressly reserved. Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used for: (1) the purposes of determining (a) control of the Debtors; (b) the extent to which any individual exercised management responsibilities or functions; (c) corporate decision-making authority over the Debtors; or (d) whether such individual could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability; or (2) any other purpose.

34.    **Indemnification**.  Statement 18 of Steward's *Seventh Amended and Restated Limited Liability Company Agreement* (the "Agreement") provides indemnification, on the particular terms set forth in the Agreement, for persons made a party to any action, suit or proceeding by reason of the fact that he or she is a managing member, director or officer of Steward, or is serving at the request of Steward as a director or officer of any other entity, including any subsidiary of the Company.  Certain other Debtors also provide indemnification to certain such persons.   The Debtors have not reached a determination as to whether certain potentially

indemnified persons are ineligible for indemnification under the terms of the Agreement and such persons are therefore listed on Steward's Schedule E/F.  To the extent that Steward has entered into separate contracts with certain directors and officers and former directors and officers, agreeing to indemnify them in certain circumstances according to the particular terms and conditions set forth in those contracts, such contracts are listed on Steward's Schedule G.  The Debtors have not reached a determination as to whether the persons who are parties to these contracts are eligible for indemnification.  Consequently, the Debtors have separately listed on Schedule G all contracts with such persons, but Debtors reserve all rights with respect thereto, including the right to assert that the individual is not entitled to indemnification and that the provisions do not constitute executory contracts.

35.     **Payments**.  The financial affairs and businesses of the Debtors are complex.  Prior to the Petition Date, the Debtors maintained a cash management and disbursement system in the ordinary course of their businesses (the "Cash Management System") (as described in the Cash Management Motion).  Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, as is necessary or appropriate. Payments made are listed by the legal entity making such payment notwithstanding that many such payments may have been made on behalf of another legal entity.

36.     **Totals**.  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements.  To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.  The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.  To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in these Schedules are inclusive of each Debtor's guarantor obligations.

37.     **Global Notes Control**.  These Global Notes pertain to and comprise an integral part of each of the Debtors' Schedules and Statements and should be referenced in connection with any review thereof.  In the event that the Schedules or Statements differ from any of the foregoing Global Notes, the Global Notes shall control.

38.     **"As Of" Information Date**.  To the best of the Debtors' knowledge and except as otherwise noted herein, the asset information provided herein represents the asset data of the Debtors as of April 30, 2024, the date of the Debtors' month-end closure to their balance sheet, and the liability information herein represents the liability data of the Debtors as of the close of business on the May 5, 2024.  Amounts ultimately realized may vary from net book value (or the applicable value ascribed herein) and such variance may be material.  Accordingly, the Debtors reserve all of their rights to amend or adjust the value of each asset set forth herein. In addition, the amounts showing for total liabilities exclude items identified as "unknown," "disputed," "contingent," or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.

39.     **Duplication**. Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in multiple parts of the Statements and Schedules.  To the extent these disclosure would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

40.     **Deferred Compensation Plans.**     Steward and certain of its affiliates, including the Debtors, sponsored two non-qualified deferred compensation plans designed to provide benefits to a select group of current and former employees upon certain eligible events (the "Deferred Compensation Plans"), both of which were terminated in connection with the Debtors' filing for bankruptcy.  The Debtors maintain two "rabbi trusts" for the purpose of paying benefits to participants of the Deferred Compensation Plans.  The rabbi trusts hold various corporate-owned life insurance policies (the "COLIs") and other investment vehicles (collectively with the COLI policies, the "Rabbi Trust Assets") to fund the account balance liabilities associated with the Deferred Compensation Plans.  However, in the event of bankruptcy, the Rabbi Trusts Assets are subject to the claims of the Debtors' general creditors.  The Debtors listed the Rabbi Trust Assets on Debtor Steward Health Care System LLC's Schedule A/B 73.  Claims related to the Deferred Compensation Plans have been consolidated and reported on Debtor Steward Health Care System LLC's Schedule E/F.  The liabilities related to the Deferred Compensation Plans are listed on Steward Health Care System LLC's Schedule H.  With respect to all information regarding Deferred Compensation Plans presented herein, employee names and addresses have been redacted for privacy purposes.  The listing of any asset or liability related to the Deferred Compensation Plans in the Schedules and Statements do not constitute any admission, conclusion, or waiver of any claim or right in any respect.  The Debtors reserve all of their rights to dispute, recharacterize, reallocate, and otherwise restate, as applicable, their rights and obligations in respect of the Deferred Compensation Plans.

41.     **MPT Lease Obligations.**     Steward and certain of its affiliates, including the Debtors, lease, as tenants, 36 facilities from affiliates of Medical Properties Trust, Inc., a publicly traded real estate investment trust that owns and leases healthcare facilities, pursuant to those certain (i) *Second Amended and Restated Master Lease Agreement*, dated as of March 14, 2022 (as amended, restated, amended and restated, the "Master Lease I"), by and among the lessors and lessees party thereto, and (ii) *Master Lease Agreement*, dated as of March 14, 2022, by and among the lessors and lessees party thereto (as amended, restated, amended and restated, the "Master Lease II" and, together with the Master Lease I, the "Master Leases").  The Debtors conduct substantially all of their hospital operations on the properties subject to the Master Leases.  The Debtors have not included in the Schedules and Statements the future obligations of any operating leases.  Additionally, the Debtors have not included in the Schedules any right-of-use operating lease assets or liabilities related to FASB Accounting Standards Update 2016-2 because the Debtors do not possess any ownership interest in the corresponding properties and believe that the addition of these items would be cumbersome and unnecessary for understanding the value of the Debtors' estate.  To the extent that there was an amount outstanding as of the Petition Date, the creditor has been included on Schedule E/F of the Schedules.  For certain property leases accounted for under GAAP as finance leases, the Debtors included the related leased property values as building assets in Schedule A/B, Part 9 and the related obligations as unsecured claims in Schedule E/F, Part 2.

42.     **Captive Insurance Program**.  The Debtors and certain of their employed and affiliated physicians obtain medical malpractice and comprehensive general liability coverages from TRACO International Group S. DE R.L. ("TRACO"), a captive insurance company domiciled in the Country of Panama (the "Captive Insurer Program").  The Debtors have made reasonable efforts to ascertain their rights and obligations related to the Captive Insurer Program based on a diligent review of their books and records.  The Debtors have listed medical malpractice

claims and general liability claims covered under the Captive Insurer Program on the applicable Debtor's Schedule E/F. The names and addresses of claimants holding medical malpractice and general liability claims against a Debtor have been redacted for privacy purposes and pursuant to the *Order (i) Authorizing Debtors to (A) File a Consolidated Creditors Matrix and a Consolidated List of 30 Largest Unsecured Creditors, And (B) Redact Certain Personal Identification Information; (II) Authorizing Service of Parties in Interest by Email; and (III) Approving Form and Manner of Notifying Creditors of Commencement of Chapter 11 Cases and Other Information* (Docket No. 90). The listing of any medical malpractice or general liability claim in Schedule E/F does not constitute an admission, conclusion, or waiver in any respect.

**Specific Notes Regarding Schedule A/B**

1. **Schedule A/B, Part 1, Question 3 – Checking, savings, or other financial accounts, CDs, etc**. Schedule A/B, Part 1, Question 3 lists closing bank balances as of the Reporting Date.

2. **Schedule A/B, Part 2, Questions 5-8 – Deposits and prepayments**. Certain prepaid or amortized assets are listed in Part 2 in accordance with the Debtors' books and records. The amounts listed in Part 2 do not necessarily reflect assets the Debtors will be able to collect or realize. The amounts listed in Part 2 include, among other things, prepaid rent, prepaid IT maintenance, and prepaid professional expenses.

The Debtors have numerous deposits with utility companies serving certain geographies with multiple facilities. The carrying value of the deposits, as reflected in each of the Debtors' records, are listed in Part 2.

The Debtors also maintain security deposits in connection with the Debtors' non-residential real property leases. These deposits are included in the Schedules for the appropriate legal entity.

Prepaid expenses primarily consist of cash in advance amounts paid to numerous vendors in connection with the Debtors' operations.

3. **Schedule A/B Part 3, Questions 10-12 – Accounts receivable**. The Debtors' accounts receivable information includes receivables from the Debtors' customers, vendors, or other outside parties, which are reported net of any amounts that, as of the Reporting Date, may be owed to such parties in the form of offsets or other contractual price adjustments pursuant to the Debtors' customer programs and day-to-day operations or may, in the Debtors' opinion, be difficult to collect from such parties due to the passage of time or other circumstances. The accounts receivable balances in this section exclude intercompany related receivables.

4. **Schedule A/B, Part 4, Question 14.** Ownership interests in subsidiaries and affiliates primarily arise from common stock ownership or member or partnership interests. Unless otherwise listed in the Schedules, the Debtors' respective ownership interests in subsidiaries are listed in Schedule A/B, Part 4 as undetermined amounts because the fair market value of such interests is dependent on numerous variables and factors.

5.      **Schedule A/B, Part 4, Question 15 – Stock and interests in incorporated and unincorporated businesses**.  See Schedule A/B, Part 4, Question 15 for additional businesses the Debtor was a parent of or owned a significant interest in.

6.      **Schedule A/B, Part 7, Question 39 – Office equipment**.  Certain of the Debtors' office equipment, furnishings, and supplies are not capitalized based on its accounting policies and procedures. These assets are not listed herein.

7.      **Schedule A/B, Part 7, Question 40 – Business equipment and spare parts**. Certain of the Debtors' machinery, fixtures, equipment, and supplies used in business are not capitalized based on its accounting policies and procedures. These assets are not listed herein.

8.      **Schedule A/B, Part 8, Question 47 – Automobiles**. The Debtor's automobiles are consolidated under Schedules A/B Part 7, Question 41 (Equipment) based on its accounting policies and procedures. These assets are not listed herein.

9.      **Schedule A/B, Part 8, Question 50 – Business equipment and spare parts**. Certain of the Debtors' machinery, fixtures, equipment, and supplies used in business are not capitalized based on its accounting policies and procedures. These assets are not listed herein.

**Specific Notes Regarding Schedule D**

Except as otherwise agreed pursuant to a stipulation or agreed order or general order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of any Debtor.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including, without limitation, any intercompany agreement) related to such creditor's claim.  Further, while the Debtors have included the results of Uniform Commercial Code searches, the listing of such results is not nor shall it be deemed an admission as to the validity of any such lien.  Conversely, the Debtors made reasonable, good faith efforts to include all liens on Schedule D, but may have inadvertently failed to include an existing lien because of, among other things, the possibility that a lien may have been imposed after the Uniform Commercial Code searches were performed or a vendor may not have filed the requisite perfection documentation.  Moreover, the Debtors have not included on Schedule D parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights. The Debtors have reported outstanding letters of credit in Schedule D.  Although there are multiple parties that may hold a portion of the Debtors' funded debt, only the administrative agents have been listed for purposes of Schedule D.  The amounts reflect outstanding principal (including capitalized payment-in-kind amounts as applicable) and accrued and unpaid interest of the Debtors' prepetition loan facilities as of the Petition Date.

In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities.  The descriptions provided in Schedule D are intended only as a summary.  Reference to

the applicable loan agreements, notes, indenture, and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.

Except as specifically stated herein, certain real property lessors, equipment lessors, utility companies, and other parties which may hold security deposits or other security interests have not been listed on Schedule D and have not filed a UCC-1 financing statement.

Any changes to the status of any liens or security rights since the Petition Date may not be adequately reflected in Schedule D. Therefore, the Debtors may have listed claims with secured status that have changed, or failed to list certain parties whose claims may be secured through rights of setoff, deposits or advance payments posted by, or on behalf of, the Debtors, or judgment or statutory lien rights on Schedule D.

## Specific Notes Regarding Schedule E/F

1.     **Schedule E/F, Part 1, Question 1 – Creditors Holding Priority Unsecured Claims**. The listing of any claim on Schedule E/F does not constitute an admission by the Debtors that such claim is entitled to priority treatment under sections 503 and/or 507 of the Bankruptcy Code. The Debtors reserve all rights to dispute the amount and/or the priority status of any claim on any basis at any time.

Claims owing to various taxing authorities to which the Debtors potentially may be liable are included on the Debtors' Schedule E/F. Certain of such claims, however, may be subject to ongoing audits and/or the Debtors otherwise are unable to determine with certainty the amount of the remaining claims listed on Schedule E/F. Therefore, the Debtors have listed all such claims as unknown in amount, pending final resolution of ongoing audits or other outstanding issues.

As noted above, the Bankruptcy Court entered a First Day Order granting authority to the Debtors to pay certain prepetition employee wage and other obligations in the ordinary course (Docket No. 86) (the "Employee Wage Order"). Pursuant to the Employee Wage Order, the Bankruptcy Court granted the Debtors authority to pay or honor certain prepetition obligations for employee wages, salaries, bonuses and other compensation, reimbursable employee expenses, and employee medical and similar benefits. The Debtors have not listed on Schedule E/F any wage or wage-related obligations for which the Debtors have been granted authority to and intend to pay pursuant to the Employee Wage Order. The Debtors have not included accrued paid time off balances as of the Petition Date in the Schedules and Statements. The Debtors will make available to their employees accrued paid time off balances as of the date of their termination of employment with the Debtors and supplement the Schedules and Statements as necessary.

2.     **Schedule E/F, Part 2, Question 3 – Creditors Holding Nonpriority Unsecured Claims**. The Debtors have used commercially reasonable efforts to list all general unsecured claims against the Debtors on Schedule E/F based upon the Debtors' existing books and records. The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims, and the actual amount of claims against the Debtors may vary from those liabilities represented on Schedule E/F Part 2.

The Debtors record certain liabilities at Steward Health Care System LLC, with specific information contained in their accounting systems, these liabilities are specifically identified to that related Debtor.

Schedule E/F, Part 2, does not include certain deferred credits, deferred charges, deferred liabilities, accruals, or general reserves.  Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, such amounts are reflected on the Debtors' books and records as required in accordance with GAAP.  Such accruals are general estimates of liabilities and do not represent specific claims as of the Petition Date.

Schedule E/F, Part 2, does not include certain reserves for potential unliquidated contingencies that historically were carried on the Debtors' books as of the Petition Date; such reserves were for potential liabilities only and do not represent actual liabilities as of the Petition Date.

The claims listed in Schedule E/F, Part 2, arose or were incurred on various dates.  In certain instances, the date on which a claim arose is an open issue of fact.  Determining the date upon which each claim in Schedule E/F, Part 2, was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F, Part 2.

Schedule E/F, Part 2 and Statements, Part 3, Question 7, contain information regarding potential and pending litigation involving the Debtors.  In certain instances, the Debtor that is the subject of the litigation is unclear or undetermined.  The amounts for these potential claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements.  To the extent that litigation involving a particular Debtor has been identified, however, such information is contained in the Schedule for that Debtor (even though the litigation may actually impact another Debtor or non-Debtor affiliate). For the avoidance of doubt, demand letters received from potential litigants that do not list a specific Debtor are listed in the Schedules and Statements for Steward Health Care System LLC.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases.  Such prepetition amounts, however, may be paid in connection with the assumption, or assumption and assignment, of an executory contract or unexpired lease.  In addition, Schedule E/F, Part 2, does not include rejection damage claims of the counterparties to the executory contracts and unexpired leases that have been or may be rejected, to the extent such damage claims exist.

In many cases, the claims listed on Schedule E/F, Part 2, arose, accrued, or were incurred on various dates or on a date or dates that are unknown to the Debtors or are subject to dispute. Where the determination of the date on which a claim arose, accrued, or was incurred would be unduly burdensome and costly to the Debtors' estates, the Debtors have not listed a specific date or dates for such claim(s).

As of the time of filing of the Schedules and Statements, the Debtors may not have received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained on Schedules D and E/F may be incomplete. The

Debtors reserve their rights to, but undertake no obligations to, amend Schedules D and E/F if and as they receive such invoices.

Except in certain limited circumstances, the Debtors have not scheduled contingent and unliquidated liabilities related to guaranty obligations on Schedule E/F, Part 2. Such guaranties are, instead, listed on Schedule H.

The claims of individual creditors for, among other things, goods, services, or taxes listed on the Debtors' books and records may not reflect credits or allowances due from such creditors. The Debtors reserve all of their rights in respect of such credits or allowances. The dollar amounts listed may be exclusive of contingent or unliquidated amounts.

Unless the Debtors were required to pay ancillary costs, such as freight, miscellaneous fees and taxes, such costs are not included in the liabilities scheduled, as such amounts do not represent actual liabilities of the Debtor.

Although the Debtors have made commercially reasonable efforts to identify all known general unsecured Equal Employment Opportunity Commission and Occupational Safety and Health Administration claims, the Debtors may not have identified and/or set forth all such claims.

3.      **Schedule E/F, Part 2, Question 3 – Trade Payables**. Trade payables listed on Schedule E/F contain the prepetition liability information available to the Debtors as of the filing date of the Schedules and exclude invoices that were paid subsequent to the Petition Date related to prepetition obligations pursuant to the certain First Day Orders.

4.      **Schedule – Intercompany**. The Debtors maintain business relationships among each other and with their twenty-three subsidiaries (collectively, the "non-Debtor Subsidiaries"), resulting in intercompany receivables and payables in the ordinary course of business. Such Intercompany Claims (defined below) arise (a) among the Debtors and (b) between Steward and non-Debtor Subsidiaries pursuant to prepetition management service agreements, intercompany trade arrangements, intercompany loan agreements, and other intercompany arrangements. The respective intercompany accounts payable and accounts receivable are listed at the net amount due to/due from the Debtor as of the Reporting Date on Schedule E/F for each Debtor.

**Specific Notes Regarding Schedule G**

While the Debtors' existing books, records, and financial systems have been relied upon to identify and schedule executory contracts on each of the Debtor's Schedule G, and while the Debtors have devoted substantial internal and external resources to identifying and providing the requested information for as many executory contracts as possible and to ensuring the accuracy of Schedule G, inadvertent errors, omissions, or over-inclusions may have occurred. The Debtors do not make, and specifically disclaim, any representation or warranty as to the completeness or accuracy of the information set forth on Schedule G. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G and to amend or supplement Schedule G as necessary. The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not

be listed therein despite the Debtors' use of reasonable efforts to identify such documents. Further, unless otherwise specified on Schedule G, each executory contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument or other document is listed thereon.

In some cases, the same supplier or provider appears multiple times on Schedule G. This multiple listing is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider.

In the ordinary course of business, the Debtors may have issued numerous purchase orders for supplies, product, and related items which, to the extent that such purchase orders constitute executory contracts, are not listed individually on Schedule G. To the extent that goods were delivered under purchase orders prior to the Petition Date, vendors' claims with respect to such delivered goods are included on Schedule E/F. Similarly, in the ordinary course of business, the Debtors may have issued numerous statements of work or similar documents for services which, to the extent that such statements of work or similar documents constitute executory contracts, are not listed individually on Schedule G. To the extent that services were delivered under statements of work prior to the Petition Date, vendors' claims with respect to such services are included on Schedule E/F.

As a general matter, certain of the Debtors' executory contracts and unexpired leases could be included in more than one category. In those instances, one category has been chosen to avoid duplication. Further, the designation of a category is not meant to be wholly inclusive or descriptive of the entirety of the rights or obligations represented by such contract.

Certain of the executory contracts and unexpired leases listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal, right to lease additional space, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as easements, rights of way, subordination, nondisturbance, and attornment agreements, supplemental agreements, amendments/letter agreements, title agreements, employment-related agreements, and confidentiality and non-disclosure agreements. Such documents may not be set forth in Schedule G.

The Debtors hereby reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument related to a creditor's claim, to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G, and to amend or supplement Schedule G as necessary. Inclusion of any agreement on Schedule G does not constitute an admission that such agreement is an executory contract or unexpired lease and the Debtors reserve all rights in that regard, including, without limitation, that any agreement is not executory, has expired pursuant to its terms, or was terminated prepetition.

In addition, certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings. The presence of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease. The Debtors reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, or any document or instrument (including, without limitation, any intercreditor or intercompany agreement) related to a creditor's claim. Certain of the contracts, agreements, and leases listed on Schedule G may have been entered into by more than one of the Debtors. Further, the specific Debtor obligor to certain of the executory contracts or unexpired leases could not be specifically ascertained in every circumstance. In such cases, the Debtors used their best efforts to determine the correct Debtor's Schedule G on which to list such executory contract or unexpired lease.

In the ordinary course of business, the Debtors have entered into numerous contracts or agreements, both written and oral, regarding the provision of certain services on a month to month basis. To the extent such contracts or agreements constitute executory contracts, these contracts and agreements may not be listed individually on Schedule G.

Certain of the executory contracts may not have been memorialized and could be subject to dispute; executory agreements that are oral in nature have not been included in Schedule G.

Certain of the executory contracts and unexpired leases listed in Schedule G were assigned to, assumed by, or otherwise transferred to certain of the Debtors in connection with, among other things, acquisitions by the Debtors. The Debtors used their best efforts to determine the correct Debtor's Schedule G on which to list such executory contract or unexpired lease.

The Debtors generally have not included on Schedule G any insurance policies, the premiums for which have been prepaid. The Debtors submit that prepaid insurance policies are not executory contracts pursuant to section 365 of the Bankruptcy Code because no further payment or other material performance is required by the Debtors. Nonetheless, the Debtors recognize that in order to enjoy the benefits of continued coverage for certain claims under these policies, the Debtors may have to comply with certain non-monetary obligations, such as the provision of notice of claims and cooperation with insurers. In the event that the Bankruptcy Court were to ever determine that any such prepaid insurance policies are executory contracts, the Debtors reserve all of their rights to amend Schedule G to include such policies, as necessary or appropriate. A description of the Debtors' insurance policies and insurance programs is included in the *Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue Insurance Programs, Surety Bonds, and Letters of Credit and (B) Satisfy Obligations with Respect Thereto; (II) Granting the Automatic Stay to Permit Employees to Proceed with Worker's Compensation Claims; and (III) Granting Related Relief* (Docket No. 6) and the exhibits attached thereto.

## Specific Notes Regarding Schedule H

The Debtors are party to various debt agreements, which were executed by multiple Debtors. In the ordinary course of their business, the Debtors pay certain expenses on behalf of their affiliates. The Debtors may not have identified certain guarantees that are embedded in the

Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. Further, certain of the guarantees reflected on Schedule H may have expired or may no longer be enforceable. Thus, the Debtors reserve their rights to amend Schedule H to the extent that additional guarantees are identified, or such guarantees are discovered to have expired or become unenforceable.

In the ordinary course of their business, the Debtors may become subject to pending or threatened litigation and claims arising out of certain ordinary course of business transactions. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. Because such claims are contingent, disputed, and/or unliquidated, such claims have not been set forth individually on Schedule H. However, some such claims may be listed elsewhere in the Schedules and Statements.

The inclusion of or failure to include any entity on Schedule H does not constitute a waiver or an admission that such entity is a co-debtor or co-liable with respect to any pending or threatened litigation. The Debtors reserve all rights with respect to any claims related to any pending or threatened litigation.

**Specific Notes Regarding Statements**

1.     **Statements, Part 1, Question 1 – Gross Revenues.** The reported revenues are at net amounts after the established gross charges for goods and services are reduced by contractual adjustments provided to third-party payors and discounts provided to certain parties.

2.     **Statements, Part 2, Question 3 and 4 – List certain transfers made before filing for bankruptcy**. In the ordinary course of their businesses, the Debtors maintain a complex cash management system. The Debtors maintain a Master Disbursement Account (as defined in the Cash Management Motion) from which the majority of disbursements are made along with separate disbursement bank accounts for, among other things, Steward's payroll, employee healthcare benefit plans, and accounts payable (collectively, the "Disbursement Accounts"). The Disbursement Accounts are used to satisfy their ordinary course operating expenses and financial obligations as further explained in the Cash Management Motion. Consequently, most, if not all, payments to creditors and insiders listed in response to Questions 3 and 4 on each of the Debtors' Statements reflect payments made by Steward from one of its Disbursement Accounts pursuant to the Debtors' cash management system described in the Cash Management Motion. The Disbursement Accounts are typically funded by draws from Steward's Master Disbursement Account on a daily basis in the amount of upcoming disbursements. The Debtors conduct various business transactions among themselves (the "Intercompany Transactions"), including moving cash within the Cash Management System between different bank accounts. The Debtors are able to track and account for each Intercompany Transaction and the resulting intercompany claims ("Intercompany Claims"). Intercompany Transactions are not required to be, and typically are not, settled by actual transfers of cash among the Debtors. The Debtors maintain records of ordinary course Intercompany Transactions and can ascertain, trace, and account for the Intercompany Transactions.

3.     **Statements, Part 2, Question 3 – Certain payments or transfers to creditors within 90 days before filing this case.** Prior to the Petition Date, the Debtors maintained a

centralized cash management system through which certain Debtors made payments on behalf of certain Debtor affiliates and certain non-Debtor affiliates, as further explained in the Cash Management Motion.  As further described in the Cash Management Motion, these payments resulted in the creation of corresponding intercompany payables and receivables. Consequently, the payments to creditors listed in response to Statements, Part 2, Question 3 in each of the Debtors' Statements reflect payments made from bank accounts maintained by Steward Health Care System LLC, notwithstanding that certain obligations may be obligations of one or more of the other Debtors.

The payments disclosed in Statements, Part 2, Question 3 are based on payments made by the Debtors with payment dates from February 6, 2024 through May 5, 2024.  The actual dates that cash cleared the Debtors' bank accounts were not considered.  The Debtors' accounts payable system does not include the corresponding payment clear dates and compiling this data would have required a significant manual review of individual bank statements.  It is expected, however, that many payments included in Statements, Part 2, Question 3 have payment clear dates that are the same as payment dates (*e.g.*, wires and other forms of electronic payments).  The response to Statements, Part 2, Question 3 excludes disbursements or transfers listed on Statements, Part 2 Question 4.  Amounts still owed to creditors will appear on the Schedules for each of the Debtors, as applicable.

All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed on Statements, Part 6, Question 11 and are not listed on Statements, Part 2, Question 3.

4.      **Statements, Part 2, Question 4 – Payments or other transfers of property made within 1 year before filing this case that benefited any insider.**  The listing of any individual or entity as an insider does not constitute an admission or a final determination that any such individual or entity is or is not an insider. Distributions by the Debtors to their directors and officers are listed in the attachment to Statements, Part 2, Question 4. Certain directors and executive officers are directors and executive officers of multiple Debtor entities. Individual payments to Debtor affiliates are reflected in the Debtors' responses to Question 4.

5.      **Statements, Part 2, Question 6 – Setoffs.**  For a discussion of setoffs and nettings incurred by the Debtors, refer to section 32 of the Global Notes.

6.      **Statements, Part 3, Question 7 – Legal actions**.  Information provided on Statements, Part 3, Question 7 includes only those legal disputes and administrative proceedings that are formally recognized by an administrative, judicial, or other adjudicative forum.  While the Debtors believe they were diligent in their efforts, it is possible that certain suits and proceedings may have been inadvertently excluded in the Debtors' response to Statements, Part 3, Question 7. Additionally, the Debtors may have causes of action against other parties that have not formally been commenced, and thus any such causes of action have not been included on SOFA Part 3, Question 7.  The Debtors reserve all of their rights to amend or supplement their response to Statements, Part 3, Question 7.

7.     **Statements, Part 4, Question 9 – Certain gifts and charitable contributions**. The donations and/or charitable contributions listed in response to SOFA 9 represent payments made to third parties during the applicable timeframe that were recorded as such within the Debtors books and records.

8.     **Statements, Part 6, Question 11 – Payments related to bankruptcy**. All disbursements listed in Question 11 were initiated and disbursed by Steward Health Care System LLC, but were for the benefit of all Debtors. All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed on that Debtor's response to SOFA Part 6, Question 11. Additional information regarding the Debtors' retention of professional service firms is more fully described in individual retention applications and related orders. In addition, the Debtors have listed payments made to professionals retained by the Debtors but not payments made to advisors of postpetition lenders or other parties on account of any applicable fee arrangements.

9.     **Statements, Part 6, Question 13 – Other Transfers**. The total amount or value of the transferred properties for each transaction noted in response to Question 13 reflects the aggregate amount of value of transferred property for all applicable Debtors under each transaction.

10.    **Statements, Part 10, Question 20 – Off-premises storage**. The locations listed for off-premises storage do not include shippers that are holding goods in-transit, including but not limited to goods on ships, in trucks, or in warehouses where they may be temporarily stored during the transport process. In addition, the Debtors have excluded off premise storage for documentation retention held at multiple locations.

11.    **Statements, Part 12, Questions 22-24 – Details about environmental information**. The Debtors have or in the past have had operations in many locations. In certain locations, the Debtors no longer have any operations and may no longer have relevant records, or the records may no longer be complete or reasonably accessible or reviewable. Some individuals who once possessed responsive information are no longer employed by the Debtors. For all these reasons, it may not be possible to identify and supply the requested information for every "site" and "proceeding" responsive to Questions 22-24. The Debtors have devoted substantial internal and external resources to identifying and providing the requested information for as many responsive sites and proceedings as reasonably possible. The Debtors may supplement or amend this response in the future. Due to the number of potentially responsive matters, the practical burdens in compiling information on inactive matters and the presumably lower relevance of information on inactive matters, information is presented only for matters that have been active within the last few years and that the Debtors do not consider to be closed. When some requested categories of information were not reasonably available for a listed "site" or "proceeding," the Debtors' response gives as much information as was reasonably available. When a site is the subject of a proceeding, settlement or order listed in the response to Question 22, the site and notices related to it are not also listed in the responses to Questions 23 or 24. Similarly, sites that are listed in the response to Question 23 (sites for which the Debtors have received notice from a governmental unit) are not repeated in response to Question 24 (sites for which the Debtors have provided notice to a governmental unit). To avoid duplication, notices are not listed to the extent

they refer to another notice or proceeding already identified in Questions 22, 23 or 24.  This response does not include sites or proceedings related to non-environmental laws such as occupational safety and health laws or transportation laws.  The Debtors make routine reports and submissions concerning discharges resulting from normal operations consistent with regulatory requirements, such as discharge monitoring reports, toxic release inventory submissions and submissions concerning air emissions. This response is limited to those reports and submissions that identify uncontrolled releases and hazardous materials and does not purport to identify all routine reports and submissions.

12.      **Statements, Part 13, Question 25 – Details about the Debtors' business or connections to any business**.  The Debtors have used their reasonable efforts to identify the beginning and ending dates of all businesses in which the Debtors were a partner or owned five percent or more of the voting or equity securities within the six years immediately preceding the Petition Date.  In certain instances, however, the dissolution dates of certain entities that are no longer in existence were not readily available and, therefore, are not included in <u>Statements, Part 13, Question 25</u>.

13.      **Statements, Part 13, Question 26 – Books, records, and financial statements**. The Debtors routinely provide financial statements to banks, customers, suppliers, tax authorities, landlords, factors, potential investors, and other financial institutions in the ordinary course, as well as in association with its restructuring efforts. The Debtors have not completed their audit financial statement for 2022 and have not engaged a firm to perform an audit for 2023.

14.      **Statements, Part 13, Question 30 – Payments to insiders**.  Any and all known disbursements to insiders of the Debtors have been listed in response to <u>Statements, Part 2, Question 4</u>.

**Steward NSMC, Inc.**

**Case Number: 24-90367**

| Part 1: | Income |

1. **Gross Revenue from business**

   ☐ None.

| Identify the Beginning and Ending Dates of the Debtor's Fiscal Year, which may be a Calendar Year | Sources of Revenue (Check all that apply) | Gross Revenue (Before Deductions and Exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:** From  01/01/2024  to  04/30/2024  MM/DD/YYYY   MM/DD/YYYY | ☑ Operating a business<br>☐ Other _____ | $86,900,854.64 |
| **For prior year** From  01/01/2023  to  12/31/2023  MM/DD/YYYY   MM/DD/YYYY | ☑ Operating a business<br>☐ Other _____ | $296,316,290.47 |
| **For the year before that** From  01/01/2022  to  12/31/2022  MM/DD/YYYY   MM/DD/YYYY | ☑ Operating a business<br>☐ Other _____ | $346,955,268.08 |

Steward NSMC, Inc.                                                                                    Case Number: 24-90367

| Part 1: | Income |
|---------|--------|

2. **Non-business revenue**

Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

☐ None.

|  | Description of Sources of Revenue | Gross Revenue (Before Deductions and Exclusions) |
|--|------------------------------------|---------------------------------------------------|
| **For the year before that**   From  01/01/2022  to  12/31/2022<br>MM/DD/YYYY    MM/DD/YYYY | OTHER INCOME | $3,701.61 |

Steward NSMC, Inc.                                                                          Case Number: 24-90367

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

3. **Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers — including expense reimbursements — to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☑ None.

| Creditor's Name and Address | Dates | Total Amount or Value | Reasons for Payment or Transfer |
|-----------------------------|-------|-----------------------|----------------------------------|

Steward NSMC, Inc.                                                                                    Case Number: 24-90367

---

| **Part 2:** | List Certain Transfers Made Before Filing for Bankruptcy |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575. (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☑ None.

| Insider's Name and Address and Relationship to Debtor | Dates | Amount | Reasons for Payment |
| --- | --- | --- | --- |

Steward NSMC, Inc.                                                                                    Case Number: 24-90367

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---------|----------------------------------------------------------|

5. **Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None.

| Creditor's Name and Address | Description of the property | Date | Value of Property |
|-----------------------------|----------------------------|------|-------------------|

Steward NSMC, Inc.                                                                                    Case Number: 24-90367

| Part 2: | List Certain Transfers Made Before Filing for Bankruptcy |
|---|---|

6. **Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None.

| Creditor's Name and Address | Description of Action Creditor Took | Date Action Taken | Account Number | Amount |
|---|---|---|---|---|

Steward NSMC, Inc.                                                                                    Case Number: 24-90367

**Part 3:**   **Legal Actions or Assignments**

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None.

| Caption of Suit and Case Number | Nature of Proceeding | Court or Agency and Address | Status of Case |
|---|---|---|---|
| 7.1  DESIGN BY NATURE, CORP. V. STEWARD NSMC, INC; NORTH SHORE MEDICAL CENTER 2023-024821-CA-01 | BUSINESS LITIGATION | 11TH JUDICIAL CIRCUIT COURT, MIAMI-DADE COUNTY, FLORIDA 155 NW 3RD STREET MIAMI, FL 33128 | CONCLUDED |
| 7.2  HOLLYWOOD RESTORATION, INC. V. STEWARD NSMC, INC. DBA STEWARD FLORIDA MEDICAL CENTER - A CAMPUS OF NORTH SHORE 2024-004444-CA-01 | BUSINESS LITIGATION | 11TH JUDICIAL CIRCUIT COURT, MIAMI-DADE COUNTY, FLORIDA 155 NW 3RD STREET MIAMI, FL 33128 | PENDING |
| 7.3  LITIGATION CLAIMANT_1036 V. STEWARD NSMC, INC. D/B/A STEWARD NORTH SHORE MEDICAL CENTER AND SPECIALTY HOSPITAL - MIAMI LAKES, INC. 2023-027190-CA-01 | MEDICAL MALPRACTICE | 11TH JUDICIAL CIRCUIT COURT, MIAMI-DADE COUNTY, FLORIDA 155 NW 3RD STREET MIAMI, FL 33128 | PENDING |
| 7.4  LITIGATION CLAIMANT_1129 V. STEWARD HEALTH CARE NETWORK INC., STEWARD NSMC INC., STEWARD HEALTH CARE SYSTEM LLC DBA FLORIDA MEDICAL CENTER, DR. TODD SCHWARTZ, DR. VICTOR TOTFALUSI 24TC-191576311 | MALPRACTICE | BROWARD COUNTY CIRCUIT COURT; FT. LAUDERDALE, FLORIDA 201 SE 6TH ST FORT LAUDERDALE, FL 33301 | CONCLUDED |
| 7.5  LITIGATION CLAIMANT_1138 V. IASIS MANAGEMENT COMPANY D/B/A STEWARD HEALTHCARE D/B/A NORTH SHORE MEDICAL CENTER 510-2023-07510 | EMPLOYEE LITIGATION | FL EEOC MIAMI TOWER 100 SE 2ND STREET SUITE 1500 MIAMI, FL 33131 | PENDING |
| 7.6  MEDWORKS PAINTING AND FINISHING INC. V. STEWARD NSMC, INC. DBA STEWARD FLORIDA MEDICAL CENTER - A CAMPUS OF NORTH SHORE 2024-004442-CA-01 | BUSINESS LITIGATION | 11TH JUDICIAL CIRCUIT COURT, MIAMI-DADE COUNTY, FLORIDA 155 NW 3RD STREET MIAMI, FL 33128 | PENDING |
| 7.7  OSHA COMPLAINT V. STEWARD NSMC, INC. 2151162 | OSHA COMPLAINT | OSHA 200 CONSTITUTION AVENUE, NW ROOM NUMBER N3626 WASHINGTON, D.C. 20210 | PENDING |

**Steward NSMC, Inc.**                                                                         **Case Number: 24-90367**

| Part 3: | Legal Actions or Assignments |
|---------|------------------------------|

| | | | |
|---|---|---|---|
| 7.8 | RAVA GROUP CONTAINER SERVICES, INC. V. STEWARD NSMC, INC.<br>2024-006976-CC-05 | BUSINESS LITIGATION | COUNTY COURT, MIAMI-DADE, FLORIDA<br>175 NW 1ST AVE<br>MIAMI, FL 33128 | CONCLUDED |
| 7.9 | ROP CONSULTANTS OF FLORIDA, P.A. V. STEWARD NSMC, INC.<br>2023-028699-CA-01 | BUSINESS LITIGATION | 11TH JUDICIAL CIRCUIT COURT FOR MIAMI-DADE COUNTY; FLORIDA<br>155 NW 3RD STREET<br>MIAMI, FL 33128 | CONCLUDED |

Steward NSMC, Inc.                                                                                          Case Number: 24-90367

| **Part 3:** | **Legal Actions or Assignments** |

8. **Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None.

| Custodian's Name and Address | Court Name and Address | Case Title and Number | Date | Description of Property | Value |
|---|---|---|---|---|---|

Steward NSMC, Inc.                                                                    Case Number: 24-90367

| Part 4: | Certain Gifts and Charitable Contributions |
|---------|--------------------------------------------|

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None.

| Recipient's Name and Address | Recipient's Relation to Debtor | Description of the Gifts and Contributions | Dates Given | Value |
|------------------------------|--------------------------------|--------------------------------------------|-------------|-------|

Steward NSMC, Inc.

| **Part 5:** | **Certain Losses** |
| --- | --- |

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

    ☑ None.

| Description of the property lost and how the lost occurred | Amount of Payments Received for the Loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property). | Date of Loss | Value of Property Lost |
| --- | --- | --- | --- |

Steward NSMC, Inc.                                                                                          Case Number: 24-90367

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

11. **Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None.

| Who was Paid or Who Received the Transfer? Address | Email / Website | Who Made the Payment, if not Debtor | If not Money, Describe any Property Transferred | Dates | Value |
|---|---|---|---|---|---|

Steward NSMC, Inc. | Case Number: 24-90367

| Part 6: | Certain Payments or Transfers |
|---------|-------------------------------|

12. **Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device. Do not include transfers already listed on this statement.

☑ None.

| Name of Trust or Device | Trustee | Describe any Property Transfered | Dates Transfers Were Made | Total Amount / Value |
|-------------------------|---------|----------------------------------|---------------------------|----------------------|

Steward NSMC, Inc.                                                                          Case Number: 24-90367

| Part 6: | Certain Payments or Transfers |
|---|---|

13. **Transfers not already listed on this statement**

List any transfers of money or other property - by sale, trade, or any other means - made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None.

| Name and Address of Transferee, Relationship to Debtor | Description of Property | Date Transfer was Made | Total Amount or Value |
|---|---|---|---|

**Steward NSMC, Inc.**                                                                    Case Number: 24-90367

| Part 7: | Previous Locations |
|---------|--------------------|

14. **Previous Addresses**

   List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

   ☑ None.

| Address | Dates of Occupancy |
|---------|--------------------|
| | |

Steward NSMC, Inc.                                                                    Case Number: 24-90367

| Part 8: | Health Care Bankruptcies |
|---------|--------------------------|

15. **Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☐ None.

| Facility Name and Address | Nature of the Business Operation, Including Type of Services the Debtor Provides | Location Where Patient Records are Maintained (if Different from Facility Address). If Electronic, Identify any Service Provider | If Debtor Provides Meals and Housing, Number of Patients in Debtor's Care | How are Records Kept? |
|---|---|---|---|---|
| 15.1 FLORIDA MEDICAL CENTER 5000 W OAKLAND PARK BLVD LAUDERDALE LAKES, FL 33313 US | HOSPITAL | ELECTRONIC: MEDICAL INFORMATION TECHNOLOGY, INC. | | ELECTRONICALLY |
| 15.2 I&B MEDICAL ASSOCIATES 9400 NW 12TH AVENUE BAY 3 MIAMI, FL 33150 US | CLINIC | ELECTRONIC: MEDICAL INFORMATION TECHNOLOGY, INC. | | ELECTRONICALLY |
| 15.3 NORTH SHORE MEDICAL CENTER 1100 NW 95TH ST MIAMI, FL 33150 US | HOSPITAL | ELECTRONIC: MEDICAL INFORMATION TECHNOLOGY, INC. | | ELECTRONICALLY |

| **Part 9:** | **Personally Identifiable Information** |
|---|---|

16.  **Does the debtor collect and retain personally identifiable information of customers?**

☐ No
☑ Yes. State the nature of the information collected and retained.

Patient records

Does the debtor have a privacy policy about that information?

☐ No
☑ Yes

Steward NSMC, Inc.                                                                              **Case Number: 24-90367**

| **Part 9:** | **Personally Identifiable Information** |
|---|---|

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☐ No. Go to Part 10.
☑ Yes. Does the debtor serve as plan administrator?

    ☑ No. Go to Part 10.
    ☐ Yes

    Describe: _____   EIN: _____

    Has the plan been terminated?

    ☐ No
    ☐ Yes

Steward NSMC, Inc.                                                                                    Case Number: 24-90367

| **Part 10:** | **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units** |

18. **Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☐ None.

| Financial Institution Name and Address | Last 4 Digits of Account Number | Type of Account | Date of Closing | Last Balance |
|---|---|---|---|---|
| 18.1  BANK OF AMERICA<br>ATTN: TIM BROWN<br>390 AMERICA STREET<br>WILMINGTON, MA 1887 | 6672 | CHECKING | 09/05/2023 | $0.00 |
| 18.2  BANK OF AMERICA<br>ATTN: TIM BROWN<br>390 AMERICA STREET<br>WILMINGTON, MA 1887 | 6685 | CHECKING | 08/31/2023 | $0.00 |

Steward NSMC, Inc.

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|----------|------------------------------------------------------------------|

19. **Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None.

| Depository Institution Name and Address | Names of Anyone with Access to it and Address | Description of the Contents | Does Debtor still have it? |
|-----------------------------------------|-----------------------------------------------|----------------------------|----------------------------|

Steward NSMC, Inc.

| Part 10: | Certain Financial Accounts, Safe Deposit Boxes, and Storage Units |
|---|---|

20. **Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None.

| Facility Name and Address | Names of Anyone with Access to it | Address | Description of the Contents | Does Debtor still have it? |
|---|---|---|---|---|

Steward NSMC, Inc.                                                                                            Case Number: 24-90367

| Part 11: | Property the Debtor Holds or Controls That the Debtor Does Not Own |
|---|---|

21. **Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None.

| Owner's Name and Address | Location of the Property | Description of the Property | Value |
|---|---|---|---|

Steward NSMC, Inc.                                                                                    Case Number: 24-90367

| **Part 12:** | **Details About Environmental Information** |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ None.

| Case Title and Case Number | Court or Agency Name and Address | Nature of Proceeding | Status |
|---|---|---|---|

Steward NSMC, Inc.                                                                         Case Number: 24-90367

**Part 12:**    **Details About Environmental Information**

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable under or in violation of an environmental law?**

    ☑ None.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|

Steward NSMC, Inc.                                                                                              Case Number: 24-90367

| **Part 12:** | Details About Environmental Information |
|---|---|

For the purpose of Part 12, the following definitions apply:

- Environmental law means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium)
- Site means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.
- Hazardous material means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

☑ None.

| Site Name and Address | Governmental Unit Name and Address | Environmental Law, if Known | Date of Notice |
|---|---|---|---|

Steward NSMC, Inc.                                                                                    Case Number: 24-90367

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

25. **Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☑ None.

| Business Name and Address | Describe the Nature of the Business | Employer Identification Number (Do not include SSN or ITIN) | Dates Business Existed |
|---|---|---|---|

Steward NSMC, Inc.

Case Number: 24-90367

---

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

26. **Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None.

| Name and Address | Dates of Service |
|---|---|
| 26a.1  CHRISTOPHER DUNLEAVY - CHIEF FINANCIAL OFFICER<br>1900 N. PEARL ST<br>SUITE 2400<br>DALLAS, TX 75201 | 10/25/2021 - 01/12/2023 |
| 26a.2  HENRY C. NICKELLS - COPORATE CONTROLLER<br>1900 N. PEARL ST<br>SUITE 2400<br>DALLAS, TX 75201 | 02/03/2021 - ONGOING |
| 26a.3  MARK RICH - PRESIDENT<br>1900 N. PEARL ST<br>SUITE 2400<br>DALLAS, TX 75201 | 05/15/2023 - ONGOING |
| 26a.4  MARY BETH TAYLOR - CHIEF ACCOUNTING OFFICER<br>1900 N. PEARL ST<br>SUITE 2400<br>DALLAS, TX 75201 | 05/15/2023 - ONGOING |

Steward NSMC, Inc.                                                                          Case Number: 24-90367

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |

26. **Books, records, and financial statements**

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None.

| Name and Address | Dates of Service |
|---|---|
| 26b.1  BEACHFLEISCHMAN PC<br>2201 E CAMELBACK RD STE 200<br>PHOENIX, AZ 85016 | 11/30/2017 - ONGOING |
| 26b.2  CROWE LLP<br>PO BOX 71570<br>CHICAGO, IL 60694-1570 | 06/30/2020 - ONGOING |
| 26b.3  KPMG LLP<br>PO BOX 120754<br>DALLAS, TX 75312-0754 | 09/30/2020 - 06/20/2023 |

Steward NSMC, Inc.                                                                          Case Number: 24-90367

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |

26. **Books, records, and financial statements**

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None.

| Name and Address | If any Books of Account and Records are Unavailable, Explain Why |
|---|---|
| 26c.1  HENRY C. NICKELLS - COPORATE CONTROLLER<br>1900 N. PEARL ST<br>SUITE 2400<br>DALLAS, TX 75201 | |
| 26c.2  MARK RICH - PRESIDENT<br>1900 N. PEARL ST<br>SUITE 2400<br>DALLAS, TX 75201 | |
| 26c.3  MARY BETH TAYLOR - CHIEF ACCOUNTING OFFICER<br>1900 N. PEARL ST<br>SUITE 2400<br>DALLAS, TX 75201 | |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
| --- | --- |

26. **Books, records, and financial statements**

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None.

| Name and Address |
| --- |

26d.1  SEE GLOBAL NOTES

Steward NSMC, Inc.                                                                                          Case Number: 24-90367

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ None.

| Name of the Person who Supervised the Taking of the Inventory | Name and Address of the Person who has Possession of Inventory Records | Date of Inventory | Dollar Amount | Basis |
|---|---|---|---|---|
| 27.1  JONATHAN SANTIAGO | 5000 W OAKLAND PARK BLVD LAUDERDALE LAKES, FL 33313 US | 10/25/2023 | $4,741,311.96 | NBV |
| 27.2  FRANCISCO CERDA | 1100 NW 95TH ST MIAMI, FL 33150 US | 10/25/2023 | $3,565,579.83 | NBV |
| 27.3  DENIS POKUSA | 5000 W OAKLAND PARK BLVD LAUDERDALE LAKES, FL 33313 US | 10/28/2022 | $535,686.19 | NBV |
| 27.4  SENLIS CHOUZA | 1100 NW 95TH ST MIAMI, FL 33150 US | 10/28/2022 | $4,172,883.63 | NBV |

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

☐ None.

| Name and Address | Position and Nature of any Interest | Percent of Interest, if any |
|---|---|---|
| 28.1  ALAIN INNOCENT<br>ADDRESS REDACTED | DIRECTOR | |
| 28.2  ALEJANDRO CONTRERAS<br>ADDRESS REDACTED | DIRECTOR \| HOSPITAL PRESIDENT | |
| 28.3  DAVID MOND<br>ADDRESS REDACTED | DIRECTOR | |
| 28.4  EDUARDO MARTINEZ<br>ADDRESS REDACTED | DIRECTOR | |
| 28.5  EDWARD DAUER<br>ADDRESS REDACTED | DIRECTOR | |
| 28.6  HERBERT HOLTZ<br>ADDRESS REDACTED | SECRETARY | |
| 28.7  JAMES A. ADAMS<br>ADDRESS REDACTED | DIRECTOR | |
| 28.8  JOHN R. CASTELLANO<br>ADDRESS REDACTED | CHIEF RESTRUCTURING OFFICER | |
| 28.9  LOUIS ISAACSON<br>ADDRESS REDACTED | DIRECTOR | |
| 28.10  MICHAEL G. CALLUM<br>ADDRESS REDACTED | DIRECTOR | |
| 28.11  NATHALIE HIBBLE<br>ADDRESS REDACTED | DEPUTY GENERAL COUNSEL | |
| 28.12  OSCAR MENDEZ<br>ADDRESS REDACTED | DIRECTOR | |
| 28.13  STEVEN STILLWELL<br>ADDRESS REDACTED | DIRECTOR | |
| 28.14  STEWARD FLORIDA HOLDINGS LLC<br>1900 N. PEARL ST<br>SUITE 2400<br>DALLAS, TX 75201 | CONTROLLING STOCKHOLDER | 100% |

Steward NSMC, Inc.                                                     **Case Number: 24-90367**

| **Part 13:** | **Details About the Debtor's Business or Connections to Any Business** |
|---|---|

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ None.

| Name and Address | Position and Nature of Interest | Period During Which Position Was Held |
|---|---|---|
| 29.1  GISELLE CHEMINAND<br>ADDRESS REDACTED | DIRECTOR | 07/31/2021 - 01/11/2024 |
| 29.2  HAKAN CHARLES-HARRIS<br>ADDRESS REDACTED | DIRECTOR | 01/02/2022 - 01/11/2024 |
| 29.3  JAMES A. ADAMS<br>ADDRESS REDACTED | INTERIM PRESIDENT-NSMC | 05/30/2023 - 12/05/2023 |
| 29.4  JOSHUA PUTTER<br>ADDRESS REDACTED | DIRECTOR | 09/12/2022 - 05/30/2023 |
| 29.5  MICHAEL BELL<br>ADDRESS REDACTED | DIRECTOR | 09/12/2021 - 12/05/2023 |
| 29.6  RALPH ZAGHA<br>ADDRESS REDACTED | DIRECTOR | 03/28/2022 - 01/10/2024 |
| 29.7  ROBERT BOO<br>ADDRESS REDACTED | DIRECTOR | 07/31/2021 - 01/04/2024 |
| 29.8  SUSAN BAKER<br>ADDRESS REDACTED | CHAIRPERSON | 07/31/2021 - 11/30/2023 |
| 29.9  THOMAS DUNNING<br>ADDRESS REDACTED | DIRECTOR | 11/08/2022 - 05/30/2023 |
| 29.10  THOMAS DUNNING<br>ADDRESS REDACTED | PRESIDENT - NSMC | 11/08/2022 - 05/30/2023 |

**Steward NSMC, Inc.**                                                                                    **Case Number: 24-90367**

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|----------|-------------------------------------------------------------------|

30. **Payments, Distributions, or Withdrawals Credited or Given to Insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ None.

| Name and Address of Recipient and Relationship to Debtor | Amount | Amount Description | Dates | Reason for Providing the Value |
|---|---|---|---|---|
| 30.1  REFER TO SOFA 4 | $0.00 | | | |
| **TOTAL REFER TO SOFA 4** | **$0.00** | | | |

|  | **TOTAL** | **$0.00** |
|---|---|---|

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ None.

| Name of Parent Corporation | Employer Identification Number of the Parent Corporation |
|---|---|
| 31.1  STEWARD HEALTH CARE HOLDINGS LLC FKA STEWARD HEALTH CARE SYSTEM, LLC | 90-0736306 |

**Part 13:**    **Details About the Debtor's Business or Connections to Any Business**

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ None.

| Name of Pension Fund | Employer Identification Number of the Parent Corporation |
| --- | --- |
| | |

**Part 14:**   **Signature and Declaration**

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this Statement of Financial Affairs and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

**Executed on:**   07/09/2024

**Signature:**   /s/ John R. Castellano                           John R. Castellano, Chief Restructuring Officer

**Name and Title**

Are additional pages to the Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) attached?

☐ No
☑ Yes