UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>STEWARD HEALTH CARE SYSTEM LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-90213 (CML)<br><br>(Jointly Administered) |

**FIRST REPORT OF SUZANNE KOENIG, AS PATIENT CARE OMBUDSMAN, FOR THE HOSPITALS AND FACILITIES LOCATED IN MASSACHUSETTS, OHIO, PENNSYLVANIA, AND THE MIAMI-DADE FLORIDA LOCATIONS**

In accordance with section 333(b)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), Suzanne Koenig, solely in her capacity as the Patient Care Ombudsman (the "**Ombudsman**") for the hospitals and facilities located in Massachusetts, Ohio, and Pennsylvania as well as the Miami-Dade Florida Locations,[2] that are part of the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), respectfully submits this report (the "**Report**") on the quality of patient care for the period from the appointment of the Ombudsman on May 20, 2024 through and including the date hereof, July 22, 2024 (the "**Report Period**").

---

[1]   A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

[2]   The "**Miami-Dade Florida Locations**" collectively refers to the Coral Gables Hospital located in Coral Gables, Florida; the Hialeah Hospital and the Palmetto General Hospital located in Hialeah, Florida; and the North Shore Medical Center located in Miami, Florida.

ACTIVE 700031705v3

I. **INTRODUCTION**

    A. **Overview of a Patient Care Ombudsman**

1. The role of a patient care ombudsman is to "monitor the quality of patient care and to represent the interests of patients" in the bankruptcy of a health care business. 11 U.S.C. § 333(a)(1). Under section 333(b) of the Bankruptcy Code, the duties of the patient care ombudsman include:

> (1) monitor the quality of patient care provided to patients of the debtor, to the extent necessary under the circumstances, including interviewing patients and physicians;
>
> (2) not later than 60 days after the date of appointment, and not less frequently than at 60-day intervals thereafter, report to the court after notice to the parties in interest, at a hearing or in writing, regarding the quality of patient care provided to patients of the debtor; and
>
> (3) if such ombudsman determines that the quality of patient care provided to patients of the debtor is declining significantly or is otherwise being materially compromised, file with the court a motion or a written report, with notice to the parties in interest immediately upon making such determination.

11 U.S.C. § 333(b). "[T]he primary duties of an ombudsman are to monitor *ongoing* patient care . . . ." *In re Banes*, 355 B.R. 532, 536 (Bankr. M.D.N.C. 2006) (emphasis added); *see also In re Renaissance Hospital-Grand Prairie, Inc.*, 2008 WL 5746904, at *2 (Bankr. N.D. Tex. Dec. 31, 2008) ("[A patient care ombudsman's] very job is to ensure that his constituents—patients—are well cared for by the debtor in possession (or trustee)."). A patient care ombudsman is concerned only with the current and prospective care of patients during a chapter 11 case. Accordingly, this Report does not review past actions or inactions by the Debtors with respect to patient care. Instead, the Report focuses on the care being provided to the patients by the Debtors during these bankruptcy cases.

2

### B. The Ombudsman's Appointment

2. On the Petition Date (as defined herein), the Court ordered the United States Trustee to appoint a patient care ombudsman pursuant to section 333 of the Bankruptcy Code. *See* docket entry at Docket No. 1. On May 20, 2024, the United States Trustee appointed the Ombudsman for the hospitals and healthcare facilities located in Massachusetts, Ohio, and Pennsylvania, and the Miami-Dade Florida Locations. *See Notice of Appointment of Patient Care Ombudsman Covering Massachusetts, Ohio, Pennsylvania, and Miami-Dade Florida Locations Under 11 U.S.C. § 333* [Docket No. 311] (the **"Appointment Notice"**). As set forth in section 333(a)(1) of the Bankruptcy Code and the Appointment Notice, the Ombudsman was appointed to, *inter alia*, monitor the quality of patient care provided to the Debtors' patients at their hospitals and facilities located in Massachusetts, Ohio, and Pennsylvania, and the Miami-Dade Florida Locations.

3. On June 18, 2024, the Ombudsman filed applications to retain the law firm of Greenberg Traurig, LLP as her counsel and SAK Management Services, LLC *d/b/a* SAK Healthcare (**"SAK"**) as her medical operations advisor [Docket Nos. 891 and 892, respectively] (collectively, the **"Applications"**). On July 11, 2024, the Court entered orders granting the Applications [Docket Nos. 1561 and 1562, respectively].

### C. Status of the Debtors' Operations Upon Appointment of the Ombudsman

4. On May 6, 2024 (the **"Petition Date"**), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the **"Court"**).

5. As reported in the *Declaration of John R. Castellano in Support of Debtors' Chapter 11 Petitions and First-Day Pleadings* [Docket No. 38] (the **"First Day Declaration"**),

3

the Debtors operate a national, integrated healthcare network across ten states, comprised of thirty-one hospitals and over four hundred facility locations (including physician practice offices, ambulatory surgical centers, and diagnostic imaging centers). *Id.* at ¶ 7. As of the Petition Date, the Debtors employed a workforce of approximately 30,000 (including over 4,500 primary and specialty care physicians, 9,100 nurses and nurse practitioners, and 9,200 other skilled healthcare workers). *Id.* at ¶¶ 7, 12. Historically, the Debtors provide care to more than two million patients annually. *Id.* at ¶ 7.

6. The Debtors initiated a sale process for all of the hospitals. The deadline for potential purchasers to submit a bid for the First Round Hospitals[3] and the Extended First Round Hospitals[4] expired on June 24, 2024 and July 15, 2024, respectively. According to the *Notice of (I) Cancellation of Certain Auctions and Sale Hearings, (II) Designation of Successful Bids, (III) Proposed Sale Orders, and (IV) Scheduling of Sale Hearing with Respect to (A) Wadley Regional Medical Center at Hope and (B) Glenwood Regional Medical Center* [Docket No. 1645], the Debtors did not receive a Qualified Bid (as defined in the Bidding Procedures Order) for the Hospitals (as defined herein) in Ohio and Pennsylvania and, as such, cancelled the auction with respect thereto. The Debtors are presently evaluating alternatives with respect to these locations and will make a further announcement about their course of action at a later date. *See id.* The deadline for potential purchasers to submit a bid for the Second Round Hospitals (including the Miami-Dade Florida Locations) is August 12, 2024, at 5:00 p.m. (prevailing Central Time).

---

[3] The terms "**First Round Hospitals**" and "**Second Round Hospitals**" shall have the same meanings as ascribed to them in the *Order (I) Approving (A) Global Bidding Procedures for Sales of the Debtors' Assets, (B) Form and Manner of Notice of Sales, Auctions, and Sale Hearings, and (C) Assumption and Assignment Procedures and Form and Manner of Notice of Assumption and Assignment; (II) Authorizing Designation of Stalking Horse Bidders; (III) Scheduling Auctions and Sale Hearings; and (IV) Granting Related Relief* [Docket No. 626] (the "**Bidding Procedures Order**").

[4] The term "**Extended First Round Hospitals**" has the same meaning as ascribed to it in the *Notice of Extension of Certain Deadlines and Dates Under the Bidding Procedures Order* [Docket No. 895]

## II.     SUMMARY OF THE OMBUDSMAN'S MONITORING AND OBSERVATIONS

7.     The following summarizes the Ombudsman's observations during the Report Period.  Any observations regarding the hospitals and facilities are based upon the visits referenced below and observations and interviews conducted during those visits as well as interviews and electronic mail communication conducted remotely with staff of the respective hospitals and facilities.

### A.     Executive Summary

8.     The hospitals and facilities included in this Report are as follows (each a "**Hospital**," and collectively, the "**Hospitals**"):[5]

| Exhibit | Debtor | Facility Name | Address |
|---|---|---|---|
| A | Steward St. Elizabeth's Medical Center of Boston, Inc. | St. Elizabeth's Medical Center | 736 Cambridge St. Brighton, MA 02135 |
| B | Steward Holy Family Hospital, Inc. | Holy Family Hospital – Haverhill | 140 Lincoln Ave. Haverhill, MA 01830 |
| C | Steward Holy Family Hospital, Inc. | Holy Family Hospital – Methuen | 70 East St. Methuen, MA 01844 |
| D | Steward Good Samaritan Medical Center, Inc. | Good Samaritan Medical Center | 235 N. Pearl St. Brockton, MA 02301 |
| E | Nashoba Valley Medical Center, A Steward Family Hospital, Inc. | Nashoba Valley Medical Center | 200 Groton Rd. Ayer, MA 01432 |
| F | Morton Hospital, A Steward Family Hospital, Inc. | Morton Hospital | 88 Washington St. Taunton, MA 02780 |
| G | Steward St. Anne's Hospital Corporation | Saint Anne's Hospital | 795 Middle St. Fall River, MA 02721 |
| H | Steward Carney Hospital, Inc. | Carney Hospital | 2100 Dorchester Ave. Dorchester, MA 02124 |
| I | Steward Hillside Rehabilitation Hospital, Inc. | Hillside Rehabilitation Hospital | 8747 Squires Ln. NE Warren, OH 44484 |
| J | Steward Trumbull Memorial Hospital, Inc. | Trumbull Regional Medical Center | 1350 E. Market St. Warren, OH 44482 |

---

[5]    Norwood Hospital, formerly located at 800 Washington Street, Norwood, Massachusetts 02062, permanently closed before the Petition Date.  Accordingly, Norwood Hospital is not included in this Report.

| Exhibit | Debtor | Facility Name | Address |
|---|---|---|---|
| K | Steward Sharon Regional Health System, Inc. | Sharon Regional | 740 E. State St. Sharon, PA 16146 |
| L | Steward PGH, Inc. | Palmetto General Hospital | 2001 W. 68 St. Hialeah, FL 33016 |
| M | Steward NSMC, Inc. | North Shore Medical Center | 1100 N.W. 95th St. Miami, FL 33150 |
| N | Steward CGH, Inc. | Coral Gables Hospital | 3100 Douglas Rd. Coral Gables, FL 33134 |
| O | Steward HH, Inc. | Hialeah Hospital | 651 E. 25th St. Hialeah, FL 33013 |

9. As described in further detail below, an individual report for each Hospital visited during this Report Period has been prepared and will be filed as Exhibits to this Report as reflected in the above chart. Given the number of Hospitals and the length of each individual Report, those individual reports may be filed with the Court on July 23, 2024.

B. **Methodology**

10. Due to the number of Hospitals operated by the Debtors, the Ombudsman developed a standardized methodology to ensure consistency in reporting among the Ombudsman's representatives visiting each location. Prior to the first visit, the Ombudsman developed materials to ensure consistency with respect to representatives' work under the statutory requirements of section 333 of the Bankruptcy Code, appropriate procedures for interviewing the professional staff and patients, and reiteration of privacy requirements mandated under the Health Insurance Portability and Accountability Act ("**HIPAA**") as they apply to the Hospitals. The Ombudsman also created question guidelines and checklists to encompass the full scope of potential patient care concerns. The Ombudsman also determined the key areas and departments of each Hospital to be visited given their importance to patient care.

11. Each site visit included the Ombudsman and one SAK representative, who was a nurse by training. The visits to each Hospital ranged from approximately four to eight hours in

length depending upon the size and complexity of the Hospital.  During each visit, the Ombudsman and her representative met with the relevant Hospital's leadership team, conducted a walk-through tour of each Hospital and its buildings, and interviewed key professional staff and patients where possible.  The Ombudsman and her representatives also requested and reviewed Hospital records as part of this assessment process.  Generally, the Ombudsman and her representative visited each Hospital once during the Report Period with the Ombudsman and her representative conducting a few unannounced follow-up visits to the Hospitals in Massachusetts, as will be noted in the individual reports.

12. Throughout the Report Period, the Ombudsman and her representatives have sought and obtained information from, and had open lines of communication with, the Debtors. For example, the Ombudsman receives regular staffing reports for the Hospitals and equipment repair updates from the Debtors' Hospitals.

13. The Ombudsman also has an open line of communication with the Commonwealth of Massachusetts, the Massachusetts Department of Health and their attorneys.  As this Court is aware, the Commonwealth of Massachusetts is carefully monitoring these cases and has representatives on site at the Massachusetts Hospitals on a daily basis.  Therefore, the Ombudsman, who may only visit the Hospitals once during each Report Period, appreciates the Commonwealth of Massachusetts's willingness to share reports and other information regarding the Massachusetts Hospitals.

14. The Ombudsman has also had discussions with counsel to the Official Committee of Unsecured Creditors, the United States Trustee, certain accreditation agencies, and certain unions for the Massachusetts Hospitals.

15. The Ombudsman appreciates the cooperation and collaboration of all parties in interest in these cases to assist the Ombudsman in reviewing patient care.

C. **Overall Impressions**

16. While the individual Hospital Reports will provide a detailed analysis of each Hospital and patient care at those Hospitals, the Ombudsman did not observe any material issues impacting patient care requiring this Court's immediate attention. The Ombudsman did observe certain areas in which the Hospitals could improve the patient care experience and has discussed these issues with the Debtors. Below is a general summary of the Ombudsman's overall impressions of care at the Hospitals and areas in which improvement can and has been made during the Report Period:

- Although staffing across various positions at certain Hospitals has proved challenging, the Ombudsman did not observe any issues that made her believe patients were in immediate danger or otherwise receiving unsafe care due to staffing issues. The Debtors are actively recruiting and filling vacant shifts with overtime, in-house travelers, and bonuses. The Debtors' staff are generally demonstrating a strong commitment to quality care. The Debtors' staffing levels appear to be sufficient based on the reporting provided to the Ombudsman throughout this Report Period.

- The Debtors have an engaged leadership team dedicated to providing excellent patient care and outcomes in the communities they serve through the Hospitals. The Debtors' leadership is dedicated to making improvements. However, the leadership team is spread thin, with certain individuals providing oversight across multiple Hospitals.

- The Ombudsman did not find any concerns related to procurement of adequate supplies, such as food and medical supplies, among other necessary items. The Hospitals have endeavored to cooperate with each other to share supplies as needed to prevent shortages. Based on the Ombudsman's observations during each of the visits, the supply rooms appeared to be stocked with enough supplies to provide safe patient care.

- Generally, each of the Hospitals are in need of repairs and new or repaired equipment. Predominantly, the non-functioning equipment included various kitchen equipment, elevators, endoscopy scopes, and hospital chillers. The Debtors' leadership has implemented adequate temporary solutions, including the use of rental equipment, while permanent fixes are sought. Often, the Debtors' staff must wait on the provision of funds to fix or replace the broken equipment, as many vendors are demanding prepayment, cash on delivery, or are unwilling to provide the services. However, the Ombudsman has observed improvement since her appointment. Specifically, several non-functioning elevators at St. Elizabeth have been brought back into full working order. The Debtors' leadership team appears highly engaged and attentive to the urgency of returning the Hospitals' broken equipment (including the elevators) to functioning status. While the broken equipment is an ongoing issue that the Debtors must continue to fully resolve, the Ombudsman does not believe the security, safety, or care of the Hospitals' patients are presently at risk.

> The Hospital staff has been adept at problem solving while waiting for new equipment or repairs to be completed.

- Certain of the Hospitals' kitchens were cluttered, unorganized, and dirty. After calling the physical state of certain kitchens to the attention of the relevant Hospital's leadership, a corrective action plan was quickly implemented. The Ombudsman observed significant improvement in the kitchens that required attention, noting they were promptly deep cleaned (often by a third-party professional) and were now clean and organized. Relatedly, the Ombudsman observed chaotic work processes occurring across certain kitchens, such as poor flow with the meal prep line, failure to label food with expiration dates, and failure to take food temperatures and document them in accordance with the Debtors' policy. However, the Debtors' management has implemented corrective solutions that have greatly improved meal prep and service overall and brought the processes into compliance with the Debtors' policies.

- Certain furniture and infrastructure showed signs of age. For example, certain furniture was old and worn, various areas of paint were chipped, laminate was peeling on various countertops, and limited flooring needed to be replaced due to either being a tripping hazard or soiled. The Ombudsman did not observe any significant signs of water damage or intrusion.

- The patient census at many of the Hospitals has declined and appears to be partly related to negative press concerning the Debtors' Hospitals and these

10

bankruptcy cases. The Ombudsman observed staff committed to providing excellent care to the patients and urges all parties in interest and the communities to continue supporting these Hospitals, many of which are critical to their localities.

### III. OMBUDSMAN'S MONITORING AND OBSERVATIONS BY HOSPITAL

17. The Ombudsman has detailed Reports on each of the Hospitals visited and assessed. Each Report includes observations of patient care with commentary about one or more areas of assessment, including an overview of each Hospital, regulatory compliance, patient interviews, risk management, medical records, infection control and protocols, emergency preparedness, discharge review, vendor relationships, maintenance, and environmental services.

### IV. CONCLUSION

18. The Ombudsman has made her best efforts, within the time constraints, to conduct a comprehensive investigation of the quality of patient care at the Debtors' Hospitals. The Ombudsman is available to address any issues with this Court or other parties in interest. The Ombudsman will submit her next report within sixty days and will inform the Court if there are any critical concerns discovered prior to that time, as necessary.

Dated: July 22, 2024

        **SUZANNE KOENIG, AS COURT APPOINTED PATIENT CARE OMBUDSMAN**

        By: /s/ *Suzanne A. Koenig*
           Suzanne A. Koenig, solely in her capacity
           as Patient Care Ombudsman