IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM LLC, *et al.*,[1] | Case No. 24-90213 (CML) |
| Debtors. | (Jointly Administered) |

**MASSACHUSETTS' STATEMENT IN RESPONSE TO (I) THE EMERGENCY MOTION BY STEWARD APPROVING FUNDING, HOSPITAL CLOSURES, AND RELATED RELIEF [ECF NO. 1711] AND (II) THE EMERGENCY MOTION BY STEWARD TO REJECT MASTER LEASE II, AND RELATED RELIEF [ECF NO. 1712]**

The Commonwealth of Massachusetts, by and through the Executive Office of Health and Human Services of the Commonwealth of Massachusetts and the Attorney General of the Commonwealth of Massachusetts ("Massachusetts" or the "Commonwealth"), files this statement (the "Statement")[2] in response to (I) the emergency motion by Steward Health Care System LLC and its debtor affiliates (collectively, "Steward") for an order approving funding from the Commonwealth, closure of Carney Hospital and Nashoba Valley Medical Center, and related relief [ECF No. 1711] (the "Closure Motion") and (II) the emergency motion to reject Master Lease II, and related relief [ECF No. 1712] (the "Master Lease II Rejection Motion"), and respectfully states as follows:

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

[2] Massachusetts incorporates its *Informational Brief of the Commonwealth of Massachusetts in Support of Responses to the Debtors' Emergency Motions* [ECF No. 61] (the "Informational Brief") and *Declaration of Robert Goldstein, Commissioner of the Department of Public Health* [ECF No. 61] (the "DPH Decl."), filed in support of the *Omnibus Response of the Commonwealth of Massachusetts to Certain of the Debtors' Emergency First-Day Motions* [ECF No. 60].

4865-2810-3635

**STATEMENT**

Steward's years of financial and operational recklessness have driven these hospitals into the ground.  The Debtors' sales process has ignored the reality of Massachusetts' healthcare system by, for example, arbitrarily dividing the sales process between Steward hospitals south of Boston and those in and north of Boston.  Massachusetts nonetheless had some hope that, once the Commonwealth demonstrated its willingness to help support would-be purchasers with post-transition operations, the parties with significant economic interests in this case would rally and support a transfer of land and operations to the new operators based on the bids received.

But that has yet to happen.

Parties in interest, creditor groups, have instead continued to engage in brinksmanship in a case involving people's lives and livelihoods, all in an effort to wring out more value from qualified bidders or the Commonwealth to salvage their own bad financial, investment or lending decisions in Steward.  Many of these creditors seem to have lost sight of the importance of providing safe healthcare over the long term, and instead seem intent on saddling bidders with potentially critical levels of debt or obligations, which will only make this crisis a recurring one. The Commonwealth cannot shoulder the burden of the ill-advised investment and credit decisions of others.

As the Debtors report in the Master Lease Rejection Motion, Medical Properties Trust ("MPT") and Macquarie Asset Management are trying to block possible transactions to transition Steward's Massachusetts Hospitals to new operators to extract concessions from the Steward estate and their mortgagee.  MPT and Macquarie are ignoring the value chasm between their lease base under Master Lease II and the total enterprise value reflected by the bids (or lack of bids) received, and while their lender has tried to bring a more realistic view to these discussions, it too refuses to

fully acknowledge the accurate measure of value of these hospitals for new potential operators, as demonstrated by the open and competitive bid process.

The Commonwealth has been clear with all parties and the Court from the outset that this conduct, if allowed to persist, could lead to hospital closures – which sadly have begun to happen. Given the financial mismanagement and gamesmanship of Steward, MPT, and Macquarie, Carney and Nashoba have not received viable bids and there are none on the horizon. The Commonwealth, therefore, is unable to stop Steward from closing these hospitals. The Commonwealth has prepared diligently for this outcome, and is working with relevant parties to transition patients at Carney and Nashoba hospitals to other sites of care. Moving forward, Massachusetts implores the Court to do everything in its power to prevent avoidable hospital closures.[3] The Commonwealth expects that Steward will adhere to all laws and regulations and the procedures set forth in the proposed order for these hospital closures and any others in the future, should they occur.[4] The Commonwealth further reserves its right to exercise all necessary police powers to ensure patient health and safety.

Other than with respect to Carney and Nashoba, Steward has received purchase offers for the remaining operating Massachusetts hospitals to operate them as going concerns. The offers reflect a competitive process and should be treated as a market-tested measure of value. Parties must move quickly to finalize purchase agreements and close sale transactions, and the Court

---

[3] As to the proposed timing of the closure of Nashoba and Carney timing of the closure, the Commonwealth has yet to receive a detailed closure plan from Steward and therefore cannot speak to the sufficiency of either the timeline or Steward's plans.

[4] The closure procedures for Carney and Nashoba must be modified to remove the requirement that the Department of Public Health hold public hearings 8 days prior to closure. While there is a requirement to hold a public hearing, there is no timing requirement under Massachusetts' law for the holding of such hearing. Thus, the Department of Public Health will coordinate with stakeholders and schedule public hearings at times and places that make sense. Further, the requirement that Massachusetts issue a determination that the hospitals may close 5 days prior to closure likewise must be removed from the closure procedures. There is no such requirement under Massachusetts law and the Commonwealth cannot be compelled to take such action.

should continue to push parties to achieve this end, including using its expansive powers under the Bankruptcy Code to get these remaining hospitals transitioned quickly to the qualified bidders based on their bids.[5]

To be clear, the Commonwealth is doing its part, while others are not.[6] Massachusetts' MassHealth program is making various payments totaling approximately $30 million, which will provide liquidity for the month of August, if, by July 31, the parties progress to binding agreements that include a path to ownership of both real and personal property for the bidders.  The liquidity to be provided by the Commonwealth is a significant benefit to the estate in preserving value.  The parties in interest should move quickly to meet the conditions to receive this benefit.  Any incremental amounts the parties seek to obtain from the bidders through prolonged negotiation will likely be for naught without such liquidity, ultimately costing the estate more in value rather than producing any gain.

*Closure Motion*

The proposed closure procedures set forth in the Closure Motion need to make it clear that there is no presumption that the Debtor's decision to close a hospital in the future cannot be challenged.  Steward should retain its burden for the closure authority sought based on the circumstances in existence when a future notice is filed, and the ability of parties to object on any basis must be clearly preserved.

---

[5]  The Commonwealth too has significant police powers that are available should it turn out that the millions and millions expended in this chapter 11 case and, in particular this sales process, does not result in a clear path to the sale of the hospitals.

[6]  Creditors seeking to reap the financial rewards of a Stewardship transaction (80% of which is based in Massachusetts) remain unwilling to shoulder any further burden of preserving their alleged "collateral" and are unwilling to share the burden of funding operating losses for Steward's Massachusetts hospitals to provide just a bit more time to get to a consensual resolution

*Master Lease II Rejection Motion*

The Commonwealth has been consistently critical of the confiscatory rental obligations that have been imposed on Steward's Massachusetts Hospitals under the so-called Master Lease II. These hospitals – while each in name a lessee – have been forced to pay the costs typically associated with property ownership, including real estate taxes, maintenance, and insurance. The Commonwealth supports the rejection of Master Lease II so that the remaining hospitals can transition to new operators free from its terms and obligations, provided that termination does not negatively impact the transition of any hospital. The Commonwealth believes that an effective date closer to the end of August will help sever the properties from Master Lease II prior to any closings without creating any uncertainties that may result from rejection.

* * * * *

The Commonwealth's agreement to provide $30 million in payments, which will provide liquidity for August, and other efforts reflect the Commonwealth's steadfast commitment to a safe transition of hospitals to qualified bidders. Current circumstances require that all parties move swiftly to resolve the sales process based on the going-concern bids received to ensure that public health and safety is preserved.

[Signature on following page]

Dated: July 30, 2024
New York, New York

Respectfully submitted,
COMMONWEALTH OF MASSACHUSETTS,
By its attorney,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

By: */s/ Andrew M. Troop*
Andrew M. Troop (Bar No. MA547179)
Special Assistant Attorney General

Hugh M. McDonald (Bar No. NY2420974)
Special Assistant Attorney General

PILLSBURY WINTHROP SHAW PITTMAN LLP
Andrew V. Alfano (Bar No. NY5525241)
Alana A. Lyman
31 West 52nd Street
New York, NY 10019
Tel: 212-858-1000
Fax: 212-858-1500

Claire K. Wu
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017
Tel: 213-488-7100
Fax: 213-629-1033

## Certificate of Service

I certify that on July 30, 2024, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Andrew M. Troop*
Andrew M. Troop

4865-2810-3635