IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM LLC, *et al.*, | § § § | Case No. 24-90213 (CML) |
| | § § | (Jointly Administered) |
| Debtors.[1] | § § § | |

### ORDER APPROVING FUNDING FROM THE COMMONWEALTH OF MASSACHUSETTS FOR THE PLANNED TRANSITION AND SALE OF MASSACHUSETTS HOSPITALS AND GRANTING RELATED RELIEF

Upon the motion, dated July 26, 2024 (the "**Motion**")[2] of Steward Health Care System LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to sections 105, 363, 554, and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (a) approving the Payment Agreement; (b) granting authority to close Carney Hospital and Nashoba Valley Medical Center; (c) approving the Facility Closure Procedures; and (d) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Court having reviewed the Motion; and upon any hearing held on the Motion; and upon the First Day Declaration, King Declaration, Moloney Declaration, and Castellano Declaration; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003 and is in the best interests of the Debtors, their respective estates, creditors, and all parties in interest; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Debtors are authorized to enter into the Payment Agreement, substantially in the form annexed hereto as **Exhibit 1**. The Debtors are authorized to make, without further relief from the Court, amendments to the Payment Agreement that are non-material or not adverse to the Debtors' interests; *provided*, *that*, the Debtors shall provide notice to counsel to each of the ABL Lenders, counsel to the FILO Lenders, counsel to MPT, counsel to MIP V Hopkins LLC (as applicable), counsel to the Creditors' Committee, and the Patient Care Ombudsmen three (3) calendar days prior to the execution of any amendment to the Payment Agreement; *provided*, *further*, that, the Debtors shall not make any amendments to the Payment Agreement that adversely affect the MPT lessors, ML II Lessors (as applicable), MPT DIP Lender, FILO DIP Lender or the Prepetition Secured Parties without the affected parties' consent or further Court order and the Debtors shall not make any amendments to the Payment Agreement that adversely affect the interests of unsecured creditors without the consent of the Creditors'

2

Committee or further Court order. For the avoidance of doubt, the Debtors shall not make any amendments to the Payment Agreement without the consent of EOHHS.

2. Notwithstanding anything to the contrary in the Payment Agreement, no additional approvals or authorizations are required for the Commonwealth to provide funding to the Debtors pursuant to the terms of the Payment Agreement.

3. Notwithstanding anything else in the Payment Agreement, upon the occurrence and during the continuation of any default under the Payment Agreement or any violation thereof, including the events set forth in paragraph 5(a) – (b) thereunder, prior to exercising any remedies set forth in the Payment Agreement or under applicable law, EOHHS shall provide two (2) calendar days' prior written notice (the "**Notice Period**") to (i) the Debtors, (ii) counsel to the Debtors, (iii) counsel to each of the ABL Lenders; (iii) counsel to the FILO Lenders; (iv) counsel to MPT; (v) counsel to MIP V Hopkins LLC (as applicable); (vi) counsel to the Creditors' Committee; (vii) the United States Trustee; and (viii) the Patient Care Ombudsmen; *provided*, that if within the Notice Period, the Debtors or any party in interest timely files an objection to the Commonwealth's intent to exercise remedies under the Payment Agreement (any such objection(s), the "**Objection**"), the Commonwealth shall not exercise any such remedies (including repayment or recoupment of the Payments) prior to entry of an order of the Court ruling on the Objection; *provided*, *further*, that the Commonwealth may withhold payment of all amounts that may be due to the Hospitals under the Payment Agreement pending entry of an order on the Objection. In the absence of an order sustaining an Objection, following the Notice Period, the Commonwealth will be relieved of any payment obligations under the Payment Agreement.

4. The Debtors are authorized to open and maintain a segregated bank account that will hold the funds received under the Payment Agreement (the "**Payment Agreement**

3

**Account**").  The Payment Agreement Account and the amounts deposited therein (x) shall not be subject to the control, liens, or claims of the FILO DIP Secured Parties, the Junior DIP Lender, any of the Prepetition Secured Parties, or any other creditor and (y) shall constitute "Excluded Assets" for all purposes under the FILO DIP Facility and the Junior DIP Facility (each, as defined in the Final DIP Orders).  For the avoidance of doubt, no funds constituting Cash Collateral (as defined in the Final MPT DIP Order) shall be deposited into or held in the Payment Agreement Account.

5. Notwithstanding anything to the contrary in this Order or in the Payment Agreement, other than with respect to the Payment Agreement Account and the amounts deposited therein, nothing contained in this Order or the Payment Agreement shall affect the FILO DIP Liens, FILO DIP Superpriority Claims, Junior DIP Liens, Junior DIP Superpriority Claims, Prepetition Liens, Prepetition Secured Obligations, Adequate Protection Liens, or 507(b) Claims (each as defined in the Final DIP Orders), including the priority thereof as of immediately prior to entry of this Order.

6. If there is a conflict between the terms of this Order and the Payment Agreement, the terms of this Order shall govern.

7. Nothing contained in the Motion or this Order, nor any payment made pursuant to the authority granted by this Order, is intended to be or shall be deemed as (i) an implication or admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the obligation of any party in interest to file a proof of claim, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (vi) an admission as to the validity of any

4

liens satisfied pursuant to the Motion or this Order, (vii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code, (viii) an implication or admission of consent, or modification or waiver of any rights, including consent rights, of any non-debtor party with respect to any sale transaction, (ix) a waiver of any of the Creditors' Committee's Challenge rights, as set forth in the Final DIP Orders, (x) a waiver of any defenses, rights, claims, or counterclaims of the Debtors (or any other party in interest) with respect to the foregoing. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

8. Notice of the Motion is adequate under Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules. Emergency relief of the Motion is warranted.

9. Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

10. The Debtors are authorized to take all actions necessary or appropriate to carry out the relief granted in this Order.

11. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2024
       Houston, Texas

                                            Christopher Lopez
                                            United States Bankruptcy Judge

# Exhibit 1

**Payment Agreement**

EXECUTION VERSION

# PAYMENT AGREEMENT

## BETWEEN

### THE COMMONWEALTH OF MASSACHUSETTS
### EXECUTIVE OFFICE OF HEALTH AND HUMAN SERVICES
### OFFICE OF MEDICAID

### AND

**Steward St. Elizabeth's Medical Center of Boston, Inc., Steward Carney Hospital, Inc., Steward Good Samaritan Medical Center, Steward Holy Family Hospital, Inc., Steward St. Anne's Hospital Corporation, Morton Hospital, a Steward Family Hospital, Inc., Steward Norwood Hospital, Inc., Nashoba Valley Medical Center, a Steward Family Hospital, Inc., and Steward Health Care System LLC**

This Payment Agreement (the "Agreement") is by and between the Commonwealth of Massachusetts, Executive Office of Health and Human Services, Office of Medicaid ("EOHHS") and Steward St. Elizabeth's Medical Center of Boston, Inc., Steward Carney Hospital, Inc., Steward Good Samaritan Medical Center, Steward Holy Family Hospital, Inc., Steward St. Anne's Hospital Corporation, Morton Hospital, a Steward Family Hospital, Inc., Steward Norwood Hospital, Inc., and Nashoba Valley Medical Center, a Steward Family Hospital, Inc. (each, individually a "Hospital," and collectively, the "Hospitals"), and Steward Health Care System LLC, each as a debtor and debtor in possession in the voluntary cases commenced on May 6, 2024 by each Hospital and certain of their affiliates in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), which cases are being jointly administered under Case Number 24-90213 (the "Bankruptcy Proceeding").

**WHEREAS**, EOHHS administers the Massachusetts Medicaid ("MassHealth") program pursuant to M.G.L. c. 118E and in accordance with Title XIX and XXI of the Federal Social Security Act and all applicable waivers of such provisions;

**WHEREAS**, the Hospitals participate in the MassHealth program as acute hospitals, with executed MassHealth provider contracts, and are subject to all MassHealth rules, regulations, and standards, including those established under the Acute Hospital Rate Year 2024 Request for Applications (the "RY24 RFA") and under 130 CMR 450.000;

**WHEREAS**, under the RY24 RFA, some or all of the Hospitals may be eligible to receive Clinical Quality Incentive Program payments, Acute Hospital Rate Add-On payments, Hospital Quality and Equity Initiative payments, and Safety Net Provider Payments, for which EOHHS expects to make interim payments to the eligible Hospitals in July, August, and September 2024;

**WHEREAS**, the Hospitals are affiliates within the Steward Health Care System LLC's corporate structure, which includes other hospitals and provider entities enrolled in the MassHealth Program and operating in Massachusetts (collectively, the "Steward Health Care System");

EXECUTION VERSION

**WHEREAS,** pursuant to M.G.L. c. 118E, § 12, EOHHS is entering into this Agreement at this time to make payments as set forth herein to support the Hospitals' operations and to ensure continued access to services for MassHealth members; and

**WHEREAS**, the Commonwealth of Massachusetts deems the Payments necessary to ensure the Hospitals' continued provision of MassHealth services and other public and community benefits they provide;

**NOW, THEREFORE,** in consideration of the mutual understandings and conditions described in this Agreement, the parties agree as follows:

1. Subject to the terms set forth herein, EOHHS shall pay $30,000,000.00 to the Hospitals (the "Payments"), as follows:

| Tranche 1 | Safety Net Provider Payments | Total |
|---|---|---|
| Morton Hospital | 1,122,200 | 1,122,200 |
| Nashoba Valley Medical Center | - | - |
| Carney Hospital | 4,853,400 | 4,853,400 |
| Good Samaritan Medical Center | 2,506,600 | 2,506,600 |
| Holy Family Hospital | 2,827,400 | 2,827,400 |
| Norwood Hospital | - | - |
| Saint Anne's Hospital | - | - |
| St. Elizabeth's Medical Center | - | - |
| Grand Total | 11,309,600 | 11,309,600 |

EXECUTION VERSION

| Tranche 2 | High Medicaid & Independent Hospital Support Payment | Health Equity Incentive RY24 Interim 3 | Health Equity Incentive RY24 Interim 4 | Clinical Quality Incentive RY24 Interim | Rate Add-on RY24 Interim | Total |
|---|---|---|---|---|---|---|
| Morton Hospital | | 365,898 | 365,898 | 285,842 | 559,466 | 1,577,104 |
| Nashoba Valley Medical Center | | 75,306 | 75,306 | 88,444 | 106,106 | 345,162 |
| Carney Hospital | 3,164,946 | 1,092,994 | 1,092,994 | 239,386 | 705,176 | 6,295,496 |
| Good Samaritan Medical Center | | 819,147 | 819,147 | 608,903 | 872,806 | 3,120,003 |
| Holy Family Hospital | | 903,882 | 903,882 | 468,919 | 849,354 | 3,126,037 |
| Norwood Hospital | | - | - | 18,067 | 12,436 | 30,503 |
| Saint Anne's Hospital | | 431,127 | 431,127 | 546,824 | 553,414 | 1,962,492 |
| St. Elizabeth's Medical Center | | 440,136 | 440,136 | 524,653 | 828,677 | 2,233,602 |
| Grand Total | 3,164,946 | 4,128,489 | 4,128,489 | 2,781,040 | 4,487,435 | 18,690,399 |

2. The Payments constitute sums expected to be paid to the Hospitals under the RY24 RFA and as state directed payments through managed care.

3. The Hospitals hereby agree to the following as conditions of receipt of the Payments:

    a. The Payments (i.e., the proceeds paid by EOHHS to the Debtors pursuant to this Agreement and any interest accrued thereon, the "Proceeds") shall remain unencumbered and be used solely for the purposes of the Hospitals' working capital, patient care and employee salaries in the Commonwealth.

    b. The Payments (and the Proceeds thereof) shall not be used to (i) refinance or pay down any pre-existing debt, (ii) pay any amounts due to any lenders, agents, or attorneys or their professional fees, (iii) pay any amounts in non-hospital executive compensation, (iv) pay any amount due to (1) the landlord pursuant to that certain Master Lease Agreement (Master Lease II), dated as of March 14, 2022, including any amount due for rent on real property, or (2) any landlord with any affiliation to any Steward entity or Steward executive, or (v) make any adequate protection payments to any secured creditor under the Bankruptcy Code.

    c. The Payments (and the Proceeds thereof) shall be held in a segregated account at a financial institution selected by the Hospitals and shall not be subject to any pre-existing or future security agreements.

EXECUTION VERSION

    d. The Payments (and the Proceeds thereof) shall not serve as collateral for any pre-existing debt or new debt incurred, shall not be considered "cash collateral" under Section 363 of the Bankruptcy Code, and shall remain unencumbered.

    e. The Payments (and the Proceeds thereof) shall not be used for closure costs for Steward Carney Hospital or Nashoba Valley Medical Center, a Steward Family Hospital, Inc.

4. The Hospitals shall be paid according to the following schedule, subject to the satisfaction of the conditions below, unless EOHHS, in its sole discretion, provides written consent (email to suffice):

    a. Tranche 1 shall be paid on or about August 9, 2024 conditioned on:

        i. On or before August 6, 2024, entry of an order by the Bankruptcy Court, in form and substance acceptable to EOHHS, approving this Payment Agreement
        ii. Delivery to counsel to EOHHS of a draft transition services agreement for each of the hospitals identified in paragraph 4(a)(i) hereof on or before August 6, 2024; and
        iii. Compliance with each requirement in this Agreement.

    b. Tranche 2 shall be paid on or about August 16, 2024, conditioned on:

        i. The execution of agreements to acquire the hospital operations and land of Steward St. Elizabeth's Medical Center, Steward Good Samaritan Medical Center, Steward Holy Family Hospital, Steward St. Anne's Hospital, and Morton Hospital on or before August 9, 2024. For the avoidance of doubt, there shall be no payment required or made under this Agreement unless and until EOHHS has determined the condition required under this paragraph 4.b.i. has been satisfied;
        ii. The issuance of one or more orders by the Bankruptcy Court on or before August 15, 2024, approving the sale of St. Elizabeth's Medical Center, Steward Good Samaritan Medical Center, Steward Holy Family Hospital, Steward St. Anne's Hospital, and Morton Hospital For the avoidance of doubt, there shall be no Tranche 2 payment made or required under this Agreement unless and until EOHHS has determined the condition required under this paragraph 4.b.ii has been satisfied;
        iii. Compliance with all Bankruptcy Court orders and Department of Public Health directives relating to the closure processes for Steward Carney Hospital and/or Nashoba Valley Medical Center, except that in the event of conflict, the orders of the Bankruptcy Court shall prevail;
        iv. Delivery of an agreed form of transition services agreement for each of the hospitals identified in paragraph 4(b)(i) hereof on or before August 15, 2024; and
        v. Compliance with each requirement in this Agreement.

EXECUTION VERSION

5. Upon providing two (2) calendar days' notice and without further order, EOHHS shall have the right to immediately terminate this Agreement if any of the following events occur without the prior written consent of EOHHS (email to suffice):

   a. A Hospital's Bankruptcy Proceeding is converted to a Chapter 7 proceeding (or, before August 31, 2024, a Hospital affiliates' Bankruptcy Proceeding is converted to a Chapter 7 proceeding and such conversion has a material impact on a Hospital or the ability to transition such Hospital to a new operator), or is dismissed, or a motion to appoint a Chapter 11 trustee is granted by the Bankruptcy Court, and such actions are not brought or supported by EOHHS; or

   b. The Hospitals violate any term or condition in this Agreement, unless cured, in EOHHS' sole determination, within one (1) calendar day of notice.

6. In the event of the termination of this Agreement by EOHHS, the Hospitals shall be liable under 130 CMR 450.260 through Ownership Liability, or Common Ownership Liability, and shall be jointly and severally liable for the repayment, in full, of the Payments received under this Agreement. Without limiting the forgoing, EOHHS may, in its sole discretion, and without further notice:

   a. Recoup the Payments against 100% of the amounts payable (i) by EOHHS to the Hospitals for adjudicated to pay claims, (ii) any supplemental payments payable by EOHHS to the Hospitals, and (iii) any other payment obligations otherwise owed by EOHHS to the Hospitals; or

   b. Require the Hospitals, jointly and severally, to make a single lump sum payment via wire transfer of good funds to EOHHS equaling the full amount of the Payments received under this Agreement within three (3) business days of such demand; or

   c. Apply a combination of the remedies set forth in paragraphs 6(a) and 6(b).

7. The Hospitals may continue to submit claims through MMIS as they would in the ordinary course.

8. EOHHS is making these Payments subject to (1) approval by EOHHS of the Hospitals' accurately submitted and certified EOHHS Office of Medicaid Uniform Medicaid and Low Income Uncompensated Care Cost & Charge Reports (UCCR) which, whether based on projections or based on the Hospitals' as-filed or audited/settled CMS-2552 cost report for the corresponding year, shall demonstrate for each Hospital sufficient FY22 unreimbursed Medicaid fee-for-service costs and charges to support Medicaid payments within all applicable payment limits; (2) any necessary legislative appropriation or authorization; (3) all other state approvals; (4) compliance with the RY24 RFA, as well as any amendments or successors thereto; (5) compliance with all applicable payment limits; (6) all other necessary federal approvals; and (7) all other requirements for full federal financial participation ("FFP") or other federal funding.

9. If the UCCRs filed and submitted by the Hospitals for the corresponding payment year includes projected or otherwise unaudited information, EOHHS may require the Hospitals to file updated certified UCCRs after the Hospitals' CMS-2552s for the corresponding year are filed, and after the Hospitals' CMS-2552 cost reports are audited and settled. The Hospitals agree to file such

   updated certified UCCRs as EOHHS may require, and all other terms and conditions of this Agreement will apply.

10. In the event that EOHHS receives written notification of a disallowance or disapproval of any Medicaid State Plan Amendment, Medicaid managed care contract, and/or 1115 Waiver including or relating to the amounts recouped against the Payments, as well as any amendments or successors thereto, receives written notification of a deferral or disallowance of FFP or other federal funding, receives written notification of an audit finding requiring the return of FFP or other federal funding relating to any payment made to the Hospitals, receives written notice that federal funding is unavailable for the amounts recouped against the Payments, or otherwise reasonably determines that FFP or other federal funding will be deferred or disallowed if claimed, EOHHS shall so notify the Hospitals.  At any time after EOHHS' receipt of such notice or other information, it may require the Hospitals to remit to the Commonwealth the amount of payment(s) under review, pending final disposition of such review.  EOHHS shall specify such amount in a written remittance notice to the Hospitals and, within 30 days of the date of such remittance notice, the Hospitals so notified shall remit to the Commonwealth an amount equal to the amount so specified.  In the absence of such a remittance notice, the Hospitals may, on their own initiative, remit such amount to the Commonwealth.  In the event the Hospitals for any reason retain payment amounts subject to deferral, disallowance, or audit findings as described herein, there shall be liability pursuant to 130 CMR 450.260 for such payment amounts plus any interest assessed by the federal government on the Commonwealth for such amounts.  EOHHS shall provide to the Hospitals written notification of the amount of any federal interest assessed on payment amounts retained by the Hospitals.  In the event that the final disposition of the deferral, disallowance or audit described herein is federal approval of the amounts recouped against the Payments, the Commonwealth will pay to the Hospitals an amount equal to the amount that the Hospitals remitted to the Commonwealth under this provision, or such portion of that amount that has been federally approved.  No such payment to the Hospitals shall constitute a late payment or otherwise obligate the Commonwealth to pay to the Hospitals any interest on such payment.  Any remittance pursuant to the provisions of this paragraph shall be in accordance with applicable state law.

11. Notices necessary or required under this Agreement shall be sufficient if provided in writing or email to the parties at the addresses set forth below.  Notice shall be sent to:

   Executive Office of Health and Human Services
   Office of Medicaid
   One Ashburton Place, 11th Floor
   Boston, MA  02108
   Attn:  Mohamed Sesay
   Email: Mohamed.Sesay@mass.gov

   With copies to:
   Office of the General Counsel
   Executive Office of Health and Human Services
   One Ashburton Place, 11th Floor
   Boston, MA 02108
   Attn: Sharon Boyle
   Email: Sharon.C.Boyle@mass.gov

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, NY 10019-6131
Attn:   Andrew Troop
        Hugh McDonald
Email: andrew.troop@pillsburylaw.com
        hugh.mcdonald@pillsburylaw.com

Steward Health Care System LLC
1900 N. Pearl St., Suite 2400
Dallas, TX 75201
Attn: John R. Castellano
Email: jcastellano@alixpartners.com

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn: Ray C. Schrock, Candace M. Arthur, David J. Cohen
Email: Ray.Schrock@weil.com; Candace.Arthur@weil.com; DavidJ.Cohen@weil.com

12. This Agreement may be amended at any time in writing, signed by the parties.

13. The parties agree to discuss in good-faith amendments to this Agreement at any time if EOHHS determines, in its sole discretion, that such amendment is necessary.

14. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts without the application of any conflict of laws principles.

15. No provision of this Agreement is or shall be construed as being for the benefit of, or enforceable by, any person or entity that is not a party to the Agreement.

16. This Agreement is subject to and shall only be effective upon approval by the Bankruptcy Court on or before August 6, 2024, and the Bankruptcy Court has and will retain jurisdiction to interpret and enforce this Agreement according to its terms during the Bankruptcy Proceeding.

[SIGNATURE PAGES FOLLOW]

EXECUTION VERSION

Signed by the respective duly authorized representatives of the parties hereto:

**Commonwealth of Massachusetts,
Executive Office of Health & Human Services:**

By: _____
       Kathleen Walsh, Secretary, Executive Office of Health and Human Services

Date: _____

**Steward Carney Hospital, Inc.:**

By: _____
       [Authorized signatory]

Date: _____

**Steward St. Elizabeth's Medical Center of Boston, Inc.:**

By: _____
       [Authorized signatory]

Date: _____


**Steward Good Samaritan Medical Center:**

By: _____
       [Authorized signatory]

Date: _____

**Steward Holy Family Hospital, Inc.:**

By: _____
       [Authorized signatory]

Date: _____

**Morton Hospital, a Steward Family Hospital, Inc.:**

By: _____
       [Authorized signatory]

Date: _____

EXECUTION VERSION

**Steward St. Anne's Hospital Corporation:**

By: _____
[Authorized signatory]

Date: _____

**Steward Norwood Hospital, Inc.:**

By: _____
[Authorized signatory]

Date: _____

**Nashoba Valley Medical Center, a Steward Family Hospital, Inc.:**

By: _____
[Authorized signatory]

Date: _____

**Steward Health Care System LLC:**

By: _____
[Authorized signatory]

Date: _____