IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM, LLC, *et al.*, | ) ) ) ) | Case No. 24-90213 (CML) |
| Debtors. | ) | (Jointly Administered) |

**MOTION OF WESTERN RESERVE HEALTH EDUCATION, INC.
TO COMPEL DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACT**

> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON AUGUST 30, 2024, AT 10:00 AM (CENTRAL TIME) IN COURTROOM 401, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002 . YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE LOPEZ'S CONFERENCE ROOM NUMBER IS 590153. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE LOPEZ'S HOME PAGE. THE MEETING CODE IS "JUDGELOPEZ". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE LOPEZ'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

Creditor, Western Reserve Health Education, Inc. ("WRHE"), by counsel, hereby moves this Court pursuant to 11 U.S.C. §365(d)(2), Federal Rule of Bankruptcy Procedure 6006 and 9014, to enter an order requiring the Debtor to assume or reject the executory contract between WRHE and Steward Health Care System LLC ("Steward" or "Debtor"). Specifically, WRHE submits this

Motion for an order compelling the Debtor to assume or reject its Master Funding and Services Agreement (the "Funding Agreement") entered into with WRHE in relation to graduate medical education programs WRHE provides at the Debtor's facilities.

The Debtor receives state and federal funds specifically earmarked to pay WRHE for the graduate medical education programs it provides. Debtor continues to receive said state and federal funding post-petition, but is not paying WRHE for the education services it is currently providing, and the disposition of said state and federal funds received by Debtor is unknown. The last payment received by WRHE for the graduate medical education programs it provides was approximately May 2023. As of the date of this Motion, WRHE is owed approximately $207,774.35 under the Funding Agreement, representing costs and expenses paid by WRHE to continue the graduate medical education programs, that the Debtor is obligated to pay under the Funding Agreement. In addition, there are numerous additional expenses/debts owed by the Debtor under the Funding Agreement to faculty, vendors and third parties, which have not been paid and are in default.[1]

WRHE relies extensively on the state and federal funds received by Debtor to support its residency education program at the Debtor's facilities. WRHE is being burdened herein in that it cannot continue providing its residency programs post-petition to the Debtor, whereby the Debtor fails to turn over the state and federal funds it is receiving for same. Without relief WRHE is in jeopardy of losing its accreditation, its ability to fill vacant resident positions, its current faculty, and educational resources and training sites. WHRE submits that for these reasons, and in order to mitigate its damages, it is necessary that the Debtor assume the Funding Agreement and cure any

---

[1] See Parg. 14 below.

default, or reject same, on an expedited basis pursuant to 11 U.S.C. §365(d)(2). In support of this Motion, WRHE states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

2. The statutory predicates for relief sought herein are sections §§105(d)(2)(A) and 365(d)(2) of chapter 11, title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

3. Steward Health Care System, LLC and its debtor affiliates, as debtors in possession in the above-captioned chapter 11 cases, filed a voluntary petitions for relief under chapter 11 of the Bankruptcy Code on May 6, 2024.

4. The Debtors are the largest private physician-owned, for-profit healthcare network in the United States. The Debtors' medical facilities, clinics, and hospitals are currently continuing to provide care to patients across the country.

5. Trumball Regional Medical Center (the "Medical Center") is a Steward owned hospital located in Warren, Ohio. As of the date of the filing of this Motion, the Medical Center is continuing to see and treat patients.

6. WRHE is a not-for-profit organization that is dedicated to the training of residents and continuing medical education. More specifically, WRHE is the institutional sponsor of graduate medical education programs accredited by the Accreditation Council for Graduate Medical Education ("ACGME"). WRHE sponsors three residency programs and one fellowship program.

7. Importantly, Centers for Medicare and Medicaid Services ("CMS") and the Ohio Department of Medicaid ("Ohio Medicaid") fund WRHE's residency programs by paying hospitals according to the number of residents who train in respective hospitals. This funding is intended to cover direct and indirect expenses related to educating physician residents. *See* 42 U.S.C. § 1396ww(h) (federal statutory basis for payment of graduate medical education costs); 42 C.F.R. § 413.75 (outlining the methodology for Medicare payments for graduate medical education); Ohio Administrative Code Rule 5160-2-67 (outlining the calculation of a hospital's graduate medical education costs in Ohio).

8. In 2018, WRHE entered into the Funding Agreement with Steward, a wholly owned affiliate of the Debtor, as a major clinic training site for WRHE's residency program. A copy of the Funding Agreement is attached hereto as **Exhibit A**.

9. Per the Funding Agreement, Steward committed to provide financial services, including paying WRHE's bills related to the day-to-day functions of the residency and fellowship programs. Specifically:

> 3. WRHE and Steward, through authorized representatives of each Site, shall meet prior to each academic year (i.e., July 1 through June 30) (the "Academic Year") to agree by December 31st regarding the number of full-time equivalent (FTE) Residents that WRHE agrees to accept for each Program for the upcoming Academic Year. At such time, WRHE and Steward shall calculate and agree upon the estimated Expenses for all WRHE Services and all Programs at each Site for the upcoming Academic Year, and will attach the aggregate estimated Expenses for each Site and WRHE Service to this Agreement as an appendix in substantially the form set forth as Exhibit D, attached hereto and incorporated herein by reference. The Parties shall ensure that Exhibit D for each Site and each academic year shall be available for review by any requesting regulatory or accrediting body. WRHE and Steward shall also review Exhibit C, attached hereto and incorporated herein by reference, and update the same as necessary to reflect any mutually agreed upon changes to WRHE Services.

**Ex. A** at Section 3.

10. WRHE and the Medical Center reached its most recent agreed budget, according to the requirements of the Funding Agreement, on August 30, 2023. A copy of the budget is attached hereto as **Exhibit B**.

11. On May 28, 2024, Steward and WRHE renewed the Funding Agreement, a copy of which is attached hereto as **Exhibit C**.

12. Said renewal provides for a continuation of the services provided by WRHE to the Debtor, post-petition.  The renewal of the Funding Agreement, in part, also allows Steward to continue to receive both CMS and Ohio Medicaid funding for each WRHE resident training in their hospital. *See supra*, ¶ 7. Steward and the Medical Center, through the Funding Agreement and related commitments, state they are committed to provide the necessary educational, financial, physical, and human resources needed to comply with all applicable ACGME and specialty board requirements related to these programs.  *See* **Exhibit D**.

13. Notwithstanding renewal of the Funding Agreement, the Debtor has not cured the defaulted amounts owed thereunder.  Yet, the Debtor continues to receive said CMS and Ohio Medicaid funding post-petition.  Stated differently, the Debtor is enjoying the benefits of the Funding Agreement renewal by receiving CMS and Ohio Medicaid funding post-petition, but fails to cure its default by paying for WRHE's services. *See supra*, ¶ 7.

14. Now, based on the Debtor's failure to assume and cure defaults, faculty have threatened to stop teaching and vendors have threatened to cut off services to WRHE. Critical expenses that have not been paid by the Debtor to faculty, vendors and third parties as required under the Funding Agreement in 2024 include:

    a. New Innovations. This is the residency management suite that outlines the time spent by residents in each of their rotation.  This software is used by WRHE to

5

generate the "IRIS" report for the Medical Center's cost report. The IRIS report will be used by CMS to pay the Medical Center for each WRHE resident. The budget, as part of the Funding Agreement, expressly outlines the cost for this software program as the IRIS report is generated through this software program.

b. National Residency Match Program (NRMP). The NRMP is a centralized program for matching medical school graduate applicants into residency programs in the United States. Each year residency programs pay a fee to match applicants into their upcoming vacant positions vacated by graduating residents in each of their residency programs. The Debtor is required to pay this fee under the Funding Agreement.

c. Northeast Ohio Medical University ("NEOMED"). NEOMED offers several mandatory courses and clinical standard assessment tests to residents. Steward did not pay the fees for 2022 and 2023 examinations, therefore residents were not allowed to participate in 2024. Although the Debtor is required to pay said fees, WRHE paid all outstanding fees to NEOMED in 2024 to allow residents to participate in the 2024-2025 academic year.

d. uWorld/Rosh Review. This program is a specialty board test preparation software used to enhance the residents' education and pass their specialty boards after graduation. The Debtor is required to pay for said software under the Funding Agreement.

e. Faculty. Multiple faculty have not been paid, some dating back to 2023, and many are threatening to stop teaching if they are not paid soon. The Debtor is required to pay faculty under the Funding Agreement.

    f. AVI Food Systems (AVI). AVI is a food vending company. The residents receive a monthly stipend for food to purchase when the Medical Center's cafeteria is closed. It is an ACGME requirement and contractual commitment that residents have access to food while on duty in the hospital. AVI has not been paid, therefore AVI will not load money on the resident MarketC cards for them to purchase food out of AVI vending machines. Under the Funding Agreement the Debtor is financially responsible for this service.

    g. The Medical Center has stopped paying for workers' compensation dating back to 2023. Pursuant to the terms of the Funding Agreement, said amounts are part of the benefits the Debtor is required to pay.

    h. Accreditation Counsel for Graduate Medical Education (ACGME). ACGME charges accreditation fee to each of the programs they accredit in the United States. These accreditation fees must be paid by the sponsoring institution, which in this case is WRHE. However, Steward is required to reimburse WRHE for this expense.

    i. Housing for mandatory rotations. Under the Funding Agreement the Debtor is financially responsible for housing for mandatory resident rotations that the Medical Center cannot provide the residents.

15. Based on Debtor's default, budgeted expenses outlined in the Funding Agreement have been paid by WRHE to prevent collapse of the training programs for residents and continuing medical education. WRHE has not been reimbursed the budgeted expenditures that WRHE has paid notwithstanding the Debtor's financial responsibility for same under the Funding Agreement.

16. Without payment, WRHE is at risk of losing its own accreditation as a residency training program under the ACGME. Additionally, the nonpayment of faculty by the Medical Center has

already caused some faculty members to threaten resignation without payment. In short, the health of the entire residency training program and, thus, the treatment of patients at the Medical Center, will be directly and severely impacted if the Debtor continues to avoid assumption and payment under the renewed Funding Agreement.

## ARGUMENT

The balance of interests at stake favors compelling the Debtor to assume or reject the Funding Agreement. Under Section §365(d)(2) of the Bankruptcy Code, a debtor generally may assume or reject an executory contract until the confirmation of a plan of organization. However, the time afforded a debtor to evaluate the benefits of the assumption or rejection of contracts has limits. Section 365(d)(2) provides that a court may, on request, shorten the time within which a debtor must choose whether to assume or reject a given agreement:

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2).

Further, under Section §105(d)(2) of the Bankruptcy Code, courts may compel debtors to assume or reject executory contacts by a date certain. 11 U.S.C. § 105(d)(2)(A). In making this determination, courts balance the interests of the non-debtor contracting party against the interests of the debtor and the bankruptcy estate. *See In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr.D.Del. 2001). The Court may consider the damage the non-debtor will suffer beyond the compensation available under the Bankruptcy Code, the importance of the contract to the debtor's business and reorganization, and whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan, and whether exclusivity has

terminated. (cite). *Id*. (citing *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105-106 (2d Cir. 1982)). In this case, the Debtor's post-petition renewal of the Funding Agreement evidences the importance of the contract to its business.  Furthermore, the Debtor has  had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan.

Absent this relief, WRHE will continue to suffer tremendous consequences as a result of the Debtor's nonpayment of amounts owed to it, faculty, vendors and third parties under the Funding Agreement. Those consequences are not just monetary losses that may not be recovered in the course of this bankruptcy proceeding. Rather, WRHE faces a potential loss of accreditation, the loss of staff, and a significant loss of educational resources for residents.

As this Court knows, auctions originally scheduled for June 27, 2024 were postponed because the Debtors have not received qualified bids for those facilities. [DE 1645]. With sales falling through and changing bid deadlines, it is unclear when many of these issues may be resolved. WRHE cannot wait until the Debtor is ready to decide how they will manage and organize their significant, country-wide assets while patients are actively treated in their facilities. Residents continue to work in these facilities while receiving training and support from WRHE. But WRHE cannot expect to front the costs of this entire operation that the Debtors are contractually required to comply with, and under which the Debtors are receiving federal and state funds to support. In these circumstances, it is critical that WRHE gain some certainty regarding the Debtor's goal with respect to the Funding Agreement.

Finally, the Debtor will not suffer material harm if the Court compels them to decide if they will reject or assume the Funding Agreement. If the Debtor determines that it is in their best interest to assume the Funding Agreement in connection with the reorganization of their affiliates and facilities, they should be required to remit payment of all outstanding expenses owed to

WRHE. The timing of this decision will not impact the Debtor's ability to reorganize or otherwise manage their facilities.

## RESERVATION OF RIGHTS

WRHE reserves all rights to file other pleadings or seek other relief in these cases, including, but not limited to, administrative priority status for its claims under the Funding Agreement.

## CONCLUSION

WHEREFORE, WRHE respectfully requires that the Court enter an Order compelling the Debtors to assume or reject the Funding Agreement within ten (10) days of the entry of the Order granting this Motion.

Respectfully submitted,

WYATT, TARRANT & COMBS, LLP

 /s/ Daniel E. Hitchcock
Daniel E. Hitchcock (88927)
250 West Main Street, Suite 1600
Lexington, KY  40507-1746
Telephone:  (859) 233-2012
Facsimile:  (859) 259-0649
Email: courtalert@wyattfirm.com
          dhitchcock@wyattfirm.com
*Counsel for Western Reserve Health Education, Inc., admitted Pro Hac Vice*

101701500.1