IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** § | | **Chapter 11** |
| § | | |
| **STEWARD HEALTH CARE SYSTEM** § | | **Case No. 24-90213 (CML)** |
| **LLC,** *et al.*, § | | |
| § | | **(Jointly Administered)** |
| Debtors.[1] § | | |
| § | | |
| ———————————————— § | | |
| **STEWARD HEALTH CARE SYSTEM** § | | |
| **LLC,** *et al.*, § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | | **Adv. Proc. No. 24-_____ (CML)** |
| § | | |
| **MEDICAL PROPERTIES TRUST,** § | | |
| **INC., MPT OF HILLSIDE-STEWARD,** § | | |
| **LLC, MPT OF MELBOURNE-** § | | |
| **STEWARD, LLC, MPT OF** § | | |
| **ROCKLEDGE-STEWARD, LLC, MPT** § | | |
| **OF SEBASTIAN-STEWARD, LLC,** § | | |
| **MPT OF SHARON-STEWARD, LLC,** § | | |
| **MPT OF WARREN-STEWARD, LLC,** § | | |
| **MPT OF YOUNGSTOWN-STEWARD,** § | | |
| **LLC, MPT OF MESA, LLC, MPT OF** § | | |
| **WEST MONROE, LLC, MPT OF** § | | |
| **PORT ARTHUR, LLC, MPT OF WEST** § | | |
| **VALLEY CITY, LLC, MPT OF HOPE-** § | | |
| **STEWARD, LLC, MPT OF ODESSA-** § | | |
| **STEWARD, LLC, MPT OF PHOENIX-** § | | |
| **STEWARD, LLC, MPT OF PHOENIX** § | | |
| **BEHAVIORAL-STEWARD, LLC,** § | | |
| **MPT OF SALT LAKE CITY-** § | | |
| **STEWARD, LLC, MPT OF SAN** § | | |
| **ANTONIO-STEWARD, LLC, MPT OF** § | | |
| **TEMPE-STEWARD, LLC, MPT OF** § | | |
| **TEXARKANA-STEWARD, LLC, MPT** § | | |
| **OF MARICOPA RE-STEWARD, LLC,** § | | |
| **MPT OF ODESSA RE-STEWARD,** § | | |

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

| | |
|---|---|
| LLC, MPT OF OGDEN RE-STEWARD, LLC, MPT OF PHOENIX RE-STEWARD, LLC, MPT OF PORT ARTHUR RE-STEWARD, LLC, MPT OF SAN ANTONIO RE-STEWARD, LLC, MPT OF LEHI-STEWARD, LLC, MPT OF NORWOOD-STEWARD, LLC, MPT OF HOUSTON-STEWARD, LLC, MPT OF HOUSTON RE-STEWARD, LLC, MPT OF FLORENCE, LLC, MPT OF BIG SPRING-STEWARD, LLC, MPT OF WEST JORDAN-STEWARD PROPERTY, LLC, MPT OF LAYTON-STEWARD PROPERTY, LLC, MPT OF MESA SUPERSTITION-STEWARD, LLC, MPT OF CORAL TERRACE-STEWARD, LLC, MPT OF MIAMI-STEWARD, LLC, MPT OF LAUDERDALE LAKES-STEWARD, LLC, MPT OF CORAL GABLES-STEWARD, LLC, MPT OF HIALEAH-STEWARD, LLC, MPT OF HIALEAH PALMETTO-STEWARD, LLC, MPT OF BRIGHTON-STEWARD, LLC, MPT OF BROCKTON-STEWARD, LLC, MPT OF FALL RIVER-STEWARD, LLC, MPT OF METHUEN-STEWARD, LLC, MPT OF TAUNTON-STEWARD, LLC, MPT OF AYER-STEWARD, LLC, MPT OF HAVERHILL-STEWARD, LLC, AND MPT OF DORCHESTER-STEWARD, LLC, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § |
| **Defendants.** | § |

## ADVERSARY COMPLAINT

Plaintiffs Steward Health Care System LLC ("**Steward**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), by and through their undersigned attorneys, file this adversary proceeding

2

pursuant to 11 U.S.C. § 105, 28 U.S.C. § 2201, and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") against Medical Properties Trust, Inc.; its lessor affiliates MPT of Hillside-Steward, LLC, MPT of Melbourne-Steward, LLC, MPT of Rockledge-Steward, LLC, MPT of Sebastian-Steward, LLC, MPT of Sharon-Steward, LLC, MPT of Warren-Steward, LLC, MPT of Youngstown-Steward, LLC, MPT of Mesa, LLC, MPT of West Monroe, LLC, MPT of Port Arthur, LLC, MPT of West Valley City, LLC, MPT of Hope-Steward, LLC, MPT of Odessa-Steward, LLC, MPT of Phoenix-Steward, LLC, MPT of Phoenix Behavioral-Steward, LLC, MPT of Salt Lake City-Steward, LLC, MPT of San Antonio-Steward, LLC, MPT of Tempe-Steward, LLC, MPT of Texarkana-Steward, LLC, MPT of Maricopa RE-Steward, LLC, MPT of Odessa RE-Steward, LLC, MPT of Ogden RE-Steward, LLC, MPT of Phoenix RE-Steward, LLC, MPT of Port Arthur RE-Steward, LLC, MPT of San Antonio RE-Steward, LLC, MPT of Lehi-Steward, LLC, MPT of Norwood-Steward, LLC, MPT of Houston-Steward, LLC, MPT of Houston RE-Steward, LLC, MPT of Florence, LLC, MPT of Big Spring-Steward, LLC, MPT of West Jordan-Steward Property, LLC, MPT of Layton-Steward Property, LLC, MPT of Mesa Superstition-Steward, LLC, MPT of Coral Terrace-Steward, LLC, MPT of Miami-Steward, LLC, MPT of Lauderdale Lakes-Steward, LLC, MPT of Coral Gables-Steward, LLC, MPT of Hialeah-Steward, LLC, and MPT of Hialeah Palmetto-Steward, LLC (collectively, the "**Master Lease I Lessors**"); and its lessor affiliates MPT of Brighton-Steward, LLC, MPT of Brockton-Steward, LLC, MPT of Fall River-Steward, LLC, MPT of Methuen-Steward, LLC, MPT of Taunton-Steward, LLC, MPT of Ayer-Steward, LLC, MPT of Haverhill-Steward, LLC, and MPT of Dorchester-Steward, LLC (collectively, the "**Master Lease II Lessors**" and, collectively with the Master Lease I Lessors and Medical Properties Trust, Inc., "**MPT**") and allege as follows:

## NATURE OF THE CASE

1. The Debtors commenced these chapter 11 cases on May 6, 2024 (the "**Petition Date**") to obtain debtor-in-possession financing and continue pursuing their prepetition sales and marketing process. To that end, on June 3, 2024, the Debtors obtained approval of global bidding procedures in connection with the sale of these assets as set forth in this Court's Bidding Procedures Order.[2] Pursuant to the Bidding Procedures Order, the Debtors have engaged in a robust marketing and sales process to explore all available transactions that would allow them to sell their hospitals to new operators who can continue to serve the Debtors' patients and communities. As discussed below, however, these efforts have been disrupted by parties who have refused to follow the clear ground rules.

2. Specifically, the Debtors' sales process has been complicated by the fact that, while the Debtors own the licenses to operate their hospitals as well as all related operating assets, including equipment, inventory, contracts, and accounts, 30 out of 31 of the Debtors' hospital locations are subject to master leases with MPT—i.e., "Master Lease I" and "Master Lease II" (defined below). Accordingly, as bidders propose acquisition terms to purchase these facilities as ongoing operating hospitals, the Debtors and MPT have competing interests as it relates to the value attributed to the Debtors' operating assets versus the value allocated to the real estate owned by MPT or the proposed terms of a new lease with MPT.

---

[2] *See Order (I) Approving (A) Global Bidding Procedures for Sales of the Debtors' Assets, (B) Form and Manner of Notice of Sales, Auctions, and Sale Hearings, and (C) Assumption and Assignment Procedures and Form and Manner of Notice of Assumption and Assignment; (II) Authorizing Designation of Stalking Horse Bidders; (III) Scheduling Auctions and Sale Hearings; and (IV) Granting Related Relief* [ECF No. 626] (the "**Bidding Procedures Order**" and the bidding procedures attached as Exhibit 1 thereto, the "**Global Bidding Procedures**"). Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order and the Global Bidding Procedures, as applicable.

4

3. To date, MPT has interfered in the bidding and sales process. Indeed, the Debtors' sales process has been challenged by the self-interested involvement and interference of MPT, who has attempted to undermine the Debtors' sales process by, among other things, (i) communicating directly with the Debtors' bidders without the Debtors' consent and in a manner that violates the Bidding Procedures; (ii) directing bidders, many of which have prior and ongoing relationships with MPT or otherwise seek to enter into revised leases with MPT as their future landlord, to allocate all of the value of their bids to MPT's real estate; and (iii) attempting to pressure the Debtors, who have limited liquidity runway, to accede to its demands that all value be siphoned to MPT, leaving the estates bare and risking the Debtors' ability to maintain and sell their operations in a manner that maximizes value and safeguards patient health and safety. MPT's sales process interference and brinksmanship jeopardizes the future of dozens of hospitals, tens of thousands of jobs, and the safety of patients—not to mention wrongfully taking value from the estate.

4. Given the Debtors' liquidity position and terms of their existing DIP financings, the Debtors must move forward with hospital sales as expeditiously as possible to preserve their operations and maximize value for the estate. MPT's course of conduct, however, has prevented the Debtors from realizing, much less maximizing, the value of their assets. That course of conduct thus poses a grave threat to the success of the Debtors' chapter 11 cases and, moreover, is inconsistent with the purposes of chapter 11—i.e., to preserve going concerns, maximize the property available to satisfy creditors, achieve fundamental fairness and justice, and provide a forum before this Court for the resolution of disputes related to the scope of, and claims against, the Debtors' estates.

5.  The Debtors' robust marketing and sales process has been successful in the sense that it has brought willing and qualified bidders to the table that are interested in purchasing the hospitals. But in virtually every case, there is an actual dispute between MPT and the Debtors regarding the value and consideration to which MPT is entitled relative to the estates that has prevented sales from occurring and that must be resolved to permit such sales to be consummated.

6.  In response to MPT's attempts to siphon value from the Debtors' estates and, ultimately, resources from the Debtors' creditors, patients, employees, and other key stakeholders, consistent with the Global Bidding Procedures, the Debtors have begun taking certain remedial actions.

7.  *First,* the Debtors have, consistent with their rights under the bidding procedures, allowed bidders to submit bids that contemplate a single purchase price for the relevant hospital's or hospitals' operations and real estate combined.[3]

8.  *Second*, the Debtors will seek necessary approvals to escrow sale proceeds (which will be on account of both real estate and operations) in connection with any sale transaction for which there is no agreement on allocation of value.

9.  *Third*, the Debtors now commence this adversary proceeding to obtain declaratory judgments and related relief to resolve ongoing allocation disputes between MPT and the Debtors concerning the amount of consideration attributable to the estates' assets so that an independent arbiter—i.e., this Court—can make a determination with respect to the value of the Debtors' assets upon which the parties can rely.

---

[3]  *See, e.g.*, *Asset Purchase Agreement by and among Steward Melbourne Hospital, Inc., Steward Rockledge Hospital, Inc., and Steward Sebastian River Medical Center, Inc. as Sellers and Orlando Health, Inc. and Orlando Health Medical Group, Inc. as Buyer Parties* dated Aug. 14, 2024.

10. Moreover, the Debtors understand that the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") intends to file a Challenge[4] in the near term asserting a number of claims and causes of action against MPT on behalf of the Debtors' estates, including but not limited to (i) seeking to recharacterize the Master Leases as "disguised financings," (ii) seeking to avoid certain liens and preferential payments granted or made to MPT prior to the Petition Date, and (iii) seeking to equitably subordinate MPT's claims arising from prepetition conduct.[5] Given that the Creditors' Committee's anticipated action will raise a bona fide dispute as to whether MPT actually owns the underlying real property and if so to what extent, the Debtors also assert that, in connection with the sale of their hospital assets, the underlying real property may be sold free and clear of MPT's interests under section 363(f) of the Bankruptcy Code, including section 363(f)(4), which provides that a debtor "may sell property . . . free and clear of any interest in such property of an entity other than the estate . . . if . . . such interest is in bona fide dispute."

11. The Debtors believe that it is critical to the success of these chapter 11 cases that this adversary proceeding provide the forum to resolve all of the pending allocation disputes between the parties as it will enable the Debtors to obtain approval of sales to buyers and permit the Court to determine the value of the Debtors' hospital operating assets, as compared to the underlying real estate, thereby resolving disputes between the Debtors and MPT.

---

[4] "**Challenge**" shall have the meaning ascribed to it in the *Final Order (I) Authorizing the Debtors to (A) Obtain New Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [ECF No. 1538].

[5] The Debtors reserve all rights to seek to equitably subordinate MPT's claims under section 510(c) of the Bankruptcy Code, including based upon MPT's interference with the sales process.

## JURISDICTION AND VENUE

12. This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

13. The Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

14. An actual and justiciable controversy exists between and among the parties concerning the allocation of value between the real property and hospital operations in respect of the hospitals subject to the Master Leases and in connection with bids from third-party bidders for these assets that prevents the consummation of sales of property of the estates.

15. Alternatively, this Court has non-core concurrent jurisdiction over this proceeding under 28 U.S.C. §1334(b), because the causes of action are directly related to the chapter 11 cases and will have a significant impact on the Debtors' estates.

16. The Court has personal jurisdiction over MPT pursuant to Bankruptcy Rule 7004.

17. The statutory bases for the relief requested herein are 11 U.S.C. § 105, 28 U.S.C. § 2201, and Bankruptcy Rules 3007, 3012, and 7001.

18. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

19. Pursuant to Rule 7008 of the Bankruptcy Rules and Rule 7008-1 of the Bankruptcy Local Rules for the Southern District of Texas, the Debtors consent to the entry of final orders or judgment by this Court in connection with this adversary proceeding if it is determined that, absent consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## THE PARTIES

20. Plaintiffs are the debtors-in-possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to rule 1015(b) of the Bankruptcy Rules.

21. Upon information and belief, Medical Properties Trust, Inc. is a publicly traded real estate investment trust that invests in healthcare facilities subject to "triple-net" leases, i.e., lease agreements in which the tenant agrees to pay all expenses—including real estate taxes, building insurance, and maintenance—in addition to rent.

22. Upon information and belief, the Master Lease I Lessors are limited liability companies organized under the laws of the State of Delaware and parties to that certain *Second Amended and Restated Master Lease Agreement* dated as of March 14, 2022 (as amended and/or restated, "**Master Lease I**").

23. Upon information and belief, the Master Lease II Lessors are limited liability companies organized under the laws of the State of Delaware and parties to that certain *Master Lease Agreement* dated as of March 14, 2022 (as amended and/or restated, "**Master Lease II**" and, together with Master Lease I, the "**Master Leases**").

**BACKGROUND**

A.     **The Master Lease Agreements**

24.     Certain of the Debtors lease, as tenants, 31 facilities from lessor affiliates of MPT pursuant to Master Lease I and Master Lease II. Master Lease II was ordered rejected by the Court on July 31, 2024.[6] The Debtors filed a motion to reject Master Lease I on August 16, 2024.

25.     The Debtors conduct substantially all of their hospital operations on the properties subject to the Master Leases.

B.     **The Debtors' Efforts to Sell Their Hospitals**

26.     As part of an effort to address the industry and operational challenges that ultimately led the Debtors to commence the Chapter 11 Cases, in early 2024 the Debtors engaged investment bankers Leerink Partners LLC ("**Leerink Partners**") and Cain Brothers ("**Cain Brothers**") to initiate and manage a comprehensive marketing and sales process for the Debtors' hospital operations.

27.     Before the Petition Date, Leerink Partners and Cain Brothers contacted numerous parties they determined might have an interest in acquiring the Debtors' hospitals. Numerous parties signed non-disclosure agreements and were granted access to virtual data rooms containing diligence materials.

28.     After the Petition Date, Leerink Partners and Cain Brothers resolicited all of the parties that they had contacted as part of their initial marketing outreach to make those parties aware of the Debtors' chapter 11 filing and certain corresponding global bidding procedures, including the bid deadline for the Debtors' hospitals. Leerink Partners and Cain Brothers also

---

[6]    *See Order (I) Authorizing Rejection of Master Lease II Agreements Effective as of the Rejection Date in Connection with Planned Transition and Sale of Massachusetts Hospitals to New Operators, and (II) Granting Related Relief* [ECF No. 1782].

10

solicited interest from additional potentially interested parties after the Petition Date. As a result of subsequent marketing outreach, several more parties signed non-disclosure agreements and were granted access to virtual data rooms containing diligence materials.

29. On June 3, 2024, the Court entered the Global Bidding Procedures to govern the sale and auction of the Debtors' assets, including the Debtors' hospitals. The Global Bidding Procedures provide the Debtors with flexibility to solicit proposals, negotiate transactions, hold auctions, and consummate sale transactions for the highest or otherwise best value, all while protecting the due process rights of parties-in-interest in these Chapter 11 Cases and ensuring a full and fair opportunity to review and consider all potential transactions. The Global Bidding Procedures, among other things, (i) provide procedures for potential third-party bidders to access due diligence; (ii) describe the manner in which bidders and bids become "qualified;" (iii) set forth the consideration to be paid and the identification of assets and liabilities to be assumed; (iv) provide for the conduct of an auction, if any; (v) in the event the Debtors receive two or more Qualified Bids for substantially the same assets, prescribe procedures for the selection and approval of one or more Successful Bidder(s) and Back-Up Bidder(s); and (vi) set the deadlines in connection with the foregoing.

30. The Global Bidding Procedures impose various restrictions upon MPT's communications with Potential Bidders. For example, the Global Bidding Procedures provide that:

    a. "[t]here must be no communications . . . between Potential Bidders and the Consultation Parties [defined in the Global Bidding Procedures to include the Prepetition MPT Secured Party and the MPT Lessors] regarding the Debtors unless the Debtors have previously authorized such communication in writing," Global Bidding Procedures at 11, 29;

11

  b.  "[MPT] shall provide substantially concurrent copies to Cain [Brothers] and Leerink [Partners] of any offers sent to or received from a Potential Bidder with whom [MPT] has entered into a nondisclosure agreement with respect to the disposition of [MPT's real property]," *id.* at 11;

  c.  "[MPT] shall provide Cain [Brothers], Leerink [Partners], and the Creditors' Committee's professionals a weekly summary of all material conversations with Potential Bidders," *id.*; and

  d.  "[MPT] will provide reasonable advance notice to the Debtors of any scheduled or outbound substantive call with a Potential Bidder of any Hospitals and the Debtors may include up to two professionals from Cain [Brothers] or Leerink [Partners], as applicable, as observers on such call," *id.* at 12.

31. The Global Bidding Procedures further provide that, "[t]o the extent the real property underlying one or more of the Debtors' hospitals that the Potential Bidder seeks to acquire is owned by [MPT] . . . and is subject to a lease in favor of one of the Debtors, the Bid must indicate the proposed treatment of such real property and proposed terms of an agreement with [MPT]." *Id.* at 13. "Such proposed treatment and proposed terms may include, but is not limited to, the following: (i) severance of the applicable real property from its current master lease, followed by the Debtors' assumption and assignment of such severed lease; (ii) the partial termination of the master lease with respect to the applicable real property and the execution of a new lease with respect thereto; or (iii) the Potential Bidder's purchase of applicable real property." *Id.* The Global Bidding Procedures provide no limitation on what that treatment might be.

32. The Debtors have expressly reserved the right "to modify the Global Bidding Procedures; waive terms and conditions set forth in the Global Bidding Procedures with respect to

all Potential Bidders; accelerate or extend the date of any Bid deadline or Auction; accelerate or extend any other deadlines set forth in the Global Bidding Procedures; announce at the Auctions modified or additional procedures for conducting the Auctions; alter the assumptions set forth in the Global Bidding Procedures." Bidding Procedures Order ¶ 41.

33. Further, the Global Bidding Procedures make clear that "[n]othing in [the procedures] will require the board of directors, board of managers, or such similar governing body of a Debtor to take any action, or to refrain from taking any action, with respect to these Global Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body reasonably determines in good faith, in consultation with outside counsel, that taking such action, or refraining to take such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law." Global Bidding Procedures at 3-4.

34. The Bidding Procedures Order provides: "All parties are prohibited from (i) engaging in any collusion with respect to the submission of any bid or the Auction, (ii) coordinating or joining with any other party on a bid or bids (except as permitted by the Debtors), (iii) securing debt financing on an exclusive basis, or (iv) taking any other action intended to prevent a transparent and competitive auction process." Bidding Procedures Order ¶ 15.

35. Pursuant to the Global Bidding Procedures, the Debtors promptly established consecutive bid deadlines for hospitals in various geographic locations, including in Arkansas, Louisiana, Ohio, Pennsylvania, Arizona, Massachusetts, Texas, and Florida.

**C.     The Side Letter Agreement**

36.     On March 28, 2024, certain of the Debtors' creditors, certain of the Master Lease I Lessors, and Steward entered into that certain *Side Letter Agreement* dated as of March 28, 2024 (the "**Side Letter Agreement**") in connection with that certain *Steward Health Care System LLC Term Sheet for Proposed Debtor in Possession Financing* dated on or about March 28, 2024.

37.     Section 1(a) of the Side Letter Agreement provides, in pertinent part, that:

> [i]n the event [a hospital disposition] contemplates, provides for or otherwise results in the payment of proceeds in cash or other consideration reasonably acceptable to any MPT Party or any of its affiliates in an amount equal to the sum of (x) the lease base applicable to such hospital under [Master Lease I] . . . *plus* (y) the aggregate amount of any deferred and unpaid rent accrued in respect of such hospital under [Master Lease I] as of the applicable time of determination *plus* (z) in any case, without duplication of any amounts described under the foregoing sub-clauses (x) or (y), all other pre- or post-petition unpaid insurance and Impositions . . . accrued and outstanding relating to such hospital as of the applicable time of determination (such amounts described in the foregoing sub-clauses (x), (y), and (z), and such sum, the "Hospital Disposition Allocation Amount"), then . . . each MPT Party shall, and shall cause its affiliates to, consent to, support, not object to, or otherwise act or fail to act in any manner which could prevent, impede, delay, hinder or otherwise frustrate, in each case, the consummation of the transaction(s) contemplated in respect of such [hospital disposition] or the conveyance of the relevant hospital's real estate to the bidder and/or acquirer . . . in connection therewith.

38.     Section 1(b) of the Side Letter Agreement provides, in pertinent part, that:

> [i]n the event that [a hospital disposition] contemplates the assumption of the lease obligations associated with such hospital under [Master Lease I] substantially on the terms in effect on the date hereof . . . or otherwise provides for the satisfaction thereof, and the entity assuming such obligations is creditworthy . . . , then . . . each MPT Party shall, and shall cause its affiliates to, consent to, support, not object to . . . , or otherwise act or fail to act in any manner which could prevent, impede, delay, hinder or otherwise frustrate, the consummation of the transaction(s) contemplated in respect of such [hospital disposition] . . . .

39.     The Side Letter Agreement refers to the potential hospital dispositions described in sections 1(a) and 1(b) of the Side Letter Agreement as "Qualifying Hospital Dispositions."

40. Section 1(e) of the Side Letter Agreement provides: "In connection with any [h]ospital [d]isposition that is not a Qualifying Hospital Disposition, . . . each MPT Party shall, and shall cause its affiliates to, act reasonably and in good faith to agree on an allocation of value."

41. Section 3 of the Side Letter Agreement provides:

> The Parties hereby acknowledge that money damages may not be an adequate remedy for breaches or violations of this letter agreement and that [Steward] . . . , in addition to any other rights and remedies which may be available hereunder or at law or in equity, may apply to a court of competent jurisdiction in accordance with <u>Paragraph 5</u> [Submission to Jurisdiction; Jury Trial Waiver] for specific performance or injunction or such other equitable relief as may be deemed just and proper to enforce this letter agreement in the event of any breach of the provisions of this letter agreement or prevent any violation hereof and, to the extent permitted by applicable law, each Party hereby waives (a) any objection to the imposition of such relief and (b) any requirement for the posting of any bond or similar collateral in connection therewith.

**D.    MPT's Conduct During the Bidding and Sales Process**

42. Throughout the bidding and sales process, a pattern emerged. First, the Debtors did not receive actionable bids to acquire all of the hospitals covered under Master Lease I or Master Lease II. Second, values and terms contained in the proposals, indications of interest, and bids demonstrated that the economic terms of the Master Leases (including the rent obligations thereunder) were significantly above-market. Third, in some cases, proposals and bids attributed all or substantially all value to hospital real property, leaving little to no value for operations and personal property. In all cases, proposals and bids attributed a disproportionate amount of the value to the real property.

43. Upon information and belief, MPT has been leveraging its position as owner of the hospitals' real estate assets to extract value from bidders that undercut the Debtors' interests and has been otherwise interfering in the bidding process in ways that have caused bidders to ascribe

15

an unreasonable and excessive value to hospitals' real estate assets, such that the Debtors' estates will realize negligible value, if any, for the operating assets.

44. For example, upon information and belief, MPT has engaged in calculated efforts to undermine the Debtors' sales process by attempting to siphon all value from the Debtors' estates and hospitals into its own coffers, including:

    a. engaging in substantive discussions with certain Potential Bidders without the Debtors' consent or presence (conduct prohibited by the Global Bidding Procedures) to exert influence on such Potential Bidders to allocate all or nearly all value to the real estate and deprive the Debtors and their estates of any value, resulting in Potential Bidders submitting Bids providing for little to no value allocated to the hospital operations and assets owned by the Debtors, while MPT receives proposals that preserve MPT's above-market, burdensome, and inflated lease rates;

    b. intentionally subverting the Debtors' efforts to solicit Bids from Potential Bidders that would fairly allocate value between hospital operations and real property by (i) flagrantly and openly seeking to capture 100% of the purchase price from such Potential Bidders (even when the proposed purchase price is significantly higher than any possible objective value of the real property) and (ii) asserting to such Potential Bidders that MPT will not engage in discussions regarding a purchase or lease of the real property unless all or almost all of the value is allocated to the real estate. This behavior has resulted in at least one Potential Bidder rescinding its Bid;

    c. thwarting Potential Bidders from submitting Bids that provide a fair allocation by engaging in the aforementioned covert and improper discussions and exerting undue influence on Potential Bidders in a desperate attempt to save its above-market,

burdensome, and inflated leases, which leases have (i) been established in the market, as a result of the sales process, to be worth significantly less than what MPT insists and (ii) drained the Debtors of liquidity for years—including during the pendency of the Chapter 11 Cases;

      d.    failing to engage in timely negotiations regarding the allocation issues that would allow the sales process to efficiently proceed, including by thwarting Apollo, the lender to the MPT joint venture that is the lessor under Master Lease II, from taking over certain of the real property to permit the Massachusetts sales to be consummated unless MPT's demands are met; and

      e.    in connection with the foregoing, causing the Debtors and other estate fiduciaries to incur significant administrative expenses pursing a sales process that MPT has manipulated and on which MPT continues to exert improper influence by demanding that the Debtors either allocate an unjustifiable share of the value to the real estate or face the risk of shutting hospitals down.

45. MPT's role in the bidding and sales process has severely prejudiced the Debtors and their estates and will cause irreparable harm to the Debtors and their estates absent the Court's intervention. The Debtors not only have a fiduciary duty to maximize the value of their estates but must also consummate sales that provide for adequate proceeds on account of hospital operations to permit the Debtors to administer their estates and provide transition services to buyers of the hospitals for a period of time so that such hospitals may be effectively transitioned to new operators without disruption to the quality of care provided to the patients. The Debtors can no longer countenance incurring massive administrative expenses (which expenses MPT refused to fund beyond its initial postpetition funding commitment) to run a sales process solely for MPT's benefit.

46. The Debtors and MPT have been unable to agree upon—and instead actively dispute—the proper and appropriate allocation of value as between the real property and hospital operations with respect to the Hospitals for which bids have been received, almost without exception. These disputes have prevented otherwise viable sales from proceeding to approval and becoming effective.

47. Accordingly, the Debtors have exercised their rights, consistent with the Global Bidding Procedures, to obtain bids for the total enterprise value of each hospital, including both for real estate assets and operating assets. As a result, the bidders have or will submit a single value inclusive of the real estate and operating assets of the hospitals for which they are bidding. The disputes, however, concerning allocation between MPT and the Debtors remain.

48. The Debtors hereby seek a determination by this Court as to the proper allocation of such proceeds to the estate, which is critical to the success of the Chapter 11 Cases.

## COUNT ONE
### (Declaratory Judgment)

49. Plaintiffs repeat and reallege each of the allegations in paragraphs 1 through 48 above as though fully set forth herein.

50. The Debtors seek to sell the operating and other estate assets associated with their hospitals.

51. Upon information and belief, the market value of estate assets accounts for significantly more consideration and value than has been attributed to such assets in bids and a significant portion of the total enterprise value associated with such bids.

52. To consummate a sale of hospital assets, the sale price of the hospitals must be reasonably and equitably allocated based on market values between hospital operations and other estate assets, on one hand, and hospital real estate, on the other.

53. An actual controversy exists between the Debtors and MPT concerning these allocation issues.

54. Accordingly, Debtors request a judgment allocating the amount of value attributable to hospital operations and other estate assets, on one hand, and hospital real estate, on the other.

## PRAYER FOR RELIEF

55. For the foregoing reasons, Plaintiffs respectfully request that the Bankruptcy Court grant Plaintiffs the following relief under 11 U.S.C. § 105 of the Bankruptcy Code:

   a. entry of an order allocating the amount of value attributable to hospital operations and other estate assets, on one hand, and hospital real estate, on the other;

   b. entry of appropriate orders pertaining to escrows of proceeds, including the disposition of funds upon the resolution of disputes pertaining to particular hospital sales or this action to MPT and the Debtors' estates as appropriate; and

   c. such other and further relief, at law or in equity, to which they are entitled, including but not limited to injunctive relief.

Dated: August 19, 2024  
Houston, Texas

       /s/ Clifford W. Carlson  
WEIL, GOTSHAL & MANGES LLP  
Gabriel A. Morgan (24125891)  
Clifford W. Carlson (24090024)  
Stephanie N. Morrison (24126930)  
700 Louisiana Street, Suite 3700  
Houston, Texas 77002  
Telephone: (713) 546-5000  
Facsimile: (713) 224-9511  
Email:   Gabriel.Morgan@weil.com  
             Clifford.Carlson@weil.com  
             Stephanie.Morrison@weil.com

19

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock (admitted *pro hac vice*)
Robert S. Berezin (admitted *pro hac vice*)
Candace M. Arthur (admitted *pro hac vice*)
David J. Cohen (admitted *pro hac vice*)
Jennifer Brooks Crozier (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Ray.Schrock@weil.com
 Robert.Berezin@weil.com
 Candace.Arthur@weil.com
 DavidJ.Cohen@weil.com
 Jennifer.Crozier@weil.com

*Attorneys for Debtors and Debtors in Possession*