**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM, LLC, *et al.*,[1] | Case No. 24-90213 |
| | (Jointly Administered) |
| Debtors. | Re:  Docket No. 1991 |

**MEDICAL PROPERTIES TRUST, INC.'S (I) OBJECTION TO NOTICE
OF DESIGNATION OF STALKING HORSE BIDDER FOR CERTAIN OF THE
DEBTORS' FLORIDA HOSPITALS AND (II) EMERGENCY CROSS-MOTION
FOR ENTRY OF AN ORDER COMPELLING THE DEBTORS TO
COMPLY WITH COURT-APPROVED GLOBAL BIDDING PROCEDURES**

> **Emergency relief has been requested. Relief is requested no later than the time the Court sets a hearing on the Notice of Designation of Stalking Horse Bidder for Certain of the Debtors' Florida Hospitals (Dkt. No. 1991).**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter at a date and time to be determined in Courtroom 404, 4th Floor, 515 Rusk Street, Houston, TX 77002.**
>
> **You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at 832-917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward.  The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings.   To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page.  Select the case name, complete the required fields and click "Submit" to complete your appearance.**

# TABLE OF CONTENTS

**Page**

Emergency Consideration ........................................................................................... 1

Introduction ............................................................................................................... 1

Factual Background ................................................................................................... 5

    A.    MPT's prepetition business relationship with and support for Steward ................ 5

    B.    MPT's support for Steward during these chapter 11 Cases ................................... 6

    C.    The Global Bidding Procedures for the sale of the Debtors' assets ...................... 7

    D.    The Proposed Stalking Horse Bid for the Florida Hospitals ................................. 9

    E.    The FILO DIP Amendment ............................................................... 11

Argument ............................................................................................................... 133

I.    The Proposed Stalking Horse Bid fails to comply with the Global Bidding Procedures. ....................................................................................................... 133

II.    The Bid Protections should not be approved because the proposed transaction would vitiate MPT's property rights. ................................................................. 15

III.    Cross-Motion:  The Court should enforce the Global Bidding Procedures. ..................... 17

Conclusion ............................................................................................................... 17

4888-3473-9161

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Envision Healthcare Corp.*,
  655 B.R. 701 (Bankr. S.D. Tex. 2023) ...................................................................17

*In re Moore*,
  608 F.3d 253 (5th Cir. 2010) .................................................................................15

*In re Palm Springs II, L.L.C.*,
  65 F.4th 752 (5th Cir. 2023) ..................................................................................16

*In re TMT Procurement Corp.*,
  764 F.3d 512 (5th Cir. 2014) .............................................................................15, 16

*Pearlman* v. *Reliance Ins. Co.*,
  371 U.S. 132 (1962) ................................................................................................15

*Phillips* v. *Wash. Legal Found.*,
  524 U.S. 156 (1998) ..............................................................................................2 n.4

**Statutes and Rules**

11 U.S.C. § 363(m) ...................................................................................................16

11 U.S.C. § 365(a) ....................................................................................................12

28 U.S.C. § 157(b)(2) ...............................................................................................21

28 U.S.C. § 1334 .......................................................................................................21

Local Rule 9013-1 .......................................................................................................1

Local Rule 9013-1(d) ...............................................................................................17

Local Rule 9013-1(i) .................................................................................................19

Medical Properties Trust, Inc. and certain affiliates (collectively, "**MPT**") hereby file this *Objection to Notice of Designation of Stalking Horse Bidder for Certain of the Debtors' Florida Hospitals (Dkt. No. 1991) and Emergency Cross-Motion for Entry of an Order Compelling the Debtors to Comply With Court-Approved Global Bidding Procedures* (the "**Objection**" and the "**Cross-Motion**"), and in support thereof, respectfully submit the following:

### Emergency Consideration

In accordance with Bankruptcy Local Rule 9013-1, MPT requests consideration of the Cross-Motion no later than the same time the Court considers the Proposed Stalking Horse Order.[2]  As explained below, MPT has suffered and will continue to suffer immediate harm as a result of the Debtors' deviations from the Global Bidding Procedures,[3] and the Cross-Motion is inextricably linked to the Objection.  MPT submits that emergency consideration is therefore necessary and appropriate.

### Introduction

1.      This Objection and Cross-Motion are necessary because the Debtors, without Court approval, stopped complying with the Court-ordered Global Bidding Procedures.  In particular, despite the specific requirement in the Global Bidding Procedures that qualified bids must include *separate* and *independent* terms for treatment of MPT's real estate, the Debtors have caused bidders — including Orlando Health in connection with the Space Coast Hospitals — to submit "enterprise value" bids for hospitals, namely bids that do not distinguish Steward's

---

[2]  Capitalized terms not otherwise defined have the same meanings as in the *Notice of Designation of Stalking Horse Bidder for Certain of the Debtors' Florida Hospitals*, Dkt. No. 1991.

[3]  "Global Bidding Procedures" has the meaning ascribed to such term in the *Order (I) Approving (A) Global Bidding Procedures for Sales of the Debtors' Assets, (B) Form and Manner of Notice of Sales, Auctions, and Sale Hearings, and (C) Assumption and Assignment Procedures and Form and Manner of Notice of Assumption and Assignment; (II) Authorizing Designation of Stalking Horse Bidders; (III) Scheduling Auctions and Sale Hearings; and (IV) Granting Related Relief*, Dkt. No. 626 (the "**Global Bidding Procedures Order**").

property (hospital operations) from MPT's property (real estate).  As a result, although MPT is ready and willing to engage with Orlando Health regarding a real estate transaction, Orlando Health is not currently a Qualified Bidder and has not made an actionable proposal to MPT.

2.      Beyond the departure from the Global Bidding Procedures, the Bid Protections must be denied on an independent ground:  the protections have been offered in connection with a proposed transaction structure that is not capable of being approved by this Court.  The Debtors have proposed to sell their property (hospital operations) for an unspecified price that will be calculated by subtracting the price paid for MPT's real estate from a total purchase price.  But, in an Orwellian twist, the real estate price is *not* what the real estate owner (MPT) agrees to accept; instead, absent agreement or a court order, the real estate price will be set by the **Buyer**, provided that it does not exceed a *maximum* price agreed to by **the Debtors** (who, under the proposed APA, stand to benefit dollar-for-dollar if the real estate is sold for less).  The Buyer's "allocation" will then, according to a bracketed sentence in the proposed sale order, become "final and binding" on MPT.  *See* Proposed Sale Order ¶ 48; *see also* Designation Notice at 2 ("Allocation Dispute").

3.      The Debtors' proposal, if allowed to go forward, would be an abuse of the bankruptcy process and an affront to MPT's property rights.  To state the obvious, neither the Bankruptcy Code nor the U.S. Constitution allows a debtor-tenant (Steward) and a purchaser of the tenant's operations (Orlando Health) to dictate the terms on which the debtor's landlord (MPT) will sell its private property.[4]  The Court should not approve Bid Protections to "protect"

---

[4]  *See, e.g.*, *Phillips* v. *Wash. Legal Found.*, 524 U.S. 156, 167 (1998) (it is a "fundamental maxim of property law that the owner of a property interest may dispose of all or part of that interest as he sees fit"); U.S. Const. amend. V.

a transaction that, as proposed, would apparently force MPT to sell its private property on terms chosen by Steward and Orlando Health.

4.      The Debtors can be expected to lash out at MPT and try to blame MPT for the poor progress of these cases and the delays in the sale process.  That narrative is not just irrelevant as a legal matter — it does not change the fact that the Debtors are tenants whose rights are determined by Section 365 of the Bankruptcy Code — but it is also fundamentally inaccurate.  In reality, it is *the Debtors* who have prevented sales from going forward, not to protect public health or the like but to attempt to force MPT to transfer real-estate value to the Debtors and their lenders as the price of allowing sales to go forward that are necessary to avoid closures.

5.      The Debtors' new approach, as reflected by the Stalking Horse Bid in Florida, reflects a total repudiation of the bargain struck at the outset of these cases.  In connection with the Debtors' filing, MPT agreed to provide substantial support to the Debtors to stabilize their operations, including junior postpetition financing and a nearly 50% rent deferral on Master Lease I.  MPT also agreed that, rather than simply standing on its rights as a fee owner of real estate — and requiring the Debtors to assume or reject the master leases *in toto* — MPT would help fund a process in which the Debtors' separate operations in each hospital would be marketed side-by-side with MPT's real estate interests.

6.      The Debtors, in turn, agreed to initiate and conduct a sale process for their operations that would be coordinated with MPT's sale process for its own property, namely the hospital real estate.  Under the Global Bidding Procedures (Dkt. No. 626), the Debtors would try to sell their operations in each hospital to a new operator, while MPT would simultaneously try to dispose of its real property, either through a sale or entry into a new lease.

7. Consistent with that understanding, in the section titled "Treatment of MPT Real Property," the Global Bidding Procedures expressly required that any bids for hospitals leased from MPT include a specific "treatment" of MPT's real estate and "*proposed terms of an agreement with MPT Lessor*."  Global Bidding Procedures at 13 (emphasis added).  The Global Bidding Procedures also prevented the Debtors from waiving that requirement:  "[W]ithout the consent of MPT (not to be unreasonably withheld, conditioned, or delayed) *the Debtors may not waive the requirements of a Bid under the heading 'Treatment of MPT Real Property. . . .'*"  *See id.* at 19 (emphasis added).  Both sides retained their absolute rights to agree, or not agree, to terms on which they would sell their respective property.  *Id.*

8. The Stalking Horse Bid does not comply with the Global Bidding Procedures, because it does not propose specific terms for an agreement with MPT.  That is the Debtors' fault, not Orlando Health's.  The Debtors, after realizing that the sale process they agreed to conduct would necessarily generate much higher bids for MPT's real estate than for the Debtors' operations — because MPT's bespoke hospital real estate can only be replaced at incredibly high cost, whereas the Debtors' operations are generally unprofitable — refused to go forward with any sales.  The Debtors instead conveyed to bidders, in Florida and elsewhere, that — instead of bidding for MPT's real estate separate from the Debtors' hospital operations, as previously agreed — they had to submit "enterprise value bids," namely single bids for both the Debtors' hospital operations and MPT's real estate.  That critical change, made unilaterally by the Debtors *without Court approval*, was a straightforward departure from the Global Bidding Procedures.

9. The Debtors' non-compliance with the Global Bidding Procedures is part of a broader seismic shift in these cases.  On August 7, again *without Court approval* or even a notice on the docket, the Debtors signed a case-defining agreement with the FILO Lenders.  The

agreement — styled as a "Limited Waiver" — established new case milestones that, among other things, required the Debtors to: (a) solicit "enterprise value bids" for properties, despite the terms of the Global Bidding Procedures; (b) stop paying rent under Master Lease I, despite Section 365(d)(3) of the Bankruptcy Code; (c) bring a lawsuit against MPT relating to "allocation" of sale proceeds; and (d) move to reject Master Lease I, even though doing so will deprive the Debtors of the right to continue occupying hospitals. The Debtors have now complied with those dictates, filing a rejection motion [Dkt. No. 2026] and an adversary proceeding [Dkt. No. 2031] while also halting rent payments and requiring bidders *not* to bid for MPT's real estate separately from operations.

10.     The FILO DIP Amendment has set the Debtors on a course to open-ended litigation, in a context where litigation will confuse bidders, lead to uncontrollable costs,[5] and increase the risk of closures and disruptions. MPT will respond to the Debtors' litigation barrage when appropriate. For now, MPT asks the Court to reject the proposed Bid Protections relating to the sale of the Space Coast Hospitals, on the basis that the Debtors have not complied with the Global Bidding Procedures and have proposed a transaction that is inconsistent with MPT's ownership rights and thus not capable of being executed. MPT also requests that the Court enforce the Global Bidding Procedures and, in particular, prevent the Debtors from continuing to solicit and require bids that do not conform with those procedures as they apply to MPT.

## Factual Background

**A.      MPT's prepetition business relationship with and support for Steward**

---

[5] The Debtors are spending tens of millions per month on professional fees. They apparently believe they can use MPT's real property to generate revenues, pay those professional fees out of those revenues, and yet decline to pay rent (which is a fraction of the professional fees). MPT obviously does not agree.

11.     MPT is a publicly traded real estate investment trust that is one of the largest owners of healthcare real estate worldwide.  MPT has a portfolio consisting of over 400 healthcare facilities that are leased to entities that conduct healthcare operations on the leased real estate.  As a real estate investment trust, MPT does not operate healthcare facilities. Instead, MPT affiliates own the relevant facilities and lease the facilities to operators.

12.     MPT has two Master Leases with Steward — one for eight properties in Massachusetts, and another for 23 hospitals across the country.  Master Lease I covers facilities operated by the Debtors in Florida, Texas, Arkansas, Louisiana, Arizona, Ohio, and Pennsylvania.[6]  Master Lease II covers facilities operated by the Debtors in Massachusetts.

13.     In addition to the Master Leases, MPT has made several loans to Steward: in the months prior to Steward's bankruptcy filing, to help ensure that Steward had adequate liquidity, MPT injected approximately $141 million into Steward and agreed to defer approximately $163 million in payments under Master Lease I.  *See* First Day Decl. (Dkt. No. 38) ¶¶ 33, 38–42.

**B.     MPT's support for Steward during these chapter 11 Cases**

14.     MPT's prepetition support of Steward continued as the Debtors entered these cases.  On the first day of these cases, MPT made a $75 million DIP loan to the Debtors on a junior basis when no one else would.  MPT DIP Motion (Dkt. No. 46) ¶ 39.  The funds were badly needed:  When the Cases commenced, the Debtors had only $12.8 million in cash on hand. *Id.* ¶ 27.  In addition, on the larger of its two master leases, Master Lease I, MPT agreed to accept rent equal to approximately one-half of the lease rate and defer the rest, saving the estates approximately $10 million per month in liquidity.

---

[6]     One property subject to Master Lease I is located in Massachusetts; however, that property is not currently operating, following a catastrophic storm event.

15.     In connection with MPT's junior DIP financing, the Debtors stipulated that "each Master Lease is a valid, unexpired lease of nonresidential real property, enforceable in accordance with its terms as a true, unitary, indivisible lease, subject to the provisions of section 365 of the Bankruptcy Code, and not subject to avoidance, recharacterization, subordination, severance (absent the consent of the applicable MPT Lessor), or other challenge pursuant to the Bankruptcy Code or applicable non-bankruptcy law."  MPT DIP Order (Dkt. 625) ¶ G.22.  That stipulation is "binding" on the Debtors and all other parties unless the Creditors' Committee files a challenge and obtains a final and non-appealable order sustaining that challenge.  *Id.* ¶ 18.

16.     In addition, in the MPT Credit Agreement, the Debtors agreed, among other things, (i) to make all postpetition payments due under Master Lease II, and (ii) to pay MPT an aggregate amount equal to $10 million per month for postpetition rent plus Impositions (as defined in Master Lease I) due under Master Lease I.  *See* MPT DIP Credit Agreement § 5.01(o). The Debtors also agreed to cooperate in marketing efforts for the hospitals, and agreed that "neither the MPT Lender nor the MPT Lessors shall have any obligation to consent to any sale transaction or specific treatment of any lease except as determined in its sole and absolute discretion."  DIP Credit Agreement § 5.19(a).

**C.     The Global Bidding Procedures for the sale of the Debtors' assets**

17.     Shortly after the cases began, the Debtors filed a motion seeking approval of bidding procedures to sell their assets.  *See* Dkt. 281.  After negotiations among numerous parties in interest, including MPT, the Debtors' secured lenders, and the Creditors' Committee, the Debtors submitted updated orders including significant revisions, ultimately in a form acceptable to those parties.  *See* Dkts. 559, 620.  On June 3, 2024, the Court entered an order approving the Global Bidding Procedures and granting related relief.  *See* Dkt. 626.

18.     In their motion to approve the Global Bidding Procedures, the Debtors stated that, "*[t]o avoid any ambiguity, the Debtors intend to solicit Bids for the Debtors' operations separately from real estate*."  Dkt. No. 281 ¶ 32 (emphasis added).  The notice accompanying the Global Bidding Procedures likewise provides that the "Assets" for sale are the Debtors' Stewardship business, the "Debtors' hospital operations," and "certain other assets of the Debtors."  Dkt. 626 Ex. 2 at 2.  By their express terms, therefore, the Global Bidding Procedures are intended to govern the sale of *the Debtors*' own assets.

19.     The Global Bidding Procedures contain a section titled "Treatment of MPT Real Property."  That section requires that any Qualified Bid for the operations of hospitals subject to a lease with MPT must include the "proposed treatment" of MPT's real estate as well as "*proposed terms of an agreement with MPT Lessor*."  Global Bidding Procedures at 13 (emphasis added).

20.     The Global Bidding Procedures also authorize MPT to "discuss and negotiate directly with any Potential Bidder" regarding real estate treatment, subject to certain reporting requirements.  *Id.* at 11.  And they expressly state that, "without the consent of MPT (not to be unreasonably withheld, conditioned, or delayed) the Debtors may not waive the requirements of a Bid under the heading 'Treatment of MPT Real Property.'"  *Id.* at 19.  The Debtors, therefore, were not permitted to waive or amend the requirement that bidders submit specific "proposed terms" to MPT for a new lease or real estate sale.

21.     The Global Bidding Procedures Order likewise provides that, "absent further Court order, the Debtors may not eliminate the consent, consultation, or notice rights of any party" and that, "[n]otwithstanding anything herein, nothing in the Global Bidding Procedures, this Order, and/or the determination of any Bid as a Qualified Bid, shall waive, alter, or modify

any rights of the MPT Lessor to approve or enter into any agreement with respect to real property owned by the MPT Lessor." *Id.* ¶ 41.

22.     The Global Bidding Procedures yielded viable bids for various hospitals, and the Debtors declared several bidders to be the successful bidders for their hospital operations.  In parallel, the relevant buyers were able to strike deals with MPT, either to purchase the real estate outright or to enter into new leases with MPT.  Nonetheless, as of this filing, the Debtors have not obtained approval for any hospital sales, and they have repeatedly delayed the sale processes. As the Debtors acknowledged in court on July 31, they are "holding" up the sales, despite the risks involved, because they want more money than the bidders offered for hospital operations. July 31, 2024 Hr'g Tr. at 11.  The FILO group likewise stated publicly that it "is never going to accept" the bids from the sale process because they also want more money.  *Id*. at 48.

23.     Beyond the statements made in open court, the Debtors have taken various unilateral actions that deviate from the Global Bidding Procedures.  In particular, the Debtors have directed all bidders, including at hospitals that were otherwise ready for sale, to submit to the Debtors a single "total enterprise value" bid for operations and real estate combined, rather than separate bids for separate property interests.

**D.     The Proposed Stalking Horse Bid for the Florida Hospitals**

24.     Late on August 14, 2024, the Debtors filed a "Notice of Designation of Stalking Horse Bidder for Certain of the Debtors' Florida Hospitals."  Dkt. No. 1991 (the "**Designation Notice**").  The Designation Notice states that objections to the Bid Protections offered by the Debtors have to be filed by August 19, 2024.

25.     The "Stalking Horse Bid" disclosed in the Designation Notice seeks to acquire the Space Coast Hospitals for approximately $439 million in *aggregate* consideration — including real estate and operations.  Prior to the Debtors' announcement, no particular terms were

proposed to MPT with respect to the real estate, and no particular terms are included in the Stalking Horse Bid. The Proposed Stalking Horse Order seeks a finding that the Stalking Horse Bid is a "Qualified Bid" even though no specific terms for an agreement with MPT are included. (Proposed Order ¶ 4).

26.     Rather than propose terms for the treatment of MPT's real property, as required by the Global Bidding Procedures, the Bid proposes to create an "Allocation Dispute" mechanism. The Notice, APA, and Proposed Sale Order are inconsistent with one another, but the basic framework appears to be as follows:

27.     *First*, at closing, the bidder will place the aggregate "enterprise value" consideration into escrow and submit a "proposed allocation" (with a capped value attributable to MPT's real estate of $275 million, but no cap on what the Debtors can receive). APA § 1.8(b); Proposed Sale Order ¶ 48.

28.     *Second*, the Debtors, MPT and the Buyer will be directed to "submit briefing to the Court as soon as reasonably practicable to provide adequate time to allow the Court to rule on the Allocation Issue." Proposed Sale Order ¶ 48. The Order therefore appears to contemplate a litigation resolution among the Debtors, the Buyer,[7] and MPT regarding the amounts to be paid for the Debtors' operations and MPT's real estate, even though MPT has never agreed to sell the Space Coast hospitals (rather than leasing them), let alone at a price to be determined by a court or a third party.

---

[7]   The Proposed Sale Order contemplates that Orlando Health will participate in the threatened litigation: "Recognizing that the Buyer would not have entered into the APA or purchased the Purchased Assets from the Debtors without the ability to ensure an appropriate allocation of Purchase Price between the Purchased Assets and the Real Property, and subject to the terms and conditions of the APA, Buyer shall have standing to fully participate in any motion practice, litigation, mediation, or other proceedings relating to the Allocation Issue." Dkt. 1991 at 297, Proposed Sale Order ¶ 48; *accord* APA ¶ 9.4(iv).

29.     *Third*, the Proposed Sale Order states (in brackets) that "[Subject to and in accordance with the terms and conditions of the APA, including Section 1.8 thereof, if, by the date which is the earlier of (A) December 31, 2024, and (B) ninety (90) days from the date of the APA, the Debtors and MPT have not resolved the Allocation Issue in a manner that complies with the Maximum Allocation Value (as defined in the APA) with respect to the Real Property, then Buyer's Proposed Allocation (as defined in the APA) shall be final and binding on Buyer, the Debtors, and MPT.]"  Proposed Sale Order ¶ 48.  The order, accordingly, appears to contemplate that — *as long as the Buyer's proposed price for MPT's Real Property is* <u>*less*</u> *than a capped amount approved by Steward* — the Buyer's selected price for MPT's Real Property becomes "final and binding" on MPT, with the result that MPT is supposed to divest its property for a price to which it has not agreed.[8]

**E.     The FILO DIP Amendment**

30.     On Tuesday, August 6, 2024, the Debtors sent MPT a draft of a "limited waiver" under the FILO DIP financing (the "**FILO DIP Amendment**").  MPT promptly conveyed that it does not consent to the FILO DIP Amendment and urged the Debtors not to enter it.  MPT later learned that the Debtors signed the FILO DIP Amendment over its objection and without Court approval.

---

[8] The APA and the proposed order are inconsistent on material points.  While the order, as quoted, states in brackets that the buyer's allocation will be binding on MPT in the event of a dispute and funding into escrow, Section 1.8(b) of the APA provides that any obligation to fund into escrow is itself dependent on "an *agreement between Sellers and MPT*" that the "Buyer's Proposed Allocation" will be "final and binding."  The APA, accordingly, appears to provide a consent right that is overridden by the proposed order.  The Notice, meanwhile, is more consistent with the order than with the APA.  *See* Notice at 2 ("Allocation Dispute").  Those inconsistencies, and the lack of clarity more broadly as to what the Debtors are proposing, are an additional reason why the Debtors should not be allowed to move forward with the proposed sale process on the current record.

31.     The FILO DIP Amendment, among other things, attaches an "Annex A" that purports to set out new "Waiver No. 1 Funding Milestones."  Among the key case-determinative "milestones" are:

> 2.  The Loan Parties shall file a pleading by August 8, 2024 [apparently extended], requesting that the Bankruptcy Court determine the allocation of Facilities enterprise value between the applicable Loan Parties' bankruptcy estates, on the one hand, and MPT Parties, on the other hand. . . . .

> 3.  To the extent the Loan Parties do not execute an asset purchase agreement for the Ohio and Pennsylvania Facilities and the St. Joseph's (Texas) Facility by August 16, 2024, the Loan Parties will seek authority to close those applicable Facilities. . . .

> 6. The Loan Parties shall make no payment of rent under the Master Leases, unless the Bankruptcy Court orders otherwise. . . .

> 8. The Loan Parties will file a motion with the Bankruptcy Court to reject Master Lease I by August 8, 2024 [apparently extended], and the hearing regarding such rejection motion shall conclude by August 30, 2024. . . .

> 10. *To the extent already not requested, the Loan Parties will request that bidders submit enterprise value bids (i.e., with real estate included in the valuation and transaction) for all Facilities, including enterprise value bids for all Facilities located in Arizona, Louisiana, and Massachusetts by August 12, 2024.*

32.     It is hard to imagine a more consequential modification to a DIP financing.  In one document, the Debtors agreed to close hospitals by a date certain absent sale agreements, to stop paying rent for premises operated by the Debtors, and to set in motion a rejection process that will deprive the Debtors of the right to occupy the hospitals subject to Master Lease I.  Most importantly for this Objection and Cross-Motion, the Debtors also agreed to stop complying with the provisions of the Global Bidding Procedures requiring separate bids and negotiation processes for operations (the Debtors' property) and real estate (MPT's property).  The Debtors apparently determined that they did not need Court approval for these hyper-material changes because the agreement is framed as a "waiver" rather than a "modification" or an "amendment."

<u>Argument</u>

**I.     The Proposed Stalking Horse Bid fails to comply with the Global
        Bidding Procedures.**

33.     The Bankruptcy Code offers two options to a debtor-tenant that operates its
business under a lease of nonresidential real property:  assume the lease or reject the lease.  *See*
11 U.S.C. § 365(a).  In these cases, however, the Debtors and MPT agreed to pursue an
alternative:  The Debtors would attempt to sell or otherwise transition their ongoing hospital
operations, while MPT would attempt to reach agreements with the same buyers for the lease or
sale of the applicable real estate.  MPT had no obligation to provide the Debtors with an option
other than assumption or rejection, but it did so to try to preserve value and avoid unnecessary
hospital closures.

34.     The Global Bidding Procedures, as negotiated by the Debtors and MPT (and
approved by the Court), recognize that the sales at issue involve two separate property owners
with their own separate property interests.  In their motion to approve the procedures, the
Debtors stated plainly that, "[t]o avoid any ambiguity, the Debtors intend to solicit Bids for the
Debtors' operations separately from real estate."  Dkt. No. 281 ¶ 32.  The Global Bidding
Procedures Order likewise makes clear that the procedures are intended to "govern the bids and
proceedings related to the sale of *the Debtors'* businesses and assets."  Global Bidding
Procedures Order ¶ 13 (emphasis added).  Paragraph 41 further recognizes that "nothing in the
Global Bidding Procedures, this Order, and/or the determination of any Bid as a Qualified Bid,
shall waive, alter, or modify any rights of the MPT Lessor to approve or enter into any
agreement with respect to real property owned by the MPT Lessor."  *Id.* ¶ 41.

35.     The Global Bidding Procedures, accordingly, do not give the Debtors authority to
sell *MPT's* property.  To the contrary, the procedures make clear that MPT alone (as the fee

owner) will negotiate any disposition of its real estate, confirming expressly that MPT will

"discuss and negotiate directly with any Potential Bidder regarding the treatment of any lease

pertaining to the real estate owned by MPT Lessors."  Global Bidding Procedures at 11.

36.     The Global Bidding Procedures also expressly require anyone submitting a "Bid"

to propose a particular treatment for MPT's real estate, rather than bidding on an "enterprise"

basis.  Any bidder is required to submit specific "proposed terms of an agreement with MPT

Lessor," and the Debtors are expressly barred from waiving that requirement without MPT's

consent.  *See* Global Bidding Procedures at 13 ("Treatment of MPT Real Property"); *id.* at 19

(MPT consent needed for modification).

37.     The Stalking Horse Bid does not comply with those provisions of the Global

Bidding Procedures.  The bid, rather than specifying the "terms of an agreement" with MPT, has

an aggregate value for real estate and operations (consistent with the Debtors' recent instructions

to bidders).  The treatment of MPT's real estate is the *opposite* of an "agreement" on terms:

Rather than specifying terms, the document states that the Debtors and the Bidder will *litigate*

with MPT regarding the price of its real estate, and otherwise *dictate* that price, in the future,

without MPT's agreement at all.

38.     The Debtors have no authority to solicit or accept "enterprise bids" for MPT's

real property, including on the basis of their "fiduciary duties."  As discussed, the Global

Bidding Procedures specifically state that "*absent further Court order, the Debtors may not*

*eliminate the consent, consultation, or notice rights of any party thereunder*," including MPT's

right to consent to any change to the requirement that bidders propose specific terms for the

purchase or lease of MPT's real estate.  Global Bidding Procedures ¶ 41 (emphasis added).

Likewise, the provision allowing the Debtors to modify the bidding rules based on their

"business judgment" and exercise of "fiduciary duties" states plainly that, without MPT's consent, "*the Debtors may not waive the requirements of a Bid under the heading 'Treatment of MPT Real Property. . . .*'"  *See id.* at 19 (emphasis added).  Whatever the scope of any "fiduciary out," it certainly does not allow the Debtors to disregard provisions of the Global Bidding Procedures that were designed to protect MPT and that were explicitly not subject to waiver in the Debtors' business judgment.

39.     Proposed Bid Protections can only be approved if the Proposed Stalking Horse Bid is a "Qualified Bid" under the Global Bidding Procedures.  Here, the Proposed Stalking Horse Bid is not a Qualified Bid because it does not comply with the Global Bidding Procedures, and the Bid Protections accordingly cannot be approved.

## II.     The Bid Protections should not be approved because the proposed transaction would vitiate MPT's property rights.

40.     Beyond the departure from the Global Bidding Procedures, the Bid Protections should be denied on the basis that the transaction being "protected" is a non-starter from a legal standpoint.  As discussed above in detail, the Debtors have proposed that, absent a judicial determination in an ill-defined proceeding (which is itself unauthorized under the Bankruptcy Code), MPT will be forced to accept a price set by the *Bidder*, provided that it does not exceed a *maximum* price agreed with the Debtors.  *See supra* ¶ 28.  That price will then become "final and binding" on MPT.  Proposed Sale Order ¶ 48 (language bracketed).

41.     The Debtors' proposed scheme has no legal support.  The central design of the Bankruptcy Code is that the trustee (or debtor in possession acting as a trustee) has the power to administer or dispose of property of the estate, but *only* property of the estate, subject to very narrow exceptions not applicable here.  The Supreme Court confirmed that self-evident point long ago:  "The Bankruptcy Act simply does not authorize a trustee to distribute other people's

property among a bankrupt's creditors." *Pearlman* v. *Reliance Ins. Co.*, 371 U.S. 132, 135–36 (1962); *accord, e.g.*, *In re TMT Procurement Corp.*, 764 F.3d 512, 525–26 & n.56 (5th Cir. 2014); *In re Moore*, 608 F.3d 253, 258 (5th Cir. 2010).  There is no basis at all for a scheme under which a non-debtor real estate owner can be compelled not just to sell its property, but to accept whatever (capped) price that the *buyer* dictates.

42.     The Debtors also propose a finding in the Stalking Horse Order that "[t]he Bid Protections are the product of negotiations between the Debtors and the Stalking Horse Bidder conducted in good faith and at arm's length."  Proposed Stalking Horse Order ¶ G.  That finding should not be approved.  There is no record evidence to support that finding, and there are serious reasons to doubt that a "negotiation" between the Debtors and Orlando Health that resulted in Orlando Health gaining the right to select the price at which it can obtain MPT's property was a "good faith" negotiation.

43.     Moreover, the finding should not be approved because "good faith" has a particular meaning in the context of bankruptcy sales.  Under Fifth Circuit precedent interpreting Section 363, "good faith" requires a purchaser to act "without notice of adverse claims" to the property being sold.  *In re Palm Springs II, L.L.C.*, 65 F.4th 752, 759 (5th Cir. 2023) (internal citation omitted).  Bidders attempting to purchase property from a bankruptcy estate *with* notice that someone else owns the property (or even notice of an ownership dispute) cannot obtain a "good faith" finding under Section 363(m).  *Id.* at 760; *accord In re TMT Procurement Corp.*, 764 F.3d at 522.

44.     Here, the Debtors have stipulated that MPT, not the Debtors, owns the MPT Real Estate.  *See* MPT DIP Order ¶ G.22.  As a result, a buyer that purports to take title to MPT's real property without MPT's consent, or that purports to dictate the price at which MPT has to sell, is

not buying property that is merely subject to an adverse claim of ownership; it is buying property that the Debtors concededly do not own and which the owner has not agreed to sell.  Thus, under Fifth Circuit precedent, the protections available to a "good faith" purchaser cannot be made available to such a buyer.

### III.    Cross-Motion:  The Court should enforce the Global Bidding Procedures.

45.     The Bid Protections should not be approved for the reasons stated above.  The Debtors should instead be directed to comply with the Court-ordered Global Bidding Procedures, including, in particular, the express requirement that every "Bid" must "indicate the proposed treatment of such real property and proposed terms of an agreement with MPT Lessor."  Global Bidding Procedures at 13.

46.     The Bankruptcy Court has clear authority to enforce its own orders.  *E.g.*, *In re Envision Healthcare Corp.*, 655 B.R. 701, 708 (Bankr. S.D. Tex. 2023).  The Global Bidding Procedures Order is a final order of this Court, consented to by all parties.  If the Debtors wish to modify the governing procedures, the Debtors should make a motion for reconsideration under an appropriate procedural rule, rather than unilaterally seeking to waive protections in the order that are beyond the Debtors' authority to waive.  The Debtors, accordingly, should be directed to comply with the Global Bidding Procedures Order until such time, if ever, that they validly obtain relief from that order, and in particular obtain Court approval for any proposed modifications to the Global Bidding Procedures that affect MPT's consent and property rights.

<u>Conclusion</u>

47.     The Bid Protections should not be approved.  The Debtors should be instead directed to comply with the Court-ordered Global Bidding Procedures.

## Notice

48.     Notice of this Motion will be served upon any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Local Rule 9013-1(d).

## Prayer

MPT respectfully requests that the Court enter the proposed order (the "**Order**"), substantially in the form attached hereto as **Exhibit A** and grant them such other and further relief to which MPT may be justly entitled.

Dated:  August 19, 2024
Houston, Texas

*/s/  Paul E. Heath*

**VINSON & ELKINS LLP**
Paul E. Heath (TX 09355050)
Matthew D. Struble (TX 24102544)
Kiran Vakamudi (TX 24106540)
845 Texas Avenue, Suite 4700
Houston, TX  77002
Tel:  (713) 758-2222
Email:  pheath@velaw.com
          mstruble@velaw.com
          kvakamudi@velaw.com

**KTBS LAW LLP**
Thomas E. Patterson (*admitted pro hac vice*)
Sasha M. Gurvitz (*admitted pro hac vice*)
Nir Maoz (*admitted pro hac vice*)
1801 Century Park East, 26th Floor
Los Angeles, CA  90067
Tel:  (310) 407-4000
Email: tpatterson@ktbslaw.com
          sgurvitz@ktbslaw.com
          nmaoz@ktbslaw.com

**WACHTELL, LIPTON, ROSEN & KATZ**
Emil A. Kleinhaus (admitted *pro hac vice*)
Angela K. Herring (admitted *pro hac vice*)
Michael H. Cassel (admitted *pro hac vice*)
51 W. 52nd Street
New York, NY  10019
Tel:  (212) 403-1332
Email: eakleinhaus@wlrk.com
          akherring@wlrk.com
          mhcassel@wlrk.com

**ATTORNEYS FOR MEDICAL PROPERTIES TRUST, INC. AND CERTAIN AFFILIATES**

## CERTIFICATE OF ACCURACY

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made in accordance with Bankruptcy Local Rule 9013-1(i).

*/s/ Emil A. Kleinhaus*

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel to MPT has conferred and corresponded with counsel to the Debtors, including in the context of the ongoing mediation, prior to filing the foregoing Objection and Cross-Motion, but there has been no consensual resolution of the issues relating to the motion. MPT and the Debtors, along with other parties, are engaged in mediation relating to these and other issues that has not to date yielded an agreement.

*/s/ Emil A. Kleinhaus*

## CERTIFICATE OF SERVICE

I certify that on August 19, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Paul E. Heath*

4888-3473-9161

## **Exhibit A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM, LLC, *et al.*,[1] | Case No. 24-90213 |
| | (Jointly Administered) |
| Debtors. | Re:  Docket No. 1991 |

**ORDER (I) SUSTAINING**
**MEDICAL PROPERTIES TRUST, INC.'S**
**OBJECTION TO NOTICE OF DESIGNATION**
**OF STALKING HORSE BIDDER FOR CERTAIN OF THE**
**DEBTORS' FLORIDA HOSPITALS AND (II) GRANTING EMERGENCY**
**CROSS-MOTION FOR ENTRY OF AN ORDER COMPELLING THE DEBTORS**
**TO COMPLY WITH COURT-APPROVED GLOBAL BIDDING PROCEDURES**

Upon *Medical Properties Trust, Inc.'s Objection to Notice of Designation of Stalking Horse Bidder for Certain of the Debtors' Florida Hospitals and Emergency Cross-Motion for Entry of an Order Compelling the Debtors to Comply with Court-Approved Global Bidding Procedures* (the "**Objection**" and the "**Cross-Motion**")[2] filed by Medical Properties Trust, Inc. and certain affiliates, including those party to Master Lease I (collectively, "**MPT**"); and the Court having jurisdiction over the matters raised in the Objection and Cross-Motion pursuant to 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that proper and adequate notice of the Objection

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward.  The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Objection and Cross-Motion.

and Cross-Motion and hearing thereon has been given under the circumstances and that no other or further notice is necessary; and the Court having found that good and sufficient cause exists for sustaining the Objection and granting the relief requested in the Cross-Motion after having given due deliberation to the Objection and Cross-Motion and all of the proceedings had before the Court in connection therewith, it is HEREBY ORDERED THAT:

1.      The Objection is SUSTAINED and the Cross-Motion is GRANTED.

2.      The proposed Stalking Horse Bid for the Space Coast Hospitals does not comply with the Global Bidding Procedures and is not a Qualified Bid.

3.      The proposed Bid Protections relating to the sale of the Space Coast Hospitals are denied without prejudice.  The Stalking Horse Bidder may submit a revised bid that is a Qualified Bid in compliance with the Global Bidding Procedures.

4.      The Debtors shall not solicit or require, and may not consider, bids that include the sale of real estate owned by MPT that are not in compliance with the Global Bidding Procedures, including bids that contemplate a combined "enterprise value" purchase price for the Debtors' hospital operations and MPT's real estate, absent MPT's prior written consent or further order of the Court following notice and a hearing.

5.      The terms and conditions of this Order are immediately effective and enforceable upon its entry.

6.      The Court retains exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: August __, 2024
Houston, Texas

_____
**THE HONORABLE CHRISTOPHER M. LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE**