## Exhibit A

**Settlement Term Sheet**

***In re Steward Health Care System LLC, et al.***
***Case No. 24-90213***

**SETTLEMENT TERM SHEET**

This term sheet (this "**Term Sheet**") outlines the terms of the global settlement among Steward Health Care System LLC and its debtor affiliates, as debtors and debtors in possession (collectively, together with their estates, the "**Debtors**")[1] in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), as to the matters specified herein (the "**MPT Settlement**") to be approved by the MPT Settlement Order. Capitalized terms used but not otherwise defined herein will have the meanings ascribed to such terms in the *Declaration of John R. Castellano in Support of Debtors' Chapter 11 Petitions and First-Day Pleadings* (Docket No. 38) or **Annex 1** hereto, as applicable.

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

| | |
|---|---|
| | **SETTLEMENT TERM SHEET** |
| **Specified MLI Hospital Transition** | No later than the Funding Commencement Date, MPT shall designate (in its sole discretion) an operator (each a "**Designated Operator**") for each MLI Hospital (other than the Space Coast Hospitals, the Behavioral Facility, the Closed Hospitals and the Deferred Hospitals) (collectively, the "**Specified MLI Hospitals**"; the Specified MLI Hospitals are set forth on **Annex 2** attached hereto), each of which Designated Operators shall agree by the Funding Commencement Date to adhere to the interim management procedures to be attached as an exhibit to the MPT Settlement Order (the "**Interim Management Procedures**"). The Debtors shall seek and obtain authority, in accordance with the MPT Settlement Order, to convey or otherwise transfer their interests in each of the Specified MLI Hospitals (including any inventory, FF&E or other personal property and licenses located therein or related thereto, but excluding (x) any Debtor Retained Receivables (which shall be retained by the Debtors) and (y) any fee, leasehold or other possessory interest in the real property in such Specified MLI Hospitals or in any improvements thereon or fixtures located thereon or therein (which shall be terminated as set forth herein)) to the applicable Designated Operator, without successor liability and free and clear of all liens, claims, interests and encumbrances (other than purchase money security interests and capital leases, in each case of equipment and other personal property), on an "as is, where is" basis, as promptly as practicable, and subject to entry by the applicable Designated Operator into documentation reasonably acceptable to the Debtors and the applicable Designated Operator and obtaining any required regulatory approvals as may be necessary to give effect to the foregoing (the "**MLI Hospital Transition**"). In connection with the MLI Hospital Transition with any Specified MLI Hospital, the applicable Designated Operator shall assume the Accrued PTO with respect to such Specified MLI Hospital. |
| | The Debtors and MPT shall cooperate with one another in conveying or transferring each Specified MLI Hospitals to the applicable Designated Operator as promptly as practicable following satisfaction of the conditions to the MLI Hospital Transition for such Specified MLI Hospital. Each of MPT and the Debtors shall use commercially reasonable efforts to complete the MLI Hospital Transition (including any regulatory approval) with respect to each Specified MLI Hospital by October 1, 2024 (the "**Target Transition Date**"). |
| | MPT shall notify the Debtors on or prior to October 20, 2024, if MPT expects that the Specified MLI Transition will not occur with respect to any Specified MLI Hospital(s) on or prior to October 30, 2024 (such notice, a "**Non-Transition Notice**"). If MPT delivers a Non-Transition Notice, MPT and the Debtors shall promptly consult with each other in order to determine the appropriate course of action with respect to the applicable Specified MLI Hospital(s). Unless the Debtors and MPT agree otherwise, if the MLI Hospital Transition Closing Date with respect to any Specified MLI Hospital shall not have occurred on or prior to October 30, 2024, the Debtors shall promptly convey or abandon their interests in such Specified MLI Hospital to MPT on an "as-is, where is" basis after removing any hazardous materials, medical records and medical equipment (with the reasonable costs of such removal borne by MPT) and MPT shall assume, to the extent not otherwise paid, the Accrued PTO and other closing costs (including WARN liabilities) with respect to such Specified MLI Hospital. |

2

| | |
|---|---|
| **SETTLEMENT TERM SHEET** | |

From and after the Funding Commencement Date and prior to the applicable MLI Hospital Transition Closing Date, the Debtors and the Designated Operators shall adhere to the Interim Management Procedures.

The Debtors, MPT and the Designated Operators shall each be responsible for paying their own costs and expenses (the "**Transition Costs**") associated with negotiating, agreeing to or implementing the MLI Hospital Transition; provided, however, that: (a) if a contract is to be assumed and assigned to a Designated Operator, such Designated Operator shall be required pay any applicable cure costs and other expenses incurred by the Debtors to effectuate such assumption and assignment (as set forth below); (b) if, after the date on which the MPT Settlement Order is entered, a Designated Operator (or MPT on behalf of such Designated Operator) requests that the Debtors take specific actions in connection with seeking relief from the Bankruptcy Court to effectuate the conveyance or transfer of the Specified MLI Hospitals or related contracts/operating assets to such Designated Operator, such Designated Operator shall reimburse the Debtors for the reasonable and documented out-of-pocket expenses of counsel incurred by the Debtor in connection with such actions (it being understood that neither MPT nor any Designated Operator shall have any obligation to reimburse the Debtors for (A) any expenses incurred by the Debtors in connection with the negotiation of, entrance into or approval of the MPT Settlement or (B) any expenses incurred by the Debtors on or prior to the date on which the MPT Settlement Order is entered); and (c) if MPT requests that the Debtors convey or transfer assets associated with acute care hospitals in Arizona to a Designated Operator, MPT (or the Designated Operator for such hospital) shall pay Professional Fee Claims of Cain Brothers in connection with such conveyance or transfer in an amount not to exceed $1 million per hospital (it being understood that neither MPT nor any Designated Operator shall have any obligation to reimburse the Debtors for any Professional Fee Claims of any investment banker or other financial advisor except as expressly set forth in this clause (c)).

The Debtors (in consultation with the Creditors' Committee and the FILO Secured Parties) and MPT shall (and MPT shall cause its applicable Designated Operator to) cooperate in good faith to negotiate and enter into any necessary agreements, obtain any necessary consents or approvals, execute all necessary documents or instruments (e.g., bills of sale) and prepare and file such regulatory filings (e.g., CMS CHOW) as are necessary to give effect to the Specified MLI Hospital Transition with respect to each Specified MLI Hospital promptly after the date hereof. Subject to the provisions herein governing Transition Costs, at all times from and after the identification of any Designated Operator, each of MPT and such Designated Operator may request that the Debtors seek relief from the Bankruptcy Court to effectuate the conveyance or transfer of the applicable Specified MLI Hospital or related contracts/operating assets to such Designated Operator and the Debtors shall use commercially reasonable efforts to obtain such relief.

MPT shall be entitled to lease property that is subject to the EPDA to Designated Operators to the extent such property is integral to the applicable Specified MLI Hospitals; provided such Designated Operators shall not prevent, condition, or hinder any sale of such property.

| | |
|---|---|
| **SETTLEMENT TERM SHEET** | |
| | All parties will comply with all federal and state healthcare regulations and obligations with respect to the transactions contemplated by the MPT Settlement. |
| **Operations Funding** | Effective as of September 11, 2024 at 12:01 a.m. (ET) (the "**Funding Commencement Time**", and such date, the "**Funding Commencement Date**"), following entry of the MPT Settlement Order with the terms set forth herein, the applicable Designated Operator shall assume, in accordance with the terms of this item entitled "Operations Funding" (i) full responsibility for paying all go-forward hospital-level operating disbursements and expenses of the Specified MLI Hospitals incurred after the Funding Commencement Time, (ii) accrued and unpaid paid time off obligations of employees of the Specified MLI Hospitals (not to exceed, with respect to any Specified MLI Hospital, the amount listed with respect to such Specified MLI Hospital on **Annex 3** hereto) (the "**Accrued PTO**") and (iii) accrued and unpaid regular bi-weekly hospital-level payroll liabilities of employees of the Specified MLI Hospitals (including, without limitation, SMG physicians for the Specified MLI Hospitals) that are not past due as of the Funding Commencement Time, regardless of whether such payroll liabilities arose prior to or after the Funding Commencement Time (the "**Accrued Payroll**"). Notwithstanding anything to the contrary set forth herein, nothing herein shall commit MPT or any Designated Operator to assume any obligation to pay for any historical employee liabilities other than the Accrued Payroll and the Accrued PTO, including any other employment obligations that were accrued historically (*e.g.*, quarterly 401(k) contributions, medical insurance claims, severance, etc.), even if not past due.

On the Funding Commencement Date, MPT and/or the Designated Operators shall fund into an escrow account (the "**Payroll Escrow Account**") the amount of the regular bi-weekly hospital-level payroll of employees of the Specified MLI Hospitals (including, without limitation, SMG physicians for the Specified MLI Hospitals) that is either (a) due and payable on September 13, 2024 and not past due on the Funding Commencement Date or (b) otherwise due and unpaid and not past due on the Funding Commencement Date. The total amount is estimated to be approximately $27.1 million. The applicable Designated Operator shall continue to fund into the Payroll Escrow Account or directly to the payroll processing company (to the extent not already funded thereto pursuant to the preceding sentence) the regular bi-weekly hospital-level payroll of employees of each Specified MLI Hospital to be paid through the Debtors' payroll systems as such payroll becomes due and payable (at least three days in advance of any payment of such payroll to such employees) until all go-forward employees of such Specified MLI Hospital are switched over to such Designated Operator's payroll systems.  Amounts in the Payroll Escrow Account shall be applied solely to pay the regular bi-weekly hospital-level payroll of employees of each Specified MLI Hospital to be paid through the Debtors' payroll systems as such payroll becomes due and payable (including the Accrued Payroll).

On the Funding Commencement Date, MPT shall deposit into a separate escrow account (the "**Expense Escrow Account**") a one-time payment of $5 million. Within one (1) business day of the date on which, with respect to each Specified MLI Hospital, (i) either (A) the Debtors and the applicable Designated Operator have entered into a Transition Services Agreement or (B) all corporate-level services provided by the Debtors with respect to such Specified MLI Hospital have been terminated and (ii) all Operator Expenses incurred by the Debtors (as opposed to such Designated Operator) with respect to such Specified MLI Hospital pursuant to the interim arrangement described in the |

| **SETTLEMENT TERM SHEET** |
|---|

immediately following paragraph have been paid, the escrow agent shall return any and all funds remaining in the Expense Escrow Account to MPT.

For any go-forward non-payroll hospital-level expenses of the Specified MLI Hospitals incurred by the Debtors after the Funding Commencement Date that are either (x) normal and ordinary course for operating a hospital or (y) directed or approved by the applicable Designated Operator or the hospital-level employees at the applicable Specified MLI Hospital (the expenses described in clauses (x) and (y), "**Operator Expenses**"), the applicable Designated Operator shall wire the appropriate amounts either (1) into the Expense Escrow Account within one business day of payment of any such expense by the Debtors to the applicable vendor or (2) to the applicable vendor directly to cover the cost of the expense in accordance with such vendor's ordinary course payment terms. The Debtors' centralized ordering of ordinary course hospital-level services and inventory with respect to each Specified MLI Hospital shall continue until terminated by the applicable Designated Operator (by delivery, at any time, of not less than 7 days' advance notice thereof to the Debtors) with respect to such Specified MLI Hospital. The scope and expense of any such service or inventory ordering may not be increased with respect to any Specified MLI Hospital without consent of the applicable Designated Operator. No Designated Operator may be charged for expenses attributable to any Specified MLI Hospital other than the Specified MLI Hospital operated by such Designated Operator. For the avoidance of doubt, any expense that in amount or nature is outside the ordinary course of business with respect to the applicable Specified MLI Hospital shall not constitute an Operator Expense, and shall not be assumed by the applicable Designated Operator, absent consent of the applicable Designated Operator. The Debtors shall cooperate with each Designated Operator to facilitate direct payment of the above-described expenses to the applicable vendors by such Designated Operators. Prior to return to MPT as set forth above, amounts in the Expense Escrow Account shall be applied solely to pay Operator Expenses as they become due and payable. The Debtors shall not be responsible for any Operator Expenses except to the extent funded from the Expense Escrow Account.

None of the Debtors' restructuring expenses or C-suite expenses will be funded with the funds provided pursuant to the foregoing. The Debtors' corporate-level expenses, to the extent incurrence thereof is expressly requested by a Designated Operator, shall be reimbursed by such Designated Operator in accordance with the terms of the applicable Transition Services Agreement; provided that until a Transition Services Agreement is entered into between the Debtors and any Designated Operator, such Designated Operator shall promptly reimburse the Debtors for corporate-level operating support services (*e.g.*, RCM, IT, facilities, accounting, and treasury), to the extent such Designated Operator requests the Debtors to provide such services, in accordance with historical practices and in an amount not to exceed, with respect to any Specified MLI Hospital, the amount per week set forth with respect to such Specified MLI Hospital on the schedule attached hereto as **Annex 4**. The applicable Designated Operator may terminate the Debtors' provision of any such services at any time so long as doing so does not impact the health and safety of patients at the applicable Specified MLI Hospital. The pricing of such services shall be based on the actual costs of the Debtors to provide such services to the applicable Designated Operator with respect to the applicable Specified MLI Hospital. The scope and expense of any such service may not be increased with respect to any Specified MLI Hospital without consent of the applicable Designated Operator. Any disputes regarding the reimbursement of such expenses shall be submitted

| | **SETTLEMENT TERM SHEET** |
|---|---|
| | first to mediation, and if such mediation is not promptly successful, promptly to the Court. |
| | The MPT Settlement Order shall provide that any funding advanced to the Debtors (including, without limitation, any funds in the Payroll Escrow Account or the Expense Escrow Account) shall be shall be used solely for the specified purposes for which such funds were advanced absent the consent of MPT and the applicable Designated Operator, and shall not be subject to any other liens, claims, interests and encumbrances against the Debtors. Except as otherwise set forth herein with respect to the Expense Escrow Account, to the extent any such advanced amounts are in excess of the amounts required to be paid, such excess shall be credited by the Debtors against future amounts payable by the applicable Designated Operator to the Debtors. |
| | The applicable Designated Operator shall be the beneficiary of any and all patient service and other revenue of any kind and related accounts receivable and receipts generated by the Specified MLI Hospitals for services provided after the Funding Commencement Time (the "**Go-Forward Receivables**"), and the Debtors shall turnover to the applicable Designated Operator any collections actually received on account of the Go-Forward Receivables (which collections shall be deemed by the MPT Settlement Order to be held in trust by the Debtors for MPT or the applicable Designated Operator and shall not be subject to any other liens, claims, interests and encumbrances against the Debtors). The Debtors will remit collections received on account of the Go-Forward Receivables on a weekly basis no later than five (5) business days after the Friday of each calendar week. For the avoidance of doubt, collections received for the week ending September 20 will be remitted no later than September 27.  For the avoidance of doubt, all patient service and other revenue of any kind and related accounts receivable and receipts generated by the Specified MLI Hospitals for services provided before the Funding Commencement Time and owned by the Debtors (the "**Debtor Retained Receivables**") shall remain property of the Debtors. With respect to any patient that is admitted prior to the Funding Commencement Time and discharged after the Funding Commencement Time, the Debtors and the applicable Designated Operator shall work cooperatively to reconcile when services were rendered in a fashion consistent with customary market practice. |
| | For the avoidance of doubt, to the extent the MLI Hospital Transition is not consummated by the Target Transition Date, the Designated Operator shall continue to provide funding for operating expenses for the Specified MLI Hospitals pursuant to the terms and conditions herein. |
| **Assignment of Executory Contracts** | The Debtors and MPT shall cooperate in good faith to assume and assign any executory contracts (including, without limitation, any payor agreements and any processor agreements related to the Medicare or Medicaid programs) [or unexpired lease] designated by the applicable Designated Operator (or MPT on its behalf) exclusively related to Specified MLI Hospital(s) and related operations being acquired by the Designated Operator (the "**Facility Contracts**"), subject to the payment by the Designated Operator of applicable cure costs and other expenses (including, without limitation, reasonable and documented out-of-pocket fees and expenses of counsel) incurred by the Debtors in assuming and assigning such Facility Contracts. |
| | At any time on or prior to the date that is ninety (90) days following entry of the MPT Settlement Order (the "**Designation Deadline**"), the applicable Designated Operator (or |

| **SETTLEMENT TERM SHEET** | |
|---|---|
| | MPT on its behalf) may designate any Facility Contract to be assumed and assigned to such Designated Operator.  Promptly after such designation, the applicable Designated Operator (or MPT on its behalf) shall provide the adequate assurance information for such Designated Operator, and the Debtors shall serve, at such Designated Operator's expense, such adequate assurance information to the relevant Facility Contract counterparty. The MPT Settlement Order will outline procedures with respect to the assumption and assignment of Facility Contracts. The Debtors shall have no obligation, after entry of the MPT Settlement Order, to make payments under any Facility Contract that are not funded by such Designated Operator, and nothing contained herein shall limit the Debtors' rights to seek to reject any Facility Contract unless the applicable Designated Operator agrees to pay to the applicable non-Debtor counterparty in advance as they become due and payable all go-forward expenses to be incurred under such Facility Contract prior to such Designated Counterparty consenting to rejection thereof. |
| **Transition Services Agreements** | The Debtors (in consultation with the Creditors' Committee and the FILO Secured Parties) and MPT or the applicable Designated Operator shall negotiate the terms of a transition services agreement for the Specified MLI Hospitals for services after the applicable MLI Hospital Transition Closing Date (a "**Transition Services Agreement**") if requested by MPT or the applicable Designated Operator as promptly as practicable. The pricing for services under the Transition Services Agreement shall be based on the actual costs of the Debtors to provide such services to MPT or the applicable Designated Operator with respect to the Specified MLI Hospitals, including both direct costs and indirect costs attributable to facilitating transition services related to the operation of the Specified MLI Hospitals.  For the avoidance of doubt, MPT or the applicable Designated Operator shall not be required to enter into a Transition Services Agreement.  To the extent MPT or the applicable Designated Operator determines not to enter into a Transition Services Agreement with the Debtors, the Debtors shall be under no obligation to provide services of any type to MPT or the applicable Designated Operator following the applicable MLI Hospital Transition Closing Date.  Any disputes regarding the negotiation of, entrance into and performance under a Transition Services Agreement shall be submitted first to mediation, and if such mediation is not promptly successful, promptly to the Court. |
| **Space Coast Hospitals** | The MPT Settlement Order shall provide that, effective upon the earlier of (i) the Settlement Effective Date and (ii) if the Debtor elects (rather than having MPT sell directly to Orlando Health), and the MPT Settlement Order shall have been entered, become a final order and not been stayed, vacated or modified without consent of MPT, the date on which a sale of the Space Coast Hospitals is expected to close (such earlier date, the "**Conveyance Date**"), either the real property underlying the Space Coast Hospitals (or, at the Debtors' election, the equity interests of the special purpose entity that owns the real property underlying the Space Coast Hospitals) (the "**Space Coast Real Property**") shall be deemed conveyed to the Debtors on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by MPT. The Debtors shall be solely responsible for the payment of any transfer taxes associated with such conveyance. The MPT Settlement Order shall be proof of conveyance of the Space Coast Real Property to the Debtors effective immediately as of the Conveyance Date and MPT shall deliver such other documents as may be reasonably necessary in recordable form to record the transfer of title to the Debtors or its designee.  The Debtors and MPT, in consultation with the Creditors' Committee, the Prepetition ABL/FILO Administrative Agent (acting at the direction of Required Revolving Lenders), and the |

| | **SETTLEMENT TERM SHEET** |
|---|---|
| | FILO Secured Parties, shall work in good faith (i) to prepare additional documentation to facilitate the conveyance of the Space Coast Real Property to the Debtors in a tax efficient manner and (ii) to take all actions necessary to consummate the sale of the Space Coast Hospitals to Orlando Health, Inc. and Orlando Health Medical Group, Inc. (collectively, "**Orlando Health**"), including MPT negotiating a reasonable purchase and sale agreement with Orlando Health.<br><br>Upon the consummation of the sale of the Space Coast Hospitals by the Debtors to Orlando Health or any other buyer, the Debtors shall retain $395,000,000[2] of the sale proceeds in cash (after giving effect to all purchase price adjustments set forth in the applicable purchase agreement), and promptly transfer to MPT any and all proceeds in excess thereof after paying or reserving for otherwise unsatisfied mechanics' and materialmens' liens and other closing and post-closing payment obligations of the Sellers under the Space Coast APA; provided that (i) to the extent that any portion of such excess amount is determinable and not disputed, promptly transfer such amount to MPT, (ii) to the extent that any portion of such excess amount is not reasonably determinable or disputed, the Debtors shall establish a reasonable reserve for such indeterminable or disputed expenses and promptly deliver the remainder of such excess amount to MPT (it being understood that (A) MPT shall return a portion of such excess amount (but not more than the amount received from the Debtors in respect of the sale of the Space Coast Hospitals) to the extent that the Debtors' related payment obligations exceed the amount of such reserve and (B) any portion of such reserve which is not applied by the Debtors to such payment obligations shall be promptly transferred to MPT) and (iii) the Debtors shall comply, at MPT's expense, with the reasonable instructions of MPT in connection with the resolution of the amount of any purchase price adjustments or post-closing payment obligations in respect of any such sale.<br><br>Notwithstanding the foregoing, all Professional Fee Claims relating to the Space Coast Hospitals and the conveyance thereof (either by MPT to the Debtors or by the Debtors to Orlando Health or any other buyer), as well as any income taxes payable by the Debtors relating to such conveyances (excluding any pro rated income tax due under the Space Coast APA), shall be borne solely by the Debtors and paid from the $395,000,000 retained by the Debtors.<br><br>The MPT Settlement Order shall provide, if the Space Coast APA is validly terminated for any reason, MPT shall have an option to purchase the Space Coast Hospitals (or for a buyer designated by MPT in its sole discretion to purchase the Space Coast Hospitals) from the Debtors for a purchase price of $395,000,000, which option shall be exercisable by MPT in its sole discretion to consummate the purchase within forty-five (45) days following the valid termination, if any, of the Space Coast APA. |
| **Behavioral Facility** | The Debtors and MPT shall use good faith efforts to agree on a resolution with respect to the Behavioral Facility as promptly as practicable.  To the extent that the Debtors determine that they must to close the Behavioral Facility, the Debtors shall convey or abandon their interests in the Behavioral Facility to MPT on an "as-is, where is" basis after removing any hazardous materials, medical records and medical equipment.  MPT |

---

[2]  For the avoidance of doubt, MPT shall not have any obligation to make any payment to the Debtors if the proceeds of any sale of the Space Coast Hospitals are insufficient to provide for the receipt by the Debtors of such amount.

| | **SETTLEMENT TERM SHEET** |
|---|---|
| | shall not have any obligation to reimburse the Debtors with respect to any costs or expenses incurred by the Debtors with respect to the Behavioral Facility. |
| **Closed Hospitals** | Promptly following the entry of the MPT Settlement Order, the Debtors shall convey or abandon their interests in the Closed Hospitals to MPT on an "as-is, where is" basis after removing any hazardous materials, medical records and medical equipment.  MPT shall not have any obligation to reimburse the Debtors with respect to any costs or expenses incurred by the Debtors with respect to the Closed Hospitals. |
| **Sharon Hospitals** | The Debtors and MPT shall use good faith efforts to agree on a resolution with respect to the Sharon Hospital as promptly as practicable. |
| **Wadley Hospital** | The Debtors and MPT agree to consummate the sale of Wadley Hospital pursuant to the purchase agreement (and related agreements) filed with the Bankruptcy Court seeking approval to sell such hospital. |
| **M&M Liens** | The Debtors shall have no obligation to satisfy and remove any mechanic's and materialmen's liens on the Specified MLI Hospitals and underlying real estate. |
| **FILO/MPT Put Option** | On the Settlement Effective Date, the FILO Secured Parties shall waive and relinquish any right to the FILO Put Option (as defined in the Prepetition Intercreditor Agreement). |
| **Release by MPT Releasing Parties** | Upon the Settlement Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, MPT and each of its affiliates and subsidiaries (including, without limitation, the MPT Lessors and any entities owned jointly by Macquarie and MPT Silver Holdco, LLC and their subsidiaries (including the MLII Lessors (as defined in Dkt. 2388-1)) (together with their successors and assigns, the "**MLII JV Entities**")) (collectively, the "**MPT Releasing Parties**"), shall be deemed to irrevocably and unconditionally release and discharge (i) the Debtors, (ii) the ABL Lenders, (iii) the FILO Secured Parties, (iv) the Creditors' Committee, and (v) with respect to each of the foregoing in clauses (i) through (iv), all of their respective Related Parties (collectively, the "**Non-MPT Released Parties**") from any and all Claims (including all of the MPT Claims), Interests, liens, security interests, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors or the Estates, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the Debtors' business, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the business or contractual arrangements between the Debtors and any Non-MPT Released Party, any other transaction involving the restructuring of Claims or interests before or during the Chapter 11 Cases, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Settlement Effective Date; *provided* that the foregoing shall not release any (a) obligations under the MPT |

| | |
|---|---|
| | **SETTLEMENT TERM SHEET** |
| | Settlement, (b) Claim or Cause of Action related to the Norwood Insurance (as defined below), or (c) obligations under the Excess Property Disposition Agreement. |
| | For the avoidance of doubt, nothing herein shall constitute a release by the MPT Releasing Parties of any Claims or Causes of Action against any parties other than the Non-MPT Released Parties. |
| **Release of MPT Released Parties** | Upon the Settlement Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, (i) the Debtors, (ii) the ABL Lenders, (iii) the FILO Secured Parties, and (iv) the Creditors' Committee shall be deemed to irrevocably and unconditionally release and discharge the MPT Releasing Parties and all of their respective Related Parties (excluding, for the avoidance of doubt, the Debtors and their Related Parties, in their capacities as such) (collectively, the "**MPT Released Parties**") from any and all Claims, Interests, liens, security interests, obligations, rights, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, matured or unmatured, contingent or fixed, existing or hereinafter arising, in law, equity or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors or the Estates, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the Debtors' business, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the business or contractual arrangements between the Debtors and any MPT Released Party, any other transaction involving the restructuring of Claims or interests before or during the Chapter 11 Cases, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Settlement Effective Date; *provided* that the foregoing shall not release any (a) obligations under the MPT Settlement, (b) Claim or Cause of Action related to the Norwood Insurance (as defined below), or (c) obligations under the Excess Property Disposition Agreement. <br><br> For the avoidance of doubt, nothing herein shall constitute a release by the Debtors' estates or the Creditors' Committee of any Claims or Causes of Action against any parties other than the MPT Released Parties. |
| **MPT Obligations** | Upon the entry of the interim MPT Settlement Order, MPT on behalf of itself and the MPT Releasing Parties (i) agrees (and shall cause its subsidiaries and affiliates, including, without limitation, the MLII JV Entities to agree) that the Debtors shall not be required to pay any rent or other obligations under Master Lease I and Master Lease II (and any ancillary agreements related thereto), whether or not yet accrued or due and owing, and that MPT and its Related Parties shall forbear (pending the Settlement Effective Date) with respect to all existing Claims thereunder (except as expressly excluded from the release set forth above), (ii) agrees to forbear (pending the Settlement Effective Date) with respect to any default and the right to any exercise of remedies under Master Lease I and Master Lease II (and any ancillary agreements related thereto) and any other lease as to which any Debtor is the lessee, (iii) agrees to forbear (pending the Settlement Effective Date) with respect to any default under the MPT DIP Credit Agreement, (iv) agrees to forbear (pending the Settlement Effective Date) with respect to the right to the continued payment of or performance under the MPT DIP Credit |

| SETTLEMENT TERM SHEET | |
|---|---|
| | Agreement or DIP Orders, including the current payment of MPT's professional fees and expenses, and (v) consents (pending the Settlement Effective Date) to the continued use of cash collateral by the Debtors.

Upon the Settlement Effective Date, any and all MPT Claims shall be deemed to be released and waived with prejudice (and MPT consents to the Debtors submitting and obtaining an order of the Bankruptcy Court approving the release and waiver the MPT Claims).

Upon the entry of the MPT Settlement Order, Master Lease I shall be deemed to be terminated, without any liability to any party as a result of such termination, with any claims relating to such master lease being released on the Settlement Effective Date; provided that the Debtors shall be entitled to continue to access and use the Specified MLI Hospitals, Space Coast Hospitals the Behavioral Facility, the Closed Hospitals and the Deferred Hospitals in a manner consistent with the terms of the MPT Settlement.

For the avoidance of doubt, nothing herein is intended to limit the scope of the releases set forth in the Bankruptcy Court orders approving the sales of the Massachusetts Going Concern Hospitals (the "**MA Sale Orders**"). |
| **MPT Settlement Order** | The Debtors shall promptly file a settlement motion under Bankruptcy Rule 9019 ("**9019 Motion**") and obtain interim approval of the MPT Settlement Order by no later than September 10, 2024.

The form of interim order annexed to the 9019 Motion  is reasonably acceptable to both parties. |
| **Cooperation** | The Parties shall cooperate in good faith to (i) obtain approval of the MPT Settlement Order and implement the transactions contained in this Term Sheet, including, at the applicable Designated Operator's expense, to the extent set forth above with respect to Transition Costs, with respect to the assignment and transfer of any licenses, permits and other intangible assets exclusively related to the Specified MLI Hospitals, the Behavioral Facility or Closed Hospitals if requested by MPT or the applicable Designated Operator and (ii) structure the transactions contained in this Term Sheet in a tax efficient manner. To the extent requested by MPT or the applicable Designated Operator, the Debtors shall, at MPT's or the applicable Designated Operator's, as applicable, expense, use commercially reasonable efforts to permit MPT or such Designated Operator, as applicable, to submit claims for the applicable Specified MLI Hospitals under the applicable Debtors' Medicare and Medicaid provider numbers pending the issuance of the applicable tie-in notice in favor of such Designated Operator. |
| **Stay of Discovery and Litigation** | Upon execution of this Term Sheet or the filing of a motion by the Debtors (with the consent of MPT) seeking entry of the MPT Settlement Order, all discovery and litigation among MPT, the Debtors, the Creditors' Committee, the ABL Lenders, and the FILO Secured Parties shall be immediately stayed, with such stay to cease if the MPT Settlement Order is not entered by 11:59 p.m. prevailing Central time on September 13, 2024 in accordance with the terms hereof. |

11

| SETTLEMENT TERM SHEET | |
|---|---|
| **Retention of Jurisdiction** | The MPT Settlement Order shall provide for a broad retention of jurisdiction by the Bankruptcy Court. |
| **Norwood** | The Debtors' and MPT's respective entitlements with respect to the Norwood insurance policies and related proceeds (the "**Norwood Insurance**") shall be unaffected by the MPT Settlement. |
| **Fiduciary Obligations** | Notwithstanding anything to the contrary herein, prior to the entry of the MPT Settlement Order, nothing herein requires the Debtors or any of their directors, members, or officers, each in their capacity as such, to take any action, or to refrain from taking any action, to the extent inconsistent with its or their fiduciary obligations under applicable law. |

**Annex 1**

**Definitions**

| DEFINED TERMS | |
|---|---|
| **"ABL Obligations"** | Means all "Obligations," as that term is defined in the Prepetition ABL/FILO Credit Agreement, with respect to "Tranche A Loans," as that term is defined in the Prepetition ABL/FILO Credit Agreement. |
| **"Behavioral Facility"** | Means St. Luke's Behavioral Facility. |
| **"Bidding Procedures Order"** | Means the *Order (I) Approving (A) Global Bidding Procedures for Sales of the Debtors' Assets, (B) Form and Manner of Notice of Sales, Auctions, and Sale Hearings, and (C) Assumption and Assignment Procedures and Form and Manner of Notice of Assumption and Assignment; (II) Authorizing Designation of Stalking Horse Bidders; (III) Scheduling Auctions and Sale Hearings; and (IV) Granting Related Relief* (Docket No. 626). |
| **"Cause of Action"** | Means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedies, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws).  Causes of Action also includes:  (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or interests; (c) any claim or causes of action pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim. |
| **"Claim"** | Has the meaning ascribed to it in section 101(5) of the Bankruptcy Code. |
| **"Closed Hospitals"** | Means Norwood Hospital, Coral Gables Hospital North, Northside Regional Medical Center, Wadley Regional Medical Center Development, Texas Vista Medical Center, St. Luke's Medical Center, and Ogden Underdeveloped Land. |
| **"Creditors' Committee"** | Means the official committee of unsecured creditors appointed in these Chapter 11 Cases by the U.S. Trustee for the Southern District of Texas on May 16, 2024. |
| **"Sharon Hospital"** | Means Sharon Regional Medical Center. |
| **"DIP Orders"** | Means collectively the FILO DIP Order and the MPT DIP Order. |

| DEFINED TERMS | |
|---|---|
| **"Excess Property Disposition Agreement"** | Means that certain *Excess Property Disposition Agreement* dated as of February 21, 2024. |
| **"FILO DIP Agent"** | Has the meaning ascribed to it in the FILO DIP Order. |
| **"FILO DIP Order"** | Means the *Final Order (I) Authorizing the Debtors to (A) Obtain New Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* (Docket No. 1538) approved by the Bankruptcy Court. |
| **"FILO Secured Parties"** | Collectively, (i) the "FILO Secured Parties," as that term is defined in the Prepetition Intercreditor Agreement, (ii) the "FILO Bridge Secured Parties," as that term is defined in the Prepetition Intercreditor Agreement, and (iii) the "FILO DIP Secured Parties," as that term is defined in the FILO DIP Order. |
| **"Final Order"** | Means an order, ruling, or judgment of the Bankruptcy Court (or other court of competent jurisdiction) that (i) is in full force and effect, (ii) is not stayed, and (iii) is no longer subject to review, reversal, vacatur, modification, or amendment, whether by appeal or by writ of certiorari; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rule applicable in such other court of competent jurisdiction) may be filed relating to such order, ruling, or judgment shall not cause such order, ruling, or judgment not to be a Final Order. |
| **"Interest"** | Means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in any Debtor (including all options, warrants, rights, or other securities or agreements to obtain such an interest or share in such Debtor). |
| **"Macquarie"** | Means MIP V Hopkins, LLC. |
| **"Massachusetts Going Concern Hospitals"** | Means Saint Elizabeth's Medical Center, Saint Anne's Hospital, Good Samaritan Medical Center, Holy Family Hospital – Haverhill, Holy Family – Methuen, and Morton Hospital. |
| **"Master Lease I"** | Means that certain *Second Amended and Restated Master Lease Agreement*, dated as of March 14, 2022 (as amended, restated, amended and restated), by and among the lessors and lessees party thereto. |
| **"Master Lease II"** | Means that certain *Master Lease Agreement*, dated as of March 14, 2022 (as amended, restated, amended and restated), by and among the lessors and lessees party thereto. |
| **"MLI Hospitals"** | Means the Debtors' hospitals and related clinics and facilities in Pennsylvania, Ohio, Louisiana, Arkansas, Arizona, Texas, and Florida leased under Master Lease I. |

| **DEFINED TERMS** | |
|---|---|
| **"MLI Hospital Transition Closing Date"** | Means, with respect to any Specified MLI Hospital, the earlier of (i) the first date on which full ownership of such Specified MLI Hospital is either (A) conveyed or transferred to MPT or a Designated Operator or (B) reasonably determined by the Debtors and MPT (or by the Bankruptcy Court upon request of either MPT or the Debtors) to be impracticable to convey or transfer to MPT or a Designated Operator and (ii) October 30, 2024. |
| **"MPT"** | Means, collectively, Medical Properties Trust, Inc. and its affiliates and subsidiaries, including the MPT Lessors and MPT Lender. |
| **"MPT Claims"** | Means any and all Claims held by MPT (or any transferee) against any of the Debtors, including, without limitation, the MPT DIP Claims, MPT Bridge Claims, MPT Prepetition Secured Claims, MPT Lease Claims, and MPT HoldCo Claims. |
| **"MPT DIP Claims"** | Means all Claims held by the MPT DIP Lender or any of its transferees on account of, arising under or relating to the MPT DIP Credit Agreement, the MPT DIP Facility or the MPT DIP Order, including Claims for all principal amounts outstanding, and any and all fees, interest, expenses, indemnification obligations, reimbursement obligations, and other amounts under the DIP Documents (as defined in the MPT DIP Order), which for the avoidance of doubt shall include all "DIP Obligations" as defined in the MPT DIP Order. |
| **"MPT DIP Credit Agreement"** | Means that certain *Debtor-in-Possession Credit Agreement*, dated May 28, 2024, by and among, *inter alios*, Steward Health Care System LLC as borrower, the other Debtors jointly and severally, as guarantors, and the MPT DIP Lender, as may be further amended, modified, or amended and restated from time to time in accordance with its terms. |
| **"MPT DIP Facility"** | Means that certain secured, superpriority, debtor in possession junior lien multiple draw term loan facility, consisting of up to $300 million of new money term loans provided pursuant to the MPT DIP Credit Agreement. |
| **"MPT DIP Lender"** | Means MPT TRS Lender-Steward, LLC, a Delaware limited liability company, in its capacity as lender under the MPT DIP Facility. |
| **"MPT DIP Order"** | Means the *Final Order (I) Authorizing the Debtors to (A) Obtain Junior Lien Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying The Automatic Stay; and (IV) Granting Related Relief* (Docket No. 625) approved by the Bankruptcy Court. |
| **"MPT Facility Claims"** | Means obligations of certain Debtors on account of the term loans borrowed under the MPT Facility, including approximately $224 million in principal amount of term loans provided by the MPT Lender (as defined in the MPT DIP Order), plus accrued and unpaid interest, fees, and other amounts arising and payable with respect thereto. |

| DEFINED TERMS | |
|---|---|
| **"MPT HoldCo Claims"** | Means the guaranty obligations of SHC Holdings on account of the Investor Note, including approximately $397.9 million of obligations and all outstanding and accrued interest. |
| **"MPT Lease Claims"** | Means rent or any other obligations of any of the Debtors, as tenants, on account of the facilities leased from affiliates of MPT pursuant to Master Lease I and Master Lease II or any other lease, including without limitation any Claims arising from the termination or rejection of such leases, regardless of whether such Claims are held by MPT, the MLII JV Entities or otherwise. |
| **"MPT Lender"** | Means MPT TRS Lender-Steward, LLC, a Delaware limited liability company, in its capacity as lender under the MPT Facility. |
| **"MPT Lessors"** | Means the lessors under each of Master Lease I and Master Lease II. |
| **"MPT Prepetition Secured Claims"** | Means collectively, MPT Facility Claims, MPT Stewardship Note Claims, and MPT Bridge Claims. |
| **"MPT Settlement Order"** | Means the order entered by the Bankruptcy Court approving the MPT Settlement, which order shall be in form and substance reasonably acceptable to each of the Parties. |
| **"MPT Stewardship Note Claims"** | Means all obligations of certain Debtors on account of the term loans borrowed under the MPT Stewardship Note, including approximately $82.5 million in principal amount of term loans provided by the MPT Lender, plus accrued and unpaid interest, fees, and other amounts arising and payable with respect thereto. |
| **"Person"** | Means any individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other Entity (as defined in section 101(15) of the Bankruptcy Code). |
| **"Prepetition Intercreditor Agreement"** | Means that certain Amended and Restated Intercreditor Agreement, dated as of February 21, 2024 (as amended, supplemented, restated or otherwise modified from time to time) by and among the Prepetition ABL/FILO Administrative Agent, the Prepetition Bridge Agent, the MPT Parties (as defined in the Prepetition Intercreditor Agreement), and the Prepetition Loan Parties party thereto. |
| **"Professional Fee Claim"** | A Claim for professional services rendered or costs incurred by professional persons retained by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Cases. |
| **"Related Parties"** | Means a Person's predecessors, successors and assigns, parents, subsidiaries, affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, |

| DEFINED TERMS | |
|---|---|
| | trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such persons' respective heirs, executors, estates, servants and nominees, each in their capacity as such. |
| **"Required Revolving Lenders"** | Has the meaning ascribed to it in the Prepetition ABL/FILO Credit Agreement. |
| **"Settlement Effective Date"** | Means the date on which each of the following has occurred: (1) the Space Coast Real Property is conveyed to the Debtors or the Debtors receive $395 million from the sale of the Space Coast Hospitals, (2) the MPT Settlement Order has been entered, has become a final order and has not been stayed, vacated or modified without consent of the Debtors and MPT, (3) with respect to each Specified MLI Hospital, the MLI Hospital Transition Closing Date shall have occurred, and (4) MPT or the Designated Operators shall have irrevocably assumed Accrued PTO and all responsibility for funding the operations of each Specified MLI Hospital (including any closing costs). |
| **"Space Coast APA"** | Means that certain *Asset Purchase Agreement*, by and among Steward Melbourne Hospital, Inc., Steward Rockledge Hospital, Inc., and Steward Sebastian River Medical Center, Inc., as sellers, and Orlando Health, Inc. and Orlando Health Medical Group, Inc., as buyers, dated August 14, 2024. |
| **"Space Coast Hospitals"** | Means Melbourne Regional Medical Center, the Rockledge Regional Medical Center, and the Sebastian River Medical Center. |
| **"Wadley Hospital"** | Means Wadley Regional Medical Center at Hope |

**Annex 2**

**Specified MLI Hospitals**

| Hospital | Market |
|---|---|
| Tempe St. Luke's Hospital | Arizona |
| Mountain Vista Medical Center | Arizona |
| Florence Hospital | Arizona |
| Coral Gables Hospital | Southern Florida |
| Hialeah Hospital | Southern Florida |
| Florida Medical Center | Southern Florida |
| North Shore Medical Center | Southern Florida |
| Palmetto General Hospital | Southern Florida |
| Scenic Mountain Medical Center | Texas |
| Odessa Regional Medical Center | Texas |
| Medical Center of Southeast TX (Port Arthur) | Texas |
| St. Joseph's Medical Center | Texas |
| Glenwood Regional Medical Center | Louisiana |
| Trumbull Memorial Hospital | Ohio |
| Hillside Rehabilitation Hospital | Ohio |

**<u>Annex 3</u>**

**Specified MLI Hospital PTO Obligations**

**PTO by Hospitals [1]**

| Hospital | Market | PTO Balance (in USD millions) |
|---|---|---|
| Tempe St. Luke's Hospital | Arizona | $     603.7 |
| Mountain Vista Medical Center | Arizona | 1,701.9 |
| Florence Hospital | Arizona | 154.6 |
| Coral Gables Hospital | Southern Florida | 1,346.9 |
| Hialeah Hospital | Southern Florida | 1,662.7 |
| Florida Medical Center | Southern Florida | 2,080.5 |
| North Shore Medical Center | Southern Florida | 1,953.2 |
| Palmetto General Hospital | Southern Florida | 4,759.8 |
| Scenic Mountain Medical Center | Texas | 549.1 |
| Odessa Regional Medical Center | Texas | 1,648.2 |
| Medical Center of Southeast TX (Port Arthur) | Texas | 1,261.1 |
| St. Joseph's Medical Center | Texas | 2,995.1 |
| Glenwood Regional Medical Center | Louisiana | 1,521.4 |
| Trumbull Memorial Hospital | Ohio | 2,234.7 |
| Hillside Rehabilitation Hospital | Ohio | 502.8 |
| **TOTAL** | | $     **24,975.7** |

**Note**

1)  Analysis includes accrued PTO for hospital employees and SMG specialists at the respective hospitals

**<u>Annex 4</u>**

**Maximum Reimbursement Amount**

Annex 4
Estimated Weekly Support Services Costs

*(in thousands $USD)*

*Est. Weekly Operating Supporting Service Costs*

| Region | Facilities Operations | | Finance | | Information Systems | | Other | | Revenue Operations | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Florence Hospital | $ | 3.9 | $ | 2.6 | $ | 12.6 | $ | 2.7 | $ | 9.1 | $ | 31.0 |
| Mountain Vista Medical Center | | 39.5 | | 26.0 | | 127.6 | | 27.5 | | 92.4 | | 312.9 |
| Tempe St. Luke's Hospital | | 14.5 | | 9.6 | | 47.0 | | 10.1 | | 34.0 | | 115.3 |
| **Arizona** | **$** | **57.9** | **$** | **38.2** | **$** | **187.2** | **$** | **40.3** | **$** | **135.5** | **$** | **459.1** |
| | | | | | | | | | | | | |
| Odessa Regional Medical Center | $ | 28.7 | $ | 17.5 | $ | 85.7 | $ | 18.5 | $ | 62.1 | $ | 212.4 |
| Scenic Mountain Medical Center | | 10.6 | | 6.4 | | 31.6 | | 6.8 | | 22.9 | | 78.3 |
| **West Texas** | **$** | **39.2** | **$** | **23.9** | **$** | **117.3** | **$** | **25.3** | **$** | **85.0** | **$** | **290.7** |
| | | | | | | | | | | | | |
| St. Joseph's Medical Center | $ | 56.9 | $ | 34.7 | $ | 170.1 | $ | 36.6 | $ | 123.2 | $ | 421.6 |
| Southeast Texas (Port Arthur) | | 32.7 | | 19.9 | | 97.7 | | 21.0 | | 70.7 | | 242.0 |
| **St. Joe's / Port Arthur** | **$** | **89.6** | **$** | **54.6** | **$** | **267.8** | **$** | **57.7** | **$** | **193.9** | **$** | **663.6** |
| | | | | | | | | | | | | |
| Hillside Rehabilitation Hospital | $ | 6.1 | $ | 2.8 | $ | 13.8 | $ | 3.0 | $ | 10.0 | $ | 35.7 |
| Trumbull Regional Medical Center | | 28.2 | | 13.1 | | 64.4 | | 13.9 | | 46.6 | | 166.1 |
| **Ohio** | **$** | **34.2** | **$** | **15.9** | **$** | **78.2** | **$** | **16.8** | **$** | **56.6** | **$** | **201.8** |
| | | | | | | | | | | | | |
| North Shore Medical Center | $ | 23.8 | $ | 18.6 | $ | 91.5 | $ | 19.7 | $ | 66.2 | $ | 219.9 |
| Coral Gables Hospital | | 15.0 | | 11.8 | | 57.8 | | 12.4 | | 41.9 | | 138.9 |
| Hialeah Hospital | | 18.8 | | 14.7 | | 72.1 | | 15.5 | | 52.2 | | 173.2 |
| Palmetto General Hospital | | 36.6 | | 28.6 | | 140.5 | | 30.2 | | 101.7 | | 337.6 |
| Florida Medical Center | | 19.6 | | 15.4 | | 75.4 | | 16.2 | | 54.6 | | 181.3 |
| **South Florida** | **$** | **113.8** | **$** | **89.1** | **$** | **437.2** | **$** | **94.1** | **$** | **316.5** | **$** | **1,050.8** |
| | | | | | | | | | | | | |
| Glenwood Regional Medical Center | $ | 36.2 | $ | 22.1 | $ | 108.2 | $ | 23.3 | $ | 78.3 | $ | 268.1 |
| **Louisiana** | **$** | **36.2** | **$** | **22.1** | **$** | **108.2** | **$** | **23.3** | **$** | **78.3** | **$** | **268.1** |

***Note***
Based on average expenses incurred between May 2024 through July 2024 per the Debtors' books and records. Costs may vary from TSA services and costs that will be incurred when the hospitals are conveyed to the new operator.