IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>STEWARD HEALTH CARE SYSTEM, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br>Case No. 24-90213 (CML)<br>(Jointly Administered)<br><br>D.I. 2418<br><br>Hearing: September 10, 2024, 1:30 PM |

**RESERVATION OF RIGHTS OF THE OHIO NURSES ASSOCIATION TO THE DEBTORS' EMERGENCY MOTION FOR AN ORDER APPROVING THE GLOBAL SETTLEMENT WITH MEDICAL PROPERTIES TRUST**

The Ohio Nurses Association (the "ONA"), a creditor and party in interest in these cases, submits this reservation of rights to the *Emergency Motion of Debtors Requesting Entry of Interim and Final Orders (I) Approving (A) Global Settlement with Medical Properties Trust and (B) Interim Management Procedures, and (II) Granting Related Relief* (the "Emergency MPT Settlement Motion") [Docket No. 2418].

**Background**

1.  The ONA is a labor union representing approximately 8,500 nurses and other healthcare professionals in acute care hospitals, public health agencies, and other healthcare facilities across Ohio.

2.  The ONA represents a bargaining unit of Registered Nurses ("RNs") at Steward Hillside Rehabilitation Hospital ("Hillside"), a Debtor in these cases. Hillside is a 69-

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for purposes of these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, TX 75201.

1

bed acute rehabilitation hospital providing both inpatient and outpatient services. Located in Warren, Ohio, Hillside serves patients from across the Mahoning Valley and Northeast Ohio.

## Collective Bargaining Agreement

3. The ONA and Hillside are parties to a collective bargaining agreement ("CBA"), in effect through November 30, 2026. A copy of relevant portions of the CBA is attached as Exhibit A.[2]

4. The CBA contains, at Article 30, a binding successorship provision that restricts Hillside's ability to sell the hospital unless the following conditions are met: 1) the prospective purchaser agrees to retain the Bargaining Unit RNs; 2) the prospective purchaser agrees to recognize the ONA as the bargaining representative of the Bargaining Unit RNs; and 3) the prospective purchaser enters into a CBA with the ONA covering the Bargaining Unit RNs.

## Reservation of Rights

5. The ONA is pleased to hear that a deal may be in place to avoid the closure of Hillside and provide funding for its continued operation. From the perspective of the ONA, the ONA-represented RNs and the community, an operating Hillside is surely preferable to the alternative. That said, the Debtors may not sell Hillside 'free and clear' of the Debtors' obligations under the CBA, including the successorship provision, pursuant to Section 363 of the Bankruptcy Code.

6. Section 1113(f) provides that "[n]o provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section." 11 U.S.C.

---

[2] The CBA is lengthy and is in the Debtors' possession. The ONA can provide a full copy of the CBA at the Court's request.

§ 1113(f). Section 1113 forbids the application of other Code provisions to permit a debtor to escape the requirements of section 1113: "[w]e construe subsection 1113(f) quite literally. We hold that it was meant to prohibit the application of *any* other provision of the Bankruptcy Code when such application would permit a debtor to achieve a unilateral termination or modification of a collective bargaining agreement without meeting the requirements of § 1113." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 990-91 (2d Cir. 1990) (emphasis added).

7. Thus, a debtor cannot reject, or *de facto* reject, collectively bargained obligations, including relevant successorship protections, without invoking and meeting the requirements of Section 1113. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 81-82 (3d Cir. 1999) (debtor could not, under Section 1113(f), contractually bind itself to obtain a change in a collective bargaining agreement as a condition precedent to asset sale closing; any such change required compliance with the Section 1113 procedures). *See also In re Stein Henry Co., Inc.*, No. 91-15491S, 1992 WL 122902, at *2 (Bankr. E.D. Pa. June 1, 1992) (refusing to confirm plan which would result in asset sale without satisfaction of CBA's successorship clause, which stated that the contract applied to " successors" and "assigns," because "[o]nly through the medium of 11 U.S.C. § 1113(f) can a collective bargaining agreement be terminated or modified in any way" and "[r]ights provided in the agreement as to successor-entities must be preserved unless there is, unlike here, compliance with the procedures of 11 U.S.C. § 1113"); *see also In re Nat'l Forge Co.*, 289 B.R. 803, 808 (Bankr. W.D. Pa. 2003) (debtor "compelled" prior to gaining approval of sale of assets to seek rejection of CBA "[b]ecause of the successor language").

8. As the bankruptcy court concluded in the *Journal Register* case, a debtor may not use Section 363 to bypass the requirements of Section 1113:

> The collective bargaining agreement continues to bind the debtor post-petition, and a debtor cannot reject a collective bargaining agreement except in accordance with Bankruptcy Code § 1113. Generally speaking, a rejection represents a decision not to perform a burdensome executory contract. A debtor cannot bypass § 1113 and obtain a *de facto* rejection of its collective bargaining agreement simply by refusing to perform it. Although the obligation to comply with the successor clause is only one duty among many under a collective bargaining agreement, a debtor's intentional breach of a material provision of the collective bargaining agreement is tantamount to a rejection, or alternatively, a unilateral alteration of its provisions in violation of Bankruptcy Code § 1113(f). *Thus, as a general proposition, a sale under Bankruptcy Code § 363 cannot circumvent the condition imposed under a successor clause absent compliance with § 1113.*

*In re Journal Register Co.*, 488 B.R. 835, 840 (Bankr. S.D.N.Y. 2013) (emphasis added).

9. The ONA-Hillside CBA contains a binding successorship provision. As a result, the Debtors cannot attempt to use the Section 363 sale process to modify or otherwise abrogate the CBA without first complying with the rigorous requirements of Section 1113.

Dated: September 10, 2024
New York, New York

    Cohen, Weiss and Simon LLP

    */s/ Hanan B. Kolko*
    Hanan B. Kolko (*Admitted Pro Hac Vice*)
    Bruce S. Levine (*Admitted Pro Hac Vice*)
    Matthew E. Stolz
    909 Third Avenue, 12th Floor
    New York, New York 10022
    Tel: (212) 563-4100
    Fax: (646) 563-6527
    hkolko@cwsny.com
    blevine@cwsny.com
    mstolz@cwsny.com

    *Attorneys for Creditor Ohio Nurses Association*

## CERTIFICATE OF SERVICE

      I certify that on September 10, 2024, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

                                              /s/ *Matthew Stolz*
                                              Matthew Stolz

# Exhibit A

# AGREEMENT

# BETWEEN

## STEWARD HILLSIDE REHABILITATION HOSPITAL, INC.
## D/B/A
## HILLSIDE REHABILITATION HOSPITAL

### and the

## OHIO NURSES ASSOCIATION/AFT, AFL-CIO

**December 1, 2023 to November 30, 2026**

i

# ARTICLE 1
## Recognition

**Section 1.**     Steward Hillside Rehabilitation Hospital, Inc. (herein called "HRH") recognizes the Ohio Nurses Association (herein called "ONA") as the exclusive collective bargaining representative of the nurses covered by this Agreement. HRH and ONA further recognize their common interest beyond their collective bargaining relationship and they pledge to strive together to insure the highest quality of service by HRH and the highest standards of professional nursing care and practice.

**Section 2.**     The purpose of this Agreement is to establish equitable employment conditions and an orderly system of employer-employee relations, which will facilitate joint discussions and cooperative solutions of mutual problems by hospital administration and representatives of the registered nurses.

**Section 3.**     This Agreement covers full-time and part-time nurses licensed to practice as registered nurses and employed by HRH to perform professional nursing as a staff nurse. Each person employed by HRH to practice professional nursing, as a registered professional nurse must be licensed to practice as such in the State of Ohio.

**Section 4.**     The registered nurse classifications listed in Section 3 of this Article 1 shall constitute the "bargaining unit" as used herein.

**Section 5.**     HRH agrees to maintain on patient care units, a sufficient number of qualified registered nurses at all times to provide care to patients. In determining if staffing is adequate, there may be taken into consideration census on patient units, patient acuity, availability of qualified personnel, and all other relevant facts and circumstances.

**Section 6.**     HRH agrees not to and expressly waives any right it may have to withdraw recognition concerning, petition for unit clarification concerning, or in any way to challenge the inclusion in the bargaining unit of any bargaining unit nurses performing bargaining unit work, classifications, job titles, or positions on the grounds that they are, or may be, supervisors or supervisory.  This provision shall be enforceable through the grievance and arbitration provisions of this agreement.

# ARTICLE 2
## Management Rights

**Section 1.**     The management of, HRH, the control of the premises, and the direction of the nursing staff are vested exclusively with HRH.  The right to manage includes, but shall not be limited to, the right to hire, transfer, promote suspend or discharge nurses for just cause; to determine the shifts and the number of hours to be worked by nurses; to determine staffing patterns including, but not limited to, the assignment of nurses as to numbers employed, duties to be performed, qualifications required and areas worked; to determine policies and procedures with respect to patient care; to determine or change the methods and means by which its operations are to be carried on; and to carry out the ordinary and customary functions of

management subject only to such restrictions and regulations governing the exercise of these rights as are expressively specified in this Agreement; and provide, further, that these rights shall not be used for the purpose of discriminating unlawfully against a nurse on account of membership in or activity on behalf of ONA.

**Section 2.**   ONA, on behalf of the nurses covered by this Agreement, agrees to cooperate with HRH to attain and maintain full efficiency and optimum patient care, and HRH agrees to receive and consider constructive suggestions submitted by ONA toward these objectives.

## ARTICLE 3
## Membership

**Section 1.**   All nurses presently employed who belong to the Ohio Nurses Association shall, as a condition of employment, maintain their membership in good standing with that organization and shall remain members of ONA for the duration of the Agreement.

**Section 2.**   Effective upon ratification of this Agreement, nurses who, for philosophical reasons, do not desire to become members of the Ohio Nurses Association, shall pay a fair share fee to ONA as a condition of employment.

All nurses hired after contract ratification who do not become members in good standing of ONA shall pay a fair share fee to ONA effective sixty (60) days from date of hire as a condition of employment.

The fair share fee amount shall be certified in writing to HRH by the Ohio Nurses Association.

The deduction of the fair share fee from any earnings of the nurse requires a written authorization for payroll deduction. Payment to ONA of fair share fees shall be made in accordance with regular dues deductions as provided herein.

Those nurses who have religious objections to union membership or to paying a fee as described above and who meet certain criteria may pay an equivalent sum instead to an agreed upon nonreligious charitable fund.

**Section 3.**   ONA shall notify HRH in writing of any nurse who has failed to pay her membership dues in accordance with this Agreement and shall demand that HRH terminate the employment of said nurse within ten (10) days of the notification. ONA agrees to indemnify and save HRH harmless from any action growing out of discharge effected at the request of ONA.

**Section 4.**   Nurses on Workers Compensation shall be exempt from the provisions of Section 3 of this Article 3.

**Section 5.**   HRH will provide a thirty (30) minute period of paid time during each nurse's orientation for the ONA chairperson or designee and an HRH representative to meet the orientee to discuss the parties' rights and obligations under the Agreement. The meeting shall be held during normal working hours and shall not involve the payment of overtime. At this time, ONA

will provide the orientee with a copy of the current collective bargaining agreement and an ONA dues deduction form.  ONA shall be notified of orientation at least five (5) days in advance.

## ARTICLE 4
### Association Activity

**Section 1.**       HRH shall provide ONA with bulletin boards to post ONA or ONA local unit information.

**Section 2.**       HRH agrees to provide the ONA local unit with a permanent office in which to conduct ONA/ONA local unit business. HRH will continue to provide the ONA local unit with a mailbox.

**Section 3.**       Absence with regular pay shall be authorized to permit nurses who are officials of the bargaining unit to attend meetings and conventions of the ONA on a state, national, and/or district level. Only personnel elected by their bargaining unit, to include officers of the local unit and the grievance representatives and negotiating committee shall be granted such leave. The representatives shall be chosen by ONA. The total cumulative number of release hours granted per year shall not exceed 80 hours in a calendar year.  Such leaves will be limited to no more than two (2) nurses from any one unit and will require an advance thirty (30) day notice. Nurses are to be granted approval within seven (7) calendar days of request.

**Section 4.**       Members of the negotiating team shall be excused from duty each day of negotiations, including those working the night shift prior to each negotiation session, as well as nurses working day shift and afternoon shift the day of negotiations. Nurses will be paid their usual day rate each day of negotiations limited to: 1) maximum of 4 nurses per negotiating committee; 2) maximum of 5 paid days per nurse, not to exceed the scheduled work week; 3) maximum of one negotiation process for duration of contract.   Paid negotiation time shall not be used to calculate any premium time payment or be utilized to calculate overtime.

**Section 5.**       ONA agrees that no activities of the organization will be conducted by members who are on nursing duty, unless specific permission has been obtained from the direct Supervisor.

## ARTICLE 5
### Deduction of Dues

**Section 1.**       HRH agrees to deduct monthly ONA dues or appropriate fair share fees for HRH nurses in whatever sum is authorized or established by ONA from the pay of nurses.  Nurses shall execute a voluntary written authorization form for dues or fees deduction.  ONA shall advise HRH's Payroll Department of the appropriate dues deduction or fair share fee deduction and such dues or fees shall be deducted from the nurses pay.

**Section 2.**       Deductions will be made from the pay earned during the first pay period of each month.  In the event any nurse whose pay is subject to the deduction of ONA dues as provided in this Article shall not be entitled to any pay for the first pay period of any month then HRH will make a double deduction from the pay earned during the first pay period of the next month.  The

interference with HRH's operation is prohibited by this Article and is not in any way sanctioned or approved by the ONA. ONA shall also promptly order all nurses to return to work at once.

**Section 4.** In the event that HRH claims that ONA or any officer or agent or representative thereof, directly indirectly, authorized, assisted, financed, encouraged, or any way participated in any mass resignation or other concerted withdrawal of nursing services, stoppage of work, picketing, sympathy strike, hand-billing and leafleting, sit-down, slowdown, or other interference with the operation of HRH, or ratified, condoned, or lent any support to any such conduct or action, HRH may forthwith pursue relief in court as may be appropriate or submit grievance to arbitration under the arbitration procedure provided for in this Agreement, and ONA and HRH shall both cooperate to bring about an arbitration as expeditiously as possible. The arbitrator is empowered under this Article to grant injunctive relief or other appropriate remedies to HRH against ONA, and ONA hereby consents to the entry by or on behalf of HRH of any appropriate decree, order, or judgment in any court of competent jurisdiction, based on such award and for the purpose of permitting HRH to enforce and implement such award.

**Section 5.** HRH shall not lock out any or all of its nurses during the term of this Agreement.

### ARTICLE 30
### Possible Future Conditions

**Section 1.**

A. Steward Hillside Rehabilitation Hospital, Inc. agrees it will not sell, assign, transfer, or convey any ownership interest, asset, operation, management or control (hereinafter referred to as "transaction") of Hillside Rehabilitation Hospital (HRH) to any entity or individual ("Transferee") through any transaction with the Transferee unless and until the following conditions have been met prior to the closing date of the proposed transaction: (1) subject to the Transferee's right to set initial terms and conditions of employment, and as qualified by Section 1(C) of this Article, the Transferee has entered into a written agreement with the Ohio Nurses Association (ONA) to retain all registered nurses employed by HRH within the existing ONA bargaining unit, to the extent that the Transferee employs registered nurses, subject to the requirements of Sections 1(B) and 1(C) of this Article; (2) subject to the Transferee's right to set initial terms and conditions of employment, and as qualified as Section 1(C) of this Article, the Transferee has entered into a written agreement with the ONA recognizing the ONA as the bargaining representative for positions within the existing ONA bargaining unit; and (3) subject to the Transferee's right to set initial terms and conditions of employment, and as qualified by Section 1(C) of this Article, the Transferee has entered into an initial collective bargaining agreement containing those provisions of this Article outlined in Section 1(C) of this Article and any other collective bargaining provisions that the Transferee and ONA may agree upon, on or before the closing of any transaction.

B. Subject to the exceptions outlined in Sections 1(A) and 1(C) of this Article, Steward Hillside Rehabilitation Hospital, Inc. shall require any Transferee to commit in writing in a separate agreement with the ONA that the Transferee shall retain members of the ONA bargaining unit employed by HRH at the time of closing of a transaction to the extent the

45

Transferee requires registered nurse positions covered by this Agreement at HRH.  The following clarifications and modifications shall apply to this requirement:

1. If the Transferee maintains the same units and services as HRH has in place at the time of the closing date of any transaction, and with the same number of ONA bargaining unit members, such nurses shall continue to work in their same positions as of the closing date;

2. If the number of available ONA bargaining unit nurses covered by this Agreement exceed the number of required registered nurse positions in any unit as of the closing date of any transaction, the registered nurses on the respective unit shall be retained on a bargaining unit seniority basis;

3. If units are combined as of the closing date of any transaction and the number of available positions as a result of such combination are less than the available number at ONA bargaining unit nurses covered by this Agreement, the affected nurses shall be retained on a bargaining unit seniority basis;

4. If a unit is eliminated as of the closing date of any transaction, the ONA bargaining unit nurses affected by such unit elimination shall be retained on a bargaining unit seniority basis;

5. If the number of available positions on a unit exceed the number of ONA bargaining unit nurses available as of the closing date of any transaction, the positions shall be filled on a bargaining unit seniority basis;

6. To ensure appropriate patient care, if the Transferee offers a new patient care service or unit, which is not presently offered at HRH, but such work, or any part thereof, is bargaining unit work covered by this Agreement, the registered nurse bargaining unit positions shall be filled by displaced registered nurses in the bargaining unit based upon a combination of seniority and qualifications.  This requirement of a Transferee shall expire after nine (9) consecutive months have passed from the closing date of any transaction covered by this Article.  If two or more bargaining unit members are equally qualified, bargaining unit seniority shall be used as the tie-breaker.  If no bargaining unit members are qualified, the Transferee shall have the right to hire outside of the bargaining unit.

7. The requirements of this Subsection shall not restrict or prevent in any manner a Transferee from changing the method of its operations after the closing date of a transaction covered by this Article, including adjusting the size of its workforce and determining what services, units, and staffing model it may wish to utilize.

8. All registered nurses covered by this Agreement, not retained by the Transferee subject to the provisions of this Subsection, including registered nurses in layoff status, shall be offered registered nurse positions prior to the Transferee hiring any registered nurses from outside the existing bargaining unit.  The requirement that the

   Transferee shall offer registered nurse positions to the ONA bargaining unit members shall continue for a period of nine (9) consecutive months from the closing date of any sale, assignment, transfer, or conveyance.  If an ONA bargaining unit member refuses any offer of employment by the Transferee during the nine (9) consecutive months' time period, or if no offer of employment has been made to an ONA bargaining unit nurse during such nine (9) month period, the Transferee shall have no further obligation to offer employment to such ONA bargaining unit member.

C. As a condition of any sale, assignment, transfer or conveyance of, without limitation, any ownership interest, asset, operation, management or control of all or a portion of HRH, any purchaser, assignee or transferee shall be bound by and incorporate into any initial collective bargaining agreement between the ONA the following contract Articles of this Agreement: Article 1, Article 3, Article 5, Article 6, Article 7, Article 8, Article 27, Article 29, Article 30, Article 31, and the ONA code of Ethics. The Transferee shall have the right to set any initial terms not expressly excepted herein for the retained registered nurse positions at HRH and ONA waives any right it may have to require the Transferee to otherwise adopt any other provisions of this Agreement and otherwise continue any other terms and conditions of employment in existence at the time of the closing of any transaction covered by this Agreement.  After the Transferee sets initial terms and conditions of employment consistent with the exceptions set forth in this Subsection, the Transferee and the ONA shall expeditiously begin bargaining in good faith to conclude a collective bargaining agreement. Such bargaining for subjects and terms and conditions of employment in addition to those required to be adopted in an initial collective bargaining agreement between the Transferee and ONA outlined in this Subsection shall not delay any closing or regulatory approval of the transaction.

**Section 2.** HRH shall require as a condition of the transaction that the Transferee agree to Sections 1(A), 1(B), and 1(C) and include such terms in any agreement memorializing the transaction. HRH also agrees that the ONA is a third-party beneficiary of such commitments and that it may enforce its rights as such and any other rights or remedies it may have at law or in equity.

**Section 3.** Steward Hillside Rehabilitation Hospital, Inc. shall notify the ONA of any proposed sale of HRH simultaneously with giving notice to the Ohio Attorney General's Office as required by Revised Code Section _____ and any other applicable law. At the time of notice, HRH shall provide the ONA with all non-confidential and public record information provided to the Ohio Attorney General's Office and shall provide any additional non-confidential and public record documentation to the ONA that the Ohio Attorney General's office may require during its review of the proposed transaction. HRH may require the ONA, as a condition of disclosure, to execute a mutually agreeable non-disclosure agreement concerning the terms of any proposed transaction and the documentation provided to the Ohio Attorney General's Office, which may be confidential and not subject to disclosure under the Ohio Public Records Act.

**Section 4.** The ONA and the Transferee shall be presented with a reasonable amount of time, not less than thirty (30) days from the date of HRH providing notification to the Ohio Attorney General's Office of any proposed transaction covered by this Article, to enter into an agreement

that satisfies Sections 1(A), 1(B), 6(C) of this Article. Such notice and any bargaining thereafter between a Transferee and ONA, however, shall not delay any closing or regulatory approval of the transaction.

**Section 5.** Steward Hillside Rehabilitation Hospital, Inc. shall provide written notice to all prospective transferees of the terms of this Section before any document memorializing any transaction covered by this Article is executed.

**Section 6.** Steward Hillside Rehabilitation Hospital, Inc. shall advise ONA in writing of all dispositions and acquisitions in which: (1) HRH has a controlling interest; (2) involve bargaining unit nurses; and (3) that could add or delete registered nurse positions in the bargaining unit. This notice shall not constitute a waiver of rights by HRH or the ONA.

**Section 7.** HRH and the ONA expressly consent to the jurisdiction and venue of the Mahoning County Court of Common Please, the United States District Court for the Northern District of Ohio, the National Labor Relations Board, and either the United States Court of Appeals for the District of Columbia Judicial Circuit, or the United States Court of Appeals for the Sixth Judicial Circuit concerning any claims that may arise from or under this Agreement.

**Section 8.** HRH shall retain its legal obligations concerning the resolution of any grievances, unfair labor practices, or any other claims by the ONA or any member of the bargaining unit that are pending at the time of any sale, assignment, transfer of, without limitation, any asset, operation, management or control of all or a portion of HRH and BMP to any Transferee unless expressly assumed by the Transferee as a condition of the transaction. Provided Steward Hillside Rehabilitation Hospital, Inc. has given ONA proper notice under this Article, HRH shall have no obligation to ONA with respect to the requirements of this Article, or other provisions of this Agreement, after the closing of any transaction.

## ARTICLE 31
## Nursing Advisory Committee

A Nursing Advisory Committee shall be established according to the following:

**Section 1.** **Membership.** Three (3) selected by nursing administration, to include the Director of Patient Care Services or designee; three (3) selected by staff nurses, with representation by all shifts, if possible.

**Section 2.** **Meetings.** The chairperson shall be selected by the committee membership and shall be elected annually between the representatives of nursing administration and staff nurses. The meetings shall be quarterly or as called by the chairperson. Minutes of the meetings shall be kept. They shall include recommendations and any dissenting opinions and forwarded through the Director of Patient Care Services for consideration by administration. The agenda for the meetings shall be distributed to the membership before the meetings by the chairperson. Any items to be discussed shall be presented to the chairperson at least five (5) days before the meeting.