IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| STEWARD HEALTH CARE SYSTEM LLC, | § | Case No. 24-90213 (CML) |
| *et al.,* | § | |
| Debtors.[1] | § | (Jointly Administered) |

## DEXT CAPITAL, LLC'S EMERGENCY MOTION FOR RELIEF FROM AUTOMATIC STAY REGARDING LEASED EQUIPMENT, OR ALTERNATIVELY, MOTION FOR ADEQUATE PROTECTION

**Emergency relief has been requested. Relief is requested not later than 10:00 a.m on October 1, 2024. If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on October 1, 2024 at 10:00 am before the Honorable Christopher M. Lopez, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Avenue, Courtroom 401, 4th floor, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection. Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge 's home page. The meeting code is "Judge ". Click the settings icon in the upper right corner and enter your name under the personal information setting. Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge 's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

NOW COMES Dext Capital, LLC (hereinafter "Dext Capital"), and files this its Emergency Motion for Relief from Automatic Stay Regarding Leased Equipment, Or Alternatively, Motion for Adequate Protection (this "Motion"), and in support thereof would respectfully show the Court the following:

## I.
### SUMMARY OF OBJECTION

1.      Dext Capital is an equipment leasing company with multiple equipment leases with many of the Debtors. Debtors have, through a multitude of pleadings, pursued a fast-moving and ever-evolving sale of individual hospital facilities owned by the various Debtors. Dext Capital's leases each cover equipment used at multiple facilities that appear likely to be sold to different buyers in different phases of Debtor's sale process. Dext Capital's leases have not been assumed, rejected, or included in any of the various cure notices filed by Debtor. At the outset of Dext Capital's leases, Dext Capital had knowledge of the initial location of some pieces of said equipment, but Dext Capital did not have knowledge of the location of all pieces of said equipment. Moreover, in either event and given the multi-facility nature of the leases, Dext Capital is not presently certain of exactly which facilities possess its various items of equipment, as much of the equipment is mobile and subject to movement within the Steward Health Care System, despite making inquiry to Debtors of such specific locations. Additionally, although the Debtors continue to utilize Dext Capital's equipment through the course of these cases, Debtors have not been paying Dext Capital in the usual course of the equipment leases.

2.      These factors, among others, make the sales process a precarious and concerning exercise for Dext Capital, with various facilities that are parties to the leases being sold, closed, or abandoned by Debtors. In light of the various closings, sales, and abandonments of the

Debtors' facilities, Dext Capital must know the exact locations of the equipment to determine if any of the equipment is at risk of being lost or wasted. As such, Dext Capital files this Motion on the basis of that uncertainty and seeks to protect its substantial pecuniary interests (in excess of $4,000,000.00) in its leases and equipment and obtain relief from the Automatic Stay to permit Dext Capital to recover or foreclose its interest in the equipment, or alternatively, adequate protection in the form of payment and a reconciliation of equipment location prior to the confirmation of any Chapter 11 Plan by the Debtors as a result of the Debtors' continued use and possession of the equipment.

## II.
### JURISDICTION

3.      This is a proceeding under Bankruptcy Rules 4001 and 9014, seeking relief under Sections 362(d) and 1301(c) of the Bankruptcy Code.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. Section 1334 and Sections 105 and 362 of the Bankruptcy Code.  This is a core proceeding under 28 U.S.C. Section 157(b)(2)(G).

4.      Debtors initiated the current Chapter 11 bankruptcy petition in the Houston Division of the Southern District of Texas on May 6, 2024 (the "Petition Date").

## III.
### FACTS

#### A. THE MOUNTAIN VISTA AGREEMENT

5.      Prior to the Petition Date, on or about September 9, 2021, Debtor Mountain Vista Medical Center, LP ("Mountain Vista") entered into Short Form Rental Agreement No. 0010133651 (the "Mountain Vista Agreement") with Flex Financial, a division of Stryker Sales, LLC ("Flex Financial") for the lease of certain hospital and medical equipment and software described on Exhibit A to the Mountain Vista Agreement (the "Mountain Vista Equipment"),

which Debtors utilize in their business, including both administrative and substantive operations. In conjunction with the Mountain Vista Agreement, Steward Health Care System, LLC executed a Corporate Guaranty (the "Mountain Vista Guaranty"), guaranteeing performance of all of Mountain Vista's obligations under the Mountain Vista Agreement. A true and correct copy of the Mountain Vista Agreement, including all amendments, exhibits, schedules, and addenda thereto, and the Mountain Vista Guaranty are collectively attached hereto as Exhibit "A" and incorporated by reference herein.

6.     In return for the lease of the Mountain Vista Equipment, Mountain Vista promised to make forty-eight (48) monthly payments of $3,112.66 plus all applicable sales taxes and fees. The Mountain Vista Agreement commenced on November 23, 2021, and monthly payments are due on the 23rd day of each month thereafter.

7.     Subsequent to the execution of the Mountain Vista Agreement, on or about September 13, 2021, Flex Financial executed a letter agreement (the "Mountain Vista Assignment"), whereby Flex Financial assigned to Dext Capital all of its right, title, and interest in and to the Mountain Vista Agreement for good and valuable consideration. A true and correct copy of the Mountain Vista Assignment is attached hereto as Exhibit "B" and incorporated herein by reference for all purposes.

8.     According to the terms of the Mountain Vista Agreement, Dext Capital is the owner and lessor of the Mountain Vista Equipment during the term of the Mountain Vista Agreement. The Mountain Vista Equipment was delivered to Mountain Vista's place of business, and Mountain Vista is currently in possession of the Mountain Vista Equipment.

9.     In an abundance of caution and without waiving any ownership rights, Mountain Vista also granted a first priority security interest in the Mountain Vista Equipment to the lessor

under the Mountain Vista Agreement. Such security interest was duly perfected with respect to the Mountain Visa Equipment by the filing of a UCC-1 financing statement with the Delaware Department of State's office. A true and correct copy of the UCC-1 financing statement filed perfecting Dext Capital's interest in the Mountain Vista Equipment is attached hereto as Exhibit "C" and incorporated by reference herein as if fully set forth herein.

10.     As of the Petition Date, Debtors had made all payments due and owing and were not in contractual arrears under the Mountain Vista Agreement. However, Debtors have failed to tender all payments due to Dext Capital under the Mountain Vista Agreement subsequent to the Petition Date and is post-petition arrears in the total amount of $3,371.01 for the month of August, 2024. Moreover, after consideration of all lawful offsets, credits, and payments, the total remaining due to Dext Capital under the Mountain Vista Agreement is $51,765.43. A true and correct copy of the payment history reflecting all payments made by Debtors under the Mountain Vista Agreement as of the Petition Date is attached hereto as Exhibit "D" and incorporated by reference for all purposes.

11.     Since the Petition Date, Debtors and Dext Capital have conferred regarding the relief sought herein and Debtors have represented that they would pay all past amounts due and owing as described above and attempt to provide Dext Capital the locations of the Mountain Vista Equipment. However, to date, Debtors have not paid all monthly lease payments under the Mountain Vista Agreement and the location of the Mountain Vista Equipment has not been provided to Dext Capital.  Upon information and belief, Debtors continue to use the Mountain Vista Equipment in their operations.  The Mountain Vista Equipment is subject to depreciation while in storage and also subject to rapid depreciation while in use.  Further, Debtors are under

an obligation under the Mountain Vista Agreement to properly maintain the Mountain Vista Equipment at all times.

**B. THE BANC OF AMERICA AGREEMENTS**

12.     Prior to the Petition Date, on or about March 12, 2012, Debtor Steward Health Care System LLC, along with multiple other Debtors, entered into Master Lease Agreement Number 23770-90000 (the "Master Lease #1") with Banc of America Leasing & Capital, LLC ("Banc of America") for the lease of certain hospital and medical equipment. A true and correct copy of the Master Lease #1, including all amendments, exhibits, schedules, and addenda thereto, is attached hereto as Exhibit "E" and incorporated by reference herein.

13.     Subsequent to executing the Master Lease #1, Debtor Steward Health Care System LLC, along with multiple other Debtors, entered into two lease schedules with Banc of America that are subject to the terms of the Master Lease #1.

**i. SCHEDULE 046**

14.     On or about May 5, 2021, Debtor Steward Health Care System LLC, along with multiple other Debtors, entered into the first of such relevant schedules that are subject to the terms of the Master Lease #1, which is Schedule to Master Lease Agreement, Schedule Number 046 ("Schedule 046"), for the lease of certain hospital and medical equipment described on Exhibit A to Schedule 046 (the "Schedule 046 Equipment"), which Debtors utilize in their business, including both administrative and substantive operations. A true and correct copy of Schedule 046, including all amendments, exhibits, schedules, and addenda thereto, is attached hereto as Exhibit "F" and incorporated by reference herein.

15.     In return for the lease of the Schedule 046 Equipment, Debtors promised to make sixty (60) monthly payments of $48,408.31. Schedule 046 commenced on May 19, 2021, and monthly payments are due on the 19th day of each month thereafter.

16.     The Schedule 046 Equipment was delivered and received by the Debtors for use in their business operations. Steward Health Care System, LLC signed and executed an Acceptance Notice/Pay Proceeds Authorization on or about May 19, 2021, confirming that the Schedule 046 Equipment had been delivered, received and that all installation or other work necessary prior to the use of the Schedule 046 Equipment had been completed.

17.     Subsequent to the execution of the Master Lease #1 and Schedule 046, on or about May 27, 2021, Banc of America and Dext Capital executed a Specification of Assigned Interest (the "Schedule 046 Assignment"), whereby Banc of America assigned to Dext Capital all of its right, title, and interest in and to the Schedule 046 for good and valuable consideration. A true and correct copy of the Schedule 046 Assignment is attached hereto as Exhibit "G" and incorporated herein by reference for all purposes.

18.     According to the terms of Master Lease #1 and Schedule 046, Dext Capital is the owner and lessor of the Schedule 046 Equipment. Per the documents attached to the Exhibit "F" Schedule 046, the Schedule 046 Equipment was delivered to Debtors' place of business, and Debtors are currently in possession of the Schedule 046 Equipment.

19.     In an abundance of caution and without waiving any ownership rights, Debtors also granted a first priority security interest in the Schedule 046 Equipment to the lessor under the Master Lease #1 and Schedule 046. Such security interest was timely and duly perfected with respect to the Schedule 046 Equipment by the filing of UCC-1 financing statements with the Delaware Department of State's office. A true and correct copy of the UCC-1 financing

statements filed perfecting Dext Capital's interest in the Schedule 046 Equipment are collectively attached hereto as Exhibit "H" and incorporated by reference herein as if fully set forth herein.

20.     As of the Petition Date, Debtors had made all payments due and owing and were not in contractual arrears under Schedule 046. However, Debtors have failed to tender all payments due to Dext Capital under Schedule 046 subsequent to the Petition Date and post-petition arrears in the total amount of $193,633.24 for months of May, 2024, June, 2024, July, 2024, and August, 2024. After consideration of all lawful offsets, credits, and payments, the total remaining due to Dext Capital under Schedule 046 as of the Petition Date was $1,161,799.44. A true and correct copy of the payment history reflecting all payments made by Debtors under Schedule 046 as of the Petition Date is attached hereto as Exhibit "I" and incorporated by reference for all purposes.

21.     After the expiration of sixty (60) days from the Petition Date, Debtors and Dext Capital have conferred regarding the relief sought herein and Debtors have represented that they would pay all past amounts due and owing as described above and attempt to provide Dext Capital the locations of the Schedule 046 Equipment. However, to date, Debtors have not paid all monthly lease payments under the Schedule 046 and the location of the Schedule 046 Equipment has not been provided to Dext Capital. Upon information and belief, Debtors continue to use the Schedule 046 Equipment in their operations.  The Schedule 046 Equipment is subject to depreciation while in storage and also subject to rapid depreciation while in use.  Further, Debtors are under an obligation under the Master Lease #1 and Schedule 046 to properly maintain the Schedule 046 Equipment at all times.

**ii. SCHEDULE 047**

22.     On or about November 23, 2021, Debtor Steward Health Care System LLC, along with multiple other Debtors, entered into the second of such schedules that are subject to the terms of the Master Lease #1, which is Schedule to Master Lease Agreement, Schedule Number 047 ("Schedule 047"), for the lease of certain hospital and medical equipment described on Exhibit A to Schedule 047 (the "Schedule 047 Equipment"), which Debtors utilize in their business, including both administrative and substantive operations. A true and correct copy of Schedule 047, including all amendments, exhibits, schedules, and addenda thereto, is attached hereto as Exhibit "J" and incorporated by reference herein.

23.     In return for the lease of the Schedule 047 Equipment, Debtors promised to make sixty (60) monthly payments of $66,132.76. Schedule 047 commenced on December 8, 2021, and monthly payments are due on the 8th day of each month thereafter.

24.     The Schedule 047 Equipment was delivered and received by the Debtors for use in their business operations. Steward Health Care System, LLC signed and executed an Acceptance Notice/Pay Proceeds Authorization on or about December 8, 2021, confirming that the Schedule 047 Equipment had been delivered, received and that all installation or other work necessary prior to the use of the Schedule 047 Equipment had been completed.

25.     Subsequent to the execution of the Master Lease #1 and Schedule 047, on or about December 8, 2021, Banc of America and Dext Capital executed a Specification of Assigned Interest (the "Schedule 047 Assignment"), whereby Banc of America assigned to Dext Capital all of its right, title, and interest in and to Schedule 047 for good and valuable consideration. A true and correct copy of the Schedule 047 Assignment is attached hereto as Exhibit "K" and incorporated herein by reference for all purposes.

26.     According to the terms of Master Lease #1 and Schedule 047, Dext Capital is the owner and lessor of the Schedule 047 Equipment. Per the documents attached to the Exhibit "J" Schedule 047, the Schedule 047 Equipment was delivered to Debtors' place of business, and Debtors are currently in possession of the Schedule 047 Equipment.

27.     In an abundance of caution and without waiving any ownership rights, Debtors also granted a first priority security interest in the Schedule 047 Equipment to the lessor under the Master Lease #1 and Schedule 047. Such security interest was timely and duly perfected with respect to the Schedule 047 Equipment by the filing of UCC-1 financing statements with the Delaware Department of State's office. A true and correct copy of the UCC-1 financing statements filed perfecting Dext Capital's interest in the Schedule 047 Equipment are collectively attached hereto as Exhibit "L" and incorporated by reference herein as if fully set forth herein.

28.     As of the Petition Date, Debtors had made all payments due and owing and were not in contractual arrears under Schedule 047. However, Debtors have failed to tender all payments due to Dext Capital under Schedule 047 subsequent to the Petition Date and post-petition arrears in the total amount of $264,531.04 for months of May, 2024, June, 2024, July, 2024, and August, 2024. Moreover, after consideration of all lawful offsets, credits, and payments, the total remaining due to Dext Capital under Schedule 047 as of the Petition Date was $2,116,248.00. A true and correct copy of the payment history reflecting all payments made by Debtors under Schedule 047 as of the Petition Date is attached hereto as Exhibit "M" and incorporated by reference for all purposes.

29.     After the expiration of sixty (60) days from the Petition Date, Debtors and Dext Capital have conferred regarding the relief sought herein and Debtors have represented that they

would pay all past amounts due and owing as described above and attempt to provide Dext Capital the locations of the Schedule 047 Equipment. However, to date, Debtors have not paid all monthly lease payments under the Schedule 047 and the location of the Schedule 047 Equipment has not been provided to Dext Capital.  Upon information and belief, Debtors continue to use the Schedule 047 Equipment in their operations.  The Schedule 047 Equipment is subject to depreciation while in storage and also subject to rapid depreciation while in use.  Further, Debtors are under an obligation under the Master Lease #1 and Schedule 047 to properly maintain the Schedule 047 Equipment at all times.

## C. THE MELBOURNE AGREEMENT

30.    On or about June 21, 2022, Debtor Steward Melbourne Hospital, Inc. ("Melbourne") entered into Master Lease Agreement Number 0002325 (the "Master Lease #2") with Dext Capital for the lease of certain hospital and medical equipment. In conjunction, Steward Health Care System LLC executed a Continuing Guaranty (the "Melbourne Master Guaranty"), guaranteeing performance of all of Melbourne's obligations under the Master Lease #2.  A true and correct copy of the Master Lease #2, including all amendments, exhibits, schedules, and addenda thereto, and the Melbourne Master Guaranty are collectively attached hereto as Exhibit "O" and incorporated by reference herein.

31.    In addition to executing Master Lease #2, on or about September 21, 2022, Melbourne entered into Equipment Lease Schedule Number 100-0002325-001 (the "Melbourne Schedule") with Dext Capital for the lease of certain hospital and medical equipment described on Exhibit A to the Melbourne Schedule (the "Melbourne Equipment"), which Debtors utilize in their business, including both administrative and substantive operations. Additionally, the Melbourne Schedule's terms are subject to and in addition to the terms of the Master Lease #2. A

true and correct copy of the Melbourne Schedule, including all amendments, exhibits, schedules, and addenda thereto, is attached hereto as Exhibit "P" and incorporated by reference herein.

32.     In return for the lease of the Melbourne Equipment, Melbourne promised to make forty-eight (48) monthly payments of $14,388.31 plus all applicable sales taxes and fees. The Melbourne Schedule commenced on December 21, 2022, and monthly payments are due on the 21st day of each month thereafter.

33.     The Melbourne Equipment was delivered and received by Melbourne for use in their business operations. Melbourne signed and executed Delivery and Acceptance Certificate on or about September 21, 2022, confirming that the Melbourne Equipment had been delivered, received and that all installation or other work necessary prior to the use of the Melbourne had been completed.

34.     According to the terms of Master Lease #2 and Melbourne Schedule, Dext Capital is the owner and lessor of the Melbourne Equipment. Per the documents attached to Exhibit "P", the Melbourne Equipment was delivered to Debtors' place of business, and Debtors are currently in possession of the Melbourne Equipment.

35.     In an abundance of caution and without waiving any ownership rights, Melbourne also granted a first priority security interest in the Melbourne Equipment to the lessor under the Master Lease #2 and Melbourne Schedule. Such security interest was timely and duly perfected with respect to the Melbourne Equipment by the filing of UCC-1 financing statements with the Delaware Department of State's office on December 14, 2022 as filing number 20220365302. A true and correct copy of the UCC-1 financing statements filed perfecting Dext Capital's interest in the Melbourne Equipment are collectively attached hereto as Exhibit "Q" and incorporated by reference herein as if fully set forth herein.

36.     As of the Petition Date, Debtors were in contractual arrears in the amount of $48,782.51, of which Debtors have paid $15,301.61 since the Petition Date. Debtors have also failed to tender all payments due to Dext Capital under the Melbourne Schedule subsequent to the Petition Date and are post-petition arrears in the total amount of $61,206.44 for months of May, 2024, June, 2024, July 2024, and August 2024. Moreover, after consideration of all lawful offsets, credits, and payments, the total remaining due to Dext Capital under the Melbourne Schedule is $623,328.09. A true and correct copy of the payment history reflecting all payments made by Debtors under the Melbourne Schedule as of the Petition Date is attached hereto as Exhibit "R" and incorporated by reference for all purposes.

37.     After the expiration of sixty (60) days from the Petition Date, Debtors and Dext Capital have conferred regarding the relief sought herein and Debtors have represented that they would pay all past amounts due and owing as described above and attempt to provide Dext Capital the locations of the Melbourne Equipment. However, to date, Debtors have not paid all monthly lease payments under the Melbourne Schedule and the location of the Melbourne Equipment has not been provided to Dext Capital.  Upon information and belief, Debtors continue to use the Melbourne Equipment in their operations.  The Melbourne Equipment is subject to depreciation while in storage and also subject to rapid depreciation while in use. Further, Debtors are under an obligation under the Master Lease #2 and Melbourne Schedule to properly maintain the Melbourne Equipment at all times.

**D. FACTS RELATED TO THE MOUNTAIN VISTA AGREEMENT, MOUNTAIN VISTA GUARANTY, MASTER LEASE #1, SCHEDULE 046, SCHEDULE 047, MASTER LEASE #2, MELBOURNE MASTER GUARANTY, AND THE MELBOURNE SCHEDULE**

38.     For the purposes of this Motion, the term "Agreements" shall collectively refer to the Mountain Vista Agreement, Mountain Vista Guaranty, Master Lease #1, Schedule 046,

Schedule 047, Master Lease #2, Melbourne Master Guaranty, and The Melbourne Schedule. Similarly, the term "Leased Equipment" shall collectively refer to the Mountain Vista Equipment, Schedule 046 Equipment, Schedule 047 Equipment, and Melbourne Equipment.

39.     At the time of filing this Motion, it is unclear whether Debtors are properly storing and maintaining the Leased Equipment. The Leased Equipment continues to depreciate in value as a result of the Debtors' use of the Leased Equipment for which Dext Capital is not being compensated by Debtors through pre-confirmation adequate protection payments.

## IV.
## RELIEF FROM STAY

40.     By reason of the foregoing, Dext Capital requests the Court lift the automatic stay so Dext Capital may exercise all of its rights and remedies against the Leased Equipment under state law, including, inter alia, foreclosing its ownership and/or first priority security interests in the Leased Equipment.  Under Section 362(d)(1), upon request and after notice and hearing, the bankruptcy court shall lift the automatic stay "for cause." 11 U.S.C. § 362(d)(1). A court shall grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" 11 U.S.C. § 362(d)(1). "Cause" is not defined in title 11, which therefore requires bankruptcy courts to determine whether cause exists on a case-by-case basis. *In re Reitnauer*, 152 F.3d 341, 343, n.4 (5th Cir. 1998).

41.     In the instant matter, no adequate protection has been offered by the Debtors to Dext Capital.  If adequate protection cannot be offered, such use, sale or lease of the collateral must be prohibited."  3 Collier On Bankruptcy ¶ 363.05[2] (16th ed. 2016); *In re First South Sav. Assoc.*, 820 F.2d 700, 710 (5th Cir. 1987) (the focus of adequate protection "is protection of the secured creditor from diminution in the value of its collateral during the reorganization process."); *In re Bufford*, 343 B.R. 827, 838 (Bankr. N.D. Tex. 2006) ("adequate protection must

be given to secured creditors, or they may ask that the automatic stay imposed by § 362(a) be lifted"); 3 Collier ¶ 363.05[2]. "[A]n interest is not adequate protected if the security is depreciating during the term of the stay." *United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 369 (1988). "[I]n proceeding arising under § 362(d)(1), the debtor must prove that the secured creditor's interest is adequately protected, or the automatic stay will lift." *In re Timbers of Inwood Forest Assoc., Ltd.*, 793 F.2d 1380, 1388 (5th Cir. 1986), affirmed, 484 U.S. 365 (1988).

42.     Cause exists to lift the automatic stay pursuant to 11 U.S.C. §362(d)(1) as to the Leased Equipment because Dext Capital is the owner of the Leased Equipment and Debtors have failed to tender post-petition rental payments pursuant to 11 U.S.C. § 365(d)(5). Specifically, 11 U.S.C. § 365(d)(5) states as follows:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f). Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

Certainly, Debtors, as a debtor-in-possession, is required to remit payments to Dext Capital under the Agreements until the Agreements are assumed or rejected, neither of which has occurred.

43.     In addition to the foregoing, cause exists because the Leased Equipment continues to depreciate in value while in the Debtors' possession. The Leased Equipment requires ongoing

maintenance and proper storage.  Even if the Leased Equipment is being properly maintained and stored, the Leased Equipment will nevertheless continue to depreciate as a result of ongoing use by the Debtors.  The Debtors' failure to timely tender post-petition payments only serves to exacerbate the total arrearages under the Agreements while at the same time failing to compensate Dext Capital for any continuing depreciation that continues to accrue.  Without an order lifting the automatic stay or conditioning the automatic stay upon timely post-petition lease payments by the Debtors in full, Dext Capital's interest in the Leased Equipment is not adequately protected.

44.    Moreover, subsection (b)(1) of 11 U.S.C. § 365 requires, when there is a pre-existing default in the payments required under a lease that any arrearage or other pecuniary loss be cured at the time of the assumption or that the debtor provide adequate assurance that such arrearage and other pecuniary loss will be promptly cured and future performance adequately assured.  11 U.S.C. § 365(b)(1); *see In re Texas health Enterprises, Inc.*, 2003 WL 21770822 (5th Cir. 2003).  What constitutes a "prompt" cure as required by § 365(b)(1)(A) generally depends upon the facts and circumstances of each case. *In re PRK Enterprises, Inc.*, 235 B.R. 597 (Bankr. E.D. Tex. 1999); *In re Embers 86th Street, Inc.,* 184 B.R. 892, 900 (Bankr. S.D.N.Y. 1995).

45.    Additionally, the automatic stay should be lifted pursuant to 11 U.S.C. § 362(d)(2) of the Bankruptcy Code because the Debtors have no equity in the Leased Equipment after consideration of Dext's ownership of the Leased Equipment and the total indebtedness due and owing collectively under the Agreements, and the Leased Equipment is not necessary for Debtor's effective reorganization.

46.    Alternatively, to the extent the Court does not lift the automatic stay, Dext Capital seeks an order requiring the Debtors to adequately protect Dext Capital's interest in the Leased

Equipment as set forth herein by conditioning the Debtors' continued use of the Leased Equipment as set forth herein, specifically conditioned upon Debtors' payment of all of the Agreements' monthly rentals to Dext. Dext Capital further requests that if the Court does not lift the automatic stay, an order be entered prohibiting the Debtors from cannibalizing, abandoning, or otherwise selling or transferring any of the Leased Equipment, without the advance written agreement of Dext Capital.

47.     Additionally, as the Leased Equipment is leased by multiple of the Debtors and is located at numerous different hospitals, Dext Capital does not firmly know where all of the Leased Equipment is located. Thus, to the extent the Court does not lift the automatic stay, Dext Capital also requests an order requiring the Debtors to adequately protect Dext Capital's interest in the Leased Equipment by marshalling the location and condition of all of the Leased Equipment so that Dext Capital may itself ensure the protection of its interest throughout the ongoing complicated sales process of the Debtors assets.

48.     Dext Capital requests an order granting its motion for relief from automatic stay, and co-debtor stay (if applicable), if such order should be entered, be effective immediately upon entry and that the provisions of Rule 4001(a)(3) should be waived and Dext Capital be permitted to immediately enforce and implement the order granting relief from the automatic stay.

49.     To the extent the Court determines the Debtors have any equity in the Leased Equipment, Dext Capital further requests the reimbursement of its attorneys' fees for the filing of this Motion.

## V.
### REQUEST FOR EMERGENCY CONSIDERATION

50.     Dext Capital respectfully requests emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1(i). The Leased Equipment is located at numerous

facilities of the Debtors and the Debtors continue to use the Leased Equipment in their operations during the current bankruptcy proceedings.  Dext Capital has had good-faith, informal communications with Debtors' requesting post-petition rental payments under the Agreements and has even provided Debtors' with the corresponding invoices for such post-petition rental payments. However, Debtors have failed to tender such post-petition rental payments pursuant to 11 U.S.C. § 365(d)(5) to Dext Capital, an executory contract holder, in the ordinary course. Moreover, despite Dext Capital's request to the Debtors in light of various closings, abandonments, and sales of the Debtors' facilities, the Debtors have not provided Dext Capital the exact locations that each item of the Leased Equipment is located. If this Motion were heard on a non-emergency basis, it may not be heard until October, causing an even longer delay in Dext Capital's receipt of post-petition rental payment and risking loss of the Leased Equipment through the closing, abandonment, and sale of the Debtors' facilities. Therefore, Dext Capital requests that the Court consider and approve the relief requested in this Motion on an emergency basis.

## VI.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, Dext Capital requests that this matter be set for hearing if not objection is timely filed by any party, as provided in Sections 362(e) and 1301(d) of the Bankruptcy Code, and that the Court enter an Order granting Dext Capital relief from the Automatic Stay to permit Dext Capital to foreclose its lien on the Leased Equipment as prayed for in this Motion, award Dext Capital its attorneys' fees to the extent there exists any equity in the Leased Equipment, or alternatively, grant Dext Capital adequate protection prior to the confirmation of any Chapter 11 Plan by the Debtors as a result of the Debtors' continued use and possession of the Leased Equipment. Dext Capital further requests that if the automatic stay

is not lifted, the Court enter an order prohibiting the Debtors from cannibalizing or otherwise selling or transferring any of the Leased Equipment, without the advance written agreement of Dext Capital. Dext Capital also requests the Court grant to Dext Capital such other and further relief to which it may be justly entitled.

**Respectfully submitted,**

PADFIELD & STOUT, L.L.P.
100 Throckmorton Street, Suite 700
Fort Worth, Texas 76102
(817) 338-1616 phone
(817) 338-1610 fax

/s/ *Matthew D. Giadrosich*
Mark W. Stout
State Bar I.D. #24008096
mstout@padfieldstout.com
Matthew D. Giadrosich
State Bar I.D. 24074274
mdg@padfieldstout.com
Christopher Arisco
State Bar I.D. #24064830
carisco@padfieldstout.com

*Attorneys for Dext Capital, LLC*

## CERTIFICATE OF CONFERENCE

I certify that on multiple occasions I have conferred with counsel for Debtors regarding the relief sought herein, particularly the unpaid lease payments and equipment locations, but, to date neither the lease payments nor the equipment location(s) have been received. Most recently I conferred with counsel for Debtors on September 11, 2024, and he indicated he would continue to investigate the payments and locations, but is opposed to the relief sought in this Motion. Therefore, it is presented to the court for determination.

/s/ *Matthew D. Giadrosich*
Matthew D. Giadrosich

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 19, 2024, a true and correct copy of the foregoing document was served by electronic mail via the Court's CM/ECF system to all parties authorized to receive electronic notices.


<u>/s/ *Matthew D. Giadrosich*</u>
Matthew D. Giadrosich