IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM LLC, *et al.*, | § § § § | Case No. 24-90213 (CML) |
| | § | (Jointly Administered) |
| Debtors.[1] | § § | |

**OBJECTION TO
COMMONWEALTH OF PENNSYLVANIA'S
EMERGENCY REQUEST: (A) FOR STATUS
CONFERENCE AND (B) MOTION FOR CONTINUANCE OF NOTICE
DEADLINE REGARDING SHARON REGIONAL MEDICAL CENTER**

Steward Health Care System LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), submit this objection (the "**Objection**") to the *Commonwealth of Pennsylvania's Emergency Request for: (A) Status Conference, and (B) Motion for Continuance of Notice Deadline Regarding Sharon Regional Medical Center* (Docket No. 3337) (the "**Motion**"), filed by the Commonwealth of Pennsylvania (the "**Commonwealth**"), and the joinder thereto filed by Meadville Medical Center ("**Meadville**") (Docket No. 3348), and respectfully represent as follows:

**Preliminary Statement**

1. Since the commencement of these chapter 11 cases, the Debtors have remained focused on maintaining operations at their hospitals, with the aim of selling each of their hospitals to new operators for the benefit of patients, employees, and the communities they serve. Sharon Regional Medical Center in Mercer County, Pennsylvania ("**Sharon Hospital**") is no

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

exception. There is no question that the Debtors have worked with the Commonwealth and Meadville to explore a potential sale transaction—well beyond the timeline established under the global bidding procedures (Docket No. 626)—in an effort to avoid a closure of Sharon Hospital.

2. However, in light of the circumstances of these chapter 11 cases, the Debtors require certainty as to the path forward for Sharon Hospital. As of the date hereof, Sharon Hospital is only one of two of the Debtors' hospitals facilities that has not yet been transferred to a new operator,[2] and neither the Commonwealth nor Meadville have demonstrated any degree of reasonable certainty that they will be able to consummate a sale transaction to acquire Sharon Hospital, including the acquisition of the underlying real property owned by Medical Properties Trust, Inc. ("**MPT**") despite having months to reach an agreement.

3. To be clear, the Debtors have not made a determination to close Sharon Hospital, and that issue is not currently before the Court. Instead, the issue before the Court is whether the Debtors can be prevented and enjoined from exercising their business judgment and following procedures approved by this Court to file a notice seeking authority to close Sharon Hospital, if they determine it is necessary or appropriate to do so.

4. For the reasons set forth herein, the Debtors respectfully submit that the Commonwealth's Motion should be denied.

## Background

### I. Facility Closure Procedures

5. On July 26, 2024, the Debtors filed an emergency motion (Docket No. 1711) (the "**Facility Closure Procedures Motion**") seeking authority to, among other things,

---

[2] The other remaining hospital is St. Luke's Behavioral Health in Phoenix, Arizona, which is currently being operated by an interim manager pursuant to the *Order Supplementing Global Settlement Order to Authorize Debtors to Designate Interim Manager for St. Luke's Behavioral Health* (Docket No. 2989).

2

implement facility closure procedures (the "**Facility Closure Procedures**") if the Debtors determine in their business judgment to close a facility. The Facility Closure Procedures provide a streamlined process for the Court to consider a proposed facility closure in a timely manner that prioritizes patient safety, which includes, among other things (i) specific notice requirements, (ii) objection procedures, and (iii) a process for having the Debtors' request to close any facility heard by the Bankruptcy Court. Specifically, the Facility Closure Procedures provide that the Debtors may file a notice (a "**Facility Closure Notice**") to close identified facilities setting forth, among other things, (i) the timeline for closure of such facility, (ii) the plan for treatment of employees, (iii) the plan for the transfer and discharge of patients, and (iv) the plan for the protection, transfer and storage of medical records. Pursuant to the Facility Closure Procedures, parties objecting to a proposed facility closure must file and serve a written objection no later than ten (10) days after the Facility Closure Notice has been filed with the Court. In the event of an unresolved objection, the Facility Closure Procedures require the Debtors to file a notice of a hearing for the Court to consider the unresolved objection.

6. The Commonwealth had an influence on the development and approval of the Facility Closure Procedures. Specifically, on July 31, 2024, the Commonwealth filed an initial objection to the Facility Closure Procedures Motion (Docket No. 1767), arguing that (i) the three (3) day objection deadline proposed in the Facility Closure Procedures Motion was insufficient, and (ii) the Facility Closure Procedures Motion should be denied or, alternatively, the Commonwealth should be exempted from and carved out of the Debtors' proposed Facility Closure Procedures. Following discussions with the Commonwealth, and a hearing held on July 31, 2024, the Debtors submitted a revised proposed order approving the Facility Closure

3

Procedures on an interim basis that provided for a seven (7) day objection period, which was approved by the Court on August 2, 2024 (Docket No. 1850).

7. On August 22, 2024, the Bankruptcy Court held a hearing to consider the Facility Closure Procedures on a final basis. Again, the Commonwealth objected to the relief requested in the Closure Procedures Motion on a final basis (Docket No. 2112), including that a sixty (60) day period was required under Pennsylvania law before the Debtors could issue a Facility Closure Notice and asking the Court to order the Debtor to cease threats of closure for Sharon Hospital. At the hearing, the Commonwealth requested that the Facility Closure Procedures not be effective and enforceable until August 31, 2024, two weeks after the effective date for the remainder of the Debtors' hospitals. Although the Court ultimately delayed the effective date with respect to Sharon Hospital, the Court conveyed to the Commonwealth that such delay was a one-time extension, stating "I will not grant it. It is a one-time extension that will be granted, and it will only be granted with respect to Sharon…" Hr'g Tr. 116:13-17, Aug. 22, 2024, ECF No. 2215. Following the hearing, the Bankruptcy Court approved the Facility Closure Procedures on a final basis (Docket No. 2146) (the "**Facility Closing Procedures Order**"). The Debtors also resolved an informal request by the Commonwealth by lengthening the objection deadline for any Facility Closure Notice to ten (10) calendar days.

## II. Funding Stipulation with the Commonwealth

8. On August 16, 2024, Meadville submitted a letter of intent to the Debtors to acquire Sharon Hospital, contingent on financial support to be provided by various third parties and by the Commonwealth to the Debtors.

9. However, the Debtors required funding to extend the runway for which these negotiations could take place. To support Sharon Hospital while Meadville pursued its

acquisition, on September 10, 2024, the Debtors and the Commonwealth entered into the *Stipulation Regarding Funding by the Commonwealth of Pennsylvania for the Potential Transition and Sale of Sharon Regional Medical Center* (Docket No. 2422) (the "**Funding Stipulation**"). The Funding Stipulation provided that the Commonwealth would pay Sharon Hospital $1.5 million per month for three months for the purposes of maintaining operations at Sharon Hospital in the ordinary course of business. In consideration for the payments, the Debtors agreed to continue operations at Sharon Hospital and to not issue any Facility Closure Notice until the earlier of (a) delivery by the Commonwealth of a Termination Notice (as defined herein), or (b) December 2, 2024. *See* Funding Stipulation ¶ 5. The Funding Stipulation also required that in the event the Commonwealth determined that a transaction with Meadville or another purchaser approved by the Commonwealth to purchase Sharon Hospital was not able to close on or before December 1, 2024, the Commonwealth would provide a written notice to the Debtors and their counsel (such notice, a "**Termination Notice**"). *See* Funding Stipulation ¶ 4.

10. Since the effective date of the Funding Stipulation, and notwithstanding delays in receipt of payment from the Commonwealth, the Debtors have performed their obligations thereunder and continued to cooperate with the Commonwealth's diligence and other requests related to Sharon Hospital—including with respect to a potential sale transaction, as well as financial diligence relating to Sharon Hospital's go-forward funding needs.

11. During the course of the negotiations for a potential sale transaction, the Debtors have consistently advised the Commonwealth and Meadville that their ability to implement a sale transaction would be contingent on, among other things, a resolution with MPT regarding the treatment of the real estate underlying the hospital. To that end, on November 12, 2024, Court approved a stipulation among the Debtors, the Commonwealth, and the Christian H.

Buhl Legacy Trust (the "**Buhl Trust**") granting the Commonwealth and the Buhl Trust relief from the automatic stay to commence a proceeding against MPT of Sharon-Steward, LLC and MPT related to title to the real property underlying Sharon Hospital. Nevertheless, to date, there is no agreement between Meadville or the Commonwealth, on one hand, and MPT on the other hand regarding the treatment of the real estate, and the Debtors have no assurances or expectation that a resolution can be achieved.

12. In the meantime, the Debtors continue to be faced with significant liquidity constraints, and are in the process of winding-down their remaining operations following the sales of substantially all of their assets. Given these factors, the Debtors require flexibility to make business judgments regarding the use of resources that are best for the Debtors' estates and that also ensure the safety of the patients at the Debtors' remaining operations.

## Objection

### I. The Commonwealth Provides No Legal Basis in Support of its Motion for Relief from a Final Order and to Enjoin the Debtors

13. The Motion is procedurally improper. To the extent the Commonwealth objects to the closing of Sharon Hospital, it should do so by filing an objection following the filing of a Facility Closure Notice by the Debtors (should one be filed). By the Motion, the Commonwealth asks the Court to disregard the Facility Closure Procedures—approved by the Court on a final basis (and not appealed)—and to prevent the Debtors from issuing a Facility Closure Notice, should they determine it is necessary to do so for Sharon Hospital.

14. Federal Rule of Civil Procedure 60(b) requires a movant to provide grounds for relief from a final order, such as newly discovered evidence, fraud, or mistake. *See* F.R.C.P. 60(b). The Commonwealth has failed to do so, and instead has asserted unsubstantiated claims that a Facility Closure Notice would be regarded among healthcare professionals as a "death knell"

for the hospital.  Motion ¶ 26.  Absent any valid legal justification for relief from the Facility Closure Procedures Order, the Commonwealth's Motion seeking relief from the Facility Closure Procedures should be denied.

15.    Further, the Commonwealth was fully aware of and had ample opportunity to object to the Facility Closure Procedures.  The Commonwealth filed two objections which it also presented the Court with respect to the Facility Closure Procedures.  The Commonwealth's objections ultimately resulted in the Debtors delaying the procedures' application to Sharon Hospital and an extension of the closure objection deadline to ten (10) days.  At no point in time since the Facility Closure Procedures Order was entered on August 22, 2024 has the Commonwealth appealed or expressed a desire to appeal the Facility Closure Procedures Order.  Instead, the Commonwealth has taken no steps to obtain relief from the Facility Closure Procedures Order.

16.    Moreover, the Commonwealth seeks to delay the Debtors' filing of any Facility Closure Notice for Sharon Hospital—essentially seeking a temporary injunction against the Debtors.  However, again, the Commonwealth fails to demonstrate any legal basis for such relief, and its request is procedurally improper.  It is black letter law that an injunction is properly asserted through an adversary proceeding under Bankruptcy Rule 7001(7).  *See* Bankruptcy Rule 7001(7); *see also Matter of Zale Corp.*, 62 F.3d 746, 766 (5th Cir. 1995) ("[T]he bankruptcy court failed to conduct an adversary proceeding as required by Rule 7001 for the entry of a § 105 temporary injunction."); *In re Fieldwood Energy LLC*, No. 20-33948, 2022 WL 385919, at *5 (Bankr. S.D. Tex. Feb. 8, 2022) ("Federal Rule of Bankruptcy Procedure 7001 requires that an injunction must be pursued by adversary proceeding unless a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief sought."); *In re RGV Smiles by Rocky L. Salinas D.D.S.*

7

*P.A.*, 626 B.R. 278, 291 (Bankr. S.D. Tex. 2021) ("This Court will not entertain a request for injunctive relief that rides in under the cover of darkness on the back of a contested matter where Rule 7001 requires an adversary proceeding."); *In re Turkey Leg Hut & Co. LLC*, 659 B.R. 539, 543 (Bankr. S.D. Tex. 2024) ("Federal Rule of Bankruptcy Procedure 7001(7) specifically provides that an adversary proceeding is the appropriate vehicle for obtaining an injunction or any other equitable relief.");

17. Accordingly, the Commonwealth's Motion should be denied.

## II. The Commonwealth Should Not Be Permitted to Delay or Enjoin The Debtors from Exercising Their Business Judgment

18. The Commonwealth cannot be permitted to stop the Debtors from seeking authority to close Sharon Hospital, if they determines it is necessary or appropriate to do so. By the Motion, the Commonwealth is asking to be excepted from the terms and timeline it previously negotiated in the Funding Stipulation, which specifically provides that the Debtors would be permitted to file a Facility Closure Notice on or after December 2, 2024. *See* Funding Stipulation ¶ 5. In spite of the Commonwealth's disingenuous allegation that the Debtors surprised them with a "last minute funding request" and possibility of Sharon Hospital's closure, the Funding Stipulation always contemplated the Debtors' ability to issue a Facility Closure Notice as soon as December 2. The Debtors simply do not have the liquidity or resources to continue to operate Sharon Hospital's money-losing operations in perpetuity.

19. Although the Commonwealth alleges that a Facility Closure Notice may be disruptive to Sharon Hospital, the Commonwealth ignores the risk they are placing on the Debtors if they are forced to continue operating it. The Debtors obtained authority of the Facility Closure Procedures so that they would have the ability to quickly cease hospital operations in an efficient manner in order to protect patient safety. Any interruption or delay in the Debtors' ability to

8

efficiently close a hospital, including Sharon Hospital, could have serious consequences in this regard.  Thus, it is important that the Court permit the Debtors flexibility to act in accordance with the Facility Closure Procedures.

20. Accordingly, the Commonwealth's Motion should be denied because it seeks to prevent the Debtors from acting in accordance with the Funding Stipulation entered into with the Commonwealth and exercising their business judgment.

## Reservation of Rights

21. The Debtors reserve all rights to supplement or add to the legal and factual arguments raised in this Objection, on any basis whatsoever, at a future date.  Nothing herein shall be interpreted as an admission that any claim described herein is valid, and the Debtors reserve all rights with respect thereto.

## Conclusion

22. For the reasons set forth herein, the Commonwealth's Motion should be denied.

WHEREFORE, the Debtors respectfully requests that the Court deny the relief requested in the Motion.

Dated: December 3, 2024
      Houston, Texas

/s/ Clifford W. Carlson

**WEIL, GOTSHAL & MANGES LLP**
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
Stephanie N. Morrison (24126930)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Gabriel.Morgan@weil.com
        Clifford.Carlson@weil.com
        Stephanie.Morrison@weil.com

-and-

**WEIL, GOTSHAL & MANGES LLP**
Jeffrey D. Saferstein (*pro hac vice* pending)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Jeffrey.Saferstein@weil.com

-and-

**WEIL, GOTSHAL & MANGES LLP**
David J. Cohen (admitted *pro hac vice*)
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone:  (305) 577-3100
Facsimile:  (305) 374-7159
Email:   DavidJ.Cohen@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

**LATHAM & WATKINS LLP**
Ray C. Schrock (*pro hac vice* pending)
Candace M. Arthur (*pro hac vice* pending)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:   Ray.Schrock@lw.com
        Candace.Arthur@lw.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

## Certificate of Service

I hereby certify that on December 3, 2024, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

          /s/ Clifford W. Carlson
          Clifford W. Carlson