## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM LLC, *et al.*,[1] | Case No. 24-90213 (CML) |
| Debtors. | (Jointly Administered) |

## THE COMMONWEALTH OF MASSACHUSETTS'
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## TO ALLOW FOR THE SETOFF OF MUTUAL OBLIGATIONS
## IF AND TO THE EXTENT THAT RECOUPMENT IS NOT AVAILABLE

**THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY. THERE WILL BE A HEARING ON THIS MATTER ON JANUARY 7, 2025 AT 10:00 AM IN COURTROOM 401, 515 RUSK, HOUSTON, TX 77002.**

The Commonwealth of Massachusetts ("Massachusetts" or the "Commonwealth"), by and through the Executive Office of Health and Human Services of the Commonwealth of

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

Massachusetts ("EOHHS") and the Attorney General of the Commonwealth of Massachusetts (the "AGO"), hereby submits this motion (the "Motion")[2] for the entry of an order, substantially in the form attached hereto as **Exhibit B**, granting relief from the automatic stay to allow the Commonwealth to set off mutual obligations if and to the extent that recoupment is not available.

## PRELIMINARY STATEMENT

1.    The Commonwealth has worked with Steward Health Care System LLC and its debtor affiliates (collectively, "Steward" or the "Debtors") and other participating parties, for a smooth transition of the operations and real property of the following Massachusetts hospitals (the "Massachusetts Going Concern Hospitals"): Saint Elizabeth's Medical Center,[3] Saint Anne's Hospital, Good Samaritan Medical Center, Holy Family Hospital, including the Haverhill and Methuen campuses, and Morton Hospital.  Although delays in finalizing documents pushed the closing date for the sales of these hospitals to the end of September, the sales of the Massachusetts Going Concern Hospitals have closed and the sale of the Stewardship medical practices and accountable care organization was finalized on October 30, 2024.

2.    The journey to get to new operators for Steward's hospitals began before these cases were commenced when Steward approached the Commonwealth to request funding to enable Steward to maintain its Massachusetts hospital operations.  EOHHS arranged for advances to be made to Steward with the express understanding that EOHHS would be entitled to recoup such advances.  While EOHHS was able to recoup some of the amounts advanced, a large balance remained outstanding when the Debtors commenced these cases.

---

[2]  The Motion relates to EOHHS claims only.  The AGO reserves its right to seek stay relief in the future, as applicable.

[3]  The Commonwealth took the real property under Saint Elizabeth's Medical Center by eminent domain in order to prevent a public health emergency and enable a new operator (Boston Medical Center) to continue hospital operations.

3.      The Commonwealth was concerned with the Debtors' tenuous financial situation from the beginning of these cases.  The debtor-in-possession financings extended to the Debtors were so limited in amounts and contained budgetary constraints with respect to Steward's Massachusetts operations that provided the Debtors little time to conclude sales of their hospitals. EOHHS deferred seeking full recoupment of the pre-petition amounts to make sure that the Debtors had adequate resources to operate through the sale process.  However, as the sale process dragged on, it became apparent that additional funding would be needed to sustain hospital operations in Massachusetts through transitions to new operators.

4.      EOHHS executed two additional funding agreements that enabled the Debtors to continue hospital operations during the months of August and September and fund the final Steward payroll for the Massachusetts Going Concern Hospitals.  The funding extended under the second agreement would only have been possible at the required support level with the inclusion of additional advance payments (*i.e.*, advances against the payment of future claims).  Despite its good faith efforts to find alternative sources, EOHHS was not able to locate any other source for the advance payment portion of the funding.  The Debtors expressly acknowledged that the advance payment portion of the funding would be subject to recoupment under applicable law.  In addition to the advances made under the pre- and post-petition funding agreements, Massachusetts' Medicaid program has identified various overpayments made to the Debtors that are now subject to recoupment.[4]

5.      Finally, Steward has failed to pay both pre- and post-petition assessments (the "Hospital Assessments") to EOHHS, for deposit into Massachusetts' Health Safety Net ("HSN")

---

[4]  Massachusetts' Medicaid program expects further overpayments, arising from both the pre- and post-petition periods prior to the sale of the Massachusetts Going Concern Hospitals, to be identified via standard program integrity processes or through the normal reconciliation processes for Medicaid incentive payment programs.

Trust Fund[5] as required by Massachusetts law at M.G.L. c. 118E, § 67. The Hospital Assessments are required to be paid by all hospitals and are used to help support the operations of safety net hospitals, among other things. These are amounts otherwise payable to Steward for HSN Patients which the Commonwealth should be permitted to recoup and/or set off against to reduce Steward's liability for non-payment.

6.      By this Motion, the Commonwealth gives notice of its intent to recoup, or, to the extent recoupment is not applicable, set off those obligations due and owing by Steward to the Commonwealth (including the advances, overpayments, and unpaid assessments described herein), against certain reimbursement obligations owed by the Commonwealth to Steward. Because recoupment is not subject to the automatic stay, the Commonwealth seeks relief from the stay out of an abundance of caution to effectuate recoupment and out of necessity to exercise setoff rights.

7.      The amounts sought to be recouped and/or set off include approximately $5,465,054.23 in pre-petition advance payments, approximately $8,000,000 in post-petition advance payments, and approximately $4,561,644.97 in identified or expected MassHealth overpayments.[6] Additionally, the Commonwealth seeks to recoup and/or set off approximately $7.8 million of the $19,863,287 in post-petition unpaid Hospital Assessments owed by Steward against currently available HSN payments.[7] For the reasons set forth herein, the Motion should be granted.

---

[5]   The HSN Trust Fund is managed by the HSN Office, which is an office operating within EOHHS. The HSN Office, established as part of EOHHS under M.G.L. c. 118E, § 65, and governed by M.G.L. c. 118E, §§ 64-69, exists to provide payment to acute hospitals and community health centers for services rendered to qualified uninsured and underinsured low-income patients (the "HSN Patients").

[6]   EOHHS is currently holding $14,171,838.21 in pending claims.

[7]   The Commonwealth filed proofs of claim for all pre-petition amounts owed by Steward in compliance with the November 4, 2024 bar date for Governmental Units and will be filing an administrative expense claim for the balance of the unpaid post-petition assessments.

## JURISDICTION AND VENUE

8.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory bases for the relief requested herein are sections 362(d)(1) and 553(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Bankruptcy Rules (the "Local Rules").

## BACKGROUND

9.     EOHHS administers the Massachusetts Medicaid program (known in Massachusetts as "MassHealth").  The Massachusetts Going Concern Hospitals, as well as three Steward Massachusetts hospitals that have closed, Norwood Hospital, Carney Hospital, and Nashoba Valley Medical Center (together with the Massachusetts Going Concern Hospitals, the "Steward Massachusetts Hospitals"), have participated in the MassHealth program as acute care hospitals with executed MassHealth provider contracts (the "Provider Agreements").  *See* Declaration of Michael Levine (the "Levine Decl.") at ¶ 3 attached hereto as **Exhibit A**.

10.    The Steward Massachusetts Hospitals are affiliates within the Steward Health Care System LLC's corporate structure, which includes other hospitals and provider entities enrolled in the MassHealth program and operating in Massachusetts, as well as Steward Medicaid Care Network, Inc. (the "Steward ACO"), an accountable care organization that contracted with MassHealth (collectively, the "Steward Health Care System").[8]  Levine Decl. at ¶ 4.

---

[8]  Additional information relating to Steward's operations in Massachusetts, MassHealth, and the Steward Massachusetts Hospitals is set forth in the *Informational Brief of the Commonwealth of Massachusetts in Support of Responses to the Debtors' Emergency Motions* (Docket No. 61).

A.      **The Pre-Petition Advances**

11.      When a hospital needs financial support for its operations, EOHHS can, and at times does, advance funds against future claims through an advance payment agreement.  Levine Decl. at ¶ 5.  The advance payments are then repaid by the hospital through EOHHS recouping such amounts from future claims.  *Id.* Prior to the commencement of these bankruptcy cases, the Steward Massachusetts Hospitals requested financial assistance from EOHHS to support their operations and avoid any disruption to hospital services for MassHealth members. *Id.*

12.      In December 2023, EOHHS entered into an advance payment agreement (the "December Advance Agreement"), with the Steward Massachusetts Hospitals and Steward Health Care System LLC, to support the Steward Massachusetts Hospitals' operations and to ensure continued access to services for MassHealth members.  Levine Decl. at ¶ 6.  The advance payment was made to the Steward Massachusetts Hospitals in the amount of $11,000,000 (the "December Advance") for Medicaid-eligible services. *Id.*

13.      Under the December Advance Agreement:

- The Steward Massachusetts Hospitals, all affiliated entities of the Steward Massachusetts Hospitals (including but not limited to all other affiliated provider entities participating in MassHealth and the Steward ACO), are jointly and severally liable for the repayment of the December Advance.

- Beginning January 15, 2024, EOHHS had the right to recoup the December Advance through payments owed by EOHHS to the Steward Massachusetts Hospitals through claims payments, or through any other payment obligation, including but not limited to hospital supplemental payments, ACO Administrative Payments, ACO Primary Care Sub-Capitation Payments, or other ACO payments, otherwise owed by EOHHS to the Steward Health Care System that EOHHS determines in its sole discretion to be appropriate and necessary for recoupment of the December Advance, until the entirety of the December Advance is fully reconciled.

- In the event that, as of March 15, 2024, funds are not fully reconciled and recouped by EOHHS via payments owed by EOHHS to the Steward Massachusetts Hospitals or such other payment obligation otherwise owed by EOHHS to Steward Health Care System that EOHHS determines in its sole discretion to be appropriate and

necessary for recoupment of the December Advance, the Steward Massachusetts Hospitals and Steward Health Care System are jointly and severally liable to make a single lump sum payment via wire transfer of good funds to EOHHS equaling the remaining amount of the December Advance that is yet to be reconciled and recouped, and such lump sum payment must be paid to EOHHS no later than April 1, 2024.

- In the event of a breach of the terms of the December Advance Agreement, as determined by EOHHS, the full amount of the Advance Payment shall be immediately due by the Steward Massachusetts Hospitals and the Steward Health Care System, jointly and severally, and shall be paid in a single lump sum payment via wire transfer of good funds to EOHHS equaling the remaining amount of the December Advance that is yet to be reconciled and recouped.

*See* Levine Decl. at ¶¶ 6.a-6.d.

14.     EOHHS was able to recoup $5,534,945.77 pre-petition, leaving $5,465,054.23 of the December Advance due and owing as of the Petition Date.  Levine Decl. at ¶ 7.  To provide Steward the best opportunity to stabilize and fund operations while it pursued the sale of hospitals, EOHHS deferred recoupment of the remaining balance of the December Advance.  *Id.*

### B.     The Post-Petition Advances

15.     The sale process for the Steward Massachusetts Hospitals was far lengthier than anticipated.  Levine Decl. at ¶ 8.  The lack of qualified bidders for certain hospitals plus many issues wrapped up in a lengthy mediation forced several adjournments of the sale hearing to August.  *Id.*  Because the FILO DIP did not permit the funding of operations for the Steward Massachusetts Hospitals starting August 1, the Debtors were forced to obtain additional funding to keep the Steward Massachusetts Hospitals open until the sales were completed or the hospitals were closed.  Faced with a possible public health crisis, the Commonwealth agreed to provide the funding for an anticipated operational shortfall and to maintain hospital operations during August. *Id.*  To realize its goal of seeing the sales close and operations transitioned, the Commonwealth insisted on certain milestones in the payment agreement, including the execution of asset purchase agreements for the hospitals and closing of the sales by August 31, 2024.  *Id.*

16.     On August 6, 2024, the Court approved an emergency request by the Debtors for funding from the Commonwealth for the planned transition of the Massachusetts Going Concern Hospitals.  *See* Docket No. 1855 (the "<u>August Hospital Funding Order</u>").  That same day, the Court approved the closure of Carney Hospital and Nashoba Valley Medical Center.  *See* Docket No. 1850.  The August Hospital Funding Order authorized EOHHS, the Steward ACO, the Debtors, and each of the Steward Massachusetts Hospitals to enter into the Payment Agreement dated August 6, 2024 (the "<u>August Payment Agreement</u>").

17.     Pursuant to the August Payment Agreement, EOHHS funded a total of $30,000,000.00 to ensure the Steward Massachusetts Hospitals' continued provision of healthcare services and other public and community benefits.  *See* Levine Decl. at ¶ 9.  The funds used to make the payments were mostly drawn from support and incentive payments that would only be recoverable in the event of a breach or termination of the August Payment Agreement.  *Id*.

18.     By mid-August, it became clear that sales of the Massachusetts Going Concern Hospitals would not close in August and that Steward's operation of the Massachusetts Going Concern Hospitals would continue through the end of September.  Levine Decl. at ¶ 10.  In addition, Steward informed the Commonwealth that it was unable to fund the last payroll for September (payable in October), which would prevent it from closing the sales of the Massachusetts Going Concern Hospitals.  *Id.*  The Commonwealth thus agreed to fund the operational shortfall for September and the last payroll to facilitate the transition to the new operators.  *Id.*

19.     On September 4, 2024, the Court entered an order approving additional funding from the Commonwealth (the "<u>September Hospital Funding Order</u>").  *See* Docket No. 2345.  Pursuant to the Payment Agreement dated September 5, 2024 (the "<u>September Payment</u>

Agreement"),[9] attached as Exhibit "1" to the September Hospital Funding Order, EOHHS agreed to advance Steward the total sum of $41,882,065.00, which included $8,000,000 in advance payments.  *See* Levine Decl. at ¶ 11; Ex. 3 (September Payment Agreement at ¶ 1 (Tables 2 and 3)).  The September Payment Agreement contains the following provision concerning the advances: "The Hospitals hereby agree that the Advances received by Hospitals under this Agreement shall be subject to the provisions of 130 CMR 450.260.[10]  EOHHS will explore in good

---

[9] Steward Norwood Hospital, Inc. ("Norwood") was included in the advances made under each of the August Payment Agreement and September Payment Agreement.  As such, payments attributable to Norwood are also subject to recoupment.

[10] 130 CMR 450.260 provides as follows:

(A) Provider Liability. A provider is liable for the prompt payment to the MassHealth agency of the full amount of any overpayments, or other monies owed under 130 CMR 450.000 including but not limited to 130 CMR 450.235(B), or under any other applicable law or regulation. A provider that is a group practice is liable for any overpayments owed and subject to sanctions imposed as a result of any violation of any statute or regulation committed by the individual practitioner that provided the service.

(B) Ownership Liability. Any owner of an institutional provider is liable for the monetary liability of the institutional provider under 130 CMR 450.260(A) to the extent of the owner's ownership interest. For purposes of 130 CMR 450.260, an "owner" is a person or entity having an ownership interest in an institutional provider, as such interest is defined in 130 CMR 450.221(A)(9)(a), (b), (c) or (f). An "institutional provider" is any provider that provides nursing facility services, or acute, chronic, or rehabilitation hospital services.

(C) Common Ownership Liability. Any two or more providers who are or were, at any time, wholly or partly owned by the same person or entity, whether concurrently, sequentially, or otherwise, are jointly and severally liable for each of their obligations to pay the full amount of any monies owed under 130 CMR 450.260(A).

(D) Successor Liability. Any successor owner of a provider is liable for the obligation of any prior owner to pay the full amount of any monies owed by the prior owner under 130 CMR 450.260(A). For purposes of 130 CMR 450.260, a "successor owner" is any successor owner, operator, or holder of any right to operate all or a part of the prior owner's health-care business, which includes, but is not limited to, the business management, personnel, physical location, assets, or general business operations. A successor owner of a nursing facility or hospital includes any successor owner or holder of a license to operate all or some of the beds of a nursing facility or hospital.

(E) Group Practice Liability. The individual practitioner who provided the service and the group practice will be jointly and severally liable for each of their obligations to pay the full amount of any monies owed under 130 CMR 450.260.

(F) Recoupment. If a provider fails to pay the full amount of any monies owed under 130 CMR 450.260(A), the MassHealth agency may recoup up to 100% of any and all payments to the provider, without further notice or demand, until such time as the full amount of any monies owed under 130 CMR 450.260(A) is paid in full.

(G) Set-off. The MassHealth agency may apply a set-off against payments to a provider in the following circumstances.

(1) Providers Under Common Ownership. Whenever any monies are owed by a provider under 130 CMR 450.260(A), the MassHealth agency may set off up to 100% of any and all payments to any providers who are or were, at any time, wholly or partly owned by the same person or entity, whether concurrently, sequentially, or otherwise, without further notice or demand, until such time as the full amount of the monies owed under 130 CMR 450.260(A) is repaid in full.

( . . . footnote continued on next page . . . )

faith whether the $8,000,000 contemplated to be paid as Advances can be funded in an alternative manner."  *Id.*; Ex. 3 (September Payment Agreement at ¶ 5). EOHHS explored alternatives to funding the $8 million as an advance against claims, but ultimately determined that an alternative funding approach was not feasible given the substantial support amounts that had already been extended to Steward.  Levine Decl. at ¶ 12.

### C.    The MassHealth Overpayments

20.    The Affordable Care Act of 2010 imposes federal requirements on MassHealth providers to timely report and return overpayments received from MassHealth.   Under Massachusetts law, "a provider must report in writing and return any overpayments to the MassHealth agency within 60 days of the provider identifying such overpayment or, for payments subject to reconciliation based on a cost report, by the date any corresponding report is due, whichever is later."  130 CMR 450.235.  Regardless of whether it is the provider or MassHealth

---

(2) Successors. Upon the sale or transfer of all or part of a provider, the MassHealth agency may set off up to 100% of any and all payments to any successor owner, without further notice or demand, until such time as the full amount of any monies owed by any prior owner under 130 CMR 450.260(A) is repaid in full.

(3) Group Practices. Whenever monies are owed by a group practice under 130 CMR450.260(A), the MassHealth agency may set off up to 100% of any and all payments to the individual practitioner who provided the service, without further notice or demand, until such time as the full amount of any monies owed by the group practice under 130 CMR 450.260(A) is repaid in full. Whenever monies are owed by an individual practitioner who is a member of a group practice under 130 CMR 450.260(A), the MassHealth agency may set off up to 100% of any and all payments to the group practice, without further notice or demand, until such time as the full amount of any monies owed by the individual practitioner under 130 CMR 450.260(A) is repaid in full.

(H) Payment Arrangements. If the recoupment or set-off would cause a financial hardship for a provider, the provider may submit a request in writing, with appropriate documentation, to the MassHealth agency for a payment arrangement. At its discretion, the MassHealth agency may enter into a written arrangement with a provider, its owner, any provider under common ownership, or any successor owner to establish a schedule to pay to the MassHealth agency the full amount of any monies owed, on such terms as are acceptable to the MassHealth agency. The arrangement may provide for such guarantees or collateral as may be acceptable to the MassHealth agency to secure the payment schedule.

(I) Court Action. The MassHealth agency may recover the full amount of any monies owed to the MassHealth agency under 130 CMR 450.260(A) by commencing an action in any court of competent jurisdiction. Such action may be commenced against any parties described under 130 CMR 450.260.

(J) Joint and Several Obligations. All obligations of any parties described under 130 CMR 450.260, are joint and several.

that identifies the overpayment, "a provider is liable for the prompt payment to the MassHealth agency of the full amount of any overpayments, or other monies owed under 130 CMR 450.000 . . . or under any other applicable law or regulation." 130 CMR 450.260(A).

21.     Prior to the Petition Date, MassHealth paid approximately $4,561,644.97 in MassHealth claims and other payments to Steward Massachusetts Hospitals, Steward hospitals located outside of Massachusetts, Steward physician groups, and other non-hospital Steward provider entities, which were subsequently identified as overpayments through standard program integrity auditing review procedures and incentive payment reconciliations [11] (the "Overpayments").  Levine Decl. at ¶ 13; *see also* Claim Nos. 11815, 11813, 11810,[12] and 11800. As the payments were for services that were inappropriately rendered, incorrectly billed, for which standard auditing determined proper health records were not maintained, or represent unearned portions of incentive payments, they are appropriately considered overpayments under 130 CMR 450.235-236.  *Id.*  The Overpayments accrued pre-petition but are payable post-petition.  *Id.* EOHHS has traditionally recouped such overpayments under applicable Massachusetts law.  *Id.*

### D.     The Hospital Assessments

22.     The Massachusetts HSN Office pays, through the HSN Trust Fund, acute care hospitals and community health centers for certain essential health care services provided to HSN Patients.  *See* M.G.L. c. 118E, § 69; 101 CMR 614.00; Levine Decl. at ¶ 16.  The HSN payments to providers are funded, in part, by a tax on all hospitals in Massachusetts, which is paid to EOHHS

---

[11] MassHealth conducts regular program integrity reviews, including through its Program Integrity Unit, Financial Compliance Unit, and through EOHHS vendors.  Levine Decl.at ¶ 14 n.3.  These reviews are designed to identify common causes of overpayments, such as those related to incorrect billing or provider non-compliance with service requirements.  *Id.*  The Program Integrity Unit is also dedicated to combating Medicaid provider fraud, waste, and abuse, which diverts dollars that could otherwise be spent to safeguard the health and welfare of Medicaid enrollees. *Id.*

[12] Claim No. 11804 is a duplicate of this claim.

for deposit into the HSN Trust Fund.  *See* M.G.L. c. 118 § 66-67; 101 CMR 514.00; Levine Decl. at ¶ 17.  All non-state-owned hospitals in Massachusetts are subject to this assessment.  *See* M.G.L. c. 118 § 67; 101 CMR 514.00; Levine Decl. at ¶ 16.  As acute hospitals subject to the assessment, Steward Massachusetts Hospitals were required to pay the assessment to EOHHS on a monthly basis, for such payments to be deposited into the HSN Trust Fund.  Levine Decl. at ¶ 16.  As acute hospitals registered with the HSN Office as participating in HSN, the Steward Massachusetts Hospitals were also paid through the HSN Trust Fund for reimbursable health services rendered to HSN Patients.  *See* M.G.L. c. 118 § 69; 101 CMR 614.00; Levine Decl. at ¶ 16.

23.     Despite receiving Court authority to pay both pre- and post-petition taxes to the Commonwealth (among others) (*see* Docket Nos. 12 (the Taxes Motion) & 114 (Final Taxes Order)), the Debtors have failed to make any hospital assessment payments to EOHHS.  As of October 2024, there was $52,103,506.00 in unpaid Hospital Assessments due and owing to EOHHS, $32,240,219.00 of which was due and owing pre-petition, and $19,863,287 of which came due and was not paid by Steward post-petition.  Levine Decl. at ¶ 17.

24.     The pre-petition Hospital Assessments are excise taxes and entitled to priority treatment under Section 507(a)(8).  *See Boston Reg'l Med. Ctr., Inc. v. Mass. Div. of Health Care Fin. & Policy (In re Boston Reg'l Med. Ctr., Inc.)*, 365 F.3d 51 (1st Cir. 2004) (amount owing by debtor hospital to Massachusetts Uncompensated Care Trust Fund entitled to priority under 11 U.S.C. § 507(a)(8)(E) as an excise tax); *In re Ludlow Hosp. Soc'y*, 216 B.R. 312 (Bankr. D. Mass. 1997) (claims of state agencies against chapter 7 debtor-hospital for unpaid contributions to uncompensated care pool, labor shortage fund, and commission assessment are excise taxes and entitled to priority status under 11 U.S.C. § 507(a)(8)(E)).

25.     The Debtors maintain one or more accounts at M&T Bank, which accounts are accessible to the HSN Office within EOHHS.  *See* ECF No. 5 at p. 6 (Cash Management Motion). Additionally, the Debtors collect, withhold, or incur, in the ordinary course of business, taxes and fees related to regulatory assessments such as the hospital assessments.  *See* Docket No. 12 (Taxes Motion) at ¶ 18.

26.     Massachusetts is holding $7,804,362 [13] in payments to Steward Massachusetts Hospitals for reimbursable health services rendered to HSN Patients that it seeks to set off against Steward's unpaid post-petition Hospital Assessments.  Levine Decl. at ¶ 18.

## **ARGUMENT**

### E.     **The Advances, MassHealth Overpayments, and Unpaid Post-Petition Assessments May Be Recouped Without Relief from the Automatic Stay**

27.     Recoupment is an equitable doctrine that permits a party to reduce amounts owed to a debtor against amounts owed by a debtor that arise out of the "same transaction" without being subject to the automatic stay.  *See Holford v. Powers (In re Holford)*, 896 F.2d 176, 179 (5th Cir. 1990); *Kosadnar v. Metro. Life Ins. Co. (In re Kosadnar)*, 157 F.3d 1011, 1016 (5th Cir. 1998) ("[p]ost-petition recoupment does not violate the automatic stay").  In general, courts must evaluate whether it would be inequitable for the debtor to enjoy the benefits of a transaction without meeting its obligations.  The Fifth Circuit has construed the term "transaction" broadly in the recoupment context focusing on the facts and equities before the court:

> There is no general standard governing whether events are part of the same or different transactions.  Given the equitable nature of the recoupment doctrine,

---

[13] Approximately $6,185,000 of this amount was held in M&T Bank accounts, accessible by the Debtors and the HSN Office.  Levine Decl. at ¶ 18.  The accounts exist to facilitate HSN payments to the hospitals from the HSN Trust Fund, and Hospital Assessment payments from the Steward Massachusetts Hospitals to the HSN Trust Fund.  *Id.* The balance is comprised of two payments of $966,424, due in October 2024, and $652,074 due in November 2024. *Id.*  The total amounts payable for reimbursable health services to HSN patients may fluctuate slightly, from the total $7,804,362 amount, as final claims reconciliations are conducted for hospital fiscal year 2024. *Id.*

Case 24-90213   Document 3393   Filed in TXSB on 12/06/24   Page 14 of 26

courts have refrained from precisely defining the same-transaction standard, focusing instead on the facts and the equities of each case.

*Kadonsky v. United States*, 216 F.3d 499, 507 (5th Cir. 2000) (citing *Kosadnar*, 157 F.3d at 1015); *see also In re ABCO Indus.*, 270 B.R. 58, 62 (Bankr. N.D. Tex. 2001).[14]  "The Fifth Circuit has purposely been somewhat vague on the contours of recoupment, allowing the trial courts to determine whether recoupment applies based upon the facts and circumstances of the case."  *In re Eggers*, 432 B.R. 577, 582 (Bankr. W.D. Tex. 2010).  Courts, however, have found the "same transaction" requirement to be satisfied in cases where the parties have provided expressly for application of the doctrine of recoupment with respect to the relevant obligations.  *See Aetna Life Ins. Co. v. Bram (In re Bram)*, 179 B.R. 824, 826 (Bankr. E.D. Tex. 1995).

> (i)     *The Advance Payments*

28.     Under Massachusetts law, "[a] provider is liable for the prompt payment to the MassHealth agency of the full amount of any overpayments, or other monies owed under 130 CMR 450.000, including but not limited to 130 CMR 450.235(B), or under any other applicable law or regulation.  A provider that is a group practice is liable for any overpayments owed and subject to sanctions imposed as a result of any violation of any statute or regulation committed by the individual practitioner that provided the service."  130 CMR 450.260(A).  In addition, "[i]f a provider fails to pay the full amount of any monies owed under 130 CMR 450.260(A), the MassHealth agency *may recoup up to 100% of any and all payments to the provider, without further notice or demand*, until such time as the full amount of any monies owed under 130 CMR 450.260(A) is paid in full."  130 CMR 450.260(F) (emphasis added).

29.     The December Advance Agreement expressly provided for the application of the doctrine of recoupment ("EOHHS *shall recoup* the December Advance through payments owed

---

[14]  *But see In re Gasmark Ltd.*, 193 F.3d 371, 374-75 (5th Cir. 1999) (applying the "integrated transaction" approach).

by EOHHS to the Hospitals through claims payments, or through any other payment obligation . . .") (emphasis added).  Levine Decl. at ¶ 6; Ex. 1.  Likewise, the September Payment Agreement provided for recoupment by referencing the applicable Massachusetts regulation.  Levine Decl. at ¶ 11; Ex. 3 ("The Hospitals hereby agree that the Advances received by Hospitals under this Agreement shall be subject to the provisions of 130 CMR 450.260.").  Further, pursuant to the September Hospital Funding Order, the Court approved application of the CMR recoupment regulations to the $8 million in advances.  For these reasons, the Court should find that the amounts owed under both agreements arise from the "same transaction," thus allowing for recoupment to occur.

30.     Additionally, as set forth in the December Advance Agreement and the September Payment Agreement, advance payments were allocated to certain hospitals.  Steward used the advance payments to sustain the operations of the Steward Massachusetts Hospitals without regard to that allocation.  For example, advances were made under the September Payment Agreement to Carney Hospital, but the reimbursement claims (that the Commonwealth would be exercising recoupment of) generated by Carney are not necessarily in the same amount because Carney had closed by the end of August.  In exercising its recoupment rights, the Commonwealth would effectively be recouping amounts that were allocated nominally to Carney, but otherwise were used to support the continued delivery of services at other hospitals within the Steward Health Care System.  Accordingly, regardless of any specific allocation of advance payments to a specific hospital, the advance payments were made and used by all the Steward Massachusetts Hospitals generally and thus are recoupable from claims generated by the Massachusetts Going Concern Hospitals as part of the same overall transaction.

### (ii)   The MassHealth Overpayments

31.     As set forth above, the Commonwealth is statutorily permitted under Massachusetts law to recoup the MassHealth Overpayments from all amounts due to Steward.[15]  Further, per Massachusetts regulation, any Steward provider participating in MassHealth is jointly and severally liable for the Overpayment debts arising from its own or other Steward providers' participation in MassHealth.  *See* 130 CMR 450.260(C).  It would be inequitable for Steward to receive the benefit of the Overpayments without meeting its regulatory obligation to repay them.

### (iii)   The HSN Payments

32.     Finally, the Commonwealth should be permitted to recoup unpaid post-petition Hospital Assessments from (a) amounts held in bank accounts that are jointly accessible by each Steward Massachusetts Hospital and the HSN Office within EOHHS (which are used to facilitate Hospital Assessment payments to EOHHS and HSN payments to the Steward Massachusetts Hospitals), and (b) the HSN payment amounts otherwise due to the Steward Massachusetts Hospitals, in October and November, for reimbursable health services the Steward Massachusetts Hospitals rendered to HSN Patients in August and September, respectively.

33.     Steward has a statutory obligation under Massachusetts law to pay the Hospital Assessment, and per regulation, such payments are due on a monthly basis.  Under the same statute (M.G.L. c. 118E, §§ 66, 67, and 69), Massachusetts has an obligation to make disbursements to various providers from the HSN Trust Fund for services rendered to HSN Patients.  The Hospital Assessment payments from the Steward Massachusetts Hospitals, and the payments to Steward

---

[15] Courts have held recoupment was permissible in similar circumstances. *See In re Gaither*, 200 B.R. 847, 852-53 (Bankr. S.D. Ohio 1996) (the terms of the "societal contract" for unemployment benefits set forth in the applicable Ohio statute, which specifically provided for recoupment, supported a finding that it was equitable for the Ohio Bureau of Employment Services to recoup pre-petition unemployment benefit overpayments from post-petition unemployment payments).

Massachusetts Hospitals for services rendered to HSN Patients are paid to and from the same accounts, which are held by each Steward Massachusetts Hospital and which are jointly accessible by the HSN Office within EOHHS. Payment obligations and the receipt of benefits pursuant to the same statute are functionally equivalent to having due to/due from payment obligations that arise from the same contract or transaction. As some courts have held, receiving benefits pursuant to a state statute can be "viewed as similar to a contract" and thus recoupment's "same transaction" requirement is satisfied. *In re Gaither*, 200 B.R. at 850.[16] "Depending on the factual situation, equity considerations may then allow recoupment." *Id.*

34.     Steward's unpaid post-petition Hospital Assessments are part of the same statutory, quasi-contractual claim the Commonwealth is asserting against Steward. As such, the amounts sought to be recouped arise out of the same transaction and are recoupable. It would be inequitable for Steward to enjoy the benefits of HSN payments without meeting its mandated monthly Hospital Assessment obligations.

## F.     If Recoupment Is Not Applicable, the Commonwealth May Assert a Right of Setoff

35.     Notwithstanding that the Commonwealth is entitled to recoupment, if the Court disagrees, it may still permit the Commonwealth to recover through setoff. "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995).

---

[16] There are also several cases in which state laws reducing a claimant's rights by reference to past overpayments were held to support recoupment. *See Oregon v. Harmon (In re Harmon)*, 188 B.R. 421, 426 (9th Cir. B.A.P. 1995) (court should view overpayment and later claim from "unitary perspective of the Oregon statute"); *Ross v. Missouri Div. of Employment Security (In re Ross)*, 104 B.R. 171, 173 (E.D. Mo. 1989) ("the pre-petition debt is part of the same quasi-contractual claim the MDES was asserting against [the debtor's] post-petition filing for benefits").

36.     Section 553(a) recognizes and preserves rights of setoff where four conditions exist: (1) the creditor holds a claim that arose before the commencement of the case; (2) the creditor owes a pre-petition debt to the debtor; (3) the claim and the debt are mutual; and (4) the claim and the debt are each valid and enforceable.  11 U.S.C. § 553(a).  Even if the claim is unliquidated, unmatured, or contingent on the petition date, a right of setoff is enforceable.  *See Braniff Airways v. Exxon Co*., 814 F.2d 1030, 1036 (5th Cir. 1987); *Matter of Corland Corp*., 967 F2d 1069, 1077-1078 (5th Cir. 1992).  In addition, courts have held that setoff of mutual *post-petition* debts generally is permitted.  *See, e.g*., *In re Davidson Lumber Sales, Inc*., 66 F.3d 1560, 1569 (10th Cir. 1995) ("Despite the Bankruptcy Code's failure to address the situation, courts generally recognize that in appropriate circumstances mutual postpetition debts may be set off"); *Buchanan v. Kerr-McGee Energy Servs*., 2004 Bankr. LEXIS 1286, at *15 (Bankr. N.D. Tex. 2004) (same).

37.     Mutuality requires that the debts involved must be between the same parties standing in the same capacity and does not require that the debts arose out of the same transaction or at the same time.  *See Buchanan v. Kerr-McGee*, 2004 Bankr. LEXIS 1286, at *15.  Indeed, courts have found mutuality where one obligation was contractual and the other was statutory.  *See United States v. Cherry Street Partners, L.P. (In re Alliance Health of Fort Worth, Inc.)*, 240 B.R. 699, 701 (N.D. Tex. 1999) (court permitted the stay to be lifted so the U.S. could set off its claim for pre-petition unpaid employment taxes, penalties, and interests against reimbursement owed under Medicare program); *see also In re Doctors Hospital of Hyde Park*, 291 B.R. 453 (N.D. Ill. 2002) (court found that state contracts for Medicare services included an implied right to setoff unpaid taxes and penalties owed to Illinois by the contracting hospital against amounts owed by the hospital to Illinois); *In re IML Freight, Inc.*, 65 B.R. 788, 793 (Bankr. D. Utah 1986) ("There

is no question that the government has the right to apply monies due it to the extinguishment of its obligations on other accounts.").

38.      Courts have also held that mutuality exists in cases where a debt is guaranteed by non-debtor third parties who have joint and several liability for the claim against the principal obligor. *See In re Chestnut Co., Inc.*, 39 B.R. 519, 521-22 (Bankr. D.S.C. 1984) (debt owed to bank by debtor and debtor's principals jointly and severally could be set off against bank's obligation to pay debtor sums from debtor's checking account).

(i)      *The Pre-Petition Advances*

39.      The Commonwealth has a claim against Steward for the unpaid portion of the December Advance and owes the Steward Massachusetts Hospitals for claims payments, hospital supplemental payments, and/or other provider payments.  The Steward Massachusetts Hospitals, all affiliated entities of the Steward Massachusetts Hospitals, and all other affiliated provider entities participating in MassHealth are jointly and severally liable for the repayment of the December Advance.  Because the Commonwealth is able to collect the amounts due from any of these entities alone, as long as one of the entities is a debtor, the Court may make a finding that mutuality exists.  Finally, because the December Advance is not disputed, all four conditions are met and, to the extent the Court finds recoupment is not applicable, the Commonwealth should be permitted to set off the remaining $5,465,054.23 under the December Advance against the claims payments and/or reimbursement obligations owed by EOHHS to the Steward Massachusetts Hospitals under the Provider Agreements.

(ii)      *The Post-Petition Advances*

40.      Similarly, the Commonwealth has a post-petition claim against Steward for the $8,000,000 advance payment made under the September Payment Agreement and owes post-petition amounts to the Steward Massachusetts Hospitals through claims payments, hospital

supplemental payments, and/or other provider payments.  As set forth in the September Payment Agreement, the Steward Massachusetts Hospitals agreed that the Advances would be subject to recoupment under 130 CMR 450.260.  *See* Levine Decl. at ¶ 11; Ex. 3 (September Payment Agreement at ¶ 5).  But even if recoupment does not apply, setoff does.  Because the Commonwealth can collect from these entities on a joint and several basis, mutuality for setoff exists.  Finally, because the post-petition advance payment is not disputed, all four conditions are met and, to the extent the Court finds recoupment is not applicable, the Commonwealth should be permitted to set off the $8,000,000 advance under the September Payment Agreement against the claims payments and/or reimbursement obligations owed by EOHHS to the Steward Massachusetts Hospitals under the Provider Agreements.

(iii)   <em>The MassHealth Overpayments</em>

41.     The Commonwealth has a claim against the Steward Massachusetts Hospitals for approximately $2,151,296.37 in pre-petition Overpayments tied to program integrity issues identified for Steward Massachusetts Hospitals, and $1,614,727 tied to incentive payment reconciliations for Steward Massachusetts Hospitals.  Levine Decl. at ¶ 14.  Additionally, the Commonwealth has a claim against Steward physician groups and other non-hospital provider types, including Steward Medical Group, Inc., Steward Emergency Physicians, Inc., Steward PET Imaging, LLC, and Steward Sebastian River Medical Center, Inc. for approximately $799,899.60 in pre-petition Overpayments tied to program integrity issues identified for those non-hospital Steward providers.  *Id*.

42.     Separately, the Commonwealth owes post-petition amounts through claims payments, hospital supplemental payments, and/or other provider payments.  Levine Decl. at ¶ 15.  Mutuality is satisfied because the claims are between the same parties in the same capacity (*e.g.*, EOHHS and Steward Medical Group, Inc.).  Of the Overpayments for which Steward has received

20

notice, Steward has neither responded to nor disputed such notice to date.  Levine Decl. at ¶ 13.  Thus, all four conditions for setoff are met and the Commonwealth should be entitled to set off the Overpayments against future payments to be made to Steward Massachusetts Hospitals and non-hospital Steward providers that participated in MassHealth.

*(iv)*    *The Hospital Assessments*

43.    The Commonwealth has a post-petition claim against Steward for $19,863,287 in unpaid Hospital Assessments that came due and were not paid by Steward into the accounts.  The Commonwealth and Steward have joint access to the accounts from which Steward's HSN payments are distributed to the Steward Massachusetts Hospitals by EOHHS, and through which Hospital Assessment payments should be paid from the Steward Massachusetts Hospitals to EOHHS.  Levine Decl. at ¶ 19.  EOHHS is now currently holding funds in the amount of $7,804,362 in a suspense account pending resolution of this Motion.[17]

44.    The Commonwealth should be entitled to set off a portion of Steward's unpaid Hospital Assessments with the funds currently being held in the suspense account and funds that would otherwise be payable to Steward for services rendered to HSN Patients.  Because the claims are between the same parties in the same capacity (*i.e.*, EOHHS and each Steward Massachusetts Hospital), mutuality is satisfied.  The Commonwealth also has no basis to believe that the Hospital Assessments are invalid or unenforceable.  Therefore, the Commonwealth should be permitted to set off the unpaid post-petition assessments against disbursements owed to Steward.  It would be inequitable for Steward to receive HSN payments when it has refused to pay any Hospital Assessment amounts both pre- and post-petition as required by Massachusetts law.  Finally, the

---

[17] Under *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21 (1995), the placing of an administrative freeze or hold on a debtor's account is not a violation of the automatic stay.

21

Commonwealth intends to seek payment of the balance of the unpaid post-petition Hospital

Assessments as administrative expense claims.[18]

### G.   Relief from the Automatic Stay Is Appropriate to Allow the Commonwealth to Exercise Its Setoff Rights

45.   Although section 553(a) preserves the Commonwealth's setoff claims, Bankruptcy

Code section 362(a)(7) prevents execution of setoff rights absent relief from the automatic stay.

*See* 11 U.S.C. § 362(a)(7) ("(a) . . . a petition . . . operates as a stay, applicable to all entities,

of— . . . (7) the setoff of any debt owing to the debtor that arose before the commencement of the

case under this title against any claim against the debtor . . . ."). However, the automatic stay is

not intended to be indefinite or absolute and relief from the stay may be granted in appropriate

circumstances. Pursuant to section 362(d), a bankruptcy court may grant relief from stay when a

creditor demonstrates adequate grounds for such relief. *See* 11 U.S.C. § 362(d)(1). This Court

has identified several factors to consider in assessing whether to lift the automatic stay.

> Factors generally looked to in determining whether to modify the stay for cause
> include interference with the bankruptcy, good or bad faith of the debtor, injury to
> the debtor and other creditors if the stay is modified, injury to the movant if the stay
> is not modified, and the proportionality of the harms from modifying or continuing
> the stay. None of these factors alone is outcome determinative. The factors in [any]
> case must be weighed within the context of all the relevant circumstances.

*In re Mosher*, 578 B.R. 765, 772 (Bankr. S.D. Tex. 2017) (quoting *In re Bovino*, 496 B.R. 492,

502 (Bankr. N.D. Ill. 2013)).

46.   Establishing a right to setoff satisfies the movant's burden to make a *prima facie*

showing of "cause" for stay relief under section 362(d). *See In re Ealy*, 392 B.R. 408, 414 (Bankr.

E.D. Ark. 2008) (citing *In re Nuclear Imaging Sys., Inc.*, 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000);

---

[18] *See In re Henry Valencia, Inc.*, 2023 Bankr. LEXIS 1506, at *12 (Bankr. D.N.M. June 8, 2023) (holding that unpaid taxes incurred by a chapter 11 debtor before the effective date of its confirmed plan qualified as administrative expense claims).

*In re Orlinski*, 140 B.R. 600, 603 (Bankr. S.D. Ga.1991); *In re Coleman*, 52 B.R. 1, 3 (Bankr. S.D. Ohio 1985); *In re Flanagan Bros., Inc.*, 47 B.R. 299, 303 (Bankr. D.N.J. 1985)); *see also United States v. Gould (In re Gould)*, 401 B.R. 415, 426 (9th Cir. B.A.P. 2009)).  Once a *prima facie* case is established, the burden shifts to the party opposing relief.  *In re Ealy*, 392 B.R. at 414 (internal citations omitted).

47.    Additionally, courts have granted relief from stay in similar situations and permitted setoff to recover unpaid taxes.  *See In re All. Health of Ft. Worth, Inc.*, 240 B.R. 699, 705 (N.D. Tex. 1999), *aff'd sub nom.* 200 F.3d 816 (5th Cir. 1999) (court permitted federal government's right to set off, against its own pre-petition obligation to bankrupt health care provider for Medicare reimbursement payments, the provider's pre-petition obligation to government for unpaid employment taxes, penalties and interest).

48.    Based on this case law, cause exists to grant the Commonwealth stay relief to effectuate the proposed setoffs.  It is undisputed that Steward is liable for the obligations that create the setoff right and have benefitted from the use of the funds that were advanced, overpaid and withheld by Steward.  The Commonwealth should not be required to pay Steward when Steward indisputably owes significant amounts to the Commonwealth.  *See Citizens Bank v. Strumpf*, 516 U.S. at 18.  Moreover, allowing setoff also would result in the resolution of a significant amount of claims against the Steward Massachusetts Hospitals that would be accorded either priority or administrative status.

49.    The Commonwealth deferred recoupment of, and held off seeking relief to exercise its setoff rights with respect to tens of millions of dollars owed by Steward for nearly a year in order to support a smoother sale, transition, and closure process (as applicable) for the Steward Massachusetts Hospitals when Steward's own lenders would not provide funding.  Where the sales

of the Massachusetts Going Concern Hospitals and the sale of the Stewardship medical practices and accountable care organization have closed, reconciling and recouping or setting off amounts owed as between the Commonwealth and Steward is now appropriate.

**H.     Rule 4001(a)(3) Waiver**

50.     The Commonwealth also seeks a waiver of the 14-day stay of the effectiveness of the order terminating the stay pursuant to Bankruptcy Rule 4001(a)(3).   The facts and circumstances here warrant this waiver.   The amounts owed to/due from the Commonwealth are not disputed, the Commonwealth has acted in good faith deferring the exercise of recoupment/setoff rights to ease Steward's liquidity challenges, and many of the obligations due to the Commonwealth reflect priority claims or in some cases administrative expenses.   On balance, the prompt exercise of recoupment/setoff rights is warranted.

## RESERVATION OF RIGHTS

51.     The Commonwealth reserves the right to seek further recoupment and/or setoff relief, as applicable, as pre- and post-petition payments are reconciled.

## CONCLUSION

For the reasons set forth herein, the Commonwealth respectfully requests the entry of an order, substantially in the form attached as **Exhibit B**, granting relief from the automatic stay to allow the Commonwealth to set off mutual obligations if and to the extent recoupment is not available.

Dated: December 6, 2024          Respectfully submitted,
     New York, New York

COMMONWEALTH OF MASSACHUSETTS,
By its attorney,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

By:    */s/ Andrew M. Troop*
    Andrew M. Troop (Bar No. MA547179)
    Special Assistant Attorney General

Hugh M. McDonald (Bar No. NY2420974)
Special Assistant Attorney General

PILLSBURY WINTHROP SHAW PITTMAN LLP
Andrew V. Alfano (Bar No. NY5525241)
31 West 52nd Street
New York, NY 10019
Tel: 212-858-1000
Fax: 212-858-1500

Claire K. Wu (admitted *pro hac vice*)
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017
Tel: 213-488-7100
Fax: 213-629-1033

## **CERTIFICATE OF CONFERENCE WITH OPPOSING COUNSEL**

Pursuant to Local Rule 4001-1(a)(1), Movant conferred with Debtors' counsel on December 5, 2024 to discuss the foregoing motion and attempt to reach an agreement on the requested relief.  No agreement was reached, but the parties agreed to continue discussions.

*/s/ Hugh M. McDonald*
Hugh M. McDonald


## **CERTIFICATE OF SERVICE**

I certify that on December 6, 2024, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Andrew M. Troop*
Andrew M. Troop