IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>STEWARD HEALTH CARE SYSTEM LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-90213 (CML)<br><br>(Jointly Administered) |

### DECLARATION OF ROSYE B. CLOUD

Rosye B. Cloud declares as follows pursuant to 28 U.S.C. § 1746:

1.  I am the Chair of the Board of Directors and CEO of Brighton Marine, Inc. ("BMI"). Founded in 1983, BMI is a 501(c)(3) non-profit organization with the mission of providing healthcare, housing, and hope to America's most vulnerable veterans and their families. Whether it is working to end veteran homelessness, empowering local youths, or providing prevention support services to military personnel, veterans, and their families, BMI's efforts have earned it a reputation as a strong community presence and a trusted partner in social services.

2.  I submit this declaration in support of BMI's Emergency Motion (I) To Compel Payment of Funds Held in Trust; (II) To Compel Compliance with the Transition Services Agreement; (III) To Permit Set Off; or Alternatively (IV) For Conversion to Chapter 7 of the Bankruptcy Code.

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 2811 McKinney Avenue, Suite 300, Dallas, Texas 75204.

1

**BMI's Healthcare Work and Relationship with Steward**

3. The Department of Defense ("DoD") administers a health care system known as TRICARE, which includes options like "TRICARE Select" and "TRICARE Prime." Eligible individuals can participate in TRICARE Prime through the US Family Health Plan ("USFHP"), which is available to veterans, family members of veterans, and active-duty military and activated reservists. Individuals who are eligible to enroll in USFHP are not required to do so.

4. BMI is one of six non-profit organizations that is statutorily authorized to contract with DoD to provide health care services through USFHP. Specifically, BMI is responsible for administering USFHP across multiple states in New England (the "Plan").

5. Historically, BMI carried out its role as a USFHP designated provider with the help of subcontractors. Stewardship Services Inc., a wholly owned subsidiary of Steward Health Care System LLC (collectively, "Steward"), was one of those subcontractors. Until November 1, 2024, BMI's relationship with Steward was governed by an Amended and Restated Management and Services Agreement ("MSA").

6. Under the MSA, Steward provided Plan services to enrollees and administered the Plan, subject to BMI's oversight. To fund those services, Steward received a monthly payment based on the number of members enrolled in the Plan for the given month. That payment was referred to as a "Capitation Payment." BMI paid the Capitation Payment to Steward for Steward to pay USFHP expenses pursuant to its contractual obligation. If there was any surplus after Steward paid those Plan expenses, Steward was entitled to retain the remainder of the Capitation Payment as profit. But under no circumstances was Steward allowed to use the Capitation Payment for other purposes without first paying all Plan expenses. If Plan expenses exceeded the amount of the Capitation Payment, moreover, Steward had to pay those expenses from its own funds.

7. One such Plan service funded by the Capitation Payment was the provision of discounted pharmaceuticals purchased from the Defense Supply Center, Philadelphia ("DSCP") and the Pharmacy Prime Vendor Program. The Defense Department in essence allows USFHP to leverage deep discounts for medicine, but restricts the program's use to those deemed to be eligible beneficiaries. As a USFHP designated provider, BMI has access to that program, and the MSA appointed Steward as BMI's "agent with respect to the ordering and obtaining of Drugs through Prime Vendor Contracts, and to reimburse DSCP for Drugs and other items made available for Enrollees through such Contracts." MSA, § 2.2.3. In the ordinary course, Steward would order the drugs it needed from DSCP for each month. DSCP (through the Defense Finance and Accounting Service, or "DFAS") would then send an invoice for the order to BMI, who would forward it along to Steward for payment out of the Capitation Payment funds.

**Steward's Financial Distress and Eventual Failure to Pay Pharmacy Invoices**

8. In late 2023 and early 2024, BMI learned that Steward was in significant financial distress, including that it was not paying certain vendors. Among BMI's many concerns in response to this news was that Steward might divert the USFHP Capitation Payment to satisfy other obligations rather than to pay Plan expenses. BMI expressed this concern to Steward repeatedly in the spring of 2024, including to Steward President Mark Rich and USFHP CEO Susan Brown.

9. On April 11, 2024, I sent a letter to Steward executives Ralph de la Torre, Mark Rich, and Bob Guyon, in which I expressed BMI's "concern[] that Steward's financial condition is substantially likely to result in Steward electing to use funds provided by the DOD to pay for health care services to USFHP Plan members, to instead satisfy its long list of outstanding debts

3

that are unrelated to USFHP." A true and accurate copy of that letter was filed under seal with the Court at Adv. Proc. Dkt. No. 135-60.

10. The next day, BMI's outside counsel Tara Dwyer reiterated this concern in an email sent on BMI's behalf to Steward's outside counsel. Ms. Dwyer stated that BMI required additional information in order to "ensure that the DOD funds that [Steward] has received will be used to operate the Plan and pay Plan member claims, not used by Steward for other reasons." Ms. Dwyer further explained that "[i]f Steward were to mishandle the DOD's funds, BMI's Plan members would be irreparably harmed." A true and accurate copy of that email is attached as Exhibit 1 to this Declaration.[2]

11. In response, Steward senior personnel repeatedly assured BMI that Steward would only use the Capitation Payment for Plan purposes. On April 15, 2024, Bob Guyon sent me an email stating that "[i]n connection with the April 2024 Monthly Payment Steward Healthcare LLC ("Steward") is representing that all of the Monthly Payment will be solely utilized as authorized by the Plan." A true and accurate copy of that email is attached as Exhibit 2 to this Declaration. Two days later, Mary Beth Taylor, Steward's Chief Accounting Officer, gave a similar assurance by email: "In connection with the April 2024 Monthly Payment, Steward represents that all of the April 2024 Monthly Payment will [be] used solely for the purposes of BMI's USFHP Plan." A true and accurate copy of that email is attached as Exhibit 3 to this Declaration.

12. On April 26, 2024, BMI sent a notice of termination of the MSA to Steward with a delayed effective date. After Steward filed for bankruptcy on May 6 and disputed the validity of

---

[2] Exhibit 1 includes redactions to omit sensitive information. Exhibits 2, 3, and 5 contain redactions to omit privileged material.

BMI's prepetition notice of termination, BMI initiated an adversary proceeding to determine the status of the MSA (the "Adversary Proceeding").

13. During the pendency of the Adversary Proceeding, the parties continued to perform under the MSA. Steward repeatedly asserted during those proceedings that, because the Plan was profitable (i.e., its monthly costs did not exceed the Capitation Payment amount), all Plan expenses were being paid.

14. But starting in September 2024, Steward did not pay three consecutive monthly DoD invoices for pharmaceuticals from DSCP (the "Unpaid Invoices"), which together totaled $4,968,579.12. The details of those invoices are reflected in the below table:

| DFAS Invoice No. | Amount | Issue Date | Due Date |
|---|---|---|---|
| Q0X4D | $1,772,774.02 | August 25, 2024 | September 24, 2024 |
| S0VKA | $1,598,756.17 | September 25, 2024 | October 24, 2024 |
| U0WRH | $1,597,048.93 | October 25, 2024 | November 24, 2024 |
| **Total Amount** | **$4,968,579.12** | | |

15. BMI made a Capitation Payment to Steward in each of the relevant months. Specifically, BMI transferred $12,493,673.17 to Steward on August 12, 2024; it transferred $12,453,878.83 to Steward on September 10, 2024; and it transferred $12,481,112.83 to Steward on October 10, 2024.

16. On October 1, 2024, the Court ruled that BMI had validly terminated the MSA and that the contract would terminate effective October 31, 2024. BMI and Steward then negotiated a Transition Services Agreement ("TSA") to govern the transition of Plan management from Steward to BMI. Among other things, the TSA provided that Steward would "continue to provide or arrange for the provision of all services that are to be provided to Enrollees in accordance with the DoD Contract to the extent Steward provided such services under the [MSA] immediately prior to termination thereof." TSA, § 1.1. Steward would also "operate Brighton Marine Health Center

Pharmacy (the "Pharmacy"), consistent with prior practice and Section 2.2 of the MSA (which for the avoidance of doubt is not incorporated into this Agreement)." TSA, § 2.2(a). The TSA is currently set to expire on May 30, 2025, at which time BMI will have full responsibility for managing the Plan.

17. During negotiations over the TSA, Steward's counsel initially demanded that BMI assume liability for the Unpaid Invoices, among other postpetition liabilities. Steward's counsel explained that, because it could not monetize the MSA through the bankruptcy process, Steward could no longer justify payment of further expenses under the MSA.

18. BMI refused to take on those liabilities, explaining that BMI had already provided Steward the funds to satisfy those obligations through the monthly Capitation Payments. Neither BMI nor the Department of Defense was willing to pay for the same expenses twice.

**BMI Repeatedly Demands Steward Pay the Unpaid Invoices**

19. Throughout November and December 2024 and January 2025, BMI continued to demand payment of the Unpaid Invoices, engaging with Steward's Chief Restructuring Officer, John Castellano, and its advisor AlixPartners. On November 19, 2024, Nick McCoy, a consultant working with BMI on the transition of the MSA, emailed Drew Parchem of AlixPartners requesting an update on payment for the invoices. Mr. Parchem replied that Steward was "still working with the lender group on an approved budget and [doesn't] have the authority to make these payments yet." A document that I recognize to be a copy of that email is attached as Exhibit 4 to this Declaration. BMI personnel also repeatedly raised this issue with AlixPartners by phone.

20. On December 19, 2024, USFHP interim CEO Steve Maddox emailed Mr. Castellano, noting the outstanding pharmacy invoices and reminding Castellano that "these monies have already been paid to Steward to pay these pharmacy claims on behalf of BMI." A document

that I recognize to be a copy of that email is attached as Exhibit 5 to this Declaration. I understand that Mr. Castellano replied to this email with a phone call to Mr. Maddox on January 14, 2025, during which Mr. Castellano acknowledged that Steward was obligated to pay the invoices but stated that he nonetheless could not authorize payment of the invoices because those payments were not included in an approved budget.

21. BMI's counsel Eric Nitz has repeatedly contacted Steward's counsel by email regarding the Unpaid Invoices. A document that I recognize to be a copy of those email messages is attached as Exhibit 6 to this Declaration. Those messages were met with silence until March 11, 2025, when Steward's counsel responded by email. A document I recognize to be a copy of that response is attached as Exhibit 7 to this Declaration. Finally, I understand that on March 14, Mr. Nitz and Paul Possinger, who also represents BMI, spoke to counsel for the DIP Lenders, who indicated that Steward has essentially no cash-on-hand and refused to allow Steward to use its cash collateral to pay the Unpaid Invoices.[3]

### Misappropriation of These Funds Harms BMI and the Veterans We Serve

22. BMI does far more than health insurance. BMI is a non-profit organization that carries out numerous charitable activities focused on the welfare of veterans in the Greater Boston Area, including providing affordable housing, social support, and job counseling. Mission dollars diverted to offset the funds that Steward misappropriated will degrade care and support to the most vulnerable of veterans and the organizations that serve them. We have been forced to pause critical

---

[3] Although BMI is not presently aware of any other Plan expenses that have gone unpaid, it remains concerned that Steward's failures to meet its payment obligations under the MSA are not limited to these pharmacy invoices. Indeed, Steward has failed to remit to BMI approximately $50,000 in lease revenue that BMI is entitled to receive from Steward under separate agreements.

program investments in DC and Boston planned for 2025 due to Steward's misappropriation of taxpayer funds.

23. If Steward does not use the money that BMI provided through its Capitation Payments to pay the Unpaid Invoices, BMI will have to pay those invoices itself. Particularly in light of the increased costs associated with the transition of day-to-day operations from Steward to BMI, as well as the ongoing transition of USFHP's third-party administration away from Point32Health, an additional, unplanned expenditure of five million dollars has had material consequences for BMI's other programs. In short, every dollar that BMI is forced to pay out of pocket due to Steward's refusal to satisfy its USFHP obligations is a dollar BMI cannot spend improving the lives of veterans and their families.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: March 20, 2025

_____
Rosye B. Cloud