

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| STEWARD HEALTH CARE SYSTEM LLC, | § | Case No. 24-90213 (CML) |
| *et al.*, | § | |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**BRIGHTON MARINE, INC.'S REPLY IN SUPPORT OF EMERGENCY**
**MOTION (I) TO COMPEL PAYMENT OF FUNDS HELD IN TRUST;**
**(II) TO COMPEL COMPLIANCE WITH THE TRANSITION SERVICES**
**AGREEMENT; (III) TO PERMIT SETOFF; OR ALTERNATIVELY**
**(IV) FOR CONVERSION TO CHAPTER 7 OF THE BANKRUPTCY CODE**

Brighton Marine, Inc. ("BMI") hereby files this reply (the "Reply")[2] in support of its *Emergency Motion (I) to Compel Payment of Funds Held in Trust; (II) to Compel Compliance with the Transition Services Agreement; (III) to Permit Setoff; or Alternatively (IV) for Conversion to Chapter 7 of the Bankruptcy Code* [Dkt. No. 4271] (the "Motion"), and in response to the *Preliminary Objection to Brighton Marine, Inc.'s Emergency Motion (I) to Compel Payment of Funds Held in Trust; (II) to Compel Compliance with the Transition Services Agreement; (III) to Permit Setoff; or Alternatively, (IV) for Conversion to Chapter 7 of the Bankruptcy Code* [Dkt. No. 4387] (the "Response") filed by Steward Health Care System LLC ("Steward") and Stewardship Services, Inc. (collectively, the "Debtors"), and respectfully represents as follows:

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 2811 McKinney Avenue, Suite 300, Dallas, Texas 75204.

[2] Capitalized terms not defined herein have the meaning as defined in the Motion or in the MSA or TSA, as applicable.

**Preliminary Statement**

1.       The Debtors all but concede the central facts.  They nowhere contest that the MSA obligated them to pay Department of Defense ("DoD") invoices for pharmaceuticals purchased through a special, deeply discounted program instituted to fund pharmaceutical care for Veterans and eligible family members of active-duty personnel.  The Debtors never dispute that BMI paid them $35 million to be used for USFHP-related expenses, and specifically those pharmacy invoices.  And they do not deny that, after repeatedly assuring BMI and this Court that the Plan was profitable, that Steward had the funds to pay all Plan expenses, and that "the veterans have been and are being taken care of to this day by Steward," Adv. Proc. No. 24-03102, Trial Tr. 300:21-301:8, Steward used Plan funds for its own purposes while leaving unpaid millions of dollars in bills for Veterans' drugs.  The Debtors offer no explanation at all for their conduct or how it is anything other than fraud.  Their misappropriation of taxpayer dollars has created an immediate strain on BMI (which may need to pay these invoices itself) and its ability to care for the most vulnerable of Veterans—those experiencing homelessness—at a time when its services are needed most.

2.       The Debtors attempt to avoid the consequences of their actions by advancing arguments that misstate the law, misrepresent the facts, or both.  They ignore the plain language of the MSA, which clearly appointed Steward as BMI's agent for purposes of both ordering ***and paying for*** the pharmaceuticals.  They selectively quote Supreme Court precedent, invoking a decision—*Litton*—that says the exact opposite of what they suggest.  And they invoke supposed procedural barriers that, in reality, are paper thin.

3.       Ultimately, the Debtors used federal taxpayer money earmarked for Veterans and military families for their own purposes.  This Court is not powerless to right that wrong, either by

imposing a constructive trust on the Plan funds in Steward's possession, by compelling Steward's compliance with its contractual obligations, by permitting setoff, or by taking any other action the Court deems appropriate.   And if the Debtors are truly unable to pay because they are administratively insolvent, then these cases should be converted to chapter 7.   Accordingly, BMI requests that the Court set a hearing date, overrule the Debtors' Response, and grant BMI's Motion.

<u>**Argument**</u>

**A.     BMI's Motion Is Procedurally Proper.**

4.     This Court can impose a constructive trust in a contested matter.   An adversary proceeding is unnecessary.   "[T]he standard of proof in [those] two types of proceedings are the same, the procedural rules are similar, and the proceedings provide[ ] [litigants] with more than adequate notice and an opportunity to be heard."   *In re Blast Energy Servs., Inc.*, 396 B.R. 676, 690 (Bankr. S.D. Tex. 2008) (quoting *In re Valente*, 360 F.3d 256, 265-66 (1st Cir. 2004)); *see also In re Bryant*, 340 B.R. 569, 573 (Bankr. N.D. Tex. 2006) (finding that a "bankruptcy court has discretion to treat a contested matter as an adversary proceeding"); *Saddle Creek Energy Dev. v. Eagle Domestic Drilling Ops.*, No. H-07-MC-217, 2007 WL 1702398, at *1-2 (S.D. Tex. June 12, 2007) (noting that bankruptcy court considered turnover claim via a motion, over objection).

5.     Indeed, bankruptcy courts across the country have adjudicated constructive trust claims in a motions posture.   *See In re Real Est. Exch. Servs., Inc*., No. 08-85871-PWB, 2009 WL 6499249, at *1, 17-19 (Bankr. N.D. Ga. Oct. 9, 2009) (adjudicating claims that estate property was subject to constructive trust, including holding an evidentiary hearing, on a "motion[ ] to compel the turn-over of funds"); *In re U.S. Lan Sys. Corp.*, 235 B.R. 847, 849, 857 (Bankr. E.D. Va. 1998) (adjudicating former employees' entitlement to withheld wages, including claim of constructive trust, on "motion to compel payment"); *In re Am. Int'l Airways, Inc*., 44 B.R. 143, 144, 147-48

(Bankr. E.D. Penn. 1984) (determining lessor's rights to rent payments by sublessee under constructive trust theory on "interpleader motion," even though interpleader also available in adversary proceeding).[3]

6.     Moreover, even if proceeding by contested matter were technically erroneous, any such error would be harmless. "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61 (made applicable herein by Fed. R. Bankr. P. 9005). The Debtors have not—and cannot—show any prejudice from litigating this issue by contested matter. The Court unquestionably has jurisdiction; the Debtors have received adequate notice; and the parties can conduct discovery pursuant Rule 9014(c). Any error in proceeding as a contested matter is harmless where "[t]he parties had a full hearing on the merits before the bankruptcy court and the ability to litigate all questions of law." *In re Krueger*, 812 F.3d 365, 369 (5th Cir. 2016) (quoting *Barner v. Saxon Mortg. Servs., Inc. (In re Barner)*, 597 F.3d 651, 654 (5th Cir. 2010)).[4]

7.     The Debtors' demand for an adversary proceeding is little more than an attempt to delay accountability for their misappropriation of Plan funds and to drive up BMI's costs in vindicating that wrong. With the issues already before the Court and discovery underway, *see infra*, ¶ 13, the Court should not require BMI to file an adversary proceeding.

---

[3] Indeed, if the Court lacked authority to impose a constructive trust outside an adversary proceeding, then Rule 7001 would not be waivable. But parties can waive the right to proceed by adversary proceeding. *See, e.g.*, *In re Haber Oil Co.*, 12 F.3d 426, 440 (5th Cir. 1994).

[4] *See also In re Valente*, 360 F.3d 256, 265 (1st Cir. 2004); *In re Cannonsburg Env't Assocs., Ltd.*, 72 F.3d 1260, 1264-65 (6th Cir. 1996) (trustee's decision to proceed by motion was harmless because nonmovant had full opportunity to take discovery under Fed. R. Bankr. P. 9014(c), and collecting similar cases); *In re Bascus*, No. 4:15-CV-869, 2016 WL 4438114, at *15 (E.D. Tex. Aug. 23, 2016) (proceeding as contested matter harmless where party had "ample notice of the issues," "every opportunity to conduct discovery," and "its arguments heard in full by the Bankruptcy Court"); *In re Food Mgmt. Grp., LLC*, 484 B.R. 574, 582-83 (S.D.N.Y. 2012) ("where the rights of the affected parties have been adequately presented so that no prejudice has arisen, form will not be elevated over substance and the matter will be allowed to proceed on the merits as originally filed," and collecting cases).

**B.      The Government Funds Provided to the Debtors Constitute Trust Funds.**

8.      "A constructive trust is a flexible tool of equity designed to prevent unjust enrichment resulting from fraud, a violation of a fiduciary duty or confidential relationship, mistake, or 'other circumstances' in which a recipient's acquisition of legal title to property amounts to unjust enrichment." *Maffei v. Roman Cath. Archbishop of Bos.*, 867 N.E.2d 300, 312 (Mass. 2007); *N. Beacon 155 Assocs., LLC v. Mesirow Fin. Interim Mgmt. LLC*, 135 F. Supp. 3d 1, 8 (D. Mass. 2015) (constructive trust appropriate "where legal title to the property was obtained by fraud or in violation of a fiduciary relation").  That occurred here.

9.      The Debtors' misappropriation of the Capitation Payments was "a violation of a fiduciary duty." *Maffei*, 867 N.E.2d at 312.  The MSA appointed the Debtors as BMI's "***agent*** with respect to . . . ***reimburs[ing]***" the DoD for pharmaceuticals that the Debtors ordered with the benefit of BMI's preferential pricing.  MSA, § 2.2.3 (emphasis added); *see* Mot. ¶ 36.  That language could not be clearer in creating a fiduciary relationship between the Debtors and BMI with respect to the payment for pharmaceuticals from DoD.  The Debtors have no response.  They ***completely ignore*** that crystal clear contractual language, which makes Steward BMI's agent with respect to ***payment*** for the pharmaceuticals.  *See* Response ¶¶ 22–23.  While the Debtors invoke the MSA's general provision denominating Steward an independent contractor, *see* Response ¶ 22 (quoting MSA, § 14.1), they again completely disregard the hornbook principle that specific contractual provisions (like § 2.2.3) control over more generic ones (like § 14.1).  *See* Mot. ¶ 36 n.10.  The Debtors' breach of their fiduciary duties alone warrants imposition of a constructive trust.

10.      Even if Debtors have not breached their fiduciary duties, their fraud and conversion entitle BMI to a constructive trust.  For months, the Debtors assured BMI and this Court that Plan expenses were being paid, that Plan beneficiaries were taken care of, and that

Capitation Payments would not be diverted to pay other creditors at the expense of Plan. Mot. ¶¶ 12–18. And, when the Debtors accepted the Capitation Payments for August through October, they knew that the MSA obligated them to use that federal taxpayer money to satisfy the Unpaid Invoices, among other expenses. Yet they used that money for their own benefit, paying other creditors instead. Mot. ¶ 35. Steward thus "retain[ed] the property . . . 'against the fundamental principles of justice or equity and good conscience.' " *Bonina v. Sheppard*, 78 N.E.3d 128, 132 (Mass. App. Ct. 2017).

11.     Here, the Debtors' silence says more than their words. Steward does not deny that the MSA required it to pay the Unpaid Invoices. It does not dispute that the Capitation Payments provided the funds for those payments.[5] It gives no assurance that, when it accepted the Capitation Payments, it intended to pay the Unpaid Invoices. And it offers no explanation—***none***—for its failure to pay the invoices, much less an explanation that absolves it of fraud or conversion.

12.     Instead, the Debtors offer distractions. They say they had no obligation to "segregate" the Capitation Payments. Response, ¶¶ 17–19. BMI has never said otherwise. But the Debtors ***unquestionably*** had an obligation to ***pay*** the Unpaid Invoices, and they ***unquestionably*** accepted over $35 million in taxpayer money to do so. That the MSA did not impose bookkeeping restrictions requiring Steward to "segregate" the money does not make the Debtors' conduct any less fraudulent—particularly where 30 years of the parties' course of dealing

---

[5] Steward cannot deny that the Capitation Payments were to be used for Plan expenses, including payment of the pharmacy invoices, because that is how Steward and BMI operated over the course of three decades. Steward and its employees have repeatedly admitted as much in this Court: "[T]he Plan is funded by the DoD. Funds flow from the DoD, to BMI, to Steward, ***and are used by Steward to administer the Plan and ensure that beneficiaries receive the necessary medical care and services***." Adv. Proc. No. 24-03102, Dkt. No. 62 ¶ 15 (emphasis added); *see also* Adv. Proc. Dkt. No. 141 ¶ 11 (similar testimony from G. Schlesinger); Adv. Proc. Trial Tr. 190:9-13 (S. Brown testimony that "Steward uses those capitated funds to pay the claims").

involved Steward using the Capitation Payments to satisfy pharmacy invoices and other Plan expenses.  *See supra*, ¶ 11 n.5.

13.     The Debtors' further assertion that a constructive trust is improper because they commingled the Capitation Payments in a "general account," Response ¶ 21, is as wrong as it is premature.  Courts routinely hold the opposite.  *See, e.g.*, *Connecticut Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 619 (1st Cir. 1988) ("[M]ere commingling of the trust property with other property of the bankrupt corporation—as occurred here—does not defeat [a] claim [for constructive trust]."); *McGarry v. Chew*, 885 N.E.2d 174 (table), 2008 WL 1901422, at *2 (Mass. App. Ct. 2008) ("Commingling of a trustee's personal funds with the trust corpus does not destroy the trust."); *Crosslight Org., Inc. v. Williams*, No. CIV.A. BRCV2000-01135, 2001 WL 888383, at *3 (Mass. Super. Ct. July 30, 2001) (rejecting argument "that a constructive trust cannot apply to converted funds which may have been commingled with the trustee's personal funds"); *cf.* Tex. Prop. Code § 162.031(d) ("A trustee who commingles trust funds with other funds in the trustee's possession does not defeat a trust created by this chapter.").  Indeed, commingling is ubiquitous in constructive trust cases, and there are well-established methods for tracing commingled trust funds.  *See, e.g.*, Restatement (Third) of Restitution §§ 58–59 (2011); *In re Brown Med. Ctr., Inc.*, No. AP 15-3229, 2017 WL 8677359, at *3 (S.D. Tex. Aug. 25, 2017) (collecting cases).  The Debtors' complaints (at ¶ 21) concerning the traceability of the funds, moreover, are premature.[6] BMI requested the financial information necessary for that analysis.  When the Debtors refused to

---

[6] When a constructive trust is sought in a bankruptcy proceeding, tracing requirements are governed by federal law, *see, e.g.*, *Matter of Kennedy & Cohen, Inc.*, 612 F.2d 963, 966 (5th Cir. 1980), not state law as Debtors incorrectly suggest.

produce it voluntarily, BMI issued narrow requests for production seeking that information.[7]  With

that discovery, BMI can offer proof tracing the funds at a hearing.

14.     The Debtors' remaining procedural argument fails, too.  The Unpaid Invoices are

not subject to the administrative claim bar date for multiple reasons.  First, the Unpaid Invoices

are owed to a third-party federal government entity within DoD.  Only if BMI pays the Unpaid

Invoices would it have an administrative expense claim (which would arise only at the time BMI

paid the invoices out of pocket).[8]  Second, and more fundamentally, as constructive trust funds,

the funds for payment of the Unpaid Invoices are not—and never were—property of the estate.

*See In re Southmark Corp.*, 49 F.3d 1111, 1117 (5th Cir. 1995) (citing *Haber Oil*, 12 F.3d at 436);

*see also id*. at 1118 ("[I]mposition of a constructive trust . . . gives the successful claimant priority

over the debtor's unsecured creditors."); *In re Reichmann Petroleum Corp*., 434 B.R. 790, 797

(Bankr. S.D. Tex. 2010) ("[P]roperty held in constructive trust by the debtor is not the property of

the debtor's estate and may not be disposed of by the debtor.").  "[T]he Bankruptcy Act simply

does not authorize a trustee to distribute other people's property among a bankrupt's creditors."

*Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135–36 (1962).  Neither does the Code.  *In re Horton*,

618 B.R. 22, 27 (Bankr. D.N.M. 2020).

**C.     Regardless of Whether the Court Imposes a Constructive Trust, the Court Should
Compel the Debtors to Comply with the Terms of the MSA.**

15.     Section 1.1 of the MSA required Steward to perform all of BMI's obligations under

the DoD Contract.  MSA, § 1.1.  And BMI specifically "appoint[ed] and designate[d] [Steward] as

its agent with respect to the ordering and obtaining of Drugs through Prime Vendor Contracts, and

---

[7] BMI reserves the right to request additional discovery as necessary.

[8] BMI reserves all rights to assert an administrative expense claim in the event the Motion is not granted and the
Debtors fail to pay what they owe.

to reimburse DSCP for Drugs and other items made available for Enrollees through such Contracts." MSA, § 2.2.3.  Accordingly, Steward had a clear, unambiguous, and indeed undisputed obligation to reimburse DSCP and pay the Unpaid Invoices.  Mot. ¶¶ 39–40; see *supra*, ¶¶ 9–11.

16.     The Debtors offer only one justification for their clear disregard of that obligation. Quoting *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 206 (1991), the Debtors say that the MSA's termination excused them from further performance because " 'an expired contract has by its own terms released all its parties from their respective obligations.' "  Response ¶ 28.  But *Litton* said something different: that a terminated contract "released all its parties from their respective contractual obligations, ***except obligations already fixed under the contract but as yet unsatisfied***."  501 U.S. at 206 (emphasis added).  The Debtors' misleading omission of that exception is dispositive: Steward's obligation to pay the Unpaid Invoices was "fixed under the contract but as yet unsatisfied" when the MSA terminated.[9]

17.     Regardless, the MSA itself resolves this issue in BMI's favor in yet another provision the Debtors ignore:  "Upon expiration or termination of this Amended Agreement, neither party will have any further obligation hereunder ***except for . . . unsatisfied obligations accruing prior to the date of expiration or termination***."  MSA, § 9.3.4 (emphasis added).  Even if background legal principles supported the Debtors—and they don't—those principles must yield

---

[9] The *Cone Mills* case is no more helpful to the Debtors.  There, the question was whether a shop could alter personnel practices after the expiration of a collective bargaining agreement but before the execution of a new agreement.  *See NLRB v. Cone Mills Corp.*, 373 F.2d 595, 597-98 (4th Cir. 1967).  That is, the question was whether the shop still had to comply with the prior agreement's restrictions ***going forward from termination***, or whether the shop could "abolish a contractually derived right after contract termination*."  Id.* at 598.  And the Restatement provision cited by the Fourth Circuit ***supports BMI***:  "A contractual duty is discharged by the exact performance thereof."  Restatement of Contracts § 386 (1932).  The Debtors, having failed to provide "exact performance" of their undisputed duties under the MSA, have not discharged those obligations.

to § 9.3.4. Where the "express contract term . . . contradicts the background equitable rule[,] . . . the agreement must govern." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 103 (2013).[10]

**D.     BMI Is Entitled to Set Off the Unpaid Invoices Against Future Payments.**

18.     BMI is permitted to set off any postpetition claims that arise from BMI's payment of the Unpaid Invoices against postpetition amounts BMI owes to the Debtors. *See* Motion ¶¶ 43-44. The Debtors argue setoff is inequitable because they contest the validity of the underlying debt. Response ¶ 34. That is circular—any such debt will be set off only once validity is settled. And the Debtors' protestation (at ¶ 34) that the TSA was intended to be "cost-neutral" is wrong. Under the TSA, Steward receives a mark-up of 15%. Mot. ¶ 24; TSA, § 3.1(a). That 15% mark-up should be available through setoff to allow BMI to recoup (some of) the money that the Debtors wrongfully retained and diverted for their own purposes. Mot. ¶¶ 43–44.[11]

**E.     The Debtors Have Not Provided Sufficient Reason Why These Cases Should Not Be Converted.**

19.     As fully set forth in BMI's Motion, this Court can convert a case under chapter 11 to a case under chapter 7 for cause. 11 U.S.C. § 1112(b); *see also Matter of Assadi,* No. 21-50293, 2021 WL 4889196, at *1 (5th Cir. Oct. 19, 2021) (affirming conversion for cause). If the Debtors' estates lack sufficient liquidity to pay the Unpaid Invoices, then cause for conversion exists here. Mot. ¶¶ 46–49. The Debtors wholly fail to address issues pertaining to their postpetition solvency,

---

[10] The TSA resolves any remaining ambiguity about Steward's obligation to pay the Unpaid Invoices. That agreement required Steward to "continue to provide or arrange for the provision of all services that are to be provided to Enrollees in accordance with the DoD Contract to the extent Steward provided such services under the [MSA] immediately prior to termination thereof." TSA, § 1.1. Steward, moreover, remained obligated to operate the Pharmacy "consistent with prior practice and with Section 2.2 of the [MSA]," including the obligation to "reimburse DSCP." TSA, § 2.2(a).

[11] The Debtors cite two cases denying setoff, but neither applies here. In *DuVoisin & Bank of Commerce v. Foster (In re S. Indus. Banking Corp.)*, 809 F.2d 329 (6th Cir. 1987), the court considered a statutory exception not implicated here. *Id.* at 332. *Janvey v. GMAG, L.L.C.*, 98 F.4th 127 (5th Cir. 2024), meanwhile, is not even a bankruptcy case, dealing with a receivership instead. And there, the party seeking setoff had participated in millions of dollars of fraudulent transfers, giving him an ill-gotten windfall if setoff were permitted. Id. at 143–44. There is nothing like that here.

merely asserting (without evidence) that ongoing negotiations with their lender could secure financing to pay creditors.  That is insufficient to show that (1) there is not substantial or continuing loss to or diminution of the estates; (2) there is a reasonable likelihood of rehabilitation; or (3) that the Debtors have not grossly mismanaged their estates.  Once again, the bankruptcy process is not a tool for the Debtors to finance their chapter 11 case on the backs of third parties who continue to pay estate expenses or otherwise provide funding to the Debtors.

20.     The Debtors recently identified various sources of potential recovery for the estates, including their recent judgment granting access to $62 million in Rabbi Trust assets, recent sales of estate property, approximately $312 million in underpayment receivables, and preference demands to approximately 670 parties.  *Motion for Order Further Extending Exclusive Periods Pursuant to Section 1121(d) of the Bankruptcy Code* (Dkt. 4439).  BMI understands, however, that a DIP balance in excess of $250 million remains (which seems to have matured on April 4, 2025, *see* Dkt. No. 4400), and that the Debtors have around $300,000 cash on hand.  Thus, the administrative solvency of these cases appears to rely substantially on success in collection and preference litigation.  If the Debtors are correct that they are sufficiently solvent to confirm a liquidating plan, they should have no concerns satisfying their postpetition obligations to pay the Unpaid Invoices now.  If the Court determines these (primarily contingent) assets are unlikely to yield enough value to satisfy the Debtors' substantial administrative liabilities, BMI reiterates that cause exists now to convert these chapter 11 cases to chapter 7.

**WHEREFORE**, for the foregoing reasons, BMI requests the Court grant its Motion, overrule the Debtors' Response, and grant such other and further relief as is necessary or appropriate.

Respectfully submitted this 9th day of April, 2025.

**GRAY REED**

By: */s/ Jason S. Brookner*
    Jason S. Brookner
    Texas Bar No. 24033684
    Amber M. Carson
    Texas Bar No. 24075610
1300 Post Oak Blvd., Suite 2000
Houston, TX 77056
Telephone:  (713) 986-7000
Facsimile:  (713) 986-7100
Email:    jbrookner@grayreed.com
           acarson@grayreed.com

    - and –

**MOLO LAMKEN LLP**
    Justin V. Shur (admitted *pro hac vice*)
    Eric R. Nitz (admitted *pro hac vice*)
    Jackson A. Myers (admitted *pro hac vice*)
600 New Hampshire Ave., NW
Washington, DC  20037
Telephone: (202) 556-2000
Facsimile:  (202) 556-2001
Email:    jshur@mololamken.com
           enitz@mololamken.com
           jmyers@mololamken.com

    - and –

    Justin M. Ellis (admitted *pro hac vice*)
    Jennifer Schubert (admitted *pro hac vice*)
    Catherine Martinez (admitted *pro hac vice*)
430 Park Avenue
New York, NY  10022
Telephone: (212) 607-8160
Facsimile:  (212) 607-8161
Email:    jellis@mololamken.com
           jschubert@mololamken.com
           cmartinez@mololamken.com

    - and -

**PROSKAUER ROSE LLP**
    David M. Hillman (admitted *pro hac vice*)
    Elliot R. Stevens (admitted *pro hac vice*)
Eleven Times Square
New York, NY  10036-8299
Telephone: (212) 969-3000
Facsimile:  (212) 969-2900
Email:    dhillman@proskauer.com
           estevens@proskauer.com

Case 24-90213   Document 4467   Filed in TXSB on 04/09/25   Page 13 of 14


- and –

Charles A. Dale (admitted *pro hac vice*)
One International Place
Boston, MA  02110
Telephone: (617) 526-9600
Email:    cdale@proskauer.com

- and -

Paul V. Possinger (admitted *pro hac vice*)
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL  60602-4342
Telephone:      (312) 962-3570
Email:      pposinger@proskauer.com

**COUNSEL TO BRIGHTON MARINE, INC.**

**<u>Certificate Of Service</u>**

I certify that on April 9, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas to all parties authorized to receive electronic notice in this case.

*/s/ Jason S. Brookner*