IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM LLC, *et al.*, | § § § | Case No. 24-90213 (CML) |
| Debtors.[1] | § § § § | (Jointly Administered) |

**EMERGENCY MOTION OF HEALTHCARE
SYSTEMS OF AMERICA TO ENFORCE THE GLOBAL SETTLEMENT ORDER AND
COMPEL THE DEBTORS TO COMPLY WITH ITS OBLIGATION THEREUNDER**

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN THURSDAY, APRIL 24, 2025, 3:00 PM (PREVAILING CENTRAL TIME).**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**HAS REQUESTS THAT A HEARING BE CONDUCTED ON THIS MATTER ON THURSDAY, APRIL 24, 2025 AT 3:00 P.M. (PREVAILING CENTRAL TIME) OR, IF NOT AVAILABLE, FRIDAY, APRIL 25, 2025 AT 10:00 A.M. (PREVAILING CENTRAL TIME) IN COURTROOM 401, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002.**

**YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION. AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE LOPEZ'S CONFERENCE ROOM NUMBER IS 590153. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE LOPEZ' HOME PAGE. THE MEETING CODE IS "JUDGELOPEZ." CLICK THE SETTINGS ICON IN THE UPPER**

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward.  The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE LOPEZ'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

Healthcare Systems of America and its affiliates, as parties in interest (collectively, "**HSA**"), by and through its undersigned counsel, hereby files this emergency motion (the"**Motion**") seeking an order enforcing the *Final Order Approving (I) Global Settlement with Medical Properties Trust, Prepetition ABL/FILO Secured Parties, FILO Secured Parties, and Creditors' Committee, (II) Interim Management Procedures, and (III) Granting Related Relief* (Docket No. 2610) (the "**Global Settlement Order**").[2]  In support of this Motion, HSA respectfully states as follows:

## PRELIMINARY STATEMENT

1.      HSA purchased five hospitals in Miami (the "**Hospitals**") along with two in Texas and one in Louisiana.  HSA brings this motion asking the Court to enjoin Debtors from seeking, claiming, withholding, setting off or "recouping" monies being sent by the Florida Agency for Healthcare Administration ("**AHCA")** to which Debtors have no rightful claim.  Specifically, the Debtors are wrongfully seeking to prevent the payment to HSA of certain Hospital Directed Payment Program ("**HDPP**") amounts (the "**HDPP Funds**") to which HSA is clearly entitled under the applicable sale documents, and seeking to have these funds paid to the Debtors instead, in direct contravention of this Court's Global Settlement Order.  These funds are due to be paid imminently.  Timely receipt of these funds is crucial to the continued operations of the purchased

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Global Settlement Order.

2

Hospitals.

2.  Accordingly, HSA respectfully requests entry of an order directing Debtors to comply with the Global Settlement Order by ceasing to assert a right to receipt of the HDPP Funds and affirming HSA's right to such funds. In the alternative, HSA requests that the Court direct ACHA to not remit the funds to either party until the Court determines which party is entitled to the funds. HSA rightfully is concerned with the Debtors gaining access to these funds, given the Debtors' financial condition and imminent potential of administrative insolvency.

## EMERGENCY

3.  AHCA shall be imminently remitting aproxiamtely $55 million in 2024 HDPP Funds, to which HSA is entitled. The Debtors are improperly seeking to have the HDPP Funds directed to their account, pursuant to the April 23 Letter (as defined below), in contravention of this Court's orders. This constitutes an emergency which requires the Court's immediate attention, given the Debtors' current precarious solvency situation and the risk that if funds are wrongfully distributed to the Debtors, HSA may be irreparably harmed due to the inability to collect from the Debtors.

4.  This motion is certified in compliance with Bankruptcy Local Rule 9013-1(i).

## RELIEF REQUESTED

5.  By this Motion, the HSA respectfully requests entry of an order, pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), directing Debtors to comply with the Global Settlement Order by ceasing to assert a right to receipt of the HDPP Funds, including withdrawal of their April 23 Letter, and directing ACHA to remit all relevant HDPP funds to HSA. In the alternative, HSA requests that the Court direct ACHA to not remit the funds to either party until the Court determines which party is entitled to the funds. If the

Debtors receive the funds before the Court can direct ACHA to hold the funds, HSA requests that the funds be deposited into a locked escrow account and that the Debtors be prohibited from accessing or using these funds for any reason pending resolution of the dispute over their ownership. . A proposed form of order is filed herewith (the "**Proposed Order**"). *See* Exhibit 1.

## JURISDICTION

6.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.     The Court is being asked to enforce its own Global Settlement Order for which it has inherent jurisdiction and has retained authority under 11 USC § 105(a).

8.     Under mutual agreement of the parties, this Court is the exclusive venue for disputes related to the HDPP Funds.   Under the St. Joseph BSAA[3], Port Arthur BSAA[4], Florida BSAA[5], and TSAs any dispute is subject to Delaware law and under the jurisdiction of this Court.

## RELEVANT FACTS

### Background on the Debtors

9.     On May 6, 2024, (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors commenced these chapter 11 cases to obtain debtor-in-possession financing and sell or close their 31 hospitals.

---

[3] "**St. Joseph BSAA**" means *Bill of Sale, Assumption and Assignment Agreement* (together with all other agreements, documents, instruments, deliverable thereunder or attached thereto or referenced therein, and as may be amended, modified, supplemented) by and among one or more Debtors and HSA St Joseph LLC.

[4] "**Port Arthur BSAA**" means *Bill of Sale, Assumption and Assignment Agreement* (together with all other agreements, documents, instruments, deliverable thereunder or attached thereto or referenced therein, and as may be amended, modified, supplemented) by and among one or more Debtors and HSA Port Arthur LLC.

[5] "**Florida BSAA**" means Bill of Sale, Assumption and Assignment Agreement (together with all other agreements, documents, instruments, deliverable thereunder or attached thereto or referenced therein, and as may be amended, modified, supplemented) by and among one or more Debtors and Healthcare System of America-Florida LLC (together with the St. Joseph BSAA and Port Arthur BSAA, the "**BOSAAs**").

10. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"). On May 16, 2024, the U.S. Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code. There is no trustee appointed in this case.

### The Parties' Agreements and Court's Settlement Order

11. Pursuant to the Global Settlement Order, this Court dictated the terms and conditions of a series of sales, transition and other agreements between the Debtors and HSA with respect to the sale of eight (8) hospitals to HSA in Texas, Louisiana, and Florida, with HSA or its affiliates named as the Designated Operators of the Hospitals effective September 11, 2024. *See* ECF 2610.

12. On October 30, 2024, certain Debtor entities entered into Bill of Sale Assignment and Assumption Agreements (the "**Miami BOSAA**") under which certain HSA entities acquired five hospitals in Miami, Florida previously owned by the Debtors. The relevant executed BOSAA is attached as Exhibit 2. See also ECF Doc. No. 3046 at 67 of 185.

**A. The Parties Agreed that Payments Related to Program Participation Assessments Were a Purchased Asset**

13. Under the BOSAA, the Parties explicitly agreed that HSA is entitled to receive certain payments post-closing related to state and federal public interest funds. Specifically, the Hospitals are obligated to make annual contributions to various state and local government programs. These programs, in turn, distribute payments to the Hospitals based on predetermined formulas tied to patient care. The structure of these programs requires eligible hospitals to make advance payments for the upcoming year before receiving disbursements for the prior year. For

5

example, a payment into the program is due by January 1, 2024, for the 2025 calendar year. However, payments for services rendered in 2024 will not be distributed until April 2025, and such disbursements are contingent upon the hospital's timely payment (in 2024) for 2025.

14. Purusant to the BOSSA, the parties agreed that if HSA made the required payments, it (and not the Debtors) would be solely entitled to **all subsequent payments** to be made to the Hospitals with respect to such programs:

> Section 5.16 Program Participation Assessments. The Parties acknowledge that Sellers are or may become liable for certain mandatory assessments, contributions, or expenditures to state and local government programs pertaining to the operation of the Hospitals (the "Program Participation Assessments"). With respect to such Program Participation Assessments, and subject to Sections 5.6, 5.7, 5.8, and 5.9, the Parties agree as follows: (a) Buyer shall timely remit all Program Participation Assessments on behalf of the Hospitals. (b) **Contingent upon payment by Buyer of any Program Participation Assessments or expenditures to state and local government programs relating to Program Participation Assessments, Buyer shall be entitled to receive and retain all subsequent payments to be made in respect of the Hospitals as a result of Buyer's payment of such Program Participation Assessment, and Sellers acknowledge and agree that they are not entitled to any portion of such payments**. In the event that Sellers receive any payments corresponding to a Program Participation Assessment that has been made by Buyer, Sellers hereby agree to promptly remit such amounts to Buyer.
> (with emphasis added):

15. As demonstrated by the email exchange attached as Exhibit 3, the parties' intent was clearly to encompass the HDPP Funds due to be distributed by AHCA in 2025, provided that HSA made the required payments (which it has, as set forth below).

**B. HSA Timely Paid All Program Participation Assessments on behalf of the Hospitals**

16. In January 2025, HSA paid $29,000,000.00 to the State of Florida in order to participate in the HDPP.

17. The HDPP made by AHCA are based on assessments paid by hospitals and are

6

distributed according to need. AHCA would not make any payments to the Florida hospitals in calendar year 2025 without the assessments invoiced in calendar year 2024 being paid by the hospitals.

18. The Florida hospitals rely on these AHCA payments to meet operating expenses and the payment was budgeted by HSA when it paid the assessments.

19. On September 25, 2024, the Florida Hospitals each received an invoice respectively from Miami-Dade Collections regarding a "mandatory payment rate for all programs funded through the State of Florida budget for State Fiscal Year 2025." *See* Exhibit 4.

20. The payments were then "deposited into the LPPF and aggregated with the assessments from the other local providers and used to fund Medicaid supplemental payment programs, not to exceed the following non-federal share breakout: Up to 41.66% will be dedicated to funding the Directed Payment Program (DPP), up to 34.50% will be dedicated to funding the Low Income Pool (LIP), and up to 23.83% will be dedicated to funding the Florida Cancer Hospital Program (FCHP)." *See* Exhibit 4.

21. The invoices were sent to both Erika Ledezma for the local hospital and a representative for the Debtors.

22. Miami Dade invoiced Coral Gables Hospital for a mandatory payment of $3,680,716.

23. The Debtors did not pay this invoice, but HSA paid the invoice in January 2025. Thus, HSA is entitled to all funds for Coral Gables Hospital as a result of this mandatory payment made by HSA.

24. Miami Dade invoiced Hialeah Hospital for a mandatory payment of $4,730,805.

7

25. The Debtors did not pay this invoice, but HSA paid the invoice in January 2025. Thus, HSA is entitled to all funds for Hialeah Hospital as a result of this mandatory payment made by HSA.

26. Miami Dade invoiced North Shore Medical Center[6] for a mandatory payment of $11,232,006.

27. The Debtors did not pay this invoice, but HSA paid the invoice in January 2025. Thus, HSA is entitled to all funds for North Shore Medical Center as a result of this mandatory payment made by HSA.

28. Miami Dade invoiced Palmetto General Hospital for a mandatory payment of $9,744,871.

29. The Debtors did not pay this invoice, but HSA paid the invoice in January 2025. Thus, HSA is entitled to all funds for Palmetto General Hospital as a result of this mandatory payment made by HSA.

30. In each instance, the Debtors had to opportunity to pay the invoices for the HDPP Funds, but chose not to.

## C. HSA Is Entitled to All HDPP Payments

31. ACHA is currently preparing to distribute HDPP Funds, with funds expected to be distributed on or around April 28, 2025. The funds are expected to be approximately $55 million in total.

32. But for the payments made by HSA under the invoices, as set forth above, the Hospitals **would not be eligible** for receipt of these HDPP Funds. The Debtors were aware of

---

[6] HSA's fifth hospital, Florida Medical Center, falls under North Shore Medical Center for such Program Participation Payments and as such is part of this assessment.

this and stated such to HSA. As such, the Parties negotiated Section 5.16 for this very reason.

33. AHCA has also acknowledged in previous conversations the money should go to HSA.

34. Accordingly, HSA is clearly entitled to receipt of the HDPP Funds.

**D. The Debtors Are Wrongfully Seeking to Divert HSA's Money Into the Estate, In Contravention of the Court's Orders and At Great Risk to Patient Safety**

35. Notwithstanding the clear contractual language, the understanding of the parties, and the expenditures made by HSA, the Debtors now seek to have AHCA direct the payments under the HDPP to Debtors, rather than to the Hospitals. *See* Weil Letter to AHCA et al., Exhibit 5.

36. HSA **would not have paid** the invoices received without the expectation of receiving the HDPP Funds. But HSA *did* pay the invoices, based on the negotiated deal reflected in the governing contract, and is now counting on receipt of those funds to operate the Hospitals.

37. Given the repeated behavior of the Debtors' intentional misappropriation of funds, the Court must act now to prevent Debtor from misdirecting these AHCA funds immediately upon receipt from the state of Florida. And given the emergency nature of the continued operations of all five Florida Hospitals providing life-saving treatment, which are counting on the HDPP Funds to continue operating, this Court is the only venue that can provide the immediate emergency relief requested today.

**BASIS FOR RELIEF REQUESTED**

38. This Court clearly has both jurisdiction to enforce its own sale orders, and the authority to do so. *See In re IPDN Corp.*, 352 B.R. 870, 877 (Bankr. E.D. Mo. 2006) ("[T]he court has jurisdiction not only to enter a sale order but also to interpret and enforce that order");

*see also Travelers Ins. v. St. Jude Hosp.*, 38 F.3d 1414, 1416–17 (5th Cir. 1994) (providing that the court's authority to enforce its own orders is explicit); *see also In re Cont'l Airlines, Inc.*, 236 B.R. 318, 325 (Bankr. D. Del. 1999) (finding that a court possesses "the inherent authority to enforce its own orders"); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *In re Rodriguez*, 252 F.3d 435 (5th Cir. 2001) ("When an estate is in administration, a bankruptcy court retains jurisdiction to interpret and enforce its own orders to ensure their proper execution").

39. Further, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). Courts have consistently recognized that section 105 of the Bankruptcy Code grants bankruptcy judges, broad (though not unlimited) authority to take actions necessary or appropriate to prevent an abuse of process. *See, e.g.*, *Marrama v. Citizens Bank*, 549 U.S. 365, 375 (2007) (recognizing the "broad authority granted to bankruptcy judges to take any action that is necessary or appropriate to prevent an abuse or process described in section 105(a) of the Code" (quotes omitted)); *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760 (5th Cir. 1995) (recognizing that "we interpret section 105 liberally" as long as any action taken is otherwise consistent with the Bankruptcy Code).

40. Courts in the Fifth Circuit have granted similar such relief in the past. *See e.g.*, *In re KLD Energy Technologies*, Case No. 16-10345 (HCM) (Bankr. W.D. Tex Aug. 3, 2017) ECF No. 536 (order requiring purchaser of debtor's assets to make certain payments pursuant to both the parties' asset purchase agreement and sale order entered by the bankruptcy court). *See also In re Tritek international Inc.*, Case No. 23-10520 (TMH) ECF No. 399 (Bank. D. Del. Aug. 29, 2023) (order requiring purchaser of debtors' operating assets to return certain funds that

purchaser improperly kept in contravention of both the parties' asset purchase agreement and sale order entered by the bankruptcy court); *In re Rite Aid Corp*, Case No. 23-18993 (MBK) ECF No. 3920 (Bankr. D. NJ. June 25, 2024) (order requiring purchaser of certain of debtor' assets to assume specified liabilities and barring purchaser from disclaiming those liabilities).

41. Here, the Debtors are seeking to wrongfully gain access to funds to which they have no entitlement, in direct contravention of the agreement between the parties which was approved by this Court. The Court can and should prevent this from happening, to maintain the integrity of the sale process and ensure that the Debtors are not able to (yet again) imperil patient safety in the name of financial gain.

## **EMERGENCY CONSIDERATION**

42. HSA affiliates are requesting emergency relief to prohibit the withholding of HSA's revenues and prevent the dissipation of HSA's property.

## **NOTICE**

43. Notice of this Motion will be served upon any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Local Rule 9013-1(d).

WHEREFORE, the HSA affiliates respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

DATED: April 24, 2025  
HOUSTON, TEXAS            */s/ Ross Spence*  
                          Ross Spence (Texas Bar No. 18918400)  
                          Ross Spence, PC  
                          4582 Elm  
                          Bellaire, TX 77401  
                          (713) 201-0878  
                          ross@rossspence.com

11

        Asim Ghafoor (SDTX Bar #1384109)
        HSA Regional Counsel
        1401 St. Joseph Parkway
        Houston, TX 77002
        (202) 330 1469
        aghafoor@hsahospitals.com
        ATTORNEYS FOR HSA

## CERTIFICATE OF NECESSITY OF REQUEST FOR EMERGENCY HEARING

I HEREBY CERTIFY, as a member of the Bar of the Court, that I have carefully examined the matter under consideration and to the best of my knowledge, information and belief formed after reasonable inquiry, all allegations are well grounded in fact and all contentions are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law can be made, that the matter under consideration is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation, and there is just cause to request a consideration of the foregoing pleading on an emergency basis:

/s/ *Asim Ghafoor*
Asim Ghafoor

**<u>CERTIFICATE OF SERVICE</u>**

     I hereby certify that, on April 24, 2025, a true and correct copy of the foregoing document was served as provided by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas as well as actual notice to Debtors' counsel, the U.S. Trustee, and the Committee counsel by email.

                                                                           */s/ Ross Spence*
                                                                           Ross Spence