IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE: §
§  CASE NO. 24-90213
STEWARD HEALTH CARE SYSTEM, §
LLC.,[1] §  CHAPTER 11
§
DEBTORS. §

## UNITED STATES TRUSTEE'S EXPEDITED MOTION TO DISMISS OR CONVERT PURSUANT TO 11 U.S.C. § 1112(B)

> This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.
>
> Represented parties should act through their attorney.
>
> Expedited relief has been requested. If the Court considers the motion on an expedited basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the expedited consideration is not warranted, you should file an immediate response.
>
> EXPEDITED RELIEF IS REQUESTED NOT LATER THAN MAY 29, 2025, at 10:30 A.M CENTRAL STANDARD TIME.

TO THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE:

     Kevin M. Epstein, the United States Trustee for the Southern District of Texas (the "U.S.

Trustee"), moves for an order converting the above captioned Chapter 11 cases for "cause," or in

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201

the alternative, dismissing these cases to Chapter 7 under 11 U.S.C. § 1112(b). In support of his request, the U.S. Trustee states as follows:

## I.    INTRODUCTION

1.    Cause exists to convert or dismiss these cases because they are administratively insolvent with no realistic path towards a confirmable plan of reorganization. Ordinary and operational administrative claimants, many of whom provided post-petition life-saving supplies and services to the Debtors, have not been paid.  The administrative burn rate is exorbitant and unsustainable, with expenses continuing to accrue daily. The latest fee statement from the Debtors' lead bankruptcy attorneys evidences that attorneys' fees and expenses of approximately $85,000,000 have accrued, as of January 31, 2025.[2] Upon information and belief, the professional fees as of the date of this motion, for primary counsel alone, are north of $100 million. Although the Debtors have made meaningful progress since the petition date, at this juncture, there is little remaining benefit to stakeholders in the continued administration of these Chapter 11 cases because the Debtors cannot pay the estimated $127 million in administrative claims on the effective date. Proceeding with a contested and expensive confirmation process for a facially unconfirmable plan would only further burden the estate with significant unrecoverable costs. The Debtors' estates simply cannot afford this unnecessary financial gamble.

2.    The Debtors are seeking to exit these bankruptcy cases with a plan that violates the Bankruptcy Code. A fundamental tenet of bankruptcy law is that administrative creditors are entitled to the highest priority of payment. *See* 11 U.S.C. § 1129(a)(9).  A plan cannot be confirmed unless all administrative expenses are paid in full on the effective date. This is a core promise of

---

[2] *See Summary Coversheet to Third Interim Fee Application of Weil, Gotshal & Manges LLP, Attorney for Debtors, for the Period from November 1, 2024, Through and Including January 31, 2025.* ECF 4254.

the bankruptcy system—administrative claimants who continue to provide goods and services to a debtor after the bankruptcy filing will be paid in full for those goods or services. Here, the Debtors concede in the Disclosure Statement that they cannot pay their administrative claims but suggest an alternative mechanism that does not comply with the Bankruptcy Code.

3.     The Administrative Expense Claims Consent Program forces *certain* administrative claimants to accept less than payment in full.  Reliance on such mechanism in a chapter 11 case is flawed and impermissible because a chapter 11 plan cannot force administrative claimants to accept lesser terms. A mechanism of forced consent to accept lesser terms is not supported by the Bankruptcy Code or applicable law. The Court should reject the notion that certain administrative expenses are of lesser importance and do not have to be paid in full. Permitting the Debtors to sidestep their obligation to pay the ordinary administrative claimants in full, many of whom faithfully provided post-petition goods and services that ensured  the safety of patients and the Debtors' continued operations during these cases, while allowing professionals to be paid in full undermines the integrity of the bankruptcy system. If this Court authorizes this mechanism, ordinary administrative claimants in future cases—many of whom provide essential goods and services to debtors in bankruptcy—will think twice before providing services or supplies to debtors. The approval of this ill-advised mechanism could have a chilling effect on future chapter 11 cases,  jeopardize the ability of future debtors to obtain post-petition goods and services and successfully reorganize.  In the healthcare context, this could lead to disastrous results given that uninterrupted services and the safety of patients are paramount concerns when a case is filed.

4.     For these reasons, the Court should convert or dismiss these cases particularly given that the Debtors' Disclosure Statement demonstrates that these cases are administratively insolvent, and the Debtors cannot pay the administrative expenses in full by the effective date.

## II.   <u>JURISDICTION</u>

5.      This is a core proceeding concerning the administration of the estate pursuant to 28 U.S.C. § 157(b)(2)(A) which this Court may hear and determine pursuant to IOP 15(A) and LR 40.3.1 of the U.S. District Court for the Southern District of Texas.

6.      Venue in this district appears proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The U.S. Trustee has standing to request dismissal or conversion under 11 U.S.C. § 307 and 28 U.S.C. § 586(a)(3).

## III.   <u>FACTUAL SUMMARY</u>

8.      On May 6, 2024, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The cases are jointly administered.

9.      The Debtors are authorized to continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

10.      On April 28, 2025, the Debtors filed the Plan, Disclosure Statement, and the Solicitation Motion. ECF Nos. 4743, 4744, and 4745, respectively.

11.      The Disclosure Statement disclosed that 2,803 administrative claims were filed with the Court asserting an astounding $102.86 ***billion*** in administrative expenses.  *See* ECF No. 4744, Section IV.R Although many of the motions requesting administrative expenses have not been adjudicated, the Debtors assert that "the responsibility of the Debtors is approximately $127 million, including up to approximately $13 million in 503(b)(9) claims, approximately $103 million of accounts payable claims, and approximately $12 million in other claims (including employee, litigation, regulatory, insurance, tax, and real estate claims)." *Id*. Although recognizing that there are $127 million in administrative expense claims, the Debtors have yet to set aside that amount to ensure that administrative expenses are paid in full by the effective date.

4

12.     Article 1 of the Plan at 1.1 defines Administrative Expense Claim to mean "any Claim for a cost or expense of administration incurred during the Chapter 11 Cases of a kind specified under sections 327, 328, 330, 365, 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' businesses and (ii) Professional Fee Claims, but excluding FILO DIP Claims, FILO Bridge Claims, Intercompany Claims, and Priority Tax Claims." ECF No. 4743.

13.     In the Plan, the Debtors do not propose to pay administrative claims in full as required by the Bankruptcy Code. Instead, the Debtors devised an "Administrative Claims Consent Program," that requires ordinary administrative claimants to reduce their allowed claims by 50% reduction and thereafter share $12.5 million pro rata. Notably, Professional Fee Claims and FILO DIP Claims which should be treated similarly are excluded from the Administrative Claims Consent Program, and Professional Fee Claims "Shall be paid in full in Cash in such amounts as are Allowed by the Bankruptcy Court . . . ." Plan, Art. II.2.3.a. The Debtors also propose to send ordinary administrative claimants opt out forms so that claimants who "do not timely, properly, and affirmatively opt-out" will be deemed to have agreed to the terms of the Administrative Expenses Claims Consent Program. ECF No. 4744, Section I.B.

14.     The Debtors' Plan also imposes a "Minimum Participation Threshold" on administrative claimants. The Disclosure Statement explains that "If Holders of more than 25% (in dollar amount) of the Debtors' estimated Allowed Administrative Expense Claims opt-out of the Administrative Expense Claims Consent Program, and unless such condition is waived by the Debtors and the Creditors' Committee, the Administrative Expense Claims Consent Program will

not be consummated." ECF 4744, Section I.B. The Disclosure Statement does not provide whether the Plan would be confirmable if more than 25% holder of administrative claimants opted out of the Administrative Expense Claims Consent Program.

## IV.   ARGUMENT

### A.   Cause exists to dismiss or convert these cases because the Debtors are administratively insolvent.

15.    In relevant part, Section 1112(b) of the Bankruptcy Code provides that on the request of a party in interest, and after notice and a hearing, the court shall convert the case to Chapter 7 or dismiss the case, whichever is in the best interests of creditors of the estate, so long as the movant establishes "cause."  *See* 11 U.S.C. § 1112(b)(1).

16.    Section 1112(b)(4) sets forth a list of sixteen grounds that constitute "cause" for conversion or dismissal. *See* 11 U.S.C. § 1112(b)(4)(A)-(P).  This list is not exhaustive, and a case may be dismissed or converted for causes other than those specifically identified in section 1112(b)(4).  *See In re TMT Procurement Corp.*, 534 B.R. 912, 917 (Bankr. S.D. Tex. 2015); *In Re Zamora-Quezada*, 622 B.R. 865, 879, 886 (Bankr. S.D. Tex. 2017).

17.    The Court shall dismiss a case for "cause" if the Court finds that there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4)(A); *In re Ford Steel, LLC*, 629 B.R. 871, 879-80 (Bankr. S.D. Tex. 2021).  There are two elements to consider under Section 1112(b)(4)(A): (i) a "substantial or continuing loss to or diminution of the estate," and (ii) the "absence of a reasonable likelihood of rehabilitation."   *See* 11 U.S.C. § 1112(b)(4)(A).  Both elements are present in these cases.

18.    With respect to substantial or continuing loss to or diminution of the estate, Courts routinely held that a "[n]egative cash flow and an inability to pay current expenses as they come

due can satisfy the continuing loss or diminution of the estate standard for purposes of § 1112(b)." *See In re TMT Procurement Corp.*, 534 B.R. 912, 919 (Bankr. S.D. Tex. 2015) (citing *Nester v. Gateway Access Sols., Inc. (In re Gateway Access Sols., Inc.)*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007)). "Negative cash flow means that the estate's current liabilities are increasing more rapidly than cash is available to pay as due." 7 *Collier on Bankruptcy* ¶ 1112.04[6][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

19.     In these cases, there is a continuing loss and diminution of the Debtors' estates because administrative expenses continue to accrue, and the Disclosure Statement discloses that the Debtors have no means to pay administrative claims in full, whether they are $102 billion or the Debtors' optimistic assertion that they could be reduced to $127 million. Misguided by the notion that a chapter 11 plan could force administrative claimants to accept less than payment in full, the Debtors offer a **compulsory** "Administrative Expense Claims Consent Program" that imposes an immediate 50% reduction on  ordinary administrative claimants  and establishes a paltry $12.5 million pro rata pot —an amount woefully insufficient to satisfy their claims. By contrast and to the detriment of the similarly situated ordinary administrative claimants, the Debtors propose to pay in full over $100 million in professional fees and expenses to lead counsel alone.

20.     The second element of 11 U.S.C. § 1112(b)(4)(A) requires the Court to find an absence of reasonable likelihood of rehabilitation. "Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization."  *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 577 (5th Cir. 1991).  Courts have also found that a debtor lacks a reasonable likelihood of rehabilitation where its only source of income is speculative. *See In re Irasel Sand, LLC*, 569 B.R. 433, 442 (Bankr. S.D. Tex. 2017) (citing *Quarles v. U.S. Tr.*, 194 B.R. 94, 97 (W.D.

Va. 1996)); *In re Original IFPC Shareholders, Inc.*, 317 B.R. 738, 743–44 (Bankr. N.D. Ill. 2004). Moreover, rehabilitation has been defined as whether the debtor will be able to reestablish its business—"the standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort." *In re Irasel Sand, LLC*, 569 B.R. 433, 442 (Bankr. S.D. Tex. 2017) (quoting 7 *Collier on Bankruptcy* ¶ 1112.04[6][a][ii]).

21.     The Court should dismiss or convert these cases because the Debtors have no realistic prospect for reorganization. The Debtors have sold all of their hospitals and are pursuing a plan of liquidation—there are no jobs left to preserve, no patients left to serve, and the estates' remaining functions consist solely of pursuing litigation claims that could just as effectively be administered by a trustee in a Chapter 7 case. Moreover, the proposed plan cannot be confirmed because it directly contravenes the Bankruptcy Code and general principles of fairness to creditors. The plain language of Section 1129(a)(9)(A) requires that "with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim." Yet, the Debtors do not propose to pay even their own optimistic estimate of $127 million in administrative expenses by the effective date. Instead, they attempt to circumvent this requirement through a coercive "Administrative Expense Claims Consent Program," which is inconsistent with the Bankruptcy Code's core protection for ordinary administrative claimants. *See* 11 U.S.C. § 507. Furthermore, the Plan improperly gerrymanders similarly situated creditors by requiring ordinary administrative claimants to immediately take a 50% reduction under the pretense of consent while professional fees are paid in full. *See* 11 U.S.C. § 1123(a)(4). Even if the Debtors prevailed in their admin claim objections, and in the best-case scenario of $127

million, they still have not set aside this amount to pay administrative claims. As drafted in the Plan, the estates have no reasonable likelihood of rehabilitation and the second element of Section 1112(b)(4)(A) is satisfied.

## V.   BASIS FOR EXPEDITED RELIEF

22.    The Court scheduled the Solicitation Motion and Disclosure Statement hearing for May 29, 2025, at 10:30 a.m. *See* ECF No. 4777. As argued above, the Court should not allow the Debtors to begin an expensive solicitation process when the terms of the Plan are violative of the Bankruptcy Code. The U.S. Trustee's request for conversion of these cases should be resolved prior to any approval of the solicitation process. Additionally, employees of certain deferred compensation plans also requested emergency relief for conversion of these cases, which the U.S. Trustee believes that his conversion request should be heard at the same time. *See* ECF No. 4912. Accordingly, it is in the best interest of the estates and parties in interest to consider the U.S. Trustee's motion on an expedited basis.

**WHEREFORE**, the U.S. Trustee respectfully requests this Court enter an order, on an expedited basis, converting these cases to cases under Chapter 7 of the Bankruptcy Code, and for such other relief as this Court deems just.

Date: May 25, 2025                                  Respectfully Submitted,

                                                    KEVIN M. EPSTEIN
                                                    UNITED STATES TRUSTEE
                                                    REGION 7, SOUTHERN AND WESTERN
                                                    DISTRICTS OF TEXAS

                                                    By: */s/ Ha Nguyen*
                                                        Ha Nguyen, Trial Attorney
                                                        CA Bar #305411
                                                        Fed. ID No. 3623593
                                                        United States Department of Justice
                                                        Office of the United States Trustee
                                                        515 Rusk Street, Suite 3516
                                                        Houston, Texas 77002

E-mail: Ha.Nguyen@usdoj.gov
Cell: 202-590-7962

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission to all Pacer System participants in these bankruptcy cases on May 25, 2025.

*/s/ Ha Nguyen*
Ha Nguyen, Trial Attorney

## CERTIFICATE OF ACCURACY

I certify that, to the best of my knowledge and belief, the foregoing is true and correct.

*/s/ Ha Nguyen*
Ha Nguyen, Trial Attorney