**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| **STEWARD HEALTH CARE SYSTEM** | § | Case No. 24-90213 (CML) |
| **LLC**, *et al.*, | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | Re: Docket No. 4744 |
| | § | |

**NOTICE OF FILING OF LIQUIDATION**
**ANALYSIS WITH RESPECT TO DISCLOSURE**
**STATEMENT FOR JOINT CHAPTER 11 PLAN OF LIQUIDATION OF**
**STEWARD HEALTH CARE SYSTEM LLC AND ITS AFFILIATED DEBTORS**

**PLEASE TAKE NOTICE THAT**, on April 28, 2025, Steward Health Care System LLC

and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11

cases (the "**Debtors**"), filed the *Disclosure Statement for Joint Chapter 11 Plan of Liquidation of

Steward Health Care System and Its Affiliated Debtors* (Docket No. 4744) (the "**Disclosure**

**Statement**").

**PLEASE TAKE FURTHER NOTICE THAT**, the Debtors hereby file the liquidation

analysis attached hereto as **Exhibit A** ("**Liquidation Analysis**"), which will be attached as

Exhibit C to the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE THAT**, the Disclosure Statement and

Liquidation Analysis can be viewed and obtained (a) by accessing the Court's website at

https://www.txs.uscourts.gov/page/bankruptcy-court, or (b) from the Debtors' claims and noticing

---

[1]     A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims
and noticing agent at https://restructuring.ra.kroll.com/Steward.  The Debtors' service address for these chapter
11 cases is 2811 McKinney Avenue, Suite 300, Dallas, Texas 75204.

agent, Kroll Restructuring Administration, LLC, at https://restructuring.ra.kroll.com/Steward.

Note that a PACER password is needed to access documents on the Court's website.

Dated:  May 26, 2025
       Houston, Texas

   /s/  Clifford W. Carlson
WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
Stephanie N. Morrison (24126930)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Gabriel.Morgan@weil.com
       Clifford.Carlson@weil.com
       Stephanie.Morrison@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Jeffrey D. Saferstein (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Jeffrey.Saferstein@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
David J. Cohen (admitted *pro hac vice*)
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone:  (305) 577-3100
Facsimile:  (305) 374-7159
Email:   DavidJ.Cohen@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

LATHAM & WATKINS LLP
Ray C. Schrock (admitted *pro hac vice*)
Candace M. Arthur (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email:   Ray.Schrock@lw.com
       Candace.Arthur@lw.com

*Attorneys for Debtors*
*and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that on May 26, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

_/s/ Clifford W. Carlson_
Clifford W. Carlson

## Exhibit A

**Liquidation Analysis**

## Exhibit C

**Liquidation Analysis**

# LIQUIDATION ANALYSIS[1]

## Introduction

To demonstrate that the Plan satisfies the "best interests of creditors" test, the Debtors, with the assistance of their restructuring advisors, AP Services LLC, an affiliate of AlixPartners, LLP, have prepared a hypothetical liquidation analysis (the "**Liquidation Analysis**"), which is based upon certain assumptions discussed in the Disclosure Statement and accompanying notes to the Liquidation Analysis.

The Liquidation Analysis sets forth an estimated range of recovery values for each Class of Claims and Interests under the Plan upon disposition of the Debtors' assets pursuant to a hypothetical chapter 7 liquidation. Accordingly, and as set forth in greater detail below, the Debtors believe that the Plan satisfies the "best interests of creditors" test set forth in section 1129(a)(7) of the Bankruptcy Code.

## Statement of Limitations

The preparation of a liquidation analysis is an uncertain process involving the use of estimates and assumptions that, although considered reasonable by the Debtors based upon their business judgment and input from their advisors, are inherently subject to significant business, economic, and competitive risks, uncertainties and contingencies, most of which are difficult to predict and many of which are beyond the control of the Debtors, their management, and their advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation and unanticipated events and circumstances could materially affect the ultimate results in an actual chapter 7 liquidation. Without limiting the generality of the foregoing, the estimates included in the Liquidation Analysis for post-petition administrative tax claims are based on a variety of assumptions, which may differ materially from the results in an actual chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtors' assets were liquidated and distributed in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis and values stated herein have not been subject to any review, compilation, or audit by any independent accounting firm. In addition, various liquidation decisions upon which certain assumptions are based are subject to change. As a result, the actual amount of claims that would ultimately be Allowed against the Debtors' estates could vary significantly from the estimates stated herein, depending on the nature and amount of claims asserted during the pendency of the chapter 7 case. Similarly, the value of the Debtors' assets in

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

a liquidation scenario is uncertain and could vary significantly from the values set forth in the Liquidation Analysis.

The Liquidation Analysis should not be used for any other purpose. The Liquidation Analysis does not include estimates for: (i) certain claims that may be entitled to priority under the Bankruptcy Code, including certain administrative priority claims under sections 503(b) and 507(b) of the Bankruptcy Code, or (ii) additional unsecured and contract breakage claims arising from a chapter 7 liquidation. More specific assumptions are detailed in the notes below. ACCORDINGLY, NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS OF A LIQUIDATION OF THE DEBTORS WOULD OR WOULD NOT, IN WHOLE OR IN PART, APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED HEREIN. THE ACTUAL LIQUIDATION VALUE OF THE DEBTORS IS SPECULATIVE AND RESULTS COULD VARY MATERIALLY FROM ESTIMATES PROVIDED HEREIN.

In addition, the Liquidation Analysis includes estimates for Claims not currently asserted in the chapter 11 cases, but which could be asserted and allowed in a chapter 7 liquidation, including unpaid chapter 11 Administrative Expense Claims and chapter 7 administrative claims such as wind-down costs and trustee fees. To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing this Liquidation Analysis. Therefore, the Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims under the Plan. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

**Basis of Presentation**

This Liquidation Analysis has been prepared assuming that the Debtors' chapter 11 cases are converted to chapter 7 cases on or about July 9, 2025 (the "**Liquidation Date**"), which is after the FILO Settlement has been consummated, including the creation of the Litigation Trust and the transfer of substantially all of the Debtors' assets free and clear to the Litigation Trust (to the fullest extent permissible by applicable law). It is assumed that on the Liquidation Date, the Bankruptcy Court would appoint a chapter 7 trustee to oversee the liquidation of the Debtors' estates. The Debtors' assets that have been transferred to the Litigation Trust would be monetized through that Litigation Trust with proceeds distributed to the holders of Class A-1 Interests, Class A-2 Interests, and Class B Interests in accordance with the waterfall structure for the Litigation Trust. To the extent there is any distribution to Class B Interests in the Litigation Trust, that value would be available for distribution by the chapter 7 trustee.

The timeframe associated with the Liquidation Analysis is uncertain and there is no assurance that the recoveries assigned to the Class B Interests would in fact be realized. Under section 704 of the Bankruptcy Code, a trustee must, among other duties, collect and convert the property of the estate as expeditiously (generally in a distressed process) as is compatible with the best interests of parties-in-interest.

The Liquidation Analysis is based on estimated asset and liability values as of the Liquidation Date (except as otherwise indicated). The actual assets available for distribution to the Debtors' estates and claims arising in the event of an actual liquidation may differ from the assets assumed to be available pursuant to the Liquidation Analysis.

The Debtors have neither fully evaluated all claims filed against the Debtors or adjudicated all such claims before the Bankruptcy Court. Accordingly, the amount of the total Allowed Claims against the Debtors' estates may differ from the claim amounts used in the Liquidation Analysis. In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of books and records and a review of claims asserted against the Debtors to account for estimated liabilities.

In addition, in the event of a chapter 7 liquidation, it is possible that a chapter 7 liquidation would result in increased costs and expenses arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee. This Liquidation Analysis assumes that the Debtors' costs of liquidation under chapter 7 includes the fees payable to the chapter 7 trustee as well as those fees that might be payable to attorneys and other professionals that the chapter 7 trustee might engage. Other liquidation costs include the expenses incurred during the chapter 11 cases that are allowed as administrative Claims in the chapter 7 cases, such as compensation for attorneys, financial advisors, appraisers, accountants, and other professionals for the Debtors and statutory committees appointed in the chapter 11 cases and costs and expenses of members of such committees, as well as other compensation Claims. The foregoing types of Claims, costs,

expenses, fees, and such other Claims that may arise in a liquidation case would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay prepetition priority and unsecured Claims, or available for distribution to the holders of Interests.

Moreover, as of the Liquidation Date, the total distributable assets will already be held in the Litigation Trust, whereby the Estate or its successors, including any chapter 7 trustee, will only hold Class B Interests.  In accordance with the terms of the FILO Settlement, if the Plan is not confirmed, and the chapter 11 cases are instead converted to  chapter 7, $15 million of Retained Cash will no longer be available to the Estate, thus the distributable assets immediately falls by $15 million, including the $12.5 million for the Administrative Expense Claims Consent Program previously made available to the Debtors for satisfying Allowed Administrative Expense Claims. Moreover, under a chapter 7 liquidation, the total amount of the Allowed Administrative Expense Claims will not be reduced as a result of the settlements that would have otherwise been achieved under the Administrative Expense Claims Consent Program pursuant to the Plan.  Additionally, in accordance with the terms of the FILO Settlement, if the Plan is not confirmed, the entire Post-FILO Repayment Variable Component will be paid in full in cash upon receipt of the applicable Trust Litigation Proceeds, rather than 37.5% of the Post-FILO Repayment Variable Component being subordinated to administrative and priority claims.

In addition, the Debtors believe that a chapter 7 liquidation may also result in increased post-petition tax Claims, which would be administrative claims senior to the unsecured claims.

Accordingly, the Debtors believe that liquidation under chapter 7 would result in smaller distributions being made to creditors than those provided for in the Plan because of: (1) the likelihood that the assets would have to be sold or otherwise disposed of over a short period of time; (2) potential additional administrative expenses required for the appointment of a chapter 7 trustee, including a 3% trustee fee, along with other inefficiencies associated with new professionals representing the chapter 7 trustee; (3) additional expenses and Claims, some of which would be entitled to priority; and (4) the possibility that a conversion to a chapter 7 could result in employees with critical information and know-how leaving the Debtors' estates, resulting in incremental challenges to recoveries for the Litigation Trust and thus the Class B Interests.

In light of the foregoing, the Debtors submit that a chapter 7 liquidation would result in reduced distributable assets, increased expenses, employee attrition, and the prospect of additional claims that were not asserted in the chapter 11 cases.  Accordingly, the Debtors believe that the Plan provides an opportunity to bring the highest return for creditors.

The Liquidation Analysis was prepared on an entity-by-entity basis for the Debtors and is displayed below on a consolidated basis for convenience.  Asset recoveries accrue first to satisfy creditor claims at the legal entity in which liabilities have been incurred. Although presented below on a consolidated basis, the "best interests of creditors" test is satisfied for each Debtor entity on a deconsolidated basis.

## DETAILED LIQUIDATION ANALYSIS

The Liquidation Analysis for the Debtors was analyzed on an entity-by-entity basis. The following Liquidation Analysis summary is displayed on a consolidated basis and should be reviewed in conjunction with the associated notes.

| Liquidation Analysis - Summary of Debtors | | | | |
|---|---|---|---|---|
| *In $Thousands* | Note: | Recovery $ Low | | Recovery $ High |
| Estimated Value of Class B Interests | [A] | | 94,294 | 204,080 |
| **Total Distributable Assets** | | **$** | **94,294** | **$  204,080** |
| | | | | |
| **Trustee Administrative Claims** | [B] | $ | 10,829 | $  16,122 |
| Trustee Administrative Recovery | | | 10,829 | 16,122 |
| *Trustee Administrative Recovery %* | | | *100.0%* | *100.0%* |
| | | | | |
| **Post-Petition Tax Claims** | [C] | $ | 24,461 | $  28,141 |
| Post-Petition Tax Recovery | | | 19,660 | 28,141 |
| *Post-Petition Tax Recovery %* | | | *80.4%* | *100.0%* |
| | | | | |
| **Pre-Conversion Administrative Claims** | [D] | $ | 126,000 | $  126,000 |
| Pre-Conversion Administrative Recovery | | | 55,349 | 81,665 |
| *Pre-Conversion Administrative Recovery %* | | | *43.9%* | *64.8%* |
| | | | | |
| **Priority Claims** | [E] | $ | 66,385 | $  28,857 |
| Priority Recovery | | | - | 662 |
| *Priority Recovery %* | | | *0.0%* | *2.3%* |
| | | | | |
| **General Unsecured Claims** | [F] | $ | 2,464,870 | $  1,464,643 |
| General Unsecured Recovery | | | 8,456 | 77,489 |
| *General Unsecured Recovery %* | | | *0.3%* | *5.3%* |

### Notes to the Liquidation Analysis

[A] Estimated Value of Class B Interests: Estimated Value of Class B Interests reflect the estimated value of a chapter 7 trustee's interest in the Litigation Trust. Importantly, the chapter 7 trustee would not have ready access to capital to fund the winddown of the estate and would need to quickly monetize the Class B Interests to cover estate claims and expenses, including taxes. Given this lack of liquidity, the chapter 7 trustee would likely have to sell its Class B Interests at a significant discount in order to raise the liquidity necessary to meet its obligations. Accordingly, the Debtors assume that such Class B Interests would be sold at a 50% discount.

**[B]** <u>Trustee Administrative Claims</u>:  Trustee Administrative Claims reflect that, in a chapter 7 scenario, the trustee will incur incremental administration expenses due to a new chapter 7 trustee and its professionals, including general inefficiencies handing over the estate to a new, uninformed party, as well as the trustees' 3% fee on proceeds.  Trustee Administrative Claims are expected to receive a 100% recovery.

**[C]** <u>Post-Petition Tax Claims</u>:  Post-petition tax claims consist of approximately $24.5-$28.1 million related to income taxes for the tax years ending on and after August 31, 2025, which will be paid in full prior to any payment of Pre-Conversion Administrative Claims.  The amounts for post-petition tax claims reflect additional post-petition administrative tax claims that the Debtors expect they would incur in a chapter 7 liquidation scenario, which the Debtors anticipate would largely come due in December 2025.[2]  Post-Petition Tax Claims are expected to receive a 80.4% to 100.0% recovery.

**[D]** <u>Pre-Conversion Administrative Claims</u>:  Pre-Conversion Administrative Claims consist of approximately $18 million of post-petition medical malpractice and workers compensation claims, and approximately $108 million of other post-petition administrative expense claims.  Because under a chapter 7 conversion, the Retained Cash will not be available to fund the Administrative Expense Claim Consent Program, no administrative claim concessions are made for the Pre-Conversion Administrative Claims.  Pre-Conversion Administrative Claims are expected to receive a 43.9% to 64.8% recovery.

**[E]** <u>Priority Claims</u>:  Priority Claims consist of asserted pre-petition tax claims that have priority under section 507 of the Bankruptcy Code.  Priority Claims are asserted on an entity-level basis. As a result, there are no Priority Claims at certain entities.  Holders of Priority Claims are expected to receive a 0.0% to 2.3% recovery in a chapter 7 liquidation.

**[F]** <u>General Unsecured Claims</u>:  General Unsecured Claims include deficiency claims from Administrative Claims and Priority Claims (i.e. the Administrative Claims and Priority Claims that would not be satisfied because the liable Debtor entity did not have sufficient asset values to satisfy such claims) and are expected to receive a 0.3% to 5.3% recovery.  The Plan recoveries range from 3.9% to 21.6%.

---

[2]   Under the Plan, the Debtors expect that such income taxes for tax years ending August 31, 2025 and after would either be eliminated or significantly reduced if the Plan Trust is implemented prior to the end of the Debtors' 2024-2025 taxable year (August 31, 2025).