**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM LLC, *et al.*,[1] | Case No. 24-90213 (CML) |
| Debtors. | (Jointly Administered) |

**AMENDED NOTICE OF APPEAL**

**Part 1: Identify the appellant(s)**

1.  Name(s) of appellant(s):
    The Commonwealth of Massachusetts, by and through the Executive Office of Health and Human Services

2.  Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

    For appeals in an adversary proceeding.
    ☐ Plaintiff
    ☐ Defendant
    ☐ Other (describe)

    For appeals in a bankruptcy case and not in an adversary proceeding.
    ☐ Debtor
    ☒ Creditor
    ☐ Trustee
    ☐ Other (describe)

**Part 2: Identify the subject of this appeal**

1.  Describe the judgment—or the appealable order or decree—from which the appeal is taken:
    Order (I) Approving Settlement with FILO Secured Parties; (II) Authorizing and Directing Transfer of Assets in Connection Therewith; (III) Authorizing Amendment to FILO Dip Credit Agreement and Continued Use of Cash Collateral; (IV) Granting Adequate Protection; (V) Approving Assumption and Assignment Procedures and Form and Manner of Notice of Assumption and Assignment; and (VI) Granting Related Relief [Docket No. 5035] attached as **Exhibit A**

---

[1]  A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward.  The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

2. State the date on which the judgment—or the appealable order or decree—was entered:
June 2, 2025

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment—or the appealable order or decree—from which the appeal is taken and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

| Party | Attorneys |
|---|---|
| *Appellant*:<br>The Commonwealth of Massachusetts | Andrea Joy Campbell, Attorney General<br>Hugh M. McDonald, Special Assistant Attorney General<br>Andrew M. Troop, Special Assistant Attorney General<br><br>**PILLSBURY WINTHROP SHAW PITTMAN LLP**<br><br>Andrew V. Alfano<br>31 West 52nd Street<br>New York, NY 10019<br>(212) 858-1000<br>andrew.alfano@pillsburylaw.com<br><br>L. James Dickinson<br>609 Main Street, Suite 2000<br>Houston, TX 77002<br>(713) 276-7654<br>james.dickinson@pillsburylaw.com |

| Party | Attorneys |
|---|---|
| _Appellee_:<br>Steward Health Care System LLC and its debtor affiliates | **WEIL, GOTSHAL & MANGES LLP**<br><br>Gabriel A. Morgan<br>Clifford W. Carlson<br>Stephanie N. Morrison<br>700 Louisiana Street, Suite 3700<br>Houston, TX 77002<br>(713) 546-5000<br>Gabriel.Morgan@weil.com<br>Clifford.Carlson@weil.com<br>Stephanie.Morrison@weil.com<br><br>Jeffrey D. Saferstein<br>767 Fifth Avenue<br>New York, NY 10153<br>(212) 310-8000<br>Jeffrey.Saferstein@weil.com<br><br>David J. Cohen<br>1395 Brickell Avenue, Suite 1200<br>Miami, FL 33131<br>(305) 577-3100<br>DavidJ.Cohen@weil.com<br><br>**LATHAM & WATKINS LLP**<br><br>Ray C. Schrock<br>Candace M. Arthur<br>1271 Avenue of the Americas<br>New York, NY 10020<br>(212) 906-1200<br>Ray.Schrock@lw.com<br>Candace.Arthur@lw.com |

| Party | Attorneys |
|---|---|
| *Party in Interest*:<br>The FILO Lenders, FILO Bridge Secured Parties (each as defined in that certain Amended and Restated Intercreditor Agreement dated February 21, 2024), and the FILO DIP Secured Parties (as defined in the *Final Order (I) Authorizing the Debtors to (A) Obtain New Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket. No. 1538]). | **MILBANK LLP**<br><br>Dennis F. Dunne<br>Michael W. Price<br>Andrew C. Harmeyer<br>Brian Kinney<br>55 Hudson Yards<br>New York, NY 10001<br>(212) 530-5000<br>ddunne@milbank.com<br>mprice@milbank.com<br>aharmeyer@milbank.com<br>bkinney@milbank.com<br><br>Andrew M. Leblanc<br>Brett P. Lowe<br>1850 K St NW, Suite 1100,<br>Washington, DC 20006<br>(202) 835-7500<br>aleblanc@milbank.com<br>blowe@milbank.com<br><br>Samir L. Vora<br>2029 Century Park East, 33rd Floor<br>Los Angeles, CA 90067<br>(424) 386-4000<br>svora@milbank.com<br><br>**PORTER HEDGES LLP**<br><br>John F. Higgins<br>Megan Young-John<br>1000 Main St., 36th Floor<br>Houston, TX 77002<br>(713) 226-6000<br>jhiggins@porterhedges.com<br>myoung-john@porterhedges.com |

| Party | Attorneys |
|---|---|
| *Party in Interest*:<br>The Official Committee of Unsecured Creditors of Steward Health Care System LLC and its debtor affiliates | **AKIN GUMP STRAUSS HAUER & FELD LLP**<br><br>Sarah Link Schultz<br>Marty L. Brimmage Jr.<br>Lacy M. Lawrence<br>2300 N. Field Street, Suite 1800<br>Dallas, TX 75201-2481<br>(214) 969-2800<br>sschultz@akingump.com<br>mbrimmage@akingump.com<br>llawrence@akingump.com<br><br>Ira S. Dizengoff<br>Brad M. Kahn<br>Avi E. Luft<br>One Bryant Park<br>New York, NY 10036-6745<br>(212) 872-1000<br>idizengoff@akingump.com<br>bkahn@akingump.com<br>aluft@akingump.com |
| *Party in Interest*:<br>Dr. Manisha Purohit, Dr. Diane Paggioli, Dr. James Thomas, Dr. Thomas Ross, Dr. Michael Regan, Dr. Peter Lydon, Dr. Sridhar Ganda and Dr. A. Ana Beesen | **DIAMOND MCCARTHY, LLP**<br><br>Allan B. Diamond<br>Christopher D. Johnson<br>909 Fanin Street, 37th Floor<br>Houston, TX 77010<br>(713) 333-5100<br>allan.diamond@diamondmccarthy.com<br>chris.johnson@diamondmccarthy.com<br><br>**BERNSTEIN, SHUR, SAWYER & NELSON**<br><br>Robert J. Keach<br>Adam R. Prescott<br>100 Middle Street<br>P.O. Box 9729<br>Portland, ME 04104-5029<br>(207) 774-1200<br>rkeach@bernsteinshur.com<br>aprescott@bernsteinshur.com<br>pmcdonald@bernsteinshur.com |

| Party | Attorneys |
|---|---|
| *Party in Interest*:<br>TRACO International Group S. De R.L. | **STEPTOE LLP**<br><br>Timothy Walsh<br>1114 Avenue of the Americas<br>New York, NY 10036<br>(212) 957-3085<br>twwalsh@steptoe.com |
| *Party in Interest*:<br>NorthStar Anesthesia, P.A. | **STROMBERG STOCK, PLLC**<br><br>Mark Stromberg<br>The Gild North, Campbell Centre I<br>8350 N. Central Expressway, Suite 1225<br>Dallas, TX 75206<br>(972) 458-5353<br>mark@strombergstock.com |
| *Party in Interest*:<br>UnitedHealthcare Insurance Company | **FERGUSON BRASWELL FRASER KUBASTA PC**<br><br>Rachael L. Smiley<br>2500 Dallas Parkway, Suite 600<br>Plano, TX 75093<br>(972) 378-9111<br>rsmiley@fbfk.law<br><br>**SHIPMAN & GOODWIN LLP**<br><br>Eric S. Goldstein<br>One Constitution Plaza<br>Hartford, Connecticut 06103-1919<br>(860) 251-5000<br>egoldstein@goodwin.com |

| Party | Attorneys |
|---|---|
| *Party in Interest*:<br>Cigna Health and Life Insurance Company | **HUNTON ANDREWS KURTH LLP**<br><br>Philip M. Guffy<br>600 Travis Street, Suite 4200<br>Houston, TX 77002<br>(713) 220-4200<br>pguffy@huntonak.com<br><br>**CONNOLLY GALLAGHER LLP**<br><br>Jeffrey C. Wisler<br>1201 North Market Street, 20th Floor<br>Wilmington, DE 19801<br>(302) 757-7300<br>jwisler@connollygallagher.com |
| *Party in Interest*:<br>Health Care Service Corporation | **SCHEEF & STONE LLP**<br><br>Kelly E. Kleist<br>2600 Network Blvd., Suite 400<br>Frisco, TX 75034<br>(214) 472-2100<br>kelly.kleist@solidcounsel.com |
| *Party in Interest*:<br>Aetna, Inc. | **MCGUIREWOODS LLP**<br><br>Cassandra Sepanik Shoemaker<br>2601 Olive St., Suite 2100<br>Dallas, TX 75201<br>(469) 372-3931<br>cshoemaker@mcguirewoods.com |
| *Party in Interest*:<br>Hartford Fire Insurance Company | **MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**<br><br>Gary D. Bressler<br>Michael R. Morano<br>300 Delaware Avenue, Suite 1014<br>Wilmington, DE 19801<br>302-300-4515<br>gbressler@mdmc-law.com<br>mmorano@mdmc-law.com |

| Party | Attorneys |
|---|---|
| *Party in Interest*:<br>Blue Cross and Blue Shield of Massachusetts, Inc. and Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. | **SEYFARTH SHAW LLP**<br><br>James B. Sowka<br>233 South Wacker Drive, Suite 8000<br>Chicago, IL 60606<br>(312) 504-5000<br>jsowka@seyfarth.com |
| *Party in Interest*:<br>Tac Med, Inc. | **WAUSON KING**<br><br>Anabel King<br>52 Sugar Creek Center Blvd., Suite 325<br>Sugar Land, TX 77478<br>(281) 242-0303<br>aking@w-klaw.com |

**Part 4: Optional election to have appeal heard by District Court**

Not applicable; no Bankruptcy Appellate Panel in district.

**Part 5: Sign below**

Dated: June 14, 2025
      New York, New York

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS,
By its attorney,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

By:    */s/ Hugh M. McDonald*
     Hugh M. McDonald (Bar No. NY2420974)
     Special Assistant Attorney General

Andrew M. Troop (Bar No. MA547179)
Special Assistant Attorney General

PILLSBURY WINTHROP SHAW PITTMAN LLP
Andrew V. Alfano (Bar No. NY5525241)
31 West 52nd Street
New York, NY 10019
Tel: 212-858-1000
Fax: 212-858-1500

L. James Dickinson (Bar No. 24105805)
609 Main Street, Suite 2000
Houston, TX 77002
Tel: 713-276-7654
Fax: 713-276-7673

## CERTIFICATE OF SERVICE

I certify that on June 14, 2025, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Hugh M. McDonald*
Hugh M. McDonald

# EXHIBIT A

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

June 02, 2025

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § § | **Chapter 11** |
| **STEWARD HEALTH CARE SYSTEM LLC,** *et al.*, | § § § | **Case No. 24-90213 (CML)** |
| Debtors.[1] | § § § § | **(Jointly Administered)** **Re: Docket No. 4746** |

**ORDER (I) APPROVING SETTLEMENT WITH FILO SECURED
PARTIES; (II) AUTHORIZING AND DIRECTING TRANSFER OF ASSETS IN
CONNECTION THEREWITH; (III) AUTHORIZING AMENDMENT TO FILO
DIP CREDIT AGREEMENT AND CONTINUED USE OF CASH COLLATERAL;
(IV) GRANTING ADEQUATE PROTECTION; (V) APPROVING ASSUMPTION
AND ASSIGNMENT PROCEDURES AND FORM AND MANNER OF NOTICE OF
ASSUMPTION AND ASSIGNMENT; AND (VI) GRANTING RELATED RELIEF**

Upon the motion, dated April 28, 2025 (the "**Motion**"),[2] of Steward Health Care

System LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases (collectively, the "**Debtors**"), for entry of an order pursuant to sections 362, 363,

and 105 of the Bankruptcy Code and Bankruptcy Rules 4001, 6004, and 9019, (i) approving the

terms and conditions of the settlement with the FILO Secured Parties and the Creditors' Committee

as set forth in the Settlement Term Sheet (the "**Settlement**"); (ii) authorizing and directing the

transfer by the Debtors of the Litigation Trust Assets to the Litigation Trust; (iii) authorizing the

DIP Amendment and use of cash collateral; (iv) granting adequate protection to the Prepetition

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 2811 McKinney Avenue, Suite 300, Dallas, Texas 75204.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the FILO DIP Order, or the *Settlement and Stay Relief Term Sheet* annexed to this Order as Exhibit 1 (the "**Settlement Term Sheet**"), as applicable.

Bridge Agent, the FILO Bridge Lenders, and the FILO DIP Secured Parties (collectively, the "**FILO Secured Parties**"); (v) authorizing and approving the Assumption and Assignment Procedures set forth in paragraphs 29 through 41 of this Order; and (vi) granting related relief; all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion and the hearing thereof having been provided; and such notice having been adequate and appropriate under the circumstances and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and upon the hearing held on the Motion; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their respective estates, creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor, and the Debtors having demonstrated good, sufficient and sound business justification for the relief granted herein, it is **HEREBY FOUND AND DETERMINED THAT:**[3]

      A.    **Findings and Conclusions.** The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the

---

[3]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Rule 7052 of the Bankruptcy Rules.

following findings of fact constitute conclusions of law, they are adopted as such.  To the extent

any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. **Jurisdiction.**  This Court has jurisdiction to hear and determine the Motion

and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 1334.  This is a core

proceeding within the meaning of 28 U.S.C. § 157(b), and as such, this Court has the authority to

enter a final order and authority to grant the relief contained herein.

C. **Venue.**  Venue of these chapter 11 cases and the Motion in this district is

proper under 28 U.S.C. §§ 1408 and 1409.

D. **Statutory Predicates.**  The statutory and legal predicates for the relief

requested in the Motion are sections 105, 361, 362, and 363 of the Bankruptcy Code and

Bankruptcy Rules 4001, 6004, and 9019.

E. **Business Justification; Fiduciary Duties.**  The Debtors have demonstrated

that entry into and consummation of the Settlement constitute the exercise by the Debtors of sound

business judgment, and such acts are in the best interests of the Debtors, their estates, and creditors,

and all parties in interest.  The Court finds that the Debtors have articulated good and sufficient

business reasons justifying the entry into and consummation of the Settlement.  The Debtors'

decision to enter into and consummate the Settlement constitutes a proper exercise of the fiduciary

duties of the Debtors and their respective directors, managers, and officers.

F. **Corporate Authority.**  The Debtors (i) have the corporate or other

organizational power and authority necessary to fully perform under the Settlement and execute,

deliver, implement and fully perform any and all obligations, instruments, documents, and papers,

and take any and all actions, in each case contemplated thereby, (ii) have all of the power and

authority necessary to consummate the Settlement, and (iii) have taken or are deemed to have taken

3

all corporate or other organizational action necessary to authorize and approve the Settlement and any actions required to be performed by the Debtors to consummate such transactions. Upon the entry of this Order, no further consents or approvals of the Debtors are required for the Debtors or their estates to consummate the Settlement.

G. **Arms'-Length and Good Faith.** The Settlement was negotiated and is undertaken by the Debtors, the FILO Secured Parties, and the Creditors' Committee (collectively, the "**Parties**") at arms'-length, without collusion or fraud, and in good faith.

H. **Insider Status.** The Litigation Trust shall not become, as a result of its obligations under the Settlement or otherwise, an "insider" of any Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

I. **No Fraudulent Transfer.** The consideration provided pursuant to the Settlement Term Sheet and the Settlement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any other applicable law, and may not be avoided under section 363(n) of the Bankruptcy Code or any other applicable law. The Settlement Term Sheet was not entered into, and the Settlement is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. None of the Debtors, the FILO Secured Parties, or any of their respective affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective current or former members, managers, officers, directors, employees, advisors, professionals, agents, predecessors, successors, or assigns have engaged in any conduct that would cause or permit the Settlement or the consummation of the transactions

contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code and no party is entitled to damages or recovery in connection therewith under section 363(n) of the Bankruptcy Code.

J.     **No Avoidance.** The Settlement cannot be avoided. None of the Parties or any of their respective affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective current or former members, managers, officers, directors, employees, advisors, professionals, agents, predecessors, successors or assigns have engaged in any conduct that would cause or permit the consummation of the Settlement to be avoided, or costs or damages to be imposed.

K.     **No Successor Liability.** Neither the Litigation Trust nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates except to the extent explicitly provided in the Settlement Term Sheet and this Order. Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the Settlement Term Sheet, neither the Litigation Trust nor any of its affiliates shall (a) be liable for any claims that may be asserted against the Debtors, the Debtors' estates or any of their predecessors or affiliates, or (b) be subject to successor liability or similar liability (including, without limitation, to the United States, any state thereof or otherwise) for any claims, or causes of action of any kind or character against the Debtors, the Debtors' estates or otherwise, whether known or unknown, and neither the Litigation Trust nor any of its affiliates shall have any successor or vicarious liabilities of any kind or character, including, without limitation, under any theory of antitrust, environmental, successor, or transfer liability, labor law, de facto merger, mere continuation, or substantial continuation, whether known or unknown, whether now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or

equitable, whether liquidated or unliquidated, including, without limitation, liabilities on account of warranties, intercompany loans, receivables among the Debtors and their affiliates, environmental liabilities, claims or defenses (including rights of recoupment) that may be asserted against the Debtors, the Debtors' estates or otherwise. Neither the Litigation Trust nor any of its affiliates is, and the consummation of the Settlement will not render such parties, a mere continuation, and neither the Litigation Trust nor any of its affiliates is holding itself out as a mere continuation, of any of the Debtors or their respective estates, enterprise, or operations, and there is no continuity or common identity between the Litigation Trust or any of its affiliates, on the one hand, and any of the Debtors or their estates, on the other hand. Accordingly, the Settlement does not amount to a consolidation, merger, or de facto merger of the Litigation Trust or any of their affiliates with or into any of the Debtors or their estates, and neither the Litigation Trust nor any of its affiliates is, or shall be deemed to be, a successor to any of the Debtors or their estates as a result of the consummation of Settlement; *provided*, however, that, notwithstanding anything in this Order to the contrary, the Litigation Trust shall receive, retain, and may enforce all rights to commence, pursue, litigate, compromise, abandon, or settle, in each case in accordance with the Litigation Trust Agreement, any and all estate claims or causes of action constituting Litigation Trust Assets and nothing contained in this Order shall prohibit or impair the Litigation Trust from taking all necessary or desirable actions to liquidate the Litigation Trust Assets.

L. **No Sub Rosa Plan.** The Settlement Term Sheet and the Settlement contemplated thereby do not constitute a *sub rosa* chapter 11 plan. The Settlement Term Sheet and the Settlement do not impermissibly restructure the rights of the Debtors' creditors nor do they impermissibly dictate a chapter 11 plan for the Debtors.

M. **Releases.** This Court has jurisdiction under 28 U.S.C. §§ 1334(a) and 1334(b) to approve the release provisions set forth in Exhibit A to the Settlement Term Sheet (the "**Releases**"). Section 105(a) of the Bankruptcy Code permits approval of the releases set forth in the Settlement and this Order. Based upon the record in these chapter 11 cases, the Releases (i) were consensual; (ii) were an integral part of the Settlement, and are essential to the formulation and implementation of the Settlement; (iii) were negotiated at arms' length and in good faith between the Debtors, the Creditors' Committee, and the FILO Secured Parties; and (iv) are fair, equitable, and reasonable. Additionally, such releases have been given in exchange for and are supported by fair consideration provided by each and all of the parties providing such releases. Accordingly, based upon the record of these chapter 11 cases, this Court finds that the Releases are consistent with the Bankruptcy Code and applicable law. The Releases are appropriately tailored to the circumstances of these chapter 11 cases and reasonable in scope.

N. The Debtors' decision to enter into the Settlement and consummate the transactions therein constitutes a proper exercise of the fiduciary duties of the Debtors and their directors, managers, and officers. Because the entry into and consummation of the Settlement constitute the exercise by the Debtors of sound business judgment, the Debtors, and their respective current members, managers, officers, directors, employees, advisors, professionals or agents (in each case, solely in their capacity as such), shall have or incur no liability to the estates or any holder of a Claim against or Interest in the Debtors for any act or omission in connection with, related to, or arising out of the negotiations of Settlement or the consummation of the transactions contemplated thereunder, other than liability arising out of or relating to any breach of the terms of the Settlement or willful misconduct or fraud, in each case as determined by a court

of competent jurisdiction; *provided*, however, that nothing in this paragraph shall amend, modify or supersede the releases set forth in the Settlement.

        O.    **Assumption and Assignment Procedures.**  The Debtors have articulated good and sufficient business reasons for the Court to approve the Assumption and Assignment Procedures.  The Assumption and Assignment Procedures, including the form Cure Notice attached hereto as **Exhibit 3**, are fair, reasonable, and appropriate.  The Assumption and Assignment Procedures provide an adequate opportunity for all Contract Counterparties to raise any objections to the proposed assumption and assignment or to the proposed Cure Costs.  The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

        P.    **Cure Notice.**  The Cure Notice, the form of which is attached hereto as **Exhibit 3**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures, as well as any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion and the procedures described therein, except as expressly required herein.

        Q.    **Notice.**  Notice of the hearing on the Motion and the opportunity for any party in interest to object was adequate and sufficient under the circumstances as to all parties affected by the Settlement.  The Debtors provided due, adequate, and sufficient notice to creditors and parties in interest, and no other or further notice need be provided.

        R.    **Time is of the Essence.**  Time is of the essence in consummating the Settlement.  In order to maximize the value of the Debtors' assets, it is essential that the Settlement occur within the time constraints set forth herein and in the Settlement Term Sheet.  Good and sufficient reasons for approval of the Settlement Term Sheet and the Settlement have been

articulated by the Debtors.  The Parties may consummate the Settlement any time after entry of this Order and subject to the terms and conditions set forth herein and in the Settlement Term Sheet.

S.     **Final Order; Immediate Effect.**  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and, sufficient cause having been shown, waives any such stay, and expressly directs entry of judgment as set forth herein.

### ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1.     The Motion is granted.

2.     **Approval of Settlement**.  The Settlement is approved pursuant to sections 362, 363 and 105 of the Bankruptcy Code and Bankruptcy Rules 4001, 6004, and 9019.  Each of the Parties, as well as their directors, managers, officers, employees, and agents, is authorized, and the Parties are directed (a) to fully perform under the Settlement Term Sheet, annexed hereto as **Exhibit 1**, and the Definitive Documents (as defined below) and (b) to execute, deliver, implement and fully perform any and all other obligations, instruments, documents, and papers, including the Definitive Documents, and to take any and all actions, in each case under clause (b), reasonably necessary or appropriate to consummate the Settlement.  This Order and the Settlement are enforceable and binding on the Debtors, the Debtors' estates, the FILO Secured Parties, the Creditors' Committee and all other parties in interest, including, without limitation, any subsequently appointed chapter 11 or chapter 7 trustee, any other estate representative, and all

recording officers each in accordance with the terms thereof.  For the avoidance of doubt, all persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Litigation Trust Assets to the Litigation Trust in accordance with this Order and the Settlement.

3.     **Approval of Settlement Term Sheet and Definitive Documents.**  The Settlement Term Sheet, the Litigation Trust Agreement, the TSA, the Trustee Engagement Letter, the Commitment Letter, and the DIP Amendment (collectively, the "**Definitive Documents**"), and the terms and provisions included therein are approved in their entirety.  The failure to describe specifically or include any particular provision of the Settlement Term Sheet, any of the Definitive Documents, or related documents in the Motion or this Order shall not diminish or impair the effectiveness of such provision or related documents, it being the intent of this Court that the Settlement Term Sheet, all other Definitive Documents, and the transactions and related documents contemplated therein be approved in their entirety.

4.     **Automatic Stay Modification.**  The automatic stay provisions of section 362 are hereby modified to the extent necessary to allow the Parties to take action in accordance with the Settlement Term Sheet and with respect to transactions approved under this Order.  Before the Litigation Trust Establishment Date or, solely with respect to the Retained FILO Claim, before the earlier of (a) the timely satisfaction of the Confirmation Milestone or (b) satisfaction of such Retained FILO Claim in full in cash, the FILO Secured Parties shall not be allowed to move (or direct or support any party to move) to convert the cases to chapter 7, or for relief from the automatic stay unless either the Debtors or the Creditors' Committee materially breach the terms of the Settlement, including the terms of the Settlement Term Sheet, the Plan Term Sheet, or any Definitive Document, and such breach has not been cured within three (3) business days following

10

written notice from the FILO Secured Parties to the Debtors and the Creditors' Committee of such breach. On and after the Litigation Trust Establishment Date or, solely with respect to the Retained FILO Claim, on and after the earlier of (a) the timely satisfaction of the Confirmation Milestone or (b) satisfaction of such Retained FILO Claim in full in cash, the FILO Secured Parties shall not be allowed to move (or direct or support any party to move) to convert the cases to chapter 7, or for relief from the automatic stay under any circumstance (without prejudice to the FILO Secured Parties' rights to seek to enforce the Settlement, including the Settlement Term Sheet, the Plan Term Sheet, and the Definitive Documents).

5.     **Establishment of the Litigation Trust.**  On the earlier of (i) July 14, 2025 and (ii) one (1) business day after entry of an order confirming the Plan (the "**Litigation Trust Establishment Date**"), the Litigation Trust shall be established in accordance with the Settlement Term Sheet and the Litigation Trust Agreement, which shall be consistent with the Settlement Term Sheet and otherwise mutually agreeable to the Parties, with approval not to be unreasonably withheld, conditioned or delayed.  The powers, authority, responsibilities, and duties of the Litigation Trust and the Litigation Trustee (as defined below) are set forth in, and shall be governed by, the Litigation Trust Agreement.

6.     **Transfer of Litigation Trust Assets.**  Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, on the Litigation Trust Establishment Date, the Debtors shall automatically, with no further action of any party, be deemed to have transferred the Litigation Trust Assets, including all interests, rights, and privileges relating thereto, to the Litigation Trust and shall execute all documentation necessary to effectuate such transfer, and the Litigation Trust shall have and take title to and possession of the Litigation Trust Assets free and clear of all liens, claims, charges, encumbrances, contractually imposed restrictions, interests, and constructive

trusts ("**Claims**"), and, to the fullest extent of the law, shall have no obligation with respect to Claims, of any kind or nature whatsoever, including, without limitation, rights or claims based on any successor, transferee, derivative, or vicarious liabilities, de facto merger, continuation or continuity, setoff or recoupment rights, or any similar theories under applicable state or federal law or otherwise.  This Order: (a) is and shall be effective as a determination that upon the Litigation Trust Establishment Date in accordance with the Settlement, all Claims of any kind or nature whatsoever existing as to Litigation Trust Assets, and any tax liability, prior to the applicable closing have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected; and (b) is and shall be binding upon and shall authorize all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, report or insure any title or state of title, or otherwise record or release any documents or instruments necessary or appropriate to effectuate, implement, or consummate the Settlement.  Upon the transfer of the Litigation Trust Assets to the Litigation Trust, in no event shall any part of the Litigation Trust Assets revert to the Estate (other than any distributions made on account of the Class B interests in accordance with the Litigation Trust Agreement).  For the avoidance of doubt, the transfer of the rights of the Debtors and the Estate to recover insurance proceeds from the Debtors' directors and officers liability insurance policies (the "**D&O Policies**") shall not hinder the ability of any beneficiaries of such D&O Policies to submit claims and otherwise pursue and obtain coverage under the D&O Policies, subject to the terms of the *Order Authorizing the Use of Proceeds of Directors and Officers Liability Insurance*

*Policies for Defense Costs of Individual Insurers* (Docket No. 3887) (the "**D&O Insurance Order**") and provided that the D&O Insurance Order is in full force and effect.  For the avoidance of doubt, the Litigation Trust Assets to be transferred to the Litigation Trust includes Claims and Causes of Action asserted or assertable by the Debtors or the Estate against all government payors (whether federal or state, including, without limitation, the Commonwealth of Massachusetts).

    7.  **Privileges.**  All attorney-client privileges, work product protections, joint client privilege, mediation privilege, common interest or joint defense privilege or protection and all other privileges, immunities or protections from disclosure (the "**Privileges**") held by any of (1) any one or more of the Debtors or (2) any pre-petition or post-petition committee or subcommittee of the board of directors or equivalent governing body of any of the Debtors and their predecessors (together the "**Privilege Transfer Parties**") related in any way to the Trust Assets or the analysis or prosecution of any Trust Assets (the "**Transferred Privileged Information**") are hereby transferred and assigned to, and vested in, the Litigation Trust and its authorized representatives.  The Transferred Privileged Information shall include documents and information of all manner, whether oral, written or digital, and whether or not previously disclosed or discussed.  For the avoidance of doubt, the Privileges shall include any right or obligation to preserve or enforce or waive a privilege that arises from any joint defense, common interest or similar agreement involving any of the Privilege Transfer Parties.

    8.  The foregoing transfer and assignment shall vest the Privileges concerning the Transferred Privileged Information in the Litigation Trust, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the benefit of the Litigation Trust and the Litigation Trust beneficiaries; *provided*, *however*, that to the extent that any such Privileges or Transferred Privileged Information relates to both the Trust Assets on one hand and any matter

13

in which the Estate has an interest on the other, such Privileges and Transferred Privileged Information shall vest jointly in the Estate (or its designee) and the Litigation Trust.  As relates to any Privileges or Transferred Privileged Information held jointly with the Estate (or its designee), (i) with respect to litigations or proceedings concerning matters in which the Estate has an interest as a potential defendant, the Estate shall maintain the Privileges and keep the Transferred Privileged Information confidential, and may only waive any Privileges and/or disclose in any such litigation or proceeding any or all of the Transferred Privileged Information, upon receiving prior written consent from the Litigation Trust, and (ii) with respect to litigations or proceedings concerning the Trust Assets where the Estate has an interest as a potential defendant, the Litigation Trust shall maintain the Privileges and keep the Transferred Privileged Information confidential, and may only waive any Privileges and/or disclose in any such litigation or proceeding any or all of the Transferred Privileged Information upon receiving prior written consent from the Estate. The Litigation Trust and Estate agree that they do not intend to provide a general waiver of all Privileges and that each such party will take commercially reasonable steps to avoid a general waiver of the Privileges.

9.      Pursuant to, *inter alia*, Federal Rule of Evidence 502(d), no Privileges shall be waived by the transfer and assignment of the Privileges or the production of any Transferred Privileged Information to the Litigation Trust or any of its respective employees, professionals or representatives, or by disclosure of such Transferred Privileged Information between the Privilege Transfer Parties, on the one hand, and the Litigation Trust, on the other hand, or any of their respective employees, professionals or representatives.

10.     If a Privilege Transfer Party, the Litigation Trust, any of their respective employees, professionals or representatives or any other person inadvertently produces or

discloses Transferred Privileged Information to any third party, such production shall not be deemed to destroy any of the Privileges, or be deemed a waiver of any confidentiality protections afforded to such Transferred Privileged Information.  In such circumstances, the disclosing party shall promptly upon discovery of the production notify the Litigation Trust of the production and shall demand of all recipients of the inadvertently disclosed Transferred Privileged Information that they return or confirm the destruction of such materials.

   11. **Litigation Trustee**.  As of the Litigation Trust Establishment Date, Mark Kronfeld of Province Fiduciary Services, LLC shall serve as the person responsible for the governance and administration of the Litigation Trust, pursuant to the terms of the Settlement and the Definitive Documents (the "**Litigation Trustee**").  The Litigation Trustee shall be a fiduciary and owe fiduciary duties to all beneficiaries of the Litigation Trust, collectively, and, without limitation, shall act as a 'trustee' with respect to the Litigation Trust Assets for purposes of rights granted under 11 U.S.C. § 108, with the authority of a debtor-in-possession or trustee to assert such rights under said statute, whether in judicial, administrative or arbitration proceedings, whether during or after the pendency of these cases.  In the event that the Litigation Trustee resigns, is removed for cause in accordance with the Litigation Trust Agreement, or is otherwise unable to serve in such capacity, the Litigation Trustee will be replaced by the terms of the Settlement and Definitive Documents, as applicable.  The powers, authority, responsibilities, and duties of the Litigation Trust and the Litigation Trustee are set forth in, and shall be governed by, the Litigation Trust Agreement.  Upon the Litigation Trust Establishment Date, the Litigation Trust and the Litigation Trustee shall be empowered to act or refrain from acting in accordance with the Litigation Trust Agreement, in each case, without the need for Bankruptcy Court approval and free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules.

12.     **Distribution of Litigation Trust Interests**.  Upon the Litigation Trust Establishment Date, the Litigation Trustee shall distribute the interests in the Litigation Trust to the beneficiaries of the Litigation Trust in accordance with the terms of the Litigation Trust Agreement, which shall be consistent with the Settlement Term Sheet and otherwise mutually agreeable to the Parties, with approval not to be unreasonably withheld, conditioned or delayed.

13.     **Class B Representative**.  The Transformation Committee shall serve as the initial Class B Representative.  The Class B Representative shall have the responsibilities set forth in the Settlement Term Sheet and the Litigation Trust Agreement.

14.     **Coordination.**  The Estate will coordinate its efforts with the Litigation Trustee with respect to issues involving overlapping concerns among the Estate and the Litigation Trust with respect to third parties.  If the Estate and the Litigation Trustee are unable to resolve a matter that should be coordinated, they must (i) arrange a mediation conference with Judge Isgur, in his capacity as mediator (or in the event that Judge Isgur is not available, such other entity or individual reasonably acceptable to the Litigation Trustee and the Estate) in connection with the subject matter of this Order; and (ii) failing a successful mediation, obtain resolution by this Court. With respect to any such disputes presented to this Court:

a.      If the FILO Balance is in an Underpayment State on the date of any hearing before this Court, the Litigation Trustee's business judgment will be applied to the dispute, subject to challenge by the Estate; *provided*, *however*, that the Litigation Trustee's business judgment shall not be considered by this Court with respect to a matter (or a portion thereof) as to which such business judgment would allow or increase the liabilities of the Estate (other than with respect to claims under section 502(h) of the Bankruptcy Code).

b.      If the FILO Balance is not in an Underpayment State on the date of any hearing before this Court, the Estate's business judgment shall be applied to the dispute, subject to challenge by the Litigation Trustee; *provided*, *however*, that the Estate's business judgement shall not be considered by this Court with respect to a matter (or a

portion thereof) as to which such business judgment would allow or increase the liabilities of the Litigation Trust.

15.     Notwithstanding the foregoing, with respect to any constructive trust claims asserted by any third parties with respect to any Litigation Trust Assets or Retained Collateral, as well as any government investigations, the Litigation Trust and the Estate will coordinate efforts to dispute or settle such claims, or to address such investigations, including with respect to funding arrangements for the defense of any such claims or addressing any such investigations.

16.     **Litigation Funding.**  The Litigation Funding terms set forth in the Commitment Letter, which shall be consistent with the Settlement Term Sheet and otherwise mutually agreeable to the Parties, with approval not to be unreasonably withheld, conditioned or delayed, are hereby approved.  Upon execution of the Commitment Letter, the Commitment Letter shall constitute legal, valid, and binding obligations of the Litigation Trust and Funding Parties (as defined in the Commitment Letter) and be enforceable in accordance with its terms and such obligations shall not be enjoined (temporarily, preliminarily or permanently) or subject to any contest, attack, rejection, defense, counterclaim, disallowance, reduction, discharge, impairment, release, avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise), or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or any applicable law or regulation, and the Litigation Trust shall be authorized to incur the obligations under the Commitment Letter and use the proceeds of such Commitment Letter, in each case, in accordance with the Litigation Trust Agreement without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any person.  The terms and conditions of the Commitment Letter shall bind the Litigation Trust, each other entity that enters into such agreement, and all beneficiaries of the Litigation Trust.  The Funding Parties are approved and directed to provide

litigation funding on the terms outlined in the Commitment Letter and the Settlement Term Sheet, as applicable.

17.    **Transition Services Agreement.**  On the Litigation Trust Establishment Date, the Debtors and the Litigation Trust shall enter into the TSA.  Payments made by the Litigation Trust to the Estate for any services under the TSA prior to the Estate paying for the budgeted costs of providing such services shall be deemed to be held by the Estate in trust for such purpose and shall not be used for any purpose other than paying such costs.

18.    **Releases.**  The Releases are: (a) consensual; (b) supported by adequate consideration; (c) a necessary and integral part of the settlement embodied in the Settlement Term Sheet; (d) a good-faith settlement and compromise; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Releasing Parties (as defined in Exhibit A to the Settlement Term Sheet) asserting any claim or cause of action released thereby.  Additionally, the Releases are fair and equitable and in the best interests of the Debtors, their estates, creditors, and all parties in interest considering (x) the probability of success in litigation; (y) the complexity and likely duration and expense of litigating; and (z) the arms'-length negotiations which produced the settlement embodied in the Settlement Term Sheet.

19.    As of the Litigation Trust Establishment Date, the release provisions embodied in the Settlement, including those set forth in Exhibit A to the Settlement Term Sheet, are hereby approved and shall be effective and binding on all Persons and Entities, without further order or action by this Court.

20.    **FILO DIP Facility and Cash Collateral.**  For the avoidance of doubt, the DIP Amendment, attached hereto as **Exhibit 2**, is authorized in its entirety.  The Debtors are authorized, subject to the terms and conditions of the Settlement Term Sheet and the DIP

Amendment, to continue to use the FILO Secured Parties' cash collateral through the Litigation Trust Establishment Date.  For the avoidance of doubt, notwithstanding anything to the contrary in the DIP Orders, no amounts on account of any Deferred Fees or Unestimated Fees (each as defined in the Plan Term Sheet) shall be deposited into the Professional Fees Escrow Account, and such amounts shall instead be paid in accordance with paragraph 3 of the Plan Term Sheet.

21.    **FILO Secured Parties' Claims.**  Upon entry of this Order, the FILO DIP Obligations in the principal amount of $206,197,079 and the Prepetition Bridge Obligations held by the FILO Secured Parties in the principal amount of $30,394,856, in each case calculated as of April 28, 2025, plus any and all accrued but unpaid or uncapitalized interest, fees, costs, expenses, charges, advances, claims, debts, and other obligations that have accrued to the FILO Secured Parties as of April 28, 2025 or accrue at any time thereafter, including to the extent capitalized into additional principal thereafter (excluding any amounts on account of the MOIC Amount (as defined in the Prepetition Bridge Credit Agreement)), shall constitute allowed claims secured by valid and perfected liens on the FILO DIP Collateral and Prepetition Bridge Collateral, respectively, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in these cases and any Successor Cases; *provided* that nothing in this Order allows the MOIC Amount (other than, upon the Litigation Trust Establishment Date, the MOIC Payment), *provided* further that, upon the Litigation Trust Establishment Date, the MOIC Payment will be allowed on the terms set forth in paragraph 11 of the Settlement Term Sheet.

22.     **Binding Effect of Order**.  This Order and the Settlement are binding in all respects on the Debtors, the Debtors' estates, the FILO Secured Parties, the Creditors' Committee and all other parties in interest, including, without limitation, all creditors of, and holders of equity interests in, the Debtors, any subsequently appointed chapter 11 or chapter 7 trustee, any other estate representative, all recording officers and all successors and assigns to any of the foregoing, notwithstanding the dismissal of any of the Debtors' cases or any subsequent appointment of any trustees, examiners, "responsible persons," or other fiduciaries in these chapter 11 cases or upon a conversion to a case under chapter 7 of the Bankruptcy Code, and the Settlement Term Sheet and the obligations thereunder shall not be subject to rejection or avoidance under any circumstances. If any order under section 1112 of the Bankruptcy Code is entered, such order shall provide, or be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Order, including the rights granted to and obligations of the FILO Secured Parties hereunder, shall remain effective and, notwithstanding such dismissal, shall remain binding on the Debtors and all parties in interest.  Upon entry of this Order, the Settlement authorized herein shall be of full force and effect regardless of whether the Debtors or any of their affiliates lack good standing in any jurisdiction in which such entity is formed or is authorized to transact business.  To the extent of any conflict between the express terms of this Order and the Settlement Term Sheet, the terms of this Order shall control.  To the extent of any conflict between this Order and the Settlement Term Sheet, on the one hand, and any previous order of the Court, this Order and the Settlement Term Sheet shall control.

23.     The reversal or modification on appeal of this Order shall not affect the validity of the transfer of the Litigation Trust Assets to the Litigation Trust, unless the authorization

to effectuate such transfer and such transfer are duly stayed pending such appeal.  The Litigation Trust is entitled to all protections afforded by section 363(m) of the Bankruptcy Code.

24.     On the Litigation Trust Establishment Date (which is subject to the issuance of the Litigation Funding, the Class A-1 interests, Class A-2 interests, and the Class B interests in the Litigation Trust in accordance with the Settlement), without the need for any further organizational action or approval of any board of directors, board of managers, member, manager, management, or security holders of any Debtor, all notes, instruments, other securities, and other evidence of debt issued with respect to the FILO DIP Claims and FILO Bridge Claims (other than the Retained FILO Claims), and any rights of any holder in respect thereof, including any "claims" against the Debtors (as such term is defined in the Bankruptcy Code) shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged.

25.     After the Litigation Trust Establishment Date (which is subject to the issuance of the Litigation Funding, the Class A-1 interests, Class A-2 interests, and the Class B interests in the Litigation Trust in accordance with the Settlement), the Debtors or the Transformation Committee may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, liens, pledges, and other security interests with respect to the FILO DIP Obligations and the Prepetition Bridge Obligations held by the FILO Secured Parties (excluding the Retained FILO Claim, which, for the avoidance of doubt, shall, until the earlier of (a) the timely satisfaction of the Confirmation Milestone or (b) satisfaction of such Retained FILO Claim in full in cash, remain secured by the Retained Cash and any other assets of the Debtors' estates or any successor(s) thereto (provided that the negative pledge provisions and other rights and entitlements of the Litigation Trust with

respect to the Retained Collateral shall survive and remain unaffected notwithstanding such timely satisfaction of the Confirmation Milestone or satisfaction of the Retained FILO Claim)), including, without limitation, the preparation and filing of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, liens, pledges, and other security interests held by the FILO Secured Parties (excluding with respect to the Retained FILO Claim prior to the earlier of (a) the timely satisfaction of the Confirmation Milestone or (b) satisfaction of such Retained FILO Claim in full in cash), including, without limitation, UCC-3 termination statements.

26. From and after the Litigation Trust Establishment Date, the Retained Collateral (which includes, for the avoidance of doubt, all proceeds derived therefrom) shall be held in trust exclusively for the benefit of the Litigation Trust and shall be subject to a negative pledge by the Estate and not made available (pursuant to subsequent order of the Court or otherwise) other than for distribution in accordance with the Litigation Trust's distribution waterfall as contemplated by the Litigation Trust Agreement.

27. The Estate shall, at the Litigation Trust's sole expense (paid in advance and charged at the Estate's cost), (a) use commercially reasonable efforts to monetize the Non-Transferrable A/R, Excluded Interests, and ERTCs in coordination, and in a manner reasonably agreed upon, with the Litigation Trust, and (b) promptly turn over any cash or other value realized on account of the Non-Transferrable A/R, Excluded Interests, or ERTCs to the Litigation Trust.

28. All rights, claims, causes of action, rights of setoff or recoupment, and legal or equitable defenses that any of the Debtors or their respective estates had with respect to the Litigation Trust Assets immediately prior to the Litigation Trust Establishment Date, including, without limitation, any extension of time available under section 108 of the Bankruptcy Code, shall be available to the Litigation Trust as if the Litigation Trust were the Debtors.  For the

avoidance of doubt, the Litigation Trust shall be entitled to conduct examinations pursuant to Bankruptcy Rule 2004.

29.     **Assumption and Assignment Procedures.**   The following Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all Contract Counterparties, comply in all respects with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and are approved.

30.     The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is reasonable, fair, and appropriate, contains the type of information required under Bankruptcy Rule 2002, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules, and is hereby approved.

31.     The Cure Notice, including any Supplemental Cure Notice (as defined below), is reasonably calculated to provide sufficient notice to the Contract Counterparties of the Debtors' proposed assumption and assignment of the Assigned Contracts and constitutes adequate notice thereof, and no other or further notice of the Debtors' proposed Cure Costs or the proposed assumption and assignment of the Assigned Contracts shall be required if the Debtors file and serve such notice in accordance with the Assumption and Assignment Procedures and this Order.

32.     Within five (5) Business Days after entry of this Order, the Debtors shall file the Cure Notice with the Court and serve the Cure Notice on the Contract Counterparties. Service of the Cure Notice in accordance with this Order on all Contract Counterparties is hereby deemed to be good and sufficient notice of the proposed Cure Costs for, and the proposed assumption and assignment of, the Assigned Contracts.  As soon as reasonably practicable after filing the Cure Notice, the Debtors shall post a copy of the Cure Notice on the website maintained

by Kroll Restructuring Administration, LLC, the Debtors' claims and noticing agent in these chapter 11 cases, located at https://restructuring.ra.kroll.com/Steward (the "**Kroll Website**").

33.     The Debtors shall use commercially reasonable efforts to provide or cause to be provided to all Contract Counterparties to a proposed Assigned Contract a notice that sets forth a list of proposed Assigned Contracts that may be assumed by the Debtors.

34.     Objections, if any, to any proposed Cure Costs (each, a "**Cure Objection**") must:  (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and, to the extent applicable, provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; and (v) be filed with the Court and served on the Debtors, the Creditors' Committee, and the FILO Secured Parties within ten (10) days after receipt of Cure Notice (the "**Cure Objection Deadline**").

35.     If a Cure Objection cannot otherwise be resolved by the parties, the Debtors may, after consultation with the Creditors' Committee and subject to the consent of the FILO Secured Parties, assume and assign the Contract(s) to the Litigation Trust pending resolution of the Cure Objection.

36.     If a Contract Counterparty to any Assigned Contract files a Cure Objection to the assumption and assignment of such Assigned Contract to the Litigation Trust, then such contract shall be deemed a "**Disputed Contract**."  The Debtors, in consultation with the Creditors' Committee, shall be authorized to resolve or settle any Cure Objection to the assumption and assignment of Disputed Contracts in accordance with the terms of the Settlement and this Order, including with respect to Cure Costs without need for any further order or action from this Court.

Once any objection to a Disputed Contract is resolved, the Disputed Contract shall be subject to the terms of this Order, including without limitations paragraphs 29-41, in all respects.

37.     Any Disputed Contract that is the subject of an unresolved Cure Objection may be assumed and assigned prior to the resolution of such Cure Objection, so long as the Litigation Trust (i) pays any undisputed Cure Costs on or before the Litigation Trust Establishment Date and (ii) appropriately reserves funding for the disputed portion of the Cure Costs pending resolution of the dispute.

38.     If (a) the Debtors, in consultation with the Creditors' Committee and the FILO Secured Parties, identify (i) additional contracts or leases to be assumed and assigned to the Litigation Trust or (ii) modifications that need to be made to a proposed Cure Cost previously stated in the Cure Notice, or (b) the Litigation Trust designates any additional contracts or leases not previously included on the Cure Notice for assumption and assignment, the Debtors may, after consultation with the Creditors' Committee and subject to the consent of the FILO Secured Parties, at any time before the Litigation Trust Establishment Date, file with the Court and serve by first class mail on the applicable Contract Counterparty a supplemental Cure Notice (each, a "**Supplemental Cure Notice**," the form of which shall be substantially similar to the form of Cure Notice attached hereto as **Exhibit 3**).   As soon as reasonably practicable after filing a Supplemental Cure Notice, the Debtors shall post a copy of the Supplemental Cure Notice on the Kroll Website.  Any Cure Objection with respect to Cure Costs set forth in a Supplemental Cure Notice must be filed within seven (7) days of the filing of such Supplemental Cure Notice.

39.     The Litigation Trust shall be responsible for paying all Cure Costs and all reasonable and documented costs of the Estate associated with assuming and assigning any contracts or leases to the Litigation Trust, including any related advisor or personnel costs incurred

by the Estate, to the extent that the Litigation Trustee (or, prior to the Litigation Trust Establishment Date, the FILO DIP Agent) has consented to the Estate's incurrence of such costs, such consent not to be unreasonably withheld, conditioned, or delayed.  Notwithstanding anything to the contrary in this Order, the assumption by the Debtors and assignment of any contracts or leases to the Litigation Trust shall be subject to the consent of the FILO Secured Parties.

40.     If no Cure Objection is timely received with respect to an Assigned Contract: (i)  the Contract Counterparty to such Assigned Contract shall be deemed to have consented to the assumption by the Debtors and assignment to the Litigation Trust of the Assigned Contract, and be forever barred from asserting any objection with regard to such assumption and assignment; (ii) any and all defaults under the Assigned Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to Bankruptcy Code section 365(b)(1)(A) and upon payment of the Cure Costs set forth in the Cure Notice for such Assigned Contract; and (iii) the Contract Counterparty shall be forever barred from asserting any other claims related to such Assigned Contract against the Debtors and their estates or the Litigation Trust, or the property of any of them, that existed prior to the assignment of such Assigned Contract to the Litigation Trust.

41.     The inclusion of a contract, lease, or other agreement on the Cure Notice or any Supplemental Cure Notice shall not constitute or be deemed a determination or admission by the Debtors or any other party in interest that such contract or other document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Cost is due (all rights with respect thereto being expressly reserved).  The Debtors and the applicable counterparties reserve all of their rights, claims, defenses, and causes of action with

respect to each contract or other document listed on the Cure Notice or any Supplemental Cure Notice.

42.    **Provider Agreements.**  Pursuant to section 363(b) of the Bankruptcy Code, the Debtors' rights under any provider, payor, or similar agreement (including any such agreement with the Centers for Medicare and Medicaid Services or in connection with any state Medicaid program) (collectively, the "**Provider Agreements**"), including, but not limited to, (i) the right to payments of accounts receivable, and (ii) the rights retained by the Debtors with respect to any Provider Agreement that was transferred to any purchaser of the Debtors' assets (each, a "**Purchaser**"), in each case, are hereby assigned to the Litigation Trust and shall constitute Litigation Trust Assets upon the Litigation Trust Establishment Date as permitted under 42 C.F.R. § 424.73(b)(2); provided that, to the extent the Debtors are required to pay any accounts receivable that become due and owing under a Provider Agreement to a Purchaser pursuant to court order or any asset purchase agreement, bill of sale, or provider-leaseback arrangement entered into after the Petition Date and prior to the date of this Order (each, a "**Sale Document**"), the Litigation Trust shall, to the extent it receives any proceeds of such accounts receivable, pay such accounts receivable proceeds to the applicable Purchaser in accordance with the applicable court order or Sale Document.

43.    **Litigation Trust Tax Requirements.**  The Litigation Trust shall be subject to, and the Litigation Trustee shall comply with, the Litigation Trust Tax and Other Matters provisions set forth in **Exhibit 4**.  Such provisions shall be included in the Litigation Trust Agreement.  The Litigation Trust shall be established for the primary purpose of liquidating and distributing the assets transferred to it, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating

purpose of the Litigation Trust and reasonably necessary to conserve and protect the assets transferred to the Litigation Trust and provide for the orderly liquidation thereof.  The funding provided pursuant to the Commitment Letter is necessary and incidental to the liquidating purpose of the Litigation Trust.  In accordance therewith, the Litigation Trust is intended to be treated for U.S. federal income tax purposes as a "liquidating trust" described in Treasury Regulation section 301.7701-4(d) that is a "grantor trust" for U.S. federal income tax purposes, with the holders of allowed FILO DIP Claims and allowed FILO Bridge Claims, in respect of their Class A-1 and Class A-2 interests in the Litigation Trust, and the respective FILO Secured Parties providing Litigation Funding, in respect of their Class A-1 interests in the Litigation Trust, being as grantors. Subject to definitive guidance from the Internal Revenue Service (the "**IRS**") or a court of competent jurisdiction to the contrary, all parties (including, without limitation, the Debtors, the Litigation Trustee, and the Litigation Trust beneficiaries) shall report consistent therewith for U.S. federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes.

44.    In no event shall the Litigation Trust be dissolved later than five (5) years from the Litigation Trust Establishment Date unless this Court, upon motion made within the six (6) month period before such fifth anniversary (and, in the event of further extension, by order of this Court, upon motion made within the six (6) month period before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Litigation Trustee that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for U.S. federal income tax purposes) is

necessary to facilitate or complete the recovery on, and liquidation of, the assets of the Litigation Trust.

45. **Objections Overruled.** Any objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled are hereby overruled on the merits and denied with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein, including, without limitation, the Releases.

46. **Retention of Causes of Action/Reservation of Rights.** Except as otherwise provided in this Order, nothing contained in this Order shall be deemed to be a waiver or relinquishment of any rights, claims, causes of action, rights of setoff or recoupment, or other legal or equitable defenses that any of the Debtors and their estates had immediately prior to the Litigation Trust Establishment Date in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, any affirmative causes of action against parties with a relationship with the Debtors. Subject to the terms of the Settlement, including the Releases, the Debtors and their estates shall have, retain, reserve, and be entitled to assert all claims, causes of action, rights of setoff or recoupment, and other legal or equitable defenses that do not constitute Litigation Trust Assets transferred to the Litigation Trust on the Litigation Trust Establishment Date.

47. Notwithstanding anything to the contrary in this Order, to the extent that any Litigation Trust Assets are transferred to the Litigation Trust, those assets are subject to setoff rights or recoupment rights (if any) which are otherwise preserved with respect to any Litigation Trust Assets. The Class A-1 and Class A-2 interests shall have the same priority in relation to

such setoff rights that the FILO DIP Liens have in relation to such setoff rights as of immediately prior to the Litigation Trust Establishment Date.

48. **Payor Agreements.** Notwithstanding anything in this Order to the contrary, any rights, claims and causes of action of the Debtors under any provider agreements, facility agreements, or similar in-network contracts (the "**Payor Agreements**") with (i) UnitedHealthcare Insurance Company; (ii) Cigna Health and Life Insurance Company; (iii) Aetna, Inc.; (iv) Health Care Service Corporation, a Mutual Legal Reserve Company and its division Blue Cross and Blue Shield of Texas; (v) Humana Insurance Company, Humana Health Plan, Inc., Humana Government Business, Inc., CarePlus Health Plans of Florida, Inc., CarePlus Health Plans, Inc.; (vi) the Elevance Health Companies, Inc. and its affiliates; (vii) Medshape, Inc., DJO, LLC, Trilliant Surgical, LLC, Novastep, Inc., Encore Medical, L.P. (d/b/a DJO Surgical) and SURGI-CARE, Inc.; and (viii) Blue Cross and Blue Shield of Massachusetts, Inc. and Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc., and their respective parents, subsidiaries, and affiliates (collectively, the "**Specified Payors**") transferred pursuant to this Order shall be subject to (a) all available defenses of the Specified Payors, including, without limitation, recoupment and setoff, and (b) all rights of the Specified Payors under the Payor Agreements other than their rights of affirmative recoveries, which rights of affirmative recovery shall be preserved against the Debtors. For the avoidance of doubt, nothing in the foregoing sentence shall be construed as an admission that any Specified Payor has or will have any such rights or valid defenses, including recoupment or setoff, to any claim or cause of action against such Specified Payor.

49. **Chubb Companies.** Notwithstanding anything to the contrary in the Motion, this Order, the Term Sheet, or any other document related to any of the foregoing nothing, alters or modifies the terms and conditions of any insurance policies or related agreements issued

by ACE American Insurance Company, and/or any of its U.S.-based affiliates and/or any predecessors (collectively, and solely in their capacities as insurers under the foregoing policies, the "**Chubb Companies**") issued to or pursuant to which coverage is provided to, any of the Debtors (or their affiliates or predecessors) at any time and all agreements, documents or instruments relating to such insurance policies (collectively, the "**Chubb Insurance Program**") and nothing shall permit or otherwise effect a sale, assignment, or any other transfer of the Chubb Insurance Program and/or any rights, proceeds, benefits, claims, rights to payments, or recoveries under or relating thereto without the prior express written consent of the Chubb Companies or pursuant to a further order of this Court; provided, however, to the extent any claim that may be covered by the Chubb Insurance Program (including any D&O Policies) results in any insurance proceeds that are payable to the Debtors such proceeds may be turned over to the Litigation Trust, if provided for pursuant to the terms of the Term Sheet (each, a "**Proceed Turnover**"); provided, however, further, that the Chubb Companies shall not have any duty to the Litigation Trust to effectuate a Proceed Turnover or liability to the Litigation Trust related to a Proceed Turnover.

50.     **Hartford**.  Notwithstanding anything to the contrary in this Order, the Motion or the Settlement:  (i) no insurance policy/policies or agreement(s) relating to any and all such policy/policies of insurance issued by Hartford Fire Insurance Company or any of its affiliated insurance companies ("**Hartford**")  to any of the Debtors and/or any of their non-debtor affiliate(s) ("**Policy**" or "**Policies**") shall be in any manner transferred to any other entity pursuant to the Order, Motion, or Settlement without the express written consent of Hartford or pursuant to a further order of this Court; (ii) to the extent that there is a transfer of any rights of the Debtors under any policy (including but not limited to Accounts Receivables, Claims, and Causes of Action (and the proceeds, products, offspring or profits thereof)), such transfer shall not be free and clear

of any of Hartford's defenses, including setoff and recoupment rights; (iii) nothing herein or otherwise shall be deemed a determination that any past, present or future proceeds of letter of credit Hartford is holding or will be holding is property of the estate; and (iv) nothing herein or otherwise shall impact Hartford's ability to raise its contention that the aforementioned proceeds of letters of credit are not property of the estate.

51.     **Tenet.**  Debtors Steward Health Care System LLC, Steward Medical Group, Inc., Steward PGH, Inc., Steward NSMC, Inc., Steward CGH, Inc., and Steward HH, Inc. are party, as plaintiffs, to that certain case styled *Steward Health Care System v. Tenet Business Services Corporation*, C.A. No. 2022-0289-SG, pending before the Court of Chancery of the State of Delaware (the "**Steward-Tenet Chancery Case**"), to which Tenet Business Services Corporation, Tenet Healthcare Corporation, CGH Hospital, Ltd., Coral Gables Hospital, Inc., Hialeah Hospital, Inc., Hialeah Real Properties, Inc., Lifemark Hospitals of Florida, Inc., Lifemark Hospitals, Inc., North Shore Medical Center, Inc., Sunrise Medical Group I, LLC, Tenet Florida Physician Services, LLC, TFPS IV, LLC (collectively, the "**Tenet Defendants**"), and Sharilee Smith are party as defendants.

52.     Debtor Steward Health Care System LLC is party, as respondent, to that certain arbitration proceeding captioned *Conifer Revenue Cycle Solutions, LLC vs. Steward Health Care System LLC*, Case No. 01-22-0002-5628, pending before the American Arbitration Association (Dallas, Texas) (the "**Conifer-Steward Arbitration**"), to which Conifer Revenue Cycle Solutions, LLC ("**Conifer**") is party as claimant.

53.     Notwithstanding anything to the contrary in this Order, the Settlement, the Settlement Term Sheet, the Litigation Trust Agreement, any other Definitive Document, any Cure Notice, or any other document approved pursuant hereto or entered into in connection herewith,

(a) any of the Debtors' rights in respect of the Steward-Tenet Chancery Case or the Conifer-Steward Arbitration that are transferred to the Litigation Trust, including any rights to the funds escrowed with the Court in the Steward-Tenet Chancery Court (the "**Chancery Escrow**"), shall remain subject to any valid affirmative defenses (including setoff and recoupment) held by the Tenet Defendants and Conifer and (b) any rights of the Tenet Defendants to the funds in the Chancery Escrow shall not be impaired.

54.     Nothing in this Order prejudices the right of any Tenet Defendant or Conifer to assert, prior to the Litigation Trust Establishment Date, that any funds held by the Debtors are held in trust (including constructive trust) for any Tenet Defendant or Conifer or otherwise are not property of the Debtors' estate; provided, however, that all parties' rights to object to the priority, validity, amount and extent of any alleged trust are fully preserved.

55.     **TRACO.**   Reference is hereby made to that certain adversary proceeding styled *TRACO International Group S. De R.L. v. Steward Health Care System LLC and All Affiliated Debtors*, Adversary Case No. 24-03261 (the "**TRACO Adversary Proceeding**") filed on December 6, 2024.  Notwithstanding anything to the contrary in this Order, to the extent that any funds transferred to the Litigation Trust by the Debtors on the Litigation Trust Establishment Date are either found by a final, non-appealable order of this Court, or mutual agreement by the Debtors, the FILO Secured Parties (or, after the Litigation Trust Establishment Date, the Class A-2 Representative), and TRACO International Group S. De R.L. ("**TRACO**"), to be held in trust for TRACO (the "**Disputed Funds**"), this Order shall not be deemed to impair any claims asserted in the TRACO Adversary Proceeding with respect to such funds or judgments related thereto; provided, that nothing contained herein shall be deemed to abrogate any requirements under the Bankruptcy Code or Bankruptcy Rules to obtain approvals of settlements.  The Debtors, TRACO,

and all other parties reserve all of their rights, remedies, claims, and defenses with respect to the Disputed Funds under the Bankruptcy Code, the Bankruptcy Rules, the Federal Rules, all applicable contracts, and applicable state and Federal laws, including, but not limited to, their rights to file any objections, motions, or other filings as may be appropriate.

56.     **CommonSpirit.**   Reference is hereby made to that certain adversary proceeding styled *Catholic Health Initiatives Colorado, et al. v. Steward Health Care System, LLC, et al.*, Adversary Case No. 25-03001 (the "**CommonSpirit Constructive Trust Action**") filed on January 3, 2025.  Notwithstanding anything to the contrary in this Order, to the extent that any funds transferred to the Litigation Trust are either found by a final, non-appealable order of this Court, or mutual agreement by the Debtors, the FILO Secured Parties (or, after the Litigation Trust Establishment Date, the Class A-2 Representative), and Catholic Health Initiatives Colorado ("**CHIC**"), CommonSpirit Health ("**CSH**"), and/or CommonSpirit Mountain Region f/k/a Centura Health Corporation ("**CSMR**", together with CSH and CHIC, "**CommonSpirit**"), to be held in trust for CommonSpirit (the "**Disputed Funds**"), this Order shall not be deemed to impair any claims asserted in the CommonSpirit Constructive Trust Action or judgments related thereto; provided, that nothing contained herein shall be deemed to abrogate any requirements under the Bankruptcy Code or Bankruptcy Rules to obtain approvals of settlements.  The Debtors, CommonSpirit, and all other parties reserve all of their rights, remedies, claims, and defenses with respect to the Disputed Funds under the Bankruptcy Code, the Bankruptcy Rules, the Federal Rules, all applicable contracts, and applicable state and Federal laws, including, but not limited to, their rights to file any objections, motions, or other filings as may be appropriate.

57.     **HSA**.  The Debtors acknowledge that (1) they and Healthcare Systems of America and its affiliates (collectively, "**HSA**") are party to that certain *Stipulation and Agreed*

*Order Between Debtors and Healthcare Systems of America Adjourning Hearing on Emergency Motion of Healthcare Systems of America to Enforce the Global Settlement Order and Compel The Debtors To Comply With Its Obligations Thereunder* (Docket No. 4828) (the "**HSA Stipulated Order**"), pursuant to which certain disputed funds (the "**Disputed LIP and DPP Funds**") have been or will be deposited into the Medicaid Funds Segregated Account (as defined in the HSA Stipulated Order) and (2) the Disputed LIP and DPP Funds are subject to an ongoing ownership dispute currently pending before this Court.  Notwithstanding any other provision in this Order (including, without limitation, paragraph 6), the Settlement Term Sheet, or the occurrence of the Litigation Trust Establishment Date, (a) no Disputed LIP and DPP Funds subject to the HSA Stipulated Order shall be transferred to the Litigation Trust unless and until the HSA Stipulated Order requires the release of such funds to the Debtors and (b) to the extent that the Debtors or the Litigation Trust are, or become, in possession of any Disputed LIP or DPP Funds that are required to be, but have not been, deposited into the Medicaid Funds Segregated Account, the right to such funds shall not transfer to the Litigation Trust unless and until the HSA Stipulated Order would have otherwise required the release of such funds to the Debtors, which release shall be governed by the terms of the HSA Stipulated Order.  For the avoidance of doubt, nothing in this Order shall be deemed to transfer any Disputed LIP and DPP Funds to which HSA is found or deemed to have an ownership interest—whether by court order or a settlement acceptable to the Debtors and the FILO Parties—free and clear of HSA's ownership rights, including any Claims to enforce such rights.  Notwithstanding the occurrence of the Litigation Trust Establishment Date, the HSA Stipulated Order, and the rights and obligations of HSA and the Debtors under the HSA Stipulated Order, including, without limitation, any Claims that accrued prior to the Litigation Trust Establishment Date, shall remain in full force and effect against HSA and the Debtors, as

applicable.  If any Disputed DIP or LPP Funds are released to HSA, the Debtors or the Litigation

Trust from the Medicaid Funds Segregated Account following entry of a final order from the Court

that has not been stayed (or such Disputed DIP or LPP Funds are transferred from the Debtors to

the Litigation Trust following entry of such unstayed final order), and, following an appeal, a court

of competent jurisdiction enters a final order reversing, modifying or remanding the lower court's

decision as to ownership of the Disputed DIP or LPP Funds, HSA, the Debtors or the Litigation

Trust, as applicable, shall have the right to seek recovery of such Disputed DIP or LPP Funds from

the party in possession of such funds.

58.     Notwithstanding anything to the contrary in this Order or the Settlement

Term Sheet, Ann-Marie Driscoll and Patrick Lombardo are not Individual Released Parties and

shall be deemed excluded from the list of individuals identified on Schedule 1 annexed to the

Settlement Term Sheet.

59.     Notice of the Motion is adequate under Bankruptcy Rule 6004(a).

60.     Notwithstanding the provisions of Bankruptcy Rule 6004(h) or 6006(d), this

Order shall be immediately effective and enforceable upon its entry.

61.     The Debtors are authorized to take all actions necessary or appropriate to

carry out the relief granted in this Order.

62.     This Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, or enforcement of this Order and the

Settlement Term Sheet; *provided*, *however*, that any mediation requirements in the Definitive

Documents shall be given full force and effect.

Signed:  June 02, 2025

Christopher Lopez
United States Bankruptcy Judge

<u>**Exhibit 1**</u>

**Settlement Term Sheet**

## SETTLEMENT AND STAY RELIEF TERM SHEET

### April 28, 2025

This Term Sheet sets forth the material substantive terms pursuant to which the Debtors, the FILO DIP/Bridge Agent and Lenders (the "FILO Parties"), and the Unsecured Creditors Committee ("UCC") will support entry of an order resolving requests for relief from the stay by the FILO Parties.

1. This Term Sheet must be approved by an order of the Bankruptcy Court, pursuant to sections 361, 362, 363 and 105 of the Bankruptcy Code and Bankruptcy Rules 4001(d)(iii), 6004, and 9019 (the "Approval Order"), entered not later than May 28, 2025 (the "Approval Milestone"). In addition, the Debtors shall file a motion seeking the Bankruptcy Court's approval of the Approval Order (the "Approval Motion") by no later than April 28, 2025 (the "Motion Milestone"). If the Debtors do not satisfy either the Motion Milestone or the Approval Milestone, this agreement will be of no further force or effect.[1]

2. All of the Estate (as defined below) assets identified on **Schedule 1** hereto (the "Litigation Trust Assets") will be transferred free and clear (to the fullest extent permissible by applicable law) to the "Litigation Trust," a trust to be created. The Estate assets that are not Litigation Trust Assets shall be retained by the Estate (the "Retained Assets").[2] The terms of the

---

[1] The milestones and other dates and deadlines contained herein may be extended by e-mail agreement amongst counsel to the Debtors, FILO Parties, and UCC.

[2] The Retained Assets shall include, without limitation, (i) the Estate's reversionary interests (if any) in the Professional Fees Escrow Account, the Physician Insurance Account (each as defined in the FILO DIP Order (Docket No. 1538)), the Expense Escrow Account (as defined in the MPT Settlement Order (Docket No. 2610)), and in each case, the amounts deposited therein, and (ii) any equity interests in any Debtor. To the extent that the Estate realizes cash or other value on account of any Retained Assets that comprise, would have comprised or are derived from FILO DIP collateral ("Retained Collateral") (which shall exclude, for the avoidance of doubt, the Class B interests, any proceeds thereof, and any proceeds funded to, advanced to, or authorized to be used by the Estate in accordance with this Term Sheet) the Estate shall promptly turn over such cash or other value to the Litigation Trust for distribution in accordance with the Litigation Trust's distribution waterfall. To the extent that any Retained Collateral is identified that could be monetized for value, the Estate shall use commercially reasonable efforts to monetize such Retained Collateral in coordination, and in a manner reasonably agreed upon, with the Litigation Trustee at the Litigation Trust's sole expense and paid in advance pursuant to the TSA (for the avoidance of doubt, any reasonable and documented costs incurred by the Estate in connection with such agreed upon monetization process shall be charged to the Litigation Trust at the Estate's cost). The Approval Order shall provide that from and after the Trust Establishment Date (as defined below), the Retained Collateral (which includes, for the avoidance of doubt, all proceeds derived therefrom) shall be held in trust exclusively for the benefit of

Litigation Trust will be governed by a trust agreement consistent with this Term Sheet and otherwise mutually agreeable to the parties, with approval not to be unreasonably withheld, conditioned or delayed (the "Litigation Trust Agreement").

3. The Approval Order will provide that the Litigation Trust Assets will be transferred to the Litigation Trust on the earlier of (i) July 8, 2025; and (ii) one (1) business day after the confirmation date of any confirmed plan (the actual date of transfer of the assets is the "Trust Establishment Date"). The Debtors and FILO DIP Lenders will enter into an amendment to the FILO DIP credit agreement providing for an extension of the FILO DIP maturity date through (i) in the first instance, the Motion Milestone, (ii) if the Debtors satisfy the Motion Milestone, the Approval Milestone, and (iii) if the Debtors satisfy the Approval Milestone, through the date by which the Litigation Trust Assets are required to have been transferred to the Litigation Trust pursuant to the immediately preceding sentence.  It shall be an Event of Default under the FILO DIP Credit Agreement if the Debtors or UCC materially breach their respective obligations to the FILO Parties under this Term Sheet or the Plan Support Agreement Term Sheet, and such breach is not cured within three business days of the FILO Parties providing written notice of such breach to Debtors' and UCC's counsel.

4. On the Trust Establishment Date, the releases set forth in **Exhibit A** shall go into full force and effect; provided that, for the avoidance of doubt, the release will not include (i) $10 million of principal claims outstanding under the FILO Bridge facility (the "Retained FILO Claim"), which shall, until the earlier of (a) the timely satisfaction of the Confirmation Milestone or (b) satisfaction of such Retained FILO Claim in full in cash, remain secured by the Retained Cash and any other assets of the Debtors' estates or any successor(s) thereto (collectively, the "Estate") (provided that the negative pledge provisions and other rights and entitlements of the Litigation Trust with respect to the Retained Collateral shall survive and remain unaffected notwithstanding such timely occurrence of the Confirmation Milestone or satisfaction of the Retained FILO Claim); or (ii) the rights or entitlements of the FILO Parties or the Litigation Trust contemplated by this Term Sheet or the Plan Support Agreement Term Sheet (or any further documentation memorializing the same), including, without limitation, the FILO Parties' rights to receive Retained Cash as a paydown on the Class A-

---

the Litigation Trust and shall be subject to a negative pledge by the Estate and not made available (pursuant to subsequent order of the court or otherwise) other than for distribution in accordance with the Litigation Trust's distribution waterfall as contemplated by this footnote 2.

2 Preference pursuant to paragraph 6 of this Term Sheet and the Litigation Trust's rights under the TSA.

5.  As a condition precedent to the effectiveness of this Term Sheet, (i) the Debtors shall have made a prepayment of the FILO DIP Loans by April 28, 2025, in the amount of no less than $30.3 million (the "Required Prepayment"), and (ii) the Debtors and the FILO Parties shall have executed an amendment to the FILO DIP Credit Agreement (the "DIP Amendment") approving the budget annexed to the DIP Amendment (the "DIP Budget").

6.  The Debtors will hold $15 million (the "Retained Cash") in a third-party escrow account subject to the lien of the Retained FILO Claim.  If the Retained Cash is not authorized to be utilized by the Debtors pursuant to an order confirming a chapter 11 plan consistent with the terms of Section 1 of the Plan Support Agreement Term Sheet ("Plan"), which order is entered on or prior to August 1, 2025 (the "Confirmation Milestone"), the Retained Cash will be paid to the FILO Parties as a paydown on the Retained FILO Claim until paid in full in cash and the remainder as a paydown on the Class A-2 Preference.  If an order confirming the Plan is entered prior to the Confirmation Milestone, the Debtors may use the Retained Cash for any purposes authorized under the Plan.

7.  The Litigation Trust will be governed pursuant to the Litigation Trust Agreement creating and governing the Litigation Trust:

   a.  The Litigation Trust will have three beneficiary classes:

      i.   Class A-1 interests, which shall (i) represent the rights and entitlements of the parties that from time to time extend or are deemed to have extended funding under the Litigation Funding (the "Litigation Funders") and their representative (the "Litigation Funding Agent") and (ii) have a distribution and liquidation preference as set forth in this Term Sheet.

      ii.  Class A-2 interests will be held by the FILO Parties and their successors, which interests shall have a distribution and liquidation preference as set forth in this Term Sheet (together with the Class A-1 interests, the "Class A interests").

      The definitive documentation will provide that the Class A interests will only be transferrable (i) pursuant to an available exemption under the Securities Act of 1933, as amended (the "Securities Act"), or a registration of such Class A

3

interests under the Securities Act, and (ii) so long as any proposed transfer would not result in a requirement that the Class A interests be registered under the Securities Act.  Such definitive documentation will specify the process, conditions, and documentation under which any such transfer of the Class A interests would be effectuated, and shall entitle the Litigation Trustee (as defined below) to, in its reasonable discretion at any time the Class A interests are not registered, and other than with respect to a transfer by operation of law, obtain an opinion from counsel to the transferor to the effect that the proposed transfer may be made to the applicable transferee without registration under the Securities Act, in reliance upon an exemption from such registration requirement.

The definitive documentation shall also contain customary representations and warranties of each initial holder of the Class A interests to the effect that it is an accredited investor and a qualified institutional buyer, possesses appropriate investment experience, and is acquiring the interests for its own account and not with a view toward distribution.  To the extent such representations cannot be made by each FILO Party on the date of issuance, then at any time the Class A interests are not registered, all such Class A interests shall be non-transferable (other than by will, intestate, or operation of law).

The FILO Agent or its designee, acting at the direction of FILO Parties holding Class A-2 interests entitled to a majority in amount of the outstanding Class A-2 Preference, shall be the representative of the Class A-2 interests (the "Class A-2 Representative").

iii. Class B interests will be held by Steward Health Care Holdings LLC, on behalf of the Estate, or by any successor entity that may be established under a confirmed plan (each, a "Successor Entity").

The definitive documentation will provide that the Class B interests will only be transferrable (i) to any liquidating trust

or other similar vehicle formed under and following a confirmed plan or otherwise formed pursuant to applicable law or (ii) (A) pursuant to an available exemption under the Securities Act of 1933, as amended (the "Securities Act") and so long as any proposed transfer would not result in a requirement that the Class B interests be registered under the Securities Act, or a registration of such Class B interests under the Securities Act, and (B) if such transfer is to occur prior to the effective date of any confirmed plan, with the consent of the Litigation Trustee (not to be unreasonably withheld, conditioned or delayed) if the purpose of the transfer is to obtain proceeds to pay costs and expenses of the Successor Entity, including taxes.  Such definitive documentation will specify the process, conditions, and documentation under which any such transfer of the Class B interests would be effectuated, and other than with respect to a transfer by operation of law or pursuant to bankruptcy court order or confirmed plan,  shall entitle the Litigation Trustee to, in its reasonable discretion at any time the Class B interests are not registered, obtain an opinion from counsel to the transferor to the effect that the proposed transfer may be made to the applicable transferee without registration under the Securities Act, in reliance upon an exemption from such registration requirement.

There shall be a single representative of the Class B interests at any given time (the "Class B Representative"), which shall initially be the Transformation Committee, on behalf of the Estate.  If a plan is confirmed, the terms of the Plan and the Confirmation Order will determine the successor Class B Representative on or before the Effective Date of the Plan.  If the Chapter 11 Cases are converted to Chapter 7 cases, the Chapter 7 Trustee (or its designee) will be the Class B Representative.

iv.  Any right to receive Litigation Trust interests will not, and is not intended to, constitute "securities" and, accordingly, will not be registered pursuant to the Securities Act or any applicable state or local securities law.  However, if it should be determined that any such Litigation Trust interests constitute "securities," the exemption provisions of section 4(a)(2) of the Securities Act will be satisfied and the offer and sale of such interests will be exempt from registration under the Securities Act.

5

b. The identity of the trustee of the Litigation Trust (the "<u>Litigation Trustee</u>") shall be a party to be identified.  The terms of the Litigation Trustee's engagement shall be acceptable to the Debtors, FILO Parties, and the UCC.  The Debtors and the UCC will have the right to consent to the selection of any successor Litigation Trustee (including the terms of such successor Litigation Trustee's engagement), such consent not to be unreasonably withheld, conditioned, or delayed.

c. The Litigation Trustee will be a fiduciary and owe fiduciary duties to all Litigation Trust beneficiaries, collectively.

d. Except as specifically set forth in the following subparagraphs, the Litigation Trustee will have exclusive governance authority over the Litigation Trust.

e. With respect to the Litigation Trust Assets set forth on the schedule agreed to contemporaneously herewith among the Debtors, the FILO Parties, and the UCC (the "<u>Threshold Schedule</u>"), the following consents shall be required:

    i. For a settlement proposal or monetization opportunity (each, a "<u>Proposal</u>") for which the Specified Value (as defined below) meets or exceeds the applicable Minimum Thresholds set forth on the Threshold Schedule but that does not meet or exceed the applicable Maximum Thresholds set forth on the Threshold Schedule, the Litigation Trustee may decide, without obtaining the consent of any other party, whether to accept or reject such settlement in its sole judgement consistent with its fiduciary duties, in each case, subject to clauses (iii) – (v) of this paragraph 7.e., including, without limitation, the Minimum Threshold adjustments set forth in such clauses.

    ii. For a Proposal for which the Specified Value exceeds the applicable Maximum Thresholds set forth on the Threshold Schedule, the Litigation Trustee shall accept and implement such Proposal unless the Litigation Trustee reasonably determines based on the advice of outside counsel that accepting and implementing such Proposal is inconsistent with its fiduciary duties.

iii. If the FILO Balance is in an Underpayment State, (a) each Minimum Threshold shall be deemed to be equal to 80% of its stated value set forth in the Threshold Schedule unless and until the FILO Balance is no longer in an Underpayment State and (b) the Litigation Trustee shall be authorized to accept a Proposal that does not meet or exceed the applicable Minimum Thresholds as then in effect without obtaining the consent of any other party if the Litigation Trustee (i) determines in the exercise of its fiduciary duties based on the advice of outside counsel that it is required to accept the Proposal and (ii) provides five (5) business days' written notice (the "Notice Period") to the Class A-2 Representative and the Class B Representative (the "Notice Parties") of its intent to accept a Proposal; *provided* that during the Notice Period, each Notice Party shall be entitled to object to the Litigation Trustee accepting a Proposal by delivering an objection in writing to the Litigation Trustee and the other Notice Party (which objection shall specify in reasonable detail the grounds for the objection) (an "Objection"), and upon such an Objection, the objecting party shall promptly arrange a conference with Judge Isgur, in his capacity as mediator.  If a successful resolution is not achieved within three (3) business days of the commencement of such mediation (which period may be extended by the Litigation Trustee in its sole discretion in writing) (the "Mediation Period"), the parties may seek resolution by the Bankruptcy Court on an emergency basis.

iv. If the FILO Balance is not in an Underpayment State, the Litigation Trustee will not accept any Proposal unless (a) the Class A-2 Representative and Class B Representative have authorized such acceptance; (b) the Proposal exceeds the applicable Minimum Thresholds by 20% or more, in which case the consent of no other party shall be required; or (c) the Litigation Trustee (i) determines in the exercise of its fiduciary duties based on the advice of outside counsel that it is required to accept the Proposal, in which case the consent of no other party shall be required, and (ii) provides five (5) business days' written notice to the Notice Parties of its intent to accept a Proposal; *provided* that during the Notice Period, each Notice Party shall be entitled to object to the Litigation Trustee accepting a Proposal by delivering an Objection to the Litigation Trustee and the other Notice Party, and upon such an Objection, the objecting party shall promptly arrange a conference with Judge Isgur, in his capacity as mediator.  If a

successful resolution is not achieved within the Mediation Period, the parties may seek resolution by the Bankruptcy Court on an emergency basis.

v. At the FILO Parties' election, the FILO Parties may, on one or more occasions, increase the deemed value of a Specified Value with the effect that it is treated as meeting the applicable Minimum Thresholds by contributing Class A-2 interests having a Class A-2 Preference equal to the difference between the Net Offered Specified Value and the highest applicable Net Minimum Specified Value (each as defined below).

vi. "Specified Value" shall be equal to the gross cash and cash equivalent proceeds of a Proposal.

vii. "Net Minimum Specified Value" is equal to the Minimum Threshold set forth in the Threshold Schedule less the pro forma contingency fee that would be payable in connection with a Proposal equal to such Minimum Threshold.

viii. "Net Offered Specified Value" is equal to the Specified Value less any contingency fee payable to the Trust's counsel, in each case, with respect to the applicable Proposal.

f. With respect to the disposition of Litigation Trust Assets not set forth on the Threshold Schedule, the disposition shall be carried out by the Litigation Trustee, exercising its reasonable business judgment.

g. The Litigation Trustee shall not agree to a contingency fee in excess of 20% of the gross proceeds of a litigation without the written consent of the Class A-2 Representative and the Class B Representative, other than any existing contingency fee arrangements approved by the Bankruptcy Court as of the Trust Establishment Date.

h. The Estate or Class B Representative, as applicable, shall have the right to pay in full or any portion of the FILO Balance, in cash, without any prepayment penalty at any time.  Once the FILO Balance has been reduced to $0, (i) the rights granted to the Class A-2 Representative hereunder shall inure to the Class B Representative and the rights of the Class B Representative hereunder shall inure to the Litigation Funding Agent for the benefit of the holders of the Variable Component and (ii) the Class B Representative may replace the Litigation Trustee subject to the

8

terms of the Litigation Trustee's agreement with the Litigation Trust (which agreement shall be consistent with this Term Sheet and otherwise reasonably acceptable to the Debtors, the FILO Parties, and the UCC).

i.  Distributions from the Litigation Trust shall be subject to the following priorities:

    i.  Fees of the Litigation Funding Agent and the Class A-2 Representative (which shall be $50,000 per month for each position), and indemnification and reasonable and documented expenses of (A) the Litigation Trust (including payments owing under the TSA, which shall be paid to the Estate), and (B) the Litigation Funding Agent, the Litigation Funders, the Class A-2 Representative, and the FILO Parties (solely with respect to this clause (B), subject to an aggregate cap not to exceed: (i) $500,000 per month for the initial three-month period commencing on the Trust Establishment Date, (ii) $350,000 per month for the nine-month period following such initial three-month period, and (iii) $220,000 per month[3] thereafter; provided that such cap shall not apply to the FILO Parties before the Trust Establishment Date; provided further that, (i) to the extent that the aggregate expenses incurred in any given month by the parties referenced in the immediately preceding clause (B) are less than the amount of such monthly cap, the amount of such variance will roll forward and increase such monthly cap in the following months until such variance is used and (ii) to the extent that the aggregate expenses incurred in any given month by the parties referenced in the immediately preceding clause (B) exceed the amount of such monthly cap, the amount of such variance can be carried forward and satisfied in future months to the extent there is availability under the applicable monthly cap in any such future month).

    ii.  Class A-1 interests until the Class A-1 Preference, the Upfront Premium, and, subject to paragraph 13 of this Term Sheet, the Variable Component (as defined below) (which survives repayment of the Class A-1 Preference and the FILO Balance) are repaid in full in cash.

---

[3] Monthly invoices of the professionals for such parties shall be provided to the Estate with reasonable summaries of activities, which may be redacted for privilege and shall not require time entries to be provided.

iii. Class A-2 interests until the Class A-2 Preference is repaid in full in cash and the FILO Balance is $0.

iv. Class B interests.

v. Notwithstanding anything to the contrary in the immediately preceding clauses (ii) - (iv):

    1. If the FILO Balance is not in an Underpayment State, 25% of any amount otherwise payable to (i) the holders of the Class A-2 interests, and (ii) on or after December 1, 2025, the Class A-1 interests, shall be used to pay unpaid Deferred Fees and Unestimated Fees (each, as defined in the Plan Support Agreement Term Sheet) on a pro rata basis.

    2. If the FILO Balance is less than $25 million, any unpaid Unestimated Fees or Deferred Fees will be paid on a pro rata basis from any available proceeds that would otherwise be payable to the holders of Class A-1 interests as Variable Component (provided that such Variable Component shall be payable with the next proceeds received following repayment in full of such unpaid Unestimated Fees and Deferred Fees).

8. The Estate will coordinate its efforts with the Litigation Trustee with respect to issues involving overlapping concerns among the Estate and the Litigation Trust with respect to third parties. For example, if the same third party is involved in disputes with both the Estate and the Litigation Trust, the effort will be coordinated between the Estate and the Litigation Trustee. If the Estate and the Litigation Trustee are unable to resolve a matter that should be coordinated, they must (i) arrange a conference with Judge Isgur, in his capacity as mediator in connection with the subject matter of this Term Sheet; and (ii) failing a successful mediation, obtain resolution by the Bankruptcy Court.

    a. With respect to any such dispute presented to the Bankruptcy Court:

        i. If the FILO Balance is in an Underpayment State on the date of any hearing before the Bankruptcy Court, the Litigation Trustee's business judgment will be applied to the dispute, subject to challenge by the Estate; *provided*, *however*, that the Litigation Trustee's business judgment will not be considered

by the Bankruptcy Court with respect to a matter (or a portion thereof) as to which such business judgment would allow or increase the liabilities of the Estate (other than with respect to §502(h) claims).

ii. If the FILO Balance is not in an Underpayment State on the date of any hearing before the Bankruptcy Court, the Estate's business judgment will be applied to the dispute, subject to challenge by the Litigation Trustee; *provided*, *however*, that the Estate's business judgment will not be considered by the Bankruptcy Court with respect to a matter (or a portion thereof) as to which such business judgment would allow or increase the liabilities of the Litigation Trust.

b. Notwithstanding the foregoing, with respect to any constructive trust claims asserted by any third parties with respect to any Litigation Trust Assets or Retained Collateral, as well as any government investigations, the Litigation Trust and the Estate will coordinate efforts to dispute or settle such claims, or to address such investigations, including with respect to funding arrangements for the defense of any such claims or addressing any such investigations.

9. FILO Parties to agree to use of cash collateral from April 1, 2025, through the Trust Establishment Date in an amount up to $61 million through June 27, 2025 and with additional amounts available for use thereafter, in each case, in accordance with the DIP Budget and the Pre-TED Professional Fee Estimates (as defined in the Plan Support Agreement Term Sheet). The aggregate amount of cash collateral used from April 1, 2025, through the Trust Establishment Date, together with interest thereon at the Applicable Rate, shall be the "Secured Interim Advances." On the Trust Establishment Date, the Debtors shall repay the FILO DIP Loans with Class A-1 interests having a distribution and liquidation preference (along with a proportionate interest in all other rights therein) equal to the amount of such Secured Interim Advances, and on account of such repayment, the amount of FILO DIP Loans outstanding shall be reduced by the amount of such Secured Interim Advances.

10. Funding.

a. The FILO Parties shall commit, subject to the terms and conditions to be set forth in a commitment letter consistent with this Term Sheet and otherwise acceptable to the FILO Parties and the Debtors (the "Commitment Letter") (which shall be executed within 10 business days after execution of this Term Sheet), to, commencing on

11

the Trust Establishment Date, extend funds (solely from the proceeds of FILO DIP/Bridge Claim[4] repayments received after the FILO DIP Agent's receipt of the Required Prepayment, or Class A interests distributions) to the Litigation Trust (the "<u>Litigation Funding</u>") on a delayed draw basis in an aggregate amount of up to $125 million (the "<u>Initial Commitment Amount</u>") (which is inclusive of (x) a budgeted amount of $61 million through June 27, 2025, together with any additional amounts budgeted thereafter under the DIP Budget, which, in each case,  may only be incurred in the form of Secured Interim Advances, and (y) the $6.5 million of Estate Funding), which funded amounts shall be available to pay litigation costs of the Litigation Trust, costs of administration of the Litigation Trust and monetization of the Litigation Trust Assets, in each case, subject to (i) budgets delivered from time to time to, and which must be reasonably acceptable to, the Litigation Funding Agent (the "<u>Litigation Funding Budget</u>") and (ii) the satisfaction of any conditions to funding under the Commitment Letter and absence of any uncured material breaches of the Litigation Trustee's obligations under the Litigation Trust Agreement.[5]  Requests for funding under the Litigation Funding shall be made solely (a) in compliance with the foregoing terms and (b) by the Litigation Trustee upon at least five business days' written notice to the Litigation Funding Agent, it being understood and agreed that not more than one such funding request shall be made during any 30-day period.  Litigation Funding to include an uncommitted accordion of 25% of the Initial Commitment Amount, on the same terms as the initial tranche (to the extent the accordion becomes committed in the sole and absolute discretion of the FILO Parties, the amount of such commitment together with the Initial Commitment Amount, shall be the "<u>Total Commitment Amount</u>").  The commitments under the Commitment Letter shall automatically terminate upon the earlier to occur of (i) the funding of the then applicable commitment amount (whether the Initial Commitment Amount or the Total Commitment Amount, as the case may be) and (ii) the repayment of the FILO Balance.

b.  Further financing to be subject to written consent of (x) the Litigation Trustee; (y) the Class B Representative; and (z) unless the further

---

[4] "<u>FILO DIP/Bridge Claim</u>" refers to the claims outstanding under the FILO DIP/Bridge facilities immediately prior to the Trust Establishment Date.

[5] To the extent that the initial Litigation Funding Budget contemplates disbursements to legal counsel on a current basis and the projected amount of such disbursements is subsequently reduced through contingency fee, success fee, or similar arrangements (the aggregate amount of such reduction as agreed by the Litigation Trustee, the "<u>Contingency Fee Savings</u>"), the Total Commitment Amount shall be reduced by the Contingency Fee Savings.

financing is junior to amounts due or to be due to the FILO Parties and under the Litigation Funding, the Class A-2 interests holders and the Litigation Funding Agent.  For the avoidance of doubt, the Litigation Trust shall not incur any debt, obligation for borrowed money or other obligation with payment priority senior to or *pari passu* with the Class A interests or secure any obligation with liens on any Litigation Trust Assets or Retained Collateral, in each case, without the prior written consent of the Class A-2 Representative and Class B Representative and the Litigation Funding Agent.

c. Upon the occurrence of the Trust Establishment Date, the Litigation Trust shall provide $6.5 million to the Estate (or any successor liquidating vehicle) (the "Estate Funding") to fund costs and expenses of the Estate and the Estate's professionals incurred after the Trust Establishment Date and of any successor liquidating vehicle (or representative thereof) established to hold the Class B interests and/or any remaining assets of the Debtors.

d. In respect of the Estate Funding, the FILO Parties indirectly providing such funding shall receive Class A-1 interests having a distribution and liquidation preference (along with a proportionate interest in all other rights therein) equal to the amount of the Estate Funding.  The Estate Funding shall not be required to be repaid by the Estate.

11. MOIC Payment: The "MOIC Payment" refers to a payment to which the FILO Bridge lenders are entitled (subject to the occurrence of the Trust Establishment Date) in accordance with the terms set forth below. On the Trust Establishment Date, the MOIC Payment will be allowed on the following terms:

a. The Litigation Trust's MOIC obligation will be $11.25 million through March 31, 2026, increasing by:

   i. $1.0 million on April 1, 2026,
   ii. An additional $1.5 million on May 1, 2026,
   iii. An additional $2.0 million on June 1, 2026,
   iv. An additional $2.5 million on July 1, 2026,
   v. An additional $3.0 million on August 1, 2026, and
   vi. An additional $3.75 million on September 1, 2026 and on the first day of each month thereafter until the FILO Balance is paid in full in cash.

b. The total MOIC Payments will not exceed 85% of $75 million *minus* any interest paid or accreted on account of the claims outstanding

13

under the FILO Bridge facility (the "<u>FILO Bridge Claims</u>") (including any interest paid or accreted on account of the Class A-2 Preference that is allocable to FILO Bridge Claims).

12. Class A-2 interests shall, as of the applicable date of determination, have a distribution and liquidation preference in an amount equal to (x) the sum of (i) all principal and accrued interest, fees, expenses,[6] and other amounts outstanding under the FILO DIP/Bridge facilities[7] immediately prior to the Trust Establishment Date (for the avoidance of doubt, excluding the Retained FILO Claim), (ii) all accreted amounts accrued thereon (calculated in accordance with the immediately succeeding sentence), (iii) the MOIC Payment, and (iv) the "Exit Premium" under the FILO DIP Loans (which shall be calculated as if the FILO DIP Loans were being fully repaid), in each case, as of such date, *less* (y) the (A) aggregate amount, if any, of cash distributions paid on the Class A-2 interests from the Litigation Trust and (B) aggregate amount, if any, of Class A-2 interests otherwise contributed or waived by the FILO Parties, in each case, as of such date (the "<u>Class A-2 Preference</u>").  Prongs (i) and (ii) of the definition of Class A-2 Preference shall accrete at (a) from the Trust Establishment Date through September 30, 2025, a rate equal to 10% per annum, (b) from October 1, 2025 through December 31, 2025, a rate equal to 10.5% per annum, (c) from January 1, 2026 through March 31, 2026, a rate equal to 11% per annum, and (d) a rate equal to 11.25% per annum commencing on April 1, 2026, and increasing by an additional 25bps at the beginning of each quarter thereafter, subject to a maximum of 12% per annum (the immediately preceding clauses (a)-(d), the "<u>Applicable Rate</u>," which such accreted amount shall not be required to be paid in cash and, to the extent not paid in cash, such accreted amount shall be paid in-kind and capitalized and added to the balance of the Class A-2 Preference on a monthly basis); provided that, in each case, to the extent the FILO Parties commit to provide additional funding in excess of the Initial Commitment Amount (without any additional fees or premiums) to cover the payment of such monthly accreted amount in cash, then such monthly accreted amount shall be paid in cash.

---

[6] Milbank to defer (i) 10% of its fees incurred between April 1, 2025, and the Trust Establishment Date, and (ii) any of its fees incurred in excess of the Pre-TED Professional Fee Estimates.  All outstanding Milbank invoices and Houlihan's March 18, 2025 invoice shall be paid as a condition precedent to the effectiveness of this Term Sheet, and thereafter all Milbank and Houlihan fees and expenses that are not subject to deferral shall be paid current in accordance with the FILO DIP Order and Approval Order, as applicable.

[7] FILO DIP/Bridge facilities to be allowed in full pursuant to the Approval Order, subject to the MOIC Payment settlement set forth in this Term Sheet.

13. Litigation Funding will be made available to the Litigation Trust by the FILO Parties on these terms:

    a. The Class A-1 interests shall, as of each applicable date of determination, have a distribution and liquidation preference in an amount equal to (x) the aggregate amount of funding extended or deemed to have been extended under the Litigation Funding plus all accreted amounts accrued thereon (calculated in accordance with the immediately succeeding sentence), in each case, as of such date, *less* (y) the aggregate amount, if any, of cash distributions paid on the Class A-1 interests from the Litigation Trust as of such date (the "Class A-1 Preference"). The Class A-1 Preference shall accrete at the Applicable Rate, which such accreted amount shall not be required to be paid in cash and, to the extent not paid in cash, such accreted amount shall be paid in-kind and capitalized and added to the balance of the Class A-1 Preference on a monthly basis; provided that, in each case, to the extent the FILO Parties commit to provide additional funding in excess of the Initial Commitment Amount (without any additional fees or premiums) to cover the payment of such monthly accreted amount in cash, then such monthly accreted amount shall be paid in cash.

    b. The Litigation Funding will, in addition to payment of the Class A-1 Preference and the agency fee of the Litigation Funding Agent, as well as indemnification and reimbursement of all reasonable and documented out-of-pocket expenses of the Litigation Funding Agent and the Litigation Funders (subject to clause i. of paragraph 7.i.), be entitled to:

        i. an upfront premium (the "Upfront Premium"), payable in kind, in an amount equal to $4.25 million; provided that if the Litigation Funding accordion is exercised with the consent of the Litigation Trustee, then the Upfront Premium shall be increased by the same percentage that the commitments under the Litigation Funding are increased.

        ii. 20% of gross litigation proceeds (the "Variable Component"), of which (a) 15% (the "Upfront Percentage") is paid in cash at the time of receipt of such litigation proceeds and (b) 5% is deferred, with the applicable deferred cash being held in escrow (the "Deferred Portion"); provided that if the litigation proceeds result from a litigation financed with a contingency fee structure or third-party litigation funding, the total Variable Component shall be limited to the lesser of (A) the

15

applicable Variable Component noted above (subject to clause 13.d below), and (B) the greater of (i) 30% of such gross litigation proceeds minus the amount of contingency fee, success fee, or third-party litigation funding cost related to such litigation and (ii) 10% of such gross litigation proceeds (the "<u>Reduced Variable Component</u>").

In the event the Reduced Variable Component is equal to or less than 15% of such gross litigation proceeds, then all of such Reduced Variable Component shall be treated as the Upfront Percentage.  In the event the Reduced Variable Component is greater than 15% of such gross litigation proceeds, then 15% of such gross litigation proceeds shall be treated as the Upfront Percentage and the remaining portion shall be treated as the Deferred Portion.

c. If the FILO Balance is repaid in full in cash on or before October 1, 2026, the escrow holding the Deferred Portion shall be paid to the Estate.  On October 2, 2026, if the FILO Balance has not been paid in full in cash by October 1, 2026, the escrow holding the Deferred Portion shall be disbursed in full to the Litigation Funding Agent. Following such time and until repayment of the FILO Balance in full in cash, the Variable Component shall be paid in cash at the time of receipt of litigation proceeds in accordance with the terms of clause 13.b. with no amounts deferred.

d. After repayment of the FILO Balance, the Variable Component shall continue to be entitled to a percentage of the gross litigation proceeds (i) at the Upfront Percentage only (i.e., 15%) if the FILO Balance is repaid in full in cash on or before October 1, 2026, or (ii) at 20% if the FILO Balance is not repaid in full in cash on or before October 1, 2026, in each case, subject to the Reduced Variable Component adjustment described above (the "<u>Post-FILO Repayment Variable Component</u>"); provided that (x) to the extent a Plan is confirmed, the Post-FILO Repayment Variable Component shall be paid in two installments, with the first installment being paid in cash upon receipt of the applicable litigation proceeds in an amount equal to 62.5% of the Post-FILO Repayment Variable Component, and the payment of the remaining balance of the Post-FILO Repayment Variable Component being deferred until (and subject to) the satisfaction of allowed administrative and other priority claims pursuant to the Plan, and (y) if a Plan has not been confirmed, the Post-FILO Repayment Variable Component shall be paid in full in cash upon receipt of the applicable litigation proceeds.

14. "<u>FILO Balance</u>" equals on any applicable date of determination: the sum of (a) the outstanding Class A-2 Preference (including all accreted amounts accrued thereon) and fees and expenses of the Class A-2 Representative to the extent payable under this Term Sheet, (b) the outstanding Class A-1 Preference, the Upfront Premium, the agency fee of the Litigation Funding Agent, and outstanding indemnification claims and reasonable and documented out-of-pocket expenses of the Litigation Funding Agent and the Litigation Funders (subject to clause i. of paragraph 7.i.), and (c) any unpaid Variable Component that has been earned (for the avoidance of doubt, (i) other than before October 2, 2026, any Deferred Portion held in escrow and (ii) subject to adjustment, if applicable, in connection with any Post-FILO Repayment Variable Component).

15. The FILO Balance will be in an "<u>Underpayment State</u>" if the aggregate FILO Balance is equal to or greater than

   a. $275 million as of the Trust Establishment Date.
   b. Solely for purposes of paragraph 7.i.v.1., $220 million as of December 1, 2025.
   c. For all purposes other than paragraph 7.i.v.1., $220 million as of December 31, 2025.
   d. $160 million as of April 1, 2026.
   e. $110 million as of July 1, 2026.
   f. $60 million as of September 1, 2026.
   g. $10 million as of December 31, 2026.

16. The Debtors, FILO Parties and UCC to negotiate in good faith and agree prior to entry of the Approval Order on the terms of a transition services agreement pursuant to which the Estate will provide TSA services to the Litigation Trust, including agreement on the scope of services to be provided and pricing at cost (the "<u>TSA</u>"). In advance of each calendar month, the TSA shall provide for the Litigation Trust to advance the Estate's estimated monthly operating expenses, including for payroll and vendors, subject to (i) the initial TSA budget annexed hereto as **Exhibit B**, which may be updated from time to time if approved in writing by the Litigation Trustee and the Class A-2 Representative, and (ii) a reconciliation process with respect to amounts funded in prior months. Payments made by the Litigation Trust to the Estate for any services under the TSA prior to the Estate paying for the budgeted costs of providing such services shall be deemed to be held by the Estate in trust for such purpose and shall not be used for any purpose other than paying such costs. In addition, the Litigation Trust shall provide, when and to the extent due as evidenced by reasonably detailed evidence thereof delivered by the Estate to the Litigation Trust (the "<u>Tax Package</u>"), up to $4 million in funding to

17

the Estate for the sole purpose of the Estate paying income taxes for the Debtors' current 2024/2025 income tax year. Payments made by the Litigation Trust to the Estate for such taxes shall be deemed to be held by the Estate in trust for such purpose and shall not be used for any purpose other than paying such taxes reflected in the Tax Package on a dollar-for-dollar basis. The Estate and its related parties (including employees and advisors) shall be defended, held harmless and indemnified by the Litigation Trust against any and all liabilities or losses that may be incurred in connection with the rendering of services under the TSA to the Litigation Trust or Litigation Trustee, subject to customary carve outs for fraud, willful misconduct, and gross negligence.  All other expenses of the Estate incurred on or after the Trust Establishment Date, including cost of administration of the Estate, must be budgeted and paid from the Retained Cash, Estate Funding, or other Estate (not Litigation Trust) resources.

17. Reporting and Information Sharing.

   a. <u>Regular Conference Calls</u>:  Litigation Trustee to host conference calls on a bi-weekly basis (or more frequently in the Litigation Trustee's discretion) regarding the Litigation Trust Asset monetization process, which calls shall be accessible to the Litigation Funding Agent, the Class A-1 interest holders, the Class A-2 Representative, the Class A-2 interest holders, and the Class B Representative.

   b. <u>Ad Hoc Conference Calls</u>:  In addition to the foregoing, the Litigation Trustee shall make itself reasonably available for conference calls to discuss specific topics reasonably requested in writing by the Litigation Funding Agent, the Class A-2 Representative, or the Class B Representative.

   c. <u>Financial Reporting</u>:  Litigation Trustee shall deliver a written report to the Litigation Funding Agent, the Class A-2 Representative, and the Class B Representative on a monthly basis providing, as of the date of the report:

      i. the amount of cash received by the Litigation Trust through the Litigation Trust Asset monetization process (broken down by source), and the application thereof pursuant to paragraph 7(i) hereof;

      ii. the amount of expenses paid by the Litigation Trust (broken down by category and professional firm);

      iii. the FILO Balance;

iv. the amount of the accrued Variable Component and the Deferred Portion then held in escrow; and

v. a reasonably detailed summary of the asset monetization activity undertaken in the immediately preceding month.

d. <u>Preference Actions</u>: Togut shall deliver to the Litigation Funding Agent, the Class A-2 Representative, and the Class B Representatives reporting with respect to preference actions, which shall be consistent (with respect to both frequency and format) with the reporting currently required to be delivered to the FILO and UCC counsel under paragraph 5 of the Togut retention order [ECF No. 3886].

e. <u>Confidentiality/Preservation of Privileges</u>: Access to reporting shall be subject to entry into (i) a confidentiality agreement and (ii) a common interest agreement and other protocols to the extent necessary to protect applicable privileges, as reasonably determined by the Litigation Trustee.

18. Each FILO Party agrees that prior to the Trust Establishment Date, it shall not transfer, directly or indirectly, in whole or in part, any FILO DIP/Bridge Claims, option thereon, or right or interest therein, and any purported such transfer shall be void and without effect, in each case, unless the transferee thereof: (a) is a signatory to this Term Sheet as of the date of such transfer; or (b) has signed a joinder to this Term Sheet and the Plan Support Agreement Term Sheet acceding to the obligations of a holder of FILO DIP/Bridge Claims hereunder and thereunder (each, a "<u>Permitted Transferee</u>"). Any transfer of FILO DIP/Bridge Claims occurring prior to the Trust Establishment Date shall require the transferee to assume the transferor's obligations under the Commitment Letter in proportion to the amount of FILO DIP/Bridge Claims so transferred relative to the aggregate amount of all FILO DIP/Bridge Claims outstanding as of the date of such transfer (the "<u>Stapling Requirement</u>"). Notwithstanding anything to the contrary herein, a FILO Party may transfer FILO DIP/Bridge Claims to an entity that is acting in its capacity as a Qualified Marketmaker[8] without the requirement that the Qualified Marketmaker be a signatory to this Term Sheet or execute a joinder; *provided* that any such Qualified

---

[8] "<u>Qualified Marketmaker</u>" means an entity that (i) holds itself out to the market as standing ready in the ordinary course of business to purchase from and sell to customers FILO DIP/Bridge Claims, or enter with customers into long or short positions in FILO DIP/Bridge Claims, in its capacity as a dealer or market maker in such FILO DIP/Bridge Claims and (ii) is in fact regularly in the business of making a market in claims, interests, or securities of issuers or borrowers.

Marketmaker (i) may only subsequently transfer the FILO DIP/Bridge Claims to a transferee that is or becomes a Permitted Transferee at the time of such transfer and to the extent such subsequent transfer complies with the Stapling Requirement and (ii) shall be required to, by the earlier of (x) ten (10) business days after its acquisition of any transferred FILO DIP/Bridge Claims and (y) the Required Joinder Date,[9] either sign a joinder to this Term Sheet or transfer all FILO DIP/Bridge Claims held by such Qualified Marketmaker to one or more Permitted Transferees, in each case, in compliance with the Stapling Requirement.

19. The parties shall negotiate promptly and in good faith to agree on definitive documentation, which shall include the Litigation Trust Agreement (including the funding mechanics with respect to the Class A-1 interests), the Litigation Trustee's engagement letter, the Commitment Letter, the TSA, and the DIP Amendment.  Counsel to the Debtors, the UCC, and the FILO Parties to agree on allocation of drafting responsibility and a detailed work plan and fee estimates.

20. All transactions contemplated herein shall be implemented in a tax-efficient manner and are subject to review by tax professionals.

---

[9] "Required Joinder Date" means the third business day before the expiration of the chapter 11 plan voting deadline, if any, applicable to the FILO Bridge Claims.

IN WITNESS WHEREOF, this Settlement and Stay Relief Term Sheet is duly executed as of the date first set forth above.

**STEWARD HEALTH CARE SYSTEM LLC,**
**on Behalf of Itself and its Debtor Affiliates**


By: _____
Name:  John Castellano
Title:  Chief Restructuring Officer


*Signature Page to Settlement and Stay Relief Term Sheet*

IN WITNESS WHEREOF, this Settlement and Stay Relief Term Sheet is duly executed as of the date first set forth above.

For and on behalf of **OneIM Fund I LP, as DIP Lender,** acting by its General Partner, OneIM GP LLC, acting by its Manager, GCT Capital LLC

By: _____
Name: Munish Varma
Title: Authorized Signatory

*Signature Page to Settlement and Stay Relief Term Sheet*

IN WITNESS WHEREOF, this Settlement and Stay Relief Term Sheet is duly executed as of the date first set forth above.

**BRIGADE AGENCY SERVICES LLC,** as FILO Agent

By: BRIGADE CAPITAL MANAGEMENT, LP, Its Managing Manager

By: _____

Name: Patrick Criscillo

Title: Authorized Signer

*Signature Page to Settlement and Stay Relief Term Sheet*

**BIG RIVER GROUP FUND SPC LLC**
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**BRIGADE BADGER FUND, LLC**
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**BRIGADE DIVERSIFIED CREDIT CIT**
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**BRIGADE CREDIT FUND II LTD**.
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer

*Signature Page to Settlement and Stay Relief Term Sheet*

**BRIGADE HIGH YIELD FUND LTD**.
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**BRIGADE LEVERAGED CAPITAL
STRUCTURES FUND LTD**.
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**BRIGADE LOAN FUND LTD**.
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**BRIGADE OPPORTUNISTIC CREDIT LBG
FUND LTD**.
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


*Signature Page to Settlement and Stay Relief Term Sheet*

**BRIGADE-SIERRABRAVO FUND LP**
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**CITY OF PHOENIX EMPLOYEES'
RETIREMENT PLAN**
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**FEDEX CORPORATION EMPLOYEES'
PENSION TRUST**
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**FUTURE DIRECTIONS CREDIT
OPPORTUNITIES FUND**,
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer

**JPMORGAN CHASE RETIREMENT PLAN BRIGADE BANK LOAN**
By: BRIGADE CAPITAL MANAGEMENT, LP, as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION**
By: BRIGADE CAPITAL MANAGEMENT, LP, as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**SC CREDIT OPPORTUNITIES MANDATE, LLC**
By: BRIGADE CAPITAL MANAGEMENT, LP, as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


*Signature Page to Settlement and Stay Relief Term Sheet*

IN WITNESS WHEREOF, this Settlement and Stay Relief Term Sheet is duly executed as of the date first set forth above.

**MIDOCEAN CREDIT FUND MANAGEMENT, LP**

By: _____
Name:  Damion Brown
Title:  Managing Director

**MidOcean Tactical Credit Fund III LP**
By: Tactical Credit Fund III GP, LP
By: Ultramar Credit Holdings Ltd., its General Partner

By: _____
Name: Damion Brown
Title: Managing Director

**MidOcean Multi Asset Credit Fund, LP**
By: MidOcean Multi Asset Credit Fund GP, LLC its General Partner

By: _____
Name: Damion Brown
Title: Managing Director

**Abbott Abbvie Multiple Employer Pension Plan Trust**

By: _____
MidOcean Credit Fund Management LP
(Investment Advisor to above)
Name: Damion Brown
Title: Managing Director

*Signature Page to Settlement and Stay Relief Term Sheet*

**Abbott Laboratories Annuity Retirement Trust**

By: _____

MidOcean Credit Fund Management LP
(Investment Advisor to above)
Name: Damion Brown
Title: Managing Director

*Signature Page to Settlement and Stay Relief Term Sheet*

IN WITNESS WHEREOF, this Settlement and Stay Relief Term Sheet is duly executed as of the date first set forth above.

**OWL CREEK INVESTMENTS I, LLC**

By: OWL CREEK ASSET MANAGEMENT, LP
as Investment Manager

By
Name: Kevin Dibble
Title:  General Counsel

*Signature Page to Settlement and Stay Relief Term Sheet*

IN WITNESS WHEREOF, this Settlement and Stay Relief Term Sheet is duly executed as of the date first set forth above.

**WHITEHAWK FINANCE LLC**
By: WHITEHAWK CAPITAL PARTNERS, LP, as Investment Manager

By: _____
Name: Robert Louzan
Title: Managing Partner

*Signature Page to Settlement and Stay Relief Term Sheet*

IN WITNESS WHEREOF, this Settlement and Stay Relief Term Sheet is duly executed as of the date first set forth above.

**The Official Committee of Unsecured Creditors**, solely in its representative capacity, and not on behalf of any individual member thereof

By: _/s/ Brad M. Kahn_
Name:  Brad M. Kahn
Title:  Partner

Akin Gump Strauss Hauer & Feld LLP, in its capacity as counsel to, and authorized signatory for, the Official Committee of Unsecured Creditors of Steward Health Care System, LLC, *et al*.

*Signature Page to Settlement and Stay Relief Term Sheet*

## Schedule 1

### Litigation Trust Assets

1. All cash and cash equivalents, excluding only (a) the Retained Cash[1], (b) all cash held or received on behalf of buyers of the Debtors' hospital and Stewardship operations pursuant to the definitive documents filed with the Bankruptcy Court prior to the execution of the Term Sheet ("Buyers"), (c) all cash received from Buyers or other third parties for purposes of paying cure costs, (d) cash to fund checks issued in accordance with the DIP Budget and which remain outstanding immediately prior to the Trust Establishment Date, (e) all cash held for subtenant security deposits or rent collected on behalf of Buyers, subtenants, or overlandlords, (f) all cash held in the Professional Fee Escrow Account, the Physician Insurance Account, the Utility Deposit Account, or the Expense Escrow Account, and (g) any funds of the Debtors in the Vendor Fund Escrow Account pursuant to the Vendor Fund Escrow Agreement, entered into as of March 11, 2025, by and among Golden Sun TSA Services, LLC, a Delaware limited liability company; Steward Health Care System LLC, a Delaware limited liability company; MPT Development Services, Inc., a Delaware corporation; Lifespan of Massachusetts, Inc., a Massachusetts nonprofit corporation; BMC Community Hospital Corporation and BMC Community Hospital Corporation II, Massachusetts nonprofit corporations; Orlando Health, Inc., a Florida corporation; and Kroll Restructuring Administration LLC, a Delaware limited liability company.

2. All accounts receivable, excluding only (a) accounts receivable that the Debtors sold to Buyers pursuant to the definitive documents filed with the Bankruptcy Court prior to the execution of the Term Sheet and (b) any accounts receivable that cannot be transferred to the Litigation Trust or a subsidiary thereof pursuant to applicable law (such accounts receivables described in this clause (b), the "Non-Transferrable A/R"). With respect to any Non-Transferrable A/R, the Estate shall, at the Litigation Trust's sole expense (paid in advance and charged at the Estate's cost), (i) use commercially reasonable efforts to collect or otherwise monetize such Non-Transferrable A/R in coordination, and in a manner reasonably agreed upon, with the Litigation Trustee, and (ii) promptly turn over any cash or other value realized on account of such Non-Transferrable A/R to the Litigation Trust.

3. The equity interests in Steward A/R Co, LLC. Promptly upon transfer of the equity interests in Steward A/R Co, LLC to the Litigation Trust, the current

---

[1] Each capitalized term that is used but not defined herein has the meaning ascribed to it in (a) the Term Sheet to which this **Schedule 1** is attached or (b) the mutual releases set forth in **Exhibit A** to the Term Sheet.

manager of Steward A/R Co, LLC, John Castellano, shall submit his resignation as manager and the Litigation Trustee and Steward A/R Co, LLC shall grant Mr. Castellano a release of claims against Mr. Castellano in connection with his services as manager, in form and substance reasonably acceptable to Mr. Castellano, and the Litigation Trust shall appoint his replacement.

4. All Claims[2] and Causes of Action[3] of the Debtors and the Estate, including, without limitation, in each case, to the extent not released pursuant to the mutual releases set forth in **Exhibit A** to the Term Sheet, the following Claims and Causes of Action:

   a. all Claims and Causes of Action asserted by the Debtors in the *Second Amended Complaint and Jury Demand* filed by Steward Health Care System LLC at Docket No. 61 in Civil Action No. 21-cv-11902-PBS in the United States District Court for the District of Massachusetts (the "Norwood Complaint") or otherwise assertable by the Debtors or the Estate based upon, in full or in part, facts, events, or circumstances alleged in the Norwood Complaint;

   b. all Claims and Causes of Action asserted or assertable by the Debtors or the Estate against healthcare payors, including, without limitation, the commercial payors identified in **Schedule 1-A** hereto;

   c. all Claims and Causes of Action asserted or assertable by the Debtors or the Estate against the Non-Released Parties, including, without limitation, arising from or relating to the 2016 Distribution, the 2020 Transactions, the 2021 Distribution, the 2022 Distribution, or any Plane

---

[2] "Claim" means a "claim," as defined in section 101(5) of the Bankruptcy Code.

[3] "Cause of Action" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license or franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whenever arising, whether in law or equity, whether sounding in tort or contract, whether asserted in arbitration, a court or regulatory proceeding, or otherwise, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, including under any state or federal securities laws. Causes of Action also includes (i) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (ii) Avoidance Actions, and (iii) any claim or defense, including fraud, mistake, duress, or usury and any other defenses set forth in section 558 of the Bankruptcy Code.

Sale,[4] or otherwise arising from or relating to the payment of unlawful dividends, the avoidance of prepetition dividend payments or other distributions, or one or more breaches of fiduciary or other duties;

d.  all Avoidance Actions[5] asserted or assertable by the Debtors or the Estate against the transferees identified in **Schedule 1-B** hereto or any other prepetition vendors of the Debtors;

e.  all Claims and Causes of Action against Blue Cross Blue Shield Association ("BCBS") or any of its independent Affiliates, including, without limitation, arising from or relating to the Claims and Causes of Action asserted in the class action lawsuits against BCBS and its various licensees consolidated in *In re Blue Cross Blue Shield Antitrust Litig.*, Case No. 2:13-cv-20000-RDP (MDL No. 2406) (N.D. Ala. 2013) (the "BCBS Antitrust Litigation") or otherwise assertable by the Debtors or the Estate based upon, in full or in part, facts, events, or circumstances alleged in the BCBS Antitrust Litigation;

f.  all Claims and Causes of Action asserted or assertable by the Debtors or the Estate against the Commonwealth of Massachusetts, including, without limitation, any Claims or counterclaims of the Debtors or the Estate in connection with *The Commonwealth of Massachusetts' Motion for Relief from the Automatic Stay to Allow for the Setoff of Mutual Obligations if and to the Extent that Recoupment is Not Available* (Docket No. 3393) and the adversary proceeding filed by the Debtors against the Commonwealth of Massachusetts (Docket No. 3983) (Adv. Pro. No. 25-03053);

g.  all Claims and Causes of Action with respect to the escrow account holding the Adjustment Escrow Amount (as defined in the asset purchase agreement attached as Exhibit 1 to the *Order (I) Authorizing and Approving (A) the Asset Purchase Agreement with Brady Health Buyer, LLC (B) the Sale of Stewardship Health Assets Free and Clear of Liens and Liabilities and (C) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (II) Granting Related Relief* (Docket No. 2135)) and the funds deposited therein; and

---

[4] "Plane Sales" means the sales by certain of the Debtors or the Debtors' Affiliates of (i) a Lear airplane in February 2021, (ii) a Challenger airplane in 2018, (iii) a Global Jet 6000 airplane in 2024, and (iv) a Falcon airplane in 2024.

[5] "Avoidance Actions" means all Claims and Causes of Action under sections 502(d), 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code, any other avoidance actions under the Bankruptcy Code, and any state law fraudulent transfer claims.

h.  all Claims and Causes of Action with respect to the right of certain Debtors to receive reimbursement from Golden Sun TSA Services, LLC in connection with the renewal of that certain Software Licensing Agreement, dated September 9, 2009, by and between IASIS Healthcare LLC and Microsoft Corporation, as amended, under Section 9.7 of the asset purchase agreement attached as <u>Exhibit 1</u> to the *Order (I) Authorizing and Approving (A) Sale of Transition Services Agreement Assets Free and Clear of All Interests and Encumbrances to Golden Sun TSA Services, LLC, an Affiliate of Quorum Health Corporation, (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Related Settlements; and (II) Granting Related Relief* (Docket No. 4192).

5.  All rights of the Debtors and the Estate to recover insurance proceeds from the D&O Policies (as defined in the *Motion of Debtors for Order Authorizing the Use of Proceeds of Directors and Officers Liability Insurance Policies for Insureds Defense Costs* (Docket No. 2540)) in connection with any Claim or Cause of Action that is not released pursuant to the mutual releases set forth in **<u>Exhibit A</u>** to the Term Sheet. For the avoidance of doubt, the transfer of the rights of the Debtors and the Estate to recover insurance proceeds from the D&O Insurance shall not hinder the ability of any beneficiaries or insureds of such D&O Insurance to submit claims and otherwise pursue and obtain coverage under the D&O Policies.

6.  All of the Debtors' remaining interests in joint ventures and the Meadows Hospital Promissory Note, in each case, unless otherwise directed by the FILO Parties, which shall be transferred to one or more corporate subsidiaries of the Litigation Trust; provided that in the event any transfer of interests in joint ventures triggers any put, call, ROFO or ROFR, or other similar rights of third parties, such interests shall be excluded (the "<u>Excluded Interests</u>") and only the proceeds of sale of such interests will be transferred to the Litigation Trust. The Estate shall, at Litigation Trust's sole expense (paid in advance and charged at the Estate's cost) (a) use commercially reasonable efforts to monetize the Excluded Interests in coordination, and in a manner reasonably agreed upon, with the Litigation Trust, and (b) promptly turn over any cash or other value realized on account of such Excluded Interests to the Litigation Trust.

7.  All proceeds, products, offspring, or profits of any employee retention tax credits ("<u>ERTCs</u>") owned by any Debtors, net of any reasonable and documented out-of-pocket expenses of any broker or consultant retained in connection with a sale of such ERTCs (to the extent not paid in advance by the Litigation Trust in accordance with the succeeding sentence). The Estate shall at the Litigation Trust's sole expense (paid in advance and charged at the Estate's cost) (a) use commercially reasonable efforts to monetize such ERTCs

in coordination, and in a manner reasonably agreed upon, with the Litigation Trustee, and (b) promptly turn over any cash or other value realized on account of such ERTCs to the Litigation Trust.

8. All proceeds, products, offspring, or profits of any of the foregoing assets and property.

## Schedule 1-A

### Payors

| Column1 |
| --- |
| Aetna Better Health of Florida |
| Aetna Health Management, LLC |
| Aetna Health, Inc. |
| Aetna Network Services LLC |
| Aetna U.S. Healthcare Inc. |
| AmeriGroup Texas, Inc. |
| Arizona Physicians IPA, Inc. |
| AvMed, Inc. |
| BHP of Ohio, Inc. |
| Blue Cross and Blue Shield of Florida, Inc. |
| Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. |
| Blue Cross and Blue Shield of Massachusetts, Inc. |
| Blue Cross and Blue Shield of Texas |
| Boston Medical Center Health Plan, Inc. |
| Caritas Christi |
| Cenpatico Behavioral Health LP |
| Cigna Behavioral health of Texas |
| Cigna Health and Life Insurance Company |
| Cigna HealthCare of Florida, Inc. |
| Cigna HealthCare of Massachusetts, Inc. |
| CIGNA Healthcare of Texas, Inc |
| Community Insurance Company |
| Connecticut General Life Insurance Company |
| Employers Health Insurance Company |
| Evercare of Texas, LLC |
| First Health Group Corp. |
| GHS Property and Casualty Insurance Company |
| Harvard Pilgrim Health Care, Inc. |
| Health Options, Inc. |
| Health Value Management, Inc. |
| Healthease of Florida |
| HealthSpring Life & Health Insurance Company, Inc. |
| Highmark Blue Cross Blue Shield |
| Humana Health Insurance Company of Florida |
| Humana Health Plan of Florida |
| Humana Health Plan of Texas, Inc. |
| Humana Insurance Company |
| Humana Medical Plan, Inc. |
| Leon Health, Inc. |
| Massachusetts Benefit Administrators LLC |
| MetraHealth Inruance Company |
| Metropolitan Life Insurance Company |
| Neighborhood Health Plan of Rhode Island |

| |
|---|
| NovaSys Health, Inc. |
| Oscar Insurance Company of Florida |
| PacifiCare of Arizona, Inc. |
| PacifiCare of Texas, Inc. |
| SelectCare of Texas, LLC |
| Senior Whole Health LLC |
| Simply Healthcare Plans, Inc. |
| Steward Health Care System, LLC |
| Sunshine State Health Plan, Inc. |
| Superior HealthPlan, Inc. |
| Texas HealthSpring, LLC |
| Total Health Plan, Inc, |
| Travelers Insurance Company |
| Tufts Associated Health Maintenance Organization, Inc. |
| Tufts Associated Health Plans, Inc. |
| Tufts Benefit Administrators |
| Tufts Health Plan, Inc. |
| Tufts Insurance Company |
| Tufts Public Plans, Inc. |
| U.S. Behavioral Health Plan, California |
| United Behavioral Health, Inc. |
| United Benefits of Texas, Inc. |
| United Community Plans of Texas, L.L.C. |
| United Health and Life Insurance Company |
| United Healthcare |
| United Healthcare Insurance Company |
| United Healthcare of Arizona, Inc. |
| United Healthcare of New England Inc. |
| United HealthCare of Ohio, Inc. |
| United Healthcare of Texas, Inc. |
| UnitedHealthcare Community Plan of Ohio, Inc. |
| UnitedHealthcare Insurance Company |
| UnitedHealthcare of Arizona, Inc. |
| UnitedHealthcare of Florida, Inc. |
| UnitedHealthcare of New England, Inc. |
| UnitedHealthcare of Ohio, Inc. |
| Universal American Corp. |
| US Behavioral Health |
| Warren Ohio Rehab Hospital Company |
| WellCare of Florida, Inc. |
| WellCare of Texas, Inc. |

## Schedule 1-B

### Preference Defendants

**Name of Tranferee**

NORTHWIND PHARMACEUTICALS LLC
DEFOREST KOSCELNIK & BERARDINELLI
TOTAL ORTHOPAEDIC CARE
PROVIDENCE MEDICAL TECHNOLOGY INC
ACUMED LLC
THE PARKER JVMC TRUST
ALL PRO CLEANING SYSTEMS
SPINEOLOGY INC
AEROSEAL LLC
MODULAR DEVICES
GALLOWAY OFFICE SUPPLIES INC
BLENDEN ROTH LAW FIRM PLLC
MEDICAL CONSULTANTS NETWORK INC
COLE SCOTT & KISSANE PA
ENVIRONMENTAL SYSTEMS INC
SI-BONE, INC
Q-CENTRIX LLC
TOTAL SCOPE INC
TREACE MEDICAL CONCEPTS INC
DESIGN BY NATURE CORP
FIRETROL PROTECTION SYSTEMS INC
IMMUCOR INC
LSI SOLUTIONS
INNOVATIVE MEDICAL PRODUCTS INC
HERSHEY CREAMERY COMPANY
HEALTHCARE FINANCIAL INC
LANMOR SERVICES INC
SIGNET ELECTRONIC SYSTEMS INC
TERUMO MEDICAL CORPORATION
FINTHRIVE INC
CARCO GROUP, INC.
MEDISOLV INC
BLOOMBERG INDUSTRY GROUP INC
WHELAN PROPERTY MANAGEMENT
AMERICAN COLLEGE OF RADIOLOGY
SMITH & NEPHEW INC
LABORATORY CORPORATION OF AMERICA
ZIMMER US INC
RICE MCVANEY
MISTY HAZY

WILSON ELSER MOSKOWITZ EDELMAN
COMPLIANT HEALTHCARE
FUJIFILM HEALTHCARE AMERICAS
THE FILTER MAN
BRIGHTER HEALTH NETWORK LLC
NETWORK PROVIDERS INC
CHARTER COMMUNICATIONS
VIRTUAL RADIOLOGY PROFESSIONALS OF NJ
Dext Capital LLC
ZEVETS INDUSTRIES INC
PFEIFFER & SON LTD
PROLACTA BIOSCIENCE INC
STRYKER ORTHOPAEDICS
AGILITI HEALTH INC
STRYKER SALES CORP
OLYMPUS AMERICA INC.
ENVIRONMENTAL HEALTH & ENGINEERING
STRYKER ENDOSCOPY
STRYKER SUSTAINABILITY SOLUTIONS
HEALOGICS WOUND CARE &
MEDTRONIC USA INC
GENCON SERVICE INC
PRORENATA LABS LLC
MAKO SURGICAL CORP
ELEVATE PATIENT FINANCIAL
CONVERGE TECHNOLOGY SOLUTIONS
DJO SURGICAL
LPS ENTERPRISES LLC
INARI MEDICAL INC
Global Healthcare Exchange
BRISTOL LAW PLLC AND CLINICAL
BOSTON SCIENTIFIC CORPORATION
ARC DIALYSIS SOUTH FLORIDA
BROCKTON HOSPITAL INC
GASTROENTEROLOGY AFFILIATES OF
IMAGEFIRST OF NEVADA LLC
LIFENET HEALTH
FAVORITE HEALTHCARE STAFFING INC
STRYKER NEUROVASCULAR
NUVASIVE INC
RYAN LLC

SIEMENS HEALTHCARE DIAGNOSTICS
STRYKER SPINE
CHEM-AQUA INC
HEMOSTASIS LLC
STRYKER CRANIOMAXILLOFACIAL
IRON MOUNTAIN
SMART SOURCE LLC
UTAH HEALTH INFORMATION NETWORK
ALLSTON BRIGHTON COMMUNITY
CATALYST ORTHOSCIENCE LLC
CUBE 3 STUDIO LLC
TAP2RIDE TRANSPORTSATION INC
AIRGAS USA LLC
CORCYM INC
MARSH USA INC
AFSCME OHIO COUNCIL 8
BCM CONTROLS CORPORATION
CHG COMPANIES INC
BECDEL CONTROLS INC
HOLLAND & HART LLP
BROCKTON NEIGHBORHOOD HEALTH CENTER
EDDY MARTINEZ PLUMBING SERVICE INC
FLORIDA BIRTH RELATED NEUROLOGICAL
J & J HEALTH CARE SYSTEMS INC
UMASS CHAN MEDICAL SCHOOL
PENUMBRA INC
NEXTMED PLAIN STATES LLC
QUICKBASE INC
AARON BARLOW PIKE
REMEDI8 LLC
LUMEDX CORPORATION
LUMEDX CORPORATION
TRANSLOGIC CORPORATION
HILL BARTH & KING LLC
EPSTEIN BECKER & GREEN PC
PENRAD TECHNOLOGIES INC
TRI-M MAINTENANCE INC
VMG HEALTH
WELLS PHARMA OF HOUSTON LLC
THOMAS YOUNG ASSOCIATES INC
JAMES W FLETT CO INC

THE MEDICUS FIRM INC
NORTH COAST FIRE PROTECTION INC
HAMILTON MEDICAL INC
QUENCH USA INC
CODE RED CONSULTANTS LLC
ECD SYSTEMS LLC
MEDTOX LABORATORIES INC
A MEDEKO LOCKSMITH SECURITY
DFA DAIRY BRANDS - GARELICK FARMS
CS MEDICAL LLC
ER2
PC INSTITUTE FOR MEDICAL EDUCATION
TENNANT SALES AND SERVICE COMPANY
VICTORY MECHANICAL HOLDING LLC
G21 USA INC
GREGORY WATTS
NATIONAL FIRE ALARM PROTECTION
EARLY BIRD POWER LLC
WAYLAND MULLIKIN
SOUTHFIELD MEDICAL CARE LLC
MICROSURGICAL TECHNOLOGY
NEW ENGLAND REVENUE CYCLE
DRS TUMOR REGISTRY SERVICES
NOVO HEALTH SERVICES FLORIDA LLC
ALLIED UNIVERSAL TECHNOLOGY SERVICE
ALLIED DOOR AND HARDWARE CO INC
CINTAS
SHEAKLEY UNISERVICE INC
RICHARD CELLER LEGAL PA
SOUTHERN LITHO XI LLC
ORTHALIGN INC
GENSET FIRE & SECURITY LLC
BOGGS FIRE EQUIPMENT INC
CROWN HEALTH CARE LAUNDRY
TANDEM THEORY
INDUSTRIAL BURNER SYSTEMS INC
CLAU CLEANING CORPORATION
FEDEX FREIGHT INC
IMAGING PHYSICS LLC
REGIONAL MANAGEMENT ASSOCIATES
PARAGON 28 INC

COMMTANK
DILAGOS PLUMBING SERVICES INC
PROIECTUS SERVICES LLC
EAST END MEDICAL I LLC
PITNEY BOWES GLOBAL FINANCIAL
COMMUNITY BANK OF TEXAS
SONEX HEALTH INC
THE JOINT COMMISSION
HERMAN M EPSTEIN MD
ADVANTECH INC
CENTER POINTE SLEEP ASSOCIATES LLC
PHARMACY ONESOURCE
PITNEY BOWES INC
SMART CARE EQUIPMENT SOLUTIONS
BIOREFERENCE LABORATORIES INC
MDM TRANSPORTATION CONSULTANTS INC
APO PUMPS & COMPRESSORS LLC
TEXAS DEPT OF STATE HEALTH
EDWARD DON & COMPANY
CENTRAL COMMUNICATIONS AND
REMOTE ICU LLC
MEDISTIM USA INC
PLANT PROFESSIONALS INC
CITI PROGRAM
MEDIPRO
Edwards Lifesciences LLC
THE PITNEY BOWES RESERVE ACCOUNT
ALSCO INC
DDK REAALTY TRUST
MICHAEL JISER
MED AIR INC
RED RIVER PHARMACY SVCS
ROSE BROS SEPTIC & DRAINAGE INC
COMPASS CRYOGENICS INC
ALL MEDICAL PERSONNEL LLC
MELISSA ALWORTH DO PA
CALDERA MEDICAL INC
FARID GHEBLEH MD PC
CJ&J LEASING CORPORATION
MUNIR SHAH MD
GREENTEAM PLUMBING LLLC

SIEMENS MEDICAL SOLUTIONS USA
CENTRAL ADMIXTURE PHARMACY
JMG CLEANING SOLUTION LLC
HANNA CAMPBELL & POWELL LLP
CROWN UNIFORM & LINEN SERVICE
EXPERT MEDICAL NAVIGATION
ADVANCE AIR AND HEAT CO INC
D&D LABORATORY LLC
VERATHON INC
JOHNSON OCONNOR FERON &
WB MASON CO INC
MATHESON TRI GAS INC
TLC ENGINEERING SOLUTIONS INC
TIERPOINT LLC
US POSTAL SERVICE
MEDTRONIC SOFAMOR DANEK USA INC
Globus Medical North America
FRESHPOINT SOUTH FLORIDA INC
GLE CONSULTING INC
QUEST DIAGNOSTICS INCORPORATED
HACHEY URBANOSKI LLC
UNITEX TEXTILE RENTAL SERVICES
COTTON COMMERCIAL USA
GLOBAL JET CAPITAL LLC
MILESTONE HEALTHCARE LLC
DUGGAN MECHANICAL SERVICES INC
REPUBLIC SERVICES INC
BAM BAM ENTERPRISES LLC
HUNTON SERVICES
SOUTHEAST TEXAS INPATIENT PHYSICIAN
BIO RAD LABORATORIES
OCEANS BEHAVIORAL HOSPITAL
PALOI ADVISORS LLC
BLUSKY RESTORATION CONTRACTORS LLC
FADI NADDOUR MD
PREMIER DIAGNOSTIC SERVICES INC
CUTT KENDELL & OLSON ATTORNEY
TRAILRUNNER INTERNATIONAL LLC
WINSTON & STRAWN LLP
BOWDITCH & DEWEY LLP
LIFESHARE BLOOD CENTERS

ANGELICA URENA AND LAW OFFICE
NEOGENOMICS LABORATORIES
MERCHANT SERVICE
SAPPHIRE ELEVATOR LLC
CONCUR TECHNOLOGIES INC
NEIGHBORWORKS HOUSING SOLUTIONS
AM SURGICAL
CT CORPORATION SYSTEM
CCMMA TX PLLC
SERPE ANDREWS PLLC
OHIO VALLEY PERFUSION ASSOCIATES
ASAHI INTECC USA INC
VIRTUAL RADIOLOGIC CORPORATION
ROLLS-ROYCE PLC
ECRI
LUBIN & MEYER AS ATTORNEY FOR THE
PADFIELD AND STOUT LLP TRUST
TEXAS HEALTHCARE LINEN LLC
MIDADE LLC
BALDWIN GROUP DBA ROGERS GRAY
OMRAM LLC
PEDIATRIC PROFESSIONAL ASSOC PC
ACCESS TELECARE PLLC
BRIAN T. CARTY
SALTZ MICHELSON ARCHITECTS
PUEBLO MECHANICAL AND CONTROLS LLC
TELERADIOLOGY SOLUTIONS
ALLHEART ELECTRIC COMPANY
MEDICAL BUSINESS ASSOCIATES INC
GORDON & PARTNERS TRUST ACCT
SOUTHWEST MEDICAL IMAGING PA
HOLIDAY CVS LLC
METTEL
STREAMLINE VERIFY LLC
QUALITY HEALTHCARE PARTNERS
CHARLIE WILLIAMS PAINTING
JCB ORTHO LLC
NORTHWIND STRATEGIES LLC
EXECUTIVE MEDICAL PHYSICS ASSOC
EASTSIDE ENTERPRISES INC
BOILER SPECIALISTS INC

TODDS ENVIROSCAPES LLC
MN & COMPANY MEDIA MANAGEMENT INC
HARRY W DONIAS MD LLC
JACOB COHEN MD
IMPERATIVE CARE INC
B2B DELIVERY LLC
MORTON HOSPITAL
MEDIALAB INC
BOWIE COUNTY TEXAS LOCAL PROVIDER PARTIC
MARICE GUZMAN PLLC FBO KELLY
XTANT MEDICAL INC
CC ANESTHESIA SOLUTIONS LLC
HOARTY TREE EXPERTS INC
J A MAYANS MD
ELEVATOR REPAIR SERVICE INC
STUART BREISCH MD
MIDLAND PLASTIC SURGERY CENTER
TSNE MISSION WORKS
TEND HEALTH LLC
PRIDESTAR EMS INC
ARHC NCODSTX01 LLC
PACIFIC PREMIER TRUST COMPANY
UMS MR FUSION SVC OF NE LLC
ALLAN M JORGE MD PA
POPP HUTCHESON PLLC
MERGE HEALTHCARE SOLUTIONS INC
TTG ISOTOPES LLC
ENTECH SALES & SERVICE LLC
KONSULT INC
TANK WIZARDS INC
WEST TEXAS UROLOGY PA
JOHN K DORMAN
BASIN NEUROSURGICAL & SPINE
UMS URS LITHOTRIPSY SERVICES
S R DEME MD PA
AMERICAN ARBITRATION ASSOCIATION
CARDIOVASCULAR DIAGNOSTIC CENTER
VIKRAM PATEL MD PA
VOGELZANG LAW PC
PURCHASING POWER LLC
FUSION ORTHOPEDICS USA LLC

GREATER HAMPSTEAD FAMILY MEDICINE
UMS LITHO SERVICE OF BRISTOL COUNTY
AVASURE LLC
VSI SURGICAL
DMILLER CONSULTING LLC
PINE ISLAND ASSOCIATES LLC
ARIOL LABRADA MD PA
ADVANCED CARDIOVASCULAR
ACCREDITATION COUNCIL FOR GRADUATE
MASS PARK INC
GIANT PEACH CONSTRUCTION LLC
STEINER-ATLANTIC LLC
M DE VERA LANDSCAPING LLC
WINTER ST PARTNERS NEW BEDFORD LLC
SATCOM DIRECT INC
BYRNES MECHANICAL CONTRACTORS INC
SAN ANTONIO MERCHANT SHIPPERS LLC
VTR PAPAGO MEDICAL PARK LLC
ENVELOPE SUPERSTORE
RAMON HECHAVARRIA MD
SOUTH FLORIDA MEDICAL IMAGING PA
UNITED RENTALS NORTH AMERICA INC
GQRC TECHNOLOGIES LLC
SOUTH MIDDLESEX OPPORTUNITY COUNCIL
Associates in Medical Imaging LLC
PRECISION PHYSICS SERVICES LLC
MPX
FW WEBB COMPANY
FUJIFILM SONOSITE INC
JAMES M POTTS MD
MBA MEDICAL INC
EVEXIAS HEALTH SOLUTIONS LLC
DCMD HOLDINGS LLC
SYSTEM4 OF BOSTON
PERMIAN BASIN ANESTHESIA PLLC
JASON R MURPHY
GEROW EQUIPMENT COMPANY
CR HALL COMPANY LTD
MELTWATER NEWS US INC
BERKSHIRE BANK
GEN DIGITAL INC.

AEP SOUTHWESTERN DES

SAMBASIVA R SUKHAVASI MD PA

FARRUKH QURESHI

MILLERS RIVER DEVELOPMENT LLC

WADLEY REGIONAL MEDICAL CENTER

MRUNAL PATEL

REIS LANDSCAPING & GARDENING LLC

SLIPPERY ROCK COMMERCIAL ROOFING

D BAKER LAW GROUP PC

THE PICARD GROUP LLC

COWBOYS STADIUM LP

MERRITT MEDICAL CENTER II

ALDO H MARTINEZ FLEITES MD PA

THE SUFFOLK GROUP LLC

ADVIZEX TECHNOLOGIES LLC

GRANGER MEDICAL INC

WORLD FUEL SERVICES EUROPE LTD AVIATION

ANANIA PLUMBING & HEATING INC

HEALTHCARE FINANCIAL GROUP INC

INNERFACE ARCHITECTURAL SIGNAGE INC

KONSTANTYN SZWAJKUN

SENSO SCIENTIFIC

DAVID J HENDERSON MD

EPREWARD INC

DOCTORS PARK II CONDO ASSOCIATION

CHRISTOPHER J TROIANO MD

SPARKLIGHT BILL PAY

TX ONCOLOGY PA

KARL STORZ ENDOSCOPY

GREER LABORATORIES

MOUNTAIN MEDICAL PHYSICIAN

SMARTRISE HEALTH LLC

PEDIATRIC ECHOCARDIOGRAPHY SERVICES

LINKBIO CORP

CHARLES CROFT MD PA

THE DELTA PATHOLOGY GROUP LLC

HAYSTACKID LLC

ENDOLOGIX LLC

ACCESS CORP

INTEGRITY HEALTHCARE LOCUMS LLC

TAYLOR COMMUNICATIONS

AGILITI SURGICAL INC
INSPIRE MEDICAL SYSTEMS INC
AGILITI SURGICAL EQUIPMENT REPAIR
DONNELLEY FINANCIAL LLC
WM CORPORATE SERVICES INC
FLORIDA DEPARTMENT OF CHILDREN
SERVPRO OF CENTRAL BREVARD
IMAGEFIRST
DIGISONICS INC
FRESH PROVISIONS INC
SYSCO SOUTH FLORIDA INC
ISMAEL MONTANE MD PA
RM ARIZONA HOLDINGS INC
VOYCE INC
RED LABEL SERVICES
CORIN USA LIMITED
AMERICAN RED CROSS
NATIONAL GOVERNMENT SERVICES
SERVICEMASTER BY GILIMORE
HELGESEN HOUTZ & JONES PC
ENGIE RESOURCES
SPECTRUM
IMAGEFIRST OF NEW ENGLAND
UNIVERSAL ELECTRICAL SERVICES INC
TECO/PEOPLES GAS
JAIME E CAMPOS MD PA
TRICARE Management
GREAT-WEST LIFE
GCB INDUSTRIES LLC
NITEEN ANDALKAR
HUNTON TRANE
TLC JANITORIAL INC
BEACONMEDAES LLC
PROLINK HEALTHCARE
ABBOTT LABORATORIES INC.
ABBOTT RAPID DIAGNOSTICS
ABBOTT VASCULAR INC
ACCREDITATION PARTNERS LLC
AMERICAN ACADEMY HOLDINGS LLC
AMN HEALTHCARE LANGUAGE SERVICES
AQUITY SOLUTIONS LLC

BECTON DICKINSON AND COMPANY
BIOMERIEUX
BIOMERIEUX VITEK INC
BLUEVOYANT LLC
CAREFUSION SOLUTIONS LLC
CHANGE HEALTHCARE SOLUTIONS LLC
COLLEGE OF AMERICAN PATHOLOGISTS
DOCTORS BILLING INC
DRFIRST.COM
ELEKTA INC
EXPERIAN HEALTH INC
FORWARD ADVANTAGE INC
GE HEALTHCARE IITS USA
GETINGE USA SALES LLC
GUIDEPOINT SECURITY LLC
HOLOGIC SALES AND SERVICES LLC
IMALOGIX LLC
INSITEONE LLC
INTELLIGENT MEDICAL OBJECTS INC
KORCHEK TECHNOLOGIES LLC
LANDAUER INC
MEDASOURCE
MERATIVE US LP
MICROSOFT CORP
NET HEALTH SYSTEMS INC
Philips Medical Capital
PHILIPS NORTH AMERICA LLC
PRESS GANEY ASSOCIATES LLC
PROVATION SOFTWARE INC
RADIOMETER AMERICA INC
RLDATIX NORTH AMERICA INC
ROCHE DIAGNOSTICS CORPORATION
SAGILITY OPERATIONS INC FKA HGS
SECURITAS HEALTHCARE LLC
SHARECARE HEALTH DATA
SOURCEHOV HEALTHCARE INC
SPOK, INC.
STERICYCLE INC
TRINISYS LLC
TWIAGE SOLUTIONS INC
VARIAN MEDICAL SYSTEMS INC

VIZIENT INC
WERFEN USA LLC
KCD GENERAL CONTRACTORS
MEDLINE/MOZART HOLDING
SODEXO INC & AFFILIATES
1 TEST CORP
A MURPHY INC
ABDOMINAL SURGEONS LTD
ABIOMED INC
ACADIAN AMBULANCE SERVICES INC
ACCESS CIG LLC
ACCLARENT INC
ACUTANE INC STAMPS CONCENTRATION
ADDISON GROUP
ADVANCED STERILIZATION PRODUCTS
AESCULAP INSTRUMENTS
ALGOREX HEALTH TECHNOLOGIES INC
ALTERYX INC
AMERICAN COLLEGE OF SURGEONS
AMERICAN HEART ASSOCIATION INC.
AMERICAN MEDICAL RESPONSE OF
AMERICAN PORTABLE
ANGIODYNAMICS INC
AR CATALDO CORPORATION
ARIZONA GASTRO CARE PLLC
ARM ELECTRICAL SERVICES LLC
ARTHREX INC
ARTHROSURFACE INC
ASSURGENT MEDICAL STAFFING
ATI RESTORATION LLC
ATRICURE
BAYSTATE INTERPRETERS INC
BECKMAN COULTER INC
BIO-RAD LABORATORIES INC
BIOTE MEDICAL LLC
BREAKAWAY COURIER BOSTON INC
BREWSTER AMBULANCE SERVICE
CARDIOVASCULAR SYSTEMS INC
CARRIER CORPORATION
CARRIER RENTAL SYSTEMS
CERAPEDICS INC

COLLECTIVE MEDICAL TECHNOLOGIES INC
CONCORD MEDICAL GROUP OF TEXAS
CONCORD MEDICAL GROUP PLLC
CORDIS US CORP
CORE DIALYSIS SERIES LLC
COVIDIEN SALES LLC
CRA INTERNATIONAL INC
CTL Amedica
CYRACOM LLC
DASSAULT FALCON JET CO
DHHS - UNIFIED STATE LABORATORIES
DIGIRAD IMAGING SOLUTIONS INC
DOVER FLOORS INC
DRUCKER MEDIA INC
DX INC
ELIOT COMMUNITY HUMAN
ELLKAY LLC
EMERGENCHEALTH LLC
EMPOWER ANNUITY INS CO OF AMERICA,
ENCORE FIRE PROTECTION
ERBE USA INC
EVOQUA WATER TECHNOLOGIES LLC
FAGRON STERILE SERVICES LLC
FLEXCARE LLC
FLORIDA PEST CONTROL
FONAR CORPORATION
FX MASSE ASSOCIATES INC
FX SHOULDER USA INC
GASTON ELECTRICAL CO INC
GLENSTONE CAPITAL LLC
GORDON FOOD SERVICE INC
GULF COAST REGIONAL BLOOD CENTER
HARBINGER COMMUNICATIONS INC
HATCH 130 LLC
HEALTHPRO HERITAGE
HIGH DESERT MECHANICAL CORP
HUB INTERNATIONAL NEW ENGLAND LLC PREMI
INO THERAPEUTICS LLC
INSIGHT IMAGING
INTEGRA LIFESCIENCES CORP
Intuitive Surgical Inc.

JACKSON LLOYD SELECT RISK
JAMES CARROLL AS AGENT LABORIE
JANI-KING OF RHODE ISLAND
JENSEN HUGHES INC
JJ FRANK LANDSCAPING INC
JUST PRESS PLAY
KCI USA INC
KICKDRUM TECHNOLOGY GROUP LLC
KNOWTION HEALTH
LAB LOGISTICS LLC
LANTHEUS MEDICAL IMAGING INC.
LEMAITRE VASCULAR INC
LIFE SPINE INC
LIGHTNING BOLT SOLUTIONS
LIMBACH COMPANY LLC
LINCOLN HARRIS CSG
LIVANOVA USA INC
MCT EXPRESS INC
MEDACTA USA INC
MERIT MEDICAL SYSTEMS INC
MESSAGE MANAGEMENT CENTER LLC
MESSER LLC
MICRO-TECH ENDOSCOPY USA INC
MIDLAND PATHOLOGIST P A
MSDSONLINE INC
NEOGENOMICS LABORATORIES INC
NMS LABS
ONEBLOOD INC
ORTHO CLINICAL DIAGNOSTICS
OSSIO INC
OSTEOMED
PARIS HEALTHCARE
PARTNERSOURCE
PENNSYLVANNIA STATESHENANGO
PEPSI COLA COMPANY
PHREESIA INC
PREPMD PROFESSIONALS LLC
PRO HEALTH MEDICAL STAFFING LLC
PROFESSIONAL PIPING INC
PROFICIO SURGICAL ASSISTANTS LLC
PULMONARY CONSULTANTS PC

REAUD MORGAN & QUINN LLP TRUST
RENTOKIL NORTH AMERICA
REPUBLIC SPINE LLC
RESOURCES GLOBAL PROFESSIONALS
RESTORIXHEALTH
REYNOLDS DEWALT
RICHARD WOLF MEDICAL
RICHARDS BRANDT MILLER NELSON
RICOH USA INC
RIDE MOBILE TRANSPORTATION INC
ROOFS INC
SCA PHARMACEUTICALS LLC
SCHINDLER ELEVATOR CORPORATION
SEMPERIS INC
SERVICEHUB CORPORATION
SHOCKWAVE MEDICAL INC
SHRED IT
SIGNATURE AVIATION USA LLC
SILK ROAD MEDICAL INC
SKELETAL DYNAMICS LLC
SOUTH TEXAS BOILER INDUSTRIES
SOUTHWORTH-MILTON INC
SPECIALTYCARE CARDIOVASCULAR
SPINEART USA INC
STAT BIO MEDICAL SALES & SERVICE
STEVEN A CALLAHAN ELECTRICAL
STEWART & STEVENSON
SUNBELT RENTALS
SYSCO ARIZONA INC
SYSCO BOSTON LLC
SYSCO CENTRAL FLORIDA INC
SYSCO EAST TEXAS
SYSCO HOUSTON INC
SYSCO JACKSON LLC
SYSCO WEST TEXAS
SYSMEX AMERICA INC
TAC MED INC
THE FACTOR INC
THE ROMANS GROUP
THERAPEUTIC RESEARCH CENTER
TMHP

TORNIER INC

TOWNE PARK LLC

TRANE US INC

UNUM LIFE INSURANCE COMPANY OF

UROLOGIC SURGEONS OF ARIZONA PLC

US FOODS INC

US MED EQUIP LLC

WASTE CONNECTIONS OF FLORIDA

WEST TECHS CHILL WATER SPECIALIST

WESTPORT LINEN SERVICES INC

WHITMAN PARTNERS INC

WICKER SMITH O'HARA MCCOY & FORD

WLG WL GORE&ASSOC MPD

WOLF & COMPANY PC

WRIGHT MEDICAL TECHNOLOGY INC

3M HEALTH INFORMATION SYSTEMS

ACCLARA SOLUTIONS LLC

CLOUDMED

COGNIZANT TECHNOLOGY SOLUTIONS

CONSENSUS CLOUD SOLUTIONS

DELL FINANCIAL SERVICES

ERGONOMIC GROUP

HEWLETT PACKARD FINANCIAL SERVICES

HP INC

INOVALON PROVIDER INC

INTERLACE HEALTH LLC

IODINE SOFTWARE LLC

JAMS INC

LOGIXHEALTH INC

MRO CORPORATION

PRESIDIO NETWORKED

REVSPRING INC

TEGRIA RCM GROUP US INC.

BREAZEALE SACHSE & WILSON LLP

BRUCE & KELLEY PC

CAPPLIS CONNORS CARROLL & ENNIS

DRAFFIN & TUCKER LLP

FALK WAAS HERNANDEZ ET AL

FOSTER & ELDRIDGE LLP

HALL PRANGLE & SCHOONVELD LLC

HAMEL MARCIN DUNN REARDON & SHEA PC

JULIE SMITH

KIPP AND CHRISTIAN PC

MARSHALL DENNEHEY WARNER

QUINTAIROS PRIETO WOOD & BOYER PA

RESNICK & LOUIS PC

SNOW CHRISTENSEN & MARTINEAU

THE CHECKETT LAW FIRM PLLC

THOMPSON BOWIE & HATCH LLC

WILLIS TOWERS WATSON US LLC

WIPFLI LLP

AUDERE INTERNATIONAL LIMITED

EXCELA RECEIVABLES 3 LLC

H RAMOS FARMS

# Exhibit A[1]

**Mutual Releases.**  Except as otherwise expressly set forth below, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Trust Establishment Date, each of (A) the Debtors, (B) the Estates, (C) the Litigation Trust, (D) the Litigation Trustee, (E) the FILO Parties, (F) the Creditors' Committee and each of its members (solely in their official capacity), and (G) each Related Party of each Person or Entity described in any of the immediately preceding clauses (A) through (F) to the extent that such Person or Entity is legally entitled to bind such Related Party under applicable law (each, a "**Releasing Party**" and, collectively, the "**Releasing Parties**"), in each case on behalf of themselves and their respective successors, assigns, and any and all other Entities that may purport to assert any Claim or Cause of Action derivatively by or through such Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (including any derivative claims, asserted or assertable on behalf of such Releasing Party), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that such Releasing Party would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part: any act or omission, obligation, transaction, transfer, agreement, event, or other occurrence taking place on or before the Trust Establishment Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the governance, management, direct or indirect ownership, transactions with, or operation thereof) or their Estates; the Litigation Trust; the Litigation Trustee; the Chapter 11 Cases (including the filing and administration thereof); the negotiation, formulation, preparation, dissemination, or consummation of the transactions contemplated by the FILO Settlement Term Sheet or any other contract, instrument, release, or document created or entered into in connection with the FILO Settlement or any of the other definitive documents related thereto; any other debt or security of the Debtors and the ownership thereof; the purchase, sale, or rescission of the purchase or sale of any debt or security of the Debtors; the subject matter of, or the transactions or events giving rise to, any Claim or Interest; the business or contractual or other arrangements or other interactions between any Releasing Party and any Released Party; the restructuring of any Claim or Interest before or during the Chapter 11 Cases; any other in-or-out-of-court restructuring efforts of the Debtors; any intercompany obligations, transactions, or transfers; the Approval Order and the transactions contemplated thereby; or any other agreement, act or omission, transaction, transfer, event, or other occurrence related to the foregoing and taking place on or before the Trust Establishment Date.  Notwithstanding anything to the contrary in the foregoing, these releases (i)  shall not be construed as releasing (a)  any Released Party from Claims or Causes of Action arising from a material misrepresentation or an act or omission constituting actual fraud, willful misconduct, criminal misconduct, or gross negligence of or by such Released Party, in each case as judicially determined by a Final Order, (b) any Claims or Causes of Action arising after the transfer of the Litigation Trust Assets to the Litigation Trust, (c) the Debtors or the Estates from

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Settlement and Stay Relief Term Sheet*, to which this exhibit is attached (the "**FILO Settlement Term Sheet**"), or **Annex 1** attached hereto, as applicable.

1

the Retained FILO Claim (including, without limitation, any liens securing the Retained FILO Claim), (d) any rights or obligations of any party or Entity under the Approval Order, the FILO Settlement Term Sheet, the Plan Support Agreement Term Sheet, any definitive document related to the FILO Settlement or the Plan Support Agreement Term Sheet, or any other document, instrument, or agreement executed to implement the Plan or the transactions contemplated by the FILO Settlement, or (e) any Intercompany Claims; and (ii) shall not release any Claims or Causes of Action against any Identified Non-Released Party. For the avoidance of doubt, no Person or Entity not (i) expressly identified on the list of Individual Released Parties, or (ii) defined as a Released Party, shall be deemed to be granted a release hereunder, regardless of whether such Person or Entity is specifically identified on Schedule 2 hereof.

## Annex 1

### Defined Terms

*2016 Distribution* means the dividends, distributions, and/or allocations paid, made, and/or issued in October 2016 by Steward Health Care System LLC and all other transactions related thereto (including any subsequent transfer of the proceeds thereof).

*2020 Transactions* means, individually and/or collectively, (a) the transactions that were entered into and/or occurred in or about May 2020 pursuant to which: (i) Manolete Health, LLC purchased Steward Healthcare International Holdings Ltd. from Steward Health Care System LLC, (ii) Jordan Valley Medical Center, LP ("**Jordan Valley**") and Davis Hospital and Medical Center, LP ("**Davis**") contributed real properties to MPT of Utah-Steward, LLC (together with its subsidiaries, the "**Utah JV**") for common equity interests in the Utah JV and subsequent cash distributions from the Utah JV, and the Utah JV leased such real properties back to Jordan Valley and Davis, and (iii) Cerberus Operations and Advisory Company exchanged its equity in Steward Healthcare Investors LLC for a $350 million convertible note, and (b) all other transactions related thereto, including any transactions in what was referred to at the time as Project Easter.

*2021 Distribution* means the dividends, distributions, and/or allocations paid, made, and/or issued in January 2021 by Steward Health Care System LLC and all other transactions related thereto (including any subsequent transfer of the proceeds thereof).

*2022 Transaction* means the transaction or transactions entered into on or about May 31, 2022 (and certain other dates in 2022) by and among, among others, Sparta Merger Sub I Inc., Sparta Merger Sub II Inc., Sparta Merger Sub III Inc., Sparta Merger Sub I LLC, Sparta Merger Sub II LLC, Sparta Merger Sub III LLC, Sparta Sub Inc., SNCN Holdco Inc., SICN Holdco Inc., Steward Integrated Care Network, Inc., Steward Accountable Care Network, Inc., Steward Health Care Network Inc., Sparta Holding Co. LLC, Steward Health Care System LLC and CareMax, Inc. pursuant to which certain value-based care assets were transferred to Sparta Holding Co. LLC and acquired by CareMax, Inc., and all other transactions related thereto or included therein (including any dividends, distributions, and/or allocations paid, made, and/or issued in 2022 in connection with and/or following such transaction(s), and any subsequent transfer of the proceeds thereof or arising therefrom).

*Affiliate* means, with respect to any specified Entity: (i) an "affiliate," as defined in section 101(2) of the Bankruptcy Code, of such specified Entity as if such specified Entity were a debtor in a case under the Bankruptcy Code; (ii) any Entity that, directly or indirectly through one or more intermediaries or otherwise, controls, is controlled by or is under common control with the specified Entity; (iii) any Entity that directly or indirectly owns, controls, or holds twenty percent (20%) or more of the outstanding equity securities of the specified Entity; or (iv) any Entity twenty percent (20%) or more of whose outstanding equity securities are directly or indirectly owned, controlled, or held by the specified Entity or by an Entity that directly or indirectly owns, controls, or holds twenty percent (20%) or more of the outstanding equity securities of the specified Entity. As used in the prior sentence, "control" includes (without limitation) the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the specified Entity (whether through the ownership of equity, by contract or otherwise).

*Avoidance Actions* means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors or their Estates arising under (i) chapter 5 of the Bankruptcy Code, including sections 502(d), 544, 545, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code, or (ii) applicable non-bankruptcy law including any state or foreign law governing fraudulent or otherwise avoidable obligations, transfers or conveyances.

*Bankruptcy Code* means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

*Bankruptcy Court* means the United States Bankruptcy Court for the Southern District of Texas, Houston Division having jurisdiction over the Chapter 11 Cases.

*Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, and any local rules of the Bankruptcy Court, in each case as applicable to the Chapter 11 Cases.

*Cause of Action* means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, recoupment right, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, reimbursement claim, license, and franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, asserted or unasserted, accrued or unaccrued, assertable directly or derivatively (including on a theory of veil piercing, alter-ego, vicarious liability, predecessor liability, successor liability, mere continuation, domination and control, mere instrumentality, inadequate capitalization, single business enterprise or common enterprise, equitable subordination or recharacterization), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory (including under any state or federal securities laws), and whether arising under federal law, state statutory law, common law, or any other applicable international or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise. For the avoidance of doubt, "Cause of Action" includes (i) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (ii) the right to object to Claims or

Interests, (iii) any claim pursuant to section 362 of the Bankruptcy Code, (iv) any claim or defense, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code, and (v) any Avoidance Actions.

*Chapter 11 Case* means, with respect to a Debtor, such Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code.

*Chief Restructuring Officer* means John R. Castellano, in his capacity as Chief Restructuring Officer of each of the Debtors.

*Claim* means a "claim," as defined in section 101(5) of the Bankruptcy Code.

*Creditors' Committee* means the official committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as set forth in the *Notice of Appointment of Official Committee of Unsecured Creditors* (Docket No. 290) filed on May 16, 2024, as reconstituted from time to time.

*Debtor Related Parties* means (i) with respect to each Debtor and each Estate, such Debtor's or Estate's attorneys, accountants, investment bankers, consultants, professional advisors, independent auditors, Transformation Committee (including the members thereof, and any sub-committee thereof, including the Investigation Subcommittee), and Chief Restructuring Officer, as applicable, each in their capacity as such; (ii) with respect to each Debtor Related Party listed in the immediately preceding clause (i), such Person's or Entity's current and former officers, directors, principals, equity holders (regardless whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, and advisory board members, each in their capacity as such; (iii) with respect to any Hospital Debtor, such Debtor's current and former officers, presidents, directors, individual managers, and advisory board members, each in their capacity as such; and (iv) the Individual Released Parties; *provided* that, notwithstanding anything herein to the contrary, no Identified Non-Released Party shall be a Debtor Related Party or Released Party.

*Entity* has the meaning set forth in section 101(15) of the Bankruptcy Code.

*Estate(s)* means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

*FILO DIP Order* means the *Final Order (I) Authorizing the Debtors to (A) Obtain New Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* (Docket No. 1538), entered by the Bankruptcy Court on July 10, 2024.

*FILO Parties* means, collectively, the Prepetition Bridge Agent, the FILO Bridge Lenders, the FILO DIP Secured Parties, the Prepetition FILO Agent, and the FILO Lenders (each as defined in the FILO DIP Order), in each case in their capacities as such, and the Litigation Funding Agent and the providers of the Litigation Funding in their capacities as such.

4

***FILO Settlement*** means the settlement embodied in the FILO Settlement Term Sheet.

***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired.  However, notwithstanding anything herein to the contrary, no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

***Hospital Debtors*** means all Debtors, other than, for the avoidance of doubt, Steward Health Care Holdings LLC and Steward Health Care System LLC, that held or owned a license to operate a hospital at any time during the Chapter 11 Cases.

***Identified Non-Released Parties*** means (i) the Persons and Entities listed on **Schedule 2** annexed hereto, (ii) any other Person or Entity identified by the Debtors on the Schedule of Identified Non-Released Parties, (iii) with respect to the Persons and Entities described in the immediately preceding clauses (i) or (ii), each such Person's or Entity's (a) successors, (b) assigns, (c) current and former relatives, (d) non-Debtor nominees or alter egos, (e) current and former non-Debtor Affiliates, and (f) subsequent transferees of payments or consideration received in connection with the Prepetition Transactions  or any fraudulent transfer or unlawful dividend, in each case of the immediately preceding clauses (a) – (f), solely in their capacity as such, and (iv) solely with respect to a Claim or Cause of Action arising from or relating to a Prepetition Transaction, any Person that advised or represented a Debtor and/or any Identified Non-Released Party in a Prepetition Transaction (solely in their capacity as such) at the time such Prepetition Transaction was consummated or in connection with any subsequent transfer of the proceeds thereof or arising therefrom.

***Individual Released Parties*** means the individuals listed on the **Schedule 1** annexed hereto, each in their capacity as a current or former director, officer, manager, employee, advisor, or consultant of one or more of the Debtors.

***Interest*** means any equity interest (as defined in section 101(16) of the Bankruptcy Code) in a Debtor, including all shares, units, common stock, preferred stock, membership interests, partnership interests or other instruments evidencing any fixed or contingent ownership interest in any Debtor, whether or not transferable, and whether fully vested or vesting in the future, including

5

any option, warrant, or other right, contractual or otherwise, to acquire any such interest in a Debtor.

**Intercompany Claim** means any pre- or postpetition Claim against a Debtor held by another Debtor.

**Investigation Subcommittee** means the subcommittee of the Transformation Committee, consisting of Alan J. Carr and William Transier.

**Lien** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**Person** means any individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

**Petition Date** means May 6, 2024.

**Plan Administrator Committee** means a committee comprised of Monica Blacker, Alan J. Carr, and William Transier.

**Plan Support Agreement Term Sheet** means the Plan Support Agreement Term Sheet referred to in the FILO Settlement Term Sheet and executed in connection therewith.

**Plane Sales** means the sales by certain of the Debtors or the Debtors' Affiliates of (i) a Lear airplane in February 2021, (ii) a Challenger airplane in 2018, (iii) a Global Jet 6000 airplane in 2024, and (iv) a Falcon airplane in 2024.

**Prepetition Transactions** means the (i) 2016 Distribution, (ii) 2020 Transactions, (iii) 2021 Distribution, (iv) 2022 Transaction, and (v) the Plane Sales.

**Related Parties** means, with respect to any Entity, such Entity's current and former Affiliates, and such Entity's and its current and former Affiliates' respective current and former subsidiaries, officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, advisory board members, management companies, managed accounts or funds, affiliated investment funds or investments vehicles, and Representatives, and with respect to each of the foregoing, their respective predecessors, successors, and assigns, in each case, solely in their capacity as such.

**Released Parties** means (i) the Debtors, the Estates, and the Debtor Related Parties; (ii) each of the following, solely in their capacity as such, (a) the members of the Plan Administrator Committee, and (b) the Litigation Trust and the Litigation Trustee; (iii) each of the following, solely in their capacities as such, (a) the Creditors' Committee and each of its members, and (b) the FILO Parties; and (iv) with respect to each of the foregoing Entities identified in the immediately preceding clauses (ii) or (iii), such Entities' Related Parties; *provided* that, notwithstanding anything herein to the contrary, no Identified Non-Released Party shall be a Released Party.

**Representative** means, with respect to any Entity, such Entity's outside attorneys, accountants, investment bankers, consultants, professional advisors, independent auditors, trustees, fund advisors, investment managers, investment advisors, sub-advisors, sub-managers, and other professionals, and each of their respective current and former officers, directors, principals, equity holders (regardless whether such interests are held directly or indirectly), members, partners (including both general and limited partners), managers, employees, agents, and advisory board members, each in their capacity as such.

**Transformation Committee** means the special committee of the board of managers of Steward Health Care Holdings LLC comprised of Alan J. Carr, John R. Castellano, and William Transier.

## Schedule 1

### Individual Released Parties

- Alan Carr
- Ann-Marie Driscoll
- Carlos Hernandez
- David Barnhardt
- Eugene (Jay) Sullivan
- Gail Schlesinger
- General H.R. McMaster
- Henry (Nick) Nickells
- Jeffrey Morales
- Jennifer Hunt
- John Boehner
- John Castellano
- Joseph Weinstein
- Katchena Potter
- Mary Beth Taylor
- Nathalie Hibble
- Octavio Diaz
- Patrick Lombardo
- Rich Iannessa
- Sr. Vimala Vadakumpadan
- Susan Brown
- William Transier

**Schedule 2**

**Identified Non-Released Parties**

- Alessandra Pace
- Armin Ernst
- Brian Carty
- Christopher Dunleavy
- Craig Jesiolowski
- David Chicoine
- David Friend
- David Morales
- Herbert Holtz
- James Karam
- James Lenehan
- Jill Moretto
- John Polanowicz
- Joseph Ciccolo
- Joseph Maher
- Joshua Putter
- Mark Girard
- Mark Rich
- Michael Callum
- Miroslav Boyanov
- Nadine Delicata
- Ralph de la Torre
- Robert Guyon
- Ruben King-Shaw Jr.
- Sanjay Shetty

- 5326 Old Buena Vista Road LLC
- Ad Astra Per Aspera LLC
- CareMax, Inc.
- Cayman TRS Holdings
- Cerberus Capital Management, L.P.
- Cerberus International II Master Fund LP
- Cerberus Partners II LP
- Cerberus Series Four Holdings LLC
- de la Torre Foundation
- de la Torre Family Foundation
- Management Health Services Colombia S.A.S.
- Management Health Services LLC
- Manolete Health Investors LLC
- Manolete Health LLC
- Medical Properties Trust, Inc.
- MPT Sycamore Opco LLC
- Ralph de la Torre Revocable Trust
- RDLT – SHCI Investor LLC
- RDLT – SHCI Manager LLC
- Sagamore Capital Management, LLC
- Santa Clara Holdings LLC
- Sparta Holding Co. LLC
- Steward Health Care International
- Steward Health Care International (Malta) Ltd
- Steward Health Care International Colombia S.A.S.
- Steward Health Care Investors LLC
- Steward Health Care International Investors LLC
- Steward Health Care International Kingdom of Saudi Arabia, S.L.
- Steward Health Care International Ltd
- Steward Health Care International S.L
- Steward Malta Assets Ltd
- Steward Malta Ltd
- Steward Malta Management Ltd
- Steward Malta Personnel Limited
- Steward Management Holdings LLC
- Tenet Healthcare Corporation
- TRACO International Group S. DE R.L.

## Exhibit B

## TSA Budget



# Post-TED TSA Forecast
**($ in thousands)**

| Month Ending / Status | Jul-25 Fcst | Aug-25 Fcst | Sep-25 Fcst | Oct-25 Fcst | Nov-25 Fcst | Dec-25 Fcst | Jan-26 Fcst | Feb-26 Fcst | Mar-26 Fcst | Apr-26 Fcst | May-26 Fcst | Jun-26 Fcst | Jul-26 Fcst | Aug-26 Fcst | Sep-26 Fcst | Oct-26 Fcst | Nov-26 Fcst | Dec-26 Fcst | Total Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Illus. Estate Expenses (Covered by TSA with Litigation Trust)** | | | | | | | | | | | | | | | | | | | |
| Payroll & Payroll Related | $ (481) | $ (350) | $ (350) | $ (250) | $ (250) | $ (250) | $ (100) | $ (100) | $ (100) | $ (100) | $ (100) | $ (100) | $ (50) | $ (50) | $ (50) | $ (50) | $ (50) | $ (50) | $ (2,831) |
| Suppliers & Trade Vendors | (850) | (750) | (650) | (550) | (400) | (350) | (150) | (150) | (150) | - | - | - | - | - | - | - | - | - | (4,000) |
| Rent | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Operating Disbursements | (75) | (75) | (75) | (75) | (75) | (50) | (25) | (25) | (25) | - | - | - | - | - | - | - | - | - | (500) |
| Medical Records | (3,500) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (3,500) |
| U.S. Trustee Fees | (875) | - | - | (129) | - | - | (81) | - | - | (80) | - | - | (60) | - | - | (56) | - | - | (1,281) |
| **Total Illus. TSA Covered Expenses** | **$ (5,781)** | **$ (1,175)** | **$ (1,075)** | **$ (1,004)** | **$ (725)** | **$ (650)** | **$ (356)** | **$ (275)** | **$ (275)** | **$ (180)** | **$ (100)** | **$ (100)** | **$ (110)** | **$ (50)** | **$ (50)** | **$ (106)** | **$ (50)** | **$ (50)** | **$ (12,113)** |

**Exhibit 2**

**DIP Amendment**

Execution Version

# AMENDMENT NO. 6
## TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT

This **AMENDMENT NO. 6 TO DEBTOR-IN-POSSESSION CREDIT AGREEMENT** is entered into as of April 28, 2025 (this "Amendment"), by and among Steward Health Care System LLC, a Delaware limited liability company (the "Borrower"), Holdings, the other Loan Parties, the Lenders party hereto and Brigade Agency Services LLC, as administrative agent for the Lenders (in such capacity, the "Administrative Agent").

## RECITALS

**WHEREAS**, reference is made to that certain Debtor-In-Possession Credit Agreement, dated as of July 10, 2024 (as amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time prior to the date hereof, the "Existing Credit Agreement"; the Existing Credit Agreement after giving effect to this Amendment, the "Credit Agreement"), by and among the Borrower, the other Loan Parties party thereto, the Lenders party thereto, the Administrative Agent and the Collateral Agent;

**WHEREAS**, the Loan Parties have requested to amend the Existing Credit Agreement to, among other things, extend the maturity date under the Existing Credit Agreement through (i) in the first instance, April 28, 2025 (the "Motion Milestone"), (ii) if the Debtors have filed a motion seeking the Bankruptcy Court's approval of an order (the "Approval Order"), pursuant to sections 361, 362, 363 and 105 of the Bankruptcy Code and Bankruptcy Rules 4001(d)(iii), 6004, and 9019, approving the Settlement and Stay Relief Term Sheet executed by (x) the Debtors, (y) the FILO DIP Secured Parties, the Prepetition Bridge Agent, and the FILO Bridge Lenders (collectively, the "FILO Parties"), and (z) the Creditors' Committee (together with the Debtors and the FILO Parties, the "Settlement Parties") (the "Settlement Term Sheet") by the Motion Milestone, May 28, 2025 (the "Approval Milestone"), and (iii) if the Approval Order is entered by the Approval Milestone, the date that is the earlier of (x) July 8, 2025 and (y) one business day after the confirmation date of any confirmed plan; and

**WHEREAS**, subject to the terms and conditions set forth herein, the Administrative Agent and the Lenders party hereto, constituting all of the Lenders under the Existing Credit Agreement immediately prior to the effectiveness of this Amendment on the Amendment Effective Date (as defined below), are willing to extend the maturity under the Existing Credit Agreement as detailed herein, only on the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the mutual agreements, provisions and covenants contained herein, the parties hereto hereby agree as follows:

1.     Defined Terms.  Capitalized terms used (including in the preamble and recitals hereto) but not defined herein shall have the meanings ascribed to them in the Credit Agreement or, if not defined in the Credit Agreement, the order entered by the Bankruptcy Court at Docket No. 1538 in the Chapter 11 Cases (the "FILO DIP Order").

2.     Maturity Extension.  In accordance with Section 9.02(c) of the Existing Credit Agreement, the Administrative Agent and the Lenders party hereto, constituting all of the Lenders under the Existing Credit Agreement as in effect immediately prior to the effectiveness of this

Amendment, hereby agree to amend the Existing Credit Agreement, and the Existing Credit Agreement is hereby amended to amend and restate clause (a) in the definition of "Maturity Date" in Section 1.01 of the Existing Credit Agreement to read as follows: "(a) April 28, 2025,"; *provided*, that if the Debtors have filed a motion seeking the Bankruptcy Court's approval of the Approval Order by the Motion Milestone, the Existing Credit Agreement shall be automatically and without any further actions deemed amended to amend and restate clause (a) in the definition of "Maturity Date" in Section 1.01 of the Existing Credit Agreement to read as follows: "(a) May 28, 2025,"; *provided*, *further*, that if the Approval Order is entered by the Approval Milestone, the Existing Credit Agreement shall be automatically and without any further actions deemed amended to amend and restate clause (a) in the definition of "Maturity Date" in Section 1.01 of the Existing Credit Agreement to read as follows: "(a) the date that is the earlier of (x) July 8, 2025 and (y) one business day after the confirmation date of any confirmed plan,".

3.     <u>Amendments and Waivers</u>.  In accordance with Section 9.02(b) of the Existing Credit Agreement, the Borrower, the Administrative Agent and the Lenders party hereto, constituting all of the Lenders under the Existing Credit Agreement as in effect immediately prior to the effectiveness of this Amendment, hereby agree:

a.     to amend the Existing Credit Agreement, and the Existing Credit Agreement is hereby amended, to amend and restate Section 5.17(a) of the Existing Credit Agreement to read as follows:

"(i) host a bi-weekly conference call on a day that is a Business Day among the Chief Restructuring Officer, the advisors to the Loan Parties and the Lender Advisors, at a time to be mutually agreed upon and (ii) host a bi-weekly conference call on a day that is a Business Day among one or more members of the Transformation Committee of the Board of Managers of Steward Health Care Systems LLC, one or more representatives of the Lenders, including the Administrative Agent, and at the option of the Lenders, the Lender Advisors, at a time to be mutually agreed upon, each of which conference calls shall be used to discuss, among other things, the Debtors' asset monetization process, preparation for strategic processes and/or any issues related to the financial affairs, finances, business, assets, operations or condition (financial or otherwise) of the Loan Parties and their Subsidiaries, including such matters as may be requested by the Lenders or Lender Advisors; <u>provided</u>, that the Lenders and Lender Advisors shall confine attendance to those parties reasonably necessary to participate and such conference calls will be subject to reasonable time limits; and";

b.     that it shall be an Event of Default under the Credit Agreement if the Debtors or the Creditors' Committee materially breach their respective obligations to the FILO Parties under the Settlement Term Sheet or the Plan Support Agreement Term Sheet entered into by the Settlement Parties on or about the date hereof, and such breach is not cured within three business days of the FILO Parties providing written notice of such breach to the Debtors' and the Creditors' Committee's counsel; and

c.     to waive any Default or Event of Default (including any Event of Default under Section VII(b) of the Existing Credit Agreement and/or arising as a failure to give notice thereof) existing as of the Amendment Effective Date relating to the Borrower's

failure to pay interest with respect to $237,304,853.71 of Term SOFR Loans with an Interest Period ending March 31, 2025 on the date due.

4.    <u>Covenants of the Borrower</u>.  In consideration of the maturity extension set forth above, each of the Loan Parties hereby agrees that:

a.    The covenants of the Loan Parties set forth in Sections 4(e), (f), and (g) of the Limited Waiver No. 2 and Amendment to Debtor-in-Possession Credit Agreement, entered into as of December 31, 2024, by and among the Borrower, Holdings, the other Loan Parties, the Lenders party thereto, and the Administrative Agent, and Sections 3(f), (g), and (h) of the Amendment No. 5 to Debtor-in-Possession Credit Agreement, entered into as of December 31, 2024, by and among the Borrower, Holdings, the other Loan Parties, the Lenders party thereto, and the Administrative Agent, are incorporated herein by reference.

b.    The Loan Parties delivered a budget annexed hereto as <u>Annex A</u> for the weeks ending May 2, 2025 through July 11, 2025, which has been approved by the Lenders and which constitutes the Approved Budget for all purposes of the Credit Agreement as of the Amendment Effective Date.

c.    The Loan Parties and their Subsidiaries shall not make any payments to any vendors during the period set forth in the Approved Budget delivered pursuant to clause 4(b) above other than as set forth in such applicable Approved Budget.

5.    <u>Representations and Warranties</u>. In order to induce the Administrative Agent and the Lenders to enter into this Amendment and the agreements contemplated hereby regarding the Existing Credit Agreement in the manner provided herein, Holdings, the Borrower and the other Loan Parties hereby represent and warrant on and as of the Amendment Effective Date that:

a.    this Amendment has been duly executed and delivered by each Loan Party and constitutes a legal, valid and binding obligation of such Loan Party, enforceable in accordance with its terms;

b.    at the time of and immediately after giving effect to this Amendment, the representations and warranties of the Loan Parties contained in Article III of the Credit Agreement are true and correct in all material respects (except, with respect to the representation contained in Section 3.06 of the Credit Agreement, to the extent otherwise disclosed by the Borrower (or its counsel) to the Lenders (or their counsel)) on and as of the Amendment Effective Date (it being understood that any representation and warranty that is qualified as to "materiality", "Material Adverse Effect" or similar language shall be true and correct in all respects after giving effect to any such qualification therein) with the same effect as though made on and as of the Amendment Effective Date (it being understood and agreed that any representation or warranty which by its terms is made as of a specified date shall be required to be true and correct in all material respects only as of such specified date); and

c.    at the time of and immediately after giving effect to this Amendment, no Default or Event of Default has occurred or is continuing.

6.      <u>Conditions to Effectiveness to Amendment</u>.  The effectiveness of this Amendment is subject to the satisfaction or waiver of the following conditions (the time at which all such conditions are so satisfied or waived is referred to herein as the "<u>Amendment Effective Date</u>"):

a.      Each of the parties hereto shall have received a counterpart signature page of this Amendment, duly executed by each of the Borrower, Holdings, the other Loan Parties, the Administrative Agent and the Lenders (constituting all of the Lenders under the Credit Agreement immediately prior to the effectiveness of this Amendment);

b.      To the extent required by the FILO DIP Order, either the Creditors' Committee shall have consented in writing to this Amendment or the Bankruptcy Court shall have entered an order in the Chapter 11 Cases approving the Debtors' entry into this Amendment in accordance with paragraph 2(c)(ii) of the FILO DIP Order; and

c.      The Settlement Term Sheet has been executed by all parties thereto and shall have become effective in accordance with the terms and conditions thereof.

7.      <u>No Modification</u>.  Nothing contained herein shall be deemed to constitute a waiver of compliance with any term or condition contained in the Existing Credit Agreement, the Credit Agreement or any of the other Loan Documents or constitute a course of conduct or dealing among the parties except as explicitly set forth herein.  The parties hereto hereby reserve all rights, privileges and remedies under the Loan Documents.  Except as explicitly set forth herein, the Existing Credit Agreement remains unmodified and in full force and effect.  All references in the Loan Documents to the Existing Credit Agreement shall be deemed to be references to the Existing Credit Agreement after giving effect hereto.

8.      <u>Governing Law; Jurisdiction; Consent to Service of Process; WAIVER OF JURY TRIAL</u>.  Section 9.09 and Section 9.10 of the Existing Credit Agreement are hereby incorporated by reference, *mutatis mutandis.* The parties hereto hereby agree to cooperate with one another in having any dispute as to the validity, enforceability, or interpretation of this Amendment heard by the Bankruptcy Court on an expedited basis.

9.      <u>Severability of Provisions</u>.      Any provision of this Amendment which is unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.  All rights, remedies and powers provided in this Amendment may be exercised only to the extent that the exercise thereof does not violate any applicable mandatory provisions of law, and all the provisions of this Amendment are intended to be subject to all applicable mandatory provisions of law which may be controlling and to be limited to the extent necessary so that they will not render this Amendment invalid or unenforceable.

10.      <u>Integration</u>.  The Existing Credit Agreement, after giving effect to this Amendment, and the other Loan Documents constitute the entire understanding of the parties hereto and thereto with respect to the subject matter thereof and thereof and any prior agreements, whether written or oral, with respect thereto are superseded hereby and thereby.

11.     <u>Execution in Counterparts</u>.  This Amendment may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be deemed an original, but all of which shall together constitute one and the same instrument.  Delivery of an executed counterpart hereof by facsimile or electronic transmission shall be as effective as delivery of any original executed counterpart hereof. By its signature hereto, each Person signing this Amendment on behalf of a party represents and warrants to the other parties that it is duly authorized to execute and deliver this Amendment.  The words "execution," "signed," "signature," and words of like import in this Amendment shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

12.     <u>Headings</u>. The headings of the several sections and subsections of this Amendment are inserted for convenience only and shall not in any way affect the meaning or construction of any provision of this Amendment.

13.     <u>Loan Document</u>. The parties hereto hereby agree that this Amendment is a Loan Document.

*[Signature Pages Follow]*

5

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed and delivered by their duly authorized officers as of the date first above written.

BRIGADE AGENCY SERVICES LLC, as FILO Agent

By: BRIGADE CAPITAL MANAGEMENT, LP, Its Managing Manager

By: _____
Name: Patrick Criscillo
Title: Authorized Signer

**LENDERS:**

**BIG RIVER GROUP FUND SPC LLC**
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**BRIGADE BADGER FUND, LLC**
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**BRIGADE DIVERSIFIED CREDIT CIT**
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**BRIGADE CREDIT FUND II LTD**.
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer

**LENDERS:**

**BRIGADE HIGH YIELD FUND LTD**.
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**BRIGADE LEVERAGED CAPITAL
STRUCTURES FUND LTD**.
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**BRIGADE LOAN FUND LTD**.
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**BRIGADE OPPORTUNISTIC CREDIT LBG
FUND LTD**.
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer

*[Signature Page to Amendment No. 6 to Debtor-In-Possession Credit Agreement]*

**LENDERS:**

**BRIGADE-SIERRABRAVO FUND LP**
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**CITY OF PHOENIX EMPLOYEES'
RETIREMENT PLAN**
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**FEDEX CORPORATION EMPLOYEES'
PENSION TRUST**
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**FUTURE DIRECTIONS CREDIT
OPPORTUNITIES FUND**,
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


*[Signature Page to Amendment No. 6 to Debtor-In-Possession Credit Agreement]*

**LENDERS:**

**JPMORGAN CHASE RETIREMENT PLAN BRIGADE BANK LOAN**
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION**
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer


**SC CREDIT OPPORTUNITIES MANDATE, LLC**
By: BRIGADE CAPITAL MANAGEMENT, LP,
as Investment Manager

By: _____
Name: Patrick Criscillo
Title: Chief Financial Officer

**LENDERS:**

**MIDOCEAN CREDIT FUND MANAGEMENT, LP**

By: _____

Name: ~~Damion Brown~~

Title:   Managing Director

**MidOcean Tactical Credit Fund III LP**
By: Tactical Credit Fund III GP, LP
By: Ultramar Credit Holdings Ltd., its General Partner

By: _____

Name: ~~Damion Brown~~

Title: Managing Director

**MidOcean Multi Asset Credit Fund, LP**
By: MidOcean Multi Asset Credit Fund GP, LLC
its General Partner

By: _____

Name: ~~Damion Brown~~

Title: Managing Director

**Abbott Abbvie Multiple Employer Pension Plan Trust**

By: _____

~~MidOcean Credit Fund Management LP~~
(Investment Advisor to above)
Name: Damion Brown
Title: Managing Director

*[Signature Page to Amendment No. 6 to Debtor-In-Possession Credit Agreement]*

**LENDERS:**

**Abbott Laboratories Annuity Retirement Trust**

By: _____

MidOcean Credit Fund Management LP
(Investment Advisor to above)
Name: Damion Brown
Title: Managing Director

**LENDER:**

For and on behalf of **OneIM Fund I LP, as DIP Lender,** acting by its General Partner, OneIM GP LLC, acting by its Manager, GCT Capital LLC

By: _____
Name: Munish Varma
Title: Authorized Signatory

**LENDER:**

**OWL CREEK INVESTMENTS I, LLC**

By: OWL CREEK ASSET MANAGEMENT, LP
as Investment Manager

By: _____
Name: Kevin Dibble
Title:  General Counsel

[*Signature Page to Amendment No. 6 to Debtor-In-Possession Credit Agreement*]

**LENDER:**

**WHITEHAWK FINANCE LLC**
By: WHITEHAWK CAPITAL PARTNERS, LP, as
Investment Manager

By: _____
Name: Robert Louzan
Title: Managing Partner

*[Signature Page to Amendment No. 6 to Debtor-In-Possession Credit Agreement]*

**BORROWER:**

**STEWARD HEALTH CARE SYSTEM LLC**

By: _____

Name: John Castellano

Title: Chief Restructuring Officer

**LOAN GUARANTORS:**

**ARIZONA DIAGNOSTIC & SURGICAL CENTER, INC.**
**BEAUMONT HOSPITAL HOLDINGS, INC.**
**BILTMORE SURGERY CENTER HOLDINGS, INC.**
**BILTMORE SURGERY CENTER, INC.**
**BRIM HEALTHCARE OF TEXAS, LLC**
**BRIM HOLDING COMPANY, INC.**
**CHOICE CARE CLINIC I, INC.**
**CHOICE CARE CLINIC II, INC.**
**CHOICE CARE CLINIC III, INC.**
**CHOICE CARE CLINIC OF LOUISIANA, INC.**
**CHOICE CARE CLINIC OF UTAH, INC.**
**DAVIS HOSPITAL HOLDINGS, INC.**
**DAVIS SURGICAL CENTER HOLDINGS, INC.**
**GLENWOOD SPECIALTY IMAGING, LLC**
**HERITAGE TECHNOLOGIES, L.L.C.**
**IASIS CAPITAL CORPORATION**
**IASIS FINANCE II LLC**
**IASIS FINANCE III LLC**
**IASIS FINANCE TEXAS HOLDINGS, LLC**
**IASIS FINANCE, INC.**
**IASIS GLENWOOD REGIONAL MEDICAL CENTER, LP**
**IASIS HEALTHCARE CORPORATION**
**IASIS HEALTHCARE HOLDINGS, INC.**
**IASIS HEALTHCARE LLC**
**IASIS MANAGEMENT COMPANY**
**IASIS TRANSCO, INC.**
**INDIGENT CARE SERVICES OF NORTHEAST LOUISIANA, INC.**
**JORDAN VALLEY HOSPITAL HOLDINGS, INC.**
**MESA GENERAL HOSPITAL, LP**
**MORTON HOSPITAL, A STEWARD FAMILY HOSPITAL, INC.**
**MOUNTAIN POINT HOLDINGS, LLC**
**MOUNTAIN VISTA MEDICAL CENTER, LP**
**MT TRANSITION LP**

By: _____
Name:  John Castellano
Title:   Chief Restructuring Officer

*[Signature Page to Amendment No. 6 to Debtor-In-Possession Credit Agreement]*

NASHOBA VALLEY MEDICAL CENTER, A
STEWARD FAMILY HOSPITAL, INC.
NEW ENGLAND SINAI HOSPITAL, A STEWARD
FAMILY HOSPITAL, INC.
ODESSA FERTILITY LAB, INC.
ODESSA REGIONAL HOSPITAL, LP
PERMIAN BASIN CLINICAL SERVICES, INC.
PERMIAN PREMIER HEALTH SERVICES, INC.
PHYSICIAN GROUP OF ARIZONA, INC.
PHYSICIAN GROUP OF ARKANSAS, INC.
PHYSICIAN GROUP OF FLORIDA, INC.
PHYSICIAN GROUP OF LOUISIANA, INC.
PODIATRIC PHYSICIANS MANAGEMENT OF
ARIZONA, INC.
PP TRANSITION LP
PP TRANSITION, INC.
QUINCY MEDICAL CENTER, A STEWARD
FAMILY HOSPITAL, INC.
RIVERWOODS ASC HOLDCO LLC
SEABOARD DEVELOPMENT PORT ARTHUR LLC
SHC YOUNGSTOWN OHIO LABORATORY
SERVICES COMPANY LLC
SHC YOUNGSTOWN OHIO OUTPATIENT
SERVICES LLC
SHC YOUNGSTOWN OHIO PSC LLC
SJ MEDICAL CENTER, LLC
ST. LUKE'S BEHAVIORAL HOSPITAL, LP
ST. LUKE'S MEDICAL CENTER, LP
STEWARD CARNEY HOSPITAL, INC.
STEWARD CGH, INC.
STEWARD EMERGENCY PHYSICIANS, INC.
STEWARD FALL RIVER MANAGEMENT CARE
SERVICES LLC
STEWARD FLORIDA ALF LLC
STEWARD FLORIDA HOLDINGS LLC
STEWARD GOOD SAMARITAN MEDICAL
CENTER, INC.
STEWARD GOOD SAMARITAN OCCUPATIONAL
HEALTH SERVICES, INC.
STEWARD GOOD SAMARITAN RADIATION
ONCOLOGY CENTER, INC.
STEWARD HEALTH CARE HOLDINGS LLC
STEWARD HEALTH CARE NETWORK, INC.
STEWARD HH, INC.

By: _____
Name:  John Castellano
Title:   Chief Restructuring Officer

*[Signature Page to Amendment No. 6 to Debtor-In-Possession Credit Agreement]*

STEWARD HILLSIDE REHABILITATION
HOSPITAL, INC.
STEWARD HOLY FAMILY HOSPITAL, INC.
STEWARD HOSPITAL HOLDINGS LLC
STEWARD IMAGING & RADIOLOGY HOLDINGS
LLC
STEWARD MEDICAID CARE NETWORK, INC.
STEWARD MEDICAL GROUP, INC.
STEWARD MEDICAL HOLDINGS LLC
STEWARD MELBOURNE HOSPITAL, INC.
STEWARD NEW ENGLAND INITIATIVES, INC.
STEWARD NORWOOD HOSPITAL, INC.
STEWARD NSMC, INC.
STEWARD OHIO HOLDINGS LLC
STEWARD OPERATIONS HOLDINGS LLC
STEWARD PENNSYLVANIA HOLDINGS LLC
STEWARD PGH, INC.
STEWARD PHYSICIAN CONTRACTING, INC.
STEWARD ROCKLEDGE HOSPITAL, INC.
STEWARD SEBASTIAN RIVER MEDICAL
CENTER, INC.
STEWARD SHARON REGIONAL HEALTH
SYSTEM, INC.
STEWARD ST. ANNE'S HOSPITAL
CORPORATION
STEWARD ST. ELIZABETH'S MEDICAL CENTER
OF BOSTON, INC.
STEWARD ST. ELIZABETH'S REALTY CORP.
STEWARD TEXAS HOSPITAL HOLDINGS LLC
STEWARD TRUMBULL MEMORIAL HOSPITAL,
INC.
STEWARD VALLEY REGIONAL VENTURES, INC.
THE MEDICAL CENTER OF SOUTHEAST TEXAS,
LP
TNC TRANSITION LP
UTAH TRANSCRIPTION SERVICES, INC.
STEWARDSHIP HEALTH, INC.
STEWARDSHIP HEALTH MEDICAL GROUP, INC.
STEWARDSHIP SERVICES INC.
SEABOARD DEVELOPMENT LLC
SOUTHWEST GENERAL HOSPITAL, LP
STEWARD FLORIDA ASC LLC
BREVARD SHC HOLDINGS LLC


By:
Name: John Castellano
Title: Chief Restructuring Officer

*[Signature Page to Amendment No. 6 to Debtor-In-Possession Credit Agreement]*

STEWARD MEDICAL GROUP EXPRESS CARE, INC.
STEWARD HEALTH CARE NETWORK ACO TEXAS, INC.
STEWARD HEALTHCARE MANAGEMENT SERVICES LLC
STEWARD EASTON HOSPITAL, INC.
SALT LAKE REGIONAL MEDICAL CENTER, LP
JORDAN VALLEY MEDICAL CENTER, LP
STEWARD PET IMAGING, LLC
STEWARD ANESTHESIOLOGY PHYSICIANS OF FLORIDA, INC.
STEWARD EMERGENCY PHYSICIANS OHIO, INC.
STEWARD EMERGENCY PHYSICIANS OF PENNSYLVANIA, INC.
STEWARD RADIOLOGY PHYSICIANS OF FLORIDA, INC.
STEWARD EMERGENCY PHYSICIANS OF FLORIDA, INC.
ONSITE CARE, INC.
STEWARD ANESTHESIOLOGY PHYSICIANS OF PENNSYLVANIA, INC.
BOSTON SPORTS MEDICINE AND RESEARCH INSTITUTE, LLC
STEWARD RADIOLOGY PHYSICIANS OF MASSACHUSETTS, INC.
STEWARD PATHOLOGY PHYSICIANS OF MASSACHUSETTS, INC.
STEWARD EMERGENCY PHYSICIANS OF ARIZONA, INC.
STEWARD RADIOLOGY PHYSICIANS OF ARIZONA, INC.
STEWARD ANESTHESIOLOGY PHYSICIANS OF MASSACHUSETTS, INC.
STEWARD MEDICAL GROUP PENNSYLVANIA ENDOSCOPY LLC
STEWARD RADIOLOGY PHYSICIANS OF PENNSYLVANIA, INC.
PHYSICIAN GROUP OF UTAH, INC.
SALT LAKE REGIONAL PHYSICIANS, INC.

By:

Name: John Castellano
Title:   Chief Restructuring Officer

*[Signature Page to Amendment No. 6 to Debtor-In-Possession Credit Agreement]*

DAVIS HOSPITAL & MEDICAL CENTER, LP
SOUTHRIDGE PLAZA HOLDINGS, INC.
STEWARD FMC, INC.
HC ESSENTIAL CO.
HEALTH CHOICE FLORIDA, INC.
HEALTH CHOICE LOUISIANA, INC.
HEALTH CHOICE MANAGED CARE SOLUTIONS
LLC
HEALTH CHOICE PREFERRED LOUISIANA ACO
LLC
HEALTH CHOICE PREFERRED LOUISIANA
PHYSICIAN ASSOCIATION LLC
HEALTH CHOICE PREFERRED TEXAS ACO –
ALAMO REGION LLC
HEALTH CHOICE PREFERRED TEXAS ACO –
GULF COAST REGION LLC
HEALTH CHOICE PREFERRED TEXAS
PHYSICIAN ASSOCIATION – ALAMO REGION
LLC
HEALTH CHOICE PREFERRED TEXAS
PHYSICIAN ASSOCIATION – GULF COAST
REGION LLC
STEWARD HOSPITAL HOLDINGS SUBSIDIARY
ONE, INC.
STEWARD HEALTH CARE OZ FUND, INC.
STEWARD HEALTH CHOICE, INC.
STEWARD HEALTH CARE INTERNATIONAL
LLC
STEWARD EMPLOYER SOLUTIONS LLC
STEWARD MEDICAL VENTURES, INC.
BOSTON ORTHOPEDIC CENTER, LLC
HEALTH CHOICE NORTHERN ARIZONA LLC
STEWARD SPECIAL PROJECTS LLC
STEWARD ACCOUNTABLE CARE
ORGANIZATION, INC.
BLACKSTONE MEDICAL CENTER, INC.
BLACKSTONE REHABILITATION HOSPITAL,
INC.
HEALTHUTAH HOLDCO LLC
STEWARD ASC HOLDINGS LLC
STEWARD TSC INVESTMENTS LLC
STEWARD SA FSED HOLDINGS, INC.
STEWARD WEST VENTURES CO.

By: _____
Name: John Castellano
Title:   Chief Restructuring Officer

*[Signature Page to Amendment No. 6 to Debtor-In-Possession Credit Agreement]*

**HEALTH CHOICE UTAH ACCOUNTABLE CARE LLC**
**HEALTH CHOICE PREFERRED ACCOUNTABLE CARE LLC**
**CONVERSE MEDICAL CENTER LLC**
**DE ZAVALA MEDICAL CENTER LLC**
**LEGACY TRAILS MEDICAL CENTER LLC**
**BRIM PHYSICIANS GROUP OF COLORADO, LLC**
**BRIM HEALTHCARE OF COLORADO, LLC**
**ONSITE CARE MSO, LLC**
**TRACO INVESTMENT MANAGEMENT LLC**
**DOWNTOWN HOUSTON PHYSICIAN HOSPITAL ORGANIZATION**

By: _____
Name: John Castellano
Title:   Chief Restructuring Officer

**ANNEX A**

**Budget**

[See attached.]



# DIP Budget

($ in millions)

| Week # | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Wk 5 | Wk 6 | Wk 7 | Wk 8 | Wk 9 | Wk 10 | Wk 11 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 2-May | 9-May | 16-May | 23-May | 30-May | 6-Jun | 13-Jun | 20-Jun | 27-Jun | 4-Jul | 11-Jul | |
| Status | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Forecast |
| Hospital Receipts | $ 0.8 | $ 0.8 | $ 0.8 | $ 0.8 | $ 0.8 | $ 0.6 | $ 0.6 | $ 0.6 | $ 0.6 | $ 0.3 | $ 0.3 | $ 6.9 |
| Supplemental Programs | 21.6 | - | - | - | - | 4.5 | - | - | - | - | - | 26.1 |
| Other Operating Receipts | - | - | - | - | - | - | - | - | 1.9 | - | - | 1.9 |
| **Total Operating Receipts** | **$ 22.4** | **$ 0.8** | **$ 0.8** | **$ 0.8** | **$ 0.8** | **$ 5.1** | **$ 0.6** | **$ 0.6** | **$ 2.5** | **$ 0.3** | **$ 0.3** | **$ 34.9** |
| **Operating Disbursements** | | | | | | | | | | | | |
| Payroll & Payroll Related | (0.1) | (0.4) | (0.2) | (0.4) | (0.2) | (0.2) | (0.1) | (0.2) | (0.1) | (0.2) | (0.0) | (2.2) |
| Suppliers & Trade Vendors | (0.4) | (0.3) | (0.3) | (0.3) | (0.5) | (0.3) | (0.3) | (0.3) | (0.3) | (0.2) | (0.2) | (3.3) |
| Other Operating Disbursements | (0.2) | (0.1) | (1.1) | (0.1) | (0.1) | (0.1) | - | - | (0.1) | - | - | (1.5) |
| **Total Operating Disbursements** | **$ (0.6)** | **$ (0.8)** | **$ (1.6)** | **$ (0.8)** | **$ (0.8)** | **$ (0.6)** | **$ (0.4)** | **$ (0.5)** | **$ (0.4)** | **$ (0.3)** | **$ (0.2)** | **$ (7.0)** |
| **Net Cash Flow From Operations** | **$ 21.8** | **$ 0.0** | **$ (0.8)** | **$ 0.0** | **$ 0.0** | **$ 4.5** | **$ 0.2** | **$ 0.1** | **$ 2.1** | **$ (0.1)** | **$ 0.1** | **$ 27.9** |
| **Non-Operating Disbursements** | | | | | | | | | | | | |
| Debt Service | (2.8) | - | - | - | (2.6) | - | - | - | - | (2.5) | - | (7.8) |
| Restructuring Professional Fees, Net of Deferral | (2.0) | (2.4) | (3.6) | (2.3) | (2.3) | (2.0) | (2.2) | (2.0) | (2.0) | (1.9) | (2.3) | (25.1) |
| Litigation Professional Fees | (1.0) | (0.3) | (0.3) | (0.3) | (0.7) | (0.3) | (0.3) | (0.6) | (0.3) | (0.1) | (0.1) | (4.0) |
| Lender Professional Fees, Net of Deferral | (0.1) | - | - | (2.5) | (0.1) | (2.5) | - | - | (0.2) | (1.9) | - | (7.3) |
| U.S. Trustee Fees | (0.7) | - | - | - | - | - | - | - | - | - | - | (0.7) |
| **Total Non-Operating Disbursements** | **$ (6.6)** | **$ (2.7)** | **$ (3.9)** | **$ (5.0)** | **$ (5.6)** | **$ (4.8)** | **$ (2.5)** | **$ (2.6)** | **$ (2.5)** | **$ (6.3)** | **$ (2.4)** | **$ (44.8)** |
| **Net Cash Flow** | **$ 15.2** | **$ (2.6)** | **$ (4.7)** | **$ (5.0)** | **$ (5.6)** | **$ (0.3)** | **$ (2.3)** | **$ (2.6)** | **$ (0.4)** | **$ (6.4)** | **$ (2.3)** | **$ (16.9)** |
| **Beg. Cash Balance** | **$ 6.9** | **$ 24.4** | **$ 22.7** | **$ 20.8** | **$ 16.8** | **$ 12.2** | **$ 12.4** | **$ 17.4** | **$ 21.9** | **$ 23.4** | **$ 17.0** | **$ 6.9** |
| ( + / - ) Net Cash Flow | 15.2 | (2.6) | (4.7) | (5.0) | (5.6) | (0.3) | (2.3) | (2.6) | (0.4) | (6.4) | (2.3) | (16.9) |
| ( + ) Transaction & Litigation Proceeds | 2.4 | 1.0 | 2.8 | 1.0 | 1.0 | 0.4 | 7.3 | 7.0 | 1.9 | - | - | 24.8 |
| **End. Book Cash Balance** | **$ 24.4** | **$ 22.7** | **$ 20.8** | **$ 16.8** | **$ 12.2** | **$ 12.4** | **$ 17.4** | **$ 21.9** | **$ 23.4** | **$ 17.0** | **$ 14.8** | **$ 14.8** |
| *Est. Secured Interim Advance* | *$ (25.7)* | *$ (29.1)* | *$ (34.5)* | *$ (40.3)* | *$ (46.7)* | *$ (52.0)* | *$ (54.9)* | *$ (58.1)* | *$ (61.0)* | *$ (67.7)* | *$ (70.2)* | *$ (70.2)* |

**Exhibit 3**

**Cure Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | § § § | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM LLC, *et al.*, | § § § | Case No. 24-90213 (CML) |
|  | § | (Jointly Administered) |
| Debtors.[1] | § § |  |

## NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SETTLEMENT

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On April 28, 2025, Steward Health Care System LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") a motion (Docket No. 4746) (the "**Motion**") seeking, among other things, entry of an order:

    a) approving a settlement (the "**Settlement**") with the FILO Secured Parties and the Creditors' Committee;

    b) authorizing and directing the transfer by the Debtors of the Litigation Trust Assets "free and clear" (to the fullest extent permitted by law) to the Litigation Trust under section 363(f) of the Bankruptcy Code;

    c) authorizing the DIP Amendment (as defined therein and attached thereto as **Exhibit 2**) and use of cash collateral in accordance with the Settlement;

    d) granting adequate protection to the FILO Secured Parties;

    e) authorizing and approving notice to each non-Debtor counterparty (each, a "**Contract Counterparty**") to an executory contract or unexpired lease of non-residential real property of the Debtors (each, a "**Contract**") regarding the potential assumption and assignment of such Contracts and the Debtors' calculations of the amount necessary to cure any monetary defaults under such Contracts (the "**Cure**

---

[1]    A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/Steward.  The Debtors' service address for these chapter 11 cases is 2811 McKinney Avenue, Suite 300, Dallas, Texas 75204.

Costs")"), substantially in the form attached thereto as **Exhibit 3** (the "**Cure Notice**");

f) authorizing and approving procedures for the assumption and assignment of certain Contracts in connection with the Settlement, as applicable (collectively, the "**Assigned Contracts**") and determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and

g) granting related relief.

On [●], 2025, the Bankruptcy Court entered the *Order (I) Approving Settlement With FILO Secured Parties; (II) Authorizing and Directing Transfer of Assets in Connection Therewith (III) Authorizing Amendment to FILO DIP Credit Agreement and Continued Use of Cash Collateral; (IV) Granting Adequate Protection; (V) Approving Assumption and Assignment Procedures and Form and Manner of Notice of Assumption and Assignment; and (VI) Granting Related Relief* (Docket No. [●]) (the "**Settlement Order**").[2]

## Cure Costs

In accordance with the Assumption and Assignment Procedures and the Settlement Order, the Debtors shall, in connection with the Settlement, assume and assign to the Litigation Trust (or its designated assignee, as applicable) certain contracts and leases of the Debtors, subject to the consent of the FILO Secured Parties.

Each of the contracts and leases that may potentially be assumed and assigned in connection with the Settlement and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A** annexed hereto.

The inclusion of any contract or lease on **Exhibit A** does not constitute an admission that a particular contract or lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such contract or lease ultimately will be assumed or assigned.  All rights of the Debtors and the counterparties with respect thereto are reserved.

Notwithstanding the inclusion of any lease or contract on **Exhibit A**, the Litigation Trust is not bound to accept assignment of such Contract, and may amend the schedule of Assigned Contracts to remove any contract or lease in its sole discretion.

If: (a) the Debtor, subject to the consent of the FILO Secured Parties, identifies (i) additional contracts or leases to be assumed and assigned to the Litigation Trust, or (ii) modifications that need to be made to a proposed Cure Cost previously stated in the Assignment and Cure Notice; or (b) the Litigation Trust designates any additional contracts or leases not previously included on this Assignment and Cure Notice for assumption and assignment,

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Settlement Order.

the Debtor shall file with the Court and serve by first class mail on the applicable Contract Counterparty a supplemental Assignment and Cure Notice (a "**Supplemental Cure Notice**").

**Cure Objections**

Objections, if any, to any proposed Cure Costs (each, a "**Cure Objection**") with respect to the Contracts identified on **Exhibit A** must: (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and, to the extent applicable, provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; and (v) be filed with the Court and served on the Debtors, the Creditors' Committee, and the FILO Secured Parties within ten (10) days after receipt of Cure Notice:

Any Cure Objection with respect to Cure Costs set forth in a Supplemental Cure Notice must be filed within seven (7) days of filing of that Supplemental Cure Notice.

**IF NO TIMELY CURE OBJECTION IS FILED WITH RESPECT TO AN ASSIGNED CONTRACT: (I) THE CONTRACT COUNTERPARTY TO SUCH PROPOSED ASSIGNED CONTRACT SHALL BE DEEMED TO HAVE CONSENTED TO THE ASSUMPTION BY THE DEBTOR AND ASSIGNMENT TO THE LITIGATION TRUST, AS APPLICABLE, OF THE ASSIGNED CONTRACT, AND BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO SUCH ASSUMPTION AND ASSIGNMENT; (II) ANY AND ALL DEFAULTS UNDER THE ASSIGNED CONTRACT AND ANY AND ALL PECUNIARY LOSSES RELATED THERETO SHALL BE DEEMED CURED AND COMPENSATED PURSUANT TO BANKRUPTCY CODE SECTION 365(B)(1)(A) AND UPON PAYMENT OF THE CURE COSTS SET FORTH IN THE CURE NOTICE FOR SUCH ASSIGNED CONTRACT; AND (III) THE CONTRACT COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OTHER CLAIMS RELATED TO SUCH ASSIGNED CONTRACT AGAINST THE DEBTOR AND ITS ESTATE OR THE LITIGATION TRUST OR ITS PROPERTY THAT EXISTED PRIOR TO THE ASSIGNMENT OF SUCH CONTRACT TO THE LITIGATION TRUST.**

**Additional Information**

Copies of the Motion, the Settlement Order, and the Assumption and Assignment Procedures may be obtained free of charge at the website dedicated to the Debtor's chapter 11 case maintained by the Debtor's claims and noticing agent, Kroll Restructuring Administration, LLC, located at https://cases.ra.kroll.com/Steward.

*[Remainder of page intentionally left blank.]*

3

Dated:      [●], 2025
            Houston, Texas

 _/s/ Draft_____
WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
Stephanie N. Morrison (24126930)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Gabriel.Morgan@weil.com
         Clifford.Carlson@weil.com
         Stephanie.Morrison@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Jeffrey D. Saferstein (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Jeffrey.Saferstein@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
David J. Cohen (admitted *pro hac vice*)
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone:  (305) 577-3100
Facsimile:  (305) 374-7159
Email:   DavidJ.Cohen@weil.com

*Attorneys for Debtors
and Debtors in Possession*

LATHAM & WATKINS LLP
Ray C. Schrock (admitted *pro hac vice*)
Candace M. Arthur (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile:  (212) 751-4864
Email:   Ray.Schrock@lw.com
         Candace.Arthur@lw.com

*Attorneys for Debtors
and Debtors in Possession*

4

**Exhibit 4**

**Litigation Trust Tax and Other Matters**

### Litigation Trust Tax and Other Matters

1. **Tax Treatment.**  The Litigation Trust is intended to be treated for U.S. federal income tax purposes as a "liquidating trust" described in Treasury Regulation section 301.7701-4(d) that is a "grantor trust" for U.S. federal income tax purposes, with the holders of allowed FILO DIP Claims and allowed FILO Bridge Claims, in respect of their Class A-1 and Class A-2 interests in the Litigation Trust, and respective FILO Secured Parties providing Litigation Funding, in respect of their Class A-1 interests in the Litigation Trust, being treated as grantors.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an adverse determination by the IRS upon audit if not contested by the Litigation Trustee), all parties (including, without limitation, the Debtors, the Litigation Trustee, and the Litigation Trust beneficiaries) shall treat for U.S. federal income tax purposes the transfer of assets by the Debtors to the Litigation Trust as (a) the transfer of the portion of the assets to which the Class A-1 and Class A-2 interests in the Litigation Trust relate (in the case of Class A-1 interests, to the extent of the Secured Interim Advances and the Estate Funding) directly to the holders of allowed FILO DIP Claims, the holders of allowed FILO Bridge Claims, and the FILO Secured Parties that provided the Estate Funding (subject to any liabilities and obligations relating to those assets) in satisfaction of and in exchange for their claims and the Estate Funding, followed by (b) the transfer of such assets by such persons, and of the remaining Litigation Trust assets by the Debtors, to the Litigation Trust in exchange for beneficial interests in the Litigation Trust; provided that, if concurrent with the establishment of the Litigation Trust the Debtors have or will transfer their rights and obligations with respect to the Litigation Trust to a successor liquidating vehicle pursuant to a confirmed chapter 11 plan, the parties shall abide by the provisions of the chapter 11 plan relating thereto. Accordingly, absent definitive guidance to the contrary, the holders of the Class A-1 and Class A-2 interests in the Litigation Trust and the Debtors, as the holders of the Class B interests in the Litigation Trust, shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the assets of the Litigation Trust, subject to any chapter 11 plan provisions relating to the foregoing.

2. **Liquidation Purpose of the Litigation Trust; No Successor in Interest.**  The Litigation Trust shall be established for the primary purpose of liquidating and distributing the assets transferred to it, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust and reasonably necessary to conserve and protect the assets transferred to the Litigation Trust and provide for the orderly liquidation thereof.  Accordingly, the Litigation Trustee shall, in an expeditious but orderly manner, liquidate and convert to cash the Litigation Trust assets, make timely distributions to the beneficiaries of the Litigation Trust, as applicable, and not unduly prolong their duration.  The Litigation Trustee shall distribute at least annually to the Litigation Trust beneficiaries any cash on hand (including any amounts invested pending distribution) of the Litigation Trust, net of any amounts reserved in respect of disputed claims and any reserves established in the good faith discretion of the Litigation Trustee to provide for payment of any obligations or liabilities of the Litigation Trust, including any claims assumed by the Litigation Trust pursuant to any

chapter 11 plan and any costs or expenses of the Litigation Trust or Litigation Trustee and any taxes, or to maintain the value of any assets of the Litigation Trust. Notwithstanding anything herein or in the Litigation Trust Agreement to the contrary, the Litigation Trustee shall always act consistently with, and not contrary to, the purpose of the Litigation Trust as set forth herein.

3. **Cash Investments.**  The right and power of the Litigation Trustee to invest the assets of the Litigation Trust, the proceeds thereof, or any income earned by the Litigation Trust, shall be limited to the right and power that a liquidating trust, within the meaning of section 301.7701-4(d) of the Treasury Regulations, is permitted to hold, and to the investment guidelines of section 345 of the Bankruptcy Code.

4. **Tax Reporting and Tax Payments.**

(a) The Litigation Trustee shall file tax returns for the Litigation Trust treating the Litigation Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a) and in accordance with this Section 4.

(b) As soon as practicable after the Litigation Trust Establishment Date, the Debtors (or its designee), in consultation with the Litigation Trustee, shall make a good faith determination of the fair market value of the Litigation Trust assets, as of Litigation Trust Establishment Date.  The Debtors (or its designee) shall inform all parties of such valuation as relevant from time to time.  This valuation shall be used consistently by all parties for all U.S. federal income tax purposes.

(c) The Litigation Trust shall be responsible for payment, out of Litigation Trust assets, of any taxes imposed on the Litigation Trust or the Litigation Trust Assets.

(d) The Litigation Trustee may request an expedited determination of taxes of the Litigation Trust, under section 505(b) of the Bankruptcy Code, for all tax returns filed for, or on behalf of, the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

(e) The Litigation Trustee and the Debtors (and any successor liquidating vehicle) shall each cooperate with the other in connection with the preparation and filing of any tax returns, the provision of any required tax forms, and any other matter with respect to taxes, and shall make available to the other, as reasonably requested, any information or records relevant to the preparation or filing of any tax returns or forms or the defense of any audit or other tax proceeding.

(f) The treatment provided in this Exhibit, to the extent permitted by applicable law, shall also apply for state and local tax purposes and all parties shall report consistent therewith.