IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM, LLC, *et al.*, | § § § § | Case No. 24-90213 (CML) |
| | § | (Jointly Administered) |
| Debtors.[1] | § § § | |

**MOTION OF THE COMPASS PARTIES FOR ENTRY OF AN ORDER REQUIRING THE HSA BUYERS TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATING THE HSA ENFORCEMENT ORDER AND FOR SANCTIONS AND RELATED RELIEF**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

1

Pursuant to 11 U.S.C. § 105(a) and Federal Rules of Bankruptcy Procedure 9011, 9014 and 9020, Morrison Management Specialists, Inc. ("Morrison") and Compass Group USA, Inc. by and through its subsidiary Crothall Healthcare, Inc. ("Crothall", and together with Morrison, the "Compass Parties") hereby file this motion (the "Motion") for entry of an order, substantially in the form filed herewith (the "Proposed Order"), (i) requiring HSA St Joseph LLC ("HSA St Joseph") and Healthcare System of America-Florida LLC ("HSA Florida" and, together with HSA St Joseph, the "HSA Buyers") to show cause why the HSA Buyers should not be held in civil contempt for violating the HSA Enforcement Order (as defined herein); (ii) requiring the HSA Buyers to immediately pay all amounts due and owing to the Compass Parties; (iii) awarding monetary sanctions, including attorneys' fees and interest, against the HSA Buyers; and (iv) granting such additional and other relief as the Court deems appropriate.

## PRELIMINARY STATEMENT

1. Notwithstanding this Court's prior order requiring the HSA Buyers to immediately pay all amounts due and owing to the Compass Parties for services rendered in connection with the certain hospitals sold by the Debtors to the HSA Buyers, the HSA Buyers have failed to pay such obligations in full despite numerous extension and concessions by the Compass Parties. Currently, the HSA Buyers have only advised the Compass Parties that they "will pay off your remaining balance" without any discussions or information regarding when any such payment will be made. Such actions are in contravention of this Court's clear directions and order. Accordingly, the Compass Parties respectfully request that this Court order the HSA Parties to show cause why they should not be held in civil contempt for violating this Court's order, to pay all amounts due and owing to the Compass Parties immediately, and to pay monetary sanctions as a result of their contemptuous conduct.

**JURISDICTION AND VENUE**

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the HSA Sale Order and the HSA Enforcement Order (as defined below). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Court may enter a final order on the Motion consistent with Article III of the United States Constitution.[2] Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and other predicates for the relief sought herein are section 105(a) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), Bankruptcy Rules 9011, 9014 and 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and this Court's authority to enforce its orders.

**BACKGROUND**

4. On May 6, 2024, (the "Petition Date"), Steward Health Care System LLC ("Steward") and 166 of its affiliated debtors (collectively, the "Debtors") each commenced a voluntary case under chapter 11 of the Bankruptcy Code with this Court.

5. As of the Petition Date, Steward and Crothall were party to a certain Master Service Agreement, dated as of July 1, 2017 (as amended from time to time and including all statements of work attached thereto or entered into in connection therewith, and amendments thereto), pursuant to which Crothall provided certain patient transportation services and environmental services at numerous hospitals and other facilities operated by the Debtors in Florida, Massachusetts, Ohio and Texas. Also as of the Petition Date, Steward and Morrison were party to a certain Master Service

---

[2] The Compass Parties hereby confirm their consent to entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3

Agreement, dated as of October 1, 2018 (as amended from time to time and including all statements of work attached thereto), pursuant to which Morrison provided certain food and nutrition services at numerous hospitals operated by the Debtors in Florida.

6. As of the Petition Date, the Debtors owed (i) Crothall approximately $12.8 million and (ii) Morrison approximately $5.1 million for prepetition services rendered pursuant to the Master Service Agreements. None of these amounts were paid to Crothall or Morrison as a critical vendor or otherwise.

7. The Compass Parties continued to provide essential services to the Debtors post-petition, significantly assisting the Debtors to continue to operate, feed and care for their hospital patients, and successfully sell fourteen (14) of their hospitals located in Florida, Massachusetts, Ohio, and Texas. While the Debtors paid for a portion of these services, the Debtors still owed (i) Crothall approximately $4.8 million and (ii) Morrison approximately $1.5 million for post-petition services through the respective closing dates of the various sales of the Debtors' hospitals approved by this Court.

I. **The HSA Sale Order and HSA's Assumption of Liabilities**

8. On September 18, 2024, this Court entered the *Order (I) Authorizing and Approving (A) the Sale of St. Joseph Medical Center, Medical Center of Southeast Texas, and South Florida Hospitals Free and Clear of Liens, Claims, Encumbrances, and Interests, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (II) Granting Related Relief* [Doc. No. 3046] (the "HSA Sale Order").

9. Pursuant to the HSA Sale Order, the Court approved the Debtors' sale of various hospitals located in Florida (collectively, the "Florida Hospitals") to HSA Florida pursuant to that certain Bill of Sale, Assumption and Assignment Agreement (the "Florida BSAA"). The form of the Florida BSAA was approved by the HSA Sale Order and is attached thereto.

4

10. Pursuant to the HSA Sale Order, the Court also approved the Debtors' sale of St. Joseph Medical Center ("St. Joseph Medical Center" and, together with the Florida Hospitals, the "Hospitals") to HSA St Joseph pursuant to that certain Bill of Sale, Assumption and Assignment Agreement (the "St. Joseph BSAA" and, together with the Florida BSAA, the "BSAA Agreements"). The form of the St. Joseph BSAA was also approved by the HSA Sale Order and is attached thereto.

11. Upon information and belief, the sale of the Hospitals to the HSA Buyers closed effective October 30, 2024 at 11:59 p.m. (applicable local time).

12. Pursuant to section 1.3(a) of the Florida BSAA, HSA Florida assumed, and agreed to pay, perform, and discharge, when they become due and payable, certain liabilities of the Florida Sellers, including "all Liabilities arising out of the use, ownership or operation of the Business, the Purchased Assets or the Facilities first arising after" September 11, 2024 at 12:01 a.m. local time (the "Transition Time"). *See* Florida BSAA § 1.3(a).

13. Similarly, pursuant to section 1.3(a) of the St. Joseph BSAA, HSA St Joseph assumed, and agreed to pay, perform, and discharge, when they become due and payable, certain liabilities, including "all Liabilities arising out of the use, ownership or operation of the Business, the Purchased Assets or the Facilities first arising after the Transition Time." *See* St. Joseph BSAA § 1.3(a).

14. From and after the Transition Time and continuing after the closing of the sale of the Hospitals to the HSA Buyers, Crothall provided environmental services for which it had not been compensated as of the filing of the HSA Enforcement Motion (defined below) at (i) the Florida Hospitals in the total amount of $3,597,690.60, and (ii) St. Joseph Medical Center in the total amount of $1,242,751.83, for a grand total of $4,840,442.43. The amounts due for these services

5

constituted "Assumed Liabilities" (as defined in the respective BSAA Agreements) that were expressly assumed by the HSA Buyers under the respective BSAA Agreements and the HSA Sale Order or post-closing obligations for which the HSA Buyers are liable.[3]

15. Additionally. from and after the Transition Time and continuing after the closing of the sale of the Florida Hospitals to HSA Florida, Morrison provided food and nutrition services at the Florida Hospitals for which it had not been compensated as of the filing of the HSA Enforcement Motion in the total amount of $2,455,849.88. The amounts due for these services constitute "Assumed Liabilities" (as defined in the Florida BSAA) that were expressly assumed by HSA Florida under the Florida BSAA and the HSA Sale Order or post-closing obligations for which HSA Florida is liable.[4]

## II. The HSA Enforcement Motion and Order

16. After the entry of the HSA Sale Order and the closing, the Compass Parties repeatedly requested that the HSA Buyers comply with their obligations under the HSA Sale Order to pay the Compass Parties for the services provided to the HSA Buyers or expressly assumed by the HSA Buyers.

17. Due to the failure of the HSA Buyers to do comply with such obligations, on January 16, 2025, the Compass Parties filed the *Motion of Morrison Management Specialists, Inc. and Compass Group USA, Inc., by and through its Subsidiary Crothall Healthcare, Inc., for Entry of an Order Enforcing the HSA Sale Order and Compelling the HSA Buyers to Comply With Their Obligations Thereunder* [Docket No. 3731] (the "HSA Enforcement Motion").

---

[3] Nothing herein is intended, nor shall anything herein be construed, as a waiver of any administrative expense claims that Crothall holds against the Debtors.
[4] Nothing herein is intended, nor shall anything herein be construed, as a waiver of any administrative expense claims Morrison holds against the Debtors.

18.     On February 11, 2025, the Court entered its *Order Enforcing the HSA Sale Order and Compelling the HSA Buyers to Comply with Their Obligations Thereunder* [Docket No. 3945] (the "HSA Enforcement Order"). The HSA Enforcement Order provides, *inter alia*, that the HSA Buyers pay the Compass Parties a cumulative sum in the amount of $7,296,292.31 "by wire transfer, check or other method agreed to by the parties within five (5) business days after entry of this Order." *See* HSA Enforcement Order, ¶¶ 2-4. "). A true copy of the HSA Enforcement Order is attached hereto as **Exhibit A**.

### III.    The Settlement Agreement and the Default by the HSA Buyers

19.     Subsequent to the entry of the HSA Enforcement Order, the Compass Parties' counsel, Sills Cummis and Gross, PC ("Sills"), provided notice of the HSA Enforcement Order on behalf of the Compass Parties to the HSA Buyers' Regional Counsel, Asim Ghafoor ("Ghafoor"). A true copy of the A. Sherman of Sills Email to A. Ghafoor, dated February 12, 2025, is attached hereto as **Exhibit B**.

20.     Thereafter, Sills, on behalf of the Compass Parties, engaged in multiple communications with Ghafoor and Faisal Gill, Chief Legal Officer of the HSA Buyers, regarding payment of the amounts owed pursuant to the HSA Enforcement Order. Pursuant to those communications, on February 17, 2025, the Compass Parties and the HSA Buyers agreed to the following:

> Compass will agree to hold enforcement of the order compelling payment in abeyance pending receipt of payments as follows, time being of the essence:
>
> $1M – Due on Tuesday February 18, 2025
>
> $500K - Due by March 3, 2025
>
> ½ Remaining balance pursuant to Court order – Due by March 18
>
> ½ Remaining balance pursuant to Court order – Due by April 7

7

Case 24-90213   Document 5773   Filed in TXSB on 07/25/25   Page 8 of 17

> The pending Court order will remain unaffected unless and until all payments are made.

A true copy of the F. Gill Email to A. Sherman of Sills, dated February 17, 2025, is attached hereto as **Exhibit C**. This agreement is referred to herein as the "2/17/2025 Agreement".

21. After the entering into the 2/17/2025 Agreement, the Compass Parties and the HSA Buyers continued to communicate regarding the HSA Buyers' failure to make timely payments under the 2/17/2025 Agreement and the HSA Enforcement Order.

22. These failures culminated with the HSA Buyers' failure to make the required payment of one-half of the remaining balance pursuant to the 2/17/2025 Agreement and the HSA Enforcement Order by March 18, 2025 and the refusal of the HSA Buyers to respond to multiple messages from Michael Villani of Compass regarding the payment.

23. On March 21, 2025, Sills advised Gill that the amount of $2,232,674.05 due for the March 18, 2025 payment was delinquent and that:

> …If Compass does not receive a substantial payment today and clear communication about when any catch up payments will be made, we will have no choice but go back to the Bankruptcy Court to ask that HSA be held in contempt and to seek an award of all attorneys' fees and interest as well as immediate payment of entire remaining balance owed pursuant to the HSA Order.

A true copy of the J. Kramer of Sills Email to F. Gill, dated March 21, 2025, is attached hereto as **Exhibit D**.

24. In response, Gill advised that a wire was "sent yesterday that did not make the cutoff. You will receive it today." A true copy of the F. Gill to J. Kramer of Sills, dated March 21, 2025, is attached hereto as **Exhibit E**. However, the amount sent by wire to the Compass Parties was $500,000, which Sills, on behalf of the Compass Parties, advised Gill was more than $1.7 million short of the amount due and owing. Tue copies of the J. Kramer of Sills Emails to F. Gill, dated March 21, 2025 and March 24, 2025, are attached hereto as **Exhibit F** and as **Exhibit G**.

8

25. After multiple correspondence between the parties, Sills advised Gill that "[i]f HSA makes the $1 million payment and it is received by Compass this week as promised (preferably Friday morning or before), Compass will hold off on filing a motion for contempt and allow you to work through full payment by April 7." A true copy of the J. Kramer of Sills Email to F. Gill, dated March 25, 2025, is attached hereto as **Exhibit H**.

26. While an additional payment was made by the HSA Buyers, as of April 7, 2025, the remaining amount due and owing to the Compass Parties from the HSA Buyers was $2,965,348.09. A true copy of the M. Villani Email to F. Gill, dated April 8, 2025, is attached hereto as **Exhibit I**. Subsequently, Michael Villani, Crothall's CEO, attempted to obtain further information from Gill regarding the outstanding amounts due from the HSA Buyers to the Compass Parties pursuant to the HSA Enforcement Order. On April 11, 2025, Gill responded that he would "have a payment plan for [Villani] on Monday." A true copy of the F. Gill Email to M. Villani, dated April 11, 2025, is attached hereto as **Exhibit J**.

27. After the HSA Buyers failed to provide any information regarding a payment plan for the remaining amounts due under the HSA Enforcement Order, Villani continued to seek a response from Gill regarding the outstanding amounts. On April 17, 2025, Gill responded that … [w]e will pay off your remaining balance" without any further information the date or amounts of payment. A true copy of the F. Gill Email to M. Villani, dated April 17, 2025 is attached hereto as **Exhibit K**.

28. On April 19, 2025, Villani advised Gill that the Compass Parties "…are requesting that a Payment be made this week in the amount of $750K. Along with updated payment plan to get fully paid by Friday May 2nd." A true copy of the M. Villani Email to F. Gill, dated April 19, 2025, is attached hereto as **Exhibit L**.

29. On April 24, 2025, the HSA Buyers filed the *Emergency Motion of Healthcare Systems of America to Enforce the Global Settlement Order and Compel the Debtors to Comply With Its Obligation Thereunder* [Docket No. 4718] (the "HSA HDPP/LIP Motion") seeking entry of an order directing the Debtors to comply with a Global Settlement Order and cease asserting a right to receive certain HDPP funds being sent by the Florida Agency for Healthcare Administration ("AHCA"). HSA further requested that the Court direct ACHA to remit all relevant HDPP funds to HSA instead or that all funds be held in escrow if received by the Debtors. On May 8, 2024, the Debtors filed the *Debtors' (I) Objection to Healthcare Systems of America's Motion to Enforce and (ii) Emergency Cross-Motion to Enforce the Global Settlement Order, HSA Sale Order, and Bill Of Sale* [Docket No. 4842] (the "Debtors HDPP/LIP Cross-Motion"). Subsequent to multiple Court proceedings, the issues set forth in the HSA HDPP/LIP Motion and the Debtors HDPP/LIP Cross-Motion were resolved by the *Stipulation and Agreed Order Between Debtors and Healthcare Systems of America Resolving HDPP/LIP and QIF Funds Disputes* [Docket No. 5416] (the "HDPP/LIP Order") entered on July 9, 2025.[5]

30. Subsequent to the filing of the HSA HDPP/LIP Motion, on April 29, 2025, Villani advised Gill that the Compass Parties would "wait until after the hearing … to do anything further. With that being said we are expecting communication and an effort to pay us fully after that hearing." Gill responded that the HSA Buyers "are going to do our best to work with you on getting

---

[5] On July 21, 2024, subsequent to the entry of the HDPP/LIP Order, Bear Creek Strategic Real Assets Fund LP ("Bear Creek"), filed a motion seeking an amendment to the HDPP/LIP Order to require the payment of HSA's share of the HDPP/LIP funds to Bear Creek [Docket No. 5729] (the "Bear Creek Motion"). On July 23, 2025, Beak Creek filed its *Notice of Resolution Regarding Emergency Motion of Bear Creek Strategic Real Assets Fund LP for Entry of an Order Clarifying Stipulation and Agreed Order Between Debtors and Healthcare Systems of America Resolving HDPP/LIP and QIF Funds Disputes* [Docket No. 5752] advising the Court that Bear Creek and the HSA Buyers had reached a resolution with respect to the matters outlined in the Bear Creek Motion.

some payments out. We will present a payment plan as soon as possible. Let's chat after we are done with the hearing." True copies of emails between M. Villani and F. Gill, dated April 29, 2025 and April 30, 2025, are attached hereto as **Exhibit M**.

31. Thereafter, the Compass Parties continued to seek payment and further information from the HSA Buyers regarding payment. *See* true copies of the Emails Between M. Villani and F. Gill, dated May 16, 2025, attached hereto as **Exhibit N** (Villani: "…Do you have any update on payment and or process of recouping money owed from Steward.." Gill: "The hearing is today.").

32. While the HSA Buyers did make a payment on or about June 16, 2025, the HSA Buyers have failed to make any subsequent payments and failed to provide the Compass Parties with any direction on payment and no responses subsequent to June 27, 2025 despite multiple inquiries and requests for information and the resolution of the HDPP/LIP issues with the Debtors on July 9, 2025. *See* true copies of emails between M. Villani and F. Gill, dated May 21, 2025 to July 23, 2025, attached hereto as **Exhibit O**.

33. As of the date of this Motion, the HSA Buyers have failed to make payment to the Compass Parties of a sum in the amount of $2,715,348.09 under the HSA Enforcement Order and have failed to provide any information regarding a payment plan to fulfill their obligations.

34. The HSA Buyers' continued refusal to pay the amounts due and owing pursuant to the HSA Enforcement Order has caused the Compass Parties to incur additional, unnecessary fees and expenses. The Compass Parties attempted, in good faith, to convince the HSA Buyers to comply with the HSA Enforcement Order without this Court's involvement. The HSA Buyers refused to comply.

## **RELIEF REQUESTED**

35. By this Motion, the Compass Parties seek entry of the Proposed Order, substantially in the form filed herewith, ordering the HSA Buyers to show cause why their actions do not violate

11

the HSA Enforcement Order, and, in the absence of such showing, award compensatory monetary sanctions against the HSA Buyers, including reasonable attorneys' fees and interest.

## BASIS FOR RELIEF REQUESTED

**I.    The HSA Buyers Should Be Ordered to Show Cause Why Their Actions Are Not Violations of the HSA Enforcement Order.**

36.    The HSA Buyers' conduct is in direct violation of the Court's command. Pursuant to the HSA Enforcement Order, the HSA Buyers were directed to pay the Compass Parties a cumulative sum in the amount of $7,296,292.31 "by wire transfer, check or other method agreed to by the parties within five (5) business days after entry of this Order." *See* HSA Enforcement Order, ¶¶ 2-4.

37.    A bankruptcy court's " right to sanction those who flout th[e] Court's authority is both necessary and integral to th[e] Court's performance of its duties." *Schermerhorn v. Cenurytel, Inc. (In re SkyPort Global Comm's, Inc.)*, 2013 WL 4046397, at *1 (Bankr. S.D. Tex. Aug. 7, 2013), *aff'd*, 661 F. App'x 835 (5th Cir. 2016)). "Bankruptcy Code provisions, Bankruptcy Rules and court orders may not be violated without recourse." *In re Rodriguez*, 517 B.R. 724, 729 (Bankr. S.D. Tex. 2014). Thus, it is well established that bankruptcy courts possess civil contempt power. *In re White-Robinson*, 777 F.3d 792, 795 (5th Cir. 2015). Section 105(a) expressly authorizes bankruptcy courts to "issue any order . . . necessary or appropriate to carry out the provisions" of Title 11 or to take any action or make any "determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a); *see also Placid Refining Co. v. Terrebonne Fuel and Lube, Inc.* (*In re Terrebonne Fuel & Lube, Inc.*), 108 F.3d 609, 613 (5th Cir. 1997) (holding that a bankruptcy court has the power under section 105 to issue sanctions, including civil contempt proceedings, in order to carry out the provisions of the Bankruptcy Code).

38.     Civil contempt is "appropriate when a party fails to comply with a specific and definite court order." *Petroleos Mexicanos v. Crawford Enterprises, Inc*., 826 F.2d 392, 400 (5th Cir. 1987). "Civil contempt can serve two purposes, either coercing compliance with an order or compensating a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 263 (5th Cir. 2009) (citation omitted).

39.     Courts in this District have held that the test for a finding of contempt by a bankruptcy court set forth in the Supreme Court's decision in *Taggart v. Lorenzen*, 587 U.S. 554, 559-60 (2019) "applies broadly to orders entered in Chapter 11 proceedings . . . ." *In re Fieldwood Energy LLC*, No. 20-33948, 2024 WL 4173048, at *16 (Bankr. S.D. Tex. Sept. 12, 2024). Under *Taggart*, to establish civil contempt, there must be a showing by clear and convincing evidence that: (i) a court order was in effect; (ii) the order required certain conduct by the respondent; and (iii) the respondent failed to comply with the order. *See In re Pro. Fee Matters Concerning Jackson Walker L. Firm*, 663 B.R. 335, 345 (Bankr. S.D. Tex. 2024) (citing *Petroleos Mexicanos*, 826 F.2d at 401). *See also Fieldwood Energy*, 2024 WL 4173048, at *16. The standard is objective, but subjective intent is not irrelevant. *Id.* (citing *Taggart*, 587 U.S. at 561). However, willfulness on the part of the contemnor is not required. *Pro. Fee Matters Concerning Jackson Walker,* 663 B.R. at 345.

40.     The HSA Buyers' actions in failing to comply with the HSA Enforcement Order clearly and convincingly meet these elements. First, this Court's HSA Enforcement Order was entered on February 11, 2023 and became a final, non-appealable order on February 26, 2025. It is undoubtedly clear from the communications between the parties that the HSA Buyers had notice of the HSA Enforcement Order. *See* Ex. B. Second, the HSA Enforcement Order clearly and explicitly required HSA Buyers to pay certain amounts to the Compass Parties within five (5) business days of the entry of the HSA Enforcement Order. Third, the HSA Buyers, despite numerous extensions and

opportunities granted by the Compass Parties, have not paid the full amount required by the HSA Enforcement Order to the Compass Parties more than two months after the date set by this Court for payment. Undoubtedly, the HSA Buyers have failed to comply with the Court's direct order.

41.     The Court should, therefore, order that the HSA Buyers appear and show cause as to why the Court should not hold the HSA Buyers in civil contempt and should require the HSA Buyers to immediately pay all amounts due and owing to the Compass Parties pursuant to the HSA Enforcement Order.

**II.    The Compass Parties Request Interest, Attorneys' Fees and Costs for Prosecuting the HSA Buyers' Violations of the HSA Enforcement Order**

42.     If the HSA Buyers fail to show that they have not violated this Court's HSA Enforcement Order, the Compass Parties should be awarded monetary sanctions, including the award of attorneys' fees and interest, against the HSA Buyers to compensate the Compass Parties for the HSA Buyers' contemptible conduct.

43.     As recently recognized by the Court of Appeal for the Fifth Circuit, "civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." *Matter of Highland Capital Mgmt., L.P.*, 98 F.4th 170, 174 (5th Cir. 2024). The *Highland Cap. Mgmt.* Court further recognized:

> [C]ivil contempt sanctions may not have the primary purpose of punishing the contemnor or vindicating the authority of the court. Rather, they must be remedial, and for the benefit of the complainant.
>
> That means civil contempt sanctions must be calculated either to (1) coerce the contemnor into compliance with a court order or (2) compensate another party for the contemnors' violations. . . . . Contempt sanctions imposed for compensatory purposes are civil only if they are based upon evidence of complainants' actual loss.

*Id.* at 174–75 (citations and quotations omitted, alterations adopted). Compensatory attorneys' fees are an appropriate sanction here. *See Fieldwood Energy,* 2024 WL 4173048, at *17 (citing

14

*In re Eichor*, No. 20-35221, 2022 WL 4098948, at *8 (Bankr. S.D. Tex. Sept. 7, 2022), *aff'd*, 689 F. Supp. 3d 438 (S.D. Tex. 2023)). "Almost without exception it is within the discretion of the trial court to include, as an element of damages assessed against the defendant found guilty of civil contempt, the attorneys' fees incurred in the investigation and prosecution of the contempt proceedings." *Highland Capital Mgmt.*, 98 F.4th at 176 (quoting *In re Skyport Glob. Commc'ns*, 661 F. App'x 835, 841 (5th Cir. 2016)).

44. Here, an award to the Compass Parties of attorney's fees and costs and interest at the applicable post-judgement rate of 4.20% is an appropriate remedial sanction against the HSA Buyers for their months of failure to pay for the services provided under the HSA Sale Order and their continued willful noncompliance with the HSA Sale Order and the HSA Enforcement Order. Following the resolution of any contempt proceeding, the Compass Parties are prepared to submit a motion for attorneys' fees and costs to enable the Court to award attorneys' fees and costs in accordance with Bankruptcy Rule 7054, as made applicable pursuant to Bankruptcy Rules 9014 and 9020.

## RESERVATION OF RIGHTS

45. The Compass Parties reserve the right to amend or supplement this Motion prior to or at any hearing on the Motion, including, without limitation, to add any additional amounts for which the HSA Buyers are liable. The Compass Parties further reserve all of their rights, claims, defenses, and remedies against the HSA Parties under applicable law, including, without limitation, the right to amend, modify, or supplement this Motion.

## NOTICE

46. Notice of this Motion will be served on (i) HSA St Joseph LLC, (ii) Healthcare System of America-Florida LLC, (iii) counsel for the Debtors, (iv) counsel for the Committee, (v)

the Office of the United States Trustee for the Southern District of Texas, and (vi) any party entitled to notice pursuant to Bankruptcy Rule 2002.

## CONCLUSION

Despite this Court's clear directive, the HSA Buyers are in flagrant violation of the HSA Enforcement Order. For the reasons set forth herein, the Compass Parties respectfully request that the Court enter the Proposed Order granting this Motion and grant the Compass Parties such other and further relief as the Court deems just and proper.

Dated:  July 25, 2025                     Respectfully submitted,

**SILLS CUMMIS & GROSS P.C.**

*/s/ Andrew H. Sherman*
Andrew H. Sherman, Esq. (admitted *pro hac vice*)
Boris Mankovetskiy, Esq. (admitted *pro hac vice*)
Gregory A. Kopacz, Esq. (admitted pro hac vice)
Michael Savetsky, Esq. (admitted pro hac vice)
One Riverfront Plaza
Newark, NJ 07102
Telephone: (973) 643-7000
E-mail: asherman@sillscummis.com
           bmankovetskiy@sillscummis.com
           gkopacz@sillscummis.com
           msavetsky@sillscummis.com

-and-

**HOWLEY LAW PLLC**
Tom A. Howley
Texas Bar No. 24010115
Eric Terry
Texas Bar No. 00794729
700 Louisiana St., Suite 4545
Houston, Texas 77002
Telephone:  713-333-9125
Email: tom@howley-law.com
Email: eric@howley-law.com

*Attorneys for Morrison Management Specialists, Inc. and Compass Group USA, Inc. by and through its subsidiary Crothall Healthcare, Inc.*

16

**CERTIFICATE OF SERVICE**

I certify that on July 25, 2025, I caused a copy of the foregoing document to be served (a) by regular mail on (i) HSA St Joseph LLC, (ii) Healthcare System of America-Florida LLC, (iii) counsel for the Debtors, (iv) counsel for the Committee, (v) the Office of the United States Trustee for the Southern District of Texas, and (vi) any party entitled to notice pursuant to Bankruptcy Rule 2002, (b) by electronic transmission to all registered ECF users appearing in these cases and (c) by electronic mail to Faisal M. Gill of the HSA Buyers.

*/s/ Tom A. Howley*
Tom A. Howley