**<u>Exhibit A</u>**

**Executed Plan Trust Agreement**

*Execution Version*

## PLAN TRUST AGREEMENT

This Plan Trust Agreement (as it may be amended, modified, supplemented or restated from time to time, this "**Agreement**") dated as of August 27, 2025, is made and entered into by and among Steward Health Care System LLC and each of the entities listed on Schedule 1 hereto (each a "**Debtor**" and collectively, the "**Debtors**"), CSC Delaware Trust Company, solely in its capacity as Delaware resident trustee pursuant to section 11 hereof, and the Plan Trustee (as defined below) for the purpose of forming a trust and is executed in connection with and pursuant to the terms of the *Joint Chapter 11 Plan of Liquidation of Steward Health Care System LLC and Its Affiliated Debtors* (Docket No. 5492) (as it may be further amended, modified, supplemented or restated from time to time, the "**Plan**"), which Plan provides for, among other things, the establishment of the liquidation trust evidenced hereby (the "**Plan Trust**").[1]

## W I T N E S S E T H

WHEREAS, the Chapter 11 Cases were commenced by the Debtors filing voluntary chapter 11 petitions in the Bankruptcy Court on May 6, 2024;

WHEREAS, the Bankruptcy Court confirmed the Plan by order dated July 25, 2025 (Docket No. 5774) (the "**Confirmation Order**");

WHEREAS, this Agreement is entered into to effectuate the establishment of the Plan Trust as provided in the Plan and the Confirmation Order;

WHEREAS, pursuant to the Plan, the Plan Trust is established for the benefit of the holders of Allowed Retained FILO Claims, Allowed General Unsecured Claims, and Allowed PBGC Claims (each such holder a "**Plan Trust Beneficiary**" and together, the "**Plan Trust Beneficiaries**");

WHEREAS, the Plan Trust is established (i) for the purpose of holding, collecting, administering, distributing and liquidating the Plan Trust Assets for the benefit of the Plan Trust Beneficiaries in accordance with the terms of this Agreement, the Plan, and the Confirmation Order and (ii) to make distributions to holders of Allowed Claims (including Administrative Expense Claims and Priority Tax Claims) pursuant to the Plan;

WHEREAS, the Plan Trust shall have no objective or authority to continue or to engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Plan Trust as set forth in this Agreement and the Plan;

WHEREAS, the Plan Trust Beneficiaries are entitled to their applicable Plan Trust Interests (defined below);

WHEREAS, the Plan Trust is intended to qualify as a "liquidating trust" within the meaning of United States Treasury Regulation (hereinafter "**Treasury Regulation**") Section 301.7701-4(d) and, as such, as a "grantor trust" for U.S. federal income tax purposes, with the Plan Trust Beneficiaries treated as the grantors and owners of their respective share of the Plan Trust Assets and, by reason of the Class B Litigation Trust Interests, of the Litigation Trust Assets (other than to the extent any assets of the Plan Trust

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

allocable to, or held on account of, Disputed Claims are treated as a "disputed ownership fund" described in Treasury Regulation Section 1.468B-9 or other separate taxable entity);

WHEREAS, the Plan Trust is intended to be exempt from the requirements of the Investment Company Act of 1940;

WHEREAS, in addition to jurisdiction as provided herein as required by the Act, the Bankruptcy Court shall have jurisdiction over the Plan Trust, the Plan Trustee, and the Plan Trust Assets as provided herein and in the Plan.

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and in the Plan, the Debtors and the Plan Trustee agree as follows:

## SECTION 1.     DEFINITIONS AND INTERPRETATION.

### A.     Definitions.

All capitalized terms used in this Agreement not otherwise defined herein shall have the respective meanings ascribed to such terms in the Plan. The following capitalized terms have the meanings herein as described below:

1.1.     "*Act*" shall have the meaning set forth in <u>Section 2.1(a)</u> below.

1.2.     "*Agreement*" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.3.     "*Benefit Plans*" shall mean each (i) "employee benefit plan" as defined in section 3(3) of ERISA and (ii) other compensation or benefit plan, policy, agreement or arrangement, retirement plan, healthcare plan, disability plan, life and accidental death and dismemberment insurance plan, deferred compensation plan, severance program, retention plan and incentive plan, and all amendments and modifications thereto, in each case sponsored or maintained in the ordinary course by the Debtors for the benefit of any of their employees, consultants, or independent contractors as of the Plan Trust Establishment Date.

1.4.     "*Class B Litigation Trust Interests*" shall mean the "Class B interests" as set forth in the FILO Settlement Term Sheet.

1.5.     "*Class B Representative*" shall mean the representative of the Class B Litigation Trust Interests in accordance with the Litigation Trust Agreement, which shall initially be the Plan Administrator Committee.

1.6.     "*Committee Chairperson*" shall mean (i) initially, Monica Blacker and (ii) any successors or replacements duly appointed under the terms of this Agreement.

1.7.     "*Debtor(s)*" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.8.     "*Delaware Trustee*" shall have the meaning set forth in <u>Section 11.1(a)</u> below.

1.9.     "*Disputed Claims Reserve*" shall mean any Plan Trust Assets allocable to, or held on account of, Disputed Claims, including one or more reserve accounts to be funded, in consultation with the

Creditors' Committee, with Cash and/or proceeds of the Plan Trust Assets, as applicable, in accordance with the terms of the Plan, for Disputed Claims.

1.10.    "*Effectiveness*" shall have the meaning set forth in <u>Section 2.8</u> below.

1.11.    "*Employment Agreements*" means, as to an employee or independent contractor of the Debtors as of the Plan Trust Establishment Date, all employment and compensation agreements, consulting agreements, and contractor agreements, in each case, existing as of the Plan Trust Establishment Date, including any employment, services, separation, retention, incentive, bonus, or similar or related agreements, arrangements, plans, programs, policies or practices, in each case, as in effect as of the Plan Trust Establishment Date.

1.12.    "*FILO Plan Trust Interests*" shall mean the beneficial interests in the Plan Trust granted to the holders of Allowed Retained FILO Claims (as defined in the Plan), which beneficial interests shall entitle such holders to share in the FILO Plan Trust Recovery in accordance with the Plan.

1.13.    "*FILO Plan Trust Recovery*" shall mean 10% of the Plan Trust Recovery until Allowed Retained FILO Claims are paid in full, to be paid *pro rata* to the holders of the FILO Plan Trust Interests.

1.14.    "*FILO Settlement Term Sheet*" means the term sheet approved by the FILO Settlement Order and annexed to the Plan as <u>Exhibit C</u>.

1.15.    "*GUC Plan Trust Interests*" shall mean the beneficial interests in the Plan Trust granted to holders of Allowed General Unsecured Claims, which beneficial interests shall entitle such holders to share in the GUC Plan Trust Recovery in accordance with the Plan.

1.16.    "*GUC Plan Trust Recovery*" shall mean 90% of the Plan Trust Recovery until Allowed Retained FILO Claims are paid in full and 100% of the Plan Trust Recovery after Allowed Retained FILO Claims are paid in full, to be paid *pro rata* to the holders of the GUC Plan Trust Interests and PBGC Plan Trust Interests based on the aggregate amount of Allowed General Unsecured Claims and Allowed PBGC Claims.

1.17.    "*Indemnified Party*" shall the meaning set forth in <u>Section 6.3</u> below.

1.18.    "*Insurance Coverages*" shall have the meaning set forth in <u>Section 12.3</u> below.

1.19.    "*Litigation Trust*" shall mean that certain trust established in accordance with <u>Article VII</u> of the Plan and the FILO Settlement Order to hold the Litigation Trust Assets and make distributions to the Litigation Trust Beneficiaries in accordance with the Litigation Trust Agreement (each as defined in the Plan).

1.20.    "*PBGC Plan Trust Interests*" shall mean the beneficial interests in the Plan Trust granted to the PBGC, as the holder of the Allowed PBGC Claim (as defined in the Plan), which beneficial interests shall entitle the PBGC to share in the GUC Plan Trust Recovery in accordance with the Plan.

1.21.    "*Plan Trust*" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.22.    "*Plan Trust Assets*" shall mean, on the Plan Trust Establishment Date, all Retained Assets and any property acquired by the Debtors after the establishment of the Litigation Trust (including, for the

avoidance of doubt, the Class B Litigation Trust Interests and the Estate Funding), other than Intercompany Interests.

1.23.    "***Plan Trust Beneficiary***" shall have the meaning set forth above herein.

1.24.    "***Plan Trust Interests***" shall mean, collectively, the (i) the GUC Plan Trust Interests, (ii) the PBGC Plan Trust Interests, and (iii) the FILO Plan Trust Interests.

1.25.    "***Plan Trustee***" shall mean (i) initially, the Plan Administrator Committee, solely in its capacity as such, and (ii) any successors or replacements duly appointed under the terms of this Agreement.

1.26.    "***Plan***" shall have the meaning set forth in the introductory paragraph to this Agreement.

1.27.    "***Plan Administrator Committee***" shall mean (i) initially a committee comprised of Monica Blacker, Alan J. Carr, and William Transier, and (ii) any successors or replacements duly appointed under the terms of this Agreement.

1.28.    "***Retained Assets***" shall mean those assets that were retained by the Debtors following the establishment of the Litigation Trust, including (i) the Class B Litigation Trust Interests, (ii) Intercompany Interests, (iii) Intercompany Claims, (iv) the Physician Insurance Account (and the proceeds thereof), subject to Section 4.7 of this Agreement, (v) the Professional Fees Escrow Account (solely to the extent of the Debtors' interest in such account), (vi) the Expense Escrow Account (and the proceeds thereof), and (vii) any other asset identified as a "Retained Asset" in the FILO Settlement Term Sheet (each as defined in the Plan).

1.29.    "***Tax Code***" means the Internal Revenue Code of 1986, as amended from time to time.

1.30.    "***Transfer***" shall mean, with respect to a Plan Trust Interest, any transfer, sale, pledge, assignment, conveyance, gift, bequest, inheritance, grant, distribution, hypothecation or other disposition of or creation or a security interest in such Plan Trust Interest, whether voluntarily or by operation of law. "Transferor," "Transferee," and "Transferred" shall have correlative meanings.

1.31.    "***Wind Down***" shall mean the process to (i) sell, abandon, wind down, dissolve, liquidate, or distribute the Retained Assets and the Plan Trust Assets, (ii) resolve, terminate, or wind down any remaining liabilities of the Estates and the Plan Trust, (iii) reconcile all Claims, and (iv) administer the Plan and make Plan Distributions, in each case in accordance with the Plan.

1.32.    "***Wind Down Budget***" means a budget setting forth a preliminary allocation of costs and expenses to effectuate the Wind Down through the Wind Down Completion Date based on Cash made available for such purpose pursuant to the FILO Settlement Term Sheet, which budget (i) was prepared by the Debtors, in consultation with the Creditors' Committee, and (ii) after the Plan Trust Establishment Date, may be amended, modified, or supplemented from time to time by the Plan Trustee in its reasonable discretion.

1.33.    "***Wind Down Reserve***" shall mean a deposit account or other Cash reserve held by the Estate Representative, to be funded, including from the Estate Funding, in accordance with the Wind Down Budget with a cash reserve, which shall be available and used only to satisfy wind down costs of the Debtors, the Plan Administrator Committee, and the Plan Trust and shall not be subject to prepetition Liens or Liens or superpriority Claims granted under the DIP Orders, the Confirmation Order, or the Plan; provided that any funds remaining in the Wind Down Reserve on the Wind Down Completion Date shall be distributed by the Plan Trust as Plan Trust Net Proceeds pursuant to the Plan and the Plan Trust Agreement.

B.       **Plan Terms Control.**

In the case of any inconsistency between the terms of this Agreement and the terms of the Plan or the Confirmation Order, such terms of the Plan or the Confirmation Order are incorporated herein by reference and shall govern and control.  This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan or the Confirmation Order.

C.       **Interpretation.**

In this Agreement, except to the extent the context otherwise requires, (i) reference to any Section, subsection, clause, Schedule, Exhibit, preamble or recital, is to that such Section, Article, subsection, clause, Schedule, Exhibit, preamble or recital under this Agreement, (ii) the words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular section or article of this Agreement, (iii) references to any document or agreement, including this Agreement, shall be deemed to include references to such document or agreement as amended, supplemented, replaced or restated from time to time in accordance with its terms and subject to compliance with any requirements set forth therein, (iv) references to any law, statute, rule, regulation or form (including in the definition thereof) shall be deemed to include references to such statute, rule, regulation or form as amended, modified, supplemented or replaced from time to time (and, in the case of any statute, include any rules and regulations promulgated under such statute), and all references to any section of any statute, rule, regulation or form include any successor to such section, (v) references to any party hereto shall include its successors and permitted assigns, (vi) wherever the word "include," "includes" or "including" is used herein, it shall be deemed to be followed by the words "without limitation," and any list of examples following such term shall in no way restrict or limit the generality of the word or provision with respect to which such examples are provided, (vii) the words "shall" and "will" are used interchangeably throughout this Agreement, and the use of either connotes a mandatory requirement, (viii) the word "or" is not meant to be exclusive, and shall be interpreted as "and/or", (ix) references to "day" or "days" are references to calendar days, (x) the terms "Dollars" and "$" mean United States Dollars, (xi) whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine and (xii) references to any time periods herein that are initiated by the receipt of a notice shall be deemed not to include the date such notice is received in the calculation of such time period.

## SECTION 2.       ESTABLISHMENT, PURPOSE AND FUNDING OF LIQUIDATION TRUST

2.1.     *Creation and Name; Formation; Office.*

(a)       Upon the Effectiveness of this Agreement, the Plan Trust, which is referred to in the Plan (in section 1.1 thereof in the definition of "Plan Trust" and in certain other sections thereof), is hereby created.  It is the intention of the parties hereto that the trust created hereby constitutes a statutory trust under Chapter 38 of Title 12 of the Delaware Code, 12 Del. C. § 3801 et seq. (the "**Act**") and that this Agreement constitutes the governing instrument of the Plan Trust.  The trust created hereby shall be known as "SHC Plan Administrator Trust" in which name the Plan Trustee may conduct the affairs of the Plan Trust, make and execute contracts, and sue and be sued.  The Delaware Trustee and the Plan Trustee are hereby authorized and directed to execute and file a certificate of trust pursuant to the Act.

(b)       The principal office of the Plan Trust, and such additional offices as the Plan Trustee may determine to establish, shall be located at such place or places inside or outside the State of Delaware as the Plan Trustee may designate from time to time.

2.2.    *Purpose of Plan Trust.*

The Debtors and the Plan Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the Bankruptcy Code, hereby establish the Plan Trust for the purpose of collecting, administering, liquidating and distributing the assets transferred to it, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Plan Trust.  Accordingly, the Plan Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Plan Trust Assets, make timely distributions to the Plan Trust Beneficiaries, and not unduly prolong its duration.  Except as otherwise provided in the Plan, the Debtors shall have no liability with respect to the distribution or payment of any proceeds of the Plan Trust Assets to any of the Plan Trust Beneficiaries or other holders of Allowed Claims.  The activities of the Plan Trust shall be limited to those activities set forth in this Agreement and as otherwise contemplated by the Plan.

2.3.    *Assumption of Claims*

Upon the Plan Trust Establishment Date, the Plan Trust shall assume all Claims (including, for the avoidance of doubt, all Administrative Expense Claims (including Professional Fee Claims), Other Secured Claims, Priority Tax Claims, and Other Priority Claims) against the Debtors (other than the FILO DIP Claims, FILO Bridge Claims, and Claims for which Plan Trust Interests are distributed) with the same validity and priority as such Claims had against the Debtors immediately prior to the Plan Trust Establishment Date and there shall be no further recourse against the Debtors with respect to such Claims.

2.4.    *Transfer of Plan Trust Assets.*

(a)     On the Plan Trust Establishment Date, the Debtors shall transfer the Plan Trust Assets to the Plan Trust, and all such assets shall vest in the Plan Trust (free and clear of all Liens, Claims, encumbrances and Interests (legal, beneficial or otherwise)) on such date, to be administered by the Plan Trustee, in accordance with the Plan and this Agreement.  Each Debtor hereby grants, releases, assigns, conveys, transfers and delivers, on behalf of the Plan Trust Beneficiaries, all of the Plan Trust Assets owned, held, possessed or controlled by such Debtor to the Plan Trustee as of this Agreement's Effectiveness, in trust for the benefit of the Plan Trust Beneficiaries for the uses and purposes as specified in this Agreement and the Plan.  Except as otherwise provided in the Plan, none of the Debtors shall have any further obligations with respect to Claims or the distribution or payment of any proceeds of the Plan Trust Assets to any of the Plan Trust Beneficiaries upon the transfer of the Plan Trust Assets to the Plan Trustee in accordance with the Plan; *provided*, that the Debtors shall, from time to time until their dissolution pursuant to the terms of the Plan, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and the Debtors shall take or cause to be taken such further action, in each case as the Plan Trustee may reasonably deem necessary or appropriate, to vest or perfect in or confirm to the Plan Trustee title to and possession of the Plan Trust Assets.  None of the foregoing transfers to the Plan Trust or the Plan Trustee shall constitute a merger or consolidation of any of the Causes of Action that constitute Plan Trust Assets, each of which shall retain its separateness following the transfer for all purposes relevant to the prosecution thereof.  Further, for purposes of section 553 of the Bankruptcy Code, the transfer of the Plan Trust Assets to the Plan Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer.  Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code. For the avoidance of doubt, the Plan Trust Assets that vest in the Plan Trust shall include all Benefit Plans and Employment Agreements of the Debtors as of the Plan Trust Establishment Date.

(b)  To the extent that any Plan Trust Assets cannot be transferred to the Plan Trust, including because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by Section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Plan Trust Assets shall be deemed to have been retained by the Debtors or their successor and the Plan Trustee shall be deemed to have been designated as a representative of the Debtors or their successor pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Plan Trust Assets on the behalf of the Debtors or their successor.  Notwithstanding the foregoing, all proceeds of such Plan Trust Assets (net of all reasonable and documented costs and expenses (including the reasonable and documented fees and expenses of professionals)), if received by the Debtors, shall be transferred to the Plan Trust or the Plan Trustee on its behalf to be distributed in accordance with this Agreement and the terms of the Plan.

(c)  In no event shall any part of the Plan Trust Assets revert to or be distributed to any Debtor.

2.5.  *Privileges*.

(a)  All attorney-client privileges, work product protections, joint client privilege, mediation privilege, common interest or joint defense privilege or protection and all other privileges, immunities or protections from disclosure (the "**Privileges**") held by any of (1) any one or more of the Debtors or (2) any pre-petition or post-petition committee or subcommittee of the board of directors or board of managers or equivalent governing body of any of the Debtors and their predecessors (together the "**Privilege Transfer Parties**") related in any way to the Plan Trust Assets, the analysis or prosecution of any claims or the purpose of the Plan Trust (the "**Transferred Privileged Information**") are hereby transferred and assigned to, and vested in, the Plan Trust and its authorized representatives.  The Transferred Privileged Information shall include documents and information of all manner, whether oral, written or digital, and whether or not previously disclosed or discussed.  For the avoidance of doubt, the Privileges shall include any right or obligation to preserve or enforce or waive a privilege that arises from any joint defense, common interest or similar agreement involving any of the Privilege Transfer Parties.

(b)  The foregoing transfer and assignment shall vest the Privileges concerning the Transferred Privileged Information exclusively in the Plan Trust, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Plan Trust and the Plan Trust Beneficiaries; *provided*, *however*, that to the extent that any such Privileges or Transferred Privileged Information relates to both the Plan Trust Assets, on one hand, and any mater in which the and Litigation Trust has an interest, on the other, such Privileges and Transferred Privileged Information shall vest jointly in the Plan Trust and the Litigation Trust.  As relates to any Privileges or Transferred Privileged Information held jointly with the Litigation Trust, (i) with respect to litigations or proceedings concerning matters in which Debtors (or the Plan Trust) has an interest as a potential defendant, the Debtors (or the Plan Trust) shall maintain the Privileges and keep the Transferred Privileged Information confidential, and may only waive any Privileges and/or disclose in any such litigation or proceeding any or all of the Transferred Privileged Information upon receiving prior written consent from the Litigation Trust and (ii) with respect to litigations or proceedings concerning the Litigation Trust Assets where the Debtors (or the Plan Trust) has an interest as a potential defendant, the Litigation Trust shall maintain the Privileges and keep the Transferred Privileged Information confidential, and may only waive any Privileges and/or disclose in any such litigation or proceeding any or all of the Transferred Privileged Information upon receiving prior written consent from the Estate Representative.  The Litigation Trust and Debtors have agreed that they do not intend to provide a general waiver of all Privileges and that each such party will take commercially reasonable steps to avoid a general waiver of the Privileges.

(c)  Pursuant to, *inter alia*, Federal Rule of Evidence 502(d), no Privileges shall be waived by the transfer and assignment of the Privileges or the production of any Transferred Privileged Information to the Plan Trust or any of its respective employees, professionals or representatives, or by disclosure of

such Transferred Privileged Information between the Privilege Transfer Parties, on the one hand, and the Plan Trust, on the other hand, or any of their respective employees, professionals or representatives.

(d)     If a Privilege Transfer Party, the Plan Trust, any of their respective employees, professionals or representatives or any other person inadvertently produces or discloses Transferred Privileged Information to any third party, such production shall not be deemed to destroy any of the Privileges or be deemed a waiver of any confidentiality protections afforded to such Transferred Privileged Information.  In such circumstances, the disclosing party shall promptly upon discovery of the production notify the Plan Trust of the production and shall demand of all recipients of the inadvertently disclosed Transferred Privileged Information that they return or confirm the destruction of such materials.

2.6.     *Nature of Plan Trust*.

The Plan Trust is irrevocable, but this Agreement is subject to amendment and waiver as provided in this Agreement.  The Plan Trust is not intended to be, and shall not be deemed to be or treated as, a general partnership, limited partnership, limited liability partnership, joint venture, corporation, limited liability company, joint stock company or association, nor shall the Plan Trustee, or the Plan Trust Beneficiaries, or any of them, for any purpose be, or be deemed to be or treated in any way whatsoever to be, liable or responsible hereunder as partners or joint venturers.  The relationship of the Plan Trust Beneficiaries, on the one hand, to the Plan Trust and the Plan Trustee, on the other hand, shall not be deemed a principal or agency relationship, and their rights shall be limited to those conferred upon them by this Agreement, the Plan and the Confirmation Order.

2.7.     *Retention of Causes of Action and Reservation of Rights*.

Pursuant to section 12.11 of the Plan, the Plan Trustee, on behalf of the Debtors, shall have, retain, reserve, and be entitled to assert all claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses described in section 12.11 of the Plan as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

2.8.     *Effectiveness*.

The effectiveness of this Agreement ("**Effectiveness**" and the date of such Effectiveness, the "**Plan Trust Establishment Date**") (and the establishment of the Plan Trust hereunder) is subject to entry of the Confirmation Order and shall occur upon the execution of this Agreement and the filing of notice of such executed Agreement in the Bankruptcy Court.

# SECTION 3.     ADMINISTRATION OF THE PLAN TRUST

3.1.     *Rights, Powers and Privileges*.

In connection with the administration of the Plan Trust, except as set forth in this Agreement and the Plan, the Plan Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Plan Trust (including, without limitation, all powers, rights, and duties under applicable law).  In connection therewith, and subject to the limitations herein, the Plan Trustee shall have absolute discretion to pursue or not to pursue any and all Causes of Action that constitute Plan Trust Assets as the Plan Trustee determines are in the best interests of the Plan Trust Beneficiaries and consistent with the liquidating purpose of the Plan Trust and the terms of the Plan, and shall have no liability for the outcomes of their decisions except as provided herein.  The Plan Trust and the Plan Trustee (subject to <u>Section 7.2</u>

hereof), as applicable, shall have all of the rights and powers granted to the "Plan Trustee" in the Plan, including *inter alia*, without limitation, Article 6 of the Plan including, but not limited to, the power to:

(a)      perform all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan and effectuate the purpose of the Plan Trust;

(b)      establish, maintain and administer trust accounts, which shall be segregated to the extent appropriate in accordance with the Plan;

(c)      accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, abandon, supervise, prosecute, settle and protect, as applicable, the Plan Trust Assets in accordance with the Plan;

(d)      assert any of the Debtors' claims, Causes of Action, rights of setoff, or other legal or equitable defenses that (i) constitute Plan Trust Assets, (ii) may be applicable in pursuing or facilitate pursuit of any Causes of Action that are Plan Trust Assets, or (iii) are applicable to or facilitate disputing or objecting to Claims;

(e)      except to the extent any Claims have already been Allowed (including pursuant to the terms of the Plan), control and effectuate the Claims reconciliation process with respect to all Claims, including to object to, seek to subordinate, recharacterize, compromise or settle any and all such Claims against the Debtors, including the Disputed Claims, pursuant to the procedures prescribed in the Plan;

(f)      calculate and make distributions to holders of Allowed Claims in accordance with the Plan;

(g)      retain, compensate and employ professionals to represent the Plan Trust or the Plan Trustee, as applicable;

(h)      direct and control the Wind Down, liquidation, sale or abandonment of the Plan Trust Assets, including the Retained Assets, and any other remaining Assets of the Debtors under the Plan and in accordance with applicable law as necessary to maximize distributions to holders of Allowed Claims;

(i)      exercise such other powers as may be vested in the Plan Trust under this Agreement and the Plan, by order of the Bankruptcy Court, or as are deemed by the Debtors or the Plan Trustee to be necessary and proper to implement the provisions of this Agreement, the Plan, and effectuate the purpose of the Plan Trust;

(j)      dissolve the Plan Trust in accordance with the terms of this Agreement;

(k)      on behalf of each of the Debtors, carry out and implement all provisions of the Plan;

(l)      effectuate the Plan, including the prosecution and any other disposition of all litigation related to any appeals in respect to the approval and/or implementation of the Plan;

(m)      wind up the affairs of the Debtors, if and to the extent necessary, including taking any steps to dissolve, liquidate, bankrupt, or take other similar action with respect to each Debtor, including by terminating the corporate or organizational existence of each such Debtor;

(n)     exercise its business judgment to direct and control the Wind Down, including the liquidation, sale and/or abandonment of the Plan Trust Assets, including the Retained Assets, under this Plan and in accordance with applicable law as necessary to maximize distributions to holders of Allowed Claims;

(o)     marshal, market for sale, and wind down any of the Plan Trust Assets, including the Retained Assets;

(p)     serve as the initial director or manager, as applicable, and sole officer of each Debtor after the Plan Trust Establishment Date until such time as such Debtor is merged or dissolved, as applicable, and take any actions necessary to effectuate the terms of the Plan and the Plan Trust Agreement in such capacities;

(q)     take any actions necessary to (A) resolve all matters related to the Plan Trust Assets and (B) vest such assets in the Plan Trust;

(r)     open and maintain bank accounts on behalf of or in the name of the Plan Trust;

(s)     fund the Wind Down Reserve;

(t)     amend, modify, or supplement the Wind Down Budget;

(u)     determine, from time to time, whether the amounts available in the Wind Down Reserve are in excess of the amount necessary to satisfy the purpose for which such reserve was established and amend, modify, or supplement the Wind Down Budget accordingly.  If the Plan Trustee determines that a surplus exists in the Wind Down Reserve as of the date of such determination, the Plan Trustee may transfer such surplus amount to the Plan Trust for distribution in accordance with the Plan;

(v)     maintain the books and records and accounts of the Debtors or the Plan Trust;

(w)     reconcile Claims and calculate and make distributions to holders of Allowed Claims (including Administrative Expense Claims and Priority Tax Claims) in accordance with the Plan;

(x)     administer each Debtor's tax obligations, including filing tax returns and other reports (including any amended returns or claims for refund), paying tax obligations and representing the interest and account of each Debtor or its Estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding, audit or examination;

(y)     administer the Plan Trust's tax obligations, including filing tax returns and other reports (including any amended returns or claims for refund), paying tax obligations and representing the interest and account of the Plan Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding, audit or examination;

(z)     file, prosecute, settle or dispose of any and all objections to asserted Claims;

(aa)    administer the Medical Liability Claims Procedures;

(bb)    enter into and consummate any transactions for the purpose of dissolving the Debtors or non-Debtor subsidiaries;

(cc)    make distributions of the Plan Trust Assets and any proceeds thereof, in excess of any amounts necessary to pay the expenses of the Plan Trust, to holders of Allowed Claims, in accordance with the Plan;

(dd)    purchase and carry all insurance policies reasonably necessary or advisable to pay all associated insurance premiums and costs;

(ee)    subject to Section 4.2(a) hereof, invest Cash, as available, and any income earned thereon;

(ff)    take such actions as are necessary or appropriate to close any of the Chapter 11 Cases;

(gg)    hire, terminate, and compensate employees and independent contractors of the Trust, and administer the Benefit Plans and Employment Agreements;

(hh)    in accordance with section 7.5 of the Plan, act as the Class B Representative under the Litigation Trust Agreement; and

(ii)    take any other actions not inconsistent with the provisions hereof that the Plan Trustee deems reasonably necessary or desirable in connection with the foregoing functions.

The Plan Trustee may abandon any Plan Trust Assets (other than Cash and cash equivalents) that the Plan Trustee reasonably determines to be without material monetary value or burdensome to the Plan Trustee's administration of the Plan Trust, in each case after giving effect to the costs and expenses reasonably expected to liquidate such assets to Cash. The Plan Trust and Plan Trustee also may incur such expenses in operating the Plan Trust and performing the Plan Trustee's duties as the Plan Trustee deems appropriate. In its discretion, following the Plan Trust Establishment Date, the Plan Trustee may delegate any duties assigned to it to any other committee, entity or individual. The Plan Trustee shall have the same authority in respect of all taxes and tax returns of the Debtors as if the Plan Trustee were the Debtors. No implied duties or obligations shall be read into this Agreement, and to the extent that, at law or in equity, the Plan Trustee has duties and liabilities relating to the Plan Trust or the Plan Trust Beneficiary, it is hereby understood and agreed that such duties and liabilities are eliminated and replaced by the duties and liabilities of the Plan Trustee expressly set forth in this Agreement.

3.2.    *Agents and Professionals*.

The Plan Trustee may, but shall not be required to, consult with, select, retain and compensate (all in the Plan Trustee's sole discretion) any professionals, including but not limited to attorneys, accountants, real estate brokers, appraisers, valuation counselors, transfer agents, financial advisors, claims agents, custodians, investment advisors, or other parties (collectively, the "**Trust Professionals**") deemed by the Plan Trustee in its sole discretion to have qualifications necessary to assist in the proper administration of the Plan Trust or in order to assist the Plan Trustee in carrying out its duties hereunder. The Trust Professionals may include Force Ten Partners, LLC, in which the Committee Chairperson is a partner. Reasonable salaries, fees and expenses of such persons (including those of the Plan Trustee), including contingency fees, shall be paid out of the Plan Trust Assets. The Plan Trustee's retention of a professional retained by the Debtors or any other party in interest (including the Litigation Trust) during or after the Chapter 11 Cases shall not be deemed a conflict of interest or, to the extent such conflict of interest exists, such conflict is hereby waived by the Debtors, the Litigation Trust, the applicable party and the Plan Trust, as applicable. Subject to the Plan and this Agreement, the Plan Trustee may pay the salaries, fees, and expenses of such persons or firms out of the Plan Trust Assets, without Bankruptcy Court approval. The

Plan Trustee shall not be liable for any loss to the Debtors, the Estates, or the Plan Trust or any person interested therein, including Beneficiaries, by reason of any mistake or default of any such agent or consultant or Trust Professional.  The Plan Trustee may, but shall not be required to, consult with, select, retain and compensate (all in the Plan Trustee's sole discretion) any employees, consultants or independent contractors, including former employees, consultants, and independent contractors of Steward, deemed by the Plan Trustee in its sole discretion to have qualifications necessary to assist in the proper administration of the Plan Trust or in order to assist the Plan Trustee in carrying out its duties, including administration of the Transition Services Agreement with the Litigation Trust in furtherance of liquidation of the Litigation Trust Assets.  Upon the Plan Trust Establishment Date, the Plan Trust assumes all current employees and ordinary course employment relationships of the Debtors, along with any payroll, insurance, payroll deduction, salary and other payroll related costs of the Debtors, as in effect as of the Plan Trust Establishment Date.

      3.3.    *Creation and Maintenance of Trust Accounts.*

On and after the Plan Trust Establishment Date, appropriate trust accounts will be established and maintained in one or more federally insured domestic banks in the name of the Plan Trust.  Cash deposited in the trust accounts will be invested, held and used solely as provided in the Plan Trust Agreement.  The trust accounts will be funded, as applicable, by Cash proceeds obtained through the disposition of Plan Trust Assets or the proceeds of the Plan Trust or Class B Litigation Trust Interests.  Upon obtaining an order of the Bankruptcy Court authorizing final distribution or closure of the Chapter 11 Cases, any funds remaining in the trust accounts shall be distributed in accordance with this Plan and the Plan Trust Agreement, and the trust accounts may be closed.

      3.4.    *Investment and Safekeeping of Plan Trust Assets.*

(a)    All monies and other Plan Trust Assets received by the Plan Trustee shall, until distributed or paid as provided in this Agreement or the Plan (including satisfying certain Allowed Claims in accordance with the Plan), be held in the Plan Trust for the benefit of the Plan Trust Beneficiaries.  The Plan Trustee shall be under no obligation to generate or produce, or have any liability for, interest or other income on any monies received by the Plan Trust and held for distribution or payment to the Plan Trust Beneficiaries, except as such interest or income shall be actually received by the Plan Trustee.

(b)    Investments of any Cash of the Plan Trust, including any earnings thereon or proceeds therefrom, any Cash realized from the liquidation of the Plan Trust Assets, or any Cash that is remitted to the Plan Trust from any other Person, shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs; *provided, however*, that the right and power of the Plan Trustee to invest monies of the Plan Trust shall be limited to the right and power to invest such monies pending periodic distributions in accordance with the terms hereof and the Plan; *provided further*, that the investment powers of the Plan Trustee in this Agreement, other than those reasonably necessary to maintain the value of the Plan Trust Assets and the liquidating purpose of the Plan Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills, but, for the avoidance of doubt, shall not be required to comply with Bankruptcy Code Section 345(b); *provided, further, however*, that such investments must be investments that are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable guidelines (including Revenue Procedure 94-45), rulings, or other controlling authorities.

3.5.     *Limitations on and Rights of Plan Trustee*.

(a)     Other than as contemplated by the Plan or this Agreement, the Plan Trustee is not empowered to incur indebtedness.

(b)     The Plan Trustee shall have no liability in the event of the insolvency or failure of any institution in which he or she has invested any funds of the Plan Trust.

(c)     The Plan Trustee shall hold, collect, conserve, protect and administer the Plan Trust Assets in accordance with the provisions of this Agreement and the Plan, and pay and distribute amounts as set forth herein for the purposes set forth in this Agreement.  Any determination by the Plan Trustee as to what actions are in the best interests of the Plan Trust shall be determinative.

(d)     Notwithstanding anything herein to the contrary, the Plan Trustee shall not at any time: (i) enter into or engage in any trade or business that involves use of the Plan Trust Assets (other than the management and disposition of the Plan Trust Assets), and no part of the Plan Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed of by the Plan Trust in furtherance of any trade or business, (ii) except as provided in Section 3.4 hereof and below, reinvest any Plan Trust Assets, or (iii) take any action that would jeopardize treatment of the Plan Trust for U.S. federal income tax purposes as a "liquidating trust" that is a "grantor trust" of which the Plan Trust Beneficiaries are the grantors.

3.6.     *Bankruptcy Court Approval of Plan Trustee Actions*.

Except as provided in the Plan or otherwise specified in this Agreement, the Plan Trustee need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court.  Except as otherwise provided herein, the Plan Trustee shall exercise its business judgment for the benefit of the Plan Trust Beneficiaries in order to maximize the value of the Plan Trust Assets and distributions, consistent with the liquidating purpose of the Plan Trust and giving due regard to the cost, risk, and delay of any course of action.  Notwithstanding the foregoing, the Plan Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Plan Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Plan Trust with respect to any of the Plan Trust Assets, this Agreement, or the Plan, including the administration, distribution, or proposed sale of any of the Plan Trust Assets.  The Bankruptcy Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action upon motion by the Plan Trust.

3.7.     *Reliance by Plan Trustee*.

(a)     The Plan Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties;

(b)     The Plan Trustee may consult with any and all of the Plan Trustee's professionals and the Plan Trustee shall not be liable for any action taken or omitted to be taken by the Plan Trustee in good faith in accordance with the advice of such professionals; and

(c)     Persons dealing with the Plan Trustee shall look only to the Plan Trust Assets to satisfy any liability incurred by the Plan Trustee to such Person in carrying out the terms of this Agreement, and the Plan Trustee shall not have any personal obligation to satisfy any such liability.

## SECTION 4.        DISTRIBUTIONS FROM THE PLAN TRUST

4.1.    *Distributions*.

As and to the extent required by the Plan and this Agreement, the Plan Trustee shall make distributions from the Plan Trust Assets in accordance with the Plan, including <u>Article VIII</u> thereof, and this Agreement to (i) holders of certain Allowed Claims in accordance with the terms of the Plan, (ii) the Plan Trust Beneficiaries in respect of their Plan Trust Interests and (iii) holders of Covered Claims in accordance with <u>Section 4.7</u> hereof.

4.2.    *Timing of Distributions*

(a)    The Plan Trustee shall make distributions from the Plan Trust to the Plan Trust Beneficiaries at least annually all Available Cash of the Plan Trust (including any Cash received from the Debtors on the Plan Trust Establishment Date, and treating any permissible investment as Cash for purposes of this <u>Section 4.2</u>), except the Plan Trustee may, for the avoidance of doubt, retain such amounts:  (i) as are allocable to or retained on account of Disputed Claims in accordance with the Plan; (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Plan Trust Assets pending their Plan during the term of the Plan Trust; (iii) as are necessary to pay reasonably incurred or anticipated expenses (including, but not limited to, any taxes imposed on or payable by the Debtors or the Plan Trust or in respect of the Plan Trust Assets, the compensation and the reimbursement of reasonable, actual and necessary costs, fees (including attorneys' fees) and expenses of the Plan Trustee in connection with the performance of the Plan Trustee's duties in connection with this Agreement); (iv) to fund the Wind-Down Reserve; and (v) to satisfy all other liabilities incurred or assumed by the Plan Trust (or to which the Plan Trust Assets are otherwise subject) in accordance with the Plan and this Agreement.

(b)    Any payment or other distribution required to be made under the Plan on a day other than a Business Day shall be due on the next succeeding Business Day, but shall be deemed to have been made on the required date.  Any payment of Cash to be made pursuant to the Plan, subject to the terms hereof, shall be deemed made, if by electronic wire transfer, when the applicable electronic wire transfer is initiated by the sending bank or, if by check drawn on a domestic bank, when the earliest occurs of depositing in the mail for the entitled recipient, receipt by the entitled recipient, or delivery to a third party delivery service for delivery to the entitled recipient.

4.3.    *Payments Limited to Plan Trust Assets*.

All payments to be made by the Plan Trustee to or for the benefit of any Plan Trust Beneficiary shall be made only to the extent that the Plan Trustee, in their capacity as such, has sufficient funds or reserves to make such payments in accordance with this Agreement and the Plan.  Each Plan Trust Beneficiary shall have recourse only to the Plan Trust Assets for distributions under this Agreement and the Plan.

4.4.    *Fees and Expenses*.

(a)    Periodically and before approving distributions to or for the benefit of the Plan Trust Beneficiaries, subject to the limitations set forth herein and in the Plan, the Plan Trustee shall pay, establish, supplement or reduce the Wind Down Reserve, which shall be a reserve sufficient to fund the Plan Trust's activities, including operating and administrative expenses (including any taxes) of the Plan Trust.

(b)    The Plan Trustee shall satisfy any fees and expenses (including any taxes) of the Plan Trust with the Plan Trust Assets to the extent available.

(c)     The Plan Trust shall pay any and all fees that are required to be paid by the Plan Trust under the Plan.

4.5.     *Priority of Distributions*.

Any recovery by the Plan Trust on account of the Plan Trust Assets, including any funds received by the Plan Trust from the Litigation Trust, shall be applied in accordance with the Plan.

4.6.     *Right to Object to Claims*.

The Plan Trustee shall have the responsibility and authority for administering, disputing, compromising and settling or otherwise resolving and finalizing payments or other distributions under the Plan with respect to Claims, in accordance with, and all as more fully set forth in the Plan, including sections 6.1 and 9.2 thereof.

4.7.     *Physician Insurance Account*.

On the Plan Trust Establishment Date, the Physician Insurance Account shall vest in, and be transferred to, the Plan Trust.  The Plan Trustee shall assume responsibility for administering and paying the Covered Claims and Covered Amounts (each as defined in the FILO DIP Order) in accordance with the FILO DIP Order.  Upon payment in full of all Covered Amounts, any amounts remaining in the Physician Insurance Account shall be transferred to the Litigation Trust.

## SECTION 5.     PLAN TRUST BENEFICIARIES

5.1.     *Identification and Addresses of Plan Trust Beneficiaries*.

The Plan Trustee may deliver a notice to the Plan Trust Beneficiaries, which may include a form for each Plan Trust Beneficiary to complete in order to be properly registered as a Plan Trust Beneficiary and be eligible for distributions under the Plan Trust.  A Plan Trust Beneficiary may select an alternative mailing address by notifying the Plan Trustee in writing of such alternative distribution address.  Absent receipt of such notice, the Plan Trustee shall not be obligated to recognize any such change of address. Such notification shall be effective only upon receipt by the Plan Trustee.

5.2.     *Beneficial Interest Only*.

The ownership of a Plan Trust Interest shall not entitle any Plan Trust Beneficiary to any title in or to any of the Plan Trust Assets or to any right to call for a partition or division of such Plan Trust Assets or to require an accounting, except as specifically provided herein.  Except as expressly provided in this Agreement, a Plan Trust Beneficiary shall not have standing to direct or to seek to direct the Plan Trust or Plan Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Plan Trust Assets.

5.3.     *Ownership of Beneficial Interests Hereunder*.

Each Plan Trust Beneficiary shall own a beneficial interest in the Plan Trust (as represented by the Plan Trust Interest(s) issued to such Plan Trust Beneficiary consistent with the Plan).  The record holders of the Plan Trust Interests shall be recorded and set forth in a registry maintained by, or at the direction of, the Plan Trustee expressly for such purpose.

    5.4.    *Evidence of Beneficial Interest*.

Ownership of a Plan Trust Interest shall not be evidenced by any certificate, security, or receipt (unless otherwise determined by the Plan Trustee) or in any other form or manner whatsoever. Ownership of the Plan Trust Interests shall be maintained on books and records of the Plan Trust maintained by the Plan Trustee, which may be the official claims register maintained in the Chapter 11 Cases.

    5.5.    *No Right to Accounting*.

Except as set forth in Sections 7.4 and 7.9 of this Agreement, neither the Plan Trust Beneficiaries nor their successors, assigns, creditors, or any other Person shall have any right to an accounting by the Plan Trustee, and the Plan Trustee shall not be obligated to provide any accounting to any Person. Nothing in this Agreement is intended to require the Plan Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Plan Trust or as a condition for making any advance, payment, or distribution out of proceeds of Plan Trust Assets.

    5.6.    *No Standing*.

Except as expressly provided in this Agreement, if at all, a Plan Trust Beneficiary shall not have standing to direct or to seek to direct the Plan Trust or Plan Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Plan Trust Assets.

    5.7.    *Requirement of Undertaking*.

The Plan Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Plan Trustee for any action taken or omitted by it as Plan Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; provided, however, that the provisions of this Section 5.7 shall not apply to any suit by the Plan Trustee.

    5.8.    *Limitation on Transferability*.

It is understood and agreed that the Plan Trust Interests shall be non-transferable and non-assignable other than if transferred by will, intestate succession, or otherwise by operation of law. For purposes of distributions hereunder, any such Transfer by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Plan Trustee, and the Plan Trustee may continue to cause the Plan Trust to pay all amounts to or for the benefit of the assigning Plan Trust Beneficiaries until receipt of proper notification and proof of such Transfer. For purposes of distributions hereunder, the Plan Trustee may rely upon such proof without the requirement of any further investigation. Notwithstanding any other provision to the contrary, the Plan Trustee may disregard any purported Transfer of Claims by will, intestate succession or operation of law if sufficient necessary information (as reasonably determined by the Plan Trustee), including applicable tax-related information, is not provided by such purported transferee or assignee to the Plan Trustee.

    5.9.    *Limited Liability*.

No provision of this Agreement, the Plan or the Confirmation Order, and no mere enumeration herein of the rights or privileges of any Plan Trust Beneficiary, shall give rise to any liability of such Plan Trust Beneficiary solely in its capacity as such, whether such liability is asserted by any Debtor, by creditors, employees, or equity interest holders of any Debtor, or by any other Person. Plan Trust

Beneficiaries are deemed to receive the Plan Trust Interests in accordance with the provisions of this Agreement, the Plan and the Confirmation Order in exchange for their Allowed Claims, without further obligation or liability of any kind, but subject to the provisions of this Agreement.

## SECTION 6.     THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1.    *Parties Dealing with the Plan Trustee*.

In the absence of actual knowledge to the contrary, any Person dealing with the Plan Trust or the Plan Trustee shall be entitled to rely on the authority of the Plan Trustee or any of the Plan Trustee's agents to act in connection with the Plan Trust Assets. No Person that may deal with the Plan Trustee shall have any obligation to inquire into the validity or expediency or propriety of any transaction by the Plan Trustee or any agent of the Plan Trustee.

6.2.    *Limitation of Plan Trustee's Liability; Indemnification*.

(a)     The Plan Trustee, the Plan Administrator Committee members, and the Trust Professionals shall be entitled to the benefits of the limitation of liability and indemnification provisions as set forth in sections 6.7 and 6.8 of the Plan, respectively. The indemnification rights inuring to the benefit of the Plan Trustee pursuant to section 6.8 of the Plan and this Section 6.2 shall apply *mutatis mutandis* to the Trust Professionals.

(b)     The Plan Trustee and the Plan Administrator Committee members shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, in the Plan and Confirmation Order, and no other or further covenants or obligations shall be implied into this Agreement. The Plan Trustee and the Plan Administrator Committee members shall not be responsible in any manner whatsoever for the correctness of any recitals, statements, representations, or warranties herein or in any documents or instrument evidencing or otherwise constituting a part of the Plan Trust Assets. The Plan Trustee and the Plan Administrator Committee members make no representations as to the value of the Plan Trust Assets or any part thereof, nor as to the validity, execution, enforceability, legality, or sufficiency of this Agreement; and the Plan Trustee and the Plan Administrator Committee members shall incur no liability or responsibility with respect to any such matters.

(c)     The Plan Trustee, the Plan Administrator Committee members, the Trust Professionals, and the Plan Trustee's and the Plan Administrator Committee members' agents and representatives shall not in any way be liable for any acts or omissions to act except by reason of their bad faith, gross negligence, willful misconduct, reckless disregard of duty, self-dealing, fraud, or a criminal act in the performance of their duties under the Plan, Confirmation Order, or this Agreement, in each case as determined by a final non-appealable court order from a court of competent jurisdiction. The Plan Trust shall indemnify the Plan Trustee, the Plan Administrator Committee members, the Trust Professionals, and the Plan Trustee's and the Plan Administrator Committee members' agents and representatives and hold them harmless from and against any and all liabilities, expenses, claims, damages and losses incurred by them as a result of actions taken or omissions to act by them in such capacity or otherwise related to this Agreement, the Plan Trust, the Debtors' chapter 11 cases, or the Debtors' restructuring efforts. The Plan Trust shall indemnify and hold harmless any party who was, or is, a party, or is threatened to be made a party, to any pending or contemplated action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such party is or was the Plan Trustee, a Plan Administrator Committee member, a Trust Professional, and the Plan Trustee's agent or representative, against all costs, expenses, judgments, fines and amounts paid in settlement actually and reasonably incurred by such Entity in connection with such action, suit or proceeding, or the defense or settlement of any claim, issue or matter therein, to the fullest extent permitted by applicable law, except if such costs and expenses, judgments, fines or amounts paid in

settlement are found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted from the Plan Trustee's bad faith, gross negligence, reckless disregard of duty, criminal acts, willful misconduct, self-dealing, or fraud.  Costs or expenses incurred by any party entitled to the benefit of the provisions of this Section 6.2(c) in defending any such action, suit or proceeding may be paid by the Plan Trust incurred and advance of the institution or final disposition of such action, suit or proceeding, if authorized by the Plan Trustee, subject to providing an undertaking to repay all such advanced amounts if it is subsequently determined that such party is not entitled to indemnification under this Section 6.2.  To the fullest extent permitted by the Act, any dispute regarding such indemnification of the Plan Trustee, the Plan Administrator Committee members, the Trust Professionals, and the Plan Trustee's and the Plan Administrator Committee members' agents and representatives, shall be resolved only by the Bankruptcy Court, which shall retain jurisdiction over matters relating to the indemnification provided under this Section 6.2(c).  The Plan Trustee may in its discretion purchase and maintain insurance on behalf of any Entity who is or was a beneficiary of this provision.  Promptly after receipt by an indemnified party or parties (the "**Indemnified Party**") of notice of any claim, or notice of commencement of any action, suit, or proceeding by an Entity other than the Plan Trustee, in respect of which the Indemnified Party may seek indemnification from the Plan Trust pursuant to this Section 6.2(c), the Indemnified Party, if not the Plan Trustee, shall notify the Plan Trustee of such claim, action, suit or proceeding and shall thereafter promptly convey all further communications and information in respect thereof to the Plan Trustee.  If the Indemnified Party is the Plan Trustee, the Plan Trustee shall notify the Bankruptcy Court of such claim, action, suit, or proceeding and shall thereafter promptly convey all further communications and information in respect thereof to the Bankruptcy Court.  The Plan Trustee shall, if it so elects, have sole control at the expense of the Plan Trust over the contest, settlement, adjustment, or compromise of any claim, action, suit, or proceeding in respect of which this Section 6.2(c) requires that the Plan Trust indemnify the Indemnified Party.  If the Plan Trustee is the Indemnified Party, he shall obtain the written approval of Bankruptcy Court before settling, adjusting, or compromising any claim, action suit, or proceeding in respect of which this Section 6.2(c) requires that the Plan Trust indemnify the Indemnified Party.  The Indemnified Party shall cooperate with the reasonable requests of the Plan Trustee in connection with such contest, settlement, adjustment, or compromises, *provided that* (i) the Indemnified Party (if not the Plan Trustee) may, if it so elects, employ counsel at its own expense to assist in (but not control) the handling of such claim, action, suit, or proceeding, (ii) the Plan Trustee shall obtain the prior written approval of the Indemnified Party before entering into any settlement, adjustment, or compromise of such claim, action, suit, or proceeding, or ceasing to defend against such claim, action, suit, or proceeding, if pursuant thereto, or as a result thereof, injunction or other relief would be imposed upon the Indemnified Party, and (iii) the Indemnified Party shall obtain the prior written approval of the Plan Trustee, or, if the Plan Trustee is the Indemnified Party, the prior written approval of the Bankruptcy Court, before entering into any settlement, adjustment or compromise of such claim, action, suit, or proceeding, or ceasing to defend against such claim, action, suit, or proceeding, and no such settlement, adjustment, or compromise shall be binding on the Plan Trust without such approval.

(d)     Upon the appointment and acceptance of a successor Plan Trustee (or successor Plan Administrator Committee member) in accordance with Section 7.6 hereof, the predecessor Plan Trustee (or predecessor Plan Administrator Committee member) and any of its respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate brokers, transfer agents, managers, members, officers, partners, predecessors, principals, professional persons, representatives, affiliate, employer, and successors shall have no further liability or responsibility with respect thereto (other than liabilities arising prior to the cessation of its role as Plan Trustee).  A successor Plan Trustee (or successor Plan Administrator Committee member) shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor, and no successor Plan Trustee (or successor Plan Administrator Committee member) shall be in any way liable for the acts or omissions of any predecessor Plan Trustee (or predecessor Plan Administrator Committee member), unless a successor Plan Trustee (or successor Plan Administrator Committee member) expressly

assumes such responsibility.  A predecessor Plan Trustee (or predecessor Plan Administrator Committee member) shall have no liability for the acts or omissions of any immediate or subsequent successor Plan Trustee (or successor Plan Administrator Committee member) for any events or occurrences subsequent to the cessation of its role as Plan Trustee (or Plan Administrator Committee member).

(e)      Notwithstanding Section 1.B hereof, in the event of any inconsistencies between section 6 of this Agreement and sections 6.7 and 6.8 of the Plan, the terms of this Agreement shall control with respect to such provisions.

## SECTION 7.      SELECTION, REMOVAL AND COMPENSATION OF PLAN TRUSTEE

7.1.    *Appointment*.

The Plan Trustee has been selected pursuant to the provisions of the Plan.  The Plan Trustee and each member of the Plan Administrator Committee is a "United States person" within the meaning of section 7701(a)(30) of the Tax Code.  Except as otherwise provided in the Plan, the Plan Trustee (i) shall be the successor to and representative of the Estate of each of the Debtors within the meaning of section 1123(b)(3)(B) of the Bankruptcy Code and (ii) shall be the sole representative of, and shall act for, the Debtors, and shall assume any such outstanding responsibility of the Debtors under the Plan.  To effectuate an orderly and efficient transition of the administration, in accordance herewith, of the Plan Trust Assets from the Debtors to the Plan Trustee, the Plan Trustee may perform certain services in connection with its duties and obligations under this Agreement prior to the Plan Trust Establishment Date, and the authorization for such performance is ratified by the execution hereof to the extent not already authorized by the Plan or Confirmation Order.  The reasonable fees actually incurred by the Plan Trustee (or any professional retained by the Plan Trustee) for such services shall be deemed Plan Trust Expenses and paid pursuant to the terms of the Plan.

7.2.    *Plan Administrator Committee Decisions*.

(a)      In accordance with section 5.10 of the Plan, except with respect to any administrative tasks, any decision by the Plan Administrator Committee (and accordingly, the Plan Trustee) shall require the affirmative vote of at least two (2) of the three (3) members of the Plan Administrator Committee; provided that the Plan Administrator Committee shall not act without the consent of the Committee Chairperson. The Committee Chairperson shall have the authority to perform any administrative tasks without the vote of the Plan Administrator Committee.

(b)      Non-administrative decisions include, without limitation:

(i)      any transaction involving the sale, assignment, transfer or abandonment of any Plan Trust Asset(s) with a value greater than a threshold to be agreed by the Plan Administrator Committee shortly after the Confirmation Date, which threshold may be adjusted from time to time with the consent of the Plan Administrator Committee;

(ii)     subject to Section 3.2 hereof, any determination to retain Trust Professionals and any compensation arrangements for such Trust Professionals;

(iii)    determination of the amount and timing of any distribution to the Plan Trust Beneficiaries;

(iv)     any determination to initiate, settle or otherwise dispose of lawsuits or proceedings, including the exercise of any consent or objection rights as Class B Representative;

(v)     the management of preference and claim reconciliation matters;

(vi)     determine, resolve and otherwise adjudicate all contingent, unliquidated, and Disputed Claims in the Bankruptcy Court pursuant to Article VIII of the Plan with a value greater than a threshold to be agreed by the Plan Administrator Committee shortly after the Confirmation Date, which threshold may be adjusted from time to time with the consent of the Plan Administrator Committee;

(vii)     at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, pursuant to Article XII of the Plan;

(viii)     the dissolution of the Plan Trust;

(ix)     any decisions related to the Plan Trustee's powers, rights, and duties as Class B Representative under the Litigation Trust Agreement; and

(x)     submission to the Bankruptcy Court by the Plan Trustee of any question or questions regarding any specific action proposed to be taken by the Plan Trustee with respect to this Agreement, the Plan Trust or the Plan Trust Assets, including the administration and distribution of the Plan Trust Assets and the termination of the Plan Trust.

(c)     The Plan Administrator Committee shall hold regular meetings, in person or telephonically, at such time and at such place as shall, from time to time, be determined by the Plan Administrator Committee. A meeting of the Plan Administrator Committee may be called by any member of the Plan Administrator Committee. Unless waived by a majority of the Plan Administrator Committee members, written notice of the time and place of meetings of the Plan Administrator Committee shall be given to each member of the Plan Administrator Committee by electronic communication at least two (2) Business Days prior to such meeting.

(d)     A quorum for meetings of the Plan Administrator Committee shall consist of the Committee Chairperson and one (1) other member of the Plan Administrator Committee then serving, or (ii) in the event that any member or members of the Plan Administrator Committee are recused in accordance with the terms of this Agreement, a majority of the non-recused, voting members of the Plan Administrator Committee then serving.

(e)     Except as expressly provided herein, (i) if all three members of the Plan Administrator Committee are present at a duly called meeting, the affirmative vote of a majority of the Plan Administrator Committee present or (ii) if only two members of the Plan Administrator Committee are present at a duly called meeting, the affirmative vote of the Plan Administrator Committee present, shall be the act of the Plan Administrator Committee with respect to any matter that requires the determination, consent, approval or agreement of the Plan Trustee. Any or all of the members of the Plan Administrator Committee may participate in a meeting by, or conduct the meeting through the use of, conference telephone or similar

communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof.  Any member of the Plan Administrator Committee participating in a meeting by this means is deemed to be present in person at the meeting.  In all matters submitted to a vote of the Plan Administrator Committee, each Plan Administrator Committee member shall be entitled to cast one vote, which vote shall be cast personally by such Plan Administrator Committee member.

(f)     Prior to the taking of a vote on any matter or issue or the taking of any action with respect to any matter or issue, each member of the Plan Administrator Committee shall report to the Plan Administrator Committee any conflict of interest such member has or may have with respect to the matter or issue at hand and fully disclose the nature of such conflict or potential conflict (including, without limitation, disclosing any and all financial or other pecuniary interests that such member may have with respect to or in connection with such matter or issue).  A member who, with respect to a matter or issue, has or who may have a conflict of interest whereby such member's interests are adverse to the interests of the Plan Trust (i) shall be deemed to be a "Conflicted Member" who shall not be entitled to vote or take part in any action with respect to such matter or issue, (ii) the vote or action with respect to such matter or issue shall be undertaken only by members of the Plan Administrator Committee who are not Conflicted Members and (iii) notwithstanding anything contained herein to the contrary, the affirmative vote of only a majority of the members of the Plan Administrator Committee who are not Conflicted Members shall be required to approve of such matter or issue and the same shall be the act of the Plan Administrator Committee.

(g)     Any action required or permitted to be taken by the Plan Administrator Committee at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Plan Administrator Committee as evidenced by one or more written consents describing the action taken, signed by the Plan Administrator Committee and filed with the minutes or proceedings of the Plan Administrator Committee.

7.3.    *Term of Service.*

Each member of the Plan Administrator Committee and the Plan Trustee shall serve until the earlier to occur of (a) the termination of the Plan Trust in accordance with this Agreement and the Plan or (b) such member's (or the Plan Trustee's) death, dissolution, resignation or removal.

7.4.    *Removal of a Plan Administrator Committee Member or Plan Trustee.*

Any Person serving on the Plan Administrator Committee (or the Plan Trustee as a whole) may be removed and replaced by (i) an order of the Bankruptcy Court upon a showing of good cause or (ii) for good cause by a majority vote of the other members of the Plan Administrator Committee.  The removal shall be effective on the date specified in the order.  Notwithstanding the removal of a member of the Plan Administrator Committee pursuant to this Section 7.3, the rights of such member (or the Plan Trustee) under this Agreement with respect to acts or omissions occurring prior to the effectiveness of such removal will continue for the benefit of such member following the effectiveness of such removal.

7.5.    *Resignation of Plan Administrator Committee Member or Plan Trustee.*

A member of the Plan Administrator Committee (or the Plan Trustee) may resign at any time by giving prior written notice of their intention to do so to the Bankruptcy Court, which notice shall be at least fifteen (15) days unless the resignation is due to a disability or other incapacity.  The resignation of a Plan Administrator Committee member shall be effective on the date specified in the notice.  Without limiting

any other reporting or accounting obligations under the Plan or this Agreement, in the event that the Plan Trustee resigns (including if all members of the Plan Administrator Committee resign simultaneously), the resigning Plan Trustee shall file with the Bankruptcy Court a full and complete written accounting of monies and Plan Trust Assets received, disbursed, and held during the term of office of that Plan Trustee.  The resignation of the Plan Trustee shall be effective on the later to occur of: (a) the date specified in the notice; or (b) the appointment of a successor by the resigning Plan Trustee, the acceptance by such successor of such appointment and the approval of the successor's appointment by the Bankruptcy Court; *provided*, that a resignation of the Plan Trustee shall become effective on the date specified in the Plan Trustee's notice without the appointment of a successor Plan Trustee if (i) the Plan Trustee determines in its reasonable judgment that the Plan Trust lacks sufficient assets and financial resources for the Plan Trustee to complete the duties and powers assigned to the Plan Trustee under the Plan, the Confirmation Order, and/or this Agreement, or (ii) the Insurance Coverages (as defined below) terminate for any reason other than the Plan Trustee's unreasonable refusal to renew such Insurance Coverages, and provided further that if a successor Plan Trustee is not appointed or does not accept their appointment or if the appointment of a successor Plan Trustee has not been approved by the Bankruptcy Court within thirty (30) days following delivery of notice of resignation, the resigning Plan Trustee may petition the Bankruptcy Court for the appointment of a successor Plan Trustee.  Notwithstanding the resignation of the Plan Trustee pursuant to this <u>Section 7.5</u>, the rights of the resigning Plan Trustee under this Agreement (including but not limited to indemnification and limitations on liability) with respect to acts or omissions occurring prior to the effectiveness of such resignation will continue for the benefit of such resigning Plan Trustee following the effectiveness of such resignation.

7.6. *Appointment of Successor Plan Administrator Committee Member or Plan Trustee.*

(a)     The Plan Trustee may (subject to <u>Section 7.2</u> hereof), at any time, select a successor Plan Trustee or a successor Plan Administrator Committee member, subject to notice to the Bankruptcy Court, to fill the vacancy created upon the resignation, death or dissolution of the Plan Trustee or a Plan Administrator Committee member, *provided*, that, in the event the Plan Trustee or a Plan Administrator Committee member is removed for cause pursuant to <u>Section 7.4</u> hereof, or upon the unexpected resignation, death or dissolution of the Plan Trustee at the time of which no successor trustee has been selected pursuant to this <u>Section 7.5</u>, any such successor Plan Trustee or Plan Administrator Committee member shall be approved by the Bankruptcy Court after motion filed by counsel to the Plan Trust and requisite notice provided to parties in interest in the Debtors' chapter 11 case.  Any successor Plan Trustee shall be a "United States person" within the meaning of section 7701(a)(30) of the Tax Code.  Any successor Plan Trustee so appointed shall consent to and accept in writing the terms of this Agreement and agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Plan Trustee.  The FILO Parties will have the right to consent to any successor Plan Trustee that is not a chapter 7 trustee (including the terms of any such successor's engagement), such consent not to be unreasonably withheld, conditioned, or delayed.

(b)     In the event of the resignation, removal, or death of the Committee Chairperson, a new Committee Chairperson shall be appointed by a unanimous vote of the remaining Plan Administrator Committee members.  The appointment of a successor Committee Chairperson shall be evidenced by the filing with the Bankruptcy Court by the Plan Trustee of a notice of appointment, which notice shall include the name, address, and telephone number of the successor Committee Chairperson.

7.7. *Powers and Duties of Successor Plan Administrator Committee Member or Plan Trustee.*

A successor Plan Trustee, Plan Administrator Committee member, or Committee Chairperson shall have all the rights, privileges, powers, and duties of their predecessor under this Agreement and the Plan. Notwithstanding anything to the contrary herein, a removed or resigning Plan Trustee, Plan Administrator

Committee member, or Committee Chairperson shall, when requested in writing by their successor, execute and deliver an instrument or, instruments conveying and transferring to such successor under the Plan Trust all the estates, properties, rights, powers, and trusts of such predecessor.

7.8. *Plan Trust Continuance*.

The death, resignation, dissolution, incapacity or removal of the Plan Trustee or a Plan Administrator Committee member shall not terminate the Plan Trust or revoke any then-existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Plan Trustee or Plan Administrator Committee member.

7.9. *Compensation and Costs of Administration*.

Each Plan Administrator Committee member shall receive fair and reasonable compensation for each member's services on the terms set forth in each member's respective agreement, attached as Exhibit A, Exhibit B, and Exhibit C hereto which shall be charged against and paid out of the Plan Trust Assets without further Bankruptcy Court approval or order (subject to the limitations set forth in this Agreement and the Plan); *provided* that any modification to the compensation of a member of the Plan Administrator Committee compensation shall be made upon the unanimous consent of other members of the Plan Administrator Committee and the Creditors' Committee.  All costs, expenses, and obligations, including filing fees, incurred by the Plan Trustee or Plan Administrator Committee member (or Trust Professionals who may be employed by the Plan Trustee in administering the Plan Trust, in carrying out their responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid from the applicable Plan Trust Assets prior to any distribution to the Plan Trust Beneficiaries without further Bankruptcy Court approval or order (subject to the limitations set forth in this Agreement and the Plan).  If the cash in the Plan Trust shall be insufficient to enable payment of any such amounts, then the Plan Trustee is hereby authorized to reduce to cash that portion of the Plan Trust Assets as necessary to effect such payment, subject to the terms of the Plan.

7.10. *Periodic Reporting*.

The Plan Trustee on behalf of the Plan Trust shall, as soon as practicable after the end of at least each six (6) months and upon termination of the Plan Trust, provide or make available a written report and account to the holders of Plan Trust Interests, which report and account sets forth (i) the assets and liabilities of the Plan Trust at the end of each such calendar year and upon termination and the receipts and disbursements of the Plan Trust for such calendar year or period, and (ii) changes in the Plan Trust Assets and actions taken by the Plan Trustee in the performance of its duties under the Plan or the Agreement that the Plan Trustee determines in its discretion may be relevant to holders of Plan Trust Interests, such as material changes or actions that, in the opinion of the Plan Trustee, may have a material effect on the Plan Trust Assets that were not previously reported; *provided, however*, that if the Plan Trustee determines that the expense of such reporting is prohibitive or that such reporting is otherwise not in the best interests of the Plan Trust or the Plan Trust Beneficiaries for any reason, then the frequency and means of reporting may be altered by the Plan Trustee; *provided, further* that the frequency of such reporting shall be no less than annually.  The Plan Trustee on behalf of the Plan Trust may provide or make available to holders of Plan Trust Interests similar reports for such interim periods during the calendar year as the Plan Trustee deems advisable.  Such reports may be provided or made available to the holders of Plan Trust Interests, in the discretion of the Plan Trustee, by any reasonable means, including U.S. mail, electronic transmission, display on IntraLinks or a similar virtual data room to which holders shall have access, filing with the Bankruptcy Court, publication to a publicly-available website or by press release distributed via a generally recognized business news service.

7.11. *Confidentiality*.

Except as required in the performance of their duties, the Plan Trustee (and each Plan Administrator Committee member) shall, while serving as Plan Trustee or Plan Administrator Committee member under this Agreement, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Person to which any of the Plan Trust Assets relate or of which he has become aware in their capacity as Plan Trustee or Plan Administrator Committee member.  Notwithstanding the foregoing, the Plan Trustee may disclose information in connection with executing its duties hereunder to the Trust Professionals, employees, officers, directors and agents of Force Ten Partners, LLC and as required or requested pursuant to law, legal process or regulation.

## SECTION 8.      MAINTENANCE OF RECORDS

During the term of the Plan Trust, the Plan Trustee may destroy business records in the Plan Trustee's possession as the Plan Trustee deems appropriate provided that, absent express Bankruptcy Court approval to do otherwise, the Plan Trustee shall maintain books and records containing a description of all property from time to time constituting the Plan Trust Assets and an accounting of all receipts and disbursements until at least six (6) years after the final report to the Bankruptcy Court has been rendered by the Plan Trustee.  At the Plan Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after six (6) years from the completion and winding up of the affairs of the Plan Trust (except to the extent such records and documents are necessary to be held longer to fulfill the Plan Trustee's obligations pursuant to this Agreement).  The Plan Trustee may estimate and include, as part of the Plan Trustee's compensation, a reasonable sum to be used for the purposes of maintaining, accessing and destroying records during the term of the Plan Trust and for three (3) or more years thereafter, as applicable, which costs shall be payable from the Plan Trust Assets.

## SECTION 9.      DURATION OF PLAN TRUST

9.1. *Duration*.

This Agreement and the establishment of the Plan Trust shall be effective on the Plan Trust Establishment Date.  Thereupon, this Agreement shall remain and continue in full force and effect until the Plan Trust is terminated in accordance with the provisions of this Agreement.

9.2. *Dissolution of the Plan Trust*.

The Plan Trust shall be dissolved at such time as:

(a)      upon (i) the payment of all costs, expenses and obligations incurred in connection with administering the Plan Trust, (ii) the Distribution of all Plan Trust Assets, and (iii) the completion of all responsibilities of the Plan Trust (or the Plan Trustee on its behalf), each as set forth in, and in accordance with, the provisions of the Plan, the Confirmation Order and this Agreement;

(b)      if the Plan Trust has not been previously terminated pursuant to this Agreement, (i) on the fifth anniversary of the Plan Trust Establishment Date (unless the Plan Trust term has been extended in accordance with this section), or (ii) in the event the Plan Trustee determines that the pursuit of additional actions on behalf of the Plan Trust is not likely to yield sufficient additional proceeds to justify further pursuit of such actions, the Plan Trust shall, after payment of all costs, expenses and obligations incurred in connection with administering the Plan Trust and the Debtors' chapter 11 cases, distribute all of the Plan Trust Assets to the Plan Trust Beneficiaries in accordance with the Plan, and immediately thereafter the Plan Trust shall dissolve and terminate and the Plan Trustee shall have no further responsibility in

connection therewith except to the limited extent set forth in this Agreement. In no event shall the Plan Trust be dissolved later than five (5) years from the Plan Trust Establishment Date unless the Bankruptcy Court, upon motion made within the six (6) month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made within the six (6) month period before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Plan Trustee that any further extension would not adversely affect the status of the Plan Trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Plan Trust Assets, including all responsibilities of the Plan Trust (or the Plan Trustee on its behalf) as set forth in, and in accordance with, the provisions of the Plan, the Confirmation Order and this Agreement. If at any time the Plan Trustee determines, in reliance upon such Trust Professionals as the Plan Trustee may retain, that the expense of administering the Plan Trust so as to make a final distribution to the Plan Trust Beneficiaries is likely to exceed the value of the assets remaining in the Plan Trust, the Plan Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve the Plan Trust, (ii) donate any balance to a charitable organization (A) of the type described in section 501(c)(3) of the Tax Code, (B) exempt from U.S. federal income tax under section 501(a) of the Tax Code, (C) that is not a "private foundation," as defined in section 509(a) of the Tax Code, and (D) that is unrelated to the Estate Representative, the Plan Trust, and any insider of the Plan Trustee, and (iii) dissolve the Plan Trust. Upon the dissolution of the Plan Trust and completion of the winding up of the Plan Trust's affairs, a Certificate of Cancellation canceling the Certificate of Trust of the Plan Trust shall be executed by the Plan Trustee and filed with the Delaware State Office. The Plan Trustee shall provide written notice of such filing to the Delaware Trustee promptly following such filing.

9.3.     *No Termination by Plan Trust Beneficiaries*.

The Plan Trust may not be terminated at any time by the Plan Trust Beneficiaries or holders of claims against the Plan Trust.

9.4.     *Continuance of Plan Trust for Winding Up*.

After the dissolution of the Plan Trust and for the purpose of liquidation and winding up the affairs of the Plan Trust, the Plan Trustee shall continue to act as such until their duties have been fully performed, including such post-distribution tasks as necessary to wind up the affairs of the Plan Trust. Subject to the provisions of Section 8 hereof, after the termination of the Plan Trust, the Plan Trustee, for a time, shall retain or cause to be retained certain books, records, Plan Trust Beneficiary lists, and certificates and other documents and files that shall have been delivered to or created by the Plan Trustee. Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Plan Trust, final Distribution of the Plan Trust and termination of the Plan Trust, the Plan Trustee shall have no further duties or obligations hereunder.

## SECTION 10.     TAX MATTERS

10.1.     *Plan Trustee's Tax Power for Debtors*.

(a)     For all taxable periods, the Plan Trustee shall have full and exclusive authority and responsibility in respect of all taxes and tax returns of the Debtors (including as the common parent or other agent of any consolidated, combined, unitary or similar tax group of which any Debtor was the agent and as the partnership representative (or any similar capacity) of any Debtor that is or was a partnership for U.S. federal or applicable state or local income tax purposes) to the same extent as if the Plan Trustee were the Debtors. Without limiting the foregoing, each of the Debtors shall execute, on the Plan Trust Establishment Date, a power of attorney authorizing the Plan Trustee to correspond with any tax authority on behalf of

such Debtor and to sign, collect, negotiate, settle, and administer tax payments and tax returns. In furtherance of the transfer of the Plan Trust Assets to the Plan Trust on the Plan Trust Establishment Date, the Plan Trust shall be entitled to all tax refunds of the Debtors and shall bear responsibility for all tax liabilities of the Debtors for any taxable period (to the extent not discharged by the Plan).

(b)     On or following the Plan Trust Establishment Date, the Plan Trustee shall prepare and file (or cause to be prepared and filed), on behalf of the Debtors, all tax returns and other reports required to be filed or that the Plan Trustee otherwise deems appropriate, including the filing of amended tax returns or requests for refunds for any taxable period.

10.2.   *Liquidating Trust Status; Ownership of Plan Trust Assets*.

(a)     For U.S. federal income tax purposes (and to the extent applicable, for state and local income tax purposes), the Plan Trust is intended to be treated as a "liquidating trust" under Treasury Regulations section 301.7701-4(d) and thus, as a grantor trust pursuant to sections 671-677 of the Tax Code (except to the extent any assets allocable to, or held on account of, Disputed Claims are treated as a "disputed ownership fund" within the meaning of Treasury Regulations section 1.468B-1 *et seq.* or other separate taxable entity). The Plan Trust shall at all times be administered so as to constitute a domestic trust for U.S. federal income tax purposes.

(b)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an adverse determination by the IRS upon audit if not contested by the Plan Trustee), all parties (including, without limitation, the Debtors, the Plan Trustee, and the Plan Trust Beneficiaries) shall treat for U.S. federal income tax purposes the transfer of assets by the Debtors to the Plan Trust (including the Class B Litigation Trust Interests) as (i) the transfer of such assets and, by reason of the transfer of the Class B Litigation Trust Interests, a respective portion of the underlying assets of the Litigation Trust (in each case, subject to any liabilities and obligations relating to those assets) by the Debtors directly to the holders of Allowed Claims entitled to receive Plan Trust Interests in satisfaction of their Claims, other than to the extent any assets allocable to, or held on account of, Disputed Claims are treated as a "disputed ownership fund" or other separate taxable entity, followed by (ii) the transfer of such assets (subject to such liabilities and obligations) by such holders to the Plan Trust in exchange for the beneficial interests in the Plan Trust. Accordingly, the Plan Trust Beneficiaries shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of Plan Trust Assets and, by reason of the Plan Trust's beneficial interest in the Litigation Trust, of Litigation Trust Assets (in each case, other than to the extent any such assets allocable to, or held on account of, Disputed Claims are treated as a disputed ownership fund or other separate taxable entity).

(c)     The tax treatment provided in this Section 10, to the extent permitted by applicable law, shall also apply for state and local income tax purposes and all parties shall report consistent therewith.

10.3.   *Tax Reporting; Valuation*.

(a)     The Plan Trustee shall file tax returns for the Plan Trust treating the Plan Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 10. The Plan Trustee also shall annually send to each holder of a Plan Trust Interest a separate statement regarding the receipts and expenditures of the Plan Trust as relevant for U.S. federal income tax purposes and shall instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns. The Plan Trustee shall also file (or cause to be filed) any other statement, return or disclosure relating to the Plan Trust that is required by any governmental unit.

26

(b)     As soon as reasonably practicable after Plan Trust Assets are transferred to the Plan Trust, the Plan Trustee shall make a good faith determination of the fair market value of the Plan Trust Assets as of the Plan Trust Establishment Date. The Plan Trustee shall inform, in writing, all parties (including the Plan Trust Beneficiaries) of such valuation, as relevant, from time to time.   In connection with the preparation of the valuation contemplated hereby and by the Plan, the Plan Trustee shall be entitled to retain such professionals and advisors as the Plan Trustee determines to be appropriate or necessary, and the Plan Trustee shall take such other actions in connection therewith as it determines to be appropriate or necessary. Such valuation shall be used consistently by all parties for all U.S. federal income tax purposes, including for determining tax basis and gain or loss.

(c)     Allocations of Plan Trust taxable income among the Plan Trust Beneficiaries (other than taxable income allocable to any assets treated as held by a disputed ownership fund or other separate taxable entity with respect to Disputed Claims) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Plan Trust had distributed all its assets (valued at their tax book value, and other than assets treated as held by a disputed ownership fund or other separate taxable entity with respect to Disputed Claims) to the holders of the Plan Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Plan Trust.   Similarly, taxable loss of the Plan Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Plan Trust Assets.   The tax book value of the Plan Trust Assets for purposes of this Section 10.3(c) shall equal their fair market value on the Plan Trust Establishment Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

10.4.   *Tax Treatment of Disputed Claims Reserve.*

(a)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Plan Trustee of a private letter ruling if the Plan Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Plan Trustee), the Plan Trustee may elect to treat any Plan Trust Assets allocable to, or held on account of, any Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 or other separate taxable entity, in which case the Plan Trustee shall file such tax returns and pay such taxes as may be required consistent with such treatment and, to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made (or all or any portion of the Plan Trust Assets allocable to, or held on account of, Disputed Claims is otherwise treated as a separate taxable entity), all parties (including the Plan Trustee and the Plan Trust Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing.

(b)     The Plan Trustee shall be responsible for payment, out of the Plan Trust Assets, of any taxes imposed on the Plan Trust or its assets, including any Disputed Claims Reserve.   More particularly, any taxes imposed on any Disputed Claims Reserve or its assets will be paid out of the assets of the Disputed Claims Reserve (including any Plan Trust Assets allocable to, or held on account of, Disputed Claims), and netted against any subsequent distributions in respect of the allowance or disallowance of such Claims.   In the event, and to the extent, any Cash in any Disputed Claims Reserve is insufficient to pay the portion of any taxes attributable to taxable income arising from assets of the Disputed Claims Reserve (including any income that may arise upon an actual or constructive distribution of the assets of the reserve in respect of the resolution of Disputed Claims), assets of the Disputed Claims Reserve (including those otherwise distributable) may be sold to pay such taxes.

10.5.    *Prompt Determination of Taxes*.

The Plan Trustee may request an expedited determination of taxes of the Plan Trust (including, to the extent any assets allocable to, or held on account of, Disputed Claims are treated as a disputed ownership fund or other separate taxable entity in relation to the Plan Trust, taxes of such fund or other separate taxable entity) or the Debtors under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Plan Trust (or any such disputed ownership fund or other separate taxable entity) or the Debtors for all taxable periods through the dissolution of the Plan Trust and for all applicable taxable periods of the Debtors.

10.6.    *Tax Withholding by Plan Trustee*.

(a)     The Plan Trustee may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or distribution (or income allocable) to the holders of Plan Trust Interests.  If the Plan Trustee is required to withhold any amount with respect to a Plan Trust Beneficiary pursuant to the Tax Code or any provision of any foreign, state or local tax law and there are insufficient distributions to such Plan Trust Beneficiary available to satisfy such withholding, the Plan Trustee may pay such withholding out of Plan Trust Assets. All such amounts withheld and paid (or paid out of Plan Trust Assets as contemplated in the previous sentence) to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed to and received by the applicable holders of Plan Trust Interests for all purposes of this Agreement.  Notwithstanding the foregoing, each Plan Trust Beneficiary shall have responsibility for any taxes imposed by any governmental unit, including, without limitation, income, withholding, and other taxes, on account of such distribution. The Plan Trustee has the right, but not the obligation, to not make a distribution until such Plan Trust Beneficiary has made arrangements satisfactory to the Plan Trustee for payment of any such tax obligations. Additionally, in the case of a non-Cash distribution that is subject to withholding, the Plan Trustee has the right, but not the obligation, to withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the Plan Trustee for any advance payment of the withholding tax) or (ii) pay the withholding tax using funds of the Plan Trust and retain such withheld property.

(b)     The Plan Trustee shall be authorized to collect such tax information from the holders of Plan Trust Interests (including social security numbers or other tax identification numbers) as in its sole discretion the Plan Trustee deems necessary to effectuate the Plan, the Confirmation Order, and this Agreement.  In order to receive distributions under the Plan, all holders of Plan Trust Interests shall be required to identify themselves to the Plan Trustee and provide tax information (including a duly executed IRS Form W-9 or W-8, as applicable) and the specifics of their holdings, to the extent the Plan Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Plan Trustee for these purposes.  This identification requirement generally applies to all holders, including those who hold their Claims in "street name." The Plan Trustee may refuse to make a distribution to any holder of a Plan Trust Interest that fails to furnish such information in a timely fashion, and until such information is delivered may treat such holder's Plan Trust Interests as disputed; *provided*, *however*, that, upon the delivery of such information by a holder of a Plan Trust Interest, the Plan Trustee shall make such distributions to which the holder of the Plan Trust Interest is entitled, without additional interest occasioned by such holder's delay in providing tax information; *provided*, *further*, that, if such information is not furnished to the Plan Trustee within 90 days of the original request to furnish such information, the amount of such distribution shall irrevocably revert to the Plan Trust, any Claim in respect of such distribution shall be discharged and forever barred from assertion against any Debtor and its respective property, and no further distributions shall be made to the holder of such Plan Trust Interest; *provided*, *further*, that, if the Plan Trustee fails to withhold in respect of amounts received or distributable with respect

to (or otherwise attributable to) any such holder and the Plan Trustee is later held liable for the amount of such withholding, such holder shall indemnify the Plan Trustee for such liability (to the extent such amounts were actually distributed to such holder).

## SECTION 11.    THE DELAWARE TRUSTEE

11.1.    *Delaware Trustee Protections.*

Notwithstanding any other provision hereof to the contrary, the parties hereto agree to the following:

(a)    CSC Delaware Trust Company (the "**Delaware Trustee**") is appointed to serve as the trustee of the Plan Trust for the sole purpose of satisfying the requirement of section 3807(a) of the Act that a statutory trust have at least one trustee with a principal place of business in the State of Delaware or is an individual who is a resident of the State of Delaware.

(b)    The duties of the Delaware Trustee shall be limited to (i) accepting legal process served on the Plan Trust in the State of Delaware and (ii) the execution of any certificates which the Delaware Trustee is required to execute under the Act.  To the extent that, at law or in equity, the Delaware Trustee has duties (including fiduciary duties) and liabilities relating thereto to the Plan Trust or the Plan Trust Beneficiary, it is hereby understood and agreed by the other parties hereto that such duties and liabilities are eliminated and replaced by the duties and liabilities of the Delaware Trustee expressly set forth in this Agreement.

(c)    Notwithstanding any provision herein, the Delaware Trustee shall not be required to take any action hereunder if it shall have reasonably determined, or shall have been advised by counsel, that such action is likely to result in personal liability or is contrary to the terms hereof or is otherwise contrary to law or a policy of any regulatory authority or governmental agency.

(d)    Whenever the Delaware Trustee is unable to decide between alternative courses of action permitted or required by the terms of this Agreement or is unsure as to the application of any provision of this Agreement or any such provision is ambiguous as to its application, or may be, in conflict with any other applicable provision, or in the event that this Agreement permits any determination by the Delaware Trustee or is silent or is incomplete as to the course of action that the Delaware Trustee is required or permitted to take with respect to a particular set of facts, the Delaware Trustee shall promptly give notice (in such form as shall be appropriate under the circumstances) to the Plan Trustee requesting instruction as to the course of action to be adopted, and to the extent that the Delaware Trustee acts or refrains from acting in good faith in accordance with any such written instruction, the Delaware Trustee shall not be personally liable on account of such action or inaction to any Person.  If the Delaware Trustee shall not have received appropriate instruction within ten (10) calendar days of receipt of such notice (or within such shorter period of time as reasonably may be specified in such notice or may be necessary under the circumstances) it may, but shall be under no duty to, take or refrain from taking such action, not inconsistent with this Agreement, as it shall deem to be in the best interests of the Plan Trust Beneficiaries, and shall have no personal liability to any Person for such action or inaction.

(e)    The Delaware Trustee shall have no duty or obligation to manage, make any payment with respect to, register, record, sell, dispose of, or otherwise deal with the Plan Trust Assets, and no implied duties (including fiduciary duties) or obligations shall be read into this Agreement.  The Delaware Trustee shall have no responsibility for filing any financing or continuation statement in any public office at any time or to otherwise perfect or maintain the perfection of any security interest or lien granted to the Plan Trust or to prepare or file any filing for the Plan Trust (other than as required by the Act) or to record this Agreement or any other document.

(f)     The Delaware Trustee acts hereunder not in its individual capacity, and all Persons having any claim against the Delaware Trustee by reason of the transactions contemplated by this Agreement shall look only to the Plan Trust Assets for payment or satisfaction thereof.

(g)     The Delaware Trustee makes no representations as to the validity or sufficiency of this Agreement or of any of the Plan Trust Assets or related documents.  The Delaware Trustee shall have no personal responsibility or liability for or with respect to the legality, validity and enforceability of any Plan Trust Asset, or the perfection and priority of any security interest created by any Plan Trust Asset or the maintenance of any such perfection and priority, or for or with respect to the sufficiency of the Plan Trust Assets or its ability to generate the payments to be distributed to the related Plan Trust Beneficiaries under this Agreement, including, without limitation: the origination, the existence, condition, ownership and servicing of any Plan Trust Asset; the existence and enforceability of any insurance thereon; the existence and contents of any Plan Trust Asset on any computer or other record thereof, the validity of the assignment of any Plan Trust Asset to the Plan Trust or of any intervening assignment; the completeness of any Plan Trust Asset; the performance or enforcement of any Plan Trust Asset; the compliance with any warranty or representation made under any document or the accuracy of any such warranty or representation.

(h)     The Delaware Trustee shall not be personally answerable or accountable hereunder under any circumstances, except to the Plan Trust Beneficiaries and the Plan Trust for its own willful misconduct or gross negligence in the performance of its express duties hereunder, the Delaware Trustee shall have no liability for the acts or omissions of any other Person.

(i)     The Delaware Trustee shall not be personally liable for any error of judgment made by the Delaware Trustee.

(j)     The Delaware Trustee shall not be personally liable with respect to any action taken or omitted to be taken by it in accordance with the instructions of the Plan Trustee.

(k)     No provision of this Agreement or any related document shall require the Delaware Trustee to expend or risk its own funds or otherwise incur any personal financial liability in the performance of any of its respective rights, duties, or powers hereunder.

(l)     Under no circumstances shall the Delaware Trustee be personally liable for any duties, obligations or indebtedness of the Plan Trust.

(m)     The Delaware Trustee shall not be personally liable for the default or misconduct of any other Person hereunder or other party to any document to which the Plan Trust is a party or signatory or otherwise and shall not be personally liable for monitoring the performance of such Persons.

(n)     The right of the Delaware Trustee to perform any discretionary act enumerated in this Agreement shall not be construed as a duty.

(o)     Notwithstanding any other provisions hereof to the contrary, the Delaware Trustee shall not be liable for any special, indirect, punitive or consequential loss or damage of any kind whatsoever (including but not limited to lost profits) even if the Delaware Trustee has been advised of the likelihood of such loss or damage, and regardless of the form of action.

(p)     The Delaware Trustee shall not be liable or responsible for delays or failures in the performance of their obligations hereunder arising out of or caused, directly or indirectly, by circumstances beyond their control (such acts include but are not limited to acts of God, strikes, lockouts, riots, acts of

war, epidemics, pandemics, shelter in place or similar directive and interruptions, losses or malfunctions of utilities, computer (hardware or software) or communications services).

(q)       The Delaware Trustee shall not incur any personal liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond, or other document or paper believed by it to be genuine and believed by it to be signed by an appropriate Person, may accept a certified copy of a resolution of the board of directors or other governing body of any Person as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect, and as to any fact or matter the method of the determination of which is not specifically prescribed herein, may for all purposes hereof rely on a certificate, signed by the Plan Trustee as to such fact or matter and such certificate shall constitute full protection to the Delaware Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon.

(r)       In the performance of its duties and obligations under this Agreement, the Delaware Trustee at the expense of the Plan Trust (i) may act directly or through its agents or attorneys pursuant to agreements entered into with any of them, and the Delaware Trustee shall not be personally liable for the conduct or misconduct of such agents or attorneys if such agents or attorneys shall have been selected by the Delaware Trustee in good faith and (ii) may consult with counsel, accountants and other skilled persons, in each case, to be selected by the Delaware Trustee in good faith, and such advice shall be full and complete authorization and protection with respect to any action taken or omitted by it hereunder in good faith and in accordance with the advice or opinion of counsel, accountants or other such persons.

11.2.    *Third Party Beneficiary*.

The Delaware Trustee shall be a third-party beneficiary of this Agreement entitled to enforce this Agreement to the same extent as though a party hereto.

11.3.    *Fees and Indemnity*.

The Delaware Trustee shall be entitled to receive from the Plan Trust as compensation for its services hereunder such fees as set forth in the fee letter with the Delaware Trustee, which compensation shall not be limited by any provision of law in regard to compensation of a trustee of an express trust.  The Plan Trust shall (i) reimburse the Delaware Trustee for all reasonable and documented expenses incurred by it in connection with the execution and performance of its rights and duties hereunder (including reasonable fees and expenses of counsel and other experts, including fees and expenses of counsel in the enforcement of this Agreement, including indemnification provisions); (ii) indemnify, defend and hold harmless the Delaware Trustee (in both its individual and trustee capacities) and the officers, directors, employees and agents of the Delaware Trustee (collectively, including the Delaware Trustee in its individual capacity, the "**Covered Persons**") from and against any and all documented losses, damages, liabilities, claims, actions, suits, costs, expenses, disbursements (including the reasonable fees and expenses of counsel), taxes and penalties of any kind and nature whatsoever, to the extent that such expenses arise out of or are imposed upon or asserted at any time against one or more Covered Persons with respect to the performance of this Agreement, the creation, operation, administration or termination of the Plan Trust, or the transactions contemplated hereby (all such expenses as provided in clauses (i) and (ii) are herein referred to collectively as "**Expenses**"), *provided*, *however*, that the Plan Trust shall not be required to indemnify an Covered Person for Expenses to the extent such Expenses result from the willful misconduct or gross negligence of such Covered Person; and (iii) advance to each Covered Person Expenses (including reasonable legal fees) incurred by such Covered Person in defending any claim, demand, action, suit or proceeding, prior to the final disposition of such claim, demand, action, suit or proceeding.  With respect to reimbursement or indemnity provided hereunder, a Covered Person shall have a lien on the Plan Trust Assets prior to any rights in such property of the Plan Trust Beneficiaries.  The indemnities contained in

this Section shall survive the removal, resignation or termination of the Delaware Trustee and the termination of the Plan Trust and this Agreement.

11.4.   *Resignation and Removal*.

The Delaware Trustee may resign and be discharged hereunder upon not less than 30 days' prior written notice to the Plan Trustee.  The Delaware Trustee also may be removed and discharged, with or without cause, upon the delivery by the Plan Trustee to the Delaware Trustee of a written notice of removal.  Upon receiving such a notice of resignation or removal, the Plan Trustee shall use its best efforts promptly to appoint a substitute or successor Delaware Trustee in the manner and meeting the qualifications hereinafter provided by written instrument or instruments delivered to such resigning Delaware Trustee and the substitute or successor Delaware Trustee.  Any resignation or removal of the Delaware Trustee and appointment of a substitute or successor Delaware Trustee shall become effective only upon acceptance of the appointment by the substitute or successor Delaware Trustee.  If no substitute or successor Delaware Trustee shall have been appointed within 30 days after notice of such resignation or removal has been delivered, at the expense of the Plan Trust the Delaware Trustee may apply to a court of competent jurisdiction for the appointment of a successor Delaware Trustee.  Such court may thereupon, after such notice, if any, as it may deem proper, prescribe and appoint a successor Delaware Trustee meeting the qualifications provided for herein.

11.5.   *Merger*.

Any Person into which the Delaware Trustee may be merged or with which it may be consolidated, or any Person resulting from any merger or consolidation to which the Delaware Trustee shall be a party, or any Person that succeeds to all or substantially all of the corporate trust business of the Delaware Trustee, shall be the successor Delaware Trustee under this Agreement without the execution, delivery or filing of any paper or instrument or further act to be done on the part of the parties hereto (except for the filing of an amendment to the Plan Trust's certificate of trust if required by the Act), notwithstanding anything to the contrary herein; *provided*, *however*, that such successor Delaware Trustee shall have its principal place of business in the State of Delaware and otherwise meet the requirements of the Act and applicable law.

## SECTION 12.   MISCELLANEOUS

12.1.   *Preservation of Privilege*.

In connection with the rights, claims, and causes of action that constitute Plan Trust Assets, any attorney-client privilege, work-product doctrine, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Plan Trust pursuant to the terms of the Plan or otherwise shall vest in the Plan Trustee and their representatives, and the Plan Trustee is authorized to take all necessary actions to effectuate the transfer of such privileges, as necessary.  The Plan Trustee's receipt of such privileges shall not operate as a waiver of any other privileges or immunities possessed by the Debtors.

12.2.   *Notices*.

Unless otherwise expressly provided herein, all notices to be given to Plan Trust Beneficiaries may be given by ordinary mail, or may be delivered personally, to the holders at the addresses appearing on the books kept by the Plan Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Plan Trust shall be in writing and shall be sent by email and registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery (if receipt is confirmed) addressed as follows:

If to the Plan Trust or the Plan Trustee:

Force Ten Partners, LLC
5271 California Ave., Suite 270
Irvine, CA 92617
Attn: Monica Blacker
Email: mblacker@force10partners.com

With copies to:

McGuireWoods LLP
Texas Tower
845 Texas Ave., Suite 2400
Houston, TX 77002
Attn: Demetra Liggins
Email: dliggins@mcguirewoods.com

and

McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
Attn:  Aaron G. McCollough
Email:  amccollough@mcguirewoods.com


If to the Delaware Trustee:

CSC Delaware Trust Company
251 Little Falls Drive
Wilmington, DE 19808
Email: USTrustAgency@delawaretrust.com


12.3.    *No Bond / Insurance*.

Notwithstanding any state law to the contrary, the Plan Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction, unless the Plan Trustee decides in their reasonable judgment to obtain such bond or other security.  The Plan Trustee is hereby authorized, but not required, to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including coverage with respect to the liabilities, duties and obligations of the Plan Trustee and its agents, representatives, employees or independent contractors under this Agreement and the Plan ("**Insurance Coverages**").  The cost of any such Insurance Coverage shall be an expense of the Plan Trust and paid out of the Plan Trust Assets.

12.4.    *Governing Law*.

This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (excluding conflict of laws rules), including all matters of validity, construction and administration; provided, however, that there shall not be applicable to the Plan Trust, the Plan Trustee or this Agreement, (a) the provisions of section 3540 of Title 12 of the Delaware Code and (b) to the fullest

extent permitted by applicable law any provisions of the laws (statutory or common) of the State of Delaware pertaining to trusts that relate to or regulate, in a manner inconsistent with the terms hereof, (i) the filing with any court or governmental body or agency of trustee accounts or schedule of trustee fees and charges, (ii) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust, (iii) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of real or personal property, (iv) fees or other sums payable to trustees, officers, agents or employees of a trust, (v) the allocation of receipts and expenditures to income and principal, or (vi) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding or investing trust assets.

12.5.   *Successors and Assigns*.

This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

12.6.   *Headings*.

The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or understanding of this Agreement or any provision hereof.

12.7.   *Cumulative Rights and Remedies*.

The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

12.8.   *No Execution*.

All funds in the Plan Trust shall be deemed in *custodia legis* until such times as the funds have actually been paid to or for the benefit of a Plan Trust Beneficiary, and no Plan Trust Beneficiary or any other Person can execute upon, garnish or attach the Plan Trust Assets or the Plan Trust in any manner or compel payment from the Plan Trust except by Final Order of the Bankruptcy Court.  Payment will be solely governed by this Agreement and the Plan.

12.9.   *Amendment*.

The Plan Trustee may, from time to time, modify, supplement, or amend this Agreement without further consent or approval, but only to (i) the extent that such modification, supplement, or amendment is immaterial, or (ii) clarify any ambiguity or inconsistency, or render the Agreement in compliance with its stated purposes.  The Plan Trustee, with the consent of the Creditors' Committee or the approval of the Bankruptcy Court, may otherwise, from time to time, modify, supplement, or amend this Agreement.  No amendment or waiver of any provision of this Agreement which adversely affects the Delaware Trustee shall be effective against it without its prior written consent.

12.10.   *Waiver.*

No failure by the Plan Trustee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

12.11.   *Severability.*

If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

12.12.   *Counterparts and Facsimile Signatures.*

This Agreement may be executed in counterparts and a facsimile or other electronic form of signature shall be of the same force and effect as an original.

12.13.   *Jurisdiction.*

The Bankruptcy Court shall have jurisdiction regarding the Plan Trust, the Plan Trustee, and the Plan Trust Assets, including the determination of all disputes arising out of or related to administration of the Plan Trust.  The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters arising out of or related to this Agreement or the administration of the Plan Trust.  The parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, then the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, then notwithstanding anything herein to the contrary (i) the parties hereto, the holders of Allowed Claims, and the Plan Trust Beneficiaries agree to the non-exclusive jurisdiction of the courts of the State of Delaware and (ii) the Court of Chancery of the State of Delaware shall have jurisdiction over the Plan Trust to the same extent as it has jurisdiction over common law trusts formed under the laws of the State of Delaware.

*[The remainder of this page is intentionally left blank.]*

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year written above.

**DEBTORS:**

Steward Health Care System LLC and each of the other
Debtors listed on Schedule 1 hereto

By: Plan Administrator Committee for the Debtors

By: _____
    Name: Monica Blacker, solely in her capacity as
    chairperson of the Plan Administrator Committee
    and not in any individual capacity

By: _____
    Name: Alan Carr, solely in his capacity as
    member of the Plan Administrator Committee and
    not in any individual capacity

By: _____
    Name: William Transier, solely in his capacity as
    member of the Plan Administrator Committee and
    not in any individual capacity

[Signature Page to Plan Trust Agreement]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year written above.

**DEBTORS:**

Steward Health Care System LLC and each of the other Debtors listed on <u>Schedule 1</u> hereto

By:  Plan Administrator Committee for the Debtors

By:  _____
Name:  Monica Blacker, solely in her capacity as chairperson of the Plan Administrator Committee and not in any individual capacity

By:  _____
Name:  Alan Carr, solely in his capacity as member of the Plan Administrator Committee and not in any individual capacity

By:  _____
Name:  William Transier, solely in his capacity as member of the Plan Administrator Committee and not in any individual capacity

[Signature Page to Plan Trust Agreement]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year written above.

**DEBTORS:**

Steward Health Care System LLC and each of the other Debtors listed on <u>Schedule 1</u> hereto

By:  Plan Administrator Committee for the Debtors

By:  _____
Name:  Monica Blacker, solely in her capacity as chairperson of the Plan Administrator Committee and not in any individual capacity

By:  _____
Name:  Alan Carr, solely in his capacity as member of the Plan Administrator Committee and not in any individual capacity

By:  *William L. Transier*  _____
Name:  William Transier, solely in his capacity as member of the Plan Administrator Committee and not in any individual capacity

[Signature Page to Plan Trust Agreement]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year written above.

**PLAN TRUSTEE:**

By:  Plan Administrator Committee, solely in its capacity as
Plan Trustee and not in any other capacity

By: _____
Name: Monica Blacker, solely in her capacity as
chairperson of the Plan Administrator Committee
and not in any individual capacity

By: _____
Name: Alan Carr, solely in his capacity as
member of the Plan Administrator Committee and
not in any individual capacity

By: _____
Name: William Transier, solely in his capacity as
member of the Plan Administrator Committee and
not in any individual capacity

[Signature Page to Plan Trust Agreement]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year written above.

**PLAN TRUSTEE:**

By:  Plan Administrator Committee, solely in its capacity as Plan Trustee and not in any other capacity

By: _____

Name:  Monica Blacker, solely in her capacity as chairperson of the Plan Administrator Committee and not in any individual capacity

By: _____

Name:  Alan Carr, solely in his capacity as member of the Plan Administrator Committee and not in any individual capacity

By: _____

Name:  William Transier, solely in his capacity as member of the Plan Administrator Committee and not in any individual capacity

[Signature Page to Plan Trust Agreement]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year written above.

**PLAN TRUSTEE:**

By:  Plan Administrator Committee, solely in its capacity as Plan Trustee and not in any other capacity

By: _____
Name:  Monica Blacker, solely in her capacity as chairperson of the Plan Administrator Committee and not in any individual capacity

By: _____
Name:  Alan Carr, solely in his capacity as member of the Plan Administrator Committee and not in any individual capacity

By: _William L. Transier_____
Name:  William Transier, solely in his capacity as member of the Plan Administrator Committee and not in any individual capacity

[Signature Page to Plan Trust Agreement]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year written above.

**DELAWARE TRUSTEE**

By:  CSC Delaware Trust Company, solely in its capacity as
     Delaware resident trustee and not in any
     other capacity

By: _____

     Name:   Russ Crane
     Title:    Vice President

[Signature Page to Plan Trust Agreement]

## Schedule 1

### Debtor Entities

1. Arizona Diagnostic & Surgical Center, Inc.
2. Beaumont Hospital Holdings, Inc.
3. Biltmore Surgery Center Holdings, Inc.
4. Biltmore Surgery Center, Inc.
5. Blackstone Medical Center, Inc.
6. Blackstone Rehabilitation Hospital, Inc.
7. Boston Orthopedic Center, LLC
8. Boston Sports Medicine and Research Institute, LLC
9. Brevard SHC Holdings LLC
10. Brim Healthcare of Colorado, LLC
11. Brim Healthcare of Texas, LLC
12. Brim Holding Company, Inc.
13. Brim Physicians Group of Colorado, LLC
14. Choice Care Clinic I, Inc.
15. Choice Care Clinic II, Inc.
16. Choice Care Clinic III, Inc.
17. Choice Care Clinic of Louisiana, Inc.
18. Choice Care Clinic of Utah, Inc.
19. Converse Medical Center LLC
20. Davis Hospital & Medical Center, LP
21. Davis Hospital Holdings, Inc.
22. Davis Surgical Center Holdings, Inc.
23. De Zavala Medical Center LLC
24. Downtown Houston Physician Hospital Organization
25. Glenwood Specialty Imaging, LLC
26. HC Essential Co.
27. Health Choice Florida, Inc.
28. Health Choice Louisiana, Inc.
29. Health Choice Managed Care Solutions LLC
30. Health Choice Northern Arizona LLC
31. Health Choice Preferred Accountable Care LLC
32. Health Choice Preferred Louisiana ACO LLC
33. Health Choice Preferred Louisiana Physician Association LLC
34. Health Choice Preferred Texas ACO - Alamo Region LLC
35. Health Choice Preferred Texas ACO - Gulf Coast Region LLC
36. Health Choice Preferred Texas Physician Association - Alamo Region LLC
37. Health Choice Preferred Texas Physician Association - Gulf Coast Region LLC
38. Health Choice Utah Accountable Care LLC
39. HealthUtah Holdco LLC
40. Heritage Technologies, LLC
41. IASIS Capital Corporation
42. IASIS Finance II LLC
43. IASIS Finance III LLC
44. IASIS Finance Texas Holdings, LLC
45. IASIS Finance, Inc.
46. IASIS Glenwood Regional Medical Center, LP
47. IASIS Healthcare Corporation
48. IASIS Healthcare Holdings, Inc.
49. IASIS Healthcare LLC
50. IASIS Management Company
51. IASIS Transco, Inc.
52. Indigent Care Services of Northeast Louisiana, Inc.
53. Jordan Valley Hospital Holdings, Inc.
54. Jordan Valley Medical Center, LP
55. Legacy Trails Medical Center LLC
56. Mesa General Hospital, LP
57. Morton Hospital, A Steward Family Hospital, Inc.
58. Mountain Point Holdings, LLC
59. Mountain Vista Medical Center, LP

60. MT Transition LP

61. Nashoba Valley Medical Center, A Steward Family Hospital, Inc.

62. New England Sinai Hospital, A Steward Family Hospital, Inc.

63. Odessa Fertility Lab, Inc.

64. Odessa Regional Hospital, LP

65. OnSite Care MSO, LLC

66. OnSite Care, Inc.

67. Permian Basin Clinical Services, Inc.

68. Permian Premier Health Services, Inc.

69. Physician Group of Arizona, Inc.

70. Physician Group of Arkansas, Inc.

71. Physician Group of Florida, Inc.

72. Physician Group of Louisiana, Inc.

73. Physician Group of Utah, Inc.

74. Podiatric Physicians Management of Arizona, Inc.

75. PP Transition LP

76. PP Transition, Inc.

77. Quincy Medical Center, A Steward Family Hospital, Inc.

78. Riverwoods ASC Holdco LLC

79. Salt Lake Regional Medical Center, LP

80. Salt Lake Regional Physicians, Inc.

81. Seaboard Development LLC

82. Seaboard Development Port Arthur LLC

83. SHC Youngstown Ohio Laboratory Services Company LLC

84. SHC Youngstown Ohio Outpatient Services LLC

85. SHC Youngstown Ohio PSC LLC

86. SJ Medical Center, LLC

87. Southridge Plaza Holdings, Inc.

88. Southwest General Hospital, LP

89. St. Luke's Behavioral Hospital, LP

90. St. Luke's Medical Center, LP

91. Steward Accountable Care Organization, Inc.

92. Steward Anesthesiology Physicians of Florida, Inc.

93. Steward Anesthesiology Physicians of Massachusetts, Inc.

94. Steward Anesthesiology Physicians of Pennsylvania, Inc.

95. Steward ASC Holdings LLC

96. Steward Carney Hospital, Inc.

97. Steward CGH, Inc.

98. Steward Easton Hospital, Inc.

99. Steward Emergency Physicians of Arizona, Inc.

100. Steward Emergency Physicians of Florida, Inc.

101. Steward Emergency Physicians of Pennsylvania, Inc.

102. Steward Emergency Physicians Ohio, Inc.

103. Steward Emergency Physicians, Inc.

104. Steward Employer Solutions LLC

105. Steward Fall River Management Care Services LLC

106. Steward Florida ALF LLC

107. Steward Florida ASC LLC

108. Steward Florida Holdings LLC

109. Steward FMC, Inc.

110. Steward Good Samaritan Medical Center, Inc.

111. Steward Good Samaritan Occupational Health Services, Inc.

112. Steward Good Samaritan Radiation Oncology Center, Inc.

113. Steward Health Care Holdings LLC

114. Steward Health Care International LLC

115. Steward Health Care Network ACO Texas, Inc.

116. Steward Health Care Network, Inc.

117. Steward Health Care OZ Fund, Inc.

118. Steward Health Care System LLC

119. Steward Health Choice, Inc.

120. Steward Healthcare Management Services LLC

121. Steward HH, Inc.

122. Steward Hillside Rehabilitation Hospital, Inc.

123. Steward Holy Family Hospital, Inc.

124. Steward Hospital Holdings LLC

125. Steward Hospital Holdings Subsidiary One, Inc.

126. Steward Imaging & Radiology Holdings LLC

127. Steward Medicaid Care Network, Inc.

128. Steward Medical Group Express Care, Inc.

129. Steward Medical Group Pennsylvania Endoscopy LLC

130. Steward Medical Group, Inc.

131. Steward Medical Holdings LLC

132. Steward Medical Ventures, Inc.

133. Steward Melbourne Hospital, Inc.

134. Steward New England Initiatives, Inc.

135. Steward Norwood Hospital, Inc.

136. Steward NSMC, Inc.

137. Steward Ohio Holdings LLC

138. Steward Operations Holdings LLC

139. Steward Pathology Physicians of Massachusetts, Inc.

140. Steward Pennsylvania Holdings LLC

141. Steward PET Imaging, LLC

142. Steward PGH, Inc.

143. Steward Physician Contracting, Inc.

144. Steward Radiology Physicians of Arizona, Inc.

145. Steward Radiology Physicians of Florida, Inc.

146. Steward Radiology Physicians of Massachusetts, Inc.

147. Steward Radiology Physicians of Pennsylvania, Inc.

148. Steward Rockledge Hospital, Inc.

149. Steward SA FSED Holdings, Inc.

150. Steward Sebastian River Medical Center, Inc.

151. Steward Sharon Regional Health System, Inc.

152. Steward Special Projects LLC

153. Steward St. Anne's Hospital Corporation

154. Steward St. Elizabeth's Medical Center of Boston, Inc.

155. Steward St. Elizabeth's Realty Corp.

156. Steward Texas Hospital Holdings LLC

157. Steward Trumbull Memorial Hospital, Inc.

158. Steward TSC Investments LLC

159. Steward Valley Regional Ventures, Inc.

160. Steward West Ventures Co.

161. Stewardship Health Medical Group, Inc.

162. Stewardship Health, Inc.

163. Stewardship Services Inc.

164. The Medical Center of Southeast Texas, LP

165. TNC Transition LP

166. TRACO Investment Management LLC

167. Utah Transcription Services, Inc.

## Exhibit A

**Blacker Plan Administrator Agreement**

*Execution Version*



100 Crescent Court, Suite 700
Dallas, Texas 75202
Force10partners.com
(949) 357-2360

May 1, 2025

Steward Health Care System LLC, et al.
2811 McKinney Avenue, Suite 300
Dallas, Texas 75204

Attn: John Castellano, CRO

      Re:      <u>Steward Health: Force Ten Partners, LLC —Engagement Agreement</u>

Dear Mr. Castellano:

We appreciate the opportunity to work with Steward Health Care System LLC, and its debtor affiliates (each a "<u>Company</u>" and collectively, the "<u>Companies</u>"). This Engagement Agreement ("<u>Agreement</u>") confirms and sets forth the terms and conditions of the engagement between the Companies and Force Ten Partners, LLC ("<u>Force 10</u>") regarding the scope of the services to be performed by Force 10 (the "<u>Engagement</u>") on behalf of the Companies, the Plan Administrator Committee (as defined in the *Joint Chapter 11 Plan of Liquidation of Steward Health Care System LLC and its Affiliated Debtors* (Docket No. 5021) (as amended, supplemented, and modified from time-to-time, the "<u>Plan</u>")), and the Plan Trustee (as defined in the Plan), as applicable, and the basis of compensation for those services.

1. Description of Services.

<u>Transition Services</u>. Force 10 is engaged to provide financial advisory services to the Companies, the Plan Administrator Committee, and the Plan Trustee, as applicable. Force 10 will seek to utilize the Companies' personnel, and work with the Companies' other professionals, to efficiently provide the following services, as appropriate:

      a.    Assist in the preparation of and approval of post-confirmation budgets.

      b.    Provide support to the Companies' finance function, including oversight of cash receipts and disbursements, forecasting, variance tracking and reporting, cash and liquidity management, and compiling information as needed to present to the Companies' stakeholders.

      c.    Work with APS to transition certain accounting functions in anticipation of confirmation.

      d.    Assist in the preparation of monthly operating reports.

      e.    Coordinate and provide administrative support.

*Execution Version*

        f.   Assist with such other matters as may be requested by the Transformation Committee and the proposed Plan Administrator Committee, and that are mutually agreeable.

Plan Administrator Committee Services. Force 10 will provide Monica Blacker to serve as the initial chairperson of the Companies' Plan Administrator Committee (the "Chairperson"). The Plan Administrator Committee, which shall be appointed as the Plan Trustee in accordance with the terms of the Plan, shall have exclusive governance rights of the Estates and be authorized to implement the Plan and any applicable orders of the Bankruptcy Court in accordance with the Plan Administrator Agreement (each as defined in the Plan). The Plan Administrator Committee shall act for the Companies in the same fiduciary capacity as applicable to a board of directors and officers, subject to the Plan Administrator Agreement. The Chairperson, in their capacity as a member of the Plan Administrator Committee, shall have such duties as set forth in the Plan.

2.   Reporting. Force 10 shall act under the direction, control, and guidance of the Companies' officers until the confirmation of the Plan, and subsequently, at the direction of the Plan Administrator Committee and Plan Trustee (as defined in the Plan), as applicable.

3.   Reliance. Each Company shall use commercially reasonable efforts to: (i) provide Force 10 and its personnel with access to management and other representatives of the Companies; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Companies that such personnel reasonably request in connection with the services to be provided under this Engagement. Force 10 and its personnel may rely, without further independent verification, on the accuracy and completeness of all information that is furnished by or on behalf of a Company or otherwise reviewed by such personnel in connection with the services to be provided under this Engagement. The Company acknowledges and agrees that Force 10 and its personnel are not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. Force 10 and its personnel are under no obligation to update data submitted to them.

4.   Projections. The Companies understand that the services to be rendered by Force 10 and its personnel may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and other forward-looking statements. Also, the Companies understand that Force 10 and its personnel will be relying on information provided by the Companies, their management, employees, and other professionals, in preparation of those projections and other forward-looking statements.

5.   Limitations of Duties.

Neither Force 10 nor any of its personnel make any representations or guarantees that the goals of this Engagement will be achieved or that any plan or strategic alternative recommended by Force 10 or any of its personnel will be more successful than any other possible proposals or strategic alternatives.

Force 10 shall not be deemed to be the employer (or co-employer with any Company) of any of the Company's employees. The Company's employees shall at all times be and remain exclusively employees of the Company that employs it.

Neither Force 10 nor any of its personnel assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect, any transaction.

*Execution Version*

6. <u>Modifications</u>. This Engagement is fluid, and the specific scope of services may change. In the event that circumstances arise and the scope of requested services expands, Force 10 will consult with the Plan Administrator Committee or the Plan Trustee, as applicable, with respect to amendments and modifications to this Engagement.

7. <u>Compensation</u>. In consideration of Force 10's acceptance of this Engagement, the Company agrees: To pay Force 10 for the hourly rate of its personnel engaged in providing services pursuant to the Engagement. The initial hourly rates agreed to for the Engagement are:

| | |
|---|---|
| Monica Blacker | $990 |
| Partners | $890-$990 |
| Managing Directors | $595-$795 |
| Directors | $425-$580 |
| Analysts | $340-$395 |

Force 10 generally adjusts its hourly rates on an annual basis and the above rates reflect the current rates for the calendar year 2025.

8. <u>Expenses</u>. The Companies shall reimburse Force 10 for their reasonable and documented out-of-pocket expenses incurred in connection with the Engagement, including travel, lodging, duplicating, computer research, messenger services, and telephone charges.

9. <u>Payment Terms</u>. The Companies shall pay Force 10's hourly fees and reimburse its reasonable and documented out-of-pocket expenses within ten (10) business days of the Companies' receipt of an invoice for such services and itemized expenses. All invoices reflecting Force 10's hourly fees and expenses will be submitted in accordance with the Office of the U.S. Trustee guidelines and will be paid pursuant to any court order authorizing Force 10's retention.

10. <u>Reasonableness of Fees</u>. The Company acknowledges that a substantial professional commitment of time and effort will be required by Force 10 and its personnel pursuant to this Engagement, and that such commitment may foreclose other opportunities for the firm and its personnel. Moreover, the actual time and commitment required for the Restructuring Services under this Engagement may vary substantially, creating "peak load" issues for the firm. Given the numerous issues which may arise in engagements such as this, Force 10's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Force 10 that will be required in this Engagement, and the market rate for Force 10's services of this nature, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Force 10, and provides the requisite certainty to the Company.

11. <u>Term</u>.

a. The term of this Engagement shall commence as of the date set forth above and shall continue until the Engagement is completed unless terminated with or without cause by either the Company or Force 10 on fifteen (15) days prior written notice, in which event all compensation and expenses owing to Force 10 through the date of such termination (including fees and reasonable and documented expenses incurred prior to but invoiced after such termination) shall be immediately due and payable. All provisions of this Agreement setting forth rights or obligations that extend beyond the termination of the Agreement shall survive and shall continue to bind the parties.

b. Force 10 may withdraw from this Engagement and terminate its obligations hereunder upon written notice to the Companies if any of the Companies make it

*Execution Version*

unethical or unreasonably difficult for Force 10 or its personnel to fulfill the terms of this Engagement or otherwise perform their duties under this Engagement.

12. <u>No Audit</u>. Force 10 and its personnel are not being requested to perform and are not agreeing to undertake an accounting audit, review, or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the American Institute of Certified Public Accountants, the Securities Exchange Commission, or any other state or national professional or regulatory body.

13. <u>No Third-Party Beneficiary</u>. The Companies acknowledge that all advice and work product given by Force 10 or any of its personnel in connection with this Engagement is intended solely for the benefit and use of the Plan Administrator Committee, the Plan Trustee, and the Companies, including the members of the independent Transformation Committee (as defined in the Plan), in their capacities as such, in considering the matters to which this Engagement relates. Without Force 10's specific case-by-case written approval, the Plan Administrator Committee or the Plan Trustee, as applicable, and the Companies agree that the advice and any work product shall not be used for any other purpose and that they shall not be reproduced, disseminated, quoted or referred to other than for the exclusive purpose of accomplishing the tasks that are the subject matter of this Engagement during the term of this Engagement, except as otherwise required by law, legal processes, or order of the Bankruptcy Court.

14. <u>Conflicts</u>.

Force 10 is not currently aware of any relationship that would create a conflict of interest with any of the Companies or those parties-in-interest of which you have made us aware. Because Force 10 is a financial advisory and consulting firm that serves clients in numerous cases and industries, both in and out of court, it is possible that Force 10 may have rendered services to or have business associations with other entities or people which had or have or may have relationships with any of the Companies, including creditors of the Companies. Force 10 will not represent the interests of any such entities or people in connection with this matter.

Each Company and each of their subsidiaries acknowledges and agrees that the services provided under this Engagement are being provided on behalf of each of them and each of them hereby waives any and all conflicts of interest that may arise on account of the services being provided on behalf of any of their affiliates or subsidiaries. Based on our current understanding of the financial and business relationships between the Companies it appears there is alignment of interest between each Company.

15. <u>Confidentiality</u>. Force 10 and its personnel shall keep confidential all non-public information received from the Companies, their legal counsel, or other advisors in conjunction with this Engagement, except: (i) as requested by the Companies or their legal counsel or other advisors; (ii) as required by legal proceedings; <u>provided</u> <u>that</u> Force 10 will, to the extent permitted by applicable law or regulation, provide the Companies with reasonably prompt written notice of such request or requirement so that the Companies may seek a protective order or other appropriate remedy and Force 10 and its personnel will use commercially reasonable efforts to cooperate with the Companies' and the Companies' advisors' efforts to obtain the same; or (iii) upon the written consent of the Companies or their legal counsel (email shall suffice). All confidentiality obligations shall cease as to any part of such information that is or becomes public other than as a result of a breach of this provision.

16. <u>Indemnification and Limitations on Liability</u>.

The Companies shall indemnify and hold harmless Force 10 and each of its personnel together with its officers, members, partners, directors, employees and agents (each an "<u>Indemnified Party</u>"), from and against any losses, claims, damages and liabilities, joint or several (collectively, the "<u>Damages</u>"), to which such Indemnified Party may become subject in connection with or otherwise relating to or arising from any services contemplated by this Engagement or performance of services by an Indemnified Party thereunder, including any liability to or on account of any employees of any Company, and will reimburse each Indemnified Party for all fees and reasonable and documented out-of-pocket expenses (including the fees and reasonable and documented out-of-pocket expenses of counsel) (collectively, "<u>Expenses</u>") as incurred in connection with investigating, preparing, pursuing or defending any threatened or pending claim, action, proceeding or investigation (collectively, "<u>Proceedings</u>") arising therefrom, whether or not such Indemnified Party is a formal party to such Proceeding; <u>provided</u>, <u>however</u>, that you will not be liable to any specific Indemnified Party to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from, the gross negligence or willful misconduct of such specific Indemnified Party seeking indemnification hereunder. No Indemnified Party shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Companies or any person asserting claims on behalf of Companies arising out of or in connection with any services contemplated by this Engagement or the performance of services by any Indemnified Party thereunder except to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from, the gross negligence or willful misconduct of the Indemnified Party.

If for any reason other than in accordance with this Engagement, the foregoing indemnity is unavailable to an Indemnified Party or insufficient to hold an Indemnified Party harmless, the Companies agree to contribute to the amount paid or payable by an Indemnified Party as a result of such Damages (including all Expenses incurred) in such proportion as is appropriate to reflect the relative benefits to the Companies' and/or its stakeholders or beneficiaries on the one hand, and Force 10 on the other hand, in connection with the matters covered by this Engagement and this Section 16 or, if the foregoing allocation is not permitted by applicable law, not only such relative benefits but also the relative faults of such parties as well as any relevant equitable considerations. The Companies agree that for purposes of this paragraph the relative benefits to the Companies' and/or its stakeholders or beneficiaries and Force 10 in connection with the matters covered by this Engagement and this Section 16 will be deemed to be in the same proportion that the total value paid or received or to be paid or received by Companies' and/or its stakeholders or beneficiaries in connection with the Damages, bears to the fees paid to Force 10 under the Engagement; <u>provided</u>, <u>however</u>, that (a) in no event will the total contribution of all Indemnified Parties to all such Damages exceed the amount of fees actually received and retained by Force 10 under this Engagement (excluding any amounts received by Force 10 as reimbursement of expenses) and (b) the Companies shall have no obligation to make any contribution to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from the fraud, gross negligence, or willful misconduct of the applicable Indemnified Party.

The Companies shall not enter into any waiver, release or settlement of any Proceeding (whether or not Force 10 or any other Indemnified Party is a formal party to such Proceeding) in respect of which indemnification may be sought hereunder without the prior written consent of Force 10 (which consent will not be unreasonably withheld, conditioned, or delayed), unless such waiver, release or settlement (i) includes an unconditional release of Force 10 and each Indemnified Party from all liability arising out of such Proceeding and (ii) does not contain any factual or legal admission by or with respect to any Indemnified Party or any adverse statement with respect to the character, professionalism, expertise or reputation of any Indemnified Party or any action or inaction of any Indemnified Party.

*Execution Version*

If any Indemnified Party is entitled to indemnification under this Agreement with respect to any action or proceeding brought by a third party, the Companies shall be entitled to assume the defense of any such action or proceeding with counsel reasonably satisfactory to the Indemnified Party. Upon assumption by the Companies of the defense of any such action or proceeding, the Indemnified Party shall have the right to participate in such action or proceeding and to retain its own counsel but the Companies shall not be liable for any legal expenses of other counsel subsequently incurred by such Indemnified Party in connection with the defense thereof unless (i) the Companies have agreed to pay such fees and expenses, (ii) the Companies shall have failed to employ counsel reasonably satisfactory to the Indemnified Party in a timely manner, or (iii) the Indemnified Party shall have been advised by counsel that there are actual or potential conflicting interests between the Companies and the Indemnified Party, including situations in which there are one or more legal defenses available to the Indemnified Party that are different from or additional to those available to the Companies; provided, however, that the Companies shall not, in connection with any one such action or proceeding or separate but substantially similar actions or proceedings arising out of the same general allegations, be liable for the fees and expenses of more than one separate firm of attorneys at any time for all Indemnified Parties, except to the extent that local counsel, in addition to its regular counsel, is required in order to effectively defend against such action or proceeding.

The provisions of this Section 16 are contractual obligations, and no change in applicable law or any of the Companies' organizational documents, bylaws or any other agreement or undertaking or insurance policy shall affect Force 10's or any of Force 10's personnel's rights under this Section 16.

17. <u>Joint and Several Liability</u>. Each Company and each of its subsidiaries hereby agrees that they are each jointly and severally liable to Force 10 for the Companies' representations, warranties, covenants, liabilities, and obligations as set forth in this Engagement. Force 10 and its personnel may seek to enforce, in their sole discretion, any of their respective rights and remedies against any Company and any of their subsidiaries in any order and at any time.

18. <u>Limitations on Force 10's Liabilities</u>. If Force 10 or any of its personnel are otherwise in breach of or default under this Engagement, then the maximum liability of Force 10 and such personnel with respect to such breach or default shall be limited to an amount equal to the aggregate of all fees actually paid to Force 10 pursuant to this Engagement as of such date.

19. <u>Successors and Assigns</u>. This Engagement shall inure to the benefit of, and be binding upon, the Companies and Force 10 and their respective successors and assigns. Neither party may assign its rights and/or obligations under this Engagement without the written consent of the other party (email shall suffice), which consent shall not be unreasonably withheld, conditioned, or delayed.

20. <u>Applicable Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas, without reference to principles of conflicts of law. Any action arising from or related in any way to this Engagement shall be brought before the US Bankruptcy Court for the Southern District of Texas, currently presiding over this matter.

21. <u>Independent Contractor</u>. Force 10 and its personnel serve as independent contractors to the Companies pursuant to the terms of this Engagement. This Engagement does not create and shall not be construed to create a relationship of principal and agent, joint venture, co-partners, employer and employee, or any similar relationship, and the parties hereto expressly deny the existence of any such relationship.

22. <u>Professional Services</u>. Certain Force 10 personnel are attorneys. Neither this engagement nor any services provided by Force 10 personnel pursuant to this engagement shall give rise to an actual or imputed attorney-client relationship between any such attorney and any Company. The Companies

*Execution Version*

agree and acknowledge that they do not have any attorney-client relationship with any personnel affiliated with Force 10.

23. <u>Miscellaneous</u>. No amendment of this Engagement or waiver of any provision hereof will be binding unless set forth in a writing signed by the Companies and Force 10. No failure or delay by a party in exercising any right, power or privilege hereunder will operate as waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder. The invalidity or unenforceability of any provision of this letter agreement will not affect the validity or enforceability of any other provision of this letter agreement, each of which will remain in full force and effect. This Engagement may be executed in counterparts, each of which will be deemed to be an original, and all of which will constitute one and the same instrument. Signatures delivered electronically will have the same force and effect as original signatures.

[Signatures on following page.]

*Execution Version*

If this Engagement is acceptable to you, please execute and return it to acknowledge your agreement to its terms.

**Force Ten Partners, LLC,**
a Delaware limited liability company te

By: _____
Name:   Nicholas Rubin
Its:       Authorized Signatory

**COMPANIES:**

Steward Health Care System LLC, et al.

By: _____
Name: ~~John Castellano~~
Its:   Chief Restructuring Officer

**<u>Exhibit B</u>**

**Carr Plan Administrator Agreement**

**PLAN ADMINISTRATOR AGREEMENT**

THIS PLAN ADMINISTRATOR AGREEMENT (the "**Agreement**") is made as of July 25, 2025, by and between Steward Health Care System LLC on behalf of itself and its debtor affiliates (collectively, the "**Company**"), and Alan J. Carr ("**Administrator**").

**BACKGROUND**

**WHEREAS**, on January 5, 2024, Steward Health Care Holdings LLC and Alan J. Carr entered into that certain *Independent Director Agreement* (the "**Manager Agreement**"), pursuant to which Mr. Carr served as an independent manager of Steward Health Care Holdings, LLC until the date of execution of this Agreement.

**WHEREAS**, upon entry into this Agreement, the Manager Agreement shall be deemed superseded and replaced with this Agreement.

**WHEREAS,** the Company desires and has requested that Administrator serve as a member of the Plan Administrator Committee (as defined in the *Joint Chapter 11 Plan of Liquidation of Steward Health Care System LLC and its Affiliated Debtors* (Docket No. 5492) (as amended, supplemented, and modified from time-to-time, the "**Plan**")), which shall serve as the Plan Trustee after the Plan Trust Establishment Date (each as defined in the Plan).

**WHEREAS,** the Company and Administrator are entering into this Agreement to induce the Administrator to serve in the capacity set forth above and to set forth certain understandings between the parties.

**WHEREAS**, the Bankruptcy Court confirmed the Plan by order dated July 25, 2025 (Docket No. 5774) (the "**Confirmation Order**").

**AGREEMENT**

**NOW, THEREFORE**, in consideration of the mutual agreements and promises contained herein, and other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, Company and Administrator hereby agree as follows:

1.      **DUTIES**.   Administrator agrees to serve as a member of the Plan Administrator Committee, which committee shall be appointed as the Plan Trustee in accordance with the terms of the Plan, and shall be available to perform the duties consistent with such position pursuant to the terms set forth herein, the Plan, and the Plan Trust Agreement.  Administrator agrees to devote as much time as is reasonably necessary to perform completely the duties as a member of the Plan Administrator Committee.  By execution of this Agreement, Administrator accepts his appointment as a member of the Plan Administrator Committee and agrees to serve in such capacity until his successor is duly elected and qualified or until Administrator's earlier death, resignation or removal in accordance with the terms of the Plan Trust Agreement.  The parties hereto acknowledge and agree that Administrator is being engaged to serve as a member of the Plan Administrator Committee only and is not being engaged to serve, and shall not serve, the Company or the Plan Trust in any other capacity.

2.    **TERM.**  The term of this Agreement shall commence as of execution of this Agreement and shall continue until the earlier to occur of (a) the termination of the Plan Trust in accordance with the Plan Trust Agreement or (b) Administrator's death, dissolution, resignation, or removal.  Administrator may be removed or may resign in each case in accordance with the terms of the Plan Trust Agreement.  This Agreement shall terminate as of the date of such resignation or removal, except as specifically provided herein.

3.    **COMPENSATION**.  For all services to be rendered by Administrator hereunder, and so long as Administrator has not been removed as a member of the Plan Administrator Committee, the Company or Plan Trust, as applicable, agrees to pay Administrator a monthly fee (each, a "**Monthly Fee**" and collectively, the "**Monthly Fees**") of (1) $25,000 a month for the first six (6) months after execution of this Agreement, payable in advance each month before the first day of each applicable month, and (2) $20,000 a month for the following six (6) months, with such amount due before the first day of the month beginning on the seventh month in which a Monthly Fee is due.  Administrator shall also be compensated on a "per diem" basis at a rate of $7,500 in cash for each day in which Administrator spends more than four (4) hours addressing matters that are outside of routine matters on account of the role as a member of the Plan Administrator Committee (the **"Per Diem Payment"**), including, but not limited to, participation in or preparing for depositions, hearings, mediation or settlement meetings, or participating in other unique activities deemed necessary by the Company. The Per Diem Payment shall be invoiced and payable on the first day of the calendar month following the calendar month in which the Per Diem Payment is earned.  On or before the one (1) year anniversary of the execution of this Agreement, the parties shall agree in writing on the compensation of the Administrator for the remaining term of this Agreement; *provided that*, if an agreement cannot be reached on or before the one (1) year anniversary of the execution of this Agreement, the compensation arrangement as set forth in this Section 3 shall remain until such agreement is reached.

4.    **EXPENSES**.  In addition to the compensation provided in Section 3 hereof, the Company or Plan Trust, as applicable, will reimburse Administrator for reasonable and documented business-related expenses incurred in good faith in the performance of Administrator's duties for the Company or Plan Trust, as applicable.  Such payments shall be made by the Company or the Plan Trust, as applicable, upon submission by Administrator of a signed statement itemizing the expenses incurred.  Such statement shall be accompanied by sufficient documentary matter to support the expenditures.

5.    **CONFIDENTIALITY**.  The Company and Administrator each acknowledge that in order for Administrator to perform his duties, Administrator shall necessarily be obtaining access to certain confidential information concerning the Company and its affiliates, including, but not limited to, business methods, information systems, financial data and strategic plans which are unique assets of the Company or its affiliates ("**Confidential Information**").  Administrator covenants that he shall not, either directly or indirectly, in any manner, utilize or disclose to any person, firm, corporation, association or other entity any Confidential Information, except (i) in connection with carrying out his duties as a member of the Plan Administrator Committee, to parties subject to a confidentiality obligation to the Company; (ii) as required by law, (iii) pursuant to a subpoena or order issued by a court, governmental body, agency or official, or (iv) to the extent such

information (A) is generally known to the public, (B) was known to Administrator prior to its disclosure to Administrator by the Company, (C) was obtained by Administrator from a third party which, to Administrator's knowledge, was not prohibited from disclosing such information to Administrator pursuant to any contractual, legal or fiduciary obligation, or (D) was independently derived by Administrator without any use of Confidential Information. This Section 5 shall continue in effect after Administrator has ceased acting as a member of the Plan Administrator Committee.

6. **INDEMNIFICATION.**

(a) **Certain Definitions.**  For purposes of this Section 6, the term:

**"Delaware Law"** means:  the laws of the state of Delaware.

**"Expenses"** means all expenses, liabilities and losses (including, without limitation, attorneys' fees, retainers, expert and witness fees, disbursements and expenses of counsel, judgments, fines, excise taxes or penalties and amounts paid or to be paid in settlement) actually and reasonably incurred or suffered by Administrator or on Administrator's behalf in connection with a Proceeding.

**"Proceeding"** means any threatened, pending, actual or completed action, suit, inquiry or proceeding, whether civil, criminal, administrative or investigative, whether public or private, and, including any such threatened, pending, actual or completed action, suit, inquiry or proceeding by or in the right of the Company or any of its subsidiaries (collectively, the "**Companies**").

(b) **Indemnification.**  In the event that Administrator was or is made a party or is threatened to be made a party to or is involved (including, without limitation, as a witness) in any Proceeding by reason of the fact that Administrator or a person of whom Administrator is the legal representative of is or was an independent director (or equivalent) of any of the Companies (whether before or after the date hereof) or the Plan Trustee or member of the Plan Administrator Committee, and, whether the basis of such Proceeding is alleged action in an official capacity as an independent director (or equivalent) or in any other capacity while serving as an independent director (or equivalent) of any of the Companies or member of the Plan Administrator Committee, the Companies or Plan Trust, as applicable, shall, jointly and severally, indemnify and hold harmless Administrator to the fullest extent authorized by Delaware Law or any other applicable law or rule, but no less than to the extent set forth herein, against all Expenses; provided, however, that the Companies or Plan Trust, as applicable, shall indemnify Administrator only if Administrator did not engage in gross negligence, willful misconduct, fraud or criminal acts; and provided, further, that the Companies or Plan Trust, as applicable, shall, jointly and severally, indemnify Administrator in connection with a Proceeding (or claim or part thereof) initiated by Administrator only if (i) such Proceeding is a suit or other action seeking to enforce Administrator's right to advancement of expenses and/or indemnification under this Agreement; provided, that, the Companies or Plan Trust, as applicable, shall indemnify Administrator in the amount no greater than the expenses and/or indemnification sought, or (ii) such Proceeding (or claim or part thereof) was authorized by the directors or managers (as applicable) of the Companies or the Plan Trust.

(c)   **Presumptions.**   In the event that, under Delaware Law, the entitlement of Administrator to be indemnified hereunder shall depend upon whether Administrator shall have acted in good faith and in a manner Administrator reasonably believed to be in or not opposed to the best interests of the Companies and with respect to criminal Proceedings, had no reasonable cause to believe Administrator's conduct was unlawful, or shall have acted in accordance with some other defined standard of conduct, or whether fees and disbursements of counsel and other costs and amounts are reasonable, the burden of proof of establishing that Administrator has not acted in accordance with such standard and that such costs and amounts are unreasonable shall rest with the Companies or Plan Trust, as applicable, and Administrator shall be presumed to have acted in accordance with such standard, such costs and amounts shall be conclusively presumed to be reasonable and Administrator shall be entitled to indemnification unless, and only unless, based upon clear and convincing evidence, it shall be determined by a court of competent jurisdiction (after exhaustion or expiration of the time for filing of all appeals) that Administrator has not met such standard or, with respect to the amount of indemnification, that such costs and amounts are not reasonable (in which case Administrator shall be indemnified to the extent such costs and amounts are determined by such court to be reasonable**).**

In addition, and without in any way limiting the provisions of this Section 6(c), Administrator shall be deemed to have acted in good faith and in a manner Administrator reasonably believed to be in or not opposed to the best interests of the Companies or Plan Trust, as applicable, or, with respect to any criminal Proceeding, to have had no reasonable cause to believe Administrator's conduct was unlawful, if Administrator's action is based on (i) information supplied to Administrator by the officers of the Companies in the course of their duties, (ii) the advice of legal counsel for the Companies or (iii) information or records given or reports made to the Companies by an independent certified public accountant or by an appraiser or other expert selected with reasonable care by the Companies.

The provisions of this Section 6(c) shall not be deemed to be exclusive or to limit in any way the circumstances in which a person may be deemed to have met the applicable standard of conduct, if applicable, under Delaware Law.

(d)   **Indemnification When Wholly or Partly Successful.**   Without limiting the scope of indemnification provided in Section 6(b), to the extent that Administrator is a party to and is successful, on the merits or otherwise, in any Proceeding, Administrator shall be indemnified to the maximum extent permitted by Delaware Law against all Expenses.  If Administrator is not wholly successful in a Proceeding but is successful, on the merits or otherwise, as to one or more but less than all claims, issues or matters in such Proceeding, the Companies or Plan Trust, as applicable, shall, jointly and severally, indemnify Administrator against all Expenses actually and reasonably incurred by Administrator and on Administrator's behalf in connection with each successfully resolved claim, issue or matter, and shall otherwise indemnify Administrator to the extent required by Section 6(b).  All Expenses shall be presumed to be or have been incurred with respect to successfully resolved claims, issues and matters unless, and only unless, based upon clear and convincing evidence (with the burden of proof being on the Companies or Plan Trust, as applicable), it shall be determined by a court of competent jurisdiction (after exhaustion or expiration of the time for filing of all appeals) that a portion of such Expenses

were incurred with respect to unsuccessfully resolved claims, issues or matters. For purposes of this Section 6(d) and without limitation, the termination of any claim, issue or matter in any Proceeding by dismissal, with or without prejudice, shall be deemed to be a successful result as to such claim, issue or matter.

(e)     **Suit to Recover Indemnification.**  If a claim under Section 6(b) or Section 6(h) of this Agreement is not paid in full by the Companies or Plan Trust, as applicable, within thirty days after a written claim has been received by the Companies or Plan Trust, as applicable, Administrator may at any time thereafter bring suit against the Companies or Plan Trust, as applicable, to recover the unpaid amount of the claim. It shall be a defense to any such suit (other than a suit brought to enforce a claim for expenses incurred in defending any Proceeding in advance of its final disposition where the required undertaking has been tendered to the Companies or Plan Trust, as applicable) that Administrator has not met the standards of conduct, if applicable, which make it permissible under Delaware Law for the Companies or Plan Trust, as applicable, to indemnify Administrator for the amount claimed, but the burden of proving such defense and its applicability shall be on the Companies or Plan Trust, as applicable, and may be met only by clear and convincing evidence. Neither the failure of the Companies (including their directors (or equivalent) or equity holders) or Plan Trust, as applicable, to have made a determination prior to the commencement of such suit that indemnification of Administrator is proper under the circumstances because Administrator has met the standard of conduct, if applicable, under Delaware Law, nor an actual determination by the Companies (including their directors (or equivalent) or equity holders) or Plan Trust, as applicable, that Administrator has not met such applicable standard of conduct, if applicable, shall be a defense to the suit or create a presumption that Administrator has not met the applicable standard of conduct. The expenses incurred by Administrator in bringing such suit (whether or not Administrator is successful) shall be paid by the Companies or Plan Trust, as applicable, unless a court of competent jurisdiction determines that each of the material assertions made by Administrator in such suit was not made in good faith and was frivolous.

(f)     **Rights Not Exclusive; Rights Continue.**  The right to indemnification and the payment of expenses incurred in defending any Proceeding in advance of its final disposition conferred in this Agreement shall not be exclusive of, or limit in any manner whatsoever, any other right which Administrator may have or hereafter acquire under any statute, provision of the Plan Trust Agreement, agreement, vote of equity holders or otherwise. The indemnification, expense advancement and other rights of Administrator herein shall continue after Administrator ceases to be a member of the Plan Administrator Committee for so long as Administrator may be subject to any possible claim for which he would be entitled to indemnification under this Agreement or otherwise as a matter of law, and shall not be amended, modified, terminated, revoked or otherwise altered without Administrator's prior written consent.

(g)     **Insurance.**  The Company or one of its subsidiaries (which, in the case of a subsidiary, shall include coverage of managers (or equivalent) of the Company) or Plan Trust, as applicable, shall maintain insurance to protect the Company and any manager, director or trustee of the Company against any expense, liability or loss, and such insurance shall cover Administrator to at least the same extent as any other director, manager, or advisor of the Company, as applicable; provided that the Company shall maintain insurance

in form and amounts substantially similar to the insurance maintained by the Company as of the date hereof, a summary of which is attached hereto as <u>Exhibit A</u>.  A summary of the insurance to be maintained by the Plan Trust is attached hereto as <u>Exhibit B</u>.  Administrator shall have the right to receive a copy of any policy for such insurance upon request.

(h)     **Advancement of Defense Costs.**  Notwithstanding anything in the Company's organizational documents to the contrary, the Company or Plan Trust, as applicable, shall also promptly pay Administrator the expenses actually and reasonably incurred in defending any Proceeding in advance of its final disposition without requiring any preliminary determination of the ultimate entitlement of Administrator to indemnification; <u>provided</u>, <u>however</u>, the payment of such expenses so incurred by Administrator in advance of the final disposition of any Proceeding shall be made only upon delivery to the Company or Plan Trust, as applicable, of an unsecured undertaking in the form attached hereto as <u>Exhibit C</u> by or on behalf of Administrator, to repay (without interest) all amounts so advanced if it shall ultimately be determined that Administrator is not entitled to be indemnified under this Agreement.

(i)     **Subrogation.**  In the event of payment under this Agreement, the Company or Plan Trust, as applicable, shall be subrogated to the extent of such payment to all of the rights of recovery of Administrator, who shall, at the Company's expense, execute all papers required and take all action necessary to secure such rights, including the execution of such documents necessary to enable the Company effectively to bring suit to enforce such rights.

(j)     **No Duplication of Payments.**  The Company shall not be liable under this Agreement to make any payment in connection with any Proceeding against Administrator to the extent Administrator has otherwise actually received payment (under any insurance policy, contract, agreement, the Organizational Documents, or otherwise) of the amounts otherwise indemnifiable hereunder.

(k)     **Contribution.**  If the indemnification provided in Section 6(b) and the advancement provided in Section 6(h) should under Delaware Law be unenforceable or insufficient to hold Administrator harmless in respect of any and all Expenses with respect to any Proceeding, then the Companies or Plan Trust, as applicable, shall, subject to the provisions of this Section 6(k) and for purposes of this Section 6(k) only, upon written notice from Administrator, be treated as if they were parties who are or were threatened to be made parties to such Proceeding (if not already parties), and the Companies or Plan Trust, as applicable, shall contribute to Administrator the amount of Expenses incurred by Administrator in such proportion as is appropriate to reflect the relative benefits accruing to the Companies or Plan Trust, as applicable, and all of their directors, trustees, managers, officers, employees and agents (other than Administrator) treated as one entity on the one hand, and Administrator on the other, which arose out of the event(s) underlying such Proceeding, and the relative fault of the Companies or Plan Trust, as applicable, and all of their directors, trustees, managers, officers, employees and agents (other than Administrator) treated as one entity on the one hand, and Administrator on the other, in connection with such event(s), as well as any other relevant equitable considerations.

No provision of this Section 6(k) shall: (i) operate to create a right of contribution in favor of Administrator if it is judicially determined that, with respect to any Proceeding,

Administrator engaged in willful misconduct or (ii) limit Administrator's rights to indemnification and advancement of Expenses, whether under this Agreement or otherwise.

The Companies and the Plan Trust, as applicable, hereby waive any right of contribution from Administrator for Expenses incurred by the Companies or the Plan Trust, as applicable, with respect to any Proceeding in which the Companies or Plan Trust, as applicable, are or are threatened to be made parties.  The Companies and the Plan Trust, as applicable, shall not enter into any settlement of any Proceeding in which the Companies or Plan Trust, as applicable, are jointly liable with Administrator (or would be if joined in such Proceeding) unless such settlement provides for a full and final release of all claims asserted against Administrator and does not contain an admission of wrongdoing by Administrator.

In addition to the indemnification provisions of Section 6 of this Agreement, Administrator shall be entitled to all the benefits of the limitation of liability and indemnification provisions set forth in the Plan Trust Agreement.

7.    **INFORMATION.**  The Company shall provide Administrator with financial information, as reasonably requested, and shall make its management available to discuss the business and operations of the Company upon Administrator's reasonable request.  In addition, Administrator shall be entitled to receive information, reporting, and accounting as set forth in the Plan Trust Agreement.

8.    **EFFECT OF WAIVER**.  The waiver by either party of the breach of any provision of this Agreement shall not operate as or be construed as a waiver of any subsequent breach thereof.

9.    **GOVERNING LAW**.  This Agreement shall be interpreted in accordance with, and the rights of the parties hereto shall be determined by, the laws of the state of Delaware without reference to its conflicts of laws principles.

10.    **ASSIGNMENT**.   The rights and benefits of the Company under this Agreement shall not be transferable except by operation of law without Administrator's consent, and all the covenants and agreements hereunder shall inure to the benefit of, and be enforceable by or against, its successors and assigns.  The duties and obligations of Administrator under this Agreement are personal and therefore Administrator may not assign any right or duty under this Agreement without the prior written consent of the Company.  Notwithstanding anything to the contrary in this Agreement, on the Plan Trust Establishment Date (as defined in the Plan), this Agreement shall be deemed assigned to the Plan Trust, as a successor to the Company.

11.    **BINDING EFFECT; SUCCESSORS AND ASSIGNS.**  This Agreement shall be binding upon and inure to the benefit of and be enforceable by each of the parties hereto and their respective successors, assigns (including the Plan Trust, any direct or indirect successor by purchase, merger, consolidation or otherwise to all or substantially all of the business or assets of the Company), heirs and personal legal representatives.  The Company shall require and cause any successor (whether direct or indirect, and whether by purchase, merger, consolidation or otherwise) to all, substantially all, or a substantial

part, of the business or assets of the Company, by written agreement in form and substance reasonably satisfactory to Administrator, expressly to assume and agree to perform this Agreement in the same manner and to the same extent that the Company would be required to perform if no such succession had taken place.

12.     **SEVERABILITY; HEADINGS.**  If any provision of this Agreement is held by a court of competent jurisdiction to be invalid as applied to any fact or circumstance, it shall be modified by the minimum amount necessary to render it valid, and any such invalidity shall not affect any other provision, or the same provision as applied to any other fact or circumstance.  The headings used in this Agreement are for convenience only and shall not be construed to limit or define the scope of any Section or provision.

13.     **COUNTERPARTS; AMENDMENT.**  This Agreement may be executed in one or more counterparts, each of which shall be considered one and the same agreement.  No amendment to this Agreement shall be effective unless in writing signed by each of the parties hereto.

*[Signature page follows]*

The parties hereto have caused this Agreement to be executed on the date first above written.

**Steward Health Care System LLC**

By:_____
    John R. Castellano
    Chief Restructuring Officer

Administrator

_____

Name: Alan J. Carr

The parties hereto have caused this Agreement to be executed on the date first above written.

**Steward Health Care System LLC**

By: _____

John R. Castellano
Chief Restructuring Officer

Administrator

_____

Name: Alan J. Carr

## EXHIBIT A

## SUMMARY OF COMPANY'S INSURANCE COVERAGE

## **D&O Policy Overview**

- $60 million in total D&O coverage

- Self-insured retention: $0

- Named Insured: Steward Healthcare Holdings LLC

- Policy Period: March 1, 2025 to March 1, 2027

| | Insurer | Policy Number | Policy Limit | Coverage Type |
|---|---|---|---|---|
| Primary Policy | AIG | 06-152-51-35 | $10 million | Side A |
| 1st Excess | Sompo | ADX30080798500 | $10 million (excess of $10 million) | Side A |
| 2nd Excess | AXA XL | ELU202388-25 | $10 million (excess of $20 million) | Side A |
| 3rd Excess | Arch | ABX1000449-00 | $10 million (excess of $30 million) | Side A |
| 4th Excess | QBE | 130009401 | $10 million (excess of $40 million) | Side A |
| 5th Excess | Berkley | BPRO8126900 | $10 million (excess of $50 million) | Side A |

## EXHIBIT B

## SUMMARY OF PLAN TRUST'S INSURANCE COVERAGE

- $60 million in total D&O coverage

- Self-insured retention: $0

- Named Insured: Steward Healthcare Holdings LLC

- Policy Period: March 1, 2025 to March 1, 2027

|  | Insurer | Policy Number | Policy Limit | Coverage Type |
|---|---|---|---|---|
| Primary Policy | AIG | 06-152-51-35 | $10 million | Side A |
| 1st Excess | Sompo | ADX30080798500 | $10 million (excess of $10 million) | Side A |
| 2nd Excess | AXA XL | ELU202388-25 | $10 million (excess of $20 million) | Side A |
| 3rd Excess | Arch | ABX1000449-00 | $10 million (excess of $30 million) | Side A |
| 4th Excess | QBE | 130009401 | $10 million (excess of $40 million) | Side A |
| 5th Excess | Berkley | BPRO8126900 | $10 million (excess of $50 million) | Side A |

**EXHIBIT C**

**FORM OF UNDERTAKING**

<u>Undertaking to Repay</u>

    The undersigned hereby acknowledges his undertaking to repay any amounts advanced to him by Steward Health Care Holdings LLC or the Plan Trust under Section 6(h) of the Plan Administrator Agreement between him and Steward Health Care Holdings LLC on behalf of itself and each of its debtor affiliates (the "**Agreement**") in connection with any threatened, pending, actual or completed action, suit, inquiry or proceeding, whether civil, criminal, administrative or investigative, whether public or private, and, including any such threatened, pending, actual or completed action, suit, inquiry or proceeding by or in the right of the Company or any of its subsidiaries (the "**Proceeding**"), if it is ultimately determined that he is not entitled to be indemnified with respect to the Proceeding under the Agreement.

Dated _____

          _____
          Signature

          _____
          Name (please print)

## Exhibit C

**Transier Plan Administrator Agreement**

July 25, 2025

William L. Transier
12128 Madeleine Circle
Dallas, TX 75230

Dear Mr. Transier:

This Plan Administrator Agreement ("**Agreement**") is made as of July 25, 2025 between you, William L. Transier ("**Administrator**" or "**you**") and Steward Health Care System LLC on behalf of itself and its debtor affiliates (collectively, the "**Company**"), and sets out the terms upon which you have agreed to act as a member of the Plan Administrator Committee (as defined in the *Joint Chapter 11 Plan of Liquidation of Steward Health Care System LLC and its Affiliated Debtors* (Docket No. 5492) (as amended, supplemented, and modified from time-to-time, the "**Plan**")), which shall serve as the Plan Trustee after the Plan Trust Establishment Date (each as defined in the Plan), with effect from execution of this Agreement. Upon entry into this Agreement, the manager agreement dated as of January 19, 2024 between William L. Transier and Steward Health Care Holdings LLC shall be deemed superseded and replaced with this Agreement.

In consideration of the mutual agreements and promises contained herein, and other good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, the Company and Administrator hereby agree as follows:

1.      **DUTIES**. Administrator agrees to serve as a member of the Plan Administrator Committee, which committee shall be appointed as the Plan Trustee in accordance with the terms of the Plan, and shall be available to perform the duties consistent with such position pursuant to the terms set forth herein, the Plan, and the Plan Trust Agreement. Administrator agrees to devote as much time as is reasonably necessary to perform completely the duties as a member of the Plan Administrator Committee. By execution of this Agreement, Administrator accepts his appointment as a member of the Plan Administrator Committee and agrees to serve in such capacity until his successor is duly elected and qualified or until Administrator's earlier death, resignation or removal in accordance with the terms of the Plan Trust Agreement. The parties hereto acknowledge and agree that Administrator is being engaged to serve as a member of the Plan Administrator Committee only and is not being engaged to serve, and shall not serve, the Company or the Plan Trust in any other capacity.

2.      **TERM**. The term of this Agreement shall commence as of execution of this Agreement and shall continue until the earlier to occur of (a) the termination of the Plan Trust in accordance with the Plan Trust Agreement or (b) Administrator's death, dissolution, resignation, or removal. Administrator may be removed or may resign in each case in accordance with the terms of the Plan Trust Agreement. This Agreement shall terminate as of the date of such resignation or removal, except as specifically provided herein.

3.      **COMPENSATION**. For all services to be rendered by Administrator hereunder, and so long as Administrator has not been removed as a member of the Plan Administrator Committee, the Company or Plan Trust, as applicable, agrees to pay Administrator a monthly fee of (a) $25,000 a month for the first six (6) months after execution of this Agreement, payable in advance each month before the first day of each applicable month, and (b) $20,000 a month for the following six (6) months, with such amount due before the first day of the month beginning on the seventh month in which a monthly fee is due. In addition, Administrator will receive a payment of seven thousand five hundred dollars ($7,500) in cash for each day in which the Administrator spends more than four (4) hours addressing matters that are outside of routine matters

on account of the role as a member of the Plan Administrator Committee (the **"Per Diem Payment"**), including, but not limited to, participation in or preparing for depositions, hearings, mediation or settlement meetings, or participating in other unique activities deemed necessary by the Company. The Per Diem Payment shall be invoiced and payable on the first day of the calendar month following the calendar month in which the Per Diem Payment is earned.  On or before the one (1) year anniversary of the execution of this Agreement, the parties shall agree in writing on the compensation of the Administrator for the remaining term of this Agreement; *provided that*, if an agreement cannot be reached on or before the one (1) year anniversary of the execution of this Agreement, the compensation arrangement as set forth in this paragraph 3 shall remain until such agreement is reached.

4.    **EXPENSES**.  In addition to the compensation provided in paragraph 3 hereof, the Company or Plan Trust, as applicable, will reimburse Administrator for reasonable and documented business-related expenses incurred in good faith in the performance of Administrator's duties for the Company or Plan Trust, as applicable.  Such payments shall be made by the Company or the Plan Trust, as applicable, upon submission by Administrator of a signed statement itemizing the expenses incurred.  Such statement shall be accompanied by sufficient documentary matter to support the expenditures.

5.    **CONFIDENTIALITY**.  The Company and Administrator each acknowledge that in order for Administrator to perform his duties, Administrator shall necessarily be obtaining access to certain confidential information concerning the Company and its affiliates, including, but not limited to, business methods, information systems, financial data and strategic plans, which are unique assets of the Company or its affiliates ("**Confidential Information**").  Administrator covenants that he shall not, either directly or indirectly, in any manner, utilize or disclose to any person, firm, corporation, association or other entity any Confidential Information, except (i) in connection with carrying out his duties as a member of the Plan Administrator Committee, to parties subject to a confidentiality obligation to the Company; (ii) as required by law, (iii) pursuant to a subpoena or order issued by a court, governmental body, agency or official, or (iv) to the extent such information (A) is generally known to the public, (B) was known to Administrator prior to its disclosure to Administrator by the Company, (C) was obtained by Administrator from a third party which, to Administrator's knowledge, was not prohibited from disclosing such information to Administrator pursuant to any contractual, legal or fiduciary obligation, or (D) was independently derived by Administrator without any use of Confidential Information.  This paragraph 5 shall continue in effect after Administrator has ceased acting as a member of the Plan Administrator Committee.

6.    **INDEMNIFICATION**.  In the event that Administrator was or is made a party or is threatened to be made a party to or is involved (including, without limitation, as a witness) in any Proceeding by reason of the fact that Administrator or a person of whom Administrator is the legal representative of is or was an independent director (or equivalent) of any of the Companies (whether before or after the date hereof) or the Plan Trustee or member of the Plan Administrator Committee, and, whether the basis of such Proceeding is alleged action in an official capacity as an independent director (or equivalent) or in any other capacity while serving as an independent director (or equivalent) of any of the Companies or member of the Plan Administrator Committee, the Companies or Plan Trust, as applicable, shall, jointly and severally, indemnify and hold harmless Administrator to the fullest extent authorized by Applicable Law, or any other applicable law or rule, but no less than to the extent set forth herein, against all Expenses; *provided*, *however*, that the Companies or Plan Trust, as applicable shall indemnify Administrator only if Administrator did not engage in gross negligence, willful misconduct, fraud or criminal acts; *provided*, *further*, that the Companies or Plan Trust, as applicable, shall, jointly and severally, indemnify Administrator in connection with a Proceeding (or claim or part thereof) initiated by Administrator only if (i) such Proceeding is a suit or other action seeking to enforce Administrator's right to advancement of expenses and/or indemnification under this Agreement; *provided, that,* the Companies or Plan Trust, as applicable, shall indemnify Administrator in the amount no greater than the expenses and/or indemnification sought, or (ii) such Proceeding (or claim or part thereof) was authorized by the directors or managers (as applicable) of the Companies or the Plan Trust.

a.    For purposes of this paragraph 6, the term:

**"Applicable Law"** means the laws of the state of Delaware.

**"Expenses"** means all expenses, liabilities and losses (including, without limitation, attorneys' fees, retainers, expert and witness fees, disbursements and expenses of counsel, judgments, fines, excise taxes or penalties and amounts paid or to be paid in settlement) actually and reasonably incurred or suffered by Administrator or on Administrator's behalf in connection with a Proceeding.

**"Proceeding"** means any threatened, pending, actual or completed action, suit, inquiry or proceeding, whether civil, criminal, administrative or investigative, whether public or private, and, including any such threatened, pending, actual or completed action, suit, inquiry or proceeding by or in the right of the Company or any of its subsidiaries (collectively, the "**Companies**").

b. **PRESUMPTIONS**.  In the event that, under Applicable Law, the entitlement of Administrator to be indemnified hereunder shall depend upon whether Administrator shall have acted in good faith and in a manner Administrator reasonably believed to be in or not opposed to the best interests of the Companies and with respect to criminal Proceedings, had no reasonable cause to believe Administrator's conduct was unlawful, or shall have acted in accordance with some other defined standard of conduct, or whether fees and disbursements of counsel and other costs and amounts are reasonable, the burden of proof of establishing that Administrator has not acted in accordance with such standard and that such costs and amounts are unreasonable shall rest with the Companies or Plan Trust, as applicable, and Administrator shall be presumed to have acted in accordance with such standard, such costs and amounts shall be conclusively presumed to be reasonable and Administrator shall be entitled to indemnification unless, and only unless, based upon clear and convincing evidence, it shall be determined by a court of competent jurisdiction (after exhaustion or expiration of the time for filing of all appeals) that Administrator has not met such standard or, with respect to the amount of indemnification, that such costs and amounts are not reasonable (in which case Administrator shall be indemnified to the extent such costs and amounts are determined by such court to be reasonable)**.**  In addition, and without in any way limiting the provisions of this paragraph 6(b), Administrator shall be deemed to have acted in good faith and in a manner Administrator reasonably believed to be in or not opposed to the best interests of the Companies or Plan Trust, as applicable, or, with respect to any criminal Proceeding, to have had no reasonable cause to believe Administrator's conduct was unlawful, if Administrator's action is based on (i) information supplied to Administrator by the officers of the Companies in the course of their duties, (ii) the advice of legal counsel for the Companies or (iii) information or records given or reports made to the Companies by an independent certified public accountant or by an appraiser or other expert selected with reasonable care by the Companies.  The provisions of this paragraph 6(b) shall not be deemed to be exclusive or to limit in any way the circumstances in which a person may be deemed to have met the applicable standard of conduct, if applicable, under Applicable Law.

c. **INDEMNIFICATION WHEN WHOLLY OR PARTLY SUCCESSFUL**.  Without limiting the scope of indemnification provided in paragraph 6, to the extent that Administrator is a party to and is successful, on the merits or otherwise, in any Proceeding, Administrator shall be indemnified to the maximum extent permitted by Applicable Law against all Expenses.  If Administrator is not wholly successful in a Proceeding but is successful, on the merits or otherwise, as to one or more but less than all claims, issues or matters in such Proceeding, the Companies or Plan Trust, as applicable, shall, jointly and severally, indemnify Administrator against all Expenses actually and reasonably incurred by Administrator and on Administrator's behalf in

3

connection with each successfully resolved claim, issue or matter, and shall otherwise indemnify Administrator to the extent required by paragraph 6. All Expenses shall be presumed to be or have been incurred with respect to successfully resolved claims, issues and matters unless, and only unless, based upon clear and convincing evidence (with the burden of proof being on the Companies or Plan Trust, as applicable), it shall be determined by a court of competent jurisdiction (after exhaustion or expiration of the time for filing of all appeals) that a portion of such Expenses were incurred with respect to unsuccessfully resolved claims, issues or matters. For purposes of this paragraph 6(c) and without limitation, the termination of any claim, issue or matter in any Proceeding by dismissal, with or without prejudice, shall be deemed to be a successful result as to such claim, issue or matter.

d. **SUIT TO RECOVER INDEMNIFICATION**. If a claim under paragraph 6 or paragraph 6(g) of this Agreement is not paid in full by the Companies or Plan Trust, as applicable, within thirty days after a written claim has been received by the Companies or Plan Trust, as applicable, Administrator may at any time thereafter bring suit against the Companies or Plan Trust, as applicable, to recover the unpaid amount of the claim. It shall be a defense to any such suit (other than a suit brought to enforce a claim for expenses incurred in defending any Proceeding in advance of its final disposition where the required undertaking has been tendered to the Companies or Plan Trust, as applicable) that Administrator has not met the standards of conduct, if applicable, which make it permissible under Applicable Law for the Companies or Plan Trust, as applicable, to indemnify Administrator for the amount claimed, but the burden of proving such defense and its applicability shall be on the Companies or Plan Trust, as applicable, and may be met only by clear and convincing evidence. Neither the failure of the Companies (including their directors (or equivalent) or equity holders) or Plan Trust, as applicable, to have made a determination prior to the commencement of such suit that indemnification of Administrator is proper under the circumstances because Administrator has met the standard of conduct, if applicable, under Applicable Law, nor an actual determination by the Companies (including their directors (or equivalent) or equity holders) or Plan Trust, as applicable, that Administrator has not met such applicable standard of conduct, if applicable, shall be a defense to the suit or create a presumption that Administrator has not met the applicable standard of conduct. The expenses incurred by Administrator in bringing such suit (whether or not Administrator is successful) shall be paid by the Companies or Plan Trust, as applicable, unless a court of competent jurisdiction determines that each of the material assertions made by Administrator in such suit was not made in good faith and was frivolous.

e. **RIGHTS NOT EXCLUSIVE; RIGHTS CONTINUE**. The right to indemnification and the payment of expenses incurred in defending any Proceeding in advance of its final disposition conferred in this Agreement shall not be exclusive of, or limit in any manner whatsoever, any other right which Administrator may have or hereafter acquire under any statute, provision of the Plan Trust Agreement, agreement, vote of equity holders or otherwise. The indemnification, expense advancement and other rights of Administrator herein shall continue after Administrator ceases to be a member of the Plan Administrator Committee for so long as Administrator may be subject to any possible claim for which he would be entitled to indemnification under this Agreement or otherwise as a matter of law, and shall not be amended, modified, terminated, revoked or otherwise altered without Administrator's prior written consent.

f. **INSURANCE**. The Company or one of its subsidiaries (which, in the case of a subsidiary, shall include coverage of managers (or equivalent) of the Company) or Plan Trust, as applicable, shall maintain insurance to protect the Company and any manager,

4

director or trustee of the Company against any expense, liability or loss, and such insurance shall cover Administrator to at least the same extent as any other director, manager, or advisor of the Company, as applicable; *provided that* the Company shall maintain insurance in form and amounts substantially similar to the insurance maintained by the Company as of the date hereof, a summary of which is attached hereto as Exhibit A.  A summary of the insurance to be maintained by the Plan Trust is attached hereto as Exhibit B.  Administrator shall have the right to receive a copy of any policy for such insurance upon request.

g.  **ADVANCEMENT OF DEFENSE COSTS**.   Notwithstanding anything in the Company's organizational documents to the contrary, the Company or Plan Trust, as applicable, shall also promptly pay Administrator the expenses actually and reasonably incurred in defending any Proceeding in advance of its final disposition without requiring any preliminary determination of the ultimate entitlement of Administrator to indemnification; provided, however, the payment of such expenses so incurred by Administrator in advance of the final disposition of any Proceeding shall be made only upon delivery to the Company or Plan Trust, as applicable, of an unsecured undertaking in the form attached hereto as Exhibit C by or on behalf of Administrator, to repay (without interest) all amounts so advanced if it shall ultimately be determined that Administrator is not entitled to be indemnified under this Agreement.

h.  **SUBROGATION**.  In the event of payment under this Agreement, the Company or Plan Trust, as applicable, shall be subrogated to the extent of such payment to all of the rights of recovery of Administrator, who shall, at the Company's expense, execute all papers required and take all action necessary to secure such rights, including the execution of such documents necessary to enable the Company effectively to bring suit to enforce such rights.

i.  **NO DUPLICATION OF PAYMENTS**.  The Company shall not be liable under this Agreement to make any payment in connection with any Proceeding against Administrator to the extent Administrator has otherwise actually received payment (under any insurance policy, contract, agreement, the Organizational Documents, or otherwise) of the amounts otherwise indemnifiable hereunder.

j.  **CONTRIBUTION**.   If the indemnification provided in paragraph 6 and the advancement provided in paragraph 6(g) should, under Applicable Law, be unenforceable or insufficient to hold Administrator harmless in respect of any and all Expenses with respect to any Proceeding, then the Companies or Plan Trust, as applicable shall, subject to the provisions of this paragraph 6(j) and for purposes of this paragraph 6(j) only, upon written notice from Administrator, be treated as if they were parties who are or were threatened to be made parties to such Proceeding (if not already parties), and the Companies or Plan Trust, as applicable, shall contribute to Administrator the amount of Expenses incurred by Administrator in such proportion as is appropriate to reflect the relative benefits accruing to the Companies or Plan Trust, as applicable, and all of their directors, trustees, managers, officers, employees and agents (other than Administrator) treated as one entity on the one hand, and Administrator on the other, which arose out of the event(s) underlying such Proceeding, and the relative fault of the Companies or Plan Trust, as applicable, and all of their directors, trustees, managers, officers, employees and agents (other than Administrator) treated as one entity on the one hand, and Administrator on the other, in connection with such event(s), as well as any other relevant equitable considerations.  No provision of this paragraph 6(j) shall (i) operate to create a right of contribution in favor of Administrator if it is judicially determined that, with respect to any Proceeding, Administrator engaged in willful misconduct or (ii) limit

Administrator's rights to indemnification and advancement of Expenses, whether under this Agreement or otherwise. The Companies and the Plan Trust, as applicable, hereby waive any right of contribution from Administrator for Expenses incurred by the Companies or the Plan Trust, as applicable, with respect to any Proceeding in which the Companies or Plan Trust, as applicable, are or are threatened to be made parties. The Companies and the Plan Trust, as applicable, shall not enter into any settlement of any Proceeding in which the Companies or Plan Trust, as applicable, are jointly liable with Administrator (or would be if joined in such Proceeding) unless such settlement provides for a full and final release of all claims asserted against Administrator and does not contain an admission of wrongdoing by Administrator.

k. In addition to the indemnification provisions of Section 6 of this Agreement, Administrator shall be entitled to all the benefits of the limitation of liability and indemnification provisions set forth in the Plan Trust Agreement.

7. **INFORMATION**. The Company shall provide Administrator with financial information, as reasonably requested, and shall make its management available to discuss the business and operations of the Company upon Administrator's reasonable request. In addition, Administrator shall be entitled to receive information, reporting, and accounting as set forth in the Plan Trust Agreement.

8. **EFFECT OF WAIVER**. The waiver by either party of the breach of any provision of this Agreement shall not operate as or be construed as a waiver of any subsequent breach thereof.

9. **GOVERNING LAW**. This Agreement shall be interpreted in accordance with, and the rights of the parties hereto shall be determined by, the laws of the state of Delaware without reference to its conflicts of laws principles.

10. **ASSIGNMENT**. The rights and benefits of the Company under this Agreement shall not be transferable except by operation of law without Administrator's consent, and all the covenants and agreements hereunder shall inure to the benefit of, and be enforceable by or against, its successors and assigns. The duties and obligations of Administrator under this Agreement are personal and therefore Administrator may not assign any right or duty under this Agreement without the prior written consent of the Company. Notwithstanding anything to the contrary in this Agreement, on the Plan Trust Establishment Date (as defined in the Plan), this Agreement shall be deemed assigned to the Plan Trust, as a successor to the Company.

11. **BINDING EFFECT; SUCCESSORS AND ASSIGNS**. This Agreement shall be binding upon and inure to the benefit of and be enforceable by each of the parties hereto and their respective successors, assigns (including the Plan Trust, any direct or indirect successor by purchase, merger, consolidation or otherwise to all or substantially all of the business or assets of the Company), heirs and personal legal representatives. The Company shall require and cause any successor (whether direct or indirect, and whether by purchase, merger, consolidation or otherwise) to all, substantially all, or a substantial part, of the business or assets of the Company, by written agreement in form and substance reasonably satisfactory to Administrator, expressly to assume and agree to perform this Agreement in the same manner and to the same extent that the Company would be required to perform if no such succession had taken place.

12. **SEVERABILITY; HEADINGS**. If any provision of this Agreement is held by a court of competent jurisdiction to be invalid as applied to any fact or circumstance, it shall be modified by the minimum amount necessary to render it valid, and any such invalidity shall not affect any other provision, or the same provision as applied to any other fact or circumstance. The headings used in this Agreement are for convenience only and shall not be construed to limit or define the scope of any paragraph or provision.

13.     **COUNTERPARTS; AMENDMENT**.  This Agreement may be executed in one or more counterparts, each of which shall be considered one and the same agreement.  No amendment to this Agreement shall be effective unless in writing signed by each of the parties hereto.

Very truly yours,

Steward Health Care System LLC

By: _____

John R. Castellano
Chief Restructuring Officer

I hereby agree to act as a member of the Plan Administrator Committee, which shall serve as the Plan Trustee after the Plan Trust Establishment Date.

DocuSigned by:

*William Transier*

0120BD6DF7074DD

WILLIAM L. TRANSIER

Date: _____

# EXHIBIT A

## SUMMARY OF COMPANY'S INSURANCE COVERAGE

## **D&O Policy Overview**

- $60 million in total D&O coverage

- Self-insured retention: $0

- Named Insured: Steward Healthcare Holdings LLC

- Policy Period: March 1, 2025 to March 1, 2027

|  | Insurer | Policy Number | Policy Limit | Coverage Type |
|---|---|---|---|---|
| Primary Policy | AIG | 06-152-51-35 | $10 million | Side A |
| 1st Excess | Sompo | ADX30080798500 | $10 million (excess of $10 million) | Side A |
| 2nd Excess | AXA XL | ELU202388-25 | $10 million (excess of $20 million) | Side A |
| 3rd Excess | Arch | ABX1000449-00 | $10 million (excess of $30 million) | Side A |
| 4th Excess | QBE | 130009401 | $10 million (excess of $40 million) | Side A |
| 5th Excess | Berkley | BPRO8126900 | $10 million (excess of $50 million) | Side A |

## EXHIBIT B

## SUMMARY OF PLAN TRUST'S INSURANCE COVERAGE

- $60 million in total D&O coverage

- Self-insured retention: $0

- Named Insured: Steward Healthcare Holdings LLC

- Policy Period: March 1, 2025 to March 1, 2027

| | Insurer | Policy Number | Policy Limit | Coverage Type |
|---|---|---|---|---|
| Primary Policy | AIG | 06-152-51-35 | $10 million | Side A |
| 1st Excess | Sompo | ADX30080798500 | $10 million (excess of $10 million) | Side A |
| 2nd Excess | AXA XL | ELU202388-25 | $10 million (excess of $20 million) | Side A |
| 3rd Excess | Arch | ABX1000449-00 | $10 million (excess of $30 million) | Side A |
| 4th Excess | QBE | 130009401 | $10 million (excess of $40 million) | Side A |
| 5th Excess | Berkley | BPRO8126900 | $10 million (excess of $50 million) | Side A |

**EXHIBIT C**

**FORM OF UNDERTAKING**

<u>Undertaking to Repay</u>

   The undersigned ("**Administrator**") hereby acknowledges his undertaking to repay any amounts advanced to him by Steward Health Care Holdings LLC or the Plan Trust under paragraph 6(g) of the Plan Administrator Agreement between Administrator and Steward Health Care Holdings LLC on behalf of itself and each of its debtor affiliates (the "**Agreement**") in connection with any threatened, pending, actual or completed action, suit, inquiry or proceeding, whether civil, criminal, administrative or investigative, whether public or private, and, including any such threatened, pending, actual or completed action, suit, inquiry or proceeding by or in the right of the Company or any of its subsidiaries (the "**Proceeding**"), if it is ultimately determined that Administrator is not entitled to be indemnified with respect to the Proceeding under the Agreement.

Dated: _____

             _____
             Signature


             _____
             Name (please print)